PATRICK MILLER
Email: Patrick.miller@impactadvocateslaw.com
Impact Advocates APC
121 S Oak Ave
Pasadena, CA 91107
Telephone:     213-364-7581

Attorney for Judgement Creditor
BELGIUM INVESTMENTS 960 BAY DR,
LLC A CALIFORNIA CORP.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Bassem Victor El Mallakh | Case No 8:22-bk-11605-TA<br>Chapter 11<br><br>**NOTICE OF MOTION; MOTION TO DISMISS AND/OR CONVERT CASE TO CH 7; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF PATRICK MILLER**<br><br>**Date**: 21 December 2022<br>**Time**: 10am<br>**Crtrm**: Virtual/5B |

**TO THE HONORABLE THEODOR ALBERT, UNITED STATES**

**BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE**

**DEBTOR AND HIS ATTORNEYS OF RECORD, AND ALL PARTIES IN INTEREST:**

 **PLEASE TAKE NOTICE** that on 21 December 2022 at 10:00 am, or as soon thereafter

as the Court may hear the matter, in Courtroom 5B (or via Zoom) of the United States

Bankruptcy Court located at 411 West Fourth Street, Santa Ana, CA 92701, the Court will

conduct a hearing on the **MOTION TO DISMISS AND/OR CONVERT CASE TO CH 7** (the

"**Motion for Dismissal**") filed by the Creditor Belgium Investments 960 Bay Dr, LLC, a California Corp. ("**Belgium**")

    The grounds for the relief requested in the Motion for Dismissal are that there is cause for dismissal because the present action was filed in bad faith and dismissal is in the best interest of the creditors. Alternatively, Belgium requests that if the case is not dismissed, that it be converted to Ch 7.

    This Motion for Dismissal is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Patrick Miller, all pleadings on file in this case, all other matters of which this Court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence, and such other arguments and/or evidence as may be presented at or prior to the hearing on the Motion.

    **PLEASE TAKE FURTHER NOTICE** that any response/opposition to the Motion for Dismissal must be in writing, filed with the Court, and served on counsel for Belgium at the address listed above, at least 14 days prior to the hearing date of 21 December 2022.

    **PLEASE TAKE FURTHER NOTICE** that the failure to respond in writing by the above referenced deadline may be deemed by the Court to be a lack of opposition to the relief requested in the Motion for Dismissal.

Dated:        30 Nov 2022                                Impact Advocates APC

                                            By_____
                                                Patrick Miller
                                                Attorney for
                                                Judgement Creditor
                                                Belgium Investments

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| PATRICK MILLER: 301819<br>Email: Patrick.miller@impactadvocateslaw.com<br>Impact Advocates APC<br>121 S Oak Ave<br>Pasadena, CA 91107<br>Telephone:    213-364-7581<br><br><br>Attorney for Judgment Creditor and Movant<br><br>☐ **_Attorney for Movant_**<br>☐ _Movant appearing without an attorney_ | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -Central DIVISION**

| In re: Bassem Victor El Mallakh | CASE NO.: 8:22-bk-11605-TA |
|---|---|
| | CHAPTER:  11 |
| | **SUPPLEMENTAL NOTICE OF HEARING TO BE HELD REMOTELY USING ZOOMGOV AUDIO AND VIDEO** |
| Debtor(s) | HEARING DATE:     21 December 2022<br>HEARING TIME: 10am<br>Location: Virtual (Zoom) |

| **Movant:** |
|---|

1. The Movant has filed the following written notice or other pleading ("Notice") advising of a hearing to be held in the above-captioned case, on the date and time indicated above, before the Honorable Martin R. Barash, United States Bankruptcy Judge _(insert name of pleading and, if available, docket number):_

> **MOTION TO DISMISS AND/OR CONVERT CASE TO CH 7**

2. Notwithstanding any language in the Notice advising or suggesting that the hearing will be held physically in one of the Court's courtrooms, **please be advised that due to the COVID-19 pandemic, the Court will conduct the hearing remotely, using ZoomGov audio and video technology.** Individuals will not be permitted access to the courtroom. Information on how to participate in the hearing remotely using ZoomGov is provided on the following page of this notice.

Hearing participants and members of the public may participate in and/or observe the hearing using ZoomGov, free of charge.

3. Individuals may connect by ZoomGov audio and video using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet).  The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet.  Individuals connecting in this manner will be prompted for the Meeting ID and Password shown below.

4. Individuals also may connect to the hearing by telephone only, using the telephone number provided below.  Individuals connecting in this manner also will be prompted for the Meeting ID and Password.

5. Neither a Zoom nor a ZoomGov account is necessary to participate in or observe the hearing, and no pre-registration is required.

6. The audio portion of the hearing will be recorded electronically by the Court and constitute its official record.

7. All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.

8. The following is the unique ZoomGov connection information for the above-referenced hearing:

> Video/audio web address:
> https://cacb.zoomgov.com/j/1605416024
> ZoomGov meeting number: 160 541 6024
> Password: 855371
> Telephone conference lines: 1 (669) 254 5252 or 1 (646) 828 7666

9. More information on using ZoomGov to participate in this hearing is available on the Court's website at the following web address:  https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-participants.

