PATRICK MILLER
Email: Patrick.miller@pmillerlegal.com
P. Miller Legal Services
121 S Oak Ave
Pasadena, CA 91107
Telephone:    213-364-7581

Attorney for Judgement Creditor
BELGIUM INVESTMENTS 960 BAY DR,
LLC A CALIFORNIA CORP.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Bassem Essam El Mallakh | Case No 8:22-bk-11605-TA<br>Chapter 11<br><br>**SUBMISSIONS IN SUPPORT OF MOTIONS TO DISMISS FILED BY BELGIUM & US TRUSTEE**<br><br>**Date**: 15 March 2023<br>**Time**: 10am<br>**Crtrm**: Virtual/5B |

**TO THE HONORABLE THEODOR ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND HIS ATTORNEYS OF RECORD, AND ALL PARTIES IN INTEREST:**

Belgium Investments 960 Bay Dr, LLC, a California Corp. ("**Belgium**") hereby sets out these Submissions in Support of its Motion to Dismiss filed on 30 November 2022 [Docket #63]; as well as the Motion to Dismiss and/or Convert the Case to Ch 7 filed by the US Trustee on 17 February 2023 [Docket #121].

These Submissions have been provided to assist the Court in considering these motions and to provide further details on the recent conduct of the Debtor in this case.

Dated:     8 March 2023

Patrick Miller – Impact Advocates APC
Attorney for Creditor Belgium Investments

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. Introduction.**

These Submissions are intended to: (i) provide support for why this case should be dismissed since it has now become undeniable that it was filed in bad faith; (ii) explain why dismissal is in the best interest of the creditors; and (iii) provide the Court with an update as to Debtor's most recent conduct following the 15 February 2023 hearing to demonstrate his continued refusal to participate in these proceedings in good faith despite the numerous opportunities granted to him.

**II. Debtor's recent conduct conclusively shows that he does not intend to participate in these proceedings in good faith.**

During the hearing on 15 February 2023, Debtor's counsel explained that he hoped he (Debtor) would begin cooperating with his counsel and participating in these proceedings in good faith. On 16 February 2023, Belgium's counsel followed up with Debtor's counsel to schedule depositions in advance of the evidentiary hearing related to the homestead matter. No response was received, so Belgium's counsel followed up with emails to Debtor's counsel on 20 and 24 February 2023. At this point, Debtor's counsel had not yet dismissed its motion to withdraw from the case. Towards the end of the day on 24 February 2023, Debtor's counsel emailed to confirm that it planned to provide a response on Monday, 27 February 2023.

On 27 February 2023, Debtor's counsel spoke with Belgium's counsel and she explained that Debtor had not yet confirmed who would be the individuals providing evidence in support of his contention of having resided at the Rockefeller Property. Debtor's counsel could also not confirm when Debtor (and his yet unnamed witnesses) would be available for depositions.

Belgium's counsel followed up with Debtor's counsel on 28 February 2023, yet Debtor's counsel could still not provide this information as she explained it had not yet been provided to

her. She stated that she would provide the information on the witnesses and their availability for the depositions as soon as possible.

Belgium's counsel followed up with Debtor's counsel again on 1 March 2023. Debtor's counsel responded that Debtor had still not yet provided information as to who his witnesses would be and/or when they would be available to participate in depositions. She indicated that she hoped the depositions could be conducted on 15 March 2023 (after the hearing on the motion to dismiss).

For better context, Belgium's counsel originally contacted Debtor's counsel regarding these depositions on 20 January 2023 and the hearing on the homestead matter is scheduled for 23 March 2023. Belgium's counsel responded later that day, stating:

> *That's very disappointing that the Debtor has not yet told you the names of his witness [sic] or made arrangements for them to be available, particularly as this has presumably been on his radar since I contacted your office earlier this year. I suppose we cannot force him to provide the information but this doesn't seem to indicate he's now begun to cooperate. I trust you'll send through this information as soon as it's been received so that we can begin making proper arrangements.*
>
> *I had planned to conduct the depositions before the declarations were filed and with enough time ahead of the evidentiary hearing. I worry that the 15th [of March] is too late.*
>
> *Is there a plan/timeline for when the declarations will be filed? And do you know whether the witnesses will be available on any other day before the 15th?*

No response to this email has been received as of the date of this filing. This means that the hearing is two weeks away and Belgium still does not have confirmation when the depositions will take place; who will be the witnesses; and/or when they intend to file declarations. Belgium cannot even issue subpoenas to compel depositions, since Debtor has not provided his attorneys with their names and contact information.

Under normal circumstances, Belgium might request some type of sanctions from Debtor, but it's clear Debtor has no means of fully-satisfying Belgium's current judgement. Therefore, a sanctions award would only represent a Pyrrhic victory. The sole remaining means of sanctioning Debtor at this point must be dismissal along with a prohibition against future bankruptcy filings.