Date:        11/30/22

_____
Impact Advocates APC
Printed name of law firm (if applicable)


_____
Patrick Miller Attorney for Creditor Movant
Printed name of individual Movant or attorney for Movant

# TABLE OF CONTENTS

| Section | Description | Page |
|---------|-------------|------|
| I | Introduction. | 4 |
| II | Factual Background. | 4 |
| II.A | Background of earlier related cases. | 4 |
| II.B | Background of this Ch 11 case. | 7 |
| III | This case was filed in bad faith and should be dismissed for cause pursuant to 11 U.S.C. §1112(b). | 10 |
| III.A | The bad faith character of this filing is apparent through the various indicators of bad faith noted in relevant caselaw. | 11 |
| III.B | The bad faith character of this filing is apparent from the Debtor's inability to propose a feasible reorganization plan. | 12 |
| III.C | The bad faith character of this filing is also apparent from the improper purpose of the filing. | 15 |
| III.D | Dismissal for cause is also warranted due to the diminution of value in the Rockefeller Property. | 16 |
| III.E | Dismissal for cause is in the best interests of the creditors. | 17 |
| IV | This Dismissal should include sanctions which prohibit Debtor from filing a new bankruptcy case for at least 180 days. | 18 |
| V | Alternatively, if the Court chooses not to dismiss this case, it should be converted to Ch 7. | 19 |
| VI | Conclusion. | 19 |

## POINTS & AUTHORITIES

### I.    Introduction.

11 U.S.C. § 1112(b)(1) states that "on request of a party in interest and after notice and a hearing . . . the court shall convert a [chapter 11] case to a case under chapter 7 or dismiss a [chapter 11] case, whichever is in the best interests of creditors and the estate, if the movant establishes cause.".

The submissions below explain why there is cause for dismissal of this action. The bad faith character of this filing is apparent from (i) the various indicators of bad faith; (ii) the absence of any hope for proposing a feasible reorganization plan; and (iii) the improper purpose of the filing. The diminution of value in the subject property also provides further cause for dismissal.

The submissions then address how dismissal of this action for cause would be in the best interests of the creditors, of which Belgium is the primary actor.

It also explains why the bad faith nature of the filing should warrant sanctions such that the dismissal include a prohibition on future filings for at least 180 days.

If there is no dismissal, then Belgium requests this case be converted to a Ch 7 case, although we explain why this would not be appropriate given the facts of this case and interests of the creditors.

### II.    Factual Background.

#### A.    Background of earlier related cases.

Detailed factual backgrounds are provided in Belgium's previous submissions in Opposition To The Debtor's Motion For Order Continuing Stay And Request For Dismissal With A Bar To Refiling (the "**Opposition to Continuing Stay**") [Docket No 25]; and Belgium's Objection to Debtor's Claimed Homestead Exemption (the "**Objection to HS Exemption**") [Docket No 55]. Below are facts which are relevant to this specific Motion for Dismissal.

On 17 August 2018, Belgium filed a complaint in the 11th Circuit Court of Florida claiming millions of dollars in damages due to various acts of fraud and other misconduct

committed by Debtor[1]. Importantly, at no point during the numerous submissions which have been filed has Debtor ever suggested that he is innocent of this misconduct or that he would otherwise assist Belgium in its efforts to obtain redress[2]. One might expect that an innocent defendant might highlight that point in a motion to dismiss a default judgement, or to stay execution of the same, even if the substance of the claim was not technically at issue.

Although the Complaint was served on Debtor's sister, Reem Hanna, at the property Debtor owned at 116 Rockefeller, Irvine, CA, 92612 (the "**Rockefeller Property**"), Debtor never attempted to defend the action[3]. A default judgment (the "**FL judgement**") was entered on 25 February 2020[4]. The FL judgement was entered in California on 18 June 2020[5].

Belgium proceeded to enforce the FL Judgement against Debtor's assets in California. This resulted in a levy being placed on the Rockefeller Property in early-2021[6]. Debtor then filed various motions in Florida and California which obstructed the enforcement efforts and delayed Belgium's recovery.

On 15 May 2021, the Florida court denied Debtor's motion to vacate the FL Judgement[7]. While Debtor and his sister contended he never had knowledge of the Florida proceedings, the Florida court did not find those statements persuasive, instead citing Debtor's own deposition testimony where he accepted that he <u>did</u> have knowledge of the claims against him in Florida[8].

---

[1] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 4.
[2] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 4.
[3] See Belgium's Response to Debtor's Motion to Vacate in Florida with Motion for Sanctions for Debtor's Perjury at Ex 1; see also the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 5.
[4] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 6; see also Belgium's Default Judgement against the Debtor at Ex 2.
[5] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 7.
[6] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 10.
[7] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 18; see also the Order Denying Debtor's Motion to Vacate from the 11th Circuit Court in Florida at Ex 11. Debtor's motion to vacate in California was also denied on 15 July 2021.
[8] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 18; see also Ex 11, where the court states on page 11 of its ruling: *"Here, El Mallakh [Debtor] had repeated*

MOTION TO DISMISS

Following the denial of his motion to vacate in Florida, Debtor put forward several new arguments (largely based on factual issues) as to why the decision should be revisited. These motions were summarily dismissed by the Florida courts[9].