### III. Dismissal is in the best interest of the creditors because it avoids the costs & delay associated with conversion and does not prejudice any creditors.

Dismissal (rather than conversion to Ch 7) is more appropriate in this case because it is in the best interest of the creditors. Belgium is the only relevant creditor in this case and it has continually suggested that dismissal is in its best interests.

Belgium is the only relevant creditor because the other creditors are: (i) the mortgage holder over the Rockefeller Property which will not be prejudiced by dismissal (see further below); (ii) Debtor's homeowner's associations, whose liens (which are subordinate to Belgium's) total $10,146 and will be avoided by Debtor under Section 522(f); and (iii) Debtor's credit card provider that has an unsecured claim just above $1,000.

Belgium has a claim against Debtor for nearly $5million, which is partially secured against the Debtor's sole asset—the Rockefeller Property. If the case were dismissed with a bar to further filing, Belgium would promptly seek to complete the sheriff's sale which was ordered by the Orange County Superior Court in May 2022. Belgium has already borne nearly all of the costs of having the sheriff's sale ordered and arranged—it would need only inform the sheriff of the bankruptcy dismissal and the sale would be scheduled in a matter of weeks.

There is no reason to incur the time and costs associated with a conversion to Ch 7. A trustee, and the associated fees, would not be necessary to schedule a sale, liquidate the estate or

to protect the rights of other creditors. There is no estate to administer or creditors to protect—there is only the Rockefeller Property and Belgium's order for sale of the same.

Superior lienholders, ie the mortgage holder, will not be impaired by the sheriff's sale because the order for sale requires the property to be "sold in the manner provided for under Code of Civil Procedures Sections 701.510-701.680". This Section confirms that superior lienholders will not be impaired by the sale, ie the purchaser at the sheriff's sale will take the Rockefeller Property subject to the mortgage holder's lien. In fact, the mortgage holder would arguably be in better position once the sale is completed and a reliable, paying owner can be found for the Rockefeller Property.

The mortgage holder's absence from these proceedings further demonstrates that it would not be prejudiced by dismissal.

Conversion to Ch 7 would create administrative and legal costs that would reduce Belgium's recovery substantially, under circumstances where it already expects to recover much less than it was awarded. This court rightly noted in its Tentative Ruling dated 21 December 2022 that: "*Debtor also persuasively argues that conversion to chapter 7 would not serve the best interests of creditors (at least not yet) because a chapter 7 trustee would need to oversee the liquidation of estate assets and would charge fees and costs for doing so, which would necessarily dilute the pro rata recovery for creditors.*"

Conversion would also lead to further delay in Belgium's obtaining some limited redress under circumstances where this has already been delayed for several years. In fact, as noted at Section V of Belgium's Motion to Dismiss, the Rockefeller Property has substantially declined in value since the order for sale was issued in May 2022. Further delay risks ever further deterioration in value, in addition to the stress and costs it imposes upon Belgium.

### IV. Dismissal and sanctions against further filings is appropriate due to Debtor's bad faith.

### A. Debtor's conduct throughout shows that he never intended to participate in these proceedings in good faith.

Belgium has contended since the outset that this case was filed in bad faith and Debtor never intended to propose a suitable plan (amongst other faults). Debtor's counsel continued to suggest that a plan would somehow materialize. However, it appears now that the foundation of this plan will rest on gratuitous payments from Debtor's parents. Such a plan will never comply with §1129 (a)(7), (10) or (b)(2)(A).

This filing always appeared dubious, but this Court allowed the Debtor an opportunity to overcome those doubts. There is no longer any room for doubt – it is now wholly-apparent that Debtor filed this case as a bad faith attempt to forestall the inevitable rather than undertake a bona fide reorganization. Such bad faith must not continue.

Debtor's inability to propose a feasible reorganization plan is a key indicator of the bad faith nature of its filing and an enumerated basis for dismissal for cause under §1112(b)(4)(A) & (M). However, it is certainly not the only indicator of bad faith in this case.

Debtor's most recent conduct is but the latest evidence that he is only concerned with delaying this process in the hopes of exhausting Belgium's resources. His continued refusal to provide information concerning the identity or availability of his witnesses is most likely an attempt to extract some type of agreement to reschedule the evidentiary hearing. Additionally, he requested a 90-day extension to file a "reorganization plan" which is apparently little more than a promise that his parents will gratuitously provide all of the plan funding. This is not serious or in good faith—and certainly would not require 90 days to prepare.

He has nearly accomplished his goal of exhausting Belgium—he must not be allowed to succeed.