Notably, when considering whether it was appropriate for Debtor to post an undertaking to secure Belgium's judgment, Debtor's counsel indicated that the Rockefeller Property was Debtor's key asset and would not change in character[10].

Despite Debtor's obstructive efforts, Belgium was able to obtain an Order for the Sale of the Rockefeller Property during a hearing held on 21 April 2022[11]. Debtor stated that he met with specialist bankruptcy lawyers from the law firm of Heston & Heston in April 2022[12]. Presumably, he would have informed them of the judgment against him which was being actively enforced and exceeded $4.2 million.

Although this judgement alone would have made Debtor ineligible for Ch 13 of the bankruptcy code, Debtor filed a bankruptcy action under Ch 13 on the eve of the Rockefeller Property sale. He erroneously stated in his filing that his liabilities did not exceed $50,000.

Within two weeks of filing the Ch 13, Debtor's lawyers at Heston & Heston filed a voluntary dismissal. It is clear these lawyers did not view a Ch 11 action as feasible at that time.

The bad faith character of this previous filing has been addressed in previous submissions, notably in the request for sanctions filed in the Ch 13 action. During the hearing on

---

*notice of this lawsuit and opportunity to be heard, over and over again for years. El Mallakh recently testified that he was specifically aware of this lawsuit as of October 9, 2019, and specifically aware that Belgium was attempting service of summons upon him at that time".*

[9] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 19; see also Ex 12.

[10] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 20.

[11] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 21; see also the Orange County Superior Court's Order to sell the Rockefeller Property at Ex 13. The hearing on this order was held on 21 April 2022 and the order was filed by the clerk on 10 May 2022.

[12] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 23; see also the Declaration of the Debtor filed in the Ch 13 proceedings at Ex 15.

that motion in September 2022, this court noted that it expected Debtor and his attorneys to

proceed with the utmost good faith going forward.

### B. Background of this Ch 11 case.

After the Ch 13 case was withdrawn, Belgium worked to schedule another sale of the

Rockefeller Property, which was arranged to be held in September 2022. Debtor filed the present

action under Ch 11 of the Bankruptcy Code on the eve of the second scheduled sale.

Debtor has retained new lawyers employed by the Law Offices of Michael Berger to file

his Ch 11 case. Notably, Mr Berger has previously represented at least 153 Ch 11 debtors and he

prepared a Ch 11 plan and obtained an order confirming the plan in 54 of those cases [13]. In other

words, Debtor's initial bankruptcy counsel did not act in a Ch 11 case for him. He then retained

new counsel who has only obtained an order confirming a Ch 11 plan in **35% of the Ch 11 cases**

where he represented Debtors.

Debtor filed a motion to extend the automatic stay which was heard by this court on 18

October 2022. The court observed that the circumstances of this filing appear rather dubious and

that it expects Debtor to make progress that demonstrates the good faith nature of its filing within

short order—noting that a motion for dismissal or conversion might get granted without more

explanation. This point was reiterated at a status conference held on 26 October 2022, where the

court noted that it expected substantial progress to be made by the next status conference on 7

December 2022.

Despite this court's repeated extensions of the benefit of the doubt, the key piece of

progress which has taken place since 26 October 2022 has been the submission of a lien stripping

application supported by what appears to be fraudulent evidence from the Debtor regarding his

---

[13] See the Declaration of Michael Berger filed on 27 Sept 2022 in connection with the Motion for an order
authorizing debtor in possession to employ bankruptcy counsel.

residency presented at the §341(a) meetings of creditors held on 28 October 2022 and 10 November 2022.

The Objection to HS Exemption details Debtor's wholly contradictory and transparently self-serving evidence as to his residency. A summary is provided below for the court's benefit:

Debtor put forward his ("**Service of Process Story**") in Feb/Mar 2021 while he was arguing that service of process at the Rockefeller Property was deficient. It was supported by written and oral testimony from Debtor & his sister—and sworn to under penalty of perjury. It can be summarized as:

- From 1 Nov 2016 until the date the evidence was given (Feb/Mar 2021), Debtor resided exclusively in the apartment he rented at 525 Broadway, Santa Monica, CA, 90410 (the "**Santa Monica Property**") and almost never went to the Rockefeller Property or saw his sister. His sister lived in the Rockefeller Property with her teenage son and no one else, beginning on 1 January 2017.

Now, as the Debtor is presently arguing that he qualifies for the automatic HS exemption, he has advanced what can be referred to as the ("**HS Exemption Story**"), which Debtor has told (and retold) at multiple §341(a) creditor meetings under penalty of perjury. It can be summarized as:

- Debtor always resided in the Rockefeller Property since the time he purchased the townhouse in 2013. The Santa Monica Property was only a place that he occasionally stayed overnight while he was working on a startup venture based in Los Angeles. He stayed in the Rockefeller Property most days, unless he had to stay overnight in Los Angeles to avoid lengthy commutes. His sister did not reside in the Rockefeller Property until late-2018 (despite there being a lease

agreement which was signed on 1 January 2017) and she lived in the townhouse

with her teenage son and adult brother/landlord (Debtor).

This contradictory evidence is necessary to support Debtor's claimed Homestead

Exemption and the lien stripping application which is based on the same—because Debtor

cannot avoid Belgium's lien if he is not entitled to claim a HS Exemption and the Orange County

Superior Court has already found that the property is not a homestead[14].