### B. Summary of some other key indicators of bad faith.

As a reminder, some other indicators of bad faith which have been noted throughout these proceedings include:

- Debtor's wholly-contradictory, self-serving witness evidence regarding his residency (which contradicts his evidence in previous proceedings);
- Debtor's inaccurate statements regarding his assets & liabilities which formed the basis of an illegitimate filing under Ch 13;
- the concerning evidence regarding Debtor's finances which, when taken together with the extensive damages suffered by Belgium, lead to concerns regarding the credibility of his limited financial disclosures; and
- Debtor's suggestion that its financial circumstances substantially changed between the Ch 13 and Ch 11 filings which were inaccurate and made in bad faith.

Debtor's bad faith conduct before filing bankruptcy is also demonstrative. This includes:

- the fraud & misconduct which resulted in Belgium's award of $4.255 million;
- the bad faith arguments that he lacked notice of Belgium's claim (which was contradicted by Debtor's own witness testimony);
- numerous bad faith attempts to relitigate factual issues (rather than legal issues) which were summarily dismissed; and
- Debtor's bad faith claim that an undertaking was not necessary to secure Belgium's judgement since Debtor had no access to any other funds and Belgium could enforce against the Rockefeller Property.

This conduct, when taken with Debtor's recent conduct, undeniably demonstrates an absence of good faith sufficient to warrant the dismissal and sanctions requested. Even if this Court had previously granted Debtor the benefit of the doubt and found that its conduct did not amount to bad faith—the most recent events provide further elucidation which confirms the bad faith nature of this entire filing.

**V. Conclusion.**

Dismissal, along with sanctions against further filing, is appropriate and necessary. Debtor has obstructed and delayed Belgium's recovery for years. There must be consequences for Debtor's continued misconduct which has spanned so many years and caused so much damage to Belgium. Conversion would only reward Debtor for his continued bad faith tactics.

Belgium has participated in these proceedings in good faith, while repeatedly requesting the case be dismissed so that it could enforce the sheriff's sale that it worked so hard to achieve. Whereas, Debtor has continually abused the bankruptcy process and the protections which it has afforded him. At some point, the balance of equities should favor the victim of Debtor's misconduct—and Belgium should be allowed to proceed with its attempts to obtain redress.

Dated:        8 March 2023

By_____

Patrick Miller
Impact Advocates APC
Attorney for Belgium Investments

DECLARATION OF PATRICK MILLER

I, PATRICK MILLER, declare and state as follows:

I am counsel for the Judgment Creditor Belgium Investments 960 Bay Dr, LLC, a California Corp. in the above-entitled matter.

I attended the hearing on 15 February 2023, where Debtor's counsel explained that he hoped Debtor would begin cooperating with his counsel and participating in these proceedings.

On 16 February 2023, I emailed Debtor's counsel to schedule depositions related to the homestead issue. No response was received, so I followed up with emails to Debtor's counsel on 20 and 24 February 2023.

Towards the end of the day on 24 February 2023, Debtor's counsel emailed me to confirm that it planned to provide a response the following Monday, 27 February 2023.

On 27 February 2023, Debtor's counsel spoke with me and she explained that Debtor had not yet confirmed who would be the individuals providing evidence on his behalf in support of his contention of having resided at the Rockefeller Property. Debtor's counsel could also not confirm when Debtor (and his yet unnamed witnesses) would be available for depositions.

I followed up with Debtor's counsel on 28 February 2023, yet Debtor's counsel could still not provide this information as she explained it had not yet been provided to her. She stated that she would provide the information on the witnesses and their availability for the depositions as soon as possible.

I followed up with Debtor's counsel again on 1 March 2023. Debtor's counsel responded that Debtor had still not yet provided information as to who his witnesses would be and/or when they would be available to participate in depositions. She indicated that she hoped the depositions could be conducted on 15 March 2023 (after the hearing on the motion to dismiss).

I had originally requested (via email) to conduct depositions with Debtor and his sister on 20 January 2023 and the hearing on the homestead matter is currently scheduled to take place on 23 March 2023.

I responded later that day via email, stating:

> *That's very disappointing that the Debtor has not yet told you the names of his witness or made arrangements for them to be available, particularly as this has presumably been on his radar since I contacted your office earlier this year. I suppose we cannot force him to provide the information but this doesn't seem to indicate he's now begun to cooperate. I trust you'll send through this information as soon as it's been received so that we can begin making proper arrangements.*
>
> *I had planned to conduct the depositions before the declarations were filed and with enough time ahead of the evidentiary hearing. I worry that the 15th [of March] is too late.*
>
> *Is there a plan/timeline for when the declarations will be filed? And do you know whether the witnesses will be available on any other day before the 15th?*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 8th day of March 2023 at Pasadena, California

_____

Patrick Miller