Belgium intends to raise several defenses against lien stripping in subsequent

submissions. Nonetheless, the excess value in Rockefeller Property after taking account of the

HS Exemption still amounts to at least $493,600[15]. This means Debtor must still propose an

extensive plan which addresses all the secured creditors, particularly Belgium, regardless of the

outcome of its lien stripping application and the homestead issue (see further below).

Notwithstanding Debtor's responsibility to make progress on this bankruptcy case and

demonstrate good faith, Debtor filed a status report on 23 November 2022 [see Docket No 60]

which did not include any details of such a plan or otherwise explain how this case has been

brought in good faith.

As will be expanded upon below, Debtor clearly has no viable path to proposing an

acceptable plan and is merely using this bankruptcy process as a bad faith mechanism to delay

Belgium's enforcement in the hopes that it may somehow forestall Belgium's limited recovery

for the harms he has caused.

---

[14] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 21; see also the Orange County Superior Court's Order to sell the Rockefeller Property at Ex 13
[15] $493,600 being the value of the Rockefeller Property ($1,120,000) minus the maximum claimed HS Exemption amount ($626,400). We should note that Belgium has also contested the amount of the HS Exemption, in addition to Debtor's entitlement to claim the same.

MOTION TO DISMISS

1  **III.** **This case was filed in bad faith and should be dismissed for cause pursuant to 11**

2  **U.S.C. § 1112(b).**

3      The Court has wide discretion in determining whether cause exists under § 1112(b). *In re*

4  *Consolidated Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) (citing *In re*

5  *Greenfield Drive Storage Park*, 207 B.R. 913, 916 (9th Cir. BAP 1997)), aff'd 264, F.3d 803

6  (9th Cir. 2001). "*The court will be able to consider other factors as they arise, and to use its*

7  *equitable powers to reach an appropriate result in individual cases*." Id. (quotation omitted).

8      If cause is established, the Court should dismiss the case if it is in the best interest of the

9  creditors and the estate. See *Nelson v. Meyer* (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP

10  2006) ("*[O]nce a determination of 'cause' has been made, a choice must be made between*

11  *conversion and dismissal based on the best interests of creditors and the estate.*") (citation

12  omitted); *In re Erkins,* 253 B.R. 470, 474 (Bankr. D. Idaho 2000) ("*The decision whether to*

13  *dismiss a Chapter 11 case as a bad faith filing is subject to the **discretion of the bankruptcy***

14  ***court**.*") (emphasis added).

15      Bankruptcy Code § 1112(b)(4) specifically states that the term "cause" includes:

16      *(A) substantial or continuing loss to or diminution of the estate and the absence of a*

17          *reasonable likelihood of rehabilitation;*

18      ...

19      *(M)  inability to effectuate substantial consummation of a confirmed plan*;

20      The Courts have long acknowledged that a case filed in bad faith should be dismissed

21  under §1112(b). Below, we will detail the bases for dismissal due to cause, including the bad

22  faith nature of the filing.

23      If the motion is predicated on bad faith, *"[t]he moving party has the initial burden of*

24  *making a prima facie case to support its allegations of bad faith.*" *In re Avalon Hotel Partners*,

25  LLC, 302 B.R. 377, 384 (Bankr. D. Or. 2003). But *"[o]nce such a showing has been made, the*

26  *burden shifts to the debtor to establish that its chapter 11 case was filed in good faith.*" Id.; see

27  also *Marshall v. Marshall* (In Re Marshall), 721 F.3d 1032, 1048 (9th Cir. 2013); *In re*

28  *Integrated Telecom Express, Inc.,* 384 F.3d 108, 118 (3d Cir. 2004) ("*Chapter 11 bankruptcy*

*petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith, and the*

*burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith.").*

The points set out below are sufficient to shift the burden of proof to Debtor to prove his

actions are in good faith.

**A.  The bad faith character of this filing is apparent through the various**

**indicators of bad faith noted in relevant caselaw.**

Courts have listed several indicative factors for determining the presence of bad faith in

bankruptcy filings—many of which are present here. In *In re St. Paul Self Storage Ltd. Prt.*, 185

B.R. 580 (B.A.P. 9th Cir. 1995), the court set out a list of factors that indicate bad faith. Those

factors include:

(i)    the debtor having only minimal assets;

(ii)   the debtor having no ongoing business to reorganize;

(iii)  the absence of any unsecured creditors;

(iv)   the debtor having no appreciable cash flow or sources of income to sustain a plan

       of reorganization or to make adequate protection payments; and

(v)    the case essentially being a two-party dispute capable of prompt adjudication in

       non-bankruptcy court. 185 B.R. at 582-83.

In this case, (i) Debtor has only one main asset (the Rockefeller Property); (ii) he has no

ongoing business to reorganize; (iii) he only has about $1,000 in unsecured debt through a credit

card company; (iv) Debtor is unemployed and his only source of revenue would require his sister

to pay above market rates indefinitely; and (v) this is essentially an extension of the enforcement

case between Belgium and Debtor (where Belgium has already received a sale order for the

Debtor's only substantial asset).

Belgium also wishes to incorporate the indicators of bad faith raised in its Opposition to

the Motion to Extend Stay [Docket No 25], which can be summarized as: (i) Debtor erroneously

implied that previous counsel was incompetent to explain a previous bad faith filing; (ii)

Debtor's financial circumstances have not changed since the previous Ch 13 filing; (iii);

Debtor's filings fail to accurately disclose the source & nature of his funds and include wholly-

unrealistic expectations; and (iv) his statements and schedules show that he has no intention of putting forward an appropriate reorganization plan or to otherwise engage in the Ch 11 bankruptcy process in good faith (see further below).

**B. The bad faith character of this filing is apparent from the Debtor's inability to propose a feasible reorganization plan.**

Debtor's inability to propose a feasible reorganization plan absent a sale of the Rockefeller Property is a key indicator of the bad faith nature of its filing and an enumerated basis for dismissal for cause under §1112(b)(4)(A) & (M).

Given the circumstances and issues raised, Debtor should be responsible for outlining some type of viable path towards a reorganization plan. However, Debtor has utterly failed to propose any plan that might be feasible. This is plainly due to the fact that there is no hope he can propose a suitable reorganization plan given the nature of his assets & liabilities.

As an initial point of departure, Debtor's counsel has only obtained orders confirming Ch 11 plans in 35% of his cases. This means that, all things being equal, there would be only a 35% chance that any Debtor he represents proposes a feasible plan. As will be detailed below, there is virtually zero chance that this Debtor will in fact propose a feasible reorganization plan.

As detailed in Belgium's Objection to the HS Exemption, Debtor's claim for a homestead exemption is based on contradictory, self-serving evidence. All available objective evidence points to the Debtor being unable to claim the HS Exemption. Belgium also intends to set out its detailed Opposition to Debtor's Motion to avoid its lien in separate submissions. But if we nonetheless presume that Debtor is somehow successful in claiming a HS Exemption—and successfully argues that Belgium's lien should be avoided under §522(f)—then the Rockefeller Property would still have at least **$493,600** of excess value available to satisfy secured creditors. A breakdown of this, as well as details of the secured creditors, is set out below based on Debtor's own Application to avoid Belgium's lien:

| Rockefeller Property Appraised Value | $1,120,000 |
|---|---|
| Requested HS Exemption amount | ($626,400) |
| **Remaining Value in Rockefeller Property for Secured Creditors** | **$493,600** |

| Secured Creditor | Lien Recording Date | Original Lien Amount | Current Lien Amount[16] |
|---|---|---|---|
| Freedom Mortgage | 29 Oct 2013 | $234,000 | $243,971 |
| Belgium | 9 Nov 2020 | $4,345,250 | $4,345,250 |
| Townes (HOA) | 9 Feb 2022 | $3,506 | $7,276 |
| Central Park West (HOA) | 16 May 2022 | $3,667 | $2,878 |

According to what's commonly known as the "best interests test," under §1129(a)(7), Debtor must propose a plan where Belgium (and other creditors) receives a value that is not less than if the debtor were liquidated under Ch 7. There is no way that Debtor could propose such a plan.

Debtor's current plan proposal envisions that the liens held by Debtor's mortgage company and Homeowner's Associations be paid in full, despite the fact that the HOA liens were recorded well after Belgium's. Notwithstanding the objections Belgium might have to these liens being paid in full while Belgium's is severely impaired, there would still be substantial value in the Rockefeller Property. Therefore, Debtor must still explain how it intends to address Belgium's secured and unsecured claims against it given the value of the Rockefeller Property.

---

[16] Belgium notes that the changes in lien amount may present cause for challenge/reduction which may be taken up in subsequent submissions.

MOTION TO DISMISS

Page. 13

1

2          Debtor's sole source of income is the rental payments paid by his sister supposedly

3   amounting to $4,000/month. Although we should note that the current lease only requires rental

4   payments of $3,000/month and Debtor has not provided any evidence as to when this was

5   increased to $4,000/month despite this having been requested at the §341 meeting held on 10

6   November 2022 and specifically raised as a ground for indicating bad faith in Belgium's

7   Opposition to Extending stay[17].

8          Perhaps, the court takes the Debtor at his word and accepts that he is being consistently

9   paid $4,000/month in rent from his sister—and accepts that this is the correct market rate for

10  three-bedroom townhouses in that area. This would still mean that his sister is paying the market

11  rate to share a townhouse with her son and her adult brother/landlord. It is unreasonable to

12  expect that this situation would continue indefinitely as it's much more likely his sister would

13  find a new townhouse which she does not share with her landlord.

14

15         We must also note that Debtor's schedules indicate his expenses total $3,503/month. This

16  leaves very little room for funds to devote to a reorganization plan, or for funds to address

17  random contingencies that naturally arise in a person's life. We must also note that this is a

18  relatively low expense amount and we have no idea whether this is reflective of Debtor's actual

19  expenses in the past.

20         Debtor has been unemployed for over five years. He has suggested that he may soon have

21  an interview for a role with a startup company owned by one of his family members in Egypt[18].

22  However, there is no basis to suspect that he will be awarded the job; will retain the job; or will

23  generate sufficient cashflow to sustain any type of acceptable reorganization plan.

24

25

26

27  _____

    [17] See the Declaration of Patrick Miller filed in support of the Motion to Dismiss at paragraphs 4-5. See
28  also Belgium's Opposition to the Motion to Extend Stay at page 5, lines 3-15 [Docket No 25].
    [18] See the Declaration of Patrick Miller filed in support of the Motion to Dismiss at paragraph 6.

Debtor makes no effort to explain how it might propose a plan where Belgium recovers anywhere near the value it could through liquidation of the Rockefeller Property. This is plainly because such a plan is not feasible. We explain below the actual purpose of this Ch 11 filing since it is clearly not to reorganize Debtor's 'business' for the benefit of his creditors.

### C.  The bad faith character of this filing is also apparent from the improper purpose of the filing.

It was initially puzzling why an unemployed, individual debtor, with only one asset and one substantial creditor, decided to file for bankruptcy under Ch 13—and then again under Ch 11. But it is now apparent that the purpose of these filings was so that he can wrongfully attempt to claim a HS Exemption under the Rockefeller Property and/or to delay Belgium's enforcement while he attempts to overturn the FL Judgement.

As set out in Belgium's Objection to the HS Exemption, the Orange County Superior Court ruled that that the Rockefeller Property was not a homestead and that it should be sold under the provisions of the California Civil Procedure Code related to non-homestead properties[19].

The primary reason for this finding was that the Debtor stated numerous times in sworn testimony (both oral & written) that he did not reside in the Rockefeller Property—and had not resided there for many years[20].

Debtor has filed the present case under Ch 11 because it allows him to maintain ownership of the Rockefeller Property while he proceeds to submit testimony which directly contradicts his (and his sister's) previous testimony so that he can wrongfully claim a HS Exemption worth $626,400.

---

[19] See Section VII of Belgium's Objection to the HS Exemption.
[20] See Section VII of Belgium's Objection to the HS Exemption.

It appears that Debtor's other purpose is to delay Belgium's enforcement in the hopes that its resources will be exhausted or that he will somehow overturn the FL Judgement.

None of the above are acceptable uses of the Bankruptcy Code. The Ninth Circuit has made clear that a court may dismiss a Ch 11 case for bad faith when the debtor's purpose for filing was to delay collection of a judgment. See *In re Marsch*, 36 F.3d at 828 (upholding bankruptcy court's determination that Ch 11 petition, which was filed to delay collection of a $2.6 million judgment and avoid posting an appeal bond, was done in bad faith); see also *Integrated Telecom Express*, 384 F.3d at 128 ("*Indeed, if there is a 'classic' bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay to avoid posting an appeal bond in another court.*"); *In re Karum Group, Inc*., 66 B.R. 436, 438 (Bankr. W.D. Wash. 1986) ("*The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating.*").

Debtor's "subjective intent" is not decisive when considering whether the petition was filed in good faith. *Marsch v. Marsch* (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994). Rather, the good faith inquiry focuses on the manifest purpose of the petition filing and whether the debtor is seeking to achieve "*objectives outside the legitimate scope of the bankruptcy laws.*" Id. In other words, the good faith standard asks the court to determine "*whether [the] debtor is **attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis**.*" Id. (citing In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)) (emphasis added).

### D. Dismissal for cause is also warranted due to the diminution of value in the Rockefeller Property.

As noted above, a separate basis for dismissal under §1112(b) is a "substantial or continuing loss to or diminution of the estate…". This is relevant to the instant matter because

Belgium's counsel obtained an estimate for the sale of the Rockefeller Property earlier this year which estimated a sale price around $1.2 million[21]. However, the actions taken to raise interest rates by the Federal Reserve and the resulting downturn in the housing market has already reduced this estimate by nearly $100k based on Debtor's own appraisal. Belgium worries that further unnecessary delay to entertain Debtor's bad faith filing will result in further diminution of value. Importantly, Belgium has already waited over 2 years since its default judgment was entered in California.

With respect to the mismanagement of the Rockefeller Property, this is apparent from Debtor's failure to pay his mortgage or homeowner's association fees. He confirmed during the §341 meeting that he had not made a payment towards the mortgage for the Rockefeller Property since February 2020[22]. His failure to pay homeowner's association fees resulted in the liens of $3,506 & $3,667, which were recorded on 9 February & 16 May 2022, respectively[23].

Debtor's failure to pay his mortgage and HOA fees, together with the substantial delay due to stalling tactics, has already cost Belgium over six figures of recovery. This is under circumstances where it is already highly unlikely to recover the full extent of the damages suffered due to Debtor's misconduct, which amounts to over $4.2 million (without factoring interest & legal costs).

### E.  Dismissal for cause is in the best interests of the creditors.

Debtor has not indicated how his potential 'plan' might be beneficial to any of his creditors. He has not addressed Belgium's claim at all—which is quite telling. With respect to the other lienholders, he would be asking them to hope that he would make a complete reversal and consistently make payments each month despite his past behavior and extremely precarious

---

[21] See the Declaration of Patrick Miller filed in support of the Motion to Dismiss at paragraph 8.
[22] See the Declaration of Patrick Miller filed in support of the Motion to Dismiss at paragraph 7
[23] See the table above and page 2 of Debtor's Motion to Avoid Belgium's Lien.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

financials (which are themselves based on a tenuous reliance on his sister's continued rental of the subject property).

If the case were dismissed with a bar to further filing, Belgium would promptly seek to complete the sale which was ordered by the Orange County Superior Court. The order for sale of the Rockefeller Property states that the property is to be "*sold in the manner provided for under Code of Civil Procedures Sections 701.510- 701.680*"[24]. Therefore, any superior lienholders (particularly the mortgage holder) would not be impaired by this sale.

In fact, the mortgage holder and homeowner's association would arguably be in better position once the sale is completed and a reliable, paying owner can be found for the Rockefeller Property.

Additionally, at an emergency ex parte hearing just before the sale was to take place in July 2022, the court ordered that the proceeds of the Rockefeller Property sale be held in Belgium's counsel's client trust account until the court makes a further order that such funds can be released[25]. This provides an extra layer of comfort that a court will confirm the distribution of proceeds and address any creditors that might otherwise have a claim.

### IV. This Dismissal should include sanctions which prohibit Debtor from filing a new bankruptcy case for at least 180 days.

As noted in Belgium's motion for sanctions in the previously filed Ch 13 case, 11 U.S.C. § 349 (a) and 11 U.S.C. § 109(g) allow bankruptcy courts to issue remedial orders when granting a debtor's 11 U.S.C. § 1307(b) motion to dismiss to address bad faith or abuse of the bankruptcy process by the debtor. *In re Minogue,* 632 B.R. 287, 293-294 (Bankr. D.S.C. 2021).

Given the overwhelming evidence of bad faith, Belgium respectfully requests that the present dismissal order include a condition barring Debtor further bankruptcy filings for at least

---

[24] See the Declaration of Patrick Miller in support of the Objection to HS Exemption at paragraph 21; see also the Orange County Superior Court's Order to sell the Rockefeller Property at Ex 13.
[25] See Ex 10 from Belgium's Opposition to the Motion to Extend Stay

MOTION TO DISMISS

180 days so as to ensure that Debtor does not make another wrongful filing in attempt to obstruct further enforcement efforts.

**V.  Alternatively, if the Court chooses not to dismiss this case, it should be converted to Ch 7.**

As explained above, the lienholders would be better-served if this case were simply dismissed rather than converted to Ch 7. This would avoid all of the unnecessary costs & delay associated with such a conversion since the sale has already been ordered by Orange County Superior Court.

Belgium is the only meaningful creditor in this action since its lien dwarfs those of Debtor's mortgage holder and homeowner's associations. It has waited years to obtain redress for the extensive damages caused due to Debtor's misconduct. This has also caused it to incur substantial legal costs, which it will likely never recover.

In the past few months, Debtor has twice filed bankruptcy in bad faith and has now put forward evidence on his residency which wholly-contradicts his previous sworn testimony. No further indulgence of Debtor's bad faith obstruction should be tolerated.

However, if the Court declines to dismiss the case, then it should be converted to Ch 7 pursuant to 11 U.S.C. § 1112(b) (mandating either dismissal or conversion once cause is established); see also In re Nelson, 343 B.R. at 675 (once it is determined that cause exists, the Court must choose between dismissal and conversion, depending on what is in the best interests of the creditors)."

**VI.    Conclusion.**

Debtor has been granted extensive indulgences by courts in Florida and California, despite the substantial weight of evidence demonstrating misconduct, dishonesty, and bad faith.

After this court implored Debtor to explain his case and demonstrate good faith—his response was to submit nothing in the 23 November 2022 status report and put forward contradictory evidence regarding his residency. He has shown time and again that he will not act in good faith.

The submissions above show how there is cause for dismissal due to bad faith and the diminution of value in the property. The key indicators of bad faith include the inability to propose a feasible reorganization plan, the improper motives for the filing, and the inconsistent evidence presented regarding his residency.

The best interests of the creditors would be served by a dismissal of this case with a bar to subsequent refiling for at least 180 days. Belgium respectfully requests that this court issue such an order and allow it to proceed with obtaining some limited redress.

Dated:          30 Nov 2022                                    Impact Advocates APC

By_____
        Patrick Miller
        Attorney for
        Judgement Creditor
        Belgium Investments

1  Patrick Miller, Esq., SBN 301819
2  Impact Advocates APC
   121 S. Oak Ave.
3  Pasadena, CA 91107
   213-364-7581
4  Patrick.miller@impactadvocateslaw.com

5  Attorney for the Creditor
   Belgium Investments 960 Bay Dr,
6  LLC, a California Corp

7
                **UNITED STATES BANKRUPTCY COURT**
8
                **CENTRAL DISTRICT OF CALIFORNIA**
9

10                                    )  Case No.: 8:22-bk-11605-TA
                                      )  Ch 11
11                                    )
                                      )  **DECLARATION OF PATRICK MILLER**
12                                    )  **IN SUPPORT OF THE MOTION TO**
                                      )  **DISMISS AND/OR CONVERT CASE TO**
13  IN RE BASSEM VICTOR EL MALLAKH    )  **CH 7**
                                      )
14                                    )
                                      )  _____
15                                    )
                                      )
16                                    )  **Hearing Date:  21 December 2023**
                                      )  **Hearing Time: 10:00 AM**
17                                    )  **Dept.: 5B/Virtual**
                                      )
18                                    )
                                      )
19                                    )

20                          DECLARATION

21  1.  I, Patrick Miller, am counsel for the Creditor Belgium Investments 960 Bay Dr, LLC, a

22      California Corp. ("**Belgium**"). I have read the Motion to Dismiss and/or Convert the

23      case to Ch 7 and know the contents thereof. The same is true of my own knowledge,

24      except as those matters that are stated on information and belief, and as to these matters,

25      I believe them to be true.

26  2.  I am over the age of 18 years and am fully familiar with the facts and circumstances

27      surrounding my declaration and could and would competently testify thereto if called

28      upon to do so.

3. I was engaged as counsel for the Defendant in April 2020 in order to enforce the judgement obtained in the Florida courts against the Debtor, Bassem Essam Victor El Mallakh. I have now been engaged in this bankruptcy action.

4. I received an audio recording of the first 341 meeting on 9 Nov 2022 through an email from the US Trustee Nancy Goldenberg. I attended the second 341 meeting on 10 Nov 2022 and received an audio recording of this meeting the same day from the US Trustee. I have listened to the recordings of both 341 meetings multiple times.

5. I remember discussing, and have confirmed through the audio recording of the 341 meeting on 10 Nov 2022 at around 4-5 minutes, that Debtor stated he could not remember when he increased the rent on the Rockefeller Property and Debtor's counsel stated that he would confirm the date when the rent on the Rockefeller Property was increased to $3,000/month. He indicated he would circulate this information of the US Trustee and Belgium's counsel.

6. I also remember discussing, and have confirmed through the audio recording of the 341 meeting on 10 Nov 2022 at around 16-18 minutes, that Debtor mentioned he may be interviewing for a job with a startup company owned by a family member in Egypt. But he was not certain when this interview might take place or what the expected salary might be.

7. I also remember discussing, and have confirmed through the audio recording of the 341 meeting on 10 Nov 2022 at around 29-30 minutes, that Debtor confirmed he has not made payments towards the Rockefeller Property mortgage since February 2022.

8. I was involved in preparing for the sale of the Rockefeller Property in early/mid-2022 and spoke with a real estate agent during this time about the potential sale price for the Rockefeller Property. He originally indicated that the Rockefeller Property could achieve a sale price around $1,200,000. However, he later indicated that this price may no longer be achievable.

9.  I declare under penalty of perjury that the foregoing is true and correct.


Date: 11/30/22                                                          .
                                                     _____

                                                            Patrick Miller

PROOF OF ELECTRONIC SERVICE

I am employed in the County of LOS ANGELES, State of California. I am over the age of 18 and not a party to the within action. My business address is, 121 S Oak Ave, Pasadena, CA 91107.

A true and correct copy of the foregoing described as **OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION AND DECLARATION OF PATRICK MILLER IN SUPPORT OF THE SAME** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d) (through electronic filing); and **(b)** in the manner stated below:

 **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 11/30/22, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

---

Michael Jay Berger on behalf of Debtor Bassem Victor El Mallakh
michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Chad L Butler on behalf of Interested Party Courtesy NEF
caecf@tblaw.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
nancy.goldenberg@usdoj.gov

---

Benjamin Heston on behalf of Interested Party Benjamin Heston

bhestonecf@gmail.com,

benheston@recap.email,NexusBankruptcy@jubileebk.net


Patrick Miller on behalf of Creditor Belgium Investments 960 Bay Dr,

LLC A California Corp.

patrick.miller@impactadvocateslaw.com


Randall P Mroczynski on behalf of Creditor TD Bank, N.A., successor in

interest to TD Auto Finance LLC

randym@cookseylaw.com


United States Trustee (SA)

ustpregion16.sa.ecf@usdoj.gov

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 11/30/2022, at Pasadena, California.

Patrick Miller

PATRICK MILLER
Email: Patrick.miller@pmillerlegal.com
P. Miller Legal Services
121 S Oak Ave
Pasadena, CA 91107
Telephone:      213-364-7581

Attorney for Judgement Creditor
BELGIUM INVESTMENTS 960 BAY DR,
LLC A CALIFORNIA CORP.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| In re Bassem Victor El Mallakh | Case No 8:22-bk-11605-TA |
|---|---|

Chapter 11

**PROPOSED ORDER**

**Date**: 21 December 2022
**Time**: 10am
**Crtrm**: Virtual/5B

The motion requesting an order for dismissal with a bar to refiling for 180 days and/or conversion to Ch 7 (the "**Motion for dismissal**"), filed by creditor Belgium Investments 960 Bay Dr, LLC, a California Corp ("**Belgium**") came on regularly for hearing by the Court on 21 December 2022. Debtor appeared by counsel Michael Berger; Belgium appeared by counsel Patrick Miller.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

IT IS ORDERED that the Chapter 11 case filed by Debtor on 19 September 2022 be dismissed without prejudice.

IT IS FURTHER ORDERED that the Debtor, or any successors or assignees in interest, is barred

from filing any further bankruptcy cases until at least 180 days has passed from the date of this

order.

Date: _____          _____

HONORABLE JUDGE THEODOR ALBERT