PATRICK MILLER
Email: Patrick.miller@impactadvocateslaw.com
Impact Advocates APC
121 S Oak Ave
Pasadena, CA 91107
Telephone:     213-364-7581

Attorney for Judgement Creditor
BELGIUM INVESTMENTS 960 BAY DR,
LLC A CALIFORNIA CORP.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| In re Bassem Essam El Mallakh | Case No 8:22-bk-11605-TA |
|---|---|

Chapter 11

**PRE-HEARING BRIEF FOR EVIDENTIARY HEARING ON HOMESTEAD EXEMPTION**

**Date**: 30 March 2023
**Time**: 10am
**Crtrm**: Virtual/5B

Belgium Investments 960 Bay Dr, LLC, a California Corp. ("**Belgium**") hereby sets out

its Pre-Hearing Brief to summarize its arguments in advance of the evidentiary hearing on

Debtor's entitlement to claim a homestead exemption over the property located at 116

Rockefeller Dr, Irvine, CA, 92612 (the "**Rockefeller Property**") which is scheduled to take

place on 30 March 2023

Dated:        23 March 2022

Patrick Miller – Impact Advocates APC
Attorney for Creditor Belgium Investments

# TABLE OF CONTENTS

| I | Introduction. | 3 |
|---|---|---|
| II | Debtor's evidence regarding his residency is littered with perjury, suspicious dates, and ultimately not persuasive. | 3 |
| II.A | Debtor's perjurious witness evidence is highly-compromised and unpersuasive. | 3 |
| II.B | Debtor's documentary evidence is incomplete and indicates he moved into the Rockefeller Property months after the filing date. | 9 |
| III | Objective evidence demonstrates that Debtor did not meet the residency requirements on the filing date for intent or actual occupancy. | 14 |
| III.A | The evidence indicates that Debtor did not physically reside in the subject property until months after the filing date (if ever). | 14 |
| III.B | Objective documentary evidence shows that Debtor did not have the requisite intent to reside in the subject property on the filing date. | 16 |
| IV | Res Judicata prevents Debtor from claiming the homestead exemption in the present bankruptcy proceedings. | 17 |
| V | Conclusion. | 19 |

## POINTS & AUTHORITIES

### I.  Introduction.

Debtor is unable to meet his burden of proof to claim a homestead exemption because his witness evidence is irretrievably tainted and the documentary evidence indicates that he did not meet the legal requirements for intent or actual occupancy on the filing date. If anything, the objective documentary evidence indicates the Debtor may have moved into the Rockefeller Property in January 2023 (which was months after the filing date).

These submissions summarize: (i) why Debtor's witness and documentary evidence are unpersuasive; (ii) what the objective evidence shows regarding Debtor's intent and actual residency; and (iii) why res judicata precludes Debtor from claiming a homestead exemption irrespective of any new factual findings on residency in these proceedings.

### II.  Debtor's evidence regarding his residency is littered with perjury, suspicious dates, and ultimately not persuasive.

#### A.  Debtor's perjurious witness evidence is highly-compromised and unpersuasive.

Belgium's Objection to Debtor's Claimed Homestead Exemption ("**Belgium's HS Objection**") details some of the various inconsistencies between Debtor's previous evidence on his residency and his current evidence. The HS Objection characterizes this evidence as wholly-contradictory, self-serving, and unreliable.

Following further information provided by Debtor subsequent to the HS Objection, it has become undeniable that his evidence amounts to perjury and implicates co-conspirators who may include members of the Bars in California and/or Florida. This perjury is detailed in Belgium's Motion for Sanctions due to Debtor's Perjury ("**Belgium's Motion for Perjury Sanctions**") which will be filed imminently.

Belgium incorporates those submissions by reference and will not be repeating those submissions fully here. In brief, in connection with Motions to Vacate Belgium's default judgement in California and Florida during early-2021, Debtor and his sister (Reem Hanna) made multiple statements in Declarations, depositions, and before a judge of the Florida 11th Circuit Court, to support their allegation that Debtor resided at his apartment at 525 Broadway, Santa Monica, CA, 90410 (the "**Santa Monica Property**") from late-2016 until the day they gave their evidence.

Debtor and his sister have now made several statements in Declarations and depositions claiming that Debtor resided in the Rockefeller Property from 2013 to the present. This inconsistency cannot be reconciled or explained.

Debtor's attempt at explaining this perjurious testimony began during a deposition conducted by Belgium's counsel on 15 March 2023. During this deposition, Debtor repeated his claim that he resided in the Rockefeller Property (in Irvine) since he purchased it in 2013[1]. Belgium's counsel directed Debtor to his previous testimony in a sworn Declaration where he stated: "*I've been residing full-time at my residence in Santa Monica since November 21st, 2016.*". Debtor was asked to explain this statement, and he responded: "*Yeah. That was my -- it's my civil attorney advice that he said, you know, like we need to write this declaration.*"[2].

After this deposition, Debtor and his sister have filed Declarations reiterating their claim that Debtor has resided in the Rockefeller Property since 2013. In a specious attempt to explain his admitted perjury, Debtor stated to this Court in his Declaration that: "*the questions Belgium's counsel asked me [during the previous proceedings in 2021] were in regards to whether I was served at the Rockefeller Property.*"[3]. However, this is only further evidence of Debtor's

---

[1] See page 7, line 18 to page 8, line 3 of Exhibit 8.
[2] See page 27, line 4 to page 28, line 3 of Exhibit 8.
[3] See Exhibit 10.

continued refusal to give truthful evidence before courts of law. This abuse of process strikes to the very heart of the judicial system.

Debtor's previous statements regarding residency were ostensibly used to support his allegations that (i) substitute service of process at the Rockefeller Property in 2019 & 2020 was not made at his *residence* (because he resided in Santa Monica); and (ii) he did not have knowledge of the service made upon his sister (because he rarely saw her and resided elsewhere).

Despite Debtor's recent explanation, there are numerous examples of statements made which are clearly perjurious and are not "*in regards to whether [he] was served*". A few illustrative examples are summarized below, but this Court must note that there are many more examples of perjurious statements such as these.

| Paragraphs 3-4 of Debtor's CA Declaration dated 17 Feb 2021 | Page 91 of Reem Hanna's FL Deposition dated 21 Mar 2021 | Paragraph 6 of Debtor's BK Declaration dated 21 Mar 2023 |
|---|---|---|
| I have **been residing fulltime at my residence in Santa Monica since 11/21/16.** … I have not occupied the real property located at 116 Rockefeller, Irvine CA. since 11/21/16. | Q. Okay. The [Rockefeller Property], is that your residence? A. Yes. … **Q. Does your brother, Bassem Essam El Mallakh, live there? A. No. Q. Where does he live? A. In Santa Monica.** | My **primary residence** where I live is the **Rockefeller Property** and it has been by primary residence **since I purchased it in 2013**... |

| Paragraph 6 of Reem Hanna's CA Declaration dated <u>17 Feb 2021</u> | Paragraph 3 of Reem Hanna's BK Declaration dated <u>21 Mar 2023</u> | Page 28, ln 22 to 29, ln 6 of Debtor's BK Deposition dated <u>15 March 2023</u> |
|---|---|---|
| **Bassem Essam El Mallakh is not nor ever has been a co-occupant at my residence** [the Rockefeller Property]. Since the inception of the lease Bassem Essam El Mallakh has **never-been a co-occupant.** | Since I started living at the Rockefeller Property on or about mid-2018, **Bassem has always lived at the Rockefeller Property with me there.** | Q. Okay. Was anyone living with you at the Rockefeller property in 2020? A. My sister. Q. She was your co-occupant at the time? A. She was what? **Q. She was your co-occupant at the time? A. Yeah. Roommate. Co-occupant**. |

| Page 25 of Debtor's FL Deposition dated 21 Mar 2021 | Pages 10, ln 4 to ln 18 of Debtor's BK Deposition dated 15 March 2023 |
|---|---|
| Q. Okay. Where do you reside? A. I live in Santa Monica. Q. Okay. What address? | Q. When did you sign the lease for the Santa Monica apartment? A. It was in November of 2016. Q. Okay. November of 2016. |

| A. 525 Broadway.<br><br>Q. How long have you resided there?<br><br>A. Since November 1st of 2016.<br><br>Q. **And do you essentially sleep every night there in 525 Broadway in Santa Monica?**<br><br>**A. Yes.** | So -- so you always lived in the Rockefeller house.<br><br>**How many nights did you normally sleep there [at Rockefeller]?**<br><br>**A. Most of the week.** You know, I would be working between Santa Monica and Irvine. It just depends on the week. Some weeks I would just be in like, you know, Irvine for the whole week. Some weeks I would work in Santa Monica a few days, and then, you know, some weeks I would just work, you know, maybe Monday to Thursday, and I'll just go back to my house on the weekends. It was really all depending on the traffic. |

| **Pages 36-37 of Debtor's FL Deposition dated <u>21 Mar 2021</u>** | **Pages 22, ln 5 to 23, ln 1 of Debtor's BK Deposition dated <u>15 March 2023</u>** |
| --- | --- |
| Q. Yeah. **Was there a Ring camera system[4] at 116 Rockefeller in 2020**, to your knowledge?<br><br>[Debtor's FL Counsel]: Objection.<br><br>THE WITNESS: I'm not sure, Andrew, because, as I mentioned to you, **I have not been in the Irvine house, not even once in** | Q. **Do you have any security cameras at the Rockefeller property?**<br><br>**A. I have a Ring camera.**<br><br>...<br><br>Q. Did you purchase the Ring camera system?<br><br>A. It was actually a Christmas gift from |

---

[4] Debtor's evasiveness on answering questions regarding a ring camera system at the Rockefeller Property were likely due to Debtor's spurious claims that multiple process servers were lying when they testified to having left documents with his sister at the Rockefeller Property. These encounters were likely captured on the Ring camera system and thus would provide evidence that comported with the process servers' testimony.

| 2020, not even once in 2019. I believe even when I came to Orange County in 2018 it was just for Christmas -- Christmas Eve at my cousin's house in Mission Viejo area, which is like south of Irvine. | my -- from my father.<br>Q. Do you remember when you received it?<br>A. I think it was in 2017. 2017. Christmas of 2017. It's been awhile. |
|---|---|

There are several exhibits attached to this Pre-Hearing Brief which may be referenced during the upcoming hearing to further establish Debtor's perjury. This will make clear that the evidence from Debtor, and his sister Reem Hanna, is so tainted by their perjury that it should be wholly-disregarded for the purposes of deciding Belgium's HS Objection. In fact, Debtor's perjury and continued refusal to admit the truth in these proceedings should result in harsh sanctions, including dismissal.

We must also note that Ms Hanna's failure to sit for depositions last week after having requested this several months in advance should cast further doubt on the credibility of her evidence—in addition to what appears to be her admitted perjury.

As to Debtor's father, his deposition testimony makes clear that he has little (if any) basis for providing evidence as to Debtor's residency because: (i) he lives in Egypt; (ii) his son did not tell him he was a signatory on the lease for the Santa Monica Property; (iii) he never discussed the Santa Monica Property with his son; (iv) he doesn't discuss finances with his son and rarely discusses personal matters; (v) he doesn't know much about the details of his son's life; and in fact, (vi) they never actually discussed where Debtor was living[5].

---

[5] See page 11, line 5 to 25 and page 12, line 24 to page 13, line 17 of Exhibit 12.

### B. Debtor's documentary evidence is incomplete and indicates he moved into the Rockefeller Property months after the filing date.

As stated in the HS Objection, and noted by this court in previous proceedings, Debtor has the burden of proof to demonstrate he meets the requirements to claim a homestead exemption under these circumstances. In the absence of credible witness evidence (due to Debtor and his sister's admitted perjury on this topic), Debtor holds the high burden of submitting extensive, complete, and trustworthy evidence to establish his residency on the filing date.

Debtor's evidence falls far short of meeting this burden. In fact, as explained below, the documentary evidence, when considered with recent deposition testimony, actually indicates that Debtor did not move into the Rockefeller Property until January 2023 (if ever).

Debtor's documentary exhibits ("**Debtor's Exhibits**"), which were just received two days ago, are attached to his Declaration and can be found at Exhibit 10 of this Brief.

In summary, many of the sets of documentary evidence are suspiciously incomplete (see Debtor's Exhibits 2, 5, 6, 10, 13, and 14)— and all (or nearly all) of the evidence which has some indicia of credibility indicates Debtor did not reside in the Rockefeller Property until January 2023 (see Debtor's Exhibits 5, 6, 10, and 14).

Additionally, several of Debtor's Exhibits: (i) are difficult (or impossible) to read; (ii) contain objectionable redactions without any basis; and/or (iii) indicate dates when they were generated which appear suspicious. Belgium objects to the presentation of this evidence without having had any means to authenticate the same through inspection or otherwise. Notably, these documents have all been presented and authenticated through Declarations from the Debtor— whose evidence is littered with irredeemable perjury. As such, Belgium requests that this problematic evidence be thrown out entirely—or accorded little (if any) weight.

Notwithstanding the above, Belgium wishes to note the following points with respect to this evidence:

Debtor's Exhibit 1 includes his Bankruptcy filing documents. However, he has already admitted that these contain grave inaccuracies, eg regarding his assets & liabilities. Furthermore, this evidence is not tested by any entity and is therefore simply a replication of Debtor's own compromised evidence.

As noted at page 9 of Belgium's Reply to Debtor's Opposition to the Homestead Objection ("**Belgium's HS Reply**"), the claim filed by TD Bank NA, which arises from Debtor's purchase of a Mercedes Benz automobile in August 2016, shows Debtor's address as 405 Rockefeller, Unit A056, Irvine CA, 92612. This is despite his repeated claims to have resided in the Rockefeller Property and/or Santa Monica Property at this time. This either means Debtor has again testified falsely regarding his residency—or Debtor does not always provide accurate address information to third parties when it is not tested.

Debtor's Exhibit 2 erroneously claims to contain copies of Debtor's tax filings from 2019-2022. However, Debtor has not included his California filings or his federal tax filings for 2020 or 2022. This has already been highlighted at page 11 of Belgium's HS Reply. Debtor's failure to correct this error can only mean that the information contained in the other filings would be prejudicial to his case. The absence of documents speaks quite loudly in this instance.

Debtor's Exhibits 3 & 4 have been addressed in Belgium's HS Reply. To repeat, these are also untested assertions by the Debtor which would likely replicate his false evidence. These should be given little, if any, weight, particularly given the more reliable evidence which points to his residency being elsewhere at the relevant time. We also note that Debtor also provided bank account information in the previous case indicating he resided in Santa Monica (which he now claims is false).

Debtor's Exhibit 5 is one of the first examples of a suspicious document which actually indicates Debtor may have moved into the Rockefeller Property in January 2023 (well after the filing date).

Debtor previously submitted a Driver's License which listed his address as the Santa Monica Property[6]. The previously-submitted License expired on 21 August 2021 (Debtor's 40th birthday). However, Debtor has not submitted the Driver's License he obtained after this one expired in August 2021. Instead, he has chosen to submit a copy of what purports to be a Driver's License that was issued on 18 January 2023. He has also chosen to redact certain information from this Driver's License without any apparent basis—to which Belgium objects.

Notwithstanding this objection, it's clear that Debtor had at least one (and likely more) previously issued Driver's License(s) which list his address as the Santa Monica Property. He then updated the address in January 2023. Far from proving that Debtor resided in the Rockefeller Property on the filing date (18 Sept 2022), this evidence indicates that he did not move into Rockefeller until at least January 2023, particularly when it is considered alongside his other evidence.

This other evidence, which will be addressed below at Section II(A), includes the facts that: (i) the lease to the Santa Monica Property was not terminated until about January 2023; (ii) he alone moved out all of the furniture from the Santa Monica Property in January 2023; (iii) his roommate at the Santa Monica Property has been regularly living in Dubai since late-2020; and (iv) he admits to regularly staying at the Santa Monica Property and takes responsibility for the care & maintenance of the apartment.

---

[6] See Exhibit 22.

Debtor's Exhibit 6 purports to contain a copy of Debtor's vehicle registration listing his

address as the Rockefeller Property. However, this is another example of suspicious evidence

which actually indicates a January 2023 move in date.

The document shows that the prior expiry date was 26 August 2022. Again, we have not

been provided with the registration document that Debtor would have obtained upon the expiry

of the previous registration. Instead, he has provided a copy of a registration document that was

issued on 18 January 2023. So again, Debtor chose not to provide a complete set of documents,

but the documents that have been provided indicate Debtor only changed his residency in

January 2023.

Debtor's Exhibits 7 & 8 purport to contain water and gas bills for the Rockefeller

Property addressed to the Debtor. These again have much less evidentiary value than other

documents because they are not tested by the recipient. Furthermore, Debtor has not even

explained who is responsible for, and who actually transmits, payment of these bills.

It is noteworthy that the documents which might indicate his residing at Rockefeller

before January 2023 are those which are untested by the recipient. Whereas the more credible

documents indicate a January 2023 move in date.

Debtor's Exhibit 9 purports to be a copy of Debtor's insurance card listing his address at

Rockefeller. Again this information is unreliable since it is untested by the recipient—and there

is no indication as to the date when this document was issued. Some Debtors may be granted the

benefit of the doubt regarding documents such as this. However, this Court should accord very

little weight to this type of unverified evidence given Debtor's admitted perjury regarding this

very topic.

Debtor's Exhibit 10 purports to show copies of 3 receipts for food delivery from

restaurants near the Rockefeller Property. Again, all three receipts are from dates in January

2023. It is highly instructive that Debtor has chosen to submit a (presumably) incomplete set of documents which actually indicate his having moved into Rockefeller in January 2023.

Debtor's Exhibit 11 purports to show evidence of instances where Debtor checked into an LA Fitness facility in Irvine from May-December 2022. However, nothing on the document indicates the actual location of the LA Fitness center and LA Fitness has a number of locations throughout Southern California. Additionally, the check-ins between June and December are highly sporadic (9 check-ins over 23 weeks). Thus, even if these were at the Irvine location—which is disputed—it would indicate nothing more than Debtor having occasionally visited a gym near his sister's townhouse.

Debtor's Exhibit 12 purports to show a screenshot indicating that Debtor's phone was near the Rockefeller Property on the date of the filing. One isolated piece of evidence does not tend to show that Debtor actually resided—and intended to continuously reside—in the Rockefeller Property from the time he filed this case up to the present. It is more likely that Debtor was in Irvine briefly because his parents were visiting from Egypt but he continued residing in the Santa Monica Property until it was vacated in January 2023.

Debtor's Exhibit 13 purports to show a flight receipt for Debtor, and presumably his nephew, for a flight which departed from Santa Ana airport in early-September 2023. However, it's not exactly helpful to demonstrate Debtor's residency to show that he was actually in San Francisco just before the filing. More importantly, the flight originating from Santa Ana airport can be easily explained by the presence of his nephew because his nephew lives in Irvine. There are likely to be other flight receipts that Debtor could have provided which would indicate other residencies. For example, Debtor has not provided the flight receipt associated with his recent trip to Egypt (where he is apparently currently staying).

Debtor's Exhibit 14 purports to contain receipts from Amazon purchases Debtor made on 14, 15, and 24 <u>January 2023</u>. Once again, Debtor has provided what appears to be an incomplete[7] set of documents that actually indicate he did not move into the Rockefeller Property until January 2023 (after the Santa Monica Property was vacated).

Debtor's Exhibit 15 purports to contain a copy of a receipt from a Fedex location near the Rockefeller Property on the date of the filing. However, this does not necessarily prove that Debtor actually resided, or intended to reside, in the Rockefeller Property. As with Debtor's Exhibit 12, his presence in Irvine on that one day is much more likely due to his parents' visiting from Egypt. The other documents and witness evidence persuasively show that Debtor did not move into the Rockefeller Property until at least January 2023.

### III. Objective evidence demonstrates that Debtor did not meet the residency requirements on the filing date for intent or actual occupancy.

"*The essential factors in determining residency for homestead purposes are physical occupancy of the property and the intent to live there*." (see In re Fisher, No. 09-91587-D-7, 2009 WL 9087842, at *2 (Bankr. E.D. Cal. Sept. 22, 2009), citing In re Dodge, 138 B.R. 602, 607 (Bankr.E.D.Cal.1992), citing Ellsworth v. Marshall, 196 Cal.App.2d 471, 474 (1961)). The sections below detail how the evidence actually demonstrates that Debtor does not meet the intent or actual occupancy requirements.

#### A. The evidence indicates that Debtor did not physically reside in the subject property until months after the filing date (if ever).

As detailed above, many of the sets of documentary evidence are suspiciously incomplete (see Debtor's Exhibits 2, 5, 6, 10, 13, and 14)— and all (or nearly all) of the evidence which has

---

[7] We suspect that these are not the only Amazon purchases made by Debtor during the past six months.

some indicia of credibility indicates Debtor did not move into the Rockefeller Property until January 2023 (see Debtor's Exhibits 5, 6, 10, and 14).

Below we address Debtor's deposition testimony that helps to uncover where he was actually residing when taken together with the documentary evidence he has produced.

Debtor has testified that his roommate, Mohamed Rostom, moved to Dubai in late-2020[8]. He would sometimes return to Santa Monica and Debtor would regularly stay with him overnight at the Santa Monica Property[9]. His roommate then moved to Dubai again in 2022[10]. At this point, Debtor took sole responsibility for the care and maintenance of the Santa Monica Property[11]. Their lease for the Santa Monica Property was terminated some time in late-2022 or early 2023; and Debtor eventually removed all of the furniture from the Santa Monica Property on his own in <u>January 2023</u>—since his roommate was now living in Dubai[12].

At the outset, it is notable that Debtor continuously refers to this individual as his roommate during depositions in 2021 & 2023. Furthermore, the evidence indicates that Debtor likely continued staying in the Santa Monica Property during the duration of their lease agreement since it would have otherwise been vacant. Debtor is asking this Court to believe that he chose to share a three-bedroom townhouse in Irvine with his sister and nephew rather than staying in a vacant apartment in Santa Monica, which is just five blocks from the Ocean, where he admits to regularly sleeping, where is a signatory to an active lease, and which he is responsible for maintaining.

---

[8] See fl depo 30,5-8
[9] Cal depo 14,1-15,3
[10] Ca dep trans 12,6-10
[11] Ca dep trans 12,6-10
[12] 12,11-13,12

PRE-HEARING BRIEF FOR EVIDENTIARY HEARING ON HOMESTEAD EXEMPTION

Page. 15

. As a reminder, Debtor's evidence in February & March 2021 was that he had been

residing in the Santa Monica Property for several years. There is no reason to suspect that this

changed between 2021 and the filing date in September 2022.

The only indication where it appears that Debtor changed his residency was when they

terminated their lease for the Santa Monica Property at some unspecified time in late-2022 or

early-2023. He then took sole responsibility for vacating the apartment in January 2023.

Around this same time in January 2023, we see that Debtor updated his Driver's License

and car registration to reflect a new address. He also began receiving Amazon packages and food

deliveries in Irvine in January 2023.

This all tends to show that he did not move into the Rockefeller Property until the time

when he vacated the Santa Monica Property—in January 2023.

### B. Objective documentary evidence shows that Debtor did not have the requisite intent to reside in the subject property on the filing date.

California jurisprudence makes clear that a Debtor must prove his intent to reside in the

subject property on the filing date and he must continually maintain this intent if he is

temporarily absent after the filing date. (see eg *In re Bhangoo,* 634 B.R. 80, 89 (B.A.P. 9th Cir.

2021)[13]. Courts should rely on objective evidence wherever possible when making this

determination of intent, particularly under circumstances where Debtor's witness evidence is so

highly-compromised.

Belgium explains at Section V of its HS Objection how a key piece of objective

evidence—the lease agreement for the Rockefeller Property—unequivocally prohibits Debtor

---

[13] Debtor may attempt to argue that the only relevant date is the filing date of 18 September 2023. However, analysis of Debtor's whereabouts during the preceding, and subsequent, dates are essential for this Court to determine Debtor's intentions. Particularly, given Debtor's compromised witness evidence and the evidence we have highlighted indicating that he resided elsewhere.

from residing in the property. The lease agreement states: *"[t]he Premises is to be occupied strictly as a residential dwelling with only the Tenant(s) mentioned above [Reem Hanna] as the Occupant(s)."*[14].

Debtor has confirmed that the lease agreement covers the entirety of the Rockefeller Property[15]; and Debtor is not listed as a Tenant in the lease agreement. In fact, he is identified as Landlord in the lease agreement. It is to be expected that the owner of the property who is leasing it out as a landlord would be prohibited from having unrestricted access to the premises.

Debtor has confirmed that there have been no changes to the lease agreement other than an increase in the monthly rental payments[16]. Debtor therefore cannot claim that there is some undisclosed separate agreement between he and his sister which allows him to reside in the property.

Belgium argues that Debtor cannot legally maintain he has the requisite intent to reside in a dwelling which he has no legal right to occupy. This is because someone cannot reasonably intend to make a place their primary residency if they can be removed at-will due to their lack of having any rights to occupy the premises.

Debtor cannot claim to have the legal intent to reside at the Rockefeller Property anymore than he can claim to have the objective, legal intent to reside in Dodger's Stadium.

**IV. Res Judicata prevents Debtor from claiming the homestead exemption in the present bankruptcy proceedings.**

As detailed at Section VII of Belgium's HS Objection, Debtor is estopped from claiming a homestead exemption in the present bankruptcy proceedings by virtue of res judicata. It explained how the homestead issue was specifically addressed at the hearing on the Order for

---

[14] See page 1 of the lease agreement attached to Debtor's CA Declaration dated 17 February 2021 at Exhibit 1.
[15] See Debtor's BK Declaration dated 21 March 2023 at Exhibit 10.
[16] See Page 36, lines 10-12 of the transcripts from the Deposition of Bassem El Mallakh dated 15 March 2023 Exhibit 8.

Sale of the Rockefeller Property on 21 April 2022 (the "**Order for Sale**")—and how this resulted in a ruling by the Orange County Superior Court that found that the Rockefeller Property was not subject to a homestead exemption.

Section VII also explains how all of the elements for claim preclusion and issue preclusion are met in this case, because: (i) identical parties (Belgium and Debtor); (ii) actually litigated the merits of this identical issue (Debtor's ability to claim a homestead exemption); and (iii) this resulted in a final award in Belgium's favor (the Order for Sale).

There should be no controversy whether the parties are identical in both cases, or whether the issue was actually litigated.

The "identity of claims" requirement is satisfied because the hearing on the Order of Sale and the Order itself involved the same nucleus of facts, the same rights (Debtor's right to claim a homestead exemption), and depend on substantially the same evidence. Additionally, the rights established through the Order of Sale would be destroyed or impaired if Debtor is allowed to claim a HS exemption in these proceedings. See Mpoyo v. Litton Eletrco-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005).

The Order of Sale was a final order which allowed for the sale of the subject property. It thus meets the requirements of finality for the purposes of res judicata.

Debtor might argue that res judicata should not apply because he has submitted new evidence during bankruptcy regarding his residency. As described above and in the Motion for Perjury Sanctions, it is undeniable that Debtor's evidence regarding his residency amounts to perjury in the present proceedings and/or the previous proceedings.

Section V of the Motion for Perjury Sanctions addresses how res judicata has been invoked to prohibit perjury in prior proceedings from affecting subsequent proceedings. Res

judicata has been employed by courts as a tool to ensure that perjurious abuses of process are not

rewarded in subsequent proceedings.

## V. Conclusion

Debtor has given perjurious evidence regarding his residency and tried to explain this

perjury with further bad faith misrepresentations. His, and his witnesses', evidence should be

given zero weight.

His documentary evidence contains suspicious irregularities, gaps, and redactions. But

more importantly, the objective pieces of evidence point to his residing in the Rockefeller

Property well after the filing date—in January 2023.

In addition to the questions as to his physical location, the lease agreement between he

and his sister precludes him from claiming to have the legal intent to reside in the subject

property.

Debtor woefully failed to meet his evidentiary burden to prove his residency.

Nonetheless, Debtor is also estopped from claiming the homestead exemption irrespective of the

factual issues due to res judicata.


Dated:          23 March 2023                                    Impact Advocates APC


                                                                By_____
                                                                     Patrick Miller
                                                                     Attorney for
                                                                     Judgement Creditor

Patrick Miller, Esq., SBN 301819
Impact Advocates APC
121 S. Oak Ave.
Pasadena, CA 91107
213-364-7581
Patrick.miller@impactadvocateslaw.com

Attorney for the Creditor
Belgium Investments 960 Bay Dr,
LLC, a California Corp

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE BASSEM VICTOR EL MALLAKH | ) Case No.: 8:22-bk-11605-TA<br>) Ch 11<br>)<br>) **DECLARATION OF PATRICK MILLER**<br>) **IN SUPPORT OF THE PRE-HEARING**<br>) **BRIEF**<br>)<br>) _____<br>)<br>) **Hearing Date:  30 March 2023**<br>) **Hearing Time: 11:00 AM**<br>) **Dept.:  5B/Virtual**<br>)<br>)<br>)<br>) |

DECLARATION

1. I, Patrick Miller, am counsel for the Creditor Belgium Investments 960 Bay Dr, LLC, a California Corp. ("**Belgium**"). I have read Belgium's Pre Hearing Brief and know the contents thereof. The same is true of my own knowledge, except as those matters that are stated on information and belief, and as to these matters, I believe them to be true.

2. I am over the age of 18 years and am fully familiar with the facts and circumstances surrounding my declaration and could and would competently testify thereto if called upon to do so.

3. I was engaged as counsel for the Defendant in April 2020 in order to enforce the judgement obtained in the Florida courts against the Debtor, Bassem Essam Victor El Mallakh.

4. Exhibit 1 contains a true and correct copy of the Declaration filed by Debtor in support of his motion to vacate entry of default judgement in California.

1. Exhibit 2 contains a true and correct copy of the Declaration filed by Reem Hanna in support of his motion to vacate entry of default judgement in California.

2. Exhibit 3 contains a true and correct copy of the Debtor's Motion to Vacate in Florida with supporting Declarations from Debtor and his sister attached.

3. Exhibits 4 & 5 contain a true and correct copies of the Transcripts of the Deposition of Debtor dated 18 March 2021; and extracts from the same.

4. Exhibits 6 & 7 contain a true and correct copies of the Transcripts of the Deposition of Reem Hanna dated 18 March 2021; and extracts from the same.

5. Exhibit 8 contains a true and correct copy of the deposition transcripts from the deposition of the Debtor conducted on 15 March 2023. I, acting as Belgium's counsel, conducted this deposition. These transcripts were delivered to Debtor's counsel on 22 March 2023 and have not yet been signed by the Debtor.

6. Exhibit 9 contains a true and correct copy of the deposition transcripts from the deposition of Essam El Mallakh (Debtor's father) conducted on 15 March 2023. I, acting as Belgium's counsel, conducted this deposition. These transcripts were delivered to Debtor's counsel on 22 March 2023 and have not yet been signed by Essam El Mallakh.

7. Exhibit 10 contains a true and correct copy of the Declaration filed by Debtor on 21 March 2023 in support of his homestead exemption.

8.  Exhibit 11 contains a true and correct copy of the Declaration filed by Reem Hanna on 21 March 2023 in support of Debtor's homestead exemption.

9.  Exhibit 12 contains a true and correct copy of the Declaration filed by Essam El Mallakh on 21 March 2023 in support of Debtor's homestead exemption.

10. Exhibit 13 contains a true and correct copy of the Debtor's Ch 11 Filing documents.

11. Exhibit 14 contains a true and correct copy of the Debtor's Amended Ch 11 Schedules.

12. Exhibit 15contains a true and correct copy of the Declaration of Debtor as to income in the past 60 days.

13. Exhibit 16 contains a true and correct copy of the Debtor's Motion to Appoint Counsel in Bankruptcy.

14. Exhibit 17 contains a true and correct copy of the Debtor's Motion to Continue the Automatic Stay.

15. Exhibit 18 contains a true and correct copy of the Debtor's Reply for the Motion to Continue the Automatic Stay.

16. Exhibit 19 contains a true and correct copy of the Debtor's Opposition to Belgium's Motion to Dismiss.

17. Exhibit 20 contains a true and correct copy of the Debtor's Opposition to Belgium's Objection to Homestead.

18. Exhibit 21 contains a true and correct copy of the Debtor's Opposition to US Trustee's Motion to Dismiss.

19. I reviewed the Transcripts of the Deposition of Bassem Essam El Mallakh dated 18 March 2021 (which is at Ex 4). During this deposition, he references several photographs contained in his cellular phone to support the point that he was residing in Santa Monica at the relevant time. He also discusses his Driver License Registration and provides a copy of his Driver's License to support his residing in the Santa Monica Property (despite his recent evidence to the contrary). Exhibit 22 is a true and correct copy of Debtor's Driver's License provided at the time.

20. Exhibit 23 contains a true and correct copy of the Debtor's Financial Statement filed on 14 March 2023.

21. Exhibit 24 contains a true and correct copy of the Debtor's Reorganization Plan filed on 14 March 2023.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3/23/2022, at Pasadena, California.

Patrick Miller

PROOF OF ELECTRONIC SERVICE

I am employed in the County of LOS ANGELES, State of California. I am over the age of 18 and not a party to the within action. My business address is, 121 S Oak Ave, Pasadena, CA 91107.

A true and correct copy of the foregoing described as **PRE-HEARING BRIEF FOR EVIDENTIARY HEARING ON HOMESTEAD EXEMPTION AND DECLARATION OF PATRICK MILLER IN SUPPORT OF THE SAME** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d) (through electronic filing); and **(b)** in the manner stated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 3/23/23, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael Jay Berger on behalf of Debtor Bassem Victor El Mallakh

michael.berger@bankruptcypower.com,

yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Chad L Butler on behalf of Interested Party Courtesy NEF

caecf@tblaw.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)

nancy.goldenberg@usdoj.gov

Benjamin Heston on behalf of Interested Party Benjamin Heston

bhestonecf@gmail.com,

benheston@recap.email,NexusBankruptcy@jubileebk.net

Patrick Miller on behalf of Creditor Belgium Investments 960 Bay Dr,

LLC A California Corp.

patrick.miller@impactadvocateslaw.com

Randall P Mroczynski on behalf of Creditor TD Bank, N.A., successor in

interest to TD Auto Finance LLC

randym@cookseylaw.com

United States Trustee (SA)

ustpregion16.sa.ecf@usdoj.gov

I declare under penalty of perjury under the laws of the State of California that the above is true
and correct.

Executed on this 3/23/2022, at Pasadena, California.

Patrick Miller

**Table of Exhibits**

| Exhibit 1 | Declaration filed by Debtor in support of his motion to vacate entry of default judgement in California |
|---|---|
| Exhibit 2 | Declaration filed by Reem Hanna in support of his motion to vacate entry of default judgement in California |
| Exhibit 3 | Debtor's Motion to Vacate in Florida with supporting Declarations attached |
| Exhibit 4 | Transcripts of the Deposition of Debtor dated 18 March 2021 |
| Exhibit 5 | Extracts from Transcripts of the Deposition of Debtor dated 18 March 2021 |
| Exhibit 6 | Transcripts of the Deposition of Reem Hanna dated 18 March 2021 |
| Exhibit 7 | Extracts from Transcripts of the Deposition of Reem Hanna dated 18 March 2021 |
| Exhibit 8 | Transcripts of the Deposition of Debtor dated 15 March 2023 |
| Exhibit 9 | Transcripts of the Deposition of Essam El Mallakh dated 15 March 2023 |
| Exhibit 10 | Declaration filed by Debtor on 21 Mar 2023 in support of his homestead exemption |
| Exhibit 11 | Declaration filed by Reem Hanna on 21 Mar 2023 in support of Debtor's homestead exemption |
| Exhibit 12 | Declaration filed by Essam El Mallakh on 21 Mar 2023 in support of Debtor's homestead exemption |
| Exhibit 13 | Debtor's Ch 11 Filing documents |
| Exhibit 14 | Debtor's Amended Ch 11 Schedules |
| Exhibit 15 | Declaration of Debtor as to income in the past 60 days |
| Exhibit 16 | Debtor's Motion to Appoint Counsel in Bankruptcy |
| Exhibit 17 | Debtor's Motion to Continue the Automatic Stay |
| Exhibit 18 | Debtor's Reply for the Motion to Continue the Automatic Stay |
| Exhibit 19 | Debtor's Opposition to Belgium's Motion to Dismiss |
| Exhibit 20 | Debtor's Opposition to Belgium's Objection to Homestead |
| Exhibit 21 | Debtor's Opposition to US Trustee's Motion to Dismiss |
| Exhibit 22 | A copy of Debtor's Driver's License provided in support of his Motion to Vacate in Florida |
| Exhibit 23 | Debtor's Financial Statement filed on 14 Mar 2023 |
| Exhibit 24 | Debtor's Reorganization Plan filed on 14 Mar 2023 |

# EXHIBIT "1"

1  Michael Sayer, State Bar No. 141038
2  Debt Recovery Attorneys
   17595 Harvard Ave., Suite C-557
3  Irvine, CA 92614
   Tel. (949) 292-3511
4  Dra@dracollections.com

5  Attorneys for Defendant, BASSEM ESSAM EL MALLAKH

6

7

8                          SUPERIOR COURT OF CALIFORNIA

9                              COUNTY OF ORANGE

10

11 BELGIUM INVESTMENTS 960 BAY        ) CASE NO: 30-2020-01148745
   DR., LLC, a California Corp.        )
12                                     )
                                       )
13      Plaintiff,                     ) DECLARATION OF DEFENDANT BASSEM
                                       ) ESSAM EL MALLAKH IN SUPPORT OF MOTION
14      v.                             ) TO SET ASIDE AND VACATE  SISTER STATE
                                       ) JUDGMENT AND TO VACATE THE ABSTRACT
15 SPENCE BANK ET AL                   ) OF JUDGMENT AND WRIT OF EXECUTION
                                       )
16      Defendant.                     ) Date:
                                       ) Time:
17 _____ ) Place:
18                                     Reservation No.
19

20            **DECLARATION OF BASSEM ESSAM EL MALLAKH**

21 1.      I, BASSEM ESSAM EL MALLAKH, hereby declare as follows:

22 2.      I am over the age of 18 years and am fully familiar with the facts and circumstances
23 surrounding this litigation and could and would competently testify thereto if called upon to do so.
24
25 3.      I have been residing fulltime at my residence in Santa Monica since 11/21/16. Attached hereto
26 as Ex.6 is a true and correct copy of the lease I executed for my residence in Santa Monica.

- 1 –

27 DECLARATION OF DEFENDANT BASSEM ESSAM EL MALLAKH IN SUPPORT OF MOTION TO SET
   ASIDE AND VACATE  SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT
28                              AND WRIT OF EXECUTION

4.      I have not occupied the real property located at 116 Rockefeller, Irvine CA. since 11/21/16.

5.      Although I own the property at 116 Rockefeller, Irvine CA, I leased the property to Reem Hanna, commencing 1/17/17. Attached hereto is as Ex.7, is  true and correct copy of the lease as between myself and Reem Hanna.

6.      I have never been served with the Application For Entry of Sister State Judgment, the Notice of Entry of Sister State Judgment, or the Sister State Judgment.

7.      I had no idea that the Judgment Creditor had filed an Application For Entry of Sister State Judgment, the Notice of Entry of Sister State Judgment, or the Sister State Judgment. I had never seen the documents until I hired counsel to represent me and set the Sister State Judgment aside.

8.      I took absolutely no steps to hide, hinder or sequester myself to avoid service of the herein noted Application For Entry of Sister State Judgment, the Notice of Entry of Sister State Judgment, or the Sister State Judgment.

9.      Attached hereto as Ex.8 is a true and correct copy of my Wells Frago bank statement showing that the judgment creditor levied my account in the sum of $29,271.76.

10.     Attached hereto as Ex.9 is a true and correct copy of my JP Morgan Chase statement showing the active levy.

        I declare under penalty of perjury that the forgoing is true and correct.


Dated: 2/17/2021

dotloop verified
02/17/21 4:51 PM PST
VW9R-DUKE-VHUW-E0FW

Bassem Essam El Mallakh

- 2 –
DECLARATION OF DEFENDANT BASSEM ESSAM EL MALLAKH IN SUPPORT OF MOTION TO SET
ASIDE AND VACATE  SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT
AND WRIT OF EXECUTION

**PROOF OF ELECTRONIC SERVICE**

I am employed in the County of ORANGE, State of California.  I am over the age of 18 and not a party to the within action.  My business address is, 17595 Harvard, Suite C-557, Irvine, CA 92614.

On the date indicated below, I served by ELECTRONIC SERVICE the foregoing document described as DECLARATION OF DEFENDANT BASSEM ESSAM EL MALLAKH IN SUPPORT OF MOTION TO SET ASIDE AND VACATE  SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT AND WRIT OF EXECUTION on all interested to the electronic address as listed for each party and attorney below, using the e-filing service pursuant to   2019 California Rules of Court Rule 2.251.(b), Electronic service.

| Patrick Miller | |
| P Miller Legal Services | |
| 285 E. California, Unite 201 | |
| Pasadena, CA 91106 | |
| Partick.miller@pmillerlegal.com | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 2/17/2021, at Irvine, California.

*Michael Sayer*

Michael Sayer

- 3 –
DECLARATION OF DEFENDANT BASSEM ESSAM EL MALLAKH IN SUPPORT OF MOTION TO SET ASIDE AND VACATE  SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT AND WRIT OF EXECUTION

# EXHIBIT 6

Mohamed Rostom and Bassem Essam
525 Broadway #5037

🖶 Print    Close ✕

**Scroll** to the bottom of each page. **Click** in the colored box above each colored signature or initials box to sign. Use the navigation at the bottom to click to the next page. This is a legally binding document.

Sway

 **ALLIANCE**

# CALIFORNIA LEASE AGREEMENT

**1.**

| LANDLORD NAME: | PRIII/Broadstone Trino, LLC |
|---|---|
| LANDLORD'S AGENT: | Alliance Communities Inc. |
| LANDLORD ADDRESS: | 525 Broadway, Santa Monica, CA 90401 |
| PHONE/E-MAIL: | (310) 393-9696 / sway@allresco.com |

**2.**

| RESIDENT NAME: | Mohamed Rostom and Bassem Essam | | | |
|---|---|---|---|---|
| OTHER OCCUPANTS: | | | | |
| RESIDENT ADDRESS: | | | | |
| | UNIT | PARKING SPACE: | | MAILBOX: |

**3.**

| LEASE TERM: | 1 year | □ Lease Renewal: |
|---|---|---|
| | START DATE: November 1, 2016 | END DATE: October 31, 2017 |
| | MOVE-IN DATE: November 1, 2016 | |

**4.** **5.**

| MONTHLY CHARGES | | DEPOSITS | |
|---|---|---|---|
| Base Rent | $6,075.00 | Deposit | $3,000.00 |
| TOTAL | $6,075.00 | TOTAL | $3,000.00 |

**6.**

| KEYS: | | | | | |
|---|---|---|---|---|---|
| | □ APARTMENT | 2 | □ MAIL | | 2 |
| | □ REMOTE | 2 | □ POOL | | 0 |
| | □ GARAGE | 0 | □ STORAGE | | 0 |
| | □ CARD | 0 | □ COMMON AREA | | 0 |

This Lease is entered into on the date signed, by and between the above named parties herein after called respectively LANDLORD and RESIDENT. In the event of more than one Resident, each Resident is jointly and severally liable for each provision of this Lease and service of any notice or demand upon one shall constitute notice to each other Resident.

Each Resident states that they are of legal age to enter into a binding Lease for lodging. All obligations hereunder are to be performed in the county and state where the Community is located. No oral agreements have been entered into with respect to this Lease. This Lease shall not be modified unless by an instrument in writing signed by Resident and an Agent of Landlord. Landlord hereby leases and Resident hereby hires and takes the premises as defined in Section 2 outlining the leased premises for the term specified herein and subject to all of the terms and provisions set forth.

## A. TERM OF LEASE

**7.** **INITIAL TERM:**   The initial term of this Lease shall commence and end as outlined in Section 3 and shall **automatically continue as a tenancy from month-to-month upon expiration of the term.**

**8.** **LEASE EXPIRATION:**   Either party, Landlord or Resident, may terminate this Lease after the initial term by giving the other party at least **thirty (30) days'** written notice of its intention to terminate the tenancy; provided that if Resident has been residing in the Community for more than one (1) year, Landlord shall give Resident at least sixty (60) days written notice of its intention to termination the tenancy. In the absence of written notice of termination, or a new lease, after the expiration of the initial term, the tenancy shall become month-to-month subject to a rental increase and applicable fees as allowed under state law. Resident agrees to pay all rent up to and including the end of any **thirty (30) day** (or, as applicable, sixty (60) day) notice period (which may not occur before the end of the Lease term) or until the premises are re-occupied, whichever occurs first.
Initials: MK  BE

**9.** **FAILURE TO VACATE AFTER NOTICE:**   If Resident gives written notice to vacate the premises and fails to completely vacate prior to the expiration of the notice, Resident shall be liable, unless otherwise prohibited by law, in addition to all other damages provided for under this Lease, for the daily rental based on a pro-ration of the monthly rental provided for in the Lease for each day Resident remains in the premises. In addition, Landlord may collect cost for loss suffered from future resident losses, legal costs, lost rent, and other expenses, and any other amount allowed by law.

**10.** **OPTION FOR EARLY TERMINATION:**   Resident is expected to remain a Resident for the entire term specified in the Lease. If Resident fails to do so, Resident will be responsible to Landlord for all damages provided by law, including (but not limited to) rent due through the end of the contract term, minus rents paid by a replacement resident (if any). This amount will vary depending upon how long it takes Landlord to find a replacement resident which typically cannot be determined in advance of move-out.

To avoid this uncertainty, Resident may choose to exercise an Early Termination Option. Resident understands and acknowledges that Landlord is not legally obligated to allow early termination of the Lease unless provided for pursuant to statutory or common law. To exercise this option, Resident must deliver to Landlord:

    **i.**   A written notice stating that Resident has elected to exercise the Early Termination Option;
    **ii.**  An early termination option payment of **$6,075.00**;
    **iii.** An executed agreement for repayment of concessions received prior to the early termination (if applicable, see Concession Section); and
    **iv.**  Payment of rent and other amounts due through the new Lease end date.

When Landlord has (1) received the written notice and the Early Termination Option payment and (2) signed the notice, the Lease end date will be amended. The new Lease end date will be the date specified in the notice which must be at least **thirty** days after the written election and payment are given to Landlord. Exercise of the Early Termination Option will affect only Resident's rent obligations after the new Lease end date. Resident must comply with all other Lease obligations.

  Initials: MK  BE

1



Mohamed Rostom and Bassem Essam
525 Broadway #5037

🖨 Print    Close ✖

**Scroll** to the bottom of each page. **Click** in the colored box above each colored signature or initials box to sign. Use the navigation at the bottom to click to the next page. This is a legally binding document.

Sway                                                         **ALLIANCE**

responsibility of the Resident to check regularly that each permit is secured on the appropriate vehicle and visible. Failure to properly display parking permits may result in the vehicle towed at Resident's own expense.

18. **Solicitors and Salespeople:**   Solicitors are not allowed in the Community. Residents shall report all solicitors or salespeople to the Landlord immediately.

19. **Car Wash and Repair:**   Vehicle repairs, including oil changes, and washing of vehicles are prohibited unless there is a designated area provided by Landlord.

20. **Moving of Furniture:**   Landlord may designate the time and method for moving items to and from the Unit such as any furniture, merchandise, goods, freight or other such items. Residents may not move furniture to and from the Unit through the lobby, patio doors, or through the use of elevators (if available) without Landlord's permission. If elevators are installed at the Community, Landlord does not guaranty that the elevators will be available for use by Resident nor shall Landlord be liable for any loss resulting from the unavailability of elevator service.

21. **Parking:**   Resident shall report in writing to Landlord any changes to the make, model and license plate number of every vehicle authorized to park at the Community. Commercial vehicles, boats and recreational vehicles are not authorized to park on the Premises unless Landlord has a designated location.

22. **Notification of Changes:**   Resident shall notify Landlord immediately in writing with any change to Resident's employer, employer telephone number, alternate phone numbers, emergency contact and other pertinent information.

Resident(s) acknowledges to have read this Addendum and understands the terms and conditions contained herein.

| | 10/29/2016 01:41 PM PDT | | | 10/31/2016 03:26 PM PDT |
|---|---|---|---|---|

Mohamed Rostom *(Resident)*                    Date      Bassem Essam *(Resident)*                    Date

**Signed by Chellie Stinson**
Mon Oct 31 2016 15:58:09 PM PDT
Key: D9A84B6C; IP Address: 71.177.221.208

*(Owner/Agent)*                                  Date

 Initials: MR  BE                    15                    

Mohamed Rostom and Bassem Essam
525 Broadway #5037

🖨 Print     Close ✖



**Scroll** to the bottom of each page. **Click** in the colored box above each colored signature or initials box to sign. Use the navigation at the bottom to click to the next page. This is a legally binding document.



Sway                                                                    🕊 **ALLIANCE**

| 1  | Animal Addendum |
| 2  | Community Policies |
| 3  | Construction Release and Waiver of Liability Agreement |
| 4  | Crime Free/Drug Free Addendum |
| 5  | Maintenance of Stainless Steel Appliances |
| 6  | Mold/Mildew Addendum |
| 7  | Move-In/Move-Out Inspection Form |
| 8  | New Construction Addendum |
| 9  | Pest, Insect and Bed Bug Addendum |
| 10 | Resident Communication Log |
| 11 | Garage/Parking Space Addendum |
| 12 | Smoke-Free Addendum |
| 13 | Utility Addendum |
| 14 | Acknowledgement RE Use of Medical Marijuana |
| 15 | Addendum Re Use of Medical Marijuana |

**SIGNATURES:**

The undersigned expressly understands that the "TERM OF LEASE" Section above contains provisions under which the tenancy may automatically continue as a tenancy from month to month upon expiration of the Lease term.

10/29/2016
01:40 PM PDT

Mohamed Rostom *(Resident)*                    Date

10/31/2016
03:25 PM PDT

Bassem Essam *(Resident)*                        Date

**Signed by Chellie Stinson**
Mon Oct 31 2016 15:58:09 PM PDT
Key: D9A84B6C; IP Address: 71.177.221.208

*(Owner/Agent)*                                    Date

Initials: MR BE                    10                    **On-Site**

# EXHIBIT 7

# LEASE WITH OPTION TO PURCHASE

This Agreement, dated January 1 2017, by and between an individual known as Bassem Elmallakh of 525 Broadway, Santa Monica, California, 90401, hereinafter known as the "Landlord",

**AND**

An individual known as Reem Hanna, hereinafter known as the "Tenant(s)", agree to the following:

**OCCUPANT(S)**: The Premises is to be occupied strictly as a residential dwelling with only the Tenant(s) mentioned above as the Occupant(s).

**OFFER TO RENT**: The Landlord hereby rents to the Tenant(s), subject to the following terms and conditions of this Agreement, a condominium with the address of 116 Rockefeller , Irvine, California, 92612 consisting of 3.5 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant(s).

**PURPOSE**: The Tenant(s) and any Occupant(s) may only use the Premises as a residential dwelling. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.

**FURNISHINGS**: The Premises is furnished with the following:

Bedroom Set(s), Dining Room Set(s), Kitchen Set (Including Pots, Pans, Glasses, Mugs, Dishes, etc.), Living Room Set(s) and all other furnishings to be provided by the Tenant(s). Any damage to the Landlord's furnishings shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or less the Security Deposit.

**APPLIANCES**: The Landlord shall provide the following appliances:

Air Conditioner(s), Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Iron (for Clothes), Microwave, Oven(s), Refrigerator, Stove(s), Television(s), Washer (for Laundry), with all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or less the Security Deposit.

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning on January 1 2017 and ending on December 31 2024 with the Tenant(s) having the option to continue to occupy the Premises under the same terms and conditions of this Agreement under a Month-to-Month arrangement (Tenancy at Will) with either the Landlord or Tenant having the option to cancel the tenancy with at least thirty (30) days notice or the minimum time-period set by the State, whichever is shorter. For the Tenant to continue under Month-to-Month tenancy at the expiration of the Lease Term, the Landlord must be notified within sixty (60) days before the end of the Lease Term. Hereinafter known as the "Lease Term".

**RENT**: Tenant(s) shall pay the Landlord in equal monthly installments of $3,000.00 (US Dollars) hereinafter known as the "Rent". The Rent will be due on the First (1st) of every month and be paid via the following instructions:

Money Wire

**NON-SUFFICIENT FUNDS (NSF CHECKS)**: If the Tenant(s) attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be no fee (US Dollars).

**LATE FEE**: If rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of:

Calculated as 10% percent of the monthly rent per occurrence for each month payment that is late after the 4th Day rent is due.

**FIRST (1ST) MONTH'S RENT**: First (1st) month's rent shall be due by the Tenant(s) upon the execution of this Agreement.

**PRE-PAYMENT**: The Landlord shall not require any pre-payment of rent by the Tenant(s).

**PRORATION PERIOD**: The Tenant(s) will not move into the Premises before the start of the Lease Term.

**SECURITY DEPOSIT**: The Tenant(s) shall not be obligated to pay a Security Deposit as part of this Agreement.

**POSSESSION**: Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

**OPTION TO PURCHASE**. The Tenant(s) shall have the right to purchase the Premises described herein for 1,000,000.00 at any time during the course of the Lease Term, along with any renewal periods or extensions, by providing written notice to the Landlord along with a deposit of $50,000.00 that is subject to the terms and conditions of a Purchase and Sale Agreement to be negotiated, in "good faith", between the Landlord and Tenant(s).

If the Landlord and Tenant(s) cannot produce a signed Purchase and Sale Agreement within a reasonable time period then the deposit shall be refunded to the Tenant(s) and this Lease Agreement shall continue under its terms and conditions.

If the option to purchase is exercised by the Tenant(s) all Rent that is paid to the Landlord shall remain separate from any and all deposits, consideration, or payments, made to the Landlord in regards to the purchase of the Premises.

**RECORDING**. The Tenant(s) shall be withheld from recording this Option to Purchase unless the Tenant(s) has the written consent from the Landlord.

**ACCESS**: Upon the beginning of the Proration Period or the start of the Lease Term, whichever is earlier, the Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any

replacements are needed, the Landlord may provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or the fee will be subtracted from the Security Deposit.

**MOVE-IN INSPECTION**: Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises.

**SUBLETTING**: The Tenant(s) shall not have the right to sub-let the Premises or any part thereof without the prior written consent of the Landlord. If consent is granted by the Landlord, the Tenant(s) will be responsible for all actions and liabilities of the Sublessee including but not limited to: damage to the Premises, non-payment of rent, and any eviction process (In the event of an eviction the Tenant(s) shall be responsible for all court filing fee(s), representation, and any other fee(s) associated with removing the Sublessee). The consent by the Landlord to one sub-let shall not be deemed to be consent to any subsequent subletting.

**ABANDONMENT**: If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

**ASSIGNMENT**: Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING**: The Landlord shall provide the Tenant(s) 2 Parking Spaces.

The Landlord shall not charge a fee for the 2 Parking Spaces.

**RIGHT OF ENTRY**: The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.

**SALE OF PROPERTY**: If the Premises is sold, the Tenant(s) is to be notified of the new Owner, and if there is a new Manager, their contact details for repairs and maintenance shall be forwarded. If the Premises is conveyed to another party, the new owner shall not have the right to terminate this Agreement and it shall continue under the terms and conditions agreed upon by the Landlord and Tenant(s).

**UTILITIES**: The Landlord shall not pay for any of the utilities and services and will be the responsibility of the Tenant(s).

**MAINTENANCE, REPAIRS, OR ALTERATIONS**: The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building. If the Premises includes a washer, dryer, freezer, dehumidifier unit and/or air conditioning unit, the Landlord makes no warranty as to the repair or replacement of units if one or all shall fail to

operate. The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION**: The Tenant(s) may be allowed to cancel this Agreement under the following conditions:
The Tenant(s) must provide at least 30 days' notice. During the notice period of 30 days the rent shall be paid in accordance with this Agreement.

**PETS**: The Tenant(s) shall not be allowed to have pets on the Premises or common areas except those that are necessary for individuals with disabilities.

**NOISE/WASTE**: The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS**: There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than forty-eight hours unless otherwise approved by the Landlord.

**SMOKING POLICY**: Smoking on the Premises is prohibited on the entire property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW**: The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT**: If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or

on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S)**: Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES**: If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY**: If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SURRENDER OF PREMISES**: The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER**: A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING**: If the Tenant(s) possess(es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims or damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS**: The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**NOTICES**: Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:

**Landlord's/Agent's Mailing Address**

Bassem Elmallakh
525 Broadway, Santa Monica, California, 90401

**Tenant(s)'s Mailing Address**

Reem Hanna
116 Rockefeller , Irvine, California, 92612

**AGENT/MANAGER**: The Landlord does not have an Agent or Manager and all contact in regards to any repair, maintenance, or complaint must go through the Landlord through the following contact information:

Landlord's Phone Number: (949) 413-7074 Email: bassemelmallakh@gmail.com.

**PREMISES DEEMED UNINHABITABLE**: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**ACCESS BY LANDLORD**: The Landlord must grant at least twenty-four (24) hours notice to the Tenant(s) prior to entry for maintenance or any non-emergency reason. For any move-out inspection forty-eight (48) hours notice by Landlord shall be required.

**BED BUGS**: The Landlord acknowledges that there is no existence of bed bugs on the Premises. In addition, there shall be an addendum attached to this agreement that certifies the Tenant(s) have inspected the Premises and any existing furniture and confirm that bed bugs do not exist on the Premises.

**MEGAN'S LAW**: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

**SERVICEMEMBERS CIVIL RELIEF ACT:** In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT:** The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW:** This Agreement is to be governed under the laws located in the State of California.

**ADDITIONAL TERMS AND CONDITIONS:** There are no further terms or conditions that will be added to this Agreement other than any attachments or addendums attached.

**ENTIRE AGREEMENT:** This Agreement contains all the terms agreed to by the parties relating to its subject matter including any attachments or addendums. This Agreement replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on January 1 2017.

**LANDLORD(S) SIGNATURE**

**Landlord's Signature** _____
By Bassem ElMallakh

**TENANT(S) SIGNATURE**

**Tenant's Signature** _____

Page 7

# EXHIBIT 8

# Checking/Savings Account History

**STATEMENT MAILING NAME:  BASSEM E ELMALLAKH**

Show 10 ☑ entries

Search: [          ]

| Date | Description | Image Available | Check Number | Amount | Balance |
|------|-------------|-----------------|--------------|--------|---------|
| 02/08/2021 | OVERDRAFT XFER FROM CREDIT CARD OR LINE | No | | +69.88 | |
| 02/08/2021 | ATT Payment 020621 217902014EPAYX BASSEM ELMALLAKH 9864031004 217902014EPAYX 0R00000091004231871889 | No | | 69.88 | -69.88 |
| 02/05/2021 | OVERDRAFT XFER FROM CREDIT CARD OR LINE | No | | +150.00 | |
| 02/05/2021 | AMERICAN EXPRESS ACH PMT 210205 A0020 BASSEM E ELMALLAKH 6133133497 A0020 0O00000091003736781926 | No | | 150.00 | -150.00 |
| 02/03/2021 | LEGAL ORDER DEBIT - CONTACT OC SHERIFF (480) 724-2000 - Case# 4792621 | No | | 569.00 | |
| 02/02/2021 | PORTFOLIO MONTHLY SERVICE FEE REVERSAL | No | | +30.00 | 569.00 |
| 02/02/2021 | PORTFOLIO BY WELLS FARGO MNTHLY SRVC FEE | No | | 30.00 | 539.00 |
| 01/07/2021 | ATT Payment 010621 776777011EPAYS BASSEM ELMALLAKH 9864031004 776777011EPAYS 0R00000091003957942166 | No | | 69.80 | 569.00 |
| 01/05/2021 | PORTFOLIO MONTHLY SERVICE FEE REVERSAL | No | | +30.00 | 638.80 |
| 01/05/2021 | PORTFOLIO BY WELLS FARGO MNTHLY SRVC FEE | No | | 30.00 | 608.80 |

Showing 1 to 10 of 14 entries

Previous  **1**  2  Next

CLOSE

ells Fargo Store Vision Platform

# Checking/Savings Account History

**STATEMENT MAILING NAME:  BASSEM E ELMALLAKH**

Regulation D Withdrawals:    0 (Current Service Charge Cycle)

Show 10 ☑ entries                                                    Search: [          ]

| Date | Description | Image Available | Check Number | Amount | Balance |
|------|-------------|-----------------|--------------|--------|---------|
| 02/03/2021 | LEGAL ORDER FEE DEBIT CASE# 4792621 | No | | 125.00 | |
| 02/03/2021 | LEGAL ORDER DEBIT - CONTACT OC SHERIFF (480) 724-2000 - Case# 4792621 | No | | 2,083.40 | 125.00 |
| 01/29/2021 | MONTHLY SERVICE FEE REVERSAL | No | | +10.00 | 2,208.40 |
| 01/29/2021 | MONTHLY SERVICE FEE | No | | 10.00 | 2,198.40 |
| 01/29/2021 | INTEREST PAYMENT | No | | +0.03 | 2,208.40 |
| 12/31/2020 | MONTHLY SERVICE FEE REVERSAL | No | | +10.00 | 2,208.37 |
| 12/31/2020 | MONTHLY SERVICE FEE | No | | 10.00 | 2,198.37 |
| 12/31/2020 | INTEREST PAYMENT | No | | +0.04 | 2,208.37 |
| 11/30/2020 | MONTHLY SERVICE FEE REVERSAL | No | | +10.00 | 2,208.33 |
| 11/30/2020 | MONTHLY SERVICE FEE | No | | 10.00 | 2,198.33 |

Showing 1 to 10 of 11 entries                          Previous  | 1 |  2  Next

CLOSE

# Checking/Savings Account History

**STATEMENT MAILING NAME:  BASSEM E ELMALLAKH**

Show 10 ☑ entries                                                    Search: ☐

| Date | Description | Image Available | Check Number | Amount | Balance |
|------|-------------|-----------------|--------------|--------|---------|
| 02/03/2021 | LEGAL ORDER DEBIT - CONTACT OC SHERIFF (480) 724-2000 - Case# 4792621 | No | | 12,006.97 | 1,788.00 |
| 01/29/2021 | INTEREST PAYMENT | No | | +0.12 | 13,794.97 |
| 12/31/2020 | INTEREST PAYMENT | No | | +0.11 | 13,794.85 |
| 11/30/2020 | INTEREST PAYMENT | No | | +0.12 | 13,794.74 |

Showing 1 to 4 of 4 entries                                    Previous  1  Next

CLOSE

# Checking/Savings Account History

**STATEMENT MAILING NAME:** BASSEM E ELMALLAKH

Show 10 entries                                    Search:

| Date | Description | Image Available | Check Number | Amount | Balance |
|------|-------------|-----------------|--------------|--------|---------|
| 02/03/2021 | LEGAL ORDER DEBIT - CONTACT OC SHERIFF (480) 724-2000 - Case# 4792621 | No | | 7,634.49 | |
| 01/27/2021 | MONTHLY SERVICE FEE REVERSAL | No | | +15.00 | 7,634.49 |
| 01/27/2021 | MONTHLY SERVICE FEE | No | | 15.00 | 7,619.49 |
| 01/27/2021 | INTEREST PAYMENT | No | | +0.07 | 7,634.49 |
| 12/23/2020 | MONTHLY SERVICE FEE REVERSAL | No | | +15.00 | 7,634.42 |
| 12/23/2020 | MONTHLY SERVICE FEE | No | | 15.00 | 7,619.42 |
| 12/23/2020 | INTEREST PAYMENT | No | | +0.06 | 7,634.42 |
| 11/25/2020 | MONTHLY SERVICE FEE REVERSAL | No | | +15.00 | 7,634.36 |
| 11/25/2020 | MONTHLY SERVICE FEE | No | | 15.00 | 7,619.36 |
| 11/25/2020 | INTEREST PAYMENT | No | | +0.06 | 7,634.36 |

Showing 1 to 10 of 10 entries                              Previous  1  Next

CLOSE

# Checking/Savings Account History

**STATEMENT MAILING NAME:   BASSEM E ELMALLAKH**

Show 10 ⌄ entries                                   Search:

| Date | Description | Image Available | Check Number | Amount | Balance |
|------|-------------|-----------------|--------------|--------|---------|
| 02/03/2021 | LEGAL ORDER DEBIT - CONTACT OC SHERIFF (480) 724-2000 - Case# 4792621 | No | | 6,852.90 | |
| 01/29/2021 | INTEREST PAYMENT | No | | +0.06 | 6,852.90 |
| 12/31/2020 | INTEREST PAYMENT | No | | +0.05 | 6,852.84 |
| 11/30/2020 | INTEREST PAYMENT | No | | +0.06 | 6,852.79 |

Showing 1 to 4 of 4 entries                          Previous  1  Next

CLOSE

# EXHIBIT 9


**CHASE**
PO Box 183164
Columbus, OH 43218-3164

**Questions?**
📞 1-866-578-7022

00420 COL 703 020 04121 NNNNNNNNNNNN CL1 E
**BASSEM ELMALLAKH**
525 BROADWAY APT 5037
SANTA MONICA CA 90401-2964

February 10, 2021

**Amended**

Important:  **Federal/state law required us to place a hold on your Chase account(s), which may include safe deposit box(es)**

Dear BASSEM ELMALLAKH:

We recently received the enclosed court order, which either enforces a legal judgment against you or secures a possible judgment in a lawsuit that's been filed against you. As a result, federal or state law required us to immediately place a hold on your Chase account(s). This means that you aren't able to use or withdraw any amount(s) less than or equal to the amount of the hold until the hold is released.

| Date We Placed Hold | Account Number (Last Four Digits) | Amount of Hold* |
|---|---|---|
| 02/10/2021 | 3252 | $16809.64 |
| 02/10/2021 | 0395 | $0.27 |
| 02/10/2021 | 7332 | $736.89 |

*The hold amount may be greater or less than the balance in your Chase accounts.

We know this situation is difficult because you can't access these funds in your account. Although we're not permitted to give you legal advice, we are providing some information in this letter to explain how your account is affected and to help you understand your options.

**Here's how this affects your account**
The following may apply based on your account type.

The amount that has a hold on it stays in your account, but you cannot use it for withdrawals, payments or any other reason.

Additionally, please note the following:
- If withdrawals are returned because your account doesn't have available funds, we may charge you Overdraft or Insufficient Funds Fee(s).
- We may have disconnected your Overdraft Protection service.
- We may charge you a Legal Processing Fee of $0.00.
- In certain states, you may also be responsible for the bank's fees if we are required to obtain outside counsel.

COAL-08Feb21-894
JPMorgan Chase Bank, N.A.

**Understanding your options**
You may have options to access some funds or to have the hold on your account released. These options are outlined below.

**Getting your money back**
You may be able to reduce the amount of the hold. Federal and state laws protect certain money from being used to pay most judgments or court orders, including:
- Social Security
- Supplemental Security Income (SSI)
- Veterans benefits

Depending on where you live, protected money may also include:
- Funds from public assistance (welfare)
- Alimony or child support
- Unemployment benefits
- Disability benefits
- Public or private pensions
- Workers' compensation benefits

These protections generally don't apply to business accounts. If you think your funds may be protected, contact the judgment creditor's attorney.

**Releasing the hold on your account(s)**
We can only release the hold on your account if we receive a written release of the court order signed by the judgment creditor's attorney or the court. In most situations, you're the only one who can ask the judgment creditor's attorney or the court to release your funds.

If you have questions or would like to request a written release of your funds, please call the judgment creditor's attorney at 1-213-364-7581 or the court at the number on the enclosed order. If they agree to send us a written release, they can mail it to us at the address listed on the first page of this letter.

Otherwise, we're required by law to hold the funds in your account(s) until:
- We send the funds to the issuer as required by law; or
- The hold expiration date, if applicable. If there's a hold expiration date, you'll see it on the enclosed court order. We recommend you review it carefully.

**Getting legal advice**
If you need legal advice, you should consult an attorney. If you're unable to afford a private attorney, you can visit the Legal Services Corporation's website at lsc.gov to find out where to go in your area for help.

**We're here to help**
If you have questions, please call us at 1-866-578-7022. We're here to help you Monday through Friday from 8 a.m. to 9 p.m. and Saturday from 8 a.m. to 7 p.m. Eastern Time.

Sincerely,

*Steven J. Criswell*

Steven J. Criswell
Executive Director
Customer Service

Enclosure

CL1

# EXHIBIT "2"

Michael Sayer, State Bar No. 141038
Debt Recovery Attorneys
17595 Harvard Ave., Suite C-557
Irvine, CA 92614
Tel. (949) 292-3511
Dra@dracollections.com

Attorneys for Defendant, BASSEM ESSAM EL MALLAKH

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ORANGE

| | |
|---|---|
| BELGIUM INVESTMENTS 960 BAY DR., LLC, a California Corp. | ) CASE NO: 30-2020-01148745 )<br>) |
| Plaintiff, | ) DECLARATION OF REEM HANNA IN SUPPORT<br>) OF DEFENDANT'S MOTION TO SET ASIDE AND |
| v. | ) VACATE SISTER STATE JUDGMENT AND TO<br>) VACATE THE ABSTRACT OF JUDGMENT AND |
| SPENCE BANK ET AL | ) WRIT OF EXECUTION<br>) |
| Defendant. | ) Date:<br>) Time:<br>) Place: |

Reservation No.

## **DECLARATION OF REEM HANNA**

1.    I, REEM HANNA, hereby declare as follows:

2.    I am over the age of 18 years and am fully familiar with the facts and circumstances

surrounding this litigation and could and would competently testify thereto if called upon to do so.

3.    I have been residing fulltime at my residence at 116 Rockefeller, Irvine CA since

since 1/1/17. Attached hereto is as Ex.7 is a true and correct copy of the lease I executed for my

– 1 –
DECLARATION OF REEM HANNA IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE AND VACATE
SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT AND WRIT OF EXECUTION

residence.

4.      I have never been served with the Application For Entry of Sister State Judgment, the Notice of Entry of Sister State Judgment or the Sister State Judgment.

5.      The process server never served me as claimed in the proof of service attached as Ex.5.

6.      The proof of serve states at section 5.b. that the process server left a copy of the documents with, "Hanna Reem *co-occupant* to Bassem Essam El Mallakh." (Emphases added).  This is a complete untruth.  First, I was never served, and second Bassem Essam El Mallakh is not nor ever has been a co-occupant at my residence. Since the inception of the lease Bassem Essam El Mallakh has never been a co-occupant.

        I declare under penalty of perjury that the forgoing is true and correct.

Dated: 2/17/2021

Reem Hanna

DECLARATION OF REEM HANNA IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE AND VACATE
SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT AND WRIT OF EXECUTION

**PROOF OF ELECTRONIC SERVICE**

I am employed in the County of ORANGE, State of California. I am over the age of 18 and not a party to the within action. My business address is, 17595 Harvard, Suite C-557, Irvine, CA 92614.

On the date indicated below, I served by ELECTRONIC SERVICE the foregoing document described as DECLARATION OF REEM HANNA IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE AND VACATE SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT AND WRIT OF EXECUTION all interested to the electronic address as listed for each party and attorney below, using the e-filing service pursuant to 2019 California Rules of Court Rule 2.251.(b), Electronic service

| | |
|---|---|
| Patrick Miller<br>P Miller Legal Services<br>285 E. California, Unite 201<br>Pasadena, CA 91106<br>Partick.miller@pmillerlegal.com | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 2/17/2021, at Irvine, California.

*Michael Sayer*
Michael Sayer

- 3 –
DECLARATION OF REEM HANNA IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE AND VACATE SISTER STATE JUDGMENT AND TO VACATE THE ABSTRACT OF JUDGMENT AND WRIT OF EXECUTION

# EXHIBIT 5

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*
P MILLER LEGAL SERVICES
PATRICK MILLER
285 E CALIFORNIA BLVD UNIT 102
PASADENA, CA 91106

TELEPHONE NO: 213 364 7581        FAX NO *(Optional)*:
E-MAIL ADDRESS *(Optional)*: patrick.miller@pmillerlegal.com
ATTORNEY FOR *(Name)*:

**POS-010**

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, 92701-4045
BRANCH NAME: Superior Court of California, County of Orange

PLAINTIFF / PETITIONER: Belgium Investments 960 Bay Dr, LLC, a California Corp.
DEFENDANT / RESPONDENT: Bassem Essam El Mallakh

**PROOF OF SERVICE OF SUMMONS**

CASE NUMBER:
30-2020-01148745-CU-EN-CJC

Ref. No. or File No.:
4697271

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☐ summons
   b. ☐ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents)*: NOTICE OF ENTRY OF JUDGMENT ON SISTER-STATE JUDGMENT (EJ-110) , Conformed APPLICATION FOR ENTRY OF JUDGMENT ON SISTER-STATE JUDGMENT (EJ-105) , Conformed Copy FINAL JUDGMENT AGAINST BASSEM ESSAM EL MALLAKH dated February 21, 2020
3. a. Party served *(specify name of party as shown on documents served)*:
      BASSEM ESSAM EL MALLAKH
   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
4. Address where the party was served:
   116 ROCKEFELLER, IRVINE, CA 92612
5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:                    (2) at *(time)*:
   b. ☒ **by substituted service.** On *(date)*: Sun, Sep 13 2020                    at *(time)*: 09:20 PM          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:
      by leaving copies with Hanna Reem co-occupant to BASSEM ESSAM EL MALLAKH
      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☒ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☒ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: Sep 14 2020 from *(city)*: Santa ana                    or ☐ a declaration of mailing is attached.
      (5) ☒ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Page 1 of 2
Code of Civil Procedure, § 417.10

| | |
|---|---|
| PLAINTIFF / PETITIONER: Belgium Investments 960 Bay Dr, LLC, a California Corp. | CASE NUMBER: |
| DEFENDANT / RESPONDENT: Bassem Essam El Mallakh | 30-2020-01148745-CU-EN-CJC |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
    (1)  on *(date)*:          (2)  from *(city)*:
    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section)*:

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  ☒  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of *(specify)*:
  c.  ☐  as occupant.
  d.  ☐  On behalf of *(specify)*:
    under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) | |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) | |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) | |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) | |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) | |
| ☐ other: | | |

7.  **Person who served papers**
  a.  Name:      Michael Danley
  b.  Address:    333 City Blvd 17th Flr, Orange, Ca 92868
  c.  Telephone number:  714-971-2217
  d.  **The fee** for service was:  $71.98
  e.  I am:
    (1)  ☐  not a registered California process server.
    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3)  ☒  a registered California process server:
      (i)  ☐ owner  ☐ employee  ☐ independent contractor
      (ii)  Registration No:  Reg Orange Co. 1782
      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    or
9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  9/15/20

Michael Danley
_____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

_____
(SIGNATURE)

| PLAINTIFF / PETITIONER: Belgium Investments 960 Bay Dr, LLC, a California Corp. | MC-031 |
|---|---|
| DEFENDANT / RESPONDENT: Bassem Essam El Mallakh | |

CASE NUMBER:
30-2020-01148745-CU-EN-CJC

## DECLARATION OF DILIGENCE

(This form must be attached to another form or court paper before it can be filed in court.)

1) Unsuccessful Attempt: Sep 12, 2020, 10:05 am PDT at 116 ROCKEFELLER, IRVINE, CA 92612

I received this service last week of July I made many attempts to serve the defendant, several of the attempts were at other address such as 405 Rockefeller Irvine Occupant never hear of the defendant. Also 606 Rockefeller Irvine again occupant never heard of the defendant.

2) Unsuccessful Attempt: Sep 13, 2020, 9:10 am PDT at 116 ROCKEFELLER, IRVINE, CA 92612
No answer at door

3) Unsuccessful Attempt: Sep 13, 2020, 8:27 pm PDT at 116 ROCKEFELLER, IRVINE, CA 92612
No answer at door

4) Successful Attempt: Sep 13, 2020, 9:20 pm PDT at 116 ROCKEFELLER, IRVINE, CA 92612 received by Hanna Reem co-occupant to BASSEM ESSAM EL MALLAKH

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   9/15/20

Michael Danley
_____
                    (TYPE OR PRINT NAME)

                                                            _____
                                                            (SIGNATURE OF DECLARANT)

☐ Attorney for    ☐ Plaintiff    ☐ Petitioner    ☐ Defendant
☐ Respondent    ☐ Other (Specify):

# EXHIBIT 7

# LEASE WITH OPTION TO PURCHASE

This Agreement, dated January 1 2017, by and between an individual known as Bassem Elmallakh of 525 Broadway, Santa Monica, California, 90401, hereinafter known as the "Landlord",

**AND**

An individual known as Reem Hanna, hereinafter known as the "Tenant(s)", agree to the following:

**OCCUPANT(S)**: The Premises is to be occupied strictly as a residential dwelling with only the Tenant(s) mentioned above as the Occupant(s).

**OFFER TO RENT**: The Landlord hereby rents to the Tenant(s), subject to the following terms and conditions of this Agreement, a condominium with the address of 116 Rockefeller , Irvine, California, 92612 consisting of 3.5 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant(s).

**PURPOSE**: The Tenant(s) and any Occupant(s) may only use the Premises as a residential dwelling. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.

**FURNISHINGS**: The Premises is furnished with the following:

Bedroom Set(s), Dining Room Set(s), Kitchen Set (Including Pots, Pans, Glasses, Mugs, Dishes, etc.), Living Room Set(s) and all other furnishings to be provided by the Tenant(s). Any damage to the Landlord's furnishings shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or less the Security Deposit.

**APPLIANCES**: The Landlord shall provide the following appliances:

Air Conditioner(s), Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Iron (for Clothes), Microwave, Oven(s), Refrigerator, Stove(s), Television(s), Washer (for Laundry), with all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or less the Security Deposit.

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning on January 1 2017 and ending on December 31 2024 with the Tenant(s) having the option to continue to occupy the Premises under the same terms and conditions of this Agreement under a Month-to-Month arrangement (Tenancy at Will) with either the Landlord or Tenant having the option to cancel the tenancy with at least thirty (30) days notice or the minimum time-period set by the State, whichever is shorter. For the Tenant to continue under Month-to-Month tenancy at the expiration of the Lease Term, the Landlord must be notified within sixty (60) days before the end of the Lease Term. Hereinafter known as the "Lease Term".

**RENT**: Tenant(s) shall pay the Landlord in equal monthly installments of $3,000.00 (US Dollars) hereinafter known as the "Rent". The Rent will be due on the First (1st) of every month and be paid via the following instructions:

Money Wire

**NON-SUFFICIENT FUNDS (NSF CHECKS)**: If the Tenant(s) attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be no fee (US Dollars).

**LATE FEE**: If rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of:

Calculated as 10% percent of the monthly rent per occurrence for each month payment that is late after the 4th Day rent is due.

**FIRST (1ST) MONTH'S RENT**: First (1st) month's rent shall be due by the Tenant(s) upon the execution of this Agreement.

**PRE-PAYMENT**: The Landlord shall not require any pre-payment of rent by the Tenant(s).

**PRORATION PERIOD**: The Tenant(s) will not move into the Premises before the start of the Lease Term.

**SECURITY DEPOSIT**: The Tenant(s) shall not be obligated to pay a Security Deposit as part of this Agreement.

**POSSESSION**: Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

**OPTION TO PURCHASE**. The Tenant(s) shall have the right to purchase the Premises described herein for 1,000,000.00 at any time during the course of the Lease Term, along with any renewal periods or extensions, by providing written notice to the Landlord along with a deposit of $50,000.00 that is subject to the terms and conditions of a Purchase and Sale Agreement to be negotiated, in "good faith", between the Landlord and Tenant(s).

If the Landlord and Tenant(s) cannot produce a signed Purchase and Sale Agreement within a reasonable time period then the deposit shall be refunded to the Tenant(s) and this Lease Agreement shall continue under its terms and conditions.

If the option to purchase is exercised by the Tenant(s) all Rent that is paid to the Landlord shall remain separate from any and all deposits, consideration, or payments, made to the Landlord in regards to the purchase of the Premises.

**RECORDING**. The Tenant(s) shall be withheld from recording this Option to Purchase unless the Tenant(s) has the written consent from the Landlord.

**ACCESS**: Upon the beginning of the Proration Period or the start of the Lease Term, whichever is earlier, the Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any

Page 2

replacements are needed, the Landlord may provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or the fee will be subtracted from the Security Deposit.

**MOVE-IN INSPECTION**: Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises.

**SUBLETTING**: The Tenant(s) shall not have the right to sub-let the Premises or any part thereof without the prior written consent of the Landlord. If consent is granted by the Landlord, the Tenant(s) will be responsible for all actions and liabilities of the Sublessee including but not limited to: damage to the Premises, non-payment of rent, and any eviction process (In the event of an eviction the Tenant(s) shall be responsible for all court filing fee(s), representation, and any other fee(s) associated with removing the Sublessee). The consent by the Landlord to one sub-let shall not be deemed to be consent to any subsequent subletting.

**ABANDONMENT**: If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

**ASSIGNMENT**: Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING**: The Landlord shall provide the Tenant(s) 2 Parking Spaces.

The Landlord shall not charge a fee for the 2 Parking Spaces.

**RIGHT OF ENTRY**: The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.

**SALE OF PROPERTY**: If the Premises is sold, the Tenant(s) is to be notified of the new Owner, and if there is a new Manager, their contact details for repairs and maintenance shall be forwarded. If the Premises is conveyed to another party, the new owner shall not have the right to terminate this Agreement and it shall continue under the terms and conditions agreed upon by the Landlord and Tenant(s).

**UTILITIES**: The Landlord shall not pay for any of the utilities and services and will be the responsibility of the Tenant(s).

**MAINTENANCE, REPAIRS, OR ALTERATIONS**: The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building. If the Premises includes a washer, dryer, freezer, dehumidifier unit and/or air conditioning unit, the Landlord makes no warranty as to the repair or replacement of units if one or all shall fail to

operate. The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION**: The Tenant(s) may be allowed to cancel this Agreement under the following conditions:
The Tenant(s) must provide at least 30 days' notice. During the notice period of 30 days the rent shall be paid in accordance with this Agreement.

**PETS**: The Tenant(s) shall not be allowed to have pets on the Premises or common areas except those that are necessary for individuals with disabilities.

**NOISE/WASTE**: The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS**: There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than forty-eight hours unless otherwise approved by the Landlord.

**SMOKING POLICY**: Smoking on the Premises is prohibited on the entire property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW**: The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT**: If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or

on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S)**: Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES**: If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY**: If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SURRENDER OF PREMISES**: The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER**: A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING**: If the Tenant(s) possess(es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims or damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS**: The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**NOTICES**: Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:

**Landlord's/Agent's Mailing Address**

Bassem Elmallakh
525 Broadway, Santa Monica, California, 90401

**Tenant(s)'s Mailing Address**

Reem Hanna
116 Rockefeller , Irvine, California, 92612

**AGENT/MANAGER**: The Landlord does not have an Agent or Manager and all contact in regards to any repair, maintenance, or complaint must go through the Landlord through the following contact information:

Landlord's Phone Number: (949) 413-7074 Email: bassemelmallakh@gmail.com.

**PREMISES DEEMED UNINHABITABLE**: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**ACCESS BY LANDLORD**: The Landlord must grant at least twenty-four (24) hours notice to the Tenant(s) prior to entry for maintenance or any non-emergency reason. For any move-out inspection forty-eight (48) hours notice by Landlord shall be required.

**BED BUGS**: The Landlord acknowledges that there is no existence of bed bugs on the Premises. In addition, there shall be an addendum attached to this agreement that certifies the Tenant(s) have inspected the Premises and any existing furniture and confirm that bed bugs do not exist on the Premises.

**MEGAN'S LAW**: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

**SERVICEMEMBERS CIVIL RELIEF ACT:** In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT:** The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW:** This Agreement is to be governed under the laws located in the State of California.

**ADDITIONAL TERMS AND CONDITIONS:** There are no further terms or conditions that will be added to this Agreement other than any attachments or addendums attached.

**ENTIRE AGREEMENT:** This Agreement contains all the terms agreed to by the parties relating to its subject matter including any attachments or addendums. This Agreement replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on January 1 2017.


**LANDLORD(S) SIGNATURE**


**Landlord's Signature** _____
By Bassem ElMallakh


**TENANT(S) SIGNATURE**


**Tenant's Signature** _____

**EXHIBIT "3"**

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

BELGIUM INVESTMENTS 960 BAY
DR, LLC, a California LLC, et al.,
    Plaintiffs,

vs.

SPENCER BLANK, et al.,
    Defendants.
_____/

CASE NO: 18-28145 CA

## <u>NOTICE OF FILING EXHIBITS TO DEFENDANT, BASSEM ESSEM EL MALLAKH'S VERIFIED MOTION TO SET ASIDE ENTRY OF JUDICIAL DEFAULT AND VACATE FINAL JUDGMENT</u>

   Defendant, BASSEM ESSAM EL MALLAKH, (hereinafter "Defendant"), through

council, gives Notice of Filing Exhibits A through C referenced within to its Verified Motion to

Set Aside Entry of Judicial Default and Vacate Final Judgment.

## <u>CERTIFICATE OF SERVICE</u>

   **I HEREBY CERTIFIED** that a true and correct copy of the foregoing has been filed and

served via the Court's eFiling Portal and served via E-mail on this 22nd day of February 2021, to

all counsel on record.

     **SOUTH FLORIDA LAW, PLLC**
     1920 E. Hallandale Beach Blvd., Ste. 702
     Hallandale Beach, FL 33009
     Direct: (917) 442-4085
     Office: (954) 900-8885
     Fax: (954) 900-8886

     */s/ Frank DelloRusso*_____
     FRANK DELLORUSSO
     Florida Bar No. 111949
     *fdellorusso@southfloridalawpllc.com*

**EXHIBIT A**

Mohamed Rostom and Bassem Essam
525 Broadway #5037

Print    Close ✖

**Scroll** to the bottom of each page. **Click** in the colored box above each colored signature or initials box to sign. Use the navigation at the bottom to click to the next page. This is a legally binding document.

Sway

✦ ALLIANCE

# CALIFORNIA LEASE AGREEMENT

| 1. | LANDLORD NAME: | PRIII/Broadstone Trino, LLC |
| | LANDLORD'S AGENT: | Alliance Communities Inc. |
| | LANDLORD ADDRESS: | 525 Broadway, Santa Monica, CA 90401 |
| | PHONE/E-MAIL: | (310) 393-9696 / sway@allresco.com |

| 2. | RESIDENT NAME: | Mohamed Rostom and Bassem Essam |
| | OTHER OCCUPANTS: | |
| | RESIDENT ADDRESS: | 525 Broadway, Santa Monica, CA 90401 |
| | | UNIT: #5037    PARKING SPACE: #P2 84, P2 86    MAILBOX: #5037 |

| 3. | LEASE TERM: | 1 year | ☑ Lease Renewal: |
| | | START DATE: November 1, 2018 | END DATE: October 31, 2019 |
| | | MOVE-IN DATE: November 1, 2018 | |

| 4. | MONTHLY CHARGES | | 5. | DEPOSITS | |
|---|---|---|---|---|---|
| Base Rent | | $6,250.00 | | Deposit | $3,000.00 |
| **TOTAL** | | **$6,250.00** | | **TOTAL** | **$3,000.00** |

| 6. | KEYS: | ❏ APARTMENT | 2 | ❏ MAIL | 2 |
|---|---|---|---|---|---|
| | | ❏ REMOTE | 2 | ❏ POOL | 0 |
| | | ❏ GARAGE | 0 | ❏ STORAGE | 0 |
| | | ❏ CARD | 0 | ❏ COMMON AREA | 0 |

This Lease is entered into on the date signed, by and between the above named parties herein after called respectively LANDLORD and RESIDENT. In the event of more than one Resident, each Resident is jointly and severally liable for each provision of this Lease and service of any notice or demand upon one shall constitute notice to each other Resident.

Each Resident states that they are of legal age to enter into a binding Lease for lodging. All obligations hereunder are to be performed in the county and state where the Community is located. No oral agreements have been entered into with respect to this Lease. This Lease shall not be modified unless by an instrument in writing signed by Resident and an Agent of Landlord. Landlord hereby leases and Resident hereby hires and takes the premises as defined in Section 2 outlining the leased premises for the term specified herein and subject to all of the terms and provisions set forth.

## A. TERM OF LEASE

7. **INITIAL TERM:**   The initial term of this Lease shall commence and end as outlined in Section 3 and shall **automatically continue as a tenancy from month-to-month upon expiration of the term.**

8. **LEASE EXPIRATION:**   Either party, Landlord or Resident, may terminate this Lease after the initial term by giving the other party at least **thirty (30) days'** written notice of its intention to terminate the tenancy; provided that if Resident has been residing in the Community for more than one (1) year, Landlord shall give Resident at least sixty (60) days written notice of its intention to termination the tenancy. In the absence of written notice of termination, or a new lease, after the expiration of the initial term, the tenancy shall become month-to-month subject to a rental increase and applicable fees as allowed under state law. Resident agrees to pay all rent up to and including the end of any **thirty (30) day** (or, as applicable, sixty (60) day) notice period (which may not occur before the end of the Lease term) or until the premises are re-occupied, whichever occurs first.
Initials:   

9. **FAILURE TO VACATE AFTER NOTICE:**   If Resident gives written notice to vacate the premises and fails to completely vacate prior to the expiration of the notice, Resident shall be liable, unless otherwise prohibited by law, in addition to all other damages provided for under this Lease, for the daily rental based on a pro-ration of the monthly rental provided for in the Lease for each day Resident remains in the premises. In addition, Landlord may collect cost for loss suffered from future resident losses, legal costs, lost rent, and other expenses, and any other amount allowed by law.

10. **OPTION FOR EARLY TERMINATION:**   Resident is expected to remain a Resident for the entire term specified in the Lease. If Resident fails to do so, Resident will be responsible to Landlord for all damages provided by law, including (but not limited to) rent due through the end of the contract term, minus rents paid by a replacement resident (if any). This amount will vary depending upon how long it takes Landlord to find a replacement resident which typically cannot be determined in advance of move-out.

To avoid this uncertainty, Resident may choose to exercise an Early Termination Option. Resident understands and acknowledges that Landlord is not legally obligated to allow early termination of the Lease unless provided for pursuant to statutory or common law. To exercise this option, Resident must deliver to Landlord:

   **i.**   A written notice stating that Resident has elected to exercise the Early Termination Option;
   **ii.**   An early termination option payment of **$12,500.00**;
   **iii.**   An executed agreement for repayment of concessions received prior to the early termination (if applicable, see Concession Section); and
   **iv.**   Payment of rent and other amounts due through the new Lease end date.

When Landlord has (1) received the written notice and the Early Termination Option payment and (2) signed the notice, the Lease end date will be amended. The new Lease end date will be the date specified in the notice which must be at least **thirty** days after the written election and payment are given to Landlord. Exercise of the Early Termination Option will affect only Resident's rent obligations after the new Lease end date. Resident must comply with all other Lease obligations.

♿ Initials: 

1



Mohamed Rostom and Bassem Essam
525 Broadway #5037

🖨 Print    Close ✕

**Scroll** to the bottom of each page. **Click** in the colored box above each colored signature or initials box to sign. Use the navigation at the bottom to click to the next page. This is a legally binding document.

Sway     **ALLIANCE**

15. Assistive Animals (including companion animals): Management will accept and evaluate a request for reasonable accommodation to allow Resident to have an assistive animal. Assistive animals for persons with disabilities are not considered pets and are not subject to the following requirements:
   a. Spayed/Neutered requirement;
   b. Breed restriction (if particular animal is required because of disability);
   c. Age restriction (if particular animal is required because of disability);
   d. Weight restriction (if particular animal is required because of disability);
   e. The number of assistive animals per apartment shall be evaluated on case by case basis;
   f. Monthly pet rent;
   g. Pet fees and/or deposits.

   A request for a Reasonable Accommodation must be submitted for Landlord's review and Landlord shall not unreasonably withhold its written approval for an assistive animal or animals. Resident hereby agrees to comply with the terms and conditions of this Animal Addendum, except for the exceptions set forth in this paragraph 15 for assistive animals. If additional modifications to the rules set forth in this Animal Addendum are required because of a disability, Resident should make an accommodation request to Landlord.

16. This addendum shall terminate without affecting the Lease or Resident's responsibilities under the lease and Resident shall remove the animal immediately if any of the following occurs:
   a. Payment of Pet Rent is delinquent
   b. The animal displays aggressive behavior
   c. Landlord perceives the animal to be dangerous or disruptive to Premises, other residents, guest or employees.
   d. The animal does not have all current and required vaccinations.
   e. Upon thirty (30) day notice by either party to the other of intent to terminate this Addendum

17. Resident agrees to hold harmless and indemnify Landlord from all liability pertaining to animals on the property and Resident shall hold Landlord harmless and indemnify Landlord for any and all damages or costs in connection with the animal.

Resident(s) acknowledges to have read this Addendum and understands the terms and conditions contained herein.

 **Signed by Mohamed Rostom**
Tue Oct 23 2018 13:54:57 PM PDT
Key: 0C381E54; IP Address: 172.91.138.181

Mohamed Rostom (Resident)                                    Date

 **Signed by Bassem Essam**
Thu Nov 8 2018 13:53:57 PM PST
Key: E9BA82E6; IP Address: 172.91.138.181

Bassem Essam (Resident)                                    Date

 **Signed by Matthew Gray**
Fri Nov 9 2018 09:10:01 AM PST
Key: 16DAD42C; IP Address: 71.177.221.208

(Owner/Agent)                                    Date

   Initials:       12    

Mohamed Rostom and Bassem Essam
525 Broadway #5037


Print    Close

**Scroll** to the bottom of each page. **Click** in the colored box above each colored signature or initials box to sign. Use the navigation at the bottom to click to the next page. This is a legally binding document.

Sway  ALLIANCE

Failure to abide by parking requirements, rules, regulations or guidelines, including, but not limited to properly display parking permits, may result in the vehicle being towed with or without notice at Resident's own expense.

Resident understands and agrees that parking privileges may be revoked at any time for not abiding by all of the rules and regulations, which may be adopted from time to time by Landlord to promote the safe and accessible use of the parking facility.

| Violations that will be towed without notice: | no permit, stolen or forged permit, improperly displayed permit |
| | parked in a non-designated parking area, blocking trash enclosure and/or entry/exit driveways, parked in walkway, parked along a curb, parked in a visitor space for over 24 hours. |
| | prohibited vehicle parked |
| Violations that will be towed with notice: | parked in same location for over 72 hours, parked in visitor parking, expired registration |
| Violations that will be fined $50.00: | Washing vehicle within the community area, automotive improvement or repairs |
| Violations that may be booted or towed at the vehicle owner's expense: | vehicle must be parked completely within the lines painted on the ground and must not extend beyond the end of the lines. |

17. **Guest Parking Permits:** Resident understands that Resident will be issued **zero (0)** parking permits for guests and replacement permits will be **$0.00** each. Each permit is required to be clearly visible at all times through the front windshield of the vehicle, and it is the sole responsibility of the Resident to check regularly that each permit is secured on the appropriate vehicle and visible. Failure to properly display parking permits may result in the vehicle towed at Resident's own expense.

18. **Solicitors and Salespeople:** Solicitors are not allowed in the Community. Residents shall report all solicitors or salespeople to the Landlord immediately.

19. **Car Wash and Repair:** Vehicle repairs, including oil changes, and washing of vehicles are prohibited unless there is a designated area provided by Landlord.

20. **Moving of Furniture:** Landlord may designate the time and method for moving items to and from the Unit such as any furniture, merchandise, goods, freight or other such items. Residents may not move furniture to and from the Unit through the lobby, patio doors, or through the use of elevators (if available) without Landlord's permission. If elevators are installed at the Community, Landlord does not guaranty that the elevators will be available for use by Resident nor shall Landlord be liable for any loss resulting from the unavailability of elevator service.

21. **Parking:** Resident shall report in writing to Landlord any changes to the make, model and license plate number of every vehicle authorized to park at the Community. Commercial vehicles, boats and recreational vehicles are not authorized to park on the Premises unless Landlord has a designated location.

22. **Notification of Changes:** Resident shall notify Landlord immediately in writing with any change to Resident's employer, employer telephone number, alternate phone numbers, emergency contact and other pertinent information.

Resident(s) acknowledges to have read this Addendum and understands the terms and conditions contained herein.



Signed by Mohamed Rostom
Tue Oct 23 2018 13:55:23 PM PDT
Key: DC3A1E54; IP Address: 172.91.138.181

Mohamed Rostom *(Resident)*      Date



Signed by Bassem Essam
Thu Nov 8 2018 13:55:28 PM PST
Key: F98A8058; IP Address: 172.91.138.181

Bassem Essam *(Resident)*      Date

Signed by Matthew Gray
Fri Nov 9 2018 09:10:04 AM PST
Key: 16DAD42C; IP Address: 71.177.221.208

*(Owner/Agent)*      Date

   

EXHIBIT B

BELGIUM INVESTMENTS 960 BAY
DR, LLC, a California LLC, et al.,

          Plaintiffs,

vs.

SPENCER BLANK, et al.,

          Defendants.

_____/

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO: 18-28145 CA

## AFFIDAVIT IN SUPPORT OF MOTION TO VACATE FOR FINAL JUDGMENT

STATE OF _California_ )
) ss:
COUNTY OF _Los Angeles_ )

**BEFORE ME**, the undersigned authority, on this day personally appeared BASSEM ES-SAM EL MALLAKH who, upon being duly sworn, deposes and says (List statements in numerical order that Affiant is swearing to)

1.     I am the Defendant in this case and authorized to make this affidavit.

2.     I am over the age of 18 years and have personal knowledge of the facts contained in this Affidavit.

3.     On March 3, 2019, Process Server claimed Substitute Service was made to my sister, Reem Hanna ("Hanna") at 116 Rockefeller, Irvine, CA 92612.

4.     Hanna was never served and was unaware of any attempts made by Process Server.

5.     I never received notice of this lawsuit or the judgment against me in this case.

6.     I am unaware of any service attempted to be made to me or my sister.

7.     I only became aware of a judgment against me on November 16, 2020 when the County of Orange Clerk of Records sent a Courtesy Notice regarding a lien that was placed on my property.

I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this petition and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

Signature of Petitioner
Mailing Address _525 Broadway_
_Santa Monica, CA_
Telephone _949-413-7074_

STATE OF _Calif_ )
) ss:
COUNTY OF _Los Angeles_ )

The instrument was acknowledged before me on this _15_ day of _Feb_, 20_21_,
by _Bassam Essam Elmallakh_

_____ Personally Known
_X_ Produced Identification
_X_ Drivers License No. _CA D797337_

NOTARY PUBLIC/DEPUTY CLERK

_Kelly Charpenet_
Print, type, or stamp commissioned name of
notary or deputy clerk.

_Calif Jurat_



A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA  COUNTY OF _Los Angeles_
Subscribed and sworn to (or affirmed) before me on this _15_ day of _Feb_
20_21_ by _Bassam Essam Elmallakh_
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Kelly Charpenet_
(Signature of Notary)

KELLY CHARPENET
COMM. 2164890
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Oct. 24, 2020

The notary commission extended
pursuant to Executive Order N-63-20.

BELGIUM INVESTMENTS 960 BAY
DR, LLC, a California LLC, et al.,

              Plaintiffs,

vs.

SPENCER BLANK, et al.,

              Defendants.

_____/

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO: 18-28145 CA

## AFFIDAVIT IN SUPPORT OF MOTION TO VACATE FOR FINAL JUDGMENT

STATE OF ___California___ )
                      ) ss:
COUNTY OF ___Orange___ )

        BEFORE ME, the undersigned authority, on this day personally appeared REEM HANAJA
who, upon being duly sworn, deposes and says (List statements in numerical order that Affiant is
swearing to)

        1.      I am the Defendant's sister in this case and I am authorized to make this
affidavit.

        2.      I am over the age of 18 years and have personal knowledge of the facts
contained in this Affidavit.

        3.      On March 3, 2019, Process Server claimed Substitute Service was made to me,
on behalf of my brother, BASSEM ESSAM EL MALLAKH, at 116 Rockefeller, Irvine, CA
92612.

        4.      I was never served and was unaware of any attempts made by Process Server.

        5.      I never received notice of this lawsuit or the judgment against my brother in this
case.

        6.      I am unaware of any service attempted to be made to me or my brother.

**I understand that I am swearing or affirming under oath to the truthfulness of the claims
made in this petition and that the punishment for knowingly making a false statement
includes fines and/or imprisonment.**

Signature of Petitioner
Mailing Address _116 Rockefeller_
_Irvine CA 92612_
Telephone _____

**STATE OF** _____ )

                                ) ss:

**COUNTY OF** _____ )

The instrument was acknowledged before me on this _____ day of _____, 20_____, _____

by _____ .

_____ **Personally Known**

_____ **Produced Identification**          NOTARY PUBLIC/DEPUTY CLERK

_____ **Drivers License No.**

**SEE ATTACHED FOR NOTARY**

2-18-2021

_____

**Print, type, or stamp commissioned name of**

**notary or deputy clerk.**

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___California___ }

County of ___Orange___ }

On _FEBRUARY 15,2021_ before me, ___Rose L. Newman, Notary Public___,
(Here insert name and title of the officer)

personally appeared _REEM HANNA_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature          (Notary Public Seal)

ROSE L. NEWMAN
COMM...2251921
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. August 28, 2022

---

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT
_AFFIDAVIT IN SUPPORT OF MOTION_
_TO VACATE FOR FINAL JUDGEMENT_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _24_ Document Date _2-15-2021_

CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM
*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgement is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

**EXHIBIT "4"**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 18-28145 CA


BELGIUM INVESTMENTS 960 BAY DR, LLC,
A CALIFORNIA LLC, ET AL.,

    Plaintiff,

    -vs-

SPENCER BLANK, ET AL.,

    Defendant.
_____/


Deposition Taken via Zoom

4:40 p.m. to 6:01 p.m.


DEPOSITION OF

BASSEM EL MALLAKH


    Taken before Erica Hylton, Court Reporter, a

Notary Public for the State of Florida at Large,

pursuant to Notice of Taking Deposition Duces Tecum

filed in the above-styled cause.


EXHIBIT 5

```
 1                      APPEARANCES:

 2        On Behalf of the Plaintiff:

 3        BERNHARD LAW FIRM PLLC

 4        BY: ANDREW BERNHARD

 5        333 SE 2nd Avenue, Suite 2000

 6        Miami, Florida 33131

 7        (786) 871-3349

 8        abernhard@bernhardlawfirm.com

 9

10        On Behalf of the Defendant:

11        SOUTH FLORIDA LAW, PLLC

12        BY:  FRANK DELLORUSSO, ESQUIRE

13        1920 East Hallandale Beach Boulevard

14        Suite 702

15        Hallandale, Florida 33009

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 5

3

1                           INDEX

2      TESTIMONY OF BASSEM EL MALLAKH          PAGE

3      Examination by Mr. Bernhard             5

4      Examination by Mr. DelloRusso           61

5      Certificate of Oath                     68

6      Certificate of Reporter                 69

7


8                     INDEX OF EXHIBITS

9              DEFENDANT'S EXHIBITS MARKED

10     NUMBER          DESCRIPTION           PAGE

11     Exhibit 6       39-page document       20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 5

1        MR. BERNHARD:  I can see, Bassem, that you're now

2    where Reem was previously sitting.  We're invoking

3    the rule, which means that I don't want the other

4    witness' testimony to be modified by what you have

5    to say.  Can you confirm that Reem is not in the

6    room with you and not listening to your testimony?

7        MR. EL MALLAKH:  Yes.  She is not.  We just

8    switched rooms.  She went upstairs, and I came

9    downstairs.

10        MR. BERNHARD:  Okay.  I appreciate that.

11    Thank you.  And we're all just going to rely in

12    good faith that you're going to adhere to that,

13    right?

14        MR. EL MALLAKH:  Uh-huh (affirmative).

15        MR. BERNHARD:  Okay.

16  THEREUPON:

17                BASSEM EL MALLAKH,

18        was examined and testified as follows:

19                DIRECT EXAMINATION

20  BY MR. BERNHARD:

21    Q.   So as I'm sure you've already heard, my name

22  is Andrew.  I'm taking your deposition.  You've seen how

23  it worked with Reem.  But I'll just go over the ground

24  rules really fast with you.  Have you ever had your

25  deposition taken before?

# EXHIBIT 5

1        A.   Yes, I have.

2        Q.   Okay.  When was that?

3        A.   Back in 2013, 2014.

4        Q.   Okay.  What were the circumstances?

5        A.   Oh.  One in like 2010 too like for some

6   accident in the street that I had to like go and be the

7   deposed for for some stranger, you know.

8        Q.   Okay.  So deposition 2010 for an accident you

9   witnessed, and a deposition in 2013 and 2014.  What was

10  that for?

11       A.   I had a lawsuit.  The previous company that I

12  worked for were suing me.  And then I won that lawsuit.

13       Q.   Okay.  Where was that lawsuit?

14       A.   It was in Irvine, California.

15       Q.   Okay.  And -- and what was the name of the

16  company suing you?

17       A.   It was Global Premier Development.

18       Q.   Global Premier Development?

19       A.   Uh-huh (affirmative).

20       Q.   Okay.  And what were they suing you for?

21       A.   They were suing me for -- they thought that I

22  took clients from their company and used them to benefit

23  my own new business, but then it was all incorrect; and

24  you know, that was -- that was settled.

25       Q.   So was it settled or did you win?

# EXHIBIT 5

1    A.   I won, actually.  I won.  I won at -- at the

2  actual court on the hearing date.  Their attorneys, you

3  know, said, "Hey" -- they told the judge, "We're going

4  to go ahead and -- and -- and remove the -- the -- the

5  lawsuit, you know, the claim, and -- and just settle."

6    Q.   Okay.  So I just -- you know, forgive me

7  because I might just have a different understanding of

8  -- of the difference between won and settled.  What do

9  you mean when you say you won?

10   A.   So basically they -- they -- they couldn't

11 produce any documents that shows that I really took any

12 clients from them.

13   Q.   Okay.  Did you have an adjudication by a judge

14 that said that the other side lost and you won?

15   A.   No.  Right when the hearing started, the

16 lawyer -- the plaintiff lawyer told the judge that we

17 are going to go ahead and -- and decline the -- the

18 lawsuit.

19   Q.   Okay.  So for the record, you settled the case

20 before there was an adjudication; is that right?

21   A.   Yeah.

22   Q.   Okay.  And did you enter into like a

23 settlement agreement?  Without telling me the contents,

24 did you enter into a settlement agreement?

25   A.   Yeah.  We had a settlement agreement.

# EXHIBIT 5

1      Q.   Okay.  And so the -- the court there never made a

2  final determination as to who won or who lost; instead,

3  you just settled the case?

4      A.   I'm not sure.  I'm not sure how it worked

5  after.  I just know that, you know, we signed the

6  settlement agreement.

7      Q.   Okay.  Was that -- you said that was right

8  before things were going to be produced to the judge; is

9  that right?

10     A.   Yeah.  They didn't have any documents to -- to

11 show or prove that I really did take any of their

12 clients.

13     Q.   Okay.  And when did that case settle out?

14     A.   Sometime in 2014, I believe.

15     Q.   Okay.  And that was *Global Premier Development

16 versus Bassem El Mallakh*.  Is that the name of it?

17     A.   That -- my name is -- I have -- I grew up in

18 Egypt, and in Egypt you actually have to have four

19 names.  So my name on my ID is my first name, my dad's

20 name, my grandfather's name, and then my last name.  So

21 my name is Bassem Essam Victor El Mallakh.

22     Q.   Okay.  So in that -- your first name is

23 Bassem; your last name is El Mallakh; and your middle

24 names are Essam and Victor.

25     A.   You can call it middle name, but it's actually

EXHIBIT 5

1  technically my dad's name, and Victor is my grandfather's

2  name.

3      Q.    Okay.

4      A.    It's a different system in Egypt.

5      Q.    Is everybody's last name -- for your

6  grandfather, your father, and you, is everybody's last

7  name El Mallakh.

8      A.    Usually the last name, it could be like -- you

9  know, it could be 20 generations back.  It could be like

10  your great, great, great grandfather, you know.  So some

11  people just use a short of, obviously, first dad's,

12  grandfather, and then the last name it could be your

13  fourth grandfather, it could be 20, you know,

14  grandfather's back.

15      Q.    Okay.  My question was just whether you, your

16  father, your grandfather all use the last name El

17  Mallakh.

18      A.    Yes.  We all use the same last name, El

19  Mallakh.

20      Q.    Okay.  Now, so that case, the 2013 case --

21  2014 case in Irvine was *Global Premier Development*

22  *versus Bassem Essam Victor El Mallakh*?

23      A.    Yes.

24      Q.    Okay.

25      A.    And also, you know, a few LLCs.

# EXHIBIT 5

1    Q.    And a few LLCs.  Any LLCs from this case?

2    A.    Yeah.  Actually, it was this -- this LLC as

3  well.

4    Q.    Which LLC?

5    A.    Belgium Investments 960 Bay Drive LLC.

6    Q.    Okay.  And was that -- was Belgium Investments

7  a plaintiff, a defendant?

8    A.    Defendant.

9    Q.    And do you know whether Jean Claude Reusche

10  (phonetic) was involved in that case?

11    A.    They sued the LLCs -- they sued all the LLCs,

12  so Jean Claude Reusche is actually the -- the larger

13  partner in that LLC.  So I basically, obviously, had to

14  defend everybody and -- and defend the case.  I don't

15  want -- I don't want the company to sue my partners.

16    Q.    Okay.  So the question was: was Jean Claude

17  Reusche involved in that case?

18    A.    He was not.

19    Q.    Okay.  Did you notify Jean Claude Reusche of

20  that lawsuit?

21    A.    I notified my other partner about it, and I

22  told him, you know, "We're getting sued, and it could --

23  I don't think it's a big matter.  It could finish in a

24  month.  It could finish in two.  I'll let you when it's

25  settled."  And, you know, it was not -- I guess it was

EXHIBIT 5

1    not like some big deal that I thought it was going to, you

2    know, take some time.

3        Q.   Okay.  Who is your other partner?

4        A.   His name is Bernard Petite (phonetic).

5        Q.   Okay.  So you notified Bernard Petite.  Did

6    you notify Jean Claude Reusche?

7        A.   Yeah.  I notified, but not -- because Bernard

8    was my partner in the B. B. Global Investment Partners.

9        Q.   But --

10       A.   Jean Claude was not part of that.  Basically,

11   it's the general managing partner of the LLCs, and 950

12   Bay Drive is one of them.

13       Q.   Did you notify Jean Claude Reusche is my

14   question.

15       A.   I did not.

16       Q.   And do you recall when that lawsuit began?

17       A.   I believe early 2014.

18       Q.   Do you believe it also settled in 2014?

19       A.   I believe what you said?

20       Q.   Do you think it settled also in 2014?

21       A.   Oh, yeah.  It is -- it is -- it is settled in

22   -- either in late 2014 or early 2015.  I don't know the

23   exact dates.

24       Q.   Okay.  And you said that you sat for

25   deposition in that case?

# EXHIBIT 5

1    A.   Yes, I did.

2    Q.   Okay.  And any reason specifically that you

3 did not notify Jean Claude Reusche of that lawsuit?

4    A.   I just didn't think it was -- again, I just --

5 you know, know it's like, you know, I was -- I'm the

6 manager of the LLCs, so then I obviously have to take,

7 you know, the -- the managerial decisions when it comes

8 to anything related to the business, and I didn't think

9 -- it's like, you know, you can have an apartment

10 building and someone fall and break their leg, and then

11 they go and sue the LLC.  I have to be the one

12 responding.  I don't have to bother my silent partners

13 with any of the -- you know, these issues, especially

14 that I didn't think it was a big issue.

15        MR. DELLORUSSO:  Andrew, I'm being quiet here,

16     but I'm going to start instructing my client not to

17     answer if you don't stop getting -- you know, start

18     getting to the scope of the order.

19        MR. BERNHARD:  Sure.  Well, you know, in a

20     deposition, a person's previous experience in a

21     deposition is unquestionably within the scope of

22     their experience to a deposition.  It's standard

23     question.  Every single deposition I've ever sat in

24     is what depos have you sat through before and what

25     happened in them, so we have an understanding of

EXHIBIT 5

1          his comfort level and his experience with those

2          depositions.  So I'm literally just going off of

3          what your client's saying, right.

4                    MR. DELLORUSSO:  Okay.

5                    MR. BERNHARD:  Okay.

6                    MR. DELLORUSSO:  Keep going.

7  BY MR. BERNHARD:

8          Q.   And at that time, 2014, your understanding was

9  that Jean Claude Reusche was the majority owner of

10  Belgium Investments, correct?

11         A.   Yes.  Uh-huh (affirmative).  Yes.

12         Q.   So there is the 2013, 2014 lawsuit you just

13  talked about against you and Belgium Investments in

14  Irvine by Global Premier Development.  There is a 2010

15  accident in which you were just a witness and were not a

16  party; is that right?

17         A.   Yeah.  It was -- I was driving to work in the

18  morning, and then I literally saw like a car almost kind

19  of flying; and then it hit the car in front of me.  And

20  then I got out of the car, and then I started to help

21  the person that was in the car, you know, just to kind

22  of get him out of the car and whatnot.

23              And then when the -- when the cops came to --

24  to report it, you know, they took my information, and

25  then I was later deposed to give my witness deposition,

EXHIBIT 5

1  you know, tell them exactly what happened with that case --

2      Q.   Okay.

3      A.   -- when they asked.

4      Q.   Any other time you sat for a deposition?

5      A.   No.  That was it.

6      Q.   Okay.  Have you ever witnessed any other

7  deposition besides those two and --

8      A.   No.

9      Q.   -- the one for Ms. Hanna here today?

10     A.   No.

11     Q.   Okay.  So as you've seen now, your experience

12 and with Reem, I ask you questions; you give the

13 answers, and the court reporter writes everything down,

14 right.

15     A.   Absolutely.

16     Q.   Okay.  So like I said with Reem, I need you to

17 give oral answers because the court reporter can't write

18 down shrugs, uh-huhs, nods, anything like that, okay.

19 Can you give full verbal answers?

20     A.   Absolutely.

21     Q.   Okay.  If I don't state any question very

22 well, you don't understand what I say, just let us know.

23 I want to make sure you fully understand the question

24 before you answer, okay.

25     A.    I will ask you to repeat if I didn't hear you

EXHIBIT 5

1  well.

2      Q.   Perfect.  And if you don't understand it, ask

3  me to clarify.  My job is to -- is to make sure you get

4  what I'm asking, all right.

5      A.   Correct.

6      Q.   All right.  I want to make sure that whatever

7  you're telling us is the most accurate, exact, and

8  truthful answer you can provide, okay.

9      A.   I will do my absolute best.

10     Q.   Awesome.  If you want to take a break at any

11 time, just let us know.  I just ask you finish your

12 answer, and we'll take a break, all right.

13     A.   Will do.  I'll let you know if I need a break.

14     Q.   If at any time you are answering a question

15 and you realize that something you said before needs to

16 be clarified, elaborated on, modified in any way, please

17 let us know right then, all right.

18     A.   Sure.  I will.

19     Q.   I want to make sure that whatever answer

20 you're giving, they're your fullest, most honest,

21 exactly what you want to say for your deposition, all

22 right.

23     A.   I will.

24     Q.   If any time you think of any documents that

25 might help you, let me and your attorney know.  We might

# EXHIBIT 5

1  be able to find them and help you with your answers, all

2  right.

3      A.   I will share them on my screen.

4      Q.   Okay.  The next questions are formalities that

5  make sure that you're competent to testify today.

6  First, are you taking any medication or drugs of any

7  kind that might make it difficult for you to understand

8  and answer my questions honestly and accurately today?

9      A.   I'm not taking any drugs.

10     Q.   Okay.  Have you had any -- anything alcoholic

11  to drink in the last eight hours?

12     A.   I have not.

13     Q.   Are you sick at all today?

14     A.   I am not.

15     Q.   Are you currently under a doctor's care for

16  any illness?

17     A.   I am not.  I just have a sore throat that just

18  happened like three, four days ago.

19     Q.   Okay.

20     A.   It's in my left tonsil.

21     Q.   Will that sore throat in any way affect your

22  ability to understand my questions and answer truthfully

23  and honestly today?

24     A.   No.  It wouldn't affect my -- my answer or --

25  I mean, understanding the question, but if -- if my

# EXHIBIT 5

16

1   voice started getting a little rusty, I'm going to have some

2   water.

3       Q.   Okay.  Perfect.

4            Have you ever been arrested or convicted for

5   any acts of fraud or other crimes involving deceit?

6       A.   I have not.

7       Q.   Have you ever been accused in court of any

8   acts of fraud or other acts of deceit?

9       A.   I have not.

10      Q.   Okay.  Have you ever been sued for any act of

11  fraud, misrepresentation, or deceit?

12      A.   I have not.  No.  I have not.

13      Q.   To your knowledge, have you been sued for that

14  by Belgium Investments in this lawsuit today?

15      A.   I have -- I don't know anything about the

16  lawsuit of Belgium Investments.

17      Q.   You don't know anything about it whatsoever.

18      A.   Not -- I never received anything.  I guess

19  they were trying to serve me in the address that I don't

20  -- I don't live in anymore.

21      Q.   Is there any reason you can think of why you

22  would not be able to answer my questions fully and

23  truthfully today?

24      A.   No.  There's no reason.

25      Q.   And you understand you're speaking under

# EXHIBIT 5

1  penalty of perjury; is that right?

2       A.   Yes.

3       Q.   And that means that you're sworn to tell the

4  truth, the whole truth, nothing but the truth, and that

5  your failure to do so may be held as perjury; you

6  understand?

7       A.   Yes.

8       Q.   Okay.  And you understand that perjury is a

9  third degree felony under Florida statutes 837.02 and

10 92.525 punishable by prison and a fine?

11      A.   Yes.

12      Q.   And you agree to be sworn in and bound by

13 Florida notary; is that correct?

14      A.   I was sworn by a California notary.

15      Q.   Okay.

16           MR. BERNHARD:  Madam Court Reporter, are you a

17      California notary or a Florida notary?

18           THE REPORTER:  Florida.

19           THE WITNESS:  (Audio distortion)

20 BY MR. BERNHARD:

21      Q.   Okay.  So do you understand you've been sworn

22 in by a Florida notary, Bassem?

23      A.   Okay.  I did.  I wasn't sure if the -- the

24 court reporter was in California or in Florida.

25      Q.   Now do you understand that the court reporter

EXHIBIT 5

1  is in Florida and has sworn you in in Florida?

2      A.   Yes.

3      Q.   Do you agree to be bound by your oath and the

4  penalty of perjury in California the same?

5      A.   Yes.

6      Q.   Okay.  Now, I understood -- just again, for

7  clarity of the record since now you're under oath --

8  that you are at Reem's house at 116 Rockefeller, but

9  that you have assured she outside of the room and is not

10  listening to your testimony; is that correct?

11      A.   Yes.

12      Q.   Okay.  And have you prepared to speak or to

13  give your deposition at all today?

14      A.   I did last night.

15      Q.   Okay.  What did you do to prepare?

16      A.   I got an email from my counsel with all the

17  exhibits.  I just put them all together.

18      Q.   Okay.

19          MR. DELLORUSSO:  I just want to object.

20      Anything that we spoke about is attorney-client

21      privilege, but you may let him know about any

22      preparations you've done.

23          THE WITNESS:  Okay.

24  BY MR. BERNHARD:

25      Q.   Okay.  And that's for sure, Bassem.  I want to

# EXHIBIT 5

1  make sure, anything you talk about directly with your

2  attorney is entirely confidential, and I don't want you

3  to tell us about it.  If you feel like you're coming

4  upon a moment where you might divulge something that you

5  communicated confidentially to your attorney, please

6  stop yourself, consult with your attorney.  Do not tell

7  us, okay.

8      A.   Sure.  Andrew, can you speak up a bit?  I'm

9  noticing you're not sometimes -- I don't know if it's my

10 computer.  I'm not -- the volume is not as loud.  Let me

11 put the volume a little bit louder.

12     Q.   Sure.

13     A.   I'm going to try that.  Okay.  I think this is

14 better.  Go ahead.

15     Q.   So did you hear what I said about not telling

16 us about your --

17     A.   Yes.

18     Q.   -- confidential communications?  Okay.  Good.

19     A.   Yes.

20     Q.   Make sure you don't do that.  I want to make

21 sure you maintain your privilege.

22     A.   Yes.

23     Q.   Okay.  And the documents that you said you put

24 together, are those the ones that you submitted to your

25 attorney?

# EXHIBIT 5

1          A.   Yes.

2              MR. BERNHARD:  And, Frank, are those the ones

3     that you submitted to me?

4              MR. DELLORUSSO:  Correct.

5              MR. BERNHARD:  Okay.  We'll mark those as

6     Exhibit -- Madam Court Reporter, what number are we on?

7              THE REPORTER:  We were on 5.

8              MR. BERNHARD:  5?

9              THE REPORTER:  Well, I think in the last when

10    we were still talking to her, Frank had marked it as 5,

11    so.

12             MR. BERNHARD:  Okay.  So then we'll call this

13    Exhibit 6, which I'll send to you with the other

14    documents submitted by your attorney.  We'll pull those

15    up, make sure we're looking at the same thing, okay.

16    Let me share my screen right now.  And are we all

17    looking at this thing that says at the top left,

18    "Michael Sayer State Bar Number 141038"?

19             THE WITNESS:  Yes.

20             MR. BERNHARD:  Okay.

21             (Deposition Exhibit 6 marked)

22    BY MR. BERNHARD:

23         Q.   I've got here a 39-page series of documents.

24    Is this the 39-page set of documents that you gave to

25    your attorney?

# EXHIBIT 5

1    A.   Yes.

2    Q.   Okay.  Great.  Okay.

3         Okay.  So I understood your full name is

4  Bassem Essam Victor El Mallakh; is that right?

5    A.   Yeah.  I attached my ID in the exhibits, and I

6  do have a -- the hardcopy of my ID if you guys want to

7  maybe zoom in and see it.

8    Q.   I got it with the exhibit, so I think it's

9  there.

10    A.   Oh, perfect.

11    Q.   Okay.

12         MR. DELLORUSSO:  You can share the screen if

13      you want, just to make it clearer for me.

14         THE WITNESS:  Okay.

15         MR. BERNHARD:  I got it.  We have it.

16         THE WITNESS:  Oh.  You got it?  Okay.  Yeah.

17  BY MR. BERNHARD:

18    Q.   Do you ever go by any other name or alias?

19    A.   I go by either Bassem Essam or Bassem El

20  Mallakh or Bassem Victor, really, you know, just --

21    Q.   Why do you do that?

22    A.   Huh?

23    Q.   Why do you do that?

24    A.   I don't know.  I mean, these are my names.

25    Q.   Well, sure.  I've got lots of names, but in

# EXHIBIT 5

1   the United States, we have a legal last name and a legal

2   first name; and we're legally not supposed to

3   interchange them with other names.  So I'm trying to

4   understand why you might do that, if you do.

5       A.   I mean, it's just like I can go to the bank

6   and try to open an account, and then they can write my

7   name on the bank card as Bassem El Mallakh; another bank

8   they can write it as Bassem Essam.  Using at an

9   apartment, they can write it as Bassem Victor.  It's

10  just -- I don't really pick it.  Whoever -- it's like my

11  AT&T bill, they put it as Bassem El Mallakh, but based

12  on my internet, they had it as Bassem Victor.  It's just

13  -- I don't even pick it.  They just -- when I show them

14  my ID, they are the ones that are inputting the

15  information.

16       But usually when anybody ask me, I just say

17  Bassem El Mallakh.

18       Q.   Okay.  When somebody writes down your middle

19  name as your last name, you don't correct them?

20       A.   I mean, it is my name, same as like when I

21  lived in Egypt.  I would just use, you know, any -- any

22  of these names.  These are all your names on -- on my

23  birth certificate.

24       MR. BERNHARD:  Motion to strike as

25       nonresponsive.

# EXHIBIT 5

BY MR. BERNHARD:

Q.   And you've already testified that your last

name is El Mallakh, correct?

A.   Yes.

Q.   Okay.  That's your last name, correct?

A.   That is my last name.

Q.   You understand that in the United States of

America, when somebody asks you what your last name is,

that's what they're referring to?

A.   Yes.

Q.   Okay.  And you've testified that your first

name is Bassem; is that right?

A.   Yes.

Q.   You understand that in the United States of

America, when somebody asks your first name, that's what

they're referring to, correct?

A.   Yes.

Q.   Okay.

A.   Bassem is my first name.

Q.   And you understand that in -- under United

States standards, Essam and Victor would be considered

middle names; is that right?

A.   They -- they could be considered here middle

names, but I -- in my country they're not considered

middle names.

# EXHIBIT 5

1      Q.   Right.  My question is only if you understand that

2   in the United States of America those are considered

3   middle names, Bassem Essam -- or I'm sorry, Essam

4   Victor.

5      A.   Yes.

6      Q.   Okay.  So when somebody in the United States

7   of America puts your middle name as your last name, do

8   you correct them?

9           MR. DELLORUSSO:  Objection.  You can answer.

10           THE WITNESS:  Yeah.  I sure.  I can correct

11       them if they do that.

12   BY MR. BERNHARD:

13      Q.   Do you do that regularly, or do you just let

14   people use your middle name as your last name?

15           MR. DELLORUSSO:  Objection.

16           THE WITNESS:  I don't -- I don't do that

17       regularly, no, because it -- it doesn't really

18       happen to me often at all.

19   BY MR. BERNHARD:

20      Q.   Okay.  I thought you were just describing that

21   that did happen to you rather frequently with different

22   things that you do.  Is that not true anymore?

23      A.   No.  I'm saying when I would go to sign up for

24   any type of billing or any type of a subscription, I

25   just put my name, and then whoever, how they insert it

EXHIBIT 5

1 in their system, I don't really -- I don't really care, you

2 know.  That doesn't change the fact that this is my

3 name.

4      Q.   Okay.  But whenever you fill out forms, you

5 put your first name as Bassem as your last name as El

6 Mallakh.

7      A.   Yes.

8      Q.   Okay.  And you say you're currently located

9 116 Rockefeller but you reside somewhere else; is that

10 right?

11     A.   Yes.

12     Q.   Okay.  Where do you reside?

13     A.   I live in Santa Monica.

14     Q.   Okay.  What address?

15     A.   525 Broadway.

16     Q.   How long have you resided there?

17     A.   Since November 1st of 2016.

18     Q.   And do you essentially sleep every night there

19 in 525 Broadway in Santa Monica?

20     A.   Yes.

21     Q.   Do you regularly take vacations or trips that

22 would have you not sleeping at that property?

23     A.   Yeah.  I do usually take some vacations.

24     Q.   Okay.  How frequently do you vacation?

25     A.   Probably like maybe three or four times a

# EXHIBIT 5

1  year.

2      Q.   Okay.  Those vacations, are they long, short,

3  a week?

4      A.   Sometimes it could be a week, and the longest

5  vacation, it could be like a month.

6      Q.   Okay.  Have you been on any vacations lately?

7      A.   Not in 2021.  Like I mean, just Santa Barbara,

8  you know, Palm Springs, like stuff like that, not like

9  out of the state.

10     Q.   Well, have you been away from your home at --

11 at your residence at 525 Broadway for any period more

12 than two nights in 2021?

13     A.   Yeah, of course.

14     Q.   Okay.  Well, it's not of course to me.  So --

15     A.   Sorry.  I just wasn't understanding your

16 question.

17     Q.   So when have you been away from your residence

18 at 525 Broadway for more than two days in 2021?

19     A.   Most of -- most of the -- most of like the

20 first week of February.  Most of the first week of

21 February, and that's -- that's about it.  Yeah.

22     Q.   Okay.  That's 2021?

23     A.   2021, yeah.

24     Q.   Where were you for the first week of February

25 in 2021?

EXHIBIT 5

1          A.    I was just like spending some time with my

2     girlfriend.

3          Q.    Okay.  Was that someplace out in Santa Monica?

4          A.    Santa Monica.

5          Q.    In Santa Monica, just not at 525 Broadway?

6          A.    No.

7          Q.    What's the name of your girlfriend?

8          A.    Ally (phonetic).

9          Q.    What's Ally's last name?

10         A.    Chambers.

11         Q.    C-h-a-m-b --

12         A.    C-h-a-m-b-e-r-s.

13         Q.    Okay.  And does she reside in Santa Monica

14    too?

15         A.    She does.

16         Q.    Okay.  What about 2019.  Were you -- sorry,

17    2020.  Were you away from 525 Broadway for any

18    protracted period of time, more than two days?

19         A.    2020 was the pandemic, so I was -- I was

20    pretty much at home throughout the whole year pretty

21    much, you know.  I don't know if you guys are familiar

22    with the LA cases that we had the highest COVID cases in

23    the -- I mean, not in just the country -- I the world.

24    So it was very dangerous for me to get out of the house.

25         Q.    Okay.  So is there any time you were away from

# EXHIBIT 5

1   525 Broadway sleeping somewhere else for more than two days

2   in 2020?

3       A.   No.   No.  Just either between my house or my

4   girlfriend's house.  That's about it.  Nothing --

5       Q.   Okay.  What about 2019.  Any time you were

6   away from the house, 525 Broadway, for more than two

7   nights?

8       A.   2019 I traveled quite a bit.  I traveled quite

9   a bit in 2019.  Yeah.  2019 I traveled quite a bit.

10      Q.   Okay.  Where did you go?

11      A.   I went to Puerto Rico, the Caribbean.  I went

12  to Europe for about like three weeks.  Yeah.  I traveled

13  quite a bit in 2019.

14      Q.   Okay.  For -- for 525 Broadway, is that the

15  address that USPS has for you?  Is that where you're

16  registered as your residence?

17      A.   Yeah.  That's my -- that's my address of mail

18  because -- I mean, I only have Amazon.  I don't really

19  get mail.  I just have Amazon and the DMV.  That's about

20  it.

21      Q.   Okay.  Has 525 Broadway been your registered

22  address with the DMV since when?

23      A.   Since -- let me look at my ID -- 10/19/2017.

24  You'll see it at the very bottom right.

25      Q.   Okay.  And why don't you get any mail?

EXHIBIT 5

1        A.   I'm sorry, what?  My bank statements are all

2   paperless.  My phone bill is paperless.  You know, just

3   Amazon and DMV.  That's about it.

4        Q.   You don't get any junk mail?

5        A.   Yeah.  I do get junk mail, but I -- you know,

6   a bunch of magazines and, you know, coupons and offers;

7   and I just like throw them in the trash.

8        Q.   Okay.  Do you get that junk mail to 525

9   Broadway in your name?

10       A.   Yes.

11       Q.   Okay.  What's your current job?

12       A.   I am currently unemployed.

13       Q.   How long have you been unemployed?

14       A.   Since the pandemic.

15       Q.   And does that mean since March 2019?

16       A.   Yeah.

17       Q.   Okay.  At 525 Broadway, do you pay rent?

18       A.   I do.

19       Q.   Do you have a roommate?

20       A.   I used to -- I used to have a roommate.  Yeah.

21       Q.   Who was that?

22       A.   His name is Mohammad Rostom.

23       Q.   How do you spell his last name?

24       A.   R-o-s-t-o-m.

25       Q.   And when was he your roommate?

EXHIBIT 5

1        A.    When?

2        Q.    Yeah.

3        A.    Since we moved -- we moved in in November of

4   2016.

5        Q.    And when did he stop being your roommate?

6        A.    He moved -- he actually moved out of the

7   country and moved to Dubai in late December, like, you

8   know, a week before Christmas of -- of 2020.

9        Q.    And since then you've just been covering rent

10  yourself?

11       A.    Actually, since -- so I -- the last check I

12  paid for the rent was in January, and then I did not pay

13  February and March just yet because of, you know, the

14  judgment.  They froze all my bank accounts.

15       Q.    Okay.  And were you working in March and April

16  2019?

17       A.    I was.

18       Q.    Okay.  Where did you work then?

19       A.    I was working on some, you know, technology

20  project still under the, you know, R&D phase, and then

21  that stopped when the pandemic, you know, start.

22       Q.    Did you work for a company, or did you have a

23  boss?

24       A.    No, no.  It was self -- no.  It was just self-

25  employed.

# EXHIBIT 5

1   Q.   So what was the name of your employer?

2   A.   I didn't -- I didn't register an LLC for it

3   yet.  It was just all within the, you know, R&D

4   research, you know, period and, you know, all the

5   brainstorming and all the -- you know, it's -- the

6   technology business can be a bit -- a bit difficult, you

7   know.  It takes -- takes a while before you a product.

8   Q.   Okay.  So --

9   A.   But I was not making any income.

10  Q.   Before you started doing this R&D thing for

11  yourself with no LLC, self-employed, what -- what was

12  your job before that?

13  A.   Before that, I was in real estate investments.

14  Q.   Who was your boss there?

15  A.   Self-employed.

16  Q.   Okay.  Are you a citizen of the US?

17  A.   I am a permanent resident.

18  Q.   Okay.  Is that the same for your sister?

19  A.   My sister is a US citizen.

20  Q.   Okay.  And your sister is Reem Hanna?

21  A.   Yeah.  My sister is Reem Hanna.

22  Q.   Okay.  Do you recall where you were in March

23  2019?

24  A.   Let me look on my phone.

25       Okay.  I opened all my March photos, so just

# EXHIBIT 5

32

1  tell me which date, and I can look.

2      Q.   Sure.  How about just, you know, towards the

3  end of March 2019.  Were you --

4      A.   End of March.

5      Q.   Were you in California, or were you somewhere

6  else?

7      A.   I'm looking right now.  So I'm going to start

8  from March 31st, and then I will go back.

9      Q.   Okay.

10      A.   So Santa Monica, Santa Monica, Santa Monica.

11  I take a lot of pictures, almost every day.  Santa

12  Monica, Santa Monica, Santa Monica, Malibu, Santa

13  Monica.  Okay.  This is the LA Marathon.  That was March

14  24th.  We were watching it with our friends from a

15  rooftop.  Again, all -- just all Santa Monica really.

16  Yeah.  All the way to March 16th all Santa Monica,

17  Malibu.

18      Q.   How about --

19      A.   How much back do you want me to go for March?

20      Q.   That's fine.

21      A.   Oh.

22      Q.   How about the first -- first two weeks of

23  April 2019.  Were you in California?  I'm just trying to

24  see if you were out of California.

25      A.   Yeah, sure.  Yeah, yeah, yeah.  I got -- oh.

# EXHIBIT 5

33

1   So you want April.  Okay.  Hold on.  April 2019.  Santa

2   Monica, Santa Monica, Santa Monica all the way to April

3   -- these are all -- these are all Santa Monica.  Let me

4   see.  These are all Santa Monica.  As you can see also

5   on the iPhone it says the -- the location and the day.

6   And then Pacific Palisades, Santa Monica.

7           MR. BERNHARD:  Witness is showing the camera

8       the phone, showing us some photos to show that

9       April 2019 and March 2019, photos which -- you

10      know, just to contribute to the record -- put in

11      the record.

12          THE WITNESS:  Malibu, Malibu.  I remember in

13      Hollywood, this is the Hollywood, you know, sign.

14  BY MR. BERNHARD:

15      Q.   Yeah.

16      A.   And then on April 13th, I went (audio

17  distortion) and I was there --

18      Q.   Where is that?

19      A.   A music conference in California.  It's called

20  Coachella.

21      Q.   Sure.  Okay.

22      A.   So you usually have two weekends.  I went the

23  first weekend and the second weekend.  So the first

24  weekend was April 13th to April 15th.  And me and my

25  girlfriend are -- you know, I'm there.  And then on

EXHIBIT 5

1  April -- let's see.  Coachella is in a city called Indio,

2  which is about -- it's like two hours away from LA.  And

3  then April 17, I was in Santa Monica.  Just disregard

4  that picture.

5          April 18, Pacific Palisades, which is like --

6  like next door to Malibu.  I want to say Venice.  This

7  is the second weekend of Coachella April 19.  UCLA,

8  Westview Mall, Beverly Hills.  And then Easter on the

9  21st was in Beverly Hills.  Hollywood Hills -- I mean,

10  Hollywood.  I was in the church for Easter, April 25th.

11  April 26th.

12          And then I went to Hawaii on April 26th, and I

13  was in Hawaii just for the weekend.  Then I came back to

14  LA, Beverly Hills.  And then I went to London on --

15  wait, I don't know on this one.  Yeah.  No.  This is

16  still LA, but I don't know why my phone -- and then

17  Santa Monica 27th; 28th, Hollywood Hills.  Yeah.

18      Q.   Okay.  Got it.  Not, you got this place at --

19  at 116 Rockefeller at Irvine.  That's something that you

20  own; is that correct?

21      A.   Yes.

22      Q.   Okay.  Do you own any other properties in --

23  in Irvine, California?

24      A.   No.  I do not.

25      Q.   Okay.  Is this 116 Rockefeller -- is that a

# EXHIBIT 5

35

1    condo?

2        A.   It's a townhome.

3        Q.   It's a townhome.  How many rooms is it?

4        A.   Three bedrooms.

5        Q.   Okay.  And how much rent -- sorry.  Does Reem

6    Hanna pay you rent for --

7        A.   She does.  She does.

8        Q.   How much rent does she pay you?

9        A.   She's paying $3000 a month.

10       Q.   Okay.  Did she pay you that in 2019 every

11   moth?

12       A.   Yes.  I have all the bank statements.

13       Q.   Same for 2020?

14       A.   Same for 2020.

15       Q.   Same for 2021?

16       A.   2021, she only paid me January and February.

17   Yeah.  And then after that, I can't access my bank

18   accounts anymore.

19       Q.   Okay.  So at 116 Rockefeller, is there -- are

20   there any cameras on the outside for security?

21       A.   I believe there's a camera that I saw when I

22   came yesterday at the door -- at the front door.  It's

23   one of these like Ring, you know, Amazon cameras --

24       Q.   Yeah.

25       A.   -- at the front door, but that's about it.

# EXHIBIT 5

1    Q.   Okay.  Is there an intercom system?

2    A.   No.  There's not.

3    Q.   Okay.  Is there a doorman?

4    A.   No.  It's a -- it's a house.

5    Q.   Was there a Ring camera at your property at

6  116 Rockefeller in 2019?

7    A.   To be -- to be honest with you, I have not

8  been here in 116 Rockefeller for about probably like

9  over two and a half years, maybe -- maybe more, you

10  know.

11    Q.   Okay.

12    A.   It's been a while.

13    Q.   Does that mean you don't know whether there

14  was a Ring doorbell system in 2019 at 116 Rockefeller?

15         MR. DELLORUSSO:  Objection.

16         THE WITNESS:  I'm not sure.  I'm not sure, to

17    be honest with you.

18  BY MR. BERNHARD:

19    Q.   Do you know if there was a Ring intercom

20  system in 2020 at 116 Rockefeller?

21    A.   Can you -- can you raise your voice a bit?

22    Q.   Yeah.  Was there a Ring camera system at 116

23  Rockefeller in 2020, to your knowledge?

24         MR. DELLORUSSO:  Objection.

25         THE WITNESS:  I'm not sure, Andrew, because,

# EXHIBIT 5

1       as I mentioned to you, I have not been in the Irvine

2       house, not even once in 2020, not even once in

3       2019.  I believe even when I came to Orange County

4       in 2018 it was just for Christmas -- Christmas Eve

5       at my cousin's house in Mission Viejo area, which

6       is like south of Irvine.

7   BY MR. BERNHARD:

8       Q.   Okay.  I saw that you testified that you're

9   not evading service and made -- have made no attempts to

10  evade service in this lawsuit; is that correct?

11      A.   I have not serviced what you said?

12      Q.   That you -- that you are not attempting to

13  evade service -- a processor?

14      A.   What do you mean by evade service?

15      Q.   I think that's in your affidavit, that you

16  made no attempts to evade service.  Does that sound

17  familiar at all?

18      A.   You mean I was serviced?  Is that what you're

19  saying?

20      Q.   So there is a lawsuit --

21      A.   Uh-huh (affirmative).

22      Q.   -- yeah, right, pending called Belgium

23  Investments versus Blank.  Are you aware of that

24  lawsuit?

25      A.   Yeah.  I didn't know anything about the

# EXHIBIT 5

1  lawsuit.  I was never served.

2      Q.   Okay.  Have you done anything whatsoever to

3  avoid getting handed a summons for this lawsuit?

4      A.   Absolutely not because no one ever knocked on

5  my door in Santa Monica and said, hey, you are served;

6  here's the lawsuit document.  Because if this -- if this

7  would have ever been the case, I would have called my

8  attorney right away and said, hey, I just got served.  I

9  never got anybody in the -- you know, in Santa Monica to

10  serve me since I lived there in -- since 2016 up until

11  now.

12      Q.   Okay.  Have you -- do you have any -- are you

13  currently avoiding service of process of the summons?

14      A.   No.  I am not.

15      Q.   Okay.  Do you have any problem just accepting

16  service of process for the summons for this lawsuit now?

17          MR. DELLORUSSO:  Objection.  Do not answer

18      that question.

19          THE WITNESS:  Okay.  I object.

20          MR. BERNHARD:  Is there a basis for that?

21      It's not privileged?

22          MR. DELLORUSSO:  Well, yes, it has to do with

23      communications that I had with him in regard to

24      that, and you're asking him to do something that is

25      -- that I spoke to him about.  So --

# EXHIBIT 5

BY MR. BERNHARD:

Q.   Okay.  I'm not asking you about your

conversations with your attorney whatsoever.  I'm asking

you right now, do you accept or will you accept service

of process of the summons?

MR. DELLORUSSO:  I'm going to object.  Do not

answer that.

MR. BERNHARD:  Okay.  On what basis?

MR. DELLORUSSO:  I just told you why.  I spoke

to him in regard to this, and I have given him some

legal advice that I do not want to come out in

regard to that question.

MR. BERNHARD:  Okay.  Well, he --

BY MR. BERNHARD:

Q.   -- don't -- don't tell me any legal advice

that your attorney has given you.  You can say I don't

accept.  You can say I do accept.  That doesn't reflect

on legal advice your -- your attorney has given you.  If

the answer is no, just say, no, I will not accept it.

MR. DELLORUSSO:  If you can say it without

giving your -- any legal advice, then go ahead and

answer.

THE WITNESS:  As I mentioned to you, Andrew,

you know, I'm like why would I not accept service.

If anybody came to my door and -- and knock on my

# EXHIBIT 5

```
 1        door, which is where I live in Santa Monica, and said,

 2        hey, you're serviced, I would not have an issue

 3        with it at all.  But nobody had -- nobody ever

 4        came.

 5   BY MR. BERNHARD:

 6        Q.   Do you agree just to accept service now?

 7             MR. DELLORUSSO:  Same objection.

 8   BY MR. BERNHARD:

 9        Q.   You can answer.

10        A.   I don't think I should answer that question

11   because, again, you -- you know, do you want to talk

12   about servicing me on a lawsuit?

13        Q.   Yeah.  I'm asking will you just agree to

14   accept service now for this lawsuit.

15        A.   I will have to talk with my attorney.

16             MR. DELLORUSSO:  (Audio distortion)

17   BY MR. BERNHARD:

18        Q.   So is that a no?

19        A.   I will have to consult with my counsel.  I'll

20   have to consult with my counsel first.

21             MR. BERNHARD:  Do you guys want to take a

22        five-minute break and let you consult, and you can

23        come up with a yes or no?

24             MR. DELLORUSSO:  That's fine.

25             MR. BERNHARD:  Okay.  Let's take a quick five.
```

# EXHIBIT 5

1       We'll be back at 27, okay.  So 2:27.

2              THE WITNESS:  Okay.

3              THE REPORTER:  Okay.

4              MR. BERNHARD:  Okay.

5              THE REPORTER:  All right.  We are off the

6       record.

7              (Recess taken)

8              THE REPORTER:  Okay.  We are back on the

9       record at 5:29 p.m. Florida time.

10             THE WITNESS:  All right.

11             MR. BERNHARD:  Okay.  We're back on the

12      record.

13  BY MR. BERNHARD:

14      Q.   Bassem, do you realize you're still under

15  oath?

16      A.   Yes.

17      Q.   Okay.  We just took a break so you could talk

18  to your attorney.  I want to make sure you don't tell me

19  anything that you talked about with your attorney or

20  told your attorney or he told you.  My question was: do

21  you agree to accept service process now just voluntarily

22  in this depo.

23      A.   I do not.  I do not accept service now.

24      Q.   Okay.  To your knowledge, has Reem Hanna ever

25  received mail for you or deliveries for you at 116

# EXHIBIT 5

1   Rockefeller in --

2       A.   No, never.

3       Q.   -- 2019?  Never?

4       A.   Never.

5       Q.   Never at all?

6       A.   No.

7       Q.   Not in 2019?

8       A.   No, never.

9       Q.   Not in 2020?

10      A.   No.

11      Q.   Not in 2021.

12      A.   I don't even have a mail -- I don't even -- my

13   mail is not going to this house.  It goes to Santa

14   Monica.

15      Q.   Okay.  And do you pay utilities at 525

16   Broadway, Apartment 5037?

17      A.   I do not pay the utilities.

18      Q.   Okay.  How do those utilities get paid?

19      A.   It's  -- it's like all included.  The only

20   thing that was paid was the internet, and that was paid

21   by my roommate, and then when he moved out, I switched

22   account under my name, and I'm paying for it.

23      Q.   Okay.  So in 2019, there were no utilities in

24   your name whatsoever at 525 Broadway?

25      A.   No.  Just the rent.

# EXHIBIT 5

43

1      Q.   Same for 2020.  No utilities whatsoever in your

2   name --

3      A.   Same for 2020.  Same since 2016 and '17 and

4   '18.

5      Q.   Okay.  Do you own a car?

6      A.   I do.

7      Q.   Okay.  What car do you own?

8      A.   A Mercedes C-Class.

9      Q.   Okay.  What year is that car?

10     A.   2016.

11     Q.   And where is that car registered?

12     A.   It's in Santa Monica, as well, and it's in my

13   garage in Santa Monica, as well.

14     Q.   Okay.  Is it registered to your address 525

15   Broadway, Santa Monica?

16     A.   You know what, I'm not sure because I bought

17   the car at a dealership in Inland Empire in August of

18   2016, and then at that time I was still living in Irvine

19   address, so they probably like registered it for me in

20   the 116 address.  But I'm not sure if I paid the new

21   registration -- the new registration back in I believe

22   2018 at the 525 Broadway.  I mean, it should be because

23   that's where my ID is also showing, so I think it's now

24   switched to the Santa Monica from 2018.

25     Q.   And is your Mercedes insured as being at 525

EXHIBIT 5

1  Broadway or at --

2      A.   Yeah.  It did up until my insurance expired

3  last year in -- again, right before the pandemic.

4  Obviously, nobody's driving anymore, so then I just

5  didn't get a new insurance.

6      Q.   Okay.  So was your car registered as insured

7  at your Santa Monica address?

8      A.   525 Broadway.  Yeah.  525 Broadway.

9      Q.   Is that the same for 2019?

10     A.   Same as '19 and '18, and I believe '17, yeah,

11 as well.

12     Q.   Okay.  Do you have any documentation

13 reflecting having your car insured at 525 Broadway

14 rather than at --

15     A.   I can check with my insurance agent.

16     Q.   Okay.  Do you agree to produce that to us?

17     A.   Yeah, yeah.  I'll call him, and then I will

18 have him send me some kind of an email.  It's Farmer's

19 Insurance.  I'll have him send me some kind of an email

20 showing the insurance address.

21     Q.   Okay.

22     A.   Let me write that in my notes.  Just give me a

23 second.

24         Obtain an insurance for my -- my Mercedes at

25 525 Broadway from Farmer's Insurance.  Okay.  Got it.

EXHIBIT 5

1      Q.   And so is it your position that your sister, Reem

2  Hanna, has never mentioned anything about receiving

3  service of process, a summons, mail, delivery, or even a

4  person knocking at her door for you at any time in the

5  past three years?

6      A.   No, never.

7      Q.   Okay.  Have you ever been accused in court of

8  making a false statement?

9      A.   No.

10     Q.   Okay.  Have you ever been sued for slander,

11 which is the making of a false statement that damages a

12 person's reputation?

13     A.   No.

14     Q.   Okay.  Have you ever been sued for conspiracy,

15 which is a secret planned by a group to do something

16 unlawful?

17     A.   No.

18     Q.   To your knowledge, has your sister, Reem

19 Hanna, ever been accused in court of making a false

20 statement?

21          MR. DELLORUSSO:  Objection.

22          THE WITNESS:  No.

23 BY MR. BERNHARD:

24     Q.   To your knowledge --

25     A.   No.  I don't have any knowledge to that.  No.

# EXHIBIT 5

1     Q.   To your knowledge, has your sister, Reem Hanna,

2 ever been sued?

3     A.   I don't have a knowledge of that.  No.

4     Q.   To your knowledge, has your sister, Reem

5 Hanna, ever been sued for slander, which is the making

6 of a false statement that damages of a person's

7 reputation?

8         MR. DELLORUSSO:  Objection.

9         THE WITNESS:  Not to my knowledge.  No.

10 BY MR. BERNHARD:

11     Q.   To your knowledge, has your sister, Reem

12 Hanna, ever been sued for conspiracy, which is a secret

13 planned by a group to do something unlawful?

14         MR. DELLORUSSO:  Objection.

15         THE WITNESS:  Not to my knowledge at all.

16 BY MR. BERNHARD:

17     Q.   To your knowledge, has your father, Essam El

18 Mallakh, ever been accused in court of making a false

19 statement?

20     A.   No.

21     Q.   To your knowledge, has your father, Essam El

22 Mallakh, ever been sued?

23     A.   No.

24     Q.   To your knowledge, has your father, Essam El

25 Mallakh, ever been sued for slander, which is the making

EXHIBIT 5

47

1  of a false statement that damages a person's reputation?

2       A.   No.

3            MR. DELLORUSSO:   Objection.

4  BY MR. BERNHARD:

5       Q.   To your knowledge, has your father, Sam El

6  Mallakh, ever been sued for conspiracy, which is a

7  secret planned by a group to do something unlawful?

8       A.   No.

9       Q.   And to your knowledge, has your mother, Mona

10  Mallakh, ever been accused in court of --

11      A.   Mona Soliman.

12      Q.   Mona Soliman, sorry.  Mona Soliman ever been

13  accused in court of making a false statement?

14      A.   No.

15      Q.   Have you -- has your mother ever gone by the

16  name Mona McCale?

17      A.   I believe so.  Yeah.

18      Q.   Is that like a maiden name?

19      A.   Dad's name.

20      Q.   Okay.  To your knowledge, has your mother,

21  Mona Soliman, also known as Mona McCale, ever been sued?

22      A.   No.

23      Q.   To your knowledge, has your mother, Mona

24  Soliman, also known as Mona McCale, ever been sued for

25  slander, which is the making of a false statement for

# EXHIBIT 5

1    damages --

2        A.    No.

3        Q.    -- that damage a person's reputation?

4              MR. DELLORUSSO:  Objection.

5              THE WITNESS:  No.

6    BY MR. BERNHARD:

7        Q.    To your knowledge, has your mother, Mona

8    Soliman, also known as Mona McCale, ever been sued for

9    conspiracy, which is a secret planned by a group to do

10   something unlawful?

11       A.    No.

12       Q.    Have you ever been accused in court of having

13   participated in the commission of a fraud?

14       A.    No.

15       Q.    Do you understand that fraud is -- is an act

16   of dishonesty?

17       A.    Yes.

18       Q.    When do you say you first became a lawsuit

19   that there was a lawsuit pending against you in Florida

20   as to Belgium Investments?

21       A.    I'm sorry.  Say that again.

22       Q.    When did you first -- very first become aware

23   that there was a lawsuit pending against you in Florida

24   from Belgium --

25       A.    When I went to the bank in February to try to

# EXHIBIT 5

1  coordinate to pay my rent at Wells Fargo, and then they said

2  that your account has been frozen; and they took all the

3  money out based on a judgment.  And I'm like -- I was

4  like, "What kind of judgment?"  And the -- they gave me

5  a printout that says a judgment based on a Florida case.

6  And that's when I actually found out that there is a

7  lawsuit/judgment.  So I found out about it in February

8  of 2021 just from going to the bank.

9       Q.   And that's the very first time you heard

10 anything about it.

11      A.   First time.  First time, February 2021.

12      Q.   And when was the last time you spoke with

13 Spencer Blank or his attorneys Eric Jackwin or Michael

14 Caramadre?

15      A.   Spencer, he used to be the construction

16 company for the project at -- over at 960 Bay Drive, and

17 the last time we spoke was probably somewhere --

18 somewhere in the 2016 -- 2016 period because I was the

19 -- the manager of the LLC.

20           And then based on the partners, they just

21 didn't like my performance.  So they -- my partner

22 called me and he said, "Hey, the partners just do not

23 want you to manage the property anymore."  So that was

24 back in 2016.  And they said, "We wanted to remove you

25 from management."  And they were -- basically Spencer

# EXHIBIT 5

1   and Bernard were going to be the ones actually managing the

2   project.

3        Q.   By Bernard, you mean Bernard Petite?

4        A.   Bernard Petite.  Yeah.

5        Q.   And since 2016, you have not spoken or heard

6   from Spencer Blank?

7        A.   No.  No.  I don't think so.  He just came one

8   time to LA somewhere in the 2016 time.  He was visiting

9   his -- his brother, and then we just met at a nightclub

10  in Hollywood, just going out and drinking and, you know,

11  having fun.  But that's about it.  We didn't talk about

12  anything business related.

13       Q.   And that time in 2016 when you went to a

14  nightclub in Hollywood with Spencer Blank is the last

15  time you spoke to Spencer Blank in any way?

16       A.   Yeah.

17       Q.   By email, telephone, text message, or anything

18  else?

19       A.   I believe so.  I don't think I had any

20  communication with Spencer ever since Bernard told me

21  that they wanted to remove me from managing the

22  property.

23       Q.   Which you've testified is 2016?

24       A.   2016.

25       Q.   Okay.  Is that the same answer for Spencer

EXHIBIT 5

1   Blank's attorneys, Eric Jackwin or Michael Caramadre?

2       A.   I don't know who Eric Jackwin or Mark -- or

3   Mark -- or -- or -- I don't know who those -- who those

4   people are.

5       Q.   Okay.  What about Bernard Petite.  When was

6   the last time you heard from Bernard Petite in any way?

7       A.   The last time I heard from him was -- I was --

8   I was checking, you know, how are things going with the

9   project, you know, if they finished the construction,

10  what's happening.  And, yeah, that was about -- that was

11  about it.

12      Q.   When was that?

13      A.   Maybe early 2019.  Either early 2019 or early

14  2018 because what happened is I got a call from the --

15  the real estate agent that actually helped us buying and

16  acquiring that building in Miami.  And then he says,

17  "Hey, I just found out that you guys are listing the

18  property for sale."

19           And I was like, "I'm not aware of  -- of

20  anything like that."  And that's when I called Bernard

21  and I said, "Hey, are you guys selling the property?"

22           He's like, "No.  I'm to aware of it, but it

23  seems like Jean Claude is actually trying to sell the

24  property like without telling us, you know."  And that's

25  when him and -- and Jean Claude were supposed to figure

EXHIBIT 5

1  out what's -- what's happening with the property.

2      Q.   And when was that communication with Bernard

3  Petite?

4      A.   I have to check my phone, but I'm thinking

5  either early 2019 or early 2018.  It was the beginning

6  of the year, early 2019 maybe, or -- early 2019 when I

7  found out that they were -- they were listing the

8  property.  I can all look at the MLS, see when they

9  listed the property initially.  That's when I got a call

10 from the agent.

11     Q.   Do you keep a call log with Bernard Petite, or

12 is he in your contact list in your phone?

13     A.   Yeah, he is.

14     Q.   Okay.  Does it say there on your phone the

15 last time you spoke to him?

16     A.   Let me -- let me look.  Honestly, just -- I

17 have one message from him on April 13.  He goes, "Make

18 sure he does."  I think that's when he was replying me

19 -- because I called him on the phone when that happened.

20 I didn't text him.  I just called him, you know, quick,

21 and I said, "Hey, they are trying to sell the property.

22 What's happening?"  Because Bernard and I were -- we

23 have a shareholding interest in the LLC.

24          And so, again, you know -- you know, we don't

25 need to get into a long story, but basically we had

# EXHIBIT 5

1  another deal where actually Jean Claude was able to sell

2  that investment and not give Bernard and I any of our

3  profits at a project in another state -- in Colorado.

4        So that's why him and I, we kind of felt like

5  we -- you know, we can't feel like we can trust, you

6  know, what he can do, so we thought he was going to sell

7  the property without telling us.  So that's when I

8  called Bernard.  I said, "Hey, you know, I heard that

9  they're listing the property.  The agent told me."  And

10 then I told him, "I'm going to make sure -- you know,

11 hey, tell me if -- if -- if anything is -- is under

12 contract."

13        So then that's when he replied to me.  He

14 says, "Make sure he doesn't."  That was April -- I don't

15 know if you can see -- April 13, 2019.

16    Q.   Okay.  So that's April 2019?

17    A.   Yeah.  April 13, 2019, at 1:14 p.m.

18    Q.   Okay.  Is that the very last time that you

19 spoke to Bernard Petite in any way?

20    A.   You know, I can check my newer phone that I --

21 because this phone just, you know, broke, so then I

22 bought a new phone.  So I can check on my new phone when

23 was the last text from him on the new phone.

24    Q.   Is that something that you got there, or is

25 that something that you need to get?

# EXHIBIT 5

1      A.    What is it?  Something what?

2      Q.    -- you can do now?

3      A.    Yeah, yeah.  I'm looking at my phone right now

4  as we speak.  Yeah.  October of -- October 9, 2019, I

5  was texting him, and I said, "Do you know that the

6  property on Bay Drive was sold February 19th this year

7  for $2.8 million?"  And he goes, "No.  I don't know

8  that, and it's not possible as I had -- as I had a

9  mediation with Jean Claude on Monday on this."  And then

10  he goes, "What makes you say that?"  And then I said,

11  "Look at the listing."

12      Q.    Okay.  Anything else?

13      A.    No.  And then he goes -- I said -- and then I

14  told him, "Because I got a call from Dennis, the agent

15  in Miami that sold us the property, and he said that he

16  heard that the property was sold."  He goes, "Let's

17  check, but highly impossible."

18            I can check -- and I -- and I told him, "I can

19  check with -- with the title companies, you know, that I

20  can call and -- but I thought that he wouldn't have been

21  able to do that without our signature since we're all a

22  part of LLC."  And then this is his reply.  He goes,

23  "You're kidding.  He sold Denver without -- without us."

24      Q.    Okay.

25      A.    And, yeah, that was about it.

# EXHIBIT 5

1        Q.   So was October 9, 2019, the last time you spoke

2   with Bernard Petite?

3        A.   Yeah, yeah.

4        Q.   Okay.  And when he's referencing mediation

5   there, did you not understand that he's talking about

6   mediating the lawsuit?

7        A.   Him and -- him and Jean Claude.  He never

8   mentioned to me ever that I'm a part of any -- any type

9   of a mediation or any type of a lawsuit.

10       Q.   So you understood at that time that he was in

11  a lawsuit with Jean Claude over this other Belgium

12  Investments?

13       A.   Right.  I understand that Bernard and -- and

14  Jean Claude were having some -- some type of a, you

15  know, legal battle between each other.

16       Q.   And did you ever think --

17       A.   And then at that -- and then at that time,

18  also Bernard asked me -- I remember very well.  He says,

19  "Did anybody try to serve you any documents?"  And said

20  that I have not gotten any documents.

21            And as a matter of fact, Bernard, he came to

22  visit me in my Santa Monica house and -- I'll tell you

23  the exact date because, you know, he spent like a few

24  days with me, and we went to have like some lunch in

25  Malibu and, you know, just kind of spend some time.  So

EXHIBIT 5

1  that's actually the last time I saw him, and I can tell you.

2  And then he was actually staying in my -- my Santa

3  Monica address.  So I don't like if -- if -- I'm --

4  honestly, I don't even know who's suing me, if it's like

5  Jean Claude or Spencer.  I'm, you know, confused who is

6  suing me.

7          So then they are all talking to each other.

8  So if someone, like my partner, came and stayed at my

9  house in Santa Monica and they are suing me, why don't

10 they go and tell the service person to come to the Santa

11 Monica to serve -- to serve me?  And they all know that

12 I've been living in LA since 2016.

13     Q.   Okay.  So when did Bernard Petite come to your

14 -- stay with --

15     A.   Yeah.  Let me look.  I'll tell you right now.

16          (Pause)

17          You know, I'll have to look more on my phone

18 because we have pictures of the places that we had lunch

19 at and stuff.  I just -- I have to look more on my

20 phone.  I have so many pictures.

21     Q.   Do you think it was after October 2019 or

22 before?

23     A.   I'm actually -- now I keep going back with the

24 dates, so many pictures.  Yeah.  I will have to look

25 again.  I know it's -- I know I have the pictures on the

# EXHIBIT 5

1  phone, and I can tell you exactly what date.  One second.

2  Yeah.  I will have to check.

3      Q.   Okay.  Do you think it was after October of

4  2019 that --

5      A.   After October what?

6      Q.   2019.

7      A.   Oh, no, no, no.  It was way before.

8      Q.   Okay.  So it was April 2019 that you contacted

9  Bernard Petite about, you know, the -- the property

10  sale, the money of each property from Belgium

11  Investments from --

12      A.   Right.

13      Q.   -- 2019.  You said that you're -- you're

14  talking and he -- and Bernard Petite is talking about

15  being in mediation in -- in these lawsuits.  Does that

16  sound right so far?

17      A.   Right.  He was mentioning that him and -- and

18  -- and Jean Claude are going through some kind of a

19  mediation.

20      Q.   And so it was after that that he came and

21  stayed at your house -- that Bernard Petite came and

22  stayed at your house in Santa Monica?

23      A.   No, no, no.  He came before -- before that.

24      Q.   Okay.  Do you think it was sometime in 2019?

25      A.   No, no.  Not in '19.  That was -- he came and

# EXHIBIT 5

1   visit me I believe sometime in 2018, maybe -- either 2018 or

2   2017.  I will look through my phone.  I will get you the

3   exact picture with Bernard and I in Malibu having

4   champagne.

5        Q.   So after you October 2019, did you ever heard

6   from -- communicate with Bernard Petite in any way?

7        A.   After October 2019?

8        Q.   Yep.

9        A.   No.  Not necessarily, just maybe just seeing

10  how he is, you know.  Not like any -- anything special.

11       Q.   Well, I'm not asking for special.  I'm just

12  asking for any contact whatsoever.

13       A.   Yes.

14       Q.   Okay.  When else did you talk to him after

15  October 2019?

16       A.   Let me look again.

17            MR. DELLORUSSO:  Andrew, how is this relevant

18       to service?

19            MR. BERNHARD:  Please, you know the -- the

20       rules.

21            MR. DELLORUSSO:  Well, I know.  I'm asking

22       you.

23            MR. BERNHARD:  Speaking objections -- don't

24       ask me.  Just either say objection to form,

25       instruct your client not to answer.

# EXHIBIT 5

1          MR. DELLORUSSO:  I'm going to do that very shortly

2      if you don't stop with these questions.  You've got

3      to stick the service.

4          MR. BERNHARD:  Please stop speaking.  You are

5      coercing the witness's testimony.

6          MR. DELLORUSSO:  I'm not.

7          THE WITNESS:  No.  I don't see any records.

8  BY MR. BERNHARD:

9      Q.    Okay.  So to your knowledge, you may have

10  talked to him a few times after October 2019, but you

11  don't know exactly what or when --

12      A.    You know, we talked on the phone, but I don't

13  see any -- you know, obviously, I don't have a call log,

14  you know, to show me what day we talked.  But I know we

15  did talk on the phone probably like, you know, once or

16  twice in a -- in a -- within that, you know, two years'

17  period.

18      Q.    Okay.  In the past two years, you talked once

19  or twice to Bernard Petite?

20      A.    I'm sorry.  Say that again.

21      Q.    In the past two years, meaning from October

22  2019 to today, you think you've talked to Bernard Petite

23  once or twice?

24      A.    Once or twice.

25      Q.    Okay.  In all that, did he mention to you that

EXHIBIT 5

1    you were being sued in a lawsuit here in Florida?

2        A.    He said he's -- he's getting sued, and he

3    says, "Did you get any documents or any service --

4    service?"  And I said, "I did not."

5        Q.    Did you understand by that question that

6    somebody was attempting to serve documents about a

7    lawsuit on you?

8        A.    Right.

9        Q.    Okay.  Did you do anything to investigate if

10   you were getting sued or what that was all about?

11           MR. DELLORUSSO:  Objection.

12           THE WITNESS:  No.  I did not because, you

13       know, usually when someone is suing you, you need

14       to obviously service you with the documents to know

15       what is going on with the lawsuit.

16   BY MR. BERNHARD:

17       Q.    Okay.  Did you hire an attorney to look into

18   it?

19       A.    No, because I was waiting to get serviced.

20       Q.    Okay.  Did you call anybody in Miami or in

21   Florida to find out what was going on with the lawsuit

22   against you?

23       A.    No.

24       Q.    So you're just waiting for somebody to service

25   summons on you?

EXHIBIT 5

1        A.   Right.

2        Q.   Okay.

3             MR. BERNHARD:  I have no other questions.

4             MR. DELLORUSSO:  I have like a few questions.

5   Bassem, you can just proceed.  I'll be like five

6   minutes.

7             THE WITNESS:  Sure.

8                  EXAMINATION BY MR. DELLORUSSO

9   BY MR. DELLORUSSO:

10       Q.   In the year of 2018, where was your primary

11  residence?

12       A.   525 Broadway, Santa Monica, Los Angeles.

13       Q.   In the year 2019, where was your --

14       A.   525 Broadway, Santa Monica, Los Angeles.

15       Q.   In the year 2020, where was your primary

16  residence?

17       A.   525 Broadway, Santa Monica, Los Angeles.

18       Q.   And is that the same for 2021?

19       A.   Yes.

20       Q.   Were you ever served with any documents

21  related to this lawsuit in 2000 -- between 2018 and

22  2020?

23       A.   No.  I have not -- never been served.

24       Q.   Have you ever seen a copy of the complaint --

25  have you ever seen a copy of the complaint before --

# EXHIBIT 5

1  before 2020?

2       A.    Before 2020 or before 2021?

3       Q.    Before -- before 2020.  Have you ever seen a

4  copy of the --

5       A.    No.  No, nothing.

6       Q.    Okay.  Were you aware of any attempts -- were

7  you aware of any attempts of service of process on you

8  -- on your sister, Reem Hanna?

9       A.    No.

10      Q.    Okay.

11      A.    I was never aware.

12      Q.    Okay.  And then I want to briefly discuss with

13  you -- let's see if I can -- the 116 Rockefeller,

14  Irvine, California, address.  Are you aware of that

15  address?

16      A.    Yes, I am.

17      Q.    Okay.  And who resides at that address?

18      A.    My sister, Reem Hanna.

19      Q.    And does she reside with anybody else?

20      A.    No.  She lives with her son.

21      Q.    Okay.  Do you reside at that address?

22      A.    I do not.

23      Q.    Okay.  And I think you testified earlier you

24  have a Mercedes?

25      A.    Yes, I do.

# EXHIBIT 5

63

1      Q.   Okay.  What color is your Mercedes?

2      A.   It's a white Mercedes C-300.

3      Q.   Okay.  Would that white Mercedes C-300 ever be

4   at the 116 Rockefeller, Irvine, California, address?

5      A.   No.  It's parked in my garage at 525 Broadway.

6      Q.   Okay.  Were you ever served with -- were --

7   strike that.

8           If there was ever attempt to provide service

9   upon you, would you accept service?

10     A.   If there was a service that someone was trying

11   to attempt to service me?

12     Q.   Correct.  Would you accept?

13     A.   Yeah.  If -- yeah.  If someone will come and

14   service me, I will accept service.

15     Q.   Okay.  Would you ever attempt to avoid

16   service?

17     A    No, never.

18     Q.   Okay.  Have you ever attempted to evade

19   service of process?

20     A.   No.

21     Q.   Okay.  Have you instructed anyone in your

22   family to evade service of process on this lawsuit?

23     A.   No, never.

24     Q.   Okay.  Have you had any other residences in

25   the years between 2018 and 2020 besides the residence

# EXHIBIT 5

1  that you're living in now?

2       A.   No.  Just the -- the same Santa Monica address

3  since November 1, 2016.

4       Q.   Okay.  And you've been sued before, correct?

5       A.   Yes, I have.

6       Q.   You're aware of how lawsuits work, correct?

7       A.   Absolutely.

8       Q.   You're aware that they have to actually serve

9  you with papers, correct?

10      A.   Of course, especially here in California.

11      Q.   Okay.

12           MR. DELLORUSSO:  No further questions.

13           THE WITNESS:  Okay.

14           MR. BERNHARD:  No further questions.  I really

15  appreciate it, Bassem.  Thanks for taking the time.  I

16  know you guys had a long day.  I appreciate you coming

17  in.

18           THE WITNESS:  Oh, no problem.  I'm -- I have

19  this all day if you guys have any questions.

20           MR. BERNHARD:  Nope.  Thanks so much, guys.

21           MR. DELLORUSSO:  Andrew, real quick since I

22  have you here.  I had my assistant call for -- for

23  dates.  I believe we talked about the 23rd and 24th.

24           MR. BERNHARD:  Yeah.

25           MR. DELLORUSSO:  The only availability right

# EXHIBIT 5

1  now -- I know we talked about the afternoon, so I just want

2  to do the notice.  The date that -- I mean, the time

3  that she told me was -- let me pull it up.

4          THE REPORTER:  Did you want to order?

5          MR. BERNHARD:  I do want to order.  Rush

6  delivery for mine.

7          THE REPORTER:  Okay.  Rush.

8          MR. BERNHARD:  And, Frank, if you just send me

9  the date and time, I will have to check with my wife

10  because of the kid.  We have to do this joint thing.

11  But I will respond to you tonight if you just shoot me

12  the dates by email.

13          MR. DELLORUSSO:  Okay.

14          THE WITNESS:  And also, sorry for -- sorry,

15  Frank.  I just wanted to -- to just let everybody know

16  that, you know, with the judgment that they have against

17  me now, I cannot literally live.  I'm already having so

18  much damages.  I'm going to actually put a whole list of

19  all the damages I've been going through by not able to

20  access any of my bank accounts.  We need to like rush

21  this as -- as -- you know, remove this judgment as much

22  -- as soon as possible.

23          MR. DELLORUSSO:  We have an order to that

24  effect.

25          Andrew, I'll email you, but it's -- it's the

EXHIBIT 5

1  24th at 3:15 for 45 minutes.

2         MR. BERNHARD:  Okay.  Well, I'll find out

3  tonight.

4         MR. DELLORUSSO:  Okay.  I'll email you.

5         MR. BERNHARD:  All right.  Thanks, guys.  All

6  right.

7         THE WITNESS:  All right.  Thank you, guys.

8  Thank you, Frank.

9         MR. BERNHARD:  Thank you, guys.

10        MR. DELLORUSSO:  And also, Madam Court

11 Reporter?

12        THE REPORTER:  Yes.

13        MR. DELLORUSSO:  Can you just send me the cost

14 of -- of -- of a copy if I wanted a copy of that, what

15 the cost would be?  Can you just email me?

16        THE REPORTER:  Yeah.  Well, if you have my --

17 you have my email address, right?  I put it in the chat.

18        MR. DELLORUSSO:  Okay.  Well -- well, I think

19 --

20        MR. BERNHARD:  I copied you -- I coped you

21 too, Frank, so you can just email her.

22        MR. DELLORUSSO:  Okay.  I'll email you.

23        MR. BERNHARD:  All right, guys.

24        THE REPORTER:  Okay.  And did you want -- you

25 wanted a copy also rushed?

# EXHIBIT 5

1            MR. DELLORUSSO:  I don't know yet.  I need to talk

2   to my client.  I just wanted to get prices first --

3            THE REPORTER:  Okay.

4            MR. DELLORUSSO:  -- for a copy.

5            THE REPORTER:  I don't have the prices.  My

6   boss sets those prices.

7            MR. DELLORUSSO:  Sure.  Whenever you have

8   them, just let me know.

9            THE REPORTER:  Okay.  Thank you.

10            MR. DELLORUSSO:  Thank you.

11            MR. BERNHARD:  Guys, all right.

12            THE WITNESS:  Thank you, guys.

13            THE REPORTER:  Bye.

14            THE WITNESS:  Bye-bye.

15            (Thereupon, the deposition was concluded at

16   6:01 p.m.)

17

18

19

20

21

22

23

24

25

# EXHIBIT 5

68

1                    CERTIFICATE OF OATH

2       STATE OF FLORIDA

3       COUNTY OF BROWARD

4

5            I, Erica Hylton, Court Reporter, Notary

6       Public, State of Florida, certify that Bassem El

7       Mallakh, appeared before me via Zoom video on the

8       18th day of March 2021, and was duly sworn.

9            Signed this 21st day of March 2021.

10

11

12

13            _____

14            Erica Hylton, Court Reporter

15            Notary Public, State of Florida

16            Commission No.:

17            Commission Expires:

18

19

20

21

22

23

24

25

# EXHIBIT 5

1                    CERTIFICATE OF REPORTER

2       STATE OF FLORIDA

3       COUNTY OF BROWARD

4

5            I, Erica Hylton, Court Reporter, certify that

6       I was authorized to and did report the Deposition

7       of Bassem El Mallakh; that a review of the

8       transcript was waived; and that the transcript is a

9       true and correct record of my notes.

10           I further certify that I am not a relative,

11      employee, attorney, or counsel of any of the

12      parties, nor am I a relative or employee of any of

13      the parties' attorneys or counsel connected with

14      the action, nor am I financially interested in the

15      action.

16           Dated this 21st day of March 2021.

17

18

19      _____

20      Erica Hylton, Court Reporter

21

22

23

24

25

EXHIBIT 5

# EXHIBIT "5"

1 | voice started getting a little rusty, I'm going to have some

2 | water.

3 |     Q.   Okay.  Perfect.

4 |          Have you ever been arrested or convicted for

5 | any acts of fraud or other crimes involving deceit?

6 |     A.   I have not.

7 |     Q.   Have you ever been accused in court of any

8 | acts of fraud or other acts of deceit?

9 |     A.   I have not.

10 |    Q.   Okay.  Have you ever been sued for any act of

11 | fraud, misrepresentation, or deceit?

12 |    A.   I have not.  No.  I have not.

13 |    Q.   To your knowledge, have you been sued for that

14 | by Belgium Investments in this lawsuit today?

15 |    A.   I have -- I don't know anything about the

16 | lawsuit of Belgium Investments.

17 |    Q.   You don't know anything about it whatsoever.

18 |    A.   Not -- I never received anything.  I guess

19 | they were trying to serve me in the address that I don't

20 | -- I don't live in anymore.

21 |    Q.   Is there any reason you can think of why you

22 | would not be able to answer my questions fully and

23 | truthfully today?

24 |    A.   No.  There's no reason.

25 |    Q.   And you understand you're speaking under

EXHIBIT 5

25

1  in their system, I don't really -- I don't really care, you

2  know.  That doesn't change the fact that this is my

3  name.

4      Q.   Okay.  But whenever you fill out forms, you

5  put your first name as Bassem as your last name as El

6  Mallakh.

7      A.   Yes.

8      Q.   Okay.  And you say you're currently located

9  116 Rockefeller but you reside somewhere else; is that

10  right?

11      A.   Yes.

12      Q.   Okay.  Where do you reside?

13      A.   I live in Santa Monica.

14      Q.   Okay.  What address?

15      A.   525 Broadway.

16      Q.   How long have you resided there?

17      A.   Since November 1st of 2016.

18      Q.   And do you essentially sleep every night there

19  in 525 Broadway in Santa Monica?

20      A.   Yes.

21      Q.   Do you regularly take vacations or trips that

22  would have you not sleeping at that property?

23      A.   Yeah.  I do usually take some vacations.

24      Q.   Okay.  How frequently do you vacation?

25      A.   Probably like maybe three or four times a

# EXHIBIT 5

1   year.

2        Q.   Okay.  Those vacations, are they long, short,

3   a week?

4        A.   Sometimes it could be a week, and the longest

5   vacation, it could be like a month.

6        Q.   Okay.  Have you been on any vacations lately?

7        A.   Not in 2021.  Like I mean, just Santa Barbara,

8   you know, Palm Springs, like stuff like that, not like

9   out of the state.

10       Q.   Well, have you been away from your home at --

11   at your residence at 525 Broadway for any period more

12   than two nights in 2021?

13       A.   Yeah, of course.

14       Q.   Okay.  Well, it's not of course to me.  So --

15       A.   Sorry.  I just wasn't understanding your

16   question.

17       Q.   So when have you been away from your residence

18   at 525 Broadway for more than two days in 2021?

19       A.   Most of -- most of the -- most of like the

20   first week of February.  Most of the first week of

21   February, and that's -- that's about it.  Yeah.

22       Q.   Okay.  That's 2021?

23       A.   2021, yeah.

24       Q.   Where were you for the first week of February

25   in 2021?

# EXHIBIT 5

1    A.    I was just like spending some time with my

2 girlfriend.

3    Q.    Okay.  Was that someplace out in Santa Monica?

4    A.    Santa Monica.

5    Q.    In Santa Monica, just not at 525 Broadway?

6    A.    No.

7    Q.    What's the name of your girlfriend?

8    A.    Ally (phonetic).

9    Q.    What's Ally's last name?

10    A.    Chambers.

11    Q.    C-h-a-m-b --

12    A.    C-h-a-m-b-e-r-s.

13    Q.    Okay.  And does she reside in Santa Monica

14 too?

15    A.    She does.

16    Q.    Okay.  What about 2019.  Were you -- sorry,

17 2020.  Were you away from 525 Broadway for any

18 protracted period of time, more than two days?

19    A.    2020 was the pandemic, so I was -- I was

20 pretty much at home throughout the whole year pretty

21 much, you know.  I don't know if you guys are familiar

22 with the LA cases that we had the highest COVID cases in

23 the -- I mean, not in just the country -- I the world.

24 So it was very dangerous for me to get out of the house.

25    Q.    Okay.  So is there any time you were away from

EXHIBIT 5

1    525 Broadway sleeping somewhere else for more than two days

2    in 2020?

3        A.   No.   No.  Just either between my house or my

4    girlfriend's house.  That's about it.  Nothing --

5        Q.   Okay.  What about 2019.  Any time you were

6    away from the house, 525 Broadway, for more than two

7    nights?

8        A.   2019 I traveled quite a bit.  I traveled quite

9    a bit in 2019.  Yeah.  2019 I traveled quite a bit.

10        Q.   Okay.  Where did you go?

11        A.   I went to Puerto Rico, the Caribbean.  I went

12    to Europe for about like three weeks.  Yeah.  I traveled

13    quite a bit in 2019.

14        Q.   Okay.  For -- for 525 Broadway, is that the

15    address that USPS has for you?  Is that where you're

16    registered as your residence?

17        A.   Yeah.  That's my -- that's my address of mail

18    because -- I mean, I only have Amazon.  I don't really

19    get mail.  I just have Amazon and the DMV.  That's about

20    it.

21        Q.   Okay.  Has 525 Broadway been your registered

22    address with the DMV since when?

23        A.   Since -- let me look at my ID -- 10/19/2017.

24    You'll see it at the very bottom right.

25        Q.   Okay.  And why don't you get any mail?

EXHIBIT 5

1      A.    I'm sorry, what?  My bank statements are all

2  paperless.  My phone bill is paperless.  You know, just

3  Amazon and DMV.  That's about it.

4      Q.    You don't get any junk mail?

5      A.    Yeah.  I do get junk mail, but I -- you know,

6  a bunch of magazines and, you know, coupons and offers;

7  and I just like throw them in the trash.

8      Q.    Okay.  Do you get that junk mail to 525

9  Broadway in your name?

10     A.    Yes.

11     Q.    Okay.  What's your current job?

12     A.    I am currently unemployed.

13     Q.    How long have you been unemployed?

14     A.    Since the pandemic.

15     Q.    And does that mean since March 2019?

16     A.    Yeah.

17     Q.    Okay.  At 525 Broadway, do you pay rent?

18     A.    I do.

19     Q.    Do you have a roommate?

20     A.    I used to -- I used to have a roommate.  Yeah.

21     Q.    Who was that?

22     A.    His name is Mohammad Rostom.

23     Q.    How do you spell his last name?

24     A.    R-o-s-t-o-m.

25     Q.    And when was he your roommate?

EXHIBIT 5

1   condo?

2       A.   It's a townhome.

3       Q.   It's a townhome.  How many rooms is it?

4       A.   Three bedrooms.

5       Q.   Okay.  And how much rent -- sorry.  Does Reem

6   Hanna pay you rent for --

7       A.   She does.  She does.

8       Q.   How much rent does she pay you?

9       A.   She's paying $3000 a month.

10      Q.   Okay.  Did she pay you that in 2019 every

11  moth?

12      A.   Yes.  I have all the bank statements.

13      Q.   Same for 2020?

14      A.   Same for 2020.

15      Q.   Same for 2021?

16      A.   2021, she only paid me January and February.

17  Yeah.  And then after that, I can't access my bank

18  accounts anymore.

19      Q.   Okay.  So at 116 Rockefeller, is there -- are

20  there any cameras on the outside for security?

21      A.   I believe there's a camera that I saw when I

22  came yesterday at the door -- at the front door.  It's

23  one of these like Ring, you know, Amazon cameras --

24      Q.   Yeah.

25      A.   -- at the front door, but that's about it.

# EXHIBIT 5

1    Q.   Okay.  Is there an intercom system?

2    A.   No.  There's not.

3    Q.   Okay.  Is there a doorman?

4    A.   No.  It's a -- it's a house.

5    Q.   Was there a Ring camera at your property at

6  116 Rockefeller in 2019?

7    A.   To be -- to be honest with you, I have not

8  been here in 116 Rockefeller for about probably like

9  over two and a half years, maybe -- maybe more, you

10  know.

11    Q.   Okay.

12    A.   It's been a while.

13    Q.   Does that mean you don't know whether there

14  was a Ring doorbell system in 2019 at 116 Rockefeller?

15         MR. DELLORUSSO:  Objection.

16         THE WITNESS:  I'm not sure.  I'm not sure, to

17     be honest with you.

18  BY MR. BERNHARD:

19    Q.   Do you know if there was a Ring intercom

20  system in 2020 at 116 Rockefeller?

21    A.   Can you -- can you raise your voice a bit?

22    Q.   Yeah.  Was there a Ring camera system at 116

23  Rockefeller in 2020, to your knowledge?

24         MR. DELLORUSSO:  Objection.

25         THE WITNESS:  I'm not sure, Andrew, because,

# EXHIBIT 5

1          as I mentioned to you, I have not been in the Irvine

2          house, not even once in 2020, not even once in

3          2019.  I believe even when I came to Orange County

4          in 2018 it was just for Christmas -- Christmas Eve

5          at my cousin's house in Mission Viejo area, which

6          is like south of Irvine.

7    BY MR. BERNHARD:

8          Q.   Okay.  I saw that you testified that you're

9    not evading service and made -- have made no attempts to

10   evade service in this lawsuit; is that correct?

11         A.   I have not serviced what you said?

12         Q.   That you -- that you are not attempting to

13   evade service -- a processor?

14         A.   What do you mean by evade service?

15         Q.   I think that's in your affidavit, that you

16   made no attempts to evade service.  Does that sound

17   familiar at all?

18         A.   You mean I was serviced?  Is that what you're

19   saying?

20         Q.   So there is a lawsuit --

21         A.   Uh-huh (affirmative).

22         Q.   -- yeah, right, pending called Belgium

23   Investments versus Blank.  Are you aware of that

24   lawsuit?

25         A.   Yeah.  I didn't know anything about the

# EXHIBIT 5

1      Q.   And so is it your position that your sister, Reem

2   Hanna, has never mentioned anything about receiving

3   service of process, a summons, mail, delivery, or even a

4   person knocking at her door for you at any time in the

5   past three years?

6      A.   No, never.

7      Q.   Okay.  Have you ever been accused in court of

8   making a false statement?

9      A.   No.

10     Q.   Okay.  Have you ever been sued for slander,

11  which is the making of a false statement that damages a

12  person's reputation?

13     A.   No.

14     Q.   Okay.  Have you ever been sued for conspiracy,

15  which is a secret planned by a group to do something

16  unlawful?

17     A.   No.

18     Q.   To your knowledge, has your sister, Reem

19  Hanna, ever been accused in court of making a false

20  statement?

21          MR. DELLORUSSO:  Objection.

22          THE WITNESS:  No.

23  BY MR. BERNHARD:

24     Q.   To your knowledge --

25     A.   No.  I don't have any knowledge to that.  No.

EXHIBIT 5

1     Q.   To your knowledge, has your sister, Reem Hanna,

2  ever been sued?

3     A.   I don't have a knowledge of that.  No.

4     Q.   To your knowledge, has your sister, Reem

5  Hanna, ever been sued for slander, which is the making

6  of a false statement that damages of a person's

7  reputation?

8          MR. DELLORUSSO:  Objection.

9          THE WITNESS:  Not to my knowledge.  No.

10  BY MR. BERNHARD:

11     Q.   To your knowledge, has your sister, Reem

12  Hanna, ever been sued for conspiracy, which is a secret

13  planned by a group to do something unlawful?

14          MR. DELLORUSSO:  Objection.

15          THE WITNESS:  Not to my knowledge at all.

16  BY MR. BERNHARD:

17     Q.   To your knowledge, has your father, Essam El

18  Mallakh, ever been accused in court of making a false

19  statement?

20     A.   No.

21     Q.   To your knowledge, has your father, Essam El

22  Mallakh, ever been sued?

23     A.   No.

24     Q.   To your knowledge, has your father, Essam El

25  Mallakh, ever been sued for slander, which is the making

EXHIBIT 5

1  of a false statement that damages a person's reputation?

2      A.   No.

3           MR. DELLORUSSO:   Objection.

4  BY MR. BERNHARD:

5      Q.   To your knowledge, has your father, Sam El

6  Mallakh, ever been sued for conspiracy, which is a

7  secret planned by a group to do something unlawful?

8      A.   No.

9      Q.   And to your knowledge, has your mother, Mona

10  Mallakh, ever been accused in court of --

11      A.   Mona Soliman.

12      Q.   Mona Soliman, sorry.  Mona Soliman ever been

13  accused in court of making a false statement?

14      A.   No.

15      Q.   Have you -- has your mother ever gone by the

16  name Mona McCale?

17      A.   I believe so.  Yeah.

18      Q.   Is that like a maiden name?

19      A.   Dad's name.

20      Q.   Okay.  To your knowledge, has your mother,

21  Mona Soliman, also known as Mona McCale, ever been sued?

22      A.   No.

23      Q.   To your knowledge, has your mother, Mona

24  Soliman, also known as Mona McCale, ever been sued for

25  slander, which is the making of a false statement for

# EXHIBIT 5

1   damages --

2        A.   No.

3        Q.   -- that damage a person's reputation?

4             MR. DELLORUSSO:  Objection.

5             THE WITNESS:  No.

6   BY MR. BERNHARD:

7        Q.   To your knowledge, has your mother, Mona

8   Soliman, also known as Mona McCale, ever been sued for

9   conspiracy, which is a secret planned by a group to do

10  something unlawful?

11       A.   No.

12       Q.   Have you ever been accused in court of having

13  participated in the commission of a fraud?

14       A.   No.

15       Q.   Do you understand that fraud is -- is an act

16  of dishonesty?

17       A.   Yes.

18       Q.   When do you say you first became a lawsuit

19  that there was a lawsuit pending against you in Florida

20  as to Belgium Investments?

21       A.   I'm sorry.  Say that again.

22       Q.   When did you first -- very first become aware

23  that there was a lawsuit pending against you in Florida

24  from Belgium --

25       A.   When I went to the bank in February to try to

# EXHIBIT 5

1  coordinate to pay my rent at Wells Fargo, and then they said

2  that your account has been frozen; and they took all the

3  money out based on a judgment.  And I'm like -- I was

4  like, "What kind of judgment?"  And the -- they gave me

5  a printout that says a judgment based on a Florida case.

6  And that's when I actually found out that there is a

7  lawsuit/judgment.  So I found out about it in February

8  of 2021 just from going to the bank.

9      Q.   And that's the very first time you heard

10 anything about it.

11     A.   First time.  First time, February 2021.

12     Q.   And when was the last time you spoke with

13 Spencer Blank or his attorneys Eric Jackwin or Michael

14 Caramadre?

15     A.   Spencer, he used to be the construction

16 company for the project at -- over at 960 Bay Drive, and

17 the last time we spoke was probably somewhere --

18 somewhere in the 2016 -- 2016 period because I was the

19 -- the manager of the LLC.

20         And then based on the partners, they just

21 didn't like my performance.  So they -- my partner

22 called me and he said, "Hey, the partners just do not

23 want you to manage the property anymore."  So that was

24 back in 2016.  And they said, "We wanted to remove you

25 from management."  And they were -- basically Spencer

EXHIBIT 5

1      A.   What is it?  Something what?

2      Q.   -- you can do now?

3      A.   Yeah, yeah.  I'm looking at my phone right now

4   as we speak.  Yeah.  October of -- October 9, 2019, I

5   was texting him, and I said, "Do you know that the

6   property on Bay Drive was sold February 19th this year

7   for $2.8 million?"  And he goes, "No.  I don't know

8   that, and it's not possible as I had -- as I had a

9   mediation with Jean Claude on Monday on this."  And then

10  he goes, "What makes you say that?"  And then I said,

11  "Look at the listing."

12     Q.   Okay.  Anything else?

13     A.   No.  And then he goes -- I said -- and then I

14  told him, "Because I got a call from Dennis, the agent

15  in Miami that sold us the property, and he said that he

16  heard that the property was sold."  He goes, "Let's

17  check, but highly impossible."

18          I can check -- and I -- and I told him, "I can

19  check with -- with the title companies, you know, that I

20  can call and -- but I thought that he wouldn't have been

21  able to do that without our signature since we're all a

22  part of LLC."  And then this is his reply.  He goes,

23  "You're kidding.  He sold Denver without -- without us."

24     Q.   Okay.

25     A.   And, yeah, that was about it.

# EXHIBIT 5

1    Q.   So was October 9, 2019, the last time you spoke

2    with Bernard Petite?

3    A.   Yeah, yeah.

4    Q.   Okay.  And when he's referencing mediation

5    there, did you not understand that he's talking about

6    mediating the lawsuit?

7    A.   Him and -- him and Jean Claude.  He never

8    mentioned to me ever that I'm a part of any -- any type

9    of a mediation or any type of a lawsuit.

10    Q.   So you understood at that time that he was in

11    a lawsuit with Jean Claude over this other Belgium

12    Investments?

13    A.   Right.  I understand that Bernard and -- and

14    Jean Claude were having some -- some type of a, you

15    know, legal battle between each other.

16    Q.   And did you ever think --

17    A.   And then at that -- and then at that time,

18    also Bernard asked me -- I remember very well.  He says,

19    "Did anybody try to serve you any documents?"  And said

20    that I have not gotten any documents.

21        And as a matter of fact, Bernard, he came to

22    visit me in my Santa Monica house and -- I'll tell you

23    the exact date because, you know, he spent like a few

24    days with me, and we went to have like some lunch in

25    Malibu and, you know, just kind of spend some time.  So

# EXHIBIT 5

1  that's actually the last time I saw him, and I can tell you.

2  And then he was actually staying in my -- my Santa

3  Monica address.  So I don't like if -- if -- I'm --

4  honestly, I don't even know who's suing me, if it's like

5  Jean Claude or Spencer.  I'm, you know, confused who is

6  suing me.

7         So then they are all talking to each other.

8  So if someone, like my partner, came and stayed at my

9  house in Santa Monica and they are suing me, why don't

10  they go and tell the service person to come to the Santa

11  Monica to serve -- to serve me?  And they all know that

12  I've been living in LA since 2016.

13      Q.   Okay.  So when did Bernard Petite come to your

14  -- stay with --

15      A.   Yeah.  Let me look.  I'll tell you right now.

16           (Pause)

17           You know, I'll have to look more on my phone

18  because we have pictures of the places that we had lunch

19  at and stuff.  I just -- I have to look more on my

20  phone.  I have so many pictures.

21      Q.   Do you think it was after October 2019 or

22  before?

23      A.   I'm actually -- now I keep going back with the

24  dates, so many pictures.  Yeah.  I will have to look

25  again.  I know it's -- I know I have the pictures on the

EXHIBIT 5

59

1          MR. DELLORUSSO:  I'm going to do that very shortly

2      if you don't stop with these questions.  You've got

3      to stick the service.

4          MR. BERNHARD:  Please stop speaking.  You are

5      coercing the witness's testimony.

6          MR. DELLORUSSO:  I'm not.

7          THE WITNESS:  No.  I don't see any records.

8  BY MR. BERNHARD:

9      Q.   Okay.  So to your knowledge, you may have

10  talked to him a few times after October 2019, but you

11  don't know exactly what or when --

12      A.   You know, we talked on the phone, but I don't

13  see any -- you know, obviously, I don't have a call log,

14  you know, to show me what day we talked.  But I know we

15  did talk on the phone probably like, you know, once or

16  twice in a -- in a -- within that, you know, two years'

17  period.

18      Q.   Okay.  In the past two years, you talked once

19  or twice to Bernard Petite?

20      A.   I'm sorry.  Say that again.

21      Q.   In the past two years, meaning from October

22  2019 to today, you think you've talked to Bernard Petite

23  once or twice?

24      A.   Once or twice.

25      Q.   Okay.  In all that, did he mention to you that

# EXHIBIT 5

1    you were being sued in a lawsuit here in Florida?

2        A.   He said he's -- he's getting sued, and he

3    says, "Did you get any documents or any service --

4    service?"  And I said, "I did not."

5        Q.   Did you understand by that question that

6    somebody was attempting to serve documents about a

7    lawsuit on you?

8        A.   Right.

9        Q.   Okay.  Did you do anything to investigate if

10   you were getting sued or what that was all about?

11            MR. DELLORUSSO:  Objection.

12            THE WITNESS:  No.  I did not because, you

13        know, usually when someone is suing you, you need

14        to obviously service you with the documents to know

15        what is going on with the lawsuit.

16   BY MR. BERNHARD:

17       Q.   Okay.  Did you hire an attorney to look into

18   it?

19       A.   No, because I was waiting to get serviced.

20       Q.   Okay.  Did you call anybody in Miami or in

21   Florida to find out what was going on with the lawsuit

22   against you?

23       A.   No.

24       Q.   So you're just waiting for somebody to service

25   summons on you?

# EXHIBIT 5

1      A.   Right.

2      Q.   Okay.

3           MR. BERNHARD:  I have no other questions.

4           MR. DELLORUSSO:  I have like a few questions.

5   Bassem, you can just proceed.  I'll be like five

6   minutes.

7           THE WITNESS:  Sure.

8                EXAMINATION BY MR. DELLORUSSO

9   BY MR. DELLORUSSO:

10     Q.   In the year of 2018, where was your primary

11  residence?

12     A.   525 Broadway, Santa Monica, Los Angeles.

13     Q.   In the year 2019, where was your --

14     A.   525 Broadway, Santa Monica, Los Angeles.

15     Q.   In the year 2020, where was your primary

16  residence?

17     A.   525 Broadway, Santa Monica, Los Angeles.

18     Q.   And is that the same for 2021?

19     A.   Yes.

20     Q.   Were you ever served with any documents

21  related to this lawsuit in 2000 -- between 2018 and

22  2020?

23     A.   No.  I have not -- never been served.

24     Q.   Have you ever seen a copy of the complaint --

25  have you ever seen a copy of the complaint before --

# EXHIBIT 5

1   before 2020?

2        A.   Before 2020 or before 2021?

3        Q.   Before -- before 2020.  Have you ever seen a

4   copy of the --

5        A.   No.  No, nothing.

6        Q.   Okay.  Were you aware of any attempts -- were

7   you aware of any attempts of service of process on you

8   -- on your sister, Reem Hanna?

9        A.   No.

10       Q.   Okay.

11       A.   I was never aware.

12       Q.   Okay.  And then I want to briefly discuss with

13   you -- let's see if I can -- the 116 Rockefeller,

14   Irvine, California, address.  Are you aware of that

15   address?

16       A.   Yes, I am.

17       Q.   Okay.  And who resides at that address?

18       A.   My sister, Reem Hanna.

19       Q.   And does she reside with anybody else?

20       A.   No.  She lives with her son.

21       Q.   Okay.  Do you reside at that address?

22       A.   I do not.

23       Q.   Okay.  And I think you testified earlier you

24   have a Mercedes?

25       A.   Yes, I do.

# EXHIBIT 5

**EXHIBIT "6"**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 18-28145 CA


BELGIUM INVESTMENTS 960 BAY DR, LLC,
A CALIFORNIA LLC, ET AL.,

     Plaintiff,

     -vs-

SPENCER BLANK, ET AL.,

     Defendant.
_____/


Deposition Taken via Zoom

2:10 p.m. to 4:40 p.m.


DEPOSITION OF

REEM HANNA


     Taken before Erica Hylton, Court Reporter, a

Notary Public for the State of Florida at Large,

pursuant to Notice of Taking Deposition Duces Tecum

filed in the above-styled cause.


EXHIBIT 21

```
1                    APPEARANCES:

2         On Behalf of the Plaintiff:

3         BERNHARD LAW FIRM PLLC

4         BY: ANDREW BERNHARD

5         333 SE 2nd Avenue, Suite 2000

6         Miami, Florida 33131

7         (786) 871-3349

8         abernhard@bernhardlawfirm.com

9

10        On Behalf of the Defendant:

11        SOUTH FLORIDA LAW, PLLC

12        BY:  FRANK DELLORUSSO, ESQUIRE

13        1920 East Hallandale Beach Boulevard

14        Suite 702

15        Hallandale, Florida 33009

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 21

1                          INDEX

2     TESTIMONY OF REEM HANNA               PAGE

3     Examination by Mr. Bernhard           5

4     Examination by Mr. DelloRusso         88

5     Examination by Mr. Bernhard           95

6     Certificate of Oath                   101

7     Certificate of Reporter               102

8

9                   INDEX OF EXHIBITS

10            DEFENDANT'S EXHIBITS MARKED

11    NUMBER          DESCRIPTION           PAGE

12    Exhibit 1       Affidavit of service  25

13    Exhibit 2       Photograph            52

14    Exhibit 3       Notice of deposition  82

15    Exhibit 4       Complaint             90

16    Exhibit 5       Motion                91

17

18

19

20

21

22

23

24

25

EXHIBIT 21

4

1                      P R O C E E D I N G S

2             THE REPORTER:  Can you raise your right hand?

3             (Witness sworn)

4             MR. RUSS:  Court reporter, can you check the

5         witness' license.  I know that's sort of standard

6         practice right now, especially on these.

7             THE REPORTER:  Yeah, absolutely.

8             THE WITNESS:  If you could hang on one second,

9         I'm going to go grab it.

10            THE REPORTER:  Okay.

11            (Non-related conversation not transcribed)

12            MR. BERNHARD:  I think you have to turn off

13        the background.

14            THE WITNESS:  Let me get rid of -- let me get

15        rid of the background thing.

16            THE REPORTER:  Little closer.  Yeah.  That

17        looks -- that looks good.

18            MR. BERNHARD:  All right, guys.

19            THE WITNESS:  You got it?

20            THE REPORTER:  Yeah.

21            MR. DELLORUSSO:  And, Bassem, if you could

22        just mute your mic, please.  Thank you.  Perfect.

23            MR. BERNHARD:  All right, guys.  So we're all

24        on the record.

25     THEREUPON:

# EXHIBIT 21

1                         REEM HANNA,

2            having been first duly sworn and responding,

3        "I do," was examined and testified as follows:

4                     DIRECT EXAMINATION

5    BY MR. BERNHARD:

6        Q.    My name is Andrew Bernhard.

7        Reem, Ms. Hanna.  What do you prefer that I call

8    you?

9        A.    Just call me Reem.

10        Q.    Like I said, my name is Andrew.  I'm taking

11   your deposition today.  Have you ever had your

12   deposition taken before?

13        A.    Just once.

14        Q.    Just once.  What were the circumstances?

15        A.    Something personal.

16        Q.    Sorry.  What?

17        A.    Do I need to -- I don't know that I feel

18   comfortable sharing that.

19        Q.    Well, sort of the deal is with these things

20   with -- with discovery in Florida, it's pretty wide open

21   unless you're in privileged areas, like your finances or

22   communications you've had with your attorney.  And so,

23   you know, my right here for my client is to test, you

24   know, your veracity, which means your truthfulness, your

25   background because you've voluntarily submitted an

EXHIBIT 21

1  affidavit and put it into this court case.

2         And so, you know, I don't know you, obviously,

3  but you know, it's really my job to figure this stuff

4  out.  And so for the most part, there are very few

5  things that are off limits for these discovery portions

6  of the case.  Does that make sense?  We have an order

7  that limits me to the motion to vacate, the affidavits,

8  the filings that are in it, and testing what you guys

9  said there, so this is part of it.  Does that make

10  sense?

11     A.   Yeah.  I just -- yeah.  Yeah, yeah.  It just

12  is -- you know, I just don't want to, you know, share

13  information about myself that is not necessary, so it's

14  for my divorce case; so I don't know how that's

15  relevant.  But there you go.

16     Q.   Okay.  So for your divorce.  I won't ask you

17  too many questions about your divorce.  Don't worry.

18         Okay.  So, you --

19     A.   Please don't.

20     Q.   You -- you understood that sort of the -- the

21  way this goes, right.  It's I ask a bunch of questions;

22  you give your answers, and our great court reporter

23  writes those down, right.

24     A.   Yeah.

25     Q.   Okay.  So perfect example, you know, when I

EXHIBIT 21

1  ask you questions, our court reporter is just writing it

2  down, so she can't interpret nodding of your head,

3  shrugging of your shoulders, movement of your hands.

4  She really needs you to say yes, no, or some other

5  verbal statement; is that okay?

6      A.   That's fine.

7      Q.   Okay.   Sometimes when I'm asking you a

8  question, I won't state it very well.   You'll not

9  understand; you're not sure how to answer.   That's okay.

10  It's my job is to ask you questions that you can

11  understand and answer.   And so if at any time you don't

12  get what I'm asking you, just say so, okay.

13      A.   Okay.

14      Q.   So just say to me something like, you know, I

15  don't understand what you're asking or can you say that

16  a different way.   All right.

17      A.   Okay.

18      Q.   All right.   Sometimes while we're going along

19  you're going to say, look, I need a break, I want to

20  grab a glass of water, I need to use the restroom.   All

21  that's great.   No big deal.   I only ask that you finish

22  whatever answer you're giving at the time and then just

23  let us know you need a break, okay.

24      A.   All right.   Sounds good.

25      Q.   Awesome.   Sometimes when you're going along

EXHIBIT 21

1  you'll give an answer, and then later you'll think, you know

2  what, I could have answered that differently or I just

3  remembered something, or I want to, you know, more

4  clearly state out what I said before.  Look, this is

5  your testimony.  It's your deposition, and I want to

6  make sure whatever it is you're saying is your most

7  accurate, honest, complete answer possible, okay.

8       A.   Okay.

9       Q.   So if at any time you want to add to or

10  clarify a prior answer, just say so.  That's not a

11  problem at all.  All right.

12       A.   All right.

13       Q.   Okay.  And then sometimes you might be going

14  along and think, look, there's some documents that might

15  help me remember something about this question or answer

16  this question.  But any time you think there's a

17  document that can help you answer a question, just say

18  so.  We might have it here.  Your attorney might have

19  it.  Our job is to help you get to where you want to go,

20  okay.

21       A.   Okay.

22       Q.   All right.  These next questions are

23  formalities that make sure that you're, what we call,

24  legally competent to testify today.  All right.

25       A.   All right.  Go ahead.

EXHIBIT 21

```
1        Q.   All right.  Thanks.  Like I said, I -- it's this
2   funny thing with the -- with the court reporter writing
3   it down.  We just need yes, no, and otherwise, I can't
4   really move forward.  All right.  So, one, are you
5   taking any medication or drugs of any kind that might
6   make it difficult for you to understand my questions and
7   answer honestly and accurately today?
8        A.   No.
9        Q.   Have you had any alcoholic to drink in the
10  last eight hours?
11       A.   No.
12       Q.   Are you sick at all today?
13       A.   No.
14       Q.   Are you currently under a doctor's care for
15  any illness?
16       A.   No.
17       Q.   Have you ever been arrested or --
18       A.   Routine.
19       Q.   Sorry?
20       A.   Routine.  Routine --
21       Q.   Routine stuff?
22       A.   Yeah.
23       Q.   Anything that would make it difficult for you
24  to understand my questions or answer honestly and
25  accurately today?
```

# EXHIBIT 21

1      A.   No.

2      Q.   Okay.  Have you ever been arrested or

3   convicted for any acts of fraud or other crimes

4   involving deceit?

5      A.   No.

6      Q.   Have you ever been accused of any acts of

7   fraud or other acts involving deceit in a court?

8      A.   No.  No.

9      Q.   Okay.  Is there any other reason you can think

10  of that you can't understand my questions and answer

11  fully and truthfully today?

12     A.   No.

13     Q.   You understand you're speaking under penalty

14  of perjury; is that correct?

15     A.   Correct.

16     Q.   Okay.  And that means that you've got to tell

17  the truth, the whole truth, nothing but the truth, and

18  if you don't, that it's considered perjury.  Do you

19  understand that?

20     A.   Yes.

21     Q.   In Florida, perjury is a third degree felony

22  under Florida Statutes 837.02 and 92.525, and it's

23  punishable by prison and fines with up to five years in

24  prison and 5K in fines.  Do you understand that?

25     A.   Yes.

# EXHIBIT 21

1     Q.   Okay.  And you've agreed to be sworn in and bound

2   under oath by our Florida notary; is that right?

3     A.   Yes.

4     Q.   And this -- this agreement to be under oath

5   and penalty of perjury applies the same to you out in

6   California; is that right?

7     A.   I don't understand.  I mean, I don't know the

8   legal system.

9     Q.   Sure.  Well, are you in Florida right now?

10    A.   No.

11    Q.   Okay.  Are you in California right now?

12    A.   Yes.

13    Q.   Okay.  So you understand that this rules that

14   -- that you're speaking under oath and penalty of

15   perjury, that those apply to you where you're sitting

16   today in California; is that right?

17    A.   Okay.  Yeah.  Thank you for explaining.  Yes.

18    Q.   Okay.  Yeah.  I know.  It's like this

19   technical thing about crossing state lines.  And we've

20   all been trying to figure it out with these -- with

21   these Zoom calls.  So I just always want to make sure

22   you get -- you know, you're not like in China, not

23   subject to extradition, and just free-willing it.  All

24   right.

25    A.   Got it.

# EXHIBIT 21

1      Q.    Okay.   Did you prepare at all for your deposition

2   today?

3      A.    Yeah.   A little bit.

4      Q.    Okay.   What'd you do?

5      A.    I took the -- the rest of the afternoon off.

6      Q.    Okay.   And how is that preparation, or how

7   does that involve preparation?

8      A.    Just to organize my day and to make sure that

9   I'm available to answer your questions.

10      Q.    Okay.   Did you review any documents to prepare

11   for your deposition?

12      A.    I did.   I looked through my phone to see some

13   old pictures.

14      Q.    And how would looking at your phone to see old

15   pictures help you prepare for this depo today?

16      A.    I just -- to be prepared --

17      Q.    Sure.

18      A.    -- depending on what you need to find

19   information about.

20      Q.    Okay.   Let's understand what you mean.   Were

21   you like looking up photos to see where you were on

22   certain dates or where you weren't, or something like

23   that?

24      A.    Yeah.   I wanted to see where I was on certain

25   dates.

# EXHIBIT 21

1      Q.    And what did you find?

2      A.    Where I was on those dates.

3      Q.    Okay.  What -- what -- what dates in

4  particular did -- did you go looking for?

5      A.    Why -- why don't we get to your questions

6  about what dates you're looking for just so I make sure

7  that I'm giving you what you need?

8      Q.    Sure.  I am right on the questions I'm looking

9  for.  I promise you.  You'll -- you'll know when I'm not

10  because I'll say I'm done.  So just tell me what you

11  were looking for when you were doing your preparation.

12      A.    I looked at a couple of dates that -- dates

13  September 15th and March 3rd.

14      Q.    Okay.  Is that September 15, 2020, 2021, 2019?

15      A.    2020.  And then March 3, 2019.

16      Q.    March 3, 2019?  And why did you look for those

17  particular dates?

18      A.    My understanding are those are the dates that

19  they claim they -- they were serving me or said that she

20  was serving me.

21      Q.    Okay.  So what did you find when you looked at

22  photos from March 3, 2019?

23      A.    I was not in Orange County.  I was in LA at a

24  different event.

25      Q.    What were you doing in LA on March 3, 2019?

# EXHIBIT 21

1     A.   I had a yoga class and a brunch with friends in

2  LA.

3     Q.   And what time was your yoga class on March 3,

4  2019?

5     A.   10:30?

6     Q.   Sorry?

7     A.   It was at 10:30.

8     Q.   10:30?

9     A.   10:30 a.m.

10     Q.   Where was that at?

11     A.   It was in -- I believe it was in -- hang on

12  one second -- it was in Hollywood Hills, I believe,

13  either Hollywood Hills or Bel Air.  But, you know, I can

14  get you -- yeah.  It was -- I think it was Hollywood

15  Hills.

16     Q.   Okay.  Was it -- was it like a particular

17  company?

18     A.   Yeah.  It was an organized event by a yoga

19  studio, and it was for charity; so they organized this

20  yoga event at the house in LA where the proceeds would

21  go to charity.

22     Q.   And who was it?  What house?

23     A.   Just some really nice house in LA.  So it was

24  a mansion in LA, and it was organized by a yoga studio

25  that my friend owns.

EXHIBIT 21

```
 1        Q.   And which -- what's the name of the studio, and

 2   what's the name of the friend?

 3        A.   Aree Khodai.

 4        Q.   How do you spell it?

 5        A.   K-h-o-d-a-i.

 6        Q.   Is that Z like Zed?

 7        A.   K as in kilo, h as in hotel, o, d as in David,

 8   a-i.

 9        Q.   D as in David, a-i.  Okay.  And what's the

10   name of the yoga studio?

11        A.   Aree's Army is her business.

12        Q.   Okay.  So you go to do a trade event with

13   Aree's Army, and you said that was up in the hills or

14   Bel Air?

15        A.   Let me ask my brother.

16             THE WITNESS:  Do you remember where that house

17        was?  I think it was -- I have the photos of the

18        house.  I think it -- I mean, I'm not very familiar

19        with the area that it was in.  I think it was in

20        either Bel Air or Hollywood Hills.  I can find the

21        address.

22   BY MR. BERNHARD:

23        Q.   And just so we have a clear record, is your

24   brother with you right now while you're doing your

25   deposition?
```

# EXHIBIT 21

1       A.   He's on the phone.

2       Q.   Okay.  Is he with you physically?

3       A.   Yeah.

4       Q.   Okay.  And so this is sort of that weird

5  thing.  You know, there's a rule that we can invoke as

6  to witnesses having other witnesses in the room.  I

7  recognize that Bassem's a party, but I just want to make

8  sure -- I'm sure you guys saw this like on the news

9  today -- that there's some degree of -- of sense of

10 intimidation sometimes when a witness is talking and the

11 witness is in the room.

12          Are you saying that the witness -- are you

13 saying that Bassem is in the room with you, or are you

14 just saying he's on the phone?

15      A.   He's -- he's on the phone.  He was asked to

16 join.

17      Q.   Sure.  I didn't ask him to join, so I'm just

18 making sure that -- that he's not --

19      A.   Oh, yeah.

20      Q.   So I'm just making sure he's not in your room

21 with you observing you give your testimony.

22      A.   Okay.

23      Q.   So is he in the room with you observing you

24 give your testimony?

25      A.   He's in the house.  He's not in the room.

EXHIBIT 21

1  He's in the house, but yeah.  If that's not okay, let me

2  know.

3      Q.   I would just say -- look, I just ask that you

4  guys stay just in separate rooms if possibly, and then

5  we'll just see how it goes.  Does that work for

6  everybody?

7      A.   That's fine with me.

8      Q.   Okay.  I apologize.  I don't know if you guys

9  saw that -- that news clip today -- or I'm sorry, this

10 week, where it was like a lady testifying in court, and

11 I guess like -- did you guys see this thing.  There was

12 like somebody like -- the defendant was in the other

13 room.  Did you guys see this at all?

14          THE REPORTER:  I did.

15          THE WITNESS:  No.

16          THE REPORTER:  I did.

17          MR. BERNHARD:  That was crazy, right, where

18      like the -- the like Court realizes that the guy is

19      in the other room, and they like freak out; and the

20      police go and arrest him.  I don't know.  It's --

21          THE REPORTER:  Yeah.  Yeah.  It was an assault

22      case, and the judge threw him out.  And -- but he

23      basically stalled them until the police showed up.

24          MR. BERNHARD:  Yeah.  Crazy.  Crazy to watch.

25          MR. DELLORUSSO:  Just -- just for the record,

# EXHIBIT 21

1       I just want to make sure Bassem's aware he's allowed

2       to be present since he is a party.  But, Bassem,

3       you know, just be in a separate room, please.

4       That's all he's asking for.

5           So for example, if she's in her -- her bedroom

6       or in the kitchen, just go in a separate room just

7       so, you know, technically you're not like giving

8       her answers.  That's kind of what -- what the --

9       the whole deal is.  So -- so Andrew is aware that

10      you're not feeding her answers.  That's the only --

11      that's the only issue.

12          MR. BERNHARD:  Does that make sense, guys?

13          MR. EL MALLAKH:  I understand.  I'm upstairs,

14      actually.  I'm in the top room.

15          MR. DELLORUSSO:  Perfect.  Perfect.  There we

16      go.  We're good.  Thank you.

17          MR. EL MALLAKH:  Is that okay?

18          MR. DELLORUSSO:  Yeah.  Yeah.  Of course.

19          MR. EL MALLAKH:  If you guys want me to leave

20  the house, I don't have a problem.

21          MR. DELLORUSSO:  No, no, no.  You don't have

22  to leave the house at all.  We just don't want you to be

23  in the same room.

24          MR. EL MALLAKH:  Oh, okay.

25          MR. BERNHARD:  Yeah, yeah.

# EXHIBIT 21

1        MR. EL MALLAKH:  Okay.

2        MR. BERNHARD:  I only said it because she'd

3     asked a question.  And you get what I'm saying,

4     right, guys.  I just want to make sure her

5     testimony is her own.

6        MR. EL MALLAKH:  Okay.  No problem.  I'm going

7     to mute -- I'm going to go ahead and mute now.

8        MR. BERNHARD:  Okay.

9        THE WITNESS:  And, Andrew, I found the exact

10     address of the house if that's helpful to you in

11     any way.

12 BY MR. BERNHARD:

13     Q.   Yeah.  That'd be great.  Please.

14     A.   1536 Blue Jay Way, Los Angeles, California

15 90069.

16     Q.   90 what?

17     A.   069.

18     Q.   Okay.  All right.  So you're at this thing in

19 the morning.  At 10:30 at you're at this -- at this

20 charity event, and then you said you went to brunch.

21     A.   Yes.

22     Q.   And where did you go to brunch with your

23 friends?

24     A.   Hang on one second.  Hang on.  I can get the

25 name of the place.  My friend owns the restaurant.  Let

# EXHIBIT 21

 1   me see.  Los Angeles.  It was in Los Angeles.  It's called

 2   Gwen.

 3        Q.   Gwen, G-a-w?  Sorry, G-l-e --

 4        A.   G-w-e-n.

 5        Q.   G-w-e-n.  Okay.  And it's like a restaurant?

 6   Where at?

 7        A.   Yeah.  It's a restaurant.

 8        Q.   Where is it at?

 9        A.   In Los Angeles.

10        Q.   I know, but it's a big city, so is it like

11   north, central --

12        A.   Oh.  You want the address?  It's -- yeah.

13   6600 Sunset Boulevard.

14        Q.   Okay.  So you go to brunch at what -- what

15   about time is that?

16        A.   Probably around I'd say 12:30, maybe.

17        Q.   Okay.  So while you're looking there at your

18   phone --

19        A.   My phone?

20        Q.   Yeah.  While you're looking at your --

21        A.   Oh, to see my -- oh, to see if there was a

22   text message saying like time we went.  I'm trying to

23   get as accurate as you -- as I can for these answers.

24        Q.   Appreciate it.  Okay.  Well, what about April

25   17, 2019.  What does your phone tell you about that?

EXHIBIT 21

1      A.    What date?

2      Q.    April 17, 2019.

3      A.    So I was also in LA doing a hike and

4  celebrating a friend's birthday.

5      Q.    Where was that?

6      A.    The hike was -- again, I believe it was in

7  Malibu.  I have a picture of the hike.  And the birthday

8  was at Waldorf Astoria in Beverly Hills.

9      Q.    And when did the hike start?

10     A.    When did what -- which one?  The hike?

11     Q.    The hike on April 17, 2019.

12     A.    It was possibly around 10:00 a.m.

13     Q.    Is that what your photos tell you, or is that

14  just guessing?

15     A.    No.  That's -- I mean, that's -- it's probably

16  around 10:00 a.m. because I took a photo of the end of

17  the hike, and it was a five mile hike; and I know my

18  pace, so probably around 10:00 a.m.  Could be like

19  10:05, 10:10, but like I -- just knowing my pace.

20     Q.    Okay.  And what's the photo say for the end of

21  the hike?  What's the time stamp for that?

22     A.    3:28.

23     Q.    3:28 is the end of the hike up in Malibu, and

24  then you go to Waldorf Astoria in Beverly Hills for a

25  party.

# EXHIBIT 21

1       A.   Correct.

2       Q.   What time did you go to the party?

3       A.   Let me look.  7 -- I was going to say maybe

4  7:30 because my photo stamp is at 8:30, but -- it was

5  probably 7:30 is when we got there.

6       Q.   7:30 you go to Waldorf, and your photo stamp

7  said what?  8:30 you said?

8       A.   8:30, yeah.

9       Q.   And in between the end of the hike at 3:30 and

10 the arrival at -- at Waldorf at 7:30, what did you do?

11      A.   I went to my best friend's house in Beverly

12 Hills to get ready there.

13      Q.   Who is your best friend?

14      A.   Her name is Jihan.

15      Q.   Yeah.  Jihan what?

16      A.   Shaw.

17      Q.   Is that G-i-h-a-n or J-i-h-a-n, or how is it

18 spelled?

19      A.   She spells it either way.

20      Q.   Okay.  Well, do you know which one is her

21 legal name?

22      A.   You can use G, use J, it doesn't matter.  But

23 she uses -- she -- it's different on each item that she

24 has.  Her passport has G; her ID says J.  She's not

25 relevant to the story.  So --

# EXHIBIT 21

1    Q.   She is relevant for -- for our purposes, right.

2    So Shaw, S-h-a-w?

3    A.   Yeah.

4    Q.   Okay.  And do you know her phone number?

5    A.   I do know her phone number, but I'm not

6    comfortable giving her -- you her phone number.

7    Q.   Why is that?

8    A.   Why would -- I mean, I could ask why you need

9    her phone number.

10   Q.   But that wouldn't be how the deposition works.

11   So as we sit here today, the court empowers me to ask

12   you questions.  It does not empower you to ask me any

13   questions.  And if necessary, I could just have you

14   subpoenaed, and then have a court compel you to do so.

15   And if you refuse, then they issue a warrant for your

16   arrest.

17   A.   Okay.

18   Q.   I don't want to go down that road.

19   A.   All right.  Why don't we go down that road

20   because I'm not comfortable giving you my best friend's

21   phone number.  She has nothing to do with this.  You're

22   already asking me a lot of questions, and I feel like

23   it's not necessary.

24   Q.   Okay.  Well, motion to compel and sanction the

25   witness for failure to comply.

# EXHIBIT 21

1          Like -- like I said, I'm not trying to make this

2    crazy or difficult, it's just going to extend it out for

3    your brother.  I'm really trying to make this stuff

4    easy.  I have to check what you're saying, right,

5    because you, like I said, submitted testimony to the

6    court voluntarily.  That's something you chose to do.  I

7    had no part in that, and I'm obligated by my client.

8    I've got to check this stuff out, right.  So --

9          MR. DELLORUSSO:  Real -- real quick.  How is

10         -- how is the April date relevant?

11         MR. BERNHARD:  April date relevant is the date

12         that she was -- according to the testimony of a

13         process server, it's the date that she was served

14         -- she was processed.

15         MR. DELLORUSSO:  But she was given --

16         MR. BERNHARD:  It says right here, "On the

17         17th day of April 2019, I did as follows."

18         MR. DELLORUSSO:  Looking at -- looking at your

19         motion at -- for default, you advised that she was

20         served on March 3rd.  I think that's what -- that's

21         what it says in the affidavit.  So --

22         MR. BERNHARD:  It's -- I think you're just

23         reading it wrong.  It says, "Received a writ on

24         March 3rd."

25         MR. DELLORUSSO:  I can look at your motion to

# EXHIBIT 21

1      -- if you look at your motion for default -- do you

2      have it open?

3          MR. BERNHARD:  Sure, guys.  Look -- I'm

4      looking at the affidavit of service.

5          MR. DELLORUSSO:  Yeah.  I looked at -- I

6      looked at it too.

7          MR. BERNHARD:  Okay.  See --

8          MR. DELLORUSSO:  But I'm not sure if the

9      process server -- you know, we can go off the

10     record if you want.

11         MR. BERNHARD:  No, no.  Let's do it on -- on

12     the record.

13         MR. DELLORUSSO:  Okay.

14         MR. BERNHARD:  You see that -- I'm looking at

15     this affidavit of process.  It says --

16         MR. DELLORUSSO:  Yeah.  I'll pull it up.  It

17     says March 3rd.

18         MR. BERNHARD:  I'll make it easier, guys.

19     I'll pull it up for all of us.  We can all look at

20     the same thing on share screen, okay.

21         Can you guys all see the screen that I'm

22     looking at here?

23         MR. DELLORUSSO:  Uh-huh (affirmative).

24         MR. BERNHARD:  Does everybody see that?

25         THE REPORTER:  Yeah.

EXHIBIT 21

1        MR. BERNHARD:  Okay.  So you see here we have

2    this -- we'll mark this, Court Reporter, as Exhibit

3    1.

4        THE REPORTER:  Okay.

5        (Deposition Exhibit 1 marked)

6        MR. BERNHARD:  And I'll send it to you.  Is

7    this affidavit of service by Brittany Johnson

8    (phonetic) for summons in this case of BV Global

9    Investment Partners (phonetic), Belgium

10   Investments, case number 18-28145-CA, and the

11   address 116 Rockefeller, Irvine, California 92612.

12   And it says that she received this writ on the 3rd

13   day of March 2019.  "Served the same at 12:20 p.m.

14   on the 17th day of April 2019 upon Reem Hanna."  So

15   I'm just going by what she says here.

16       MR. DELLORUSSO:  Well, I also want to show

17   something for the record as well.

18       MR. BERNHARD:  Please don't because it's my

19   deposition.  When it comes to your time for cross,

20   you're welcome to do so.

21       MR. DELLORUSSO:  Okay.  Well, your -- your --

22   your motion for judicial default is --

23       MR. BERNHARD:  When you -- you -- when you go

24   beyond at speaking onto Rule 1.310, you're

25   prohibited from doing so because you're coaxing

# EXHIBIT 21

1        testimony out of the witness.  Please refrain from

2        making -- other than objections to form.

3   BY MR. BERNHARD:

4        Q.    Okay, Reem.  So here you understand why I'm

5   asking you these questions.  There's an affidavit to

6   this effect saying that this person served you on this

7   date, and so I'm just trying to get an idea of where you

8   were and who else can verify that because you've

9   testified otherwise.  Do you understand that -- that --

10       A.    Yeah.

11       Q.    -- calls into question --

12       A.    So I'm trying to do my best job here in

13  answering all of your questions.  I'm also not trying to

14  be difficult.  You asked me exactly where I was, what

15  time.  I'm shared -- sharing that information with you,

16  you know.  I'm trying to also protect the privacy of my

17  friend.  She has no -- you know, there's no reason to

18  drag more people into this, so I'm trying to protect her

19  privacy.  You know, if you want her phone number, I'll

20  give you her phone number.  It's just like --

21       Q.    Great.  Yeah.

22       A.    I'm just starting to feel like this is a

23  little excessive.

24       Q.    That'd be great.  That'd be great.

25       A.    I'm giving you all the information that you're

# EXHIBIT 21

1  asking for as detailed as I -- as I can.

2      Q.   I appreciate that.  So what's her phone

3  number?

4      A.   (949) 878-1181.

5      Q.   1187 you said?

6      A.   81.

7      Q.   1181.  Okay.  So you go to Jihan's at 3:30.

8  You're there util, you think, 7:30 on April 17, 2019; is

9  that right?

10      A.   That's about right.

11      Q.   Okay.  And then do you know how long you were

12  at the -- the thing at -- at the Waldorf?

13      A.   We were probably there until like 10:30 or

14  11:00, and then I went back and spent the night at her

15  place.

16      Q.   Okay.  So turning to the time of around noon,

17  your feelings are that you were on this hike in Malibu;

18  is that right?

19      A.   That's correct.

20      Q.   Okay.  This is for April 17, 2019.  Is that

21  right?

22      A.   That's correct.

23      Q.   Okay.  Were you with anybody on this hike on

24  April 17, 2019?

25      A.   Yes.  With my friend, Jihan -- my best friend,

# EXHIBIT 21

```
 1  Jihan.
 2       Q.   So you and Jihan are on the hike in Malibu.
 3  You guys go back to Jihan's house and you get read for
 4  the party.  Do you recall --
 5       A.   Yes.
 6       Q.   -- when you met first Jihan on April 17, 2019?
 7       A.   I believe it was around 10:00 a.m.
 8       Q.   So you met at the -- at the hike site?
 9       A.   No.  We met at her house.
10       Q.   Okay.  So you meet at Jihan's house at 10:00
11  a.m.  And where is Jihan's house approximately?  I don't
12  need you to give me an exact address, but let's just say
13  it's --
14       A.   Beverly Hills.
15       Q.   -- a cross street or something.
16       A.   Beverly Hills.
17       Q.   What was that?
18       A.   Beverly Hills.
19       Q.   Beverly Hills.  And can you give me like a
20  cross street, not an exact number, just like a cross
21  street?
22       A.   Usher and Leslie.
23       Q.   Usher and Leslie.  Okay.  And where was the
24  hike site that you went to?
25       A.   I don't remember the exact site.  I'm not very
```

EXHIBIT 21

1  savvy with LA towns.  Like I can't tell you exactly where

2  it was.  I can probably find out.  It was in LA.

3       Q.   LA.  So you're not sure if it was in Malibu or

4  maybe somewhere else in LA?

5       A.   It was in Los Angeles.

6       Q.   Okay.  Is, that Los Angeles County, City of

7  Los Angeles?

8       A.   Los Angeles County.

9       Q.   Okay.  And you don't know specifically where

10 in Los Angeles County this hike was, whether it be

11 farthest edge east, right up on the shore in Santa

12 Monica, all the way up Thousand Oaks, down almost the

13 border of the OC?  You have no idea where this hike

14 occurred --

15           MR. DELLORUSSO:  Objection.

16 BY MR. BERNHARD:

17      Q.   -- on April 17, 2019?

18      A.   It was in Los Angeles County.  I can show the

19 pictures of the hike.

20      Q.   That would be great if you could.  Is there

21 like a -- you know, usually phones have like a marker

22 that identifies where they are.  Do you think that you

23 could forward that to your attorney, and he can produce

24 it to me?

25      A.   Yeah.  Sure.

# EXHIBIT 21

1      Q.   Okay.  So somewhere -- it looks like you're on a

2  hill, and it's looking down somewhere.  Does that sound

3  right?

4      A.   That sounds right.

5      Q.   Okay.  And at this time, on April 17, 2019,

6  where were you living?

7      A.   At 116 Rockefeller.

8      Q.   And where is that located?

9      A.   Irvine, California 92612.

10     Q.   Okay.  Is that where you are right now?

11     A.   That's correct.

12     Q.   Okay.  And how far is it from Irvine,

13 California at 116 Rockefeller to your friend Jihan's

14 house?

15     A.   About 50 miles.

16     Q.   Fifty miles.  And is it like up the 405 with

17 traffic, or is it something else?

18     A.   Up the 405 with traffic.

19     Q.   Okay.  And how long does it take you to do

20 that 50 miles up the 405 with traffic from Irvine to

21 Jihan's house?

22     A.   About two hours -- two hours and twenty

23 minutes.

24     Q.   All right.  So what time do you think you left

25 your house at 116 Rockefeller to do this hike on April

# EXHIBIT 21

1    17, 2019?

2         A.   Probably no later than 9:00 a.m.

3         Q.   Okay.  Okay.  And then you said you looked up

4    another date.  You said September something; does that

5    sound right?

6         A.   I think those are the two that I looked at my

7    phone for.

8              MR. DELLORUSSO:  Andrew, let me know when

9         you're ready for me to send you the April 17, 2019,

10        photos.

11             MR. BERNHARD:  That would be great.  If you

12        can shoot them over, that'd be awesome.

13             MR. DELLORUSSO:  Sure.

14   BY MR. BERNHARD:

15        Q.   And then -- and you were saying that you also,

16   to prepare for this deposition, looked at a photo or

17   photos from September 15, 2020.  Do I understand that

18   right?

19        A.   No.  I don't think September 15th.  Why don't

20   -- Andrew, why don't you tell me what date you're

21   looking for.  It'll be easier.

22        Q.   Like I said, you are giving testimony.  You

23   previously testified that you looked up photos.  I said

24   what dates.  You said March 3, 2019 and September

25   something 2020, so I'm trying to understand what date

# EXHIBIT 21

1  you --

2      A.    Yeah.  I'd rather just be more accurate about,

3  you know, what dates you're looking for, and then I can

4  help with whatever questions you have.

5      Q.    I'm sure you would, but again, like I said,

6  this is my deposition.  I ask questions; you give the

7  answers.  So please just testify --

8      A.    I don't remember what date -- I don't remember

9  what day in September.

10     Q.    Okay.  But you recall looking at some date in

11 September 2020 to look for photos; is that right?

12     A.    Yeah.  I looked through the whole month of

13 September.

14     Q.    Okay.  And what did you --

15     A.    If you want to narrow it --

16     Q.    What did you glean from -- from that -- doing

17 that -- looking?

18     A.    Again, lots of different things, like lots of

19 different activities, so if you can help me narrow down

20 a particular one, I'm happy to answer your questions.

21 But --

22          MR. DELLORUSSO:  I'm going to object to this

23     line of questioning.  We've already stipulated

24     according to your document that she was served on

25     April 17th -- allegedly served at that time.  So I

# EXHIBIT 21

1    don't know why we're asking about September.

2       MR. BERNHARD:  Please -- please, if you do one

3    more time, a speaking objection, we're just going

4    to have to call the judge to have you comply with

5    the Rule --

6       MR. DELLORUSSO:  Let's call the judge.  This

7    is going outside the scope of the order.

8       MR. BERNHARD:  Not going outside the scope of

9    the order.  You don't have any right whatsoever to

10   have speaking objections.  If you want to instruct

11   your client not to answer because you feel like

12   where she was, what she did to prepare for this

13   deposition is outside the scope of this deposition,

14   please make a call to the judge and say, judge,

15   I've instructed the witness not to answer because

16   questions as to how she prepared for the deposition

17   I've determined are outside the scope of the

18   deposition.  And I can -- I'm happy to wait if you

19   want to instruct her not to answer.

20      MR. DELLORUSSO:  All right.  My objection is

21   outside the scope of the order.  That's my

22   objection.

23      MR. BERNHARD:  Okay.  Are you instructing your

24   client not to answer?

25      MR. DELLORUSSO:  No.  She can answer if she

EXHIBIT 21

1    knows -- if she knows the answer.

2         MR. BERNHARD:  Great.  From here on forward,

3    please, unless you're instructing the client not to

4    answer, please don't make any more speaking

5    objections.  It coaxes the witness testimony.

6  BY MR. BERNHARD:

7    Q.   Okay.  So, Reem, I understood Jihan has

8  different names.  What's your full legal name?

9    A.   Reem Hanna.

10   Q.   Okay.  And was that your original name at

11 birth?

12   A.   No.  That's my marriage name.

13   Q.   Okay.  What was your name at birth?

14   A.   Reem El Mallakh.

15   Q.   So El Mallakh was your last name?

16   A.   Correct.

17   Q.   Do you have any other names or aliases that

18 you go around by besides Reem Hanna and Reem El Mallakh?

19   A.   No.

20   Q.   Do you have any, you know, middle names that

21 you would go by or anything like that?

22   A.   No.

23   Q.   Okay.  And you testified that you currently --

24 currently reside at 116 Rockefeller in Irvine,

25 California; is that right?

# EXHIBIT 21

1      A.   Correct.

2      Q.   Okay.  And how long have you lived there?

3      A.   I think since 2017.

4      Q.   Okay.  Are you sure of that date?  Did I --

5  sorry.  Was that a yes or a no?

6      A.   Yeah.  I think early 2017.

7      Q.   Okay.  Are you sure of that date, early 2017?

8           MR. DELLORUSSO:  Objection, form.

9  BY MR. BERNHARD:

10     Q.   Is that a yes?  Or sorry.  Whenever he says

11  objection, unless he instructs you not to answer, you

12  just have to answer.

13     A.   Yeah.  I think early 2017.

14     Q.   Okay.  And do you have any brothers or

15  sisters?

16     A.   Yes.  One brother.

17     Q.   What's your brother's full legal name?

18     A.   Bassem El Mallakh.

19     Q.   Bassem El Mallakh.  Does he go by any other

20  name?

21     A.   No.  Not that I know of.

22     Q.   Okay.  Have you ever heard him go by any other

23  name?

24     A.   No.

25     Q.   Does he have any middle names?

# EXHIBIT 21

1      A.    Essam.

2      Q.    So his middle name is Essam; his last name is

3  El Mallakh; is that right?

4      A.    Yes.

5      Q.    Okay.  And do you have -- sorry.  What are the

6  names of your mom and your dad?

7      A.    Mona (phonetic) and Essam.

8      Q.    You said Essam, E-s-s-a-m?

9      A.    Yes.  Yes.

10      Q.    And are both their last names El Mallakh?

11      A.    No.  My mom's last name is Soliman.

12      Q.    Say it again.  I'm sorry.

13      A.    Soliman.

14      Q.    How do you spell that?

15      A.    S-o-l-i-m-a-n.

16      Q.    Is your dad's last name El Mallakh?

17      A.    Yes.

18      Q.    Do they have any middle names that they go by?

19      A.    No.

20      Q.    Do they have any middle names at all?

21      A.    No.

22      Q.    Okay.  Okay.  So when you say you reside at

23  116 Rockefeller, what do you mean by that -- by the fact

24  that you reside there?

25      A.    I live there.

EXHIBIT 21

1    Q.   Okay.  Does that mean you sleep the majority of

2  your nights there?

3    A.   Yes.

4    Q.   How many nights would you say on average you

5  sleep at 116 Rockefeller in 2020?

6    A.   The majority of them.  There's a pandemic.

7    Q.   So would you say like nearly 100 percent of

8  the nights?

9    A.   Apart from trips that I would take, I would

10  say yeah.

11    Q.   Okay.  What trips did you take in 2020?

12    A.   Several trips.  I can't remember them all off

13  the top of my head.

14    Q.   Did you take any trips in September 2020?

15    A.   I don't remember.

16    Q.   You don't remember at all if you took any

17  trips in September 2020 during the COVID quarantine?

18    A.   Yeah.  I took several trips in 2020.  I don't

19  remember if September was one of them.

20    Q.   Okay.  When did you take trips in 2020?

21    A.   December --

22       MR. DELLORUSSO:  I'm going to object -- I'm

23     going to object to that as well, outside the scope

24     of this deposition.

25       MR. BERNHARD:  Please stop making speaking

# EXHIBIT 21

1    objections.

2         MR. DELLORUSSO:  I'm not.  I'm --

3         MR. BERNHARD:  Okay.  Objection to the form is

4    the only thing you're allowed by law to say.  Any

5    references to scope and otherwise is coercing the

6    witness.  Please stop doing it.

7  BY MR. BERNHARD:

8    Q.  Ms. Hanna, when did you take trips in 2020?

9    A.  Like I said, I don't remember all of them,

10 Andrew.  I took several trips.  I don't remember.

11   Q.  So you don't know when you took trips in 2020

12 at all.

13   A.  Not off the top of my head.

14   Q.  How about 2019, any trips?

15   A.  Yes.  I traveled quite a bit because I work in

16 -- in the line of work that requires me to travel quite

17 a bit.

18   Q.  Okay.  What is your line of work?

19   A.  I'm a consultant.

20   Q.  Consultant for what?

21   A.  I'm sorry?

22   Q.  A consultant for what?

23   A.  For healthcare consulting.

24   Q.  What's the name of your employer?

25   A.  Ernst & Young.

EXHIBIT 21

1    Q.   Okay.  Are you an accountant?

2    A.   No.  I'm a healthcare consultant.  I'm not an

3  accountant.

4    Q.   And how long have you worked at Ernst & Young?

5    A.   2014 -- seven years.

6    Q.   Okay.  So you worked at Ernst & Young in 2019?

7    A.   Correct.

8    Q.   Okay.  Why does working for Ernst & Young

9  require you to travel?

10    A.   I have clients all over the United States.

11    Q.   Okay.  So sort of honing in on March and April

12  of 2019, like I said, we're sort of figuring out why

13  your testimony differs from the testimony of process

14  server's, who, you know, I don't know just like I don't

15  know you.

16         So in March 2019, was there any time that you

17  weren't residing at 116 Rockefeller?

18    A.   What do you mean by that?

19    Q.   I mean sleeping there at night?

20    A.   I -- yes.  Like I said, apart from trips that

21  I would take, that was my -- my residence that I would

22  come back to.  But I would take trips and not sleep

23  there.

24    Q.   Okay.  So --

25    A.   I'm not sure if your question is about the

EXHIBIT 21

1   trips or where I sleep.

2       Q.   All right.  So -- and you've had great luck

3   with that phone so far.  In March 2019, was there any

4   time that you were not sleeping at 116 Rockefeller, any

5   dates that you were out of town, or otherwise not stay

6   the night at your own residence?

7       A.   I would have to go back and look.  I think I

8   may have gone on a trip or two in March.  I don't

9   remember exactly the date.  That was a long time ago,

10  Andrew.  If you have a specific date in mind, let me

11  know.  I can go do the -- the research.

12      Q.   Yeah.  If you can just take a peek, any time

13  in March 2019.  It shouldn't be too hard.  Just click

14  with the phone.  You've done it really well already.

15      A.   Yeah.  Like I said, give me a specific date.

16  I may have taken a trip.  I may have not.  It's like --

17  it was a long -- a long time ago.

18      Q.   Okay.  How about March 15th.

19      A.   March 15th.  Okay.  Give me a moment.

20           No.  March 15th I was in town.

21      Q.   Okay.  March 16th.

22      A.   Yeah.  I was in town.

23      Q.   March 17th.

24      A.   I was in town.

25      Q.   March 18th.

# EXHIBIT 21

1    A.   Yeah.  I was here.

2    Q.   March 19th.

3    A.   I was here.

4    Q.   March 28th.

5    A.   28th.  I was traveling.  I was traveling to

6 Hawaii for work.

7    Q.   What dates were you in Hawaii in March 2019?

8    A.   How is that related to those two days that

9 you're asking me about?  Andrew, this is like my life

10 that you're asking me about.  This is not related to the

11 process server.  This is my -- like I -- you know, this

12 is kind of excessive.

13       I do -- I don't think I need to provide you

14 with my entire calendar for 2019.  I'm not even party to

15 this lawsuit.  Like this is -- I'm sorry.  But it's --

16 you know, it's getting a little too much.  Like I said,

17 happy to like pinpoint specific things, but, you know,

18 you want me to go back and give you a play-by-play of my

19 entire year?  That's like -- it's not reasonable.

20    Q.   I appreciate your opinion.  Luckily, you're

21 not a lawyer.  Your lawyer is there, and the Court has

22 ordered you to sit for these depositions; and you have

23 to answer the questions.  They're within the scope, so

24 please, tell me.  End of March, traveling --

25    A.   I don't remember.

# EXHIBIT 21

1       Q.    -- to Hawaii, the dates.

2       A.    I don't -- I don't remember.  I don't remember

3   how many days I was in Hawaii, and I think that this is

4   a little too much.

5       Q.    Okay.  It is on the record.  Now, please,

6   March 29, 2019, were you in Hawaii or at 116 Rockefeller

7   or somewhere else?

8       A.    Are we going to go through like day-by-day

9   through the rest of the calendar?

10          MR. BERNHARD:  I'm going to strike as non-

11      esponsive.

12  BY MR. BERNHARD:

13      Q.    Please answer the question.

14      A.    Yeah.  I was in Hawaii.

15      Q.    Okay.  March 30, 2019, were you in Hawaii or

16  116 Rockefeller or somewhere else?

17      A.    Hawaii.

18      Q.    March 31, 2019 --

19      A.    On the 31st, and the 1st, and the 2nd, just so

20  we can get this over with.

21      Q.    So how about March 1, 2019.  Were you at 116

22  Rockefeller or somewhere else?

23      A.    We're going back now?

24          THE REPORTER:  Okay.  Who's thumping?  Who's

25      thumping?

EXHIBIT 21

```
 1              THE WITNESS:  I'm scrolling through -- I'm

 2         scrolling through my phone to get to the -- the

 3         dates that he's asking me to get to.

 4              THE REPORTER:  Oh.

 5              THE WITNESS:  I don't have -- I don't have

 6         photos from the 1st.

 7    BY MR. BERNHARD:

 8         Q.   How about March 8, 2019, 116 Rockefeller, out

 9    of town, something else?

10         A.   Mexico.

11         Q.   Okay.  Where were you in Mexico?

12              MR. DELLORUSSO:  Objection.

13              THE WITNESS:  Oaxaca.

14    BY MR. BERNHARD:

15         Q.   Okay.  How about March 9, 2019, Mexico, 116

16    Rockefeller, somewhere else?

17              MR. DELLORUSSO:  Objection.

18    BY MR. BERNHARD:

19         Q.   Or if you want to make it easier, you can just

20    tell me when you came back, and I can just save the

21    time.

22         A.   March -- March 13th is when I came back.

23         Q.   Okay.  And when did you come back more or less

24    on March 13, 2019?

25         A.   When?
```

EXHIBIT 21

1      Q.   Yeah.  Like morning --

2      A.   Like what --

3      Q.   -- afternoon, night?

4      A.   Oh, I don't remember.

5      Q.   It doesn't show that on your pictures?

6      A.   No.

7      Q.   Okay.  And then from March 14th until you went

8   to Hawaii, you were staying at 116 Rockefeller?

9      A.   Correct.

10     Q.   Okay.  So looking at that time, do you have

11  any idea why the process server would allege that they

12  were at your house on April 17, 2019?

13          MR. DELLORUSSO:  Objection, form.

14          THE WITNESS:  How do I know?  Why is that --

15     how would I know why they would say such a thing?

16  BY MR. BERNHARD:

17     Q.   Is it possible that there was someone else

18  staying at your house on April 17, 2019?

19     A.   No.

20          MR. DELLORUSSO:  Objection, form.

21  BY MR. BERNHARD:

22     Q.   Okay.  Did you live with anybody else at 116

23  Rockefeller, Irvine, California in April 2019?

24     A.   My son.

25     Q.   Okay.  How old is your son?

# EXHIBIT 21

1      A.   He's 15.

2      Q.   Okay.  So it's just you and your son at 116

3  Rockefeller, Irvine in March and April 2019?

4      A.   Yes.

5      Q.   Okay.  So on or about April 17, 2019, around

6  12:20 p.m., it's your testimony that no one knocked on

7  the door at your residence at 116 Rockefeller?

8      A.   Correct.

9      Q.   Okay.  And it's your testimony that on April

10  17, 2019, around 12:20 p.m., you did not answer the --

11  the -- the door at 116 Rockefeller?

12      A.   Correct.

13      Q.   Do you have a -- like a doorman at 116

14  Rockefeller?

15      A.   No.

16      Q.   Is there a camera system at 116 Rockefeller?

17      A.   There is a doorbell camera.

18      Q.   Okay.  Is it a doorbell camera for your

19  particular unit, or is it for the building, or something

20  else?

21      A.   For the unit.

22      Q.   Okay.  And is it your position that on April

23  17, 2019, around 12:20 p.m., nobody, to your knowledge,

24  buzzed your unit at 116 Rockefeller?

25      A.   I wasn't here, so if they rang the doorbell, I

EXHIBIT 21

1  wouldn't know if it -- I can't answer that for sure if

2  someone rang or didn't ring.

3      Q.   Okay.  So you'd have to be at 116 Rockefeller

4  when somebody rings the doorbell to know if they're

5  there; is that right?

6      A.   No.  You can know, but I don't have -- anyway.

7  I don't -- I didn't have the camera installed back then.

8  It was later, and it only holds the footage for 10 days;

9  so I don't know if they did or did not knock.

10     Q.   So as of April 17, 2019, you did not have like

11 a camera buzzer at 116 Rockefeller?

12     A.   No.

13     Q.   Okay.  So did you have like a buzzing intercom

14 at 116 Rockefeller in April 2019?

15     A.   No.

16     Q.   There was no intercom system whatsoever at 116

17 Rockefeller?

18         MR. DELLORUSSO:  Objection, form.

19         THE WITNESS:  No.

20 BY MR. BERNHARD:

21     Q.   Okay.  Is there access to -- to your door at

22 116 Rockefeller from the street?

23     A.   Yes.

24     Q.   Okay.  So somebody could just walk up from the

25 street and just knock on your door at 116 Rockefeller?

EXHIBIT 21

1    A.   Yes.

2    Q.   Is there like a patio or a balcony or anything

3 at 116 Rockefeller?

4    A.   Yes.

5    Q.   Is that patio or balcony that -- that you can

6 see from standing outside your front door at 116

7 Rockefeller?

8    A.   What -- what -- what do you mean by that?

9 What could you see?

10    Q.   I mean, if I'm, you know, standing at the

11 front door, and turn left, right, up, or down, am I

12 looking at your patio or is it like behind the building?

13 I just -- you know, I don't know.  I'm not there.

14    A.   There are trees out front, so you -- it's not

15 like you can see visibly in or out.

16    Q.   Okay.  If I'm standing at your front door and

17 you're standing on your -- your -- you said it was a

18 patio or a balcony?

19    A.   Balcony.

20    Q.   Okay.  If I'm at your front door at 116

21 Rockefeller and you're standing on your balcony, can I

22 see you and you can see me, or is it somewhere else?

23    A.   Yes.  If I'm on my balcony, you can see.

24    Q.   Okay.  Okay.  How about April 6, 2019.  Were

25 you staying at 116 Rockefeller, or were you out of town,

# EXHIBIT 21

1  or doing something else?

2      A.   I don't remember.

3      Q.   Can you take a peek?  You've done a great job

4  so far, and I promise you I'm almost out of dates.

5      A.   I'm sorry.  I'm getting -- I'm getting really

6  tired of this.  I -- I'm not going to -- I'm not going

7  to go through every day of 2019.  I'm getting exhausted.

8      Q.   I'm sorry you feel exhausted, but this, again,

9  is what the law requires, so please just check April 6,

10 2019.  Let me know if you were at home, somewhere else.

11     A.   I do not remember specifically.

12     Q.   Well, can you do what you've done so far and

13 just check your phone and find out?

14     A.   No.  I'm sorry.  I'm getting tired.

15     Q.   Are you saying that you're going to refuse to

16 answer the questions during your deposition today?

17     A.   You said it's okay if I'm getting tired and I

18 need a break.  I mean, you're -- this is --

19     Q.   Do you want to take a break?

20     A.   You're asking me about a whole calendar year.

21     Q.   Do you need to take a break?  Do you want to

22 take five minutes?

23     A.   Yeah.  Let's take a break.

24          MR. BERNHARD:  Okay.  Let's take five minutes.

25     We'll go back on the record at let's say 3:15.

# EXHIBIT 21

50

 1        Okay, guys.

 2             THE REPORTER:  Okay.  Off the record at 3:07

 3   p.m.

 4             (Recess taken from 3:07 p.m. to 3:16 p.m.)

 5             THE REPORTER:  We're back on the record at

 6        3:16 p.m.

 7             MR. DELLORUSSO:  Before we start, Andrew,

 8        about how long do you think you have left of Reem?

 9             MR. BERNHARD:  I don't think very much.

10             MR. DELLORUSSO:  Okay.  No problem.

11             MR. BERNHARD:  For the record it's 3:16 in

12        Miami time.  That makes it 12:16 California time,

13        and I think Reem is just trying to get her camera

14        set back up.

15             And, Reem, you're still on mute too.  Okay.

16             No.  I think you just click the unmute button,

17        bottom left, it should be.  There you go.

18             THE WITNESS:  Can you hear me?

19             MR. BERNHARD:  Yep.

20   BY MR. BERNHARD:

21        Q.   And just for clarity of record, is Bassem

22   still outside of the room, not --

23        A.   Yeah.

24        Q.   -- influencing you?  Okay.

25        A.   Yep.

# EXHIBIT 21

1           MR. BERNHARD:  Bassem, are you still staying

2      upstairs, staying away from the witness?

3           MR. EL MALLAKH:  I'm upstairs.

4           MR. BERNHARD:  Okay.  Cool.  Thanks, guys.

5   BY MR. BERNHARD:

6      Q.   Okay.  Okay.  So we were talking about April

7   2019, where you were, whether you were staying at 116

8   Rockefeller or elsewhere.  You asked for a break.  Like

9   I said before, I'm almost done with these dates, so I

10  just need to test them because I've got somebody who

11  says different, and we have to clear up why that is.

12  Does that make sense?

13     A.   Sure.

14     Q.   Okay.  Okay.  So April 6, 2019, were you in

15  town, still staying at 116 Rockefeller, or were you out

16  of town for work, or something else?

17     A.   I don't remember.

18     Q.   Okay.  And April 17, 2019, were you staying at

19  116 Rockefeller, out of town, or something else?

20     A.   Didn't we already talk about April 17th?

21     Q.   I believe so.  I'm just confirming that's --

22  that's the date.

23     A.   Yeah.

24     Q.   That's the date that you said that you were

25  staying in town but that you were out hiking somewhere

EXHIBIT 21

1  in LA County and then went to Waldorf with your friend,

2  Jihan; is that right?

3          MR. DELLORUSSO:  Objection, form.

4          THE WITNESS:  That's correct.

5  BY MR. BERNHARD:

6      Q.   Okay.  Your -- your attorney just forwarded

7  two photographs, which we'll mark as Exhibit 2 and

8  Exhibit 3.

9          (Deposition Exhibit 2 marked)

10     Q.   I just want to make sure these are what you

11 were referring to before.  We've got this one.  I'm

12 going to bring up -- mark this as Exhibit 2, and I'll

13 share screen to it.

14         Do you see this photo here?

15     A.   Yes.

16     Q.   Okay.  It says at the top, "April 17, 2019,

17 4:39 p.m."  Is that right?

18     A.   Correct.

19     Q.   And 4:39 p.m., that's California time; is that

20 right?

21     A.   Correct.

22     Q.   Okay.  And so is it your position that you

23 took this photograph while hiking in California in LA

24 County at 4:39 p.m. California time on April 17, 2019?

25     A.   No.  The photo was taken earlier.  This is

EXHIBIT 21

1  when I posted it to my social media.

2      Q.   Okay.  Is there any way to know from this

3  photograph when it was actually taken?

4      A.   Not from this photo.  No.

5      Q.   Is there anything that you have in -- in your

6  control or custody that would confirm when exactly the

7  photo itself was taken?

8      A.   The photo was taken at -- the photo was taken

9  at 3:30.

10     Q.   3:30 p.m. on April 17, 2019?

11     A.   Correct.

12     Q.   Do you have any photographs that show exactly

13 where you were from 11:00 a.m. to 1:00 p.m. on April 17,

14 2019?

15     A.   I was on the -- I don't have photos.  I only

16 took a picture at the end.

17     Q.   Okay.  So just for clarity of the record, no

18 photos showing exactly where you were from 11:00 a.m. to

19 1:00 p.m. on April 17, 2019?

20     A.   No.

21     Q.   Okay.  We have a process server who -- who

22 stated that she was at 116 Rockefeller, Irvine,

23 California at your property at 12:20 p.m. on April 17,

24 2019, and she claims that she spoke to you.  Do you have

25 any recollection of that whatsoever?

# EXHIBIT 21

1      A.   No.

2      Q.   Do you know who, besides you, could have

3  possibly answered the phone -- or sorry, answered the

4  door at 116 Rockefeller at 12:20 p.m. on April 17, 2019

5  besides you?

6      A.   No.

7      Q.   This process server has stated that the person

8  who came to the door identified herself as Reem.  Do you

9  have any idea how the process server could know your --

10  your name personally?

11      A.   No.

12      Q.   Okay.  This process server stated that you

13  told her that -- on April 17, 2019, at 12:20 p.m. at 116

14  Rockefeller that you did not know Mr. El Mallakh.  Does

15  any of this ring a bell at all?

16      A.   No.

17      Q.   Process server also stated that you -- that

18  you said you didn't want to accept service for Mr. El

19  Mallakh.  Does that sound familiar at all?

20      A.   No.

21      Q.   Is it your position that none of that

22  occurred?

23      A.   Yeah.

24      Q.   And that's your testimony as you sit here

25  today under penalty of perjury?

EXHIBIT 21

1    A.   Correct.

2    Q.   Okay.  Reem, do you own a car?

3    A.   Yes.

4    Q.   What car do you own?

5    A.   My car?

6    Q.   Yeah.

7    A.   Can I ask why do you want to know what kind of

8  car that I have?

9    Q.   No, you can't.  You just have to answer the

10  questions.

11   A.   Why is my car relevant?

12       MR. BERNHARD:  Motion to strike as

13       nonresponsive.

14  BY MR. BERNHARD:

15   Q.   Reem, can you just answer -- answer the

16  question?

17   A.   I have a Mercedes.

18   Q.   Okay.  How long have you had that Mercedes?

19   A.   Oh my gosh, I don't remember.

20   Q.   Have you had it for a year, 2 years, 20 years?

21   A.   I don't know.  Probably more than two years,

22  probably less than four.

23   Q.   Okay.

24   A.   And I had another Mercedes before that.

25   Q.   Okay.  Is this a Mercedes that you lease or

EXHIBIT 21

1  that you own?

2       A.   I own it.

3       Q.   Okay.  You're saying -- so you purchased the

4  car sometime in the past four years?

5       A.   Correct.

6       Q.   And what type of Mercedes is it?

7            MR. DELLORUSSO:  I'm going to object.

8  BY MR. BERNHARD:

9       Q.   You can answer the question, Reem.

10      A.   Why is my -- I mean, sorry, Andrew.  I don't

11 see the relevance of my car.  I have a car.  I have a

12 Mercedes.  What -- what do you -- do you need the VIN

13 number?  Like I'm not -- again, like my financial --

14 financials and my property is my property.  I'm not

15 party to this case, so I don't see why my car is

16 relevant.

17           MR. BERNHARD:  Motion to strike as

18      nonresponsive.

19 BY MR. BERNHARD:

20      Q.   Please just answer the question, Reem.  What

21 type of Mercedes do you have?

22      A.   Do I need to answer this question?  I mean,

23 it's like -- I -- this is ridiculous.

24      Q.   Yes, you do.

25      A.   It's a -- it's a C-Class.

# EXHIBIT 21

1      Q.   It's a C-Class Mercedes that you bought.  Is the

2   C-Class Mercedes you own in your name, somebody else's

3   name?

4      A.   Yes.  It's in my name.

5      Q.   Okay.  Has that always been the case since the

6   date that you purchased it?

7      A.   Yes.

8      Q.   Did you purchase the Mercedes C-Class in your

9   name new or used?

10     A.   Used.

11          MR. DELLORUSSO:  Objection.

12   BY MR. BERNHARD:

13     Q.   Do you remember who you bought it from?

14     A.   Fletcher Jones.

15     Q.   Okay.  And is that Mercedes C-Class that you

16   own, is that registered in your name?

17          MR. DELLORUSSO:  Objection.

18          THE WITNESS:  Yes.

19   BY MR. BERNHARD:

20     Q.   Okay.  Is it -- is that Mercedes C-Class that

21   you own, bought from Fletcher Jones, registered at 116

22   Rockefeller?

23     A.   Yes.

24     Q.   Is that Mercedes C-Class that you own and

25   bought from Fletcher Jones insured at 116 Rockefeller?

# EXHIBIT 21

1       A.    Yes.

2       Q.    Okay.  Does your brother, Bassem, have a car?

3             MR. DELLORUSSO:  Objection.

4             THE WITNESS:  I'm sorry.  I -- look, you're --

5       now, you start -- you're going to ask me about me

6       and I can make a decision for myself.  I'm not

7       going to ask -- answer questions about my brother.

8       You can ask him what you want.

9             MR. BERNHARD:  Motion to strike as

10      nonresponsive.

11  BY MR. BERNHARD:

12      Q.    Reem, I, again, request that you just answer

13  the questions.  They are all relevant.

14      A.    You ask -- you ask him.  You can ask him when

15  you have -- you're asking me about my car.

16            MR. DELLORUSSO:  Andrew, you are going outside

17      the topics that were stated in your -- in your --

18            MR. BERNHARD:  Please, one more time I'm going

19      to move for sanctions against you.  Stop your

20      speaking objections.

21            MR. DELLORUSSO:  Tell me where --

22            MR. BERNHARD:  You are violating Florida law

23      Rule 1.310.  It's perfectly crystal clear that you

24      cannot -- unless you're instructing your client not

25      to answer, that you cannot make the --

EXHIBIT 21

1            MR. DELLORUSSO:  You're going outside the scope

2        of the topics that you have, of course.

3            MR. BERNHARD:  Are you instructing your client

4        not to answer?

5            MR. DELLORUSSO:  No.  I'm asking you to show

6        me where --

7            MR. BERNHARD:  Are you instructing your client

8        not to answer?

9            MR. DELLORUSSO:  I'm --

10           MR. BERNHARD:  If the answer is no, then stop.

11        Your objection to form is noted and stop speaking.

12        There is nothing else you can do.

13           MR. DELLORUSSO:  Okay.

14           MR. BERNHARD:  So your objection -- your

15        objection to form is noted.

16   BY MR. BERNHARD:

17        Q.   Reem, your -- your attorney has not instructed

18   you not to answer, so please answer the question.  What

19   --

20        A.   I don't know.

21        Q.   You don't know what kind of car your brother,

22   Bassem, has?

23        A.   No.

24        Q.   Okay.  When was the last time you saw your

25   brother, Bassem?

EXHIBIT 21

1        A.    Today.

2        Q.    Today.  And how did Bassem come to arrive at

3   your house there at 116 Rockefeller?

4        A.    I don't know.

5        Q.    Okay.  You don't know if he came by car, by

6   plane, by helicopter, or something else?

7        A.    I didn't ask.

8        Q.    But do you know?  Did you see him -- see him

9   pull up?

10           MR. DELLORUSSO:  Objection.

11           THE WITNESS:  I don't know how he came.

12   BY MR. BERNHARD:

13       Q.    Okay.  Did you see Bassem when he approached

14   your house there at 116 Rockefeller today?

15           MR. DELLORUSSO:  Objection.

16           THE WITNESS:  I don't know how he came.

17           MR. BERNHARD:  Motion to strike as

18       nonresponsive.

19   BY MR. BERNHARD:

20       Q.    I'm not asking if you know how he came.  I'm

21   saying did you see him approach your house, meaning from

22   the outside coming in.

23       A.    No.  No.

24       Q.    Okay.  Did -- did your brother, Bassem, spend

25   the night at your house at 116 Rockefeller last night?

# EXHIBIT 21

1       A.    Yes.

2       Q.    Okay.  Did he spend yesterday night at 116

3  Rockefeller?

4       A.    Wait.  That's the same question, right?

5       Q.    Not last night.  The night before.  Did he

6  spend the night before at your place at 116 Rockefeller?

7       A.    No.

8       Q.    Okay.  So did you see your brother, Bassem,

9  when he approached yesterday when he arrived at your

10  place at 116 Rockefeller?

11       A.    No.

12       Q.    Has he ever mentioned to you in any way over

13  the past three years that he has a car?

14       A.    Not that I remember.

15       Q.    Have you ever ridden in a car with Bassem over

16  the past three years?

17       A.    I don't remember.

18       Q.    You have no recollection if you've ridden with

19  your brother in a car over the past three years?

20            MR. DELLORUSSO:  Objection.

21  BY MR. BERNHARD:

22       Q.    Please answer the question, Reem.

23       A.    I don't remember.

24       Q.    Okay.  Has your brother driven you anywhere at

25  all in a car in the past three years?

# EXHIBIT 21

1          MR. DELLORUSSO:  Objection.

2          THE WITNESS:  I don't -- I don't remember.  I

3     mean, this is --

4  BY MR. BERNHARD:

5     Q.   Okay.  Have you -- have you driven your

6  brother anywhere in a car in the past three years?

7     A.   I don't remember.

8     Q.   Okay.  How often do you see your brother?

9     A.   Not very often.

10    Q.   Okay.  In 2020, how many times would you say

11 you'd see your brother?

12         MR. DELLORUSSO:  Objection.

13         THE WITNESS:  I don't remember.

14 BY MR. BERNHARD:

15    Q.   Would you say it's more than five for the year

16 2020?

17    A.   I can't be certain.

18    Q.   Would you say it's less than five times you

19 seen your brother in 2020?

20    A.   I really do not remember.

21    Q.   Would you say that you seen your brother more

22 than 100 times in 2020?

23    A.   No.

24    Q.   Okay.  Would you say you saw your brother more

25 than 50 times in 2020?

# EXHIBIT 21

1      A.   No.

2      Q.   Would you say you saw your brother more than

3   20 times in 2020?

4      A.   Probably not.

5      Q.   Okay.  Would you say you saw your brother more

6   than 10 times in 2020?

7      A.   Probably not.

8      Q.   Okay.  So you see your brother -- you saw your

9   brother less than 10 times in 2020?

10         MR. DELLORUSSO:  Objection.

11         THE WITNESS:  Yeah.  Maybe even less.

12   BY MR. BERNHARD:

13     Q.   Okay.

14     A.   Very infrequent.

15     Q.   Okay.  What about 2019; same amount of time?

16   You saw your brother more or less than five times or so

17   in 2019?

18     A.   Probably.

19     Q.   Okay.  What about 2021; how often do you see

20   your brother?

21     A.   Very infrequent.

22     Q.   Okay.  So one of those where you say less than

23   five times in 2021?  It's only been three months.

24     A.   Oh, for sure.

25     Q.   Okay.

# EXHIBIT 21

1    A.   For sure less than five.

2    Q.   Is you seeing your brother today and yesterday

3 the first time you've seen your brother in 2021?

4    A.   Probably.  Yes.

5    Q.   Okay.  So in the five or so times you saw him

6 in 2020, the five or so times you saw him in 2019, did

7 you see him at all drive a car?

8    A.   I don't remember.

9         MR. DELLORUSSO:  Objection.

10 BY MR. BERNHARD:

11   Q.   Okay.  What about 2018?

12        MR. DELLORUSSO:  Objection.

13        THE WITNESS:  I don't know.

14 BY MR. BERNHARD:

15   Q.   Would it surprise you to know that your

16 brother has a Mercedes Benz C-Class registered in his

17 name at 116 Rockefeller?

18   A.   I don't know.

19   Q.   I'm not saying what you know.  I said would it

20 surprise you?

21   A.   I really don't know what his car situation is.

22   Q.   Okay.  When you park at 116 Rockefeller, do

23 you park in front of your property, or do you park like

24 down the road or somewhere else?

25   A.   In the garage.

# EXHIBIT 21

65

1      Q.   Okay.  In the garage, is -- do you know of -- in

2  the garage at 116 Rockefeller, how many spaces do you

3  have?

4      A.   Two.

5      Q.   Okay.  You park in one space.  Is there

6  another car parked in the other space?

7      A.   No.

8      Q.   Okay.  Has that been the case over the past

9  three years?

10     A.   Correct.

11     Q.   Okay.  And the car that's parked in your

12 space, that's your Mercedes Benz C-Class.  That's in

13 your name that you bought from Fletcher Jones; is that

14 right?

15          MR. DELLORUSSO:  Objection.

16          THE WITNESS:  That's correct.

17 BY MR. BERNHARD:

18     Q.   And it's been that way over the past at least

19 three years; is that right?

20     A.   Yes.

21     Q.   And so you haven't seen another Mercedes Benz

22 C-Class sitting around there parked in one of your

23 spots; have you?

24     A.   No.

25     Q.   Okay.

# EXHIBIT 21

1      A.    No.

2      Q.    Did you notice another Mercedes Benz C-Class

3  sitting out in front of your house for the past three

4  years that didn't belong to you?

5      A.    No.  No.

6      Q.    Okay.

7      A.    You're not allowed to park in the street in

8  this community.  So, no.

9      Q.    Okay.  Did you give permission to Bassem to

10 register his vehicle at your property 116 Rockefeller

11 over the past two years at any time?

12     A.    I don't understand the question.

13     Q.    You live at this property.  You know, it would

14 surprise me if somebody else, you know, had a car

15 registered where I lived.  If they did, I would imagine

16 they would probably ask me about it.  So I'm asking you,

17 did Bassem ever ask you, hey, can I, you know, keep my

18 car registered at your home over the past two years at

19 any time?

20     A.    No.

21     Q.    You've had no knowledge whatsoever that

22 Bassem's had his car registered at your home, 116

23 Rockefeller, at any time over the past two years?

24     A.    No.

25          MR. DELLORUSSO:  Objection.

# EXHIBIT 21

1  BY MR. BERNHARD:

2      Q.   Okay.  Okay.  I think you were talking about

3  September 2020, but I hadn't really got into it yet.

4  Were you, to your knowledge, in -- in California in LA

5  County in September 2020?

6      A.   What day?

7      Q.   September 5, 2020.

8      A.   Yeah, probably.

9      Q.   Did you say yeah, probably?  Sorry.  I

10 couldn't hear you.

11     A.   Yeah, probably.

12     Q.   Okay.  Were you in -- staying at 116

13 Rockefeller at that time?

14     A.   Yes.

15     Q.   Okay.  What about September 7, 2020.  Were you

16 still in LA staying at 116 Rockefeller in town?

17     A.   Yeah, probably.

18     Q.   Okay.  Can you be sure, or are you just

19 guessing?

20     A.   No.  I don't remember every single day of the

21 last years.  Tell me specific dates if you want.

22     Q.   Okay.  September 10, 2020.  Were you in town

23 staying at 116 Rockefeller on September 10, 2020?

24     A.   Yeah.

25     Q.   Okay.  How about September 11, 2020; were you

EXHIBIT 21

1  in town staying at 116 Rockefeller on September 11, 2020?

2       A.   I don't remember.

3       Q.   Okay.  Well, you seemed sure about September

4  10th.  What changed for September 11th?

5       A.   I don't remember September 11th.

6       Q.   Any way that you can check?

7       A.   I was --

8       Q.   You've been doing a great job with your phone.

9  Maybe that will cue you in, help you recollect.

10      A.   I do not (audio distortion) single day, by the

11  way, so yeah.  September 11th specifically is the day

12  you want to find out?

13      Q.   Yeah.

14      A.   Okay.  I was in LA.

15      Q.   Okay.

16           MR. BERNHARD:  For the record, the witness has

17      just scrolled through her phone to look at her

18      photos and confirmed where she was on September 11,

19      2020.

20  BY MR. BERNHARD:

21      Q.   What about September 12, 2020.  Same thing, in

22  LA, staying at 116 Rockefeller?

23      A.   Yeah.  I was in LA.

24      Q.   Were you staying at 116 Rockefeller?

25      A.   What -- what -- sorry.  What -- what's the

# EXHIBIT 21

1  question?

2       Q.   On September 12, 2020, were you at 116

3  Rockefeller?

4       A.   No.  I was in LA.

5       Q.   Okay.  Well, where were you staying if not at

6  116 Rockefeller?

7       A.   I was in Santa Monica.

8       Q.   Okay.  Were you staying with your brother,

9  Bassem, or just something else?

10      A.   That's correct.

11      Q.   Say again.  I'm sorry.

12      A.   That's correct.

13      Q.   That's correct you were staying with your

14  brother, Bassem?

15      A.   Yes.

16      Q.   Okay.  What about September 13, 2020.  Where

17  were you?

18      A.   I don't remember.  I think I was in LA.

19      Q.   So you -- you testified that you were staying

20  with your brother, Bassem El Mallakh, on September 12,

21  2020, and that you don't remember what happened just one

22  day later on September 13, 2020.  But you --

23      A.   I said was in LA.

24      Q.   You said you were what?

25      A.   I said I was in LA.

# EXHIBIT 21

1        Q.   Okay.

2        A.   Is that -- was that not audible or?

3        Q.   No.  It wasn't audible.  Did -- were you

4   staying at 116 Rockefeller?  Were you staying with your

5   brother, Bassem, in Santa Monica, or something else?

6        A.   Yeah.  I was -- I was in LA on the 12th and on

7   the 13th.

8             MR. BERNHARD:  Motion to strike as

9        nonresponsive.

10  BY MR. BERNHARD:

11       Q.   Were you staying on September 13th at 116

12  Rockefeller, with your brother, Bassem, in Santa Monica,

13  or something else?

14       A.   Are you talking about during the day or at

15  night?  Like where I slept?

16       Q.   Yeah.  Where you slept.

17       A.   I slept at 116 Rockefeller that night.

18       Q.   Okay.  What about in the morning?

19       A.   I was in LA.  I was in Santa Monica.

20       Q.   Okay.  What time do you think that you

21  returned back to 116 Rockefeller on September 13, 2020?

22       A.   I don't remember exactly.

23       Q.   It was early, late, afternoon, lunchtime?

24       A.   Late.

25       Q.   Okay.  Late like midnight, 10:00, 8:00?  I

# EXHIBIT 21

1   don't know what late is for you.

2          MR. DELLORUSSO:  Objection, form.

3          THE WITNESS:  I don't remember.

4   BY MR. BERNHARD:

5      Q.   Okay.  Is there any way to -- to get that

6   information out of your phone?

7      A.   No.

8      Q.   Okay.  Do you recall if it was before or after

9   9 o'clock?

10     A.   I don't remember.

11     Q.   Is there any way for you to confirm?

12     A.   Nope.

13     Q.   On September 13, 2020, did you drive yourself

14  back in your Mercedes; did your brother, Bassem, give

15  you a ride, or something else?

16     A.   No.  I drove myself.

17     Q.   Do you recall why you were at your brother,

18  Bassem's, place on September 13, 2020, in particular?

19     A.   Visiting.

20     Q.   Okay.  Well, we've got a process server who's

21  stated that they came to 116 Rockefeller on September

22  13, 2020, around 9 o'clock p.m. and -- and spoke to you

23  in particular.  Does that sound familiar at all?

24     A.   Yeah.

25     Q.   Okay.  So did somebody talk to you on

# EXHIBIT 21

1  September 13, 2020, around 9:00 p.m. at 116 Rockefeller?

2      A.   Yes.

3      Q.   Okay.  And tell me what happened.  Did

4  somebody come and knock on your door or something else?

5      A.   There was someone knocking on the door like

6  mad, very loud.  I opened the door, and they said, "Is

7  Bassem" -- I think I -- you know, obviously, not word-

8  for-word, but they said, "Is Bassem here?"  I said, "No,

9  he does not live here," and I closed the door.

10     Q.   Okay.  Was there anybody else with you at the

11 time at 116 Rockefeller on September 13, 2020?

12     A.   Probably my son.

13     Q.   And you said your son is 15 years old?

14     A.   Yes.

15     Q.   Anybody else with you besides your on

16 September 13 --

17     A.   No.

18     Q.   -- 2020, at 116 Rockefeller?

19     A.   No.

20     Q.   So your testimony here under penalty of

21 perjury is that only you and your 15-year-old son were

22 at 116 Rockefeller at 9 o'clock p.m. on September 13,

23 2020, when this process server came to your house; is

24 that right?

25     A.   Right.

EXHIBIT 21

1      Q.   Okay.  And you said -- what you said to him?  I

2   -- sorry.  I just forgot.

3      A.   I said, "He doesn't live here," and I closed

4   the door.

5      Q.   Okay.  Did that -- did that process server say

6   anything else to you?

7      A.   No.

8      Q.   Did that process server try to give you

9   paperwork?

10     A.   No.

11     Q.   Is there any reason that you didn't ask what

12   the -- the person wanted?

13     A.   No.

14     Q.   Okay.  Is that your typical way of behaving

15   when somebody comes and asks for your brother that you

16   slam the door in their face?

17          MR. DELLORUSSO:  Objection, form.  You can

18      answer.

19          THE WITNESS:  Yeah.  I don't -- I don't have

20      an answer.

21   BY MR. BERNHARD:

22     Q.   Okay.  Have you ever done that to anybody else

23   who has come and asked for your brother?

24     A.   No.

25     Q.   Okay.  Why do you think you did it on this

EXHIBIT 21

1  particular night on September 13, 2020?

2       A.   I don't understand your question.

3       Q.   You said you've never slammed the door in

4  anybody else's face when they asked for your brother.

5  You said you slammed the door in this guy's face on

6  September 13, 2020.  I'm trying to understand why you

7  would change your behavior specifically for this

8  individual on September 13, 2020.

9       A.   By the way, that's not what I said.  That's

10 not what I said.  You're -- you're --

11      Q.   Okay.

12      A.   -- you're paraphrasing what I said.

13      Q.   Okay.

14      A.   All I said was -- (audio distortion) like mad

15 and really like being very loud and disruptive late at

16 night.  When I opened the door, he asked about is -- he

17 asked -- I don't remember -- I don't remember exactly

18 the words, but he said, "Is Bassem here?"  And I said,

19 "No.  He does not live here," and I closed the door.

20           So I don't know what's typical or atypical.

21 This is not a scenario that happens to be frequently in

22 life where someone knocks like mad (audio distortion).

23      Q.   Did you ask what it was about?

24      A.   No.

25      Q.   Were you concerned at all for your brother?

# EXHIBIT 21

1        A.    No.

2        Q.    Okay.  Is that the first time you remember

3    anybody ever knocking on your door and asking for

4    Bassem?

5        A.    Yes.

6        Q.    Okay.  So that novelty of that situation

7    didn't peek your curiosity in any way?

8            MR. DELLORUSSO:  Objection.

9            THE WITNESS:  No.

10    BY MR. BERNHARD:

11        Q.    Okay.  Did you call your brother to see what

12    was going on?

13        A.    No.

14        Q.    Why is that?

15        A.    I mind my own business.

16        Q.    Well, I mean, I understand you might mind your

17    own business about, you know, some random schmoe you

18    don't know.  We're talking about your brother here.  Do

19    you mind your own business when it comes to your brother

20    too?

21            MR. DELLORUSSO:  Objection.

22            THE WITNESS:  Of course I mind my own

23        business.

24    BY MR. BERNARD:

25        Q.    Okay.  Did the person leave any documents at

EXHIBIT 21

 1  your door or in your door or otherwise?

 2      A.   No.

 3      Q.   You saw no documents on your door at any time

 4  on September 13, 2020?

 5      A.   No.

 6      Q.   You saw no documents on your door at any time

 7  that week of September 13, 2020?

 8      A.   No.

 9      Q.   It's your testimony that a random individual

10  came to your door at 9 o'clock-ish, knocked on it

11  loudly, asked for Bassem, you said, "He doesn't live

12  here," closed the door, and that's the last you -- you

13  saw of this all together.

14      A.   Right.

15      Q.   And you never contacted your brother, Bassem,

16  about it whatsoever.

17      A.   No.

18      Q.   You had no concerns whatsoever that this

19  random person was coming to your door to ask for your

20  brother.

21      A.   No.  I did not find it concerning.

22      Q.   And that's the very first time to your memory

23  that anybody's come to your door at 116 Rockefeller

24  asking for Bassem El Mallakh.

25      A.   That's correct.

EXHIBIT 21

1    Q.    Has that ever happened again since?

2    A.    No.

3    Q.    Did you tell anybody at all about this

4 occurrence on September 13, 2020, that this person came

5 to your door asking for your brother, Bassem?

6    A.    No.

7    Q.    Okay.  Have you ever been accused in court of

8 making a false statement?

9    A.    No.

10    Q.    Have you ever been sued?

11    A.    No.

12    Q.    Have you ever been sued for slander, which is

13 the making of a false statement to damages a person's

14 reputation?

15    A.    No.

16    Q.    Have you ever been sued for conspiracy, which

17 is making of a secret plan by a group to do something

18 unlawful?

19    A.    No.

20    Q.    To your knowledge, has your brother, Bassem El

21 Mallakh, ever been sued in a court for making a false

22 statement?

23    A.    I don't know.

24    Q.    To your knowledge, has your brother, Bassem El

25 Mallakh, ever been sued, apart from this lawsuit by

EXHIBIT 21

1  Belgium Investments, ever been sued at all, to your

2  knowledge?

3          MR. DELLORUSSO:  Objection.

4          THE WITNESS:  Like I said, I -- you can ask

5      him what you want.

6  BY MR. BERNHARD:

7      Q.   I'm not asking him; I'm asking you.  To your

8  knowledge, has your brother, Bassem El Mallakh, ever

9  been sued, apart from this lawsuit by Belgium

10 Investments, to your knowledge?

11     A.   I don't know.

12     Q.   Okay.  To your knowledge, has your father,

13 Essam El Mallakh, ever been accused in court of making a

14 false statement?

15         MR. DELLORUSSO:  Objection.

16         THE WITNESS:  No.

17 BY MR. BERNHARD:

18     Q.   To your knowledge, has your father, Essam El

19 Mallakh, ever been sued, apart from this lawsuit by

20 Belgium Investments?

21         MR. DELLORUSSO:  Objection.

22         THE WITNESS: No.

23 BY MR. BERNHARD:

24     Q.   To your knowledge, has your father, Essam El

25 Mallakh, ever been sued for slander, which is the making

## EXHIBIT 21

1   of a false statement?

2           MR. DELLORUSSO:  Objection.

3           THE WITNESS:  (No audible response)

4   BY MR. BERNHARD:

5       Q.   To your knowledge, has your father, Essam El

6   Mallakh, ever been sued for conspiracy?

7       A.   No.

8           MR. DELLORUSSO:  Same objection.

9   BY MR. BERNHARD:

10      Q.   Okay.  To your knowledge, has your mother,

11  Mona McCale (phonetic), ever been accused in court of

12  making a false statement?

13          MR. DELLORUSSO:  Objection.

14          THE WITNESS:  No.

15  BY MR. BERNHARD:

16      Q.   To your knowledge, has your mother, Mona

17  McCale, ever been sued?

18          MR. DELLORUSSO:  Objection.

19          THE WITNESS:  No.

20  BY MR. BERNHARD:

21      Q.   To your knowledge, has your mother, Mona

22  McCale, ever been sued for slander?

23          MR. DELLORUSSO:  Objection.

24          THE WITNESS:  No.

25  BY MR. BERNHARD:

EXHIBIT 21

1      Q.   Okay.  To your knowledge, has your mother, Mona,

2   ever been sued for conspiracy?

3           MR. DELLORUSSO:  Objection.

4           THE WITNESS:  No.

5   BY MR. BERNHARD:

6      Q.   Okay.  Have you ever been accused in court of

7   having participated in the commission of a fraud in any

8   way?

9      A.   No.

10          MR. DELLORUSSO:  Objection.

11  BY MR. BERNHARD:

12     Q.   Do you understand fraud to be an act of

13  dishonesty?

14          MR. DELLORUSSO:  Objection.

15          THE WITNESS:  If you say so.

16  BY MR. BERNHARD:

17     Q.   I'm just asking if you understand that.

18     A.   Is -- is that the legal explanation of it?

19     Q.   I'm just saying, do you understand fraud to be

20  an act of dishonesty?  Just your understanding.

21          MR. DELLORUSSO:  Objection.

22          THE WITNESS:  Like -- yeah.  Sure.

23  BY MR. BERNHARD:

24     Q.   Okay.  Have you ever been accused in court of

25  having an extramarital affair?

EXHIBIT 21

1      A.   No.

2      Q.   And do you understand an extramarital affair

3   would be an act of dishonesty?

4      A.   Not going to answer that.

5      Q.   Sorry.  It just -- it broke up.  What did you

6   say?

7      A.   I -- I'm not going to answer that.

8      Q.   Well, your attorney has not instructed you not

9   to answer, and you're compelled to answer these

10  questions.  So this isn't anything too tricky.  I'm just

11  asking if you understand an extramarital affair to be an

12  act of dishonesty.

13     A.   I'm not going to answer that, so you can move

14  on.

15     Q.   Okay.  You're -- for the record, you're

16  refusing to answer the question.

17     A.   Yeah.  I'm not going to answer that.

18          MR. BERNHARD:  Serve motion to compel and

19     sanction the witness for refusing to answer under

20     oath without instruction from her attorney.

21          Okay.  Madam Court Reporter, do you know what

22     exhibit number we're up to?

23          THE REPORTER:  We were up to Exhibit 2.

24          MR. BERNHARD:  Okay.  So we had the one

25     declaration; we had the photograph.  So we're on 3;

EXHIBIT 21

1      is that right?

2            THE REPORTER:  Correct.

3            MR. BERNHARD:  Okay.  Mark this as Exhibit 3.

4            (Deposition Exhibit 3 marked)

5            MR. BERNHARD:  Share the screen with you guys.

6      And I think, also, we'll be able to just go

7      straight through to Bassem, if that works for you

8      guys.  We'll just knock these out fast.  Does that

9      work?

10           THE REPORTER:  Sure.

11           MR. DELLORUSSO:  I have a few questions.

12           MR. BERNHARD:  One sec.  Let me pull this up.

13     Okay.  All right.  Can you guys see this document

14     here?

15  BY MR. BERNHARD:

16     Q.   At the top it says, "In the Circuit Court of

17  the 11th Judicial Circuit."  To the left it says,

18  "Belgium Investments versus Spencer Blank case number

19  18-28145."  Do you see that, Reem?

20     A.   Yeah.

21     Q.   Okay.  I'm going to mark this as Exhibit 3,

22  your notice of deposition.  Have you seen this document

23  before?

24     A.   No.

25     Q.   This was served to you through your attorney.

# EXHIBIT 21

1   Did your attorney provide this to you?

2        A.   Can you scroll down?

3        Q.   Yeah.

4        A.   No.  I haven't seen this document.

5        Q.   Okay.

6             MR. BERNHARD:  Counsel, is there any reason

7        you didn't provide this to your client?

8             MR. DELLORUSSO:  I actually provided it to my

9        client, who is Bassem in this case, who then

10       provided -- I believe provided it to Reem, so, you

11       know, you can ask him about that.

12   BY MR. BERNHARD:

13       Q.   Okay.  Reem, did your brother, Bassem, provide

14   you with this document?

15       A.   No.

16       Q.   Okay.  So as you sit here today, you've never

17   seen this notice of deposition before.

18       A.   No.  He told me about it, but I didn't see

19   this document.

20       Q.   Okay.  Did he communicate to you that you were

21   required to produce certain documents for today?

22       A.   Yes.

23       Q.   Okay.  Did he explain to you that you'd need

24   to produce documents in your possession or control

25   evidencing the statements made in your affidavit and

# EXHIBIT 21

1  your declarations for California Court?  It says, "Lawsuit,

2  service of process, and execution of judgment in

3  California.

4      A.   Something like that.

5      Q.   Okay.  Do you have any documents like that?

6      A.   What do you need from this list?  I showed you

7  my ID already.

8      Q.   Will you produce a copy of your photo ID?

9  Obviously, you know, it was just put up for the court

10 reporter, so I don't have a snapshot of that.

11     A.   Do you want it again?

12     Q.   I just -- if you, you know, can take like a

13 photo picture if it and shoot it over to your counsel,

14 that would be great.  Can you do that?

15     A.   Yeah.  I'll send it to my brother.

16     Q.   Okay.  What about documents in your possession

17 or control evidencing where you were physically located

18 on September 13, 2020, between 8:30 p.m. and 9:30 p.m.

19 You've already testified that you talked to this

20 processor, so do you have any documents showing that or

21 just your testimony?

22     A.   No.

23     Q.   Okay.  How about documents in your possession

24 or control evidencing where you physically were located

25 on April 17, 2019, between 12:05 p.m. and 12:35 p.m.

EXHIBIT 21

1  You've given us that one photograph from when you put it on

2  social media.  Do you have any other documents

3  evidencing where you were at that time?

4       A.   No.

5       Q.   Okay.  Documents in your possession or control

6  evidencing your payment of rent for the months of

7  February, March, and April 2019.  Do you have anything

8  like that?

9       A.   Yeah.  I have bank statements.

10       Q.   Did you pay rent to your brother, Bassem, for

11  February, March, and April 2019?

12       A.   Sure.

13       Q.   How much did you pay your brother for those

14  three months?

15       A.   I can send you the statement.

16       Q.   Okay.  Will you stipulate to do that?

17       A.   (No audible response)

18       Q.   It has to be yes or no.

19       A.   Well, I don't understand what's the -- what's

20  stipulate mean?

21       Q.   Will you agree to produce those?  Will you

22  send those over so that we can have them confirm what

23  you're saying?

24       A.   Yeah.

25       Q.   Okay.  How about documents in your possession

EXHIBIT 21

 1 | or control evidencing your payment of rent for the months

 2 | of August, September, and October of 2020.  Do you have

 3 | those?

 4 |     A.   Yeah.  I'll send you the statements.

 5 |     Q.   Okay.  And you paid rent to your brother for

 6 | -- for 116 Rockefeller for those months?

 7 |     A.   Yes.

 8 |     Q.   Okay.  Documents in  your possession or

 9 | control evidencing your utility bills and invoices for

10 | water, electric, gas, garbage, internet, and cable for

11 | the months of February, March, and April 2019.  Do you

12 | have those?

13 |     A.   Yes.

14 |     Q.   Did you pay for those utilities for those

15 | months of 2019 at 116 Rockefeller?

16 |     A.   Yes.

17 |     Q.   Did your brother, Bassem, pay for any of those

18 | utilities at 116 Rockefeller for those months of 2019?

19 |     A.   (No audible response)

20 |     Q.   Sorry, Reem.  I didn't hear you say an answer.

21 |     A.   I said no.  I don't know if you heard me.

22 |     Q.   I didn't hear you.  Sorry.

23 |          Okay.  And same, documents evidencing your --

24 | your payment of utility bills and invoices for -- for

25 | September, August, and October 2020.  Do you have those?

EXHIBIT 21

1    A.   Yes.

2    Q.   And you'll produce those to us?

3    A.   Yes.

4    Q.   Okay.  And did Bassem, your brother, pay for

5  any of those utilities in August, September, October

6  2020?

7    A.   No.

8    Q.   No?  Okay.  Great.

9         MR. BERNHARD:  Okay.  I don't have any other

10       questions for you, Reem.  I appreciate it.

11         MR. DELLORUSSO:  Can we just take a five-

12       minute break?  I also have a few questions for her.

13       It should be no more than like 10 minutes.

14         MR. BERNHARD:  That's fine.  Let's do that, I

15       guess.

16         (Recess from 1:40:02)

17         THE REPORTER:  We're recording.

18         MR. BERNHARD:  And just --

19         THE REPORTER:  Now we're --

20         MR. BERNHARD:  Just for the record, Bassem,

21       you're still staying upstairs and -- and out of the

22       way of your sister?

23         MR. MAKKALH:  I am upstairs.

24         MR. BERNHARD:  Okay.  Great, guys.  Thanks.

25         MR. DELLORUSSO:  Madam Court Reporter, can we

# EXHIBIT 21

1    proceed?

2         THE REPORTER:  Yes.

3         MR. DELLORUSSO:  Okay.

4              EXAMINATION BY MR. DELLORUSSO

5    BY MR. DELLORUSSO:

6    Q.    All right.  Good afternoon.  I think it's

7    afternoon there now in California.  I think it's about 1

8    o'clock.  So I'm not going to take too much of your

9    time.  I know you've been going about two hours.  I'm

10   going to try be less than 10 minutes.  I just have a few

11   questions for you.  Are you ready to proceed?

12   A.    Yes.

13   Q.    Okay.  I want to go back to April 17, 2019.

14   Do you recall what time you left to go hiking in LA

15   County on that day?

16   A.    Probably before 9 o'clock.

17   Q.    Okay.  And approximately how long would you

18   have -- would you estimate that it took you that day or,

19   if you remember, how long it took you to get to the --

20   the site where you actually went hiking?

21   A.    I went to my friend's house first, so that

22   would probably be a couple of hours, and then from there

23   to the trail, probably another 30 minutes.

24   Q.    Okay.  What -- what time would you say you

25   started the hike?

# EXHIBIT 21

1       A.    Probably around noon.

2       Q.    Noon.  Okay.  I'm going to share my screen

3   here.  Give me one second.  I'm not sure what exhibit it

4   -- this one was, but it's the photo.  Hold on.  Let me

5   just share.

6            MR. BERNHARD:  Exhibit 2.

7            MR. DELLORUSSO:  Exhibit 2.  Okay.

8   BY MR. DELLORUSSO:

9       Q.    Do you see Exhibit 2 on the screen?

10      A.    Yes.

11      Q.    All right.  And I believe you testified

12  earlier that this was a photo taken during the hike,

13  correct?

14      A.    Yeah.  At the end of the hike.

15      Q.    Okay.  At what time would you say you -- do

16  you recall taking this photo?

17      A.    Probably around 3:30.

18      Q.    Okay.  Is this the top of the mountain or the

19  hike?

20      A.    Yes.

21      Q.    Okay.  So to get from where you I guess parked

22  your car to this point when you took this photo, how

23  long would it have taken you to get to that point?

24      A.    Probably three or four hours.

25      Q.    Okay.

EXHIBIT 21

1          MR. DELLORUSSO:  I'm going to go -- I don't --

2      this wasn't an exhibit yet, but I'm going to --

3      it's the complaint in this case.  What exhibit are

4      we on?

5          MR. BERNHARD:  We were -- 3 was the notice of

6      deposition, so it would be on 4.

7          MR. DELLORUSSO:  Okay.  I'll mark this as

8      Exhibit 4.  This is the complaint in this matter.

9          (Deposition Exhibit 4 marked)

10  BY MR. DELLORUSSO:

11     Q.   I'm going to go through these pages.  Take a

12  look at it.  Let me know once you're done reviewing it

13  briefly.  Can you -- can you see it?

14     A.   Yes.

15     Q.   I'll just go to the first page, actually.

16  Have you ever seen this document before?

17     A.   No.

18     Q.   Okay.  I'll go through it.  I'll go through

19  all the -- all the pages.  You don't recall ever seeing

20  this document?

21     A.   No.

22     Q.   Okay.

23          MR. DELLORUSSO:  I'm going to mark this one.

24      I'm going to mark as Exhibit 5 the motion for

25      judicial default as -- as Exhibit 5.

# EXHIBIT 21

1          (Deposition Exhibit 5 marked)

2    BY MR. DELLORUSSO:

3          Q.    Have you ever seen this document before?

4          A.    No.

5          Q.    Okay.  Now, I want to read for the record

6    here.  On the second line, it says, "Plaintiff served

7    Defendant, Bassem Essam El Mallakh, with the complaint

8    in this matter on March 3, 2019, at 116 Rockefeller,

9    Irvine, California 92612."  And his response was due on

10   March 23, 2019, which he failed to file an answer to the

11   complaint.  Do you see that?

12         A.    Yes.

13         Q.    Okay.  The 116 Rockefeller, Irvine, California

14   address, is that your residence?

15         A.    Yes.

16         Q.    You live there?

17         A.    Yes.

18         Q.    Does your brother, Bassem Essam El Mallakh,

19   live there?

20         A.    No.

21         Q.    Where does he live?

22         A.    In Santa Monica.

23         Q.    Were you ever served with any documents from a

24   process server in 2019 at 116 Rockefeller, Irvine,

25   California 92612?

# EXHIBIT 21

1       A.    No.

2       Q.    Were you ever served with any documents from

3    anybody in regards to a lawsuit at 116 Rockefeller,

4    Irvine, California 92612?

5       A.    No.

6       Q.    Has your brother, Bassem Essam El Mallakh,

7    ever resided or slept or stayed at your residence at 116

8    Rockefeller, Irvine, California, in March or April of

9    2019?

10      A.    No.

11      Q.    Okay.  I'm going to go to the next page of

12   this exhibit.  I'll actually go a little bit more than

13   that.

14           MR. BERNHARD:  Frank, just that Exhibit 4,

15        you're going to submit that to the court reporter

16        just so that it's in the record?

17           MR. DELLORUSSO:  Sure.  I don't have her email

18        address, but --

19           THE REPORTER:  I can put that in the chat.

20           MR. DELLORUSSO:  All right.

21           MR. BERNHARD:  Yeah.  Will you do that?

22        Great.

23           MR. DELLORUSSO:  Thank you.

24   BY MR. DELLORUSSO:

25      Q.    I just want to go through this alias summons,

# EXHIBIT 21

1  which is page 4 of Exhibit 5.  There's three addresses

2  here.  Are you familiar with -- with the 116

3  Rockefeller, Irvine, California 92612 address?

4      A.   Yes.

5      Q.   Okay.  Is that your residence?

6      A.   Yes.

7      Q.   When was that -- when did that become your

8  residence?

9      A.   In early 2017.

10      Q.   Okay.  Is that your primary residence?

11      A.   Yes.

12      Q.   Okay.  Are you familiar with the 606

13  Rockefeller, Irvine, California 92612 address?

14      A.   Yes.

15      Q.   Okay.  What address is that?

16      A.   That was my previous address.

17      Q.   Okay.  Did you -- were you the primary

18  residence of that address?

19      A.   No.

20      Q.   Okay.  And the 152 86th Street, Santa Monica,

21  California address, 90401; do you recall that address?

22      A.   No.

23      Q.   Okay.  And I just want to read for the record

24  that it states here, "Substitute service on Reem Hanna

25  on March 3, 2019, at 12:20 p.m."  Do you see that?

EXHIBIT 21

1        A.    Sorry?

2        Q.    Do you -- do you see that where it says,

3    "Substitute service Reem Hanna on 3/3/19, at 12:20

4    p.m."?

5        A.    Yeah.   I see that.

6        Q.    If you go back, this is not as clear as a copy

7    as the one that Andrew had, but I guess we can work with

8    it.   I'm not very good with technology here.

9             I believe this was shown to you earlier.   I

10   don't know if it was on the record, but I believe it

11   was, where it says here that, "Received this writ on the

12   3rd of March 2019, and served same at 12:20 on the 17th

13   of April 2019."   Do you see that?

14       A.    Yeah.

15       Q.    And then it says, "Substitute service."   Do

16   you see that?

17       A.    Yes.

18       Q.    And it says, "By leaving a true copy" --

19   that's hard to read -- "together with a copy of the

20   pleading" -- I think I might need a better copy of this.

21   I'm going to -- I'm going to -- I'm going to strike

22   that.

23            MR. DELLORUSSO:   Andrew, do you have a better

24       copy?

25            MR. BERNHARD:   That's what I got.

# EXHIBIT 21

1          MR. DELLORUSSO:  Okay.  Yeah.  I can't really

2      zoom in.  All right.  That -- that's -- that's

3      fine.  Let me see if I can get that.  All right.

4      I'm going to stop sharing so you don't have to see

5      that.  Okay.

6  BY MR. DELLORUSSO:

7      Q.   I have a few more questions here.  Were you

8  ever served with documents for -- well, strike that.

9          Were documents ever placed on your front door

10  with regards to this lawsuit at your current residence?

11     A.   No.

12     Q.   When did you first hear about this lawsuit?

13     A.   When my brother told me about it.

14     Q.   When was that?

15     A.   In this last few days or last few weeks.

16     Q.   Okay.

17          MR. DELLORUSSO:  I have no more questions.

18          MR. BERNHARD:  Okay.  Quick follow-up.  I have

19  like three questions.

20                EXAMINATION BY MR. BERNHARD

21  BY MR. BERNHARD:

22     Q.   All right.  So we're all looking at this

23  photo, Exhibit 2.  Do you see that here, Reem?

24     A.   Yeah.

25     Q.   It's the photo that's marked at the top "April

EXHIBIT 21

1  17, 2019, at 4:39 p.m."  Is that right?

2      A.   Uh-huh (affirmative).

3      Q.   And see there's like this right here on the

4  right side.  In the middle it says, "Hiking up was fun,"

5  smiley face.  Do you see that?

6      A.   Yeah.

7      Q.   Is that something that you put on there, or is

8  that something that came with the photo, or how did that

9  get there?

10     A.   I put it on there.

11     Q.   Okay.  How does that -- how did you do that?

12     A.   On social media.

13     Q.   Okay.  Is there like a -- like software that

14  does that for you?  Is that something that Facebook

15  provides?  How does it work?

16     A.   On Instagram.

17     Q.   Instagram.  So when you're on Instagram, does

18  it let you just write anywhere you want, or how does it

19  work?

20     A.   Yes.  It lets you write captions about the

21  photo.

22     Q.   Okay.  And so when did you write that caption

23  on that photo?

24     A.   At 4:39.

25     Q.   Okay.  And were you just finishing a hike?

# EXHIBIT 21

1  Were you back with your friend at her house?  When did you

2  do that?

3      A.   It was after the hike.

4      Q.   After the hike.  So were you like back at your

5  car, back at your friend, Jihan's house, or something

6  else?

7      A.   Don't remember exactly.

8      Q.   Okay.  But it was when the hike was done.  Is

9  that your testimony?

10         MR. DELLORUSSO:  Objection.

11         THE WITNESS:  Yes.

12  BY MR. BERNHARD:

13     Q.   Okay.  You had said 1526 6th Street, Santa

14  Monica, is an address you recognize; is that right?

15     A.   No.

16     Q.   What did you say was your --  your previous

17  residence in Santa Monica, something to that effect when

18  your attorney was just showing you that summons?

19         MR. DELLORUSSO:  Objection.

20         THE WITNESS:  I never lived there.

21  BY MR. BERNHARD:

22     Q.   You never lived in Santa Monica?

23     A.   No.

24     Q.   Okay.  Where did you live before your current

25  address of 116 Rockefeller?

EXHIBIT 21

 1      A.   606 Rockefeller.

 2      Q.   Okay.  And you said at that -- were you the

 3  only resident at 606 Rockefeller?

 4      A.   No.

 5      Q.   Who else was a resident at 606 Rockefeller?

 6      A.   My friend.

 7      Q.   Your what?  I'm sorry.

 8      A.   My friend.

 9      Q.   Your friend?  Who is your friend?

10      A.   That was before -- before 2017, so I think

11  it's not relevant.

12          MR. BERNHARD:  Motion to strike as

13      nonresponsive.

14  BY MR. BERNHARD:

15      Q.   Who was your friend, Reem, that you're

16  referring to?

17      A.   (Audio distortion)

18          MR. DELLORUSSO:  Objection.

19  BY MR. BERNHARD:

20      Q.   Sorry.  I just couldn't hear what you said,

21  Reem.

22      A.   Objection.

23      Q.   Well, you're not legally allowed to make

24  objections.  Your attorney makes them for you.  He has

25  not instructed you to answer, and so you're compelled to

EXHIBIT 21

1  answer.  So please just answer the question.

2      A.   No.  I'm not going to answer the question.

3      Q.   For the record, despite your attorney not

4  instructing you not to answer, you're refusing to answer

5  the questions today as to your residence and who you

6  lived with; is that right?

7          MR. DELLORUSSO:  Objection.

8  BY MR. BERNHARD:

9      Q.   Is that right, Reem?

10     A.   That -- I think the attorney just objected to

11 the question.  So --

12     Q.   Okay.  But he has not instructed you not to

13 answer, so, for the record, are you refusing to answer

14 the question as to your residency and who you lived

15 with?

16     A.   Didn't he just object to the question?

17         MR. DELLORUSSO:  If you know the answer, you

18     can say the answer.  If not --

19         THE WITNESS:  No.  I'm not going to.

20 BY MR. BERNHARD:

21     Q.   Okay.  So for the record, you're refusing to

22 answer; is that correct?

23     A.   Yes.

24     Q.   Okay.

25         MR. BERNHARD:  Reserve motion to compel and

EXHIBIT 21

1       sanction the witness.

2              No further questions.

3              I appreciate it, Reem.  Thank you for taking

4       the time today.  I know it's been long and

5       grueling.  I appreciate you taking the hours out of

6       your day and hopefully you can go on to better

7       things, okay.

8              THE WITNESS:  Thanks.  Bye.

9              (Thereupon, the deposition was concluded at

10     4:40 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 21

```
 1                    CERTIFICATE OF OATH

 2      STATE OF FLORIDA

 3      COUNTY OF BROWARD

 4

 5          I, Erica Hylton, Court Reporter, Notary

 6      Public, State of Florida, certify that Reem Hanna,

 7      appeared before me via Zoom video on the 18th day

 8      of March 2021, and was duly sworn.

 9          Signed this 21st day of March 2021.

10

11

12

13          _____

14          Erica Hylton, Court Reporter

15          Notary Public, State of Florida

16          Commission No.:

17          Commission Expires:

18

19

20

21

22

23

24

25
```

# EXHIBIT 21

1                    CERTIFICATE OF REPORTER

2        STATE OF FLORIDA

3        COUNTY OF BROWARD

4

5            I, Erica Hylton, Court Reporter, certify that

6        I was authorized to and did report the Deposition

7        of Reem Hanna; that a review of the transcript was

8        waived; and that the transcript is a true and

9        correct record of my notes.

10           I further certify that I am not a relative,

11       employee, attorney, or counsel of any of the

12       parties, nor am I a relative or employee of any of

13       the parties' attorneys or counsel connected with

14       the action, nor am I financially interested in the

15       action.

16           Dated this 21st day of March 2021.

17

18

19       _____

20       Erica Hylton, Court Reporter

21

22

23

24

25

EXHIBIT 21

**EXHIBIT "7"**

```
1        knows -- if she knows the answer.

2            MR. BERNHARD:  Great.  From here on forward,

3        please, unless you're instructing the client not to

4        answer, please don't make any more speaking

5        objections.  It coaxes the witness testimony.

6   BY MR. BERNHARD:

7        Q.    Okay.  So, Reem, I understood Jihan has

8   different names.  What's your full legal name?

9        A.    Reem Hanna.

10       Q.    Okay.  And was that your original name at

11   birth?

12       A.    No.  That's my marriage name.

13       Q.    Okay.  What was your name at birth?

14       A.    Reem El Mallakh.

15       Q.    So El Mallakh was your last name?

16       A.    Correct.

17       Q.    Do you have any other names or aliases that

18   you go around by besides Reem Hanna and Reem El Mallakh?

19       A.    No.

20       Q.    Do you have any, you know, middle names that

21   you would go by or anything like that?

22       A.    No.

23       Q.    Okay.  And you testified that you currently --

24   currently reside at 116 Rockefeller in Irvine,

25   California; is that right?
```

# EXHIBIT 21

1     A.   Correct.

2     Q.   Okay.  And how long have you lived there?

3     A.   I think since 2017.

4     Q.   Okay.  Are you sure of that date?  Did I --

5  sorry.  Was that a yes or a no?

6     A.   Yeah.  I think early 2017.

7     Q.   Okay.  Are you sure of that date, early 2017?

8          MR. DELLORUSSO:  Objection, form.

9  BY MR. BERNHARD:

10    Q.   Is that a yes?  Or sorry.  Whenever he says

11 objection, unless he instructs you not to answer, you

12 just have to answer.

13    A.   Yeah.  I think early 2017.

14    Q.   Okay.  And do you have any brothers or

15 sisters?

16    A.   Yes.  One brother.

17    Q.   What's your brother's full legal name?

18    A.   Bassem El Mallakh.

19    Q.   Bassem El Mallakh.  Does he go by any other

20 name?

21    A.   No.  Not that I know of.

22    Q.   Okay.  Have you ever heard him go by any other

23 name?

24    A.   No.

25    Q.   Does he have any middle names?

# EXHIBIT 21

1    Q.   Yeah.  Like morning --

2    A.   Like what --

3    Q.   -- afternoon, night?

4    A.   Oh, I don't remember.

5    Q.   It doesn't show that on your pictures?

6    A.   No.

7    Q.   Okay.  And then from March 14th until you went

8 to Hawaii, you were staying at 116 Rockefeller?

9    A.   Correct.

10    Q.   Okay.  So looking at that time, do you have

11 any idea why the process server would allege that they

12 were at your house on April 17, 2019?

13         MR. DELLORUSSO:  Objection, form.

14         THE WITNESS:  How do I know?  Why is that --

15     how would I know why they would say such a thing?

16 BY MR. BERNHARD:

17    Q.   Is it possible that there was someone else

18 staying at your house on April 17, 2019?

19    A.   No.

20         MR. DELLORUSSO:  Objection, form.

21 BY MR. BERNHARD:

22    Q.   Okay.  Did you live with anybody else at 116

23 Rockefeller, Irvine, California in April 2019?

24    A.   My son.

25    Q.   Okay.  How old is your son?

# EXHIBIT 21

1        A.    He's 15.

2        Q.    Okay.  So it's just you and your son at 116

3    Rockefeller, Irvine in March and April 2019?

4        A.    Yes.

5        Q.    Okay.  So on or about April 17, 2019, around

6    12:20 p.m., it's your testimony that no one knocked on

7    the door at your residence at 116 Rockefeller?

8        A.    Correct.

9        Q.    Okay.  And it's your testimony that on April

10   17, 2019, around 12:20 p.m., you did not answer the --

11   the -- the door at 116 Rockefeller?

12       A.    Correct.

13       Q.    Do you have a -- like a doorman at 116

14   Rockefeller?

15       A.    No.

16       Q.    Is there a camera system at 116 Rockefeller?

17       A.    There is a doorbell camera.

18       Q.    Okay.  Is it a doorbell camera for your

19   particular unit, or is it for the building, or something

20   else?

21       A.    For the unit.

22       Q.    Okay.  And is it your position that on April

23   17, 2019, around 12:20 p.m., nobody, to your knowledge,

24   buzzed your unit at 116 Rockefeller?

25       A.    I wasn't here, so if they rang the doorbell, I

EXHIBIT 21

1          MR. DELLORUSSO:  Objection.

2          THE WITNESS:  I don't -- I don't remember.  I

3      mean, this is --

4  BY MR. BERNHARD:

5      Q.   Okay.  Have you -- have you driven your

6  brother anywhere in a car in the past three years?

7      A.   I don't remember.

8      Q.   Okay.  How often do you see your brother?

9      A.   Not very often.

10      Q.   Okay.  In 2020, how many times would you say

11  you'd see your brother?

12          MR. DELLORUSSO:  Objection.

13          THE WITNESS:  I don't remember.

14  BY MR. BERNHARD:

15      Q.   Would you say it's more than five for the year

16  2020?

17      A.   I can't be certain.

18      Q.   Would you say it's less than five times you

19  seen your brother in 2020?

20      A.   I really do not remember.

21      Q.   Would you say that you seen your brother more

22  than 100 times in 2020?

23      A.   No.

24      Q.   Okay.  Would you say you saw your brother more

25  than 50 times in 2020?

EXHIBIT 21

63

```
 1        A.   No.

 2        Q.   Would you say you saw your brother more than

 3   20 times in 2020?

 4        A.   Probably not.

 5        Q.   Okay.  Would you say you saw your brother more

 6   than 10 times in 2020?

 7        A.   Probably not.

 8        Q.   Okay.  So you see your brother -- you saw your

 9   brother less than 10 times in 2020?

10        MR. DELLORUSSO:  Objection.

11        THE WITNESS:  Yeah.  Maybe even less.

12   BY MR. BERNHARD:

13        Q.   Okay.

14        A.   Very infrequent.

15        Q.   Okay.  What about 2019; same amount of time?

16   You saw your brother more or less than five times or so

17   in 2019?

18        A.   Probably.

19        Q.   Okay.  What about 2021; how often do you see

20   your brother?

21        A.   Very infrequent.

22        Q.   Okay.  So one of those where you say less than

23   five times in 2021?  It's only been three months.

24        A.   Oh, for sure.

25        Q.   Okay.
```

EXHIBIT 21

1        A.    For sure less than five.

2        Q.    Is you seeing your brother today and yesterday

3    the first time you've seen your brother in 2021?

4        A.    Probably.  Yes.

5        Q.    Okay.  So in the five or so times you saw him

6    in 2020, the five or so times you saw him in 2019, did

7    you see him at all drive a car?

8        A.    I don't remember.

9             MR. DELLORUSSO:  Objection.

10    BY MR. BERNHARD:

11        Q.    Okay.  What about 2018?

12             MR. DELLORUSSO:  Objection.

13             THE WITNESS:  I don't know.

14    BY MR. BERNHARD:

15        Q.    Would it surprise you to know that your

16    brother has a Mercedes Benz C-Class registered in his

17    name at 116 Rockefeller?

18        A.    I don't know.

19        Q.    I'm not saying what you know.  I said would it

20    surprise you?

21        A.    I really don't know what his car situation is.

22        Q.    Okay.  When you park at 116 Rockefeller, do

23    you park in front of your property, or do you park like

24    down the road or somewhere else?

25        A.    In the garage.

EXHIBIT 21

 1   don't know what late is for you.

 2          MR. DELLORUSSO:  Objection, form.

 3          THE WITNESS:  I don't remember.

 4   BY MR. BERNHARD:

 5       Q.   Okay.  Is there any way to -- to get that

 6   information out of your phone?

 7       A.   No.

 8       Q.   Okay.  Do you recall if it was before or after

 9   9 o'clock?

10       A.   I don't remember.

11       Q.   Is there any way for you to confirm?

12       A.   Nope.

13       Q.   On September 13, 2020, did you drive yourself

14   back in your Mercedes; did your brother, Bassem, give

15   you a ride, or something else?

16       A.   No.  I drove myself.

17       Q.   Do you recall why you were at your brother,

18   Bassem's, place on September 13, 2020, in particular?

19       A.   Visiting.

20       Q.   Okay.  Well, we've got a process server who's

21   stated that they came to 116 Rockefeller on September

22   13, 2020, around 9 o'clock p.m. and -- and spoke to you

23   in particular.  Does that sound familiar at all?

24       A.   Yeah.

25       Q.   Okay.  So did somebody talk to you on

# EXHIBIT 21

1    September 13, 2020, around 9:00 p.m. at 116 Rockefeller?

2        A.    Yes.

3        Q.    Okay.  And tell me what happened.  Did

4    somebody come and knock on your door or something else?

5        A.    There was someone knocking on the door like

6    mad, very loud.  I opened the door, and they said, "Is

7    Bassem" -- I think I -- you know, obviously, not word-

8    for-word, but they said, "Is Bassem here?"  I said, "No,

9    he does not live here," and I closed the door.

10        Q.    Okay.  Was there anybody else with you at the

11    time at 116 Rockefeller on September 13, 2020?

12        A.    Probably my son.

13        Q.    And you said your son is 15 years old?

14        A.    Yes.

15        Q.    Anybody else with you besides your on

16    September 13 --

17        A.    No.

18        Q.    -- 2020, at 116 Rockefeller?

19        A.    No.

20        Q.    So your testimony here under penalty of

21    perjury is that only you and your 15-year-old son were

22    at 116 Rockefeller at 9 o'clock p.m. on September 13,

23    2020, when this process server came to your house; is

24    that right?

25        A.    Right.

EXHIBIT 21

1       Q.   Okay.  And you said -- what you said to him?  I

2   -- sorry.  I just forgot.

3       A.   I said, "He doesn't live here," and I closed

4   the door.

5       Q.   Okay.  Did that -- did that process server say

6   anything else to you?

7       A.   No.

8       Q.   Did that process server try to give you

9   paperwork?

10      A.   No.

11      Q.   Is there any reason that you didn't ask what

12  the -- the person wanted?

13      A.   No.

14      Q.   Okay.  Is that your typical way of behaving

15  when somebody comes and asks for your brother that you

16  slam the door in their face?

17          MR. DELLORUSSO:  Objection, form.  You can

18      answer.

19          THE WITNESS:  Yeah.  I don't -- I don't have

20      an answer.

21  BY MR. BERNHARD:

22      Q.   Okay.  Have you ever done that to anybody else

23  who has come and asked for your brother?

24      A.   No.

25      Q.   Okay.  Why do you think you did it on this

EXHIBIT 21

1 | particular night on September 13, 2020?

2 |     A.   I don't understand your question.

3 |     Q.   You said you've never slammed the door in

4 | anybody else's face when they asked for your brother.

5 | You said you slammed the door in this guy's face on

6 | September 13, 2020.  I'm trying to understand why you

7 | would change your behavior specifically for this

8 | individual on September 13, 2020.

9 |     A.   By the way, that's not what I said.  That's

10 | not what I said.  You're -- you're --

11 |     Q.   Okay.

12 |     A.   -- you're paraphrasing what I said.

13 |     Q.   Okay.

14 |     A.   All I said was -- (audio distortion) like mad

15 | and really like being very loud and disruptive late at

16 | night.  When I opened the door, he asked about is -- he

17 | asked -- I don't remember -- I don't remember exactly

18 | the words, but he said, "Is Bassem here?"  And I said,

19 | "No.  He does not live here," and I closed the door.

20 |     So I don't know what's typical or atypical.

21 | This is not a scenario that happens to be frequently in

22 | life where someone knocks like mad (audio distortion).

23 |     Q.   Did you ask what it was about?

24 |     A.   No.

25 |     Q.   Were you concerned at all for your brother?

# EXHIBIT 21

1      A.   No.

2      Q.   Okay.  Is that the first time you remember

3   anybody ever knocking on your door and asking for

4   Bassem?

5      A.   Yes.

6      Q.   Okay.  So that novelty of that situation

7   didn't peek your curiosity in any way?

8           MR. DELLORUSSO:  Objection.

9           THE WITNESS:  No.

10  BY MR. BERNHARD:

11     Q.   Okay.  Did you call your brother to see what

12  was going on?

13     A.   No.

14     Q.   Why is that?

15     A.   I mind my own business.

16     Q.   Well, I mean, I understand you might mind your

17  own business about, you know, some random schmoe you

18  don't know.  We're talking about your brother here.  Do

19  you mind your own business when it comes to your brother

20  too?

21          MR. DELLORUSSO:  Objection.

22          THE WITNESS:  Of course I mind my own

23      business.

24  BY MR. BERNARD:

25     Q.   Okay.  Did the person leave any documents at

EXHIBIT 21

 1   your door or in your door or otherwise?

 2       A.   No.

 3       Q.   You saw no documents on your door at any time

 4   on September 13, 2020?

 5       A.   No.

 6       Q.   You saw no documents on your door at any time

 7   that week of September 13, 2020?

 8       A.   No.

 9       Q.   It's your testimony that a random individual

10   came to your door at 9 o'clock-ish, knocked on it

11   loudly, asked for Bassem, you said, "He doesn't live

12   here," closed the door, and that's the last you -- you

13   saw of this all together.

14       A.   Right.

15       Q.   And you never contacted your brother, Bassem,

16   about it whatsoever.

17       A.   No.

18       Q.   You had no concerns whatsoever that this

19   random person was coming to your door to ask for your

20   brother.

21       A.   No.  I did not find it concerning.

22       Q.   And that's the very first time to your memory

23   that anybody's come to your door at 116 Rockefeller

24   asking for Bassem El Mallakh.

25       A.   That's correct.

# EXHIBIT 21

1    Q.   Has that ever happened again since?

2    A.   No.

3    Q.   Did you tell anybody at all about this

4  occurrence on September 13, 2020, that this person came

5  to your door asking for your brother, Bassem?

6    A.   No.

7    Q.   Okay.  Have you ever been accused in court of

8  making a false statement?

9    A.   No.

10    Q.   Have you ever been sued?

11    A.   No.

12    Q.   Have you ever been sued for slander, which is

13  the making of a false statement to damages a person's

14  reputation?

15    A.   No.

16    Q.   Have you ever been sued for conspiracy, which

17  is making of a secret plan by a group to do something

18  unlawful?

19    A.   No.

20    Q.   To your knowledge, has your brother, Bassem El

21  Mallakh, ever been sued in a court for making a false

22  statement?

23    A.   I don't know.

24    Q.   To your knowledge, has your brother, Bassem El

25  Mallakh, ever been sued, apart from this lawsuit by

EXHIBIT 21

1   Belgium Investments, ever been sued at all, to your

2   knowledge?

3            MR. DELLORUSSO:  Objection.

4            THE WITNESS:  Like I said, I -- you can ask

5        him what you want.

6   BY MR. BERNHARD:

7        Q.   I'm not asking him; I'm asking you.  To your

8   knowledge, has your brother, Bassem El Mallakh, ever

9   been sued, apart from this lawsuit by Belgium

10  Investments, to your knowledge?

11       A.   I don't know.

12       Q.   Okay.  To your knowledge, has your father,

13  Essam El Mallakh, ever been accused in court of making a

14  false statement?

15            MR. DELLORUSSO:  Objection.

16            THE WITNESS:  No.

17  BY MR. BERNHARD:

18       Q.   To your knowledge, has your father, Essam El

19  Mallakh, ever been sued, apart from this lawsuit by

20  Belgium Investments?

21            MR. DELLORUSSO:  Objection.

22            THE WITNESS: No.

23  BY MR. BERNHARD:

24       Q.   To your knowledge, has your father, Essam El

25  Mallakh, ever been sued for slander, which is the making

# EXHIBIT 21

1  of a false statement?

2            MR. DELLORUSSO:  Objection.

3            THE WITNESS:  (No audible response)

4  BY MR. BERNHARD:

5      Q.   To your knowledge, has your father, Essam El

6  Mallakh, ever been sued for conspiracy?

7      A.   No.

8            MR. DELLORUSSO:  Same objection.

9  BY MR. BERNHARD:

10     Q.   Okay.  To your knowledge, has your mother,

11  Mona McCale (phonetic), ever been accused in court of

12  making a false statement?

13           MR. DELLORUSSO:  Objection.

14           THE WITNESS:  No.

15  BY MR. BERNHARD:

16     Q.   To your knowledge, has your mother, Mona

17  McCale, ever been sued?

18           MR. DELLORUSSO:  Objection.

19           THE WITNESS:  No.

20  BY MR. BERNHARD:

21     Q.   To your knowledge, has your mother, Mona

22  McCale, ever been sued for slander?

23           MR. DELLORUSSO:  Objection.

24           THE WITNESS:  No.

25  BY MR. BERNHARD:

EXHIBIT 21

1       Q.   Okay.  To your knowledge, has your mother, Mona,

2   ever been sued for conspiracy?

3              MR. DELLORUSSO:  Objection.

4              THE WITNESS:  No.

5   BY MR. BERNHARD:

6       Q.   Okay.  Have you ever been accused in court of

7   having participated in the commission of a fraud in any

8   way?

9       A.   No.

10             MR. DELLORUSSO:  Objection.

11   BY MR. BERNHARD:

12       Q.   Do you understand fraud to be an act of

13   dishonesty?

14             MR. DELLORUSSO:  Objection.

15             THE WITNESS:  If you say so.

16   BY MR. BERNHARD:

17       Q.   I'm just asking if you understand that.

18       A.   Is -- is that the legal explanation of it?

19       Q.   I'm just saying, do you understand fraud to be

20   an act of dishonesty?  Just your understanding.

21             MR. DELLORUSSO:  Objection.

22             THE WITNESS:  Like -- yeah.  Sure.

23   BY MR. BERNHARD:

24       Q.   Okay.  Have you ever been accused in court of

25   having an extramarital affair?

EXHIBIT 21

```
 1              (Deposition Exhibit 5 marked)

 2   BY MR. DELLORUSSO:

 3       Q.   Have you ever seen this document before?

 4       A.   No.

 5       Q.   Okay.  Now, I want to read for the record

 6   here.  On the second line, it says, "Plaintiff served

 7   Defendant, Bassem Essam El Mallakh, with the complaint

 8   in this matter on March 3, 2019, at 116 Rockefeller,

 9   Irvine, California 92612."  And his response was due on

10   March 23, 2019, which he failed to file an answer to the

11   complaint.  Do you see that?

12       A.   Yes.

13       Q.   Okay.  The 116 Rockefeller, Irvine, California

14   address, is that your residence?

15       A.   Yes.

16       Q.   You live there?

17       A.   Yes.

18       Q.   Does your brother, Bassem Essam El Mallakh,

19   live there?

20       A.   No.

21       Q.   Where does he live?

22       A.   In Santa Monica.

23       Q.   Were you ever served with any documents from a

24   process server in 2019 at 116 Rockefeller, Irvine,

25   California 92612?
```

# EXHIBIT 21

1    A.   No.

2    Q.   Were you ever served with any documents from

3 anybody in regards to a lawsuit at 116 Rockefeller,

4 Irvine, California 92612?

5    A.   No.

6    Q.   Has your brother, Bassem Essam El Mallakh,

7 ever resided or slept or stayed at your residence at 116

8 Rockefeller, Irvine, California, in March or April of

9 2019?

10    A.   No.

11    Q.   Okay.  I'm going to go to the next page of

12 this exhibit.  I'll actually go a little bit more than

13 that.

14          MR. BERNHARD:  Frank, just that Exhibit 4,

15      you're going to submit that to the court reporter

16      just so that it's in the record?

17          MR. DELLORUSSO:  Sure.  I don't have her email

18      address, but --

19          THE REPORTER:  I can put that in the chat.

20          MR. DELLORUSSO:  All right.

21          MR. BERNHARD:  Yeah.  Will you do that?

22      Great.

23          MR. DELLORUSSO:  Thank you.

24 BY MR. DELLORUSSO:

25    Q.   I just want to go through this alias summons,

# EXHIBIT 21

 1  which is page 4 of Exhibit 5.  There's three addresses

 2  here.  Are you familiar with -- with the 116

 3  Rockefeller, Irvine, California 92612 address?

 4      A.  Yes.

 5      Q.  Okay.  Is that your residence?

 6      A.  Yes.

 7      Q.  When was that -- when did that become your

 8  residence?

 9      A.  In early 2017.

10      Q.  Okay.  Is that your primary residence?

11      A.  Yes.

12      Q.  Okay.  Are you familiar with the 606

13  Rockefeller, Irvine, California 92612 address?

14      A.  Yes.

15      Q.  Okay.  What address is that?

16      A.  That was my previous address.

17      Q.  Okay.  Did you -- were you the primary

18  residence of that address?

19      A.  No.

20      Q.  Okay.  And the 152 86th Street, Santa Monica,

21  California address, 90401; do you recall that address?

22      A.  No.

23      Q.  Okay.  And I just want to read for the record

24  that it states here, "Substitute service on Reem Hanna

25  on March 3, 2019, at 12:20 p.m."  Do you see that?

# EXHIBIT 21

```
 1            MR. DELLORUSSO:  Okay.  Yeah.  I can't really

 2       zoom in.  All right.  That -- that's -- that's

 3       fine.  Let me see if I can get that.  All right.

 4       I'm going to stop sharing so you don't have to see

 5       that.  Okay.

 6  BY MR. DELLORUSSO:

 7       Q.   I have a few more questions here.  Were you

 8  ever served with documents for -- well, strike that.

 9            Were documents ever placed on your front door

10  with regards to this lawsuit at your current residence?

11       A.   No.

12       Q.   When did you first hear about this lawsuit?

13       A.   When my brother told me about it.

14       Q.   When was that?

15       A.   In this last few days or last few weeks.

16       Q.   Okay.

17            MR. DELLORUSSO:  I have no more questions.

18            MR. BERNHARD:  Okay.  Quick follow-up.  I have

19  like three questions.

20                 EXAMINATION BY MR. BERNHARD

21  BY MR. BERNHARD:

22       Q.   All right.  So we're all looking at this

23  photo, Exhibit 2.  Do you see that here, Reem?

24       A.   Yeah.

25       Q.   It's the photo that's marked at the top "April
```

EXHIBIT 21

# EXHIBIT "8"

In the Matter of:

## re BASSEM VICTOR EL MALLAKH

---

## BASSEM MALLAKH

### *March 15, 2023*

---



1              UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4  In re BASSEM VICTOR EL MALLAKH      )
                                       )
5                                      )
                                       )
6                                      )
                                       ) Case No. 8:22-BK-11605-TA
7                                      ) Chapter 11
                                       )
8                                      )
                                       )
9                                      )
   _____)

10

11

12

13

14

15        VIDEOCONFERENCE DEPOSITION OF BASSEM EL MALLAKH

16         WEDNESDAY, MARCH 15, 2023, 11:19 P.M. (PST)

17

18

19

20

21

22

   STENOGRAPHICALLY REPORTED BY:
23

   LORI S. TURNER
24 CSR NO. 9102

25 Job No.  2299A

1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4
In re BASSEM VICTOR EL MALLAKH        )
5                                     )
                                      )
6                                     )
                                      )
7                                     ) Case No. 8:22-BK-11605-TA
                                      ) Chapter 11
8                                     )
                                      )
9                                     )
                                      )
10  _____)

11

12

13

14

15

16

17

18

19

20       DEPOSITION OF BASSEM EL MALLAKH, the debtor

21       herein, taken on behalf of judgment creditor

22       via videoconference, beginning at 11:19 a.m. and

23       ending at 12:24 p.m., on Wednesday, March 15, 2023,

24       before Lori S. Turner, Certified Shorthand

25       Reporter, CSR No. 9102

1   APPEARANCES OF COUNSEL:

2

    For Judgment Creditor BELGIUM INVESTMENTS 960 BAY DR,
3   LLC A CALIFORNIA CORPORATION:

4
            IMPACT ADVOCATES APC
5           BY PATRICK MILLER, ESQ.
            121 South Oak Avenue
6           Pasadena, California 91107
            213.364.7581
7           patrick.miller@impactadvocateslaw.com
            (APPEARING VIA VIDEOCONFERENCE)
8

9
    For Debtor BASSEM VICTOR EL MALLAKH:
10

11          AFARI LAW FIRM
            BY CAROLYN AFARI, ESQ.
12          269 South Beverly Drive, Suite 643
            Beverly Hills, California 90212
13          424.274.1099
            afarilawfirm@gmail.com
14          (APPEARING VIA VIDEOCONFERENCE)

15

16  Also Present:   ANTHONY CASTANEDA - Exhibit Technician
                    (APPEARING VIA VIDEOCONFERENCE)
17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3    WITNESS:   BASSEM EL MALLAKH
               (APPEARING VIA VIDEO CONFERENCE)
4

5    EXAMINATION:                                    PAGE

6    BY MR. MILLER                                      5

7

8                      **E X H I B I T S**

9                  (No exhibits offered)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              WEDNESDAY, MARCH 15, 2023 - 11:19 A.M.

2                            ***

3

4                      BASSEM EL MALLAKH,

5              HAVING BEEN DULY ADMINISTERED AN

6              OATH BY THE REPORTER, WAS EXAMINED

7                 AND TESTIFIED AS FOLLOWS:

8

9                          -EXAMINATION-

10

11   BY MR. MILLER:

12       Q.  Okay.  Thank you for taking the time to be here

13   with us today, Mr. El Mallakh.

14           I understand you've been involved in previous

15   depositions.

16           Is that correct?

17       A.  Yes.

18       Q.  Yeah.  So you understand that you're under oath

19   today?

20       A.  Yes.

21       Q.  Are you currently -- where are you currently

22   located?

23       A.  I'm in Egypt right now.

24       Q.  Where in Egypt?

25       A.  Cairo.
```

1          Q.  Okay.  Where are you staying right now?

2          A.  I'm staying at my parents' house.

3          Q.  Okay.  And is your father in the room with you

4     right now?

5          A.  No, he's not.

6          Q.  Okay.  Can he hear you right now?

7          A.  No.  No.  No.  I'm in a different room.

8          Q.  So you've been involved in depositions before,

9     but I'll remind you of a few of the ground rules.

10          The purpose for this deposition is to

11     understand the truth of these issues.  So if there's any

12     questions that I ask that you don't quite understand,

13     please feel free to stop and ask me to rephrase them.

14          I want to be sure you understand what I'm

15     asking and that you can answer accurately and

16     truthfully.

17          A.  Yes.

18          Q.  If you'd like to take a break, please let us

19     know, and we can facilitate that.  If you need anything

20     clarified or restated, that's fine.

21          Are you feeling sick at all today?

22          A.  No, I'm not.

23          Q.  You're not under the care of any doctors or

24     under any -- the influence of any prescription drugs or

25     other chemical substances?

1         A.   No, I'm not.

2         Q.   Okay.  So first of all, I'd like to talk a bit

3    about where -- first, where did you reside in 2016?

4         A.   I've always lived in my house in Irvine.

5         MS. AFARI:  Just really quickly.  I just want to --

6    I just want to clarify that the purpose of this

7    deposition is regarding the debtor's homestead

8    exemption.

9              So I guess I'm going to raise an objection to

10   relevance because the question of debtor's homestead

11   exemption, it doesn't matter where he was living at any

12   point in time before the debtor's case was filed.

13             What's relevant in determining the debtor's

14   homestead exemption is where the debtor was living on

15   the day the case was filed.

16             So you can go ahead and answer the question.

17   BY MR. MILLER:

18        Q.   Okay.  Mr. El Mallakh, can you tell me where

19   did you reside in 2016?

20        A.   I've been always living in the same house since

21   I purchased it.

22        Q.   And what house is that?

23        A.   It's 116 Rockefeller, Irvine.

24        Q.   Okay.  And so in 2016 you were living in the

25   Rockefeller house then.

1          When did you purchase the Rockefeller house?

2     A.  October 2013.

3     Q.  And you always resided there.

4          Did you ever have any roommates while you lived

5  there?

6     A.  In Irvine, I've never had a roommate.

7     Q.  In Irvine, you've never had a roommate.

8          Have you ever had anyone else that lived in the

9  Irvine house?

10    A.  Well, you mentioned in 2016.  Right?

11    Q.  Okay.  So -- Well, from 2103 to 2016 --

12    A.  When I purchased the place in 2016, I didn't

13  have a roommate.

14    Q.  So 2016 no roommate.

15         But have you had roommates at the Rockefeller

16  house?

17    A.  Now I do, which is my sister and her son.

18    Q.  And when did your sister and son -- her son

19  move in?

20    A.  They fully moved in December of 2018.  That's

21  when, you know, my sister actually fully moved.

22         She kind of started moving slowly in the

23  beginning of 2017, and then that's when I did a lease

24  with her.

25         And then her and her roommate, I guess they

1  solved -- resolved the issues they had so then she

2  continued living in -- it's in the same community,

3  actually.  So she stayed in, you know, the place she was

4  living in, but just moved some of her valuables at my

5  place and some of her son's furniture.

6        And then when the issue -- when my sister and

7  her roommate issue started raising again, then she's

8  like, I'm just going to fully move in with you, which

9  was in the summer of 2018.

10     Q.  Okay.  Okay.  That's helpful.

11        And have you ever signed a lease for any other

12  apartments while you -- between 2013 and today?

13     A.  Yeah.  I did sign a lease to help my friend who

14  is a Canadian citizenship.  He wanted to get an

15  apartment in Santa Monica that we can both use as an

16  office, and then he needed someone to cosign for him.

17        And then I cosigned for him to be able to like

18  give him the apartment.  And also I've been able to use

19  the guest bedroom in the apartment for any purposes of

20  like, you know, from -- just tired from working, and I

21  can just like crash in there instead of driving back,

22  you know, maybe sometimes two hours of traffic.

23     Q.  All right.  Driving back -- driving back to

24  where?

25     A.  To our house.

Case 8:22-bk-11605-TA   Doc 153   Filed 03/23/23   Entered 03/23/23 20:22:36   Desc
re BASSEM VICTOR EL MALAKH   Main Document      Page 306 of 788
BASSEM MALLAKH on 03-15-2023

Job 2299A
Page 10

1          Q.   And the house you're referring to is the

2     Rockefeller house?

3          A.   Yeah.  My house.  My own house.

4          Q.   When did you sign the lease for the Santa

5     Monica apartment?

6          A.   It was in November of 2016.

7          Q.   Okay.  November of 2016.

8               So -- so you always lived in the Rockefeller

9     house.

10              How many nights did you normally sleep there?

11         A.   Most of the week.  You know, I would be working

12    between Santa Monica and Irvine.  It just depends on the

13    week.  Some weeks I would just be in like, you know,

14    Irvine for the whole week.  Some weeks I would work in

15    Santa Monica a few days, and then, you know, some weeks

16    I would just work, you know, maybe Monday to Thursday,

17    and I'll just go back to my house on the weekends.

18              It was really all depending on the traffic.

19    You know, if there was no traffic when I finished work,

20    I'd go back home.  If there was traffic, then I would

21    just like crash and I go the next morning.

22         Q.   That makes sense, yeah.  The traffic.

23              What is it, the 405 that you --

24         A.   If you're familiar with the LA and Orange

25    County traffic, it gets really bad.  If you have the

1   same work opportunity and you can have a place to crash

2   if you're tired so you don't have to drive in the

3   traffic and also saving some of the gas costs.

4              (Reporter clarifies.)

5   BY MR. MILLER:

6        Q.  So do you still use the apartment in Santa

7   Monica as a work office?

8        A.  You know, as a matter of fact, my roommate, he

9   told me that, you know, he's not able to like stay in

10  the apartment anymore and if I can just like help him

11  move all his stuff out.

12             And I actually moved all his stuff out and, you

13  know, the apartment's not even there anymore.

14       Q.  I'm sorry.  What do you mean the apartment is

15  not even there anymore?

16       A.  I'm saying when I told my roommate that I

17  wouldn't be able to like, you know, continue working on

18  this like business venture that we were working

19  together, and I said, you know, like "Hey, I'm going to

20  tell the leasing office that I'm" -- "I'm" -- you know,

21  "I'm going to just like leave."  You know, I want to

22  basically leave the -- take my lease off, you know, and

23  it will be just all his responsibility.

24             And he said, "Yeah, that's fine.  I'll take

25  care of the responsibility," you know, "by myself," you

1   know, since I already had to cosign on his behalf, you

2   know.

3          And then, you know, he said, "Yeah, I'm just

4   going to," you know, "keep the apartment myself under,"

5   you know, his name.

6          And then -- and then at one point he's like,

7   you know, "Hey, like I have to go check on my family in

8   Dubai.  Would you be able to maybe go," you know, "check

9   on some of my mail," or, you know, sometimes he would

10  say like, you know, "water my plants" or whatever.

11         And then at one point he says like, you know,

12  "Hey, I'm just like maybe just busy with my business in

13  Dubai, would you be able to just like go ahead and just

14  like" -- you know, "just take all my stuff to a storage

15  unit and move them or tell the leasing office that I'm

16  not able to come to LA myself to," you know, "finish

17  this apartment.  So can you just help me with that," and

18  I did that for him.

19         I'm sorry.  Was that your question?

20     Q.  When was it that you moved the remaining

21  furniture out of the apartment?

22     A.  Like mine or his?

23     Q.  Well, sure.  When did you move your furniture

24  out?

25     A.  So I didn't really have furniture.  I just had

1   some like clothing, and I had just like my tennis

2   rackets, and then, you know, just my laptop, which is

3   not like -- you know, not really a furniture.

4          But then he had like, you know, his beds and,

5   you know, his couch and TV and, you know, a bunch of

6   stuff.  So I had to help him like, you know, move that

7   stuff.

8       Q.  And when did you help him move that stuff out

9   of the apartment?

10      A.  I did that in January of, you know, this year.

11      Q.  So in January 2023?

12      A.  Yeah.

13      Q.  But your friend -- And when did you -- is the

14   lease still operative?

15      A.  No, it's gone.  It's cancelled now.

16      Q.  When was the lease cancelled?

17      A.  I have to check with him.  You know, I'm not

18   sure.  I mean I haven't, obviously, been, you know,

19   following what he's been doing with the apartment since

20   I -- I just didn't continue that business venture

21   anymore.

22      Q.  And when did you communicate with him that you

23   weren't going to be continuing with the business

24   venture?

25      A.  It was in April of 2021.

1        Q.  Okay.  Did you continue to use the prop- -- use

2   the Santa Monica house after April 2021?

3        A.  No.  I would just like -- you know, just go to

4   meet him.  Like, you know, we're still also friends,

5   but, you know, a side interest, the business we were --

6   we're friends, you know, so I would sometimes go hang

7   out with him or go bike or go hang out at the beach and

8   just hang out in LA.

9            And then, again, sometimes if I'm tired, I'll

10  just crash in the guest bedroom or just drive back to my

11  house.

12       Q.  So in 2022 you would sometimes stay at the

13  Santa Monica apartment?

14       A.  Only when he's there and stuff and just hang

15  out together.

16       Q.  And how frequently would you say that you spent

17  time at the Santa Monica apartment --

18       A.  Well, I --

19       Q.  -- in 2022?

20       A.  In 2022, I would just go visit him.  Sometimes

21  I'll see him once a month.  You know, sometimes I'll see

22  him, you know, every two weeks.

23       Q.  But you lived at his apartment?

24       A.  Yeah.  It's been his apartment since Day One.

25  I just helped him as a friend to cosign since he's not a

1    U.S. resident and didn't have any credit history here to

2    be able to get an apartment on his own.  So just as a

3    friend, I just help him cosign.

4         Q.  So did you -- was that ever your residence?

5         A.  No.  Was never really my residence.  My

6    residence has always been the same.

7         Q.  Did you ever pay the rent at the Santa Monica

8    apartment?

9         A.  Yeah.  I was paying, you know, like a small

10   contribution from the amount while we were in that, you

11   know, just business.

12            And then I stopped, you know, paying, but I

13   obviously told him I'm not able to continue this

14   business anymore.

15            It was a start-up.

16        Q.  Are there any -- are there any other apartments

17   or houses where you regularly sleep?

18        A.  No.  Just my house.

19        Q.  Do you have any girlfriends or boyfriends or

20   anything?  A significant other?

21        A.  I'm currently seeing no one.

22            When I had a girlfriend, I would have her, you

23   know, just come to my place or I would go to her place.

24   Like -- it was not like -- I wasn't living at my

25   girlfriend's house.  I would just mainly be spending

1   sometime with each other.

2       Q.  Yeah, understood.

3           Did you use movers -- did you use a moving

4   service when you helped move the furniture out of your

5   friend's apartment?

6       A.  No, I just did it with, you know, like a friend

7   of mine, because he didn't really have much stuff.

8           And I just literally -- I asked him, you know,

9   "Do you need the couch?  Do you need the table?"

10          He's like "Just dump all them in the street and

11  put 'Free couch,' 'Free table'" for anybody that could

12  use them.

13      Q.  Okay.  So did you move things into a storage

14  unit or leave them on the street?

15      A.  No.  I literally just took -- he says, "You can

16  have my TV."  He says, "You can have" like, you know,

17  some kitchen stuff, some blender.  Some -- it was

18  just -- he just wanted to kind of -- he didn't think

19  that his furniture had any value.

20          He's like "Yeah, just dump them," you know, the

21  things I didn't want to take, "or give it to a friend."

22          Or I actually called some friends.  I said,

23  "Hey, do you guys want some extra towels," you know,

24  "extra bathroom," you know, "stuff," you know.

25      Q.  And you mentioned you're in Egypt today.  Do

1   you frequently -- do you stay in Egypt?

2       A.   I haven't actually been to Egypt since, you

3   know, one of my cousins weddings in 2016.  So it's been

4   awhile.

5           I was supposed to go in early 2020, but then

6   COVID happened, and then it just kind of got really

7   pushed, you know.

8       Q.   But -- and how long have you been in Egypt --

9   Sorry.

10          So you have -- this is the first time you've

11  been in Egypt since 2016?

12      A.   Yeah.  First time since 2016.

13      Q.   And when did you -- when did you first arrive

14  in Egypt?

15      A.   I came -- was it last Thursday, I think.  I

16  have to check on my boarding pass.  I took a picture of

17  it.  It's on my phone somewhere.

18      Q.   About last Thursday though?

19      A.   Yeah.  I can just check on my boarding pass,

20  see what dates, I think.

21      Q.   Yeah.  So --

22      A.   It was actually my parents were visiting me,

23  and -- in California, and then when they were leaving

24  back, you know, I said, "Well, let me come back with you

25  guys."  Because I actually have to also, you know, have

1   some meetings in Egypt, you know, some work-related

2   meetings.

3        And they said "Yeah, maybe we can all go on the

4   same plane."

5        Q.  What kind of work-related meetings?

6        A.  Just meeting with some software companies just

7   to talk about some opportunities, like some job

8   opportunities in the U.S., between the U.S. and Egypt.

9        Q.  What would be the nature of the job

10  opportunities?

11       What type of jobs would they be?

12       A.  It would be like me managing a -- a software

13  service.  You know, it's almost kind of like a bridge

14  between the two countries, and I would be managing

15  the U.S. operation and trying to sell the software in

16  the U.S.

17       Q.  Okay.  And where would your work be conducted

18  for this job?

19       A.  Yeah, in Orange County.  In Irvine.

20       Q.  Yeah.  That's Orange County.

21       Right?

22       A.  Because I know in Florida you guys also have

23  Orange County.  So I'm not sure if you're familiar with

24  the one here, the one in California.

25       Q.  Okay.  Yeah.  Yeah.

```
 1                So I'm based in California.

 2        A.   Okay.  Great.

 3        Q.   Yeah.  So I'm based up in Pasadena, in LA.

 4        A.   That's a nice area.

 5        Q.   Yeah.  Some days.  It's cold right now.

 6        A.   Yeah.  It's raining; I saw that.

 7                It's a very family area.

 8        Q.   Yeah.

 9        A.   Very clean.

10        Q.   So how many nights on average would you say you

11   sleep at the Rockefeller property?

12        A.   I mean like maybe 28 days a month, you know.

13        Q.   Yeah.  Okay.

14                So you -- so where -- who's responsible for

15   the -- paying the utility bills at the Rockefeller

16   property?

17        A.   The bills on Rockefeller?  What about it?

18        Q.   So who pays the bills at the Rockefeller

19   property?

20        A.   I -- I do, between my sister and I.

21        Q.   And so you live in the Rockefeller property

22   with your sister.

23                How many bedrooms does the Rockefeller property

24   have?

25        A.   Three bedrooms.
```

1       Q.   And is it you have a bedroom, your sister has a

2   bedroom, and her son has a bedroom?

3       A.   Yes.

4       Q.   And who actually transmits payment to the

5   utility companies?  Is it you, and your sister gives you

6   money?  Or how does that process work?

7       A.   Yeah, I pay -- I pay all the utilities.

8            So sometimes, you know, my sister, will, you

9   know, give me like from the rent I'll be able be to pay

10  some of the -- the bills.

11           Sometimes I'll give her cash.  You know, due to

12  some of my banking issues, you know, because of the

13  case, I'll give her cash and, you know, it will pay the

14  bill.

15           The bill is still under my name.

16      Q.   So the bill is under your name --

17      A.   Uh-huh.

18      Q.   -- then you're always the one who sends the

19  payment.

20           Do you use auto payment, or what's your usual

21  method?

22      A.   Well, you know, so my sister pays obviously the

23  rent, and I pay the utilities from the rent.

24      Q.   So do you usually send a check, for instance,

25  for your gas bill?  Do you pay a gas bill?

1        A.  It's an auto pay.  It's an auto pay.

2        Q.  Yeah.  And it comes from one of your bank

3    accounts?

4        A.  It comes from -- Well, it comes from my --

5    my -- Well, I have the issue with the bankruptcy.  I

6    don't do bank accounts anymore.

7        MS. AFARI:  Let me just interject here because if

8    you're not sure of the answer, we can look it up and

9    provide that answer to Mr. Miller.

10        THE WITNESS:  Yeah, sure.

11    BY MR. MILLER:

12        Q.  Yeah, certainly.  If you're not sure, please

13    feel free to say that you're not sure.

14        MS. AFARI:  Yeah.  If you're not sure about an

15    answer, don't, like, guess.

16             Just say "I'm not sure," and we can confirm

17    that information.

18             Because Mr. Miller can provide us with his list

19    of the questions arising from this deposition and we can

20    provide those responses to him.

21             Okay?

22        THE WITNESS:  Oh, yeah.  Sure.

23    BY MR. MILLER:

24        Q.  So your typical bill usually, it comes out of

25    her -- your accounts?

1      A.   Yes.

2           I mean I can actually just, you know, get back

3   with you just exactly which payment is going on which

4   bill and then, you know, I'll get that to you.

5      Q.   Do you have any security cameras at the

6   Rockefeller property?

7      A.   I have a Ring camera.

8      Q.   Ring camera.

9           Can you tell me, what's a Ring camera?

10     A.   It's a camera that, you know, allows you to see

11  who comes to the door.  If someone like knocks or

12  someone delivers the package, it has as sensor.

13          Because in the past I had some issues with

14  people stealing my Amazon packages, and that's why I got

15  the, you know, Ring camera so I could just see like --

16  you know, see who comes and sometimes steals the

17  packages, and then I can report it to the association.

18  So just for security purposes.

19          But, yeah, I have a Ring camera for that

20  reason.

21     Q.   Did you purchase the Ring camera system?

22     A.   It was actually a Christmas gift from my --

23  from my father.

24     Q.   Do you remember when you received it?

25     A.   I think it was in 2017.  2017.  Christmas of

1   2017.  It's been awhile.

2        Q.  Yeah.  Yeah.

3            About 2017, 2016, 2018, something along those

4   lines?

5        A.  Yeah, I think so.

6        Q.  Where is the Ring camera installed?

7        A.  It's at the front of the door.

8        Q.  How many doors do you have at the Rockefeller

9   property to enter the townhouse?

10       A.  I have the front door, and I have the garage.

11       Q.  How do you normally enter the property?

12       A.  Usually from the garage.

13       Q.  Okay.  How -- Does the Ring camera store

14   footage or --

15       A.  Yeah.

16       Q.  -- for a period of days?

17       A.  It does, yeah.

18       Q.  How many days does it store footage for?

19       A.  60 days.  It's 60 days.

20           It's an Amazon cloud type of a plan, you know.

21   And if you wanted to get something older, you -- you'd

22   have to call them.  I've done that before for some other

23   issue with a, you know, package that was stolen.  Then

24   they said like they don't store anything over 60 days.

25           And then I just learned how to save them

1    myself.  You know, anytime I have like a video of

2    something that, you know, I want to save, I save them on

3    my phone.

4         Q.  Do you have any Ring camera footage saved for

5    the past year?

6         A.  I have -- Yeah.  I can look on my phone.  You

7    know, I have like, you know, a bunch that I saved.

8    Yeah.

9         Q.  Okay.  Yeah.

10             And, of course, I don't expect you to remember

11   every single piece of footage you have saved on your

12   phone.

13        A.  No.  No.  Yeah.

14             You know, I have a bunch -- I have a bunch of

15   them, you know.

16        Q.  Okay.  So -- so you mentioned that you use

17   Amazon.

18             Do your Amazon packages normally get delivered

19   to the Rockefeller house?

20        A.  Yes.

21        Q.  Any other places where you receive Amazon

22   purchases?

23        A.  No.

24        Q.  Okay.  And what about, do you use Uber Eats or

25   any of the food delivery services?

Case 8:22-bk-11605-TA   Doc 153   Filed 03/23/23   Entered 03/23/23 20:22:36   Desc
re BASSEM VICTOR ELMALLAKH   Main Document      Page 321 of 788
BASSEM MALLAKH on 03-15-2023

Job 2299A
Page 25

1    A.  Yeah, I do.

2    Q.  Which -- do you have one that you regularly

3  use?  Uber Eats?  Or Grubhub?  Or --

4    A.  I use -- I use Uber Eats, yeah.

5    Q.  And where do you normally get your Uber Eats

6  deliveries?

7    A.  At the Rockefeller house.

8    Q.  Do you remember being involved in some

9  proceedings in Florida a couple of years ago relating to

10  this case?

11    A.  Like what kind of proceedings?

12    MS. AFARI:  I'm sorry.  I just want to interject.

13    MR. MILLER:  Yeah.

14    MS. AFARI:  Please clarify that for the witness.

15  Because in these proceedings, you mean the bankruptcy

16  proceedings?

17        So can you clarify that.

18    MR. MILLER:  Yeah.  Certainly, yeah.

19  BY MR. MILLER:

20    Q.  So there was -- there was a case filed by

21  Belgium Investments in Florida.  I believe it was in

22  2019.

23        In 2021, you filed a motion to have a default

24  judgment vacated.

25        Do you remember that?

1    A.  Yes.

2    Q.  Do you remember giving evidence in support of

3  that motion?

4    A.  I'm not -- I don't remember much, you know.

5  Can you maybe remind me of what evidence you're

6  referring to?

7    Q.  Well, first, do you remember submitting a

8  written declaration?

9    A.  Yes.

10    Q.  Okay.  Do you remember where -- do you remember

11  where you said that you were residing in that

12  declaration?

13    A.  Do you have a copy of the declaration that I

14  can see?  I mean it's been awhile.

15    Q.  Sure.  Sure.  Sure.

16    So right now I don't have a copy of the

17  declaration from the Florida case, but do you remember

18  that there was also a motion in a case in California to

19  set aside a default judgment?

20    A.  Yes.

21    Q.  Okay.  And do you remember filing a declaration

22  in that case as well?

23    A.  Yes.

24    Q.  Okay.  So at paragraph three of the declaration

25  it stated, "I've been residing full-time at my residence

1    in Santa Monica since November 21st, 2016."

2        A.   Uh-huh.

3        Q.   Do you remember writing that statement?

4        A.   Yeah.  That was my -- it's my civil attorney

5    advice that he said, you know, like we need to write

6    this declaration.

7        Q.   Okay.  And then at paragraph four it said, "I

8    have not occupied the real property located at 116

9    Rockefeller since November 21st, 2016."

10       A.   Yes.

11       Q.   Do you remember writing that?

12       A.   Yeah.  I remember.

13       Q.   Can you explain why you wrote that at the time?

14       A.   Well, because I think they were just a bit

15   confused.  Because the -- you know, the server who I

16   guess was trying to serve me for this case, he was at

17   the Irvine house trying to serve me on a specific day,

18   and I wasn't actually at the house on that specific day.

19            And I told -- and then when we talked to the

20   judge, I was -- the server was on the Zoom video as

21   well, and he says "Oh, yeah.  I did serve you on that

22   day.  You were at the house."

23            And I said, "I wasn't," and I showed them the

24   proof, and nobody believed me.

25            But that doesn't mean that, you know, my house

1  in Irvine is not my residence.  It is my residence, but

2  on that specific day I wasn't there, on the day when the

3  person claimed he served me.

4      Q.  You wrote in paragraph seven, "I had no idea

5  that the judgment creditor had filed an application for

6  an entry of sister state judgment.  I had never seen the

7  documents until I hired counsel to represent me, and set

8  the sister state judgment aside."

9          Do you remember writing that?

10     A.  Yeah, actually.  Because I was never served in

11 person with the case or the judgment.  I was never

12 served in person.

13     Q.  Were those documents ever delivered to the

14 Rockefeller property?

15     A.  I never received it.

16     Q.  Okay.  Yes.  But do you know, were they ever

17 delivered to the Rockefeller property?

18     A.  I've never seen it.  I never received it.  I

19 have -- no, I've never seen it.  I have no idea.

20     Q.  You don't know whether they were delivered to

21 the Rockefeller property.  Okay.

22          Were you living at the Rockefeller property at

23 the time?

24     A.  Yes.

25     Q.  Okay.  Was anyone living with you at the

1   Rockefeller property in 2020?

2        A.   My sister.

3        Q.   She was your co-occupant at the time?

4        A.   She was what?

5        Q.   She was your co-occupant at the time?

6        A.   Yeah.   Roommate.   Co-occupant.

7        Q.   Okay.   Had she ever talked to you about

8   documents she had received in connection with any cases

9   against you?

10        A.   No.   Because she never received anything

11   herself.

12        Q.   She's told you that she's never received

13   anything?

14        A.   Yeah.   She told me she hasn't received

15   anything.

16             Because when the case happened, I asked her

17   "Have you received anything on my behalf?"

18             And she said "No, I haven't received anything."

19        Q.   Okay.   Okay.   So there have -- so you resided

20   at the Rockefeller property since you purchased it in

21   2013.

22             Correct?

23        A.   Yes.

24        Q.   And the only person who's also occupied the

25   Rockefeller property has been your sister and her son?

```
 1        A.  And her son.

 2        Q.  Let me check.

 3        A.  Do you mind if I get my bottle of water?  I

 4   just put it somewhere.

 5            Here.

 6        Q.  Yeah.  Sure.  Sure.

 7        A.  Never mind.  It is here.

 8            I just had a spicy soup.  I just needed some

 9   water.

10        Q.  Fair enough.  Fair enough.

11            What's the name of the type of bread, Egyptian

12   bread --

13        A.  It's just so heavy.  I've been drinking so much

14   water since I came here.  All the food is really spicy,

15   but it's really good though.

16        MR. MILLER:  I think that's about the list of the

17   questions I have --

18        THE WITNESS:  Okay.

19        MR. MILLER:  -- but if I could -- maybe we can take

20   about ten minutes, break, and then we can just confirm.

21        THE WITNESS:  Yeah.  Sure.

22        MS. AFARI:  That's fine.  Shall we all hold and be

23   on mute?

24            (A recess is taken.)

25        MR. MILLER:  Back on the record.
```

1   BY MR. MILLER:

2       Q.  Just a few more questions, Bassem.

3           If -- you don't mind if I call you "Bassem"?  I

4   feel like I'm going to brutalize "El Mallakh."

5       A.  Yeah, it's a long name.

6       Q.  I want to ask you a few questions about your

7   father because it may be that he may not need to give

8   evidence today, deposition evidence.

9       A.  Okay.  He was ready for the deposition.

10      Q.  Yeah.  Where was your father living in

11  September of 2022?

12      A.  September of 2022, he was in Egypt.

13          And then he came to visit us, I want to say,

14  like the first week of September or so.  Maybe the 9th

15  of September he came, and he stayed with us 'til the end

16  of September.

17          He usually come visit us like at least twice a

18  year.

19      Q.  Okay.  And where does he stay when he -- when

20  he comes and visits?

21      A.  He stays with me at my house.

22      Q.  Who's room does he stay in usually?

23      A.  I'm sorry?

24      Q.  Whose room does he usually stay in?

25      A.  So, usually, like my nephew go and sleep with

1    my sister, and they sleep in his room.

2        Q.  So you stay in your bedroom and your father

3    stays --

4        A.  I always stay in my bedroom, yeah.

5        Q.  Okay.  So I wanted to ask a bit about the

6    security camera footage from the Santa Monica apartment.

7            Well, first, do you know, does the Santa Monica

8    apartment have a security camera?

9        A.  No.  I don't think -- Yeah.  Like I don't

10   remember.

11           I know my roommate was also trying to get a

12   Ring camera, but he ended up not getting one.

13       Q.  So there's no Ring camera at the Santa Monica

14   apartment?

15       A.  Yeah.  No, he didn't get one.

16       Q.  Yeah.  Do you know, are there any other

17   security cameras around the apartment in the common

18   areas, perhaps?

19       A.  In Santa Monica?

20       Q.  Yeah.

21       A.  Like in the apartment building?

22       Q.  Yes.

23       A.  I'm not -- I'm sure they have some, you know.

24   I'm not sure.  I don't really pay attention to the

25   cameras.

1          Q.  Yeah.  Just to be clear, I think your answer is

2     that you're not sure whether they have some?

3          A.  Yeah.  Really -- or I'm not even sure if they

4     really work, you know.

5          Q.  Okay.  You're not sure if you have them, and

6     even if they did, you're not sure if they work?

7          A.  Right.

8          Q.  All right.  Do you expect to continue living in

9     the Rockefeller property?

10         A.  On what?  Sorry.

11         Q.  Do you expect that you'll continue living in

12    the Rockefeller property?

13         A.  Yes.

14         Q.  Why do you live -- why do you live in Irvine if

15    your business is in Los Angeles?

16         A.  Well, my business was never in Los Angeles, but

17    the reason why we picked Los Angeles is because we

18    wanted to hire or work with, you know, tech savvy

19    talent, which is hard to find in Orange County.

20             You know, usually people in the technology

21    field are mainly in LA.  It's actually called the

22    "Silicon Beach," which is Venice, Santa Monica, Marina

23    del Rey.  All those areas that you find people that

24    you're looking to work with.

25         Q.  So the reason why you chose to -- the reason

1   why you and your partner -- what's your partner's name?

2       A.   His name is Mohamed.

3       Q.   Mohamed Roston.  Correct?

4       A.   Yeah.

5       Q.   So you chose to rent the Santa Monica apartment

6   because you wanted to be close to people who work in the

7   technology industry?

8       A.   Right.

9            That was actually his idea.  Because he also

10  have a lot of, you know, like people that he worked with

11  in the past in the LA area.  So he wanted to also be

12  close.

13           It was mainly his idea about like being close

14  to the talent, you know, instead of going up to Silicone

15  Valley to find talent of people you want to work with.

16      Q.   What type of work do you expect -- Are you

17  applying for any jobs lately?

18      A.   Well, you know, what I'm focusing on now is

19  the -- just like -- just, you know, interviewing with,

20  you know, some software companies as well out in Egypt,

21  because Egypt is also very large in software arena, and

22  that's where I'm focusing on now.

23           And just get back in, you know, in this

24  business.

25      Q.   So are you still -- do you -- what kind of --

1    you mentioned your -- the one software company that

2    you're planning to interview with during this trip.

3         A.  Yeah.

4              And I also have some other, you know, like

5    companies I'm going to be meeting with to discuss

6    different op- -- I'm just trying to see my options, you

7    know, before I decide on one company.

8         Q.  Would you be -- would those positions require

9    you to spend time in Egypt?

10        A.  Maybe at least like two visits a year in Egypt.

11        Q.  And would they also be technology companies?

12        A.  Right.

13        Q.  So would you have a similar motivation to be

14   near the technology center in Southern California?

15        A.  Well, you know, like recently that has changed

16   in the last like, you know, three years.  Actually,

17   since COVID, you know, when everybody obviously started

18   working at home.

19             So everybody moved away from the cities to go

20   work at -- you know, at home in the suburbs, you know.

21             Also a lot of my friends, they used to live in

22   "San Fran," they moved out of -- they moved to Austin,

23   Texas and Dallas and Kansas.  A lot of people moved to

24   Miami.  Now we live in a very work environment, you

25   know, so I guess you can find people everywhere, you

 1  know.

 2          And I've actually been meeting tech people in

 3  Irvine.

 4          Irvine is actually trying to get -- to be the

 5  kind of a tech bubble as well, which is very

 6  interesting.

 7      Q.  And did you prepare the lease agreement between

 8  you and your sister?

 9      A.  Yes.

10      Q.  And have there been any changes to the lease

11  agreement?

12      A.  Just the price changed from 3,000 to 4,000.

13      Q.  When did the price change from 3,000 to 4,000?

14      A.  I believe it was in mid of 2021.  I -- I'll

15  have to check exactly the day and get back to you.

16          But it was mainly because of just the

17  inflation, everything was getting more expensive, you

18  know.

19      Q.  You think it was during middle of 2021?

20      A.  I would actually have to just check, exactly.

21          You know, it's my sister so it's kind of like

22  it was more of an easy kind of a change.

23          It's like, you know, we -- sometimes, you know,

24  we make some kind of an agreement.  We don't have to go

25  and put it in writing with her, you know, since she's

1    not like a stranger.

2         Q.  Why did you sign the lease agreement?

3         A.  Well, so, again, you know, just to process.  So

4    she is my sister, which, obviously, you know, gives her

5    different advantages and things.

6              But at the same time, also, you know, like we

7    grew up like as siblings knowing that we also have to do

8    things the right way in every aspect, you know, and she

9    was also comfortable about having, you know, a lease in

10   place.

11        Q.  Uh-huh.  And when she moved in, were you also

12   residing in the Rockefeller property?

13        A.  Yes.

14        Q.  So you helped her move in?

15        A.  I helped her move in, yeah.  I had like back

16   pain for a week.

17        Q.  Yeah.  I have sisters as well --

18              (Simultaneous speaking.)

19              (Reporter clarifies.)

20        MR. MILLER:  I think that's all the questions I

21   have for you, Mr. El Mallakh.

22              I thank you for taking the time today.

23              I would like to talk -- speak with your father

24   for a bit.

25        THE WITNESS:  Yeah.  Yeah.  He'll be more than



 1   happy to talk with you as well.

 2        THE REPORTER:  Off the record?

 3        MR. MILLER:  Off the record.

 4             (The proceedings concluded at 12:24 p.m.)

 5                              ***

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 8:22-bk-11605-TA   Doc 153   Filed 03/23/23   Entered 03/23/23 20:22:36   Desc
re BASSEM VICTOR EL MALLAKH   Main Document   Page 335 of 788
BASSEM MALLAKH on 03-15-2023

Job 2299A
Page 39

1             **DECLARATION UNDER PENALTY OF PERJURY**

2

3      I, Bassem El Mallakh, do hereby certify under

4 penalty of perjury that I have reviewed the foregoing

5 transcript of my deposition taken on March 15, 2023 that

6 I have made such corrections as appear noted herein in

7 ink; that my testimony as contained herein, as

8 corrected, is true and correct.

9

10      DATED this _____ day of _____,

11 20____, at _____, _____.

12

13

14

15

16                 _____

17                      **Bassem El Mallakh**

18

19

20

21

22

23

24

25

1              **ERRATA SHEET**

2    **Printed Name**_____**Date**_____

3    **Signature**_____

4    **Page/Line   Correction              Reason**

5    _____    _____    _____

6    _____    _____    _____

7    _____    _____    _____

8    _____    _____    _____

9    _____    _____    _____

10   _____    _____    _____

11   _____    _____    _____

12   _____    _____    _____

13   _____    _____    _____

14   _____    _____    _____

15   _____    _____    _____

16   _____    _____    _____

17   _____    _____    _____

18   _____    _____    _____

19   _____    _____    _____

20   _____    _____    _____

21   _____    _____    _____

22   _____    _____    _____

23   _____    _____    _____

24   _____    _____    _____

25   _____    _____    _____

Case 8:22-bk-11605-TA   Doc 153   Filed 03/23/23   Entered 03/23/23 20:22:36   Desc
re BASSEM VICTOR ELMALLAKH   Main Document   Page 337 of 788
BASSEM MALLAKH on 03-15-2023

Job 2299A
Page 41

1          I, LORI S. TURNER, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were administered an oath; that a record

7    of the proceedings was made by me using machine

8    shorthand which was thereafter transcribed under my

9    direction; that the foregoing transcript is a true

10   record of the testimony given.

11         Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [   ] was [X] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   any attorney or any party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:  March 19th, 2023

22   _____

23                    LORI S. TURNER

24                    CSR No. 9102

25

**-**

**-EXAMINATION-** 5:9

**1**

**116** 7:23 27:8

**11:19** 5:1

**12:24** 38:4

**15** 5:1

**2**

**2013** 8:2 9:12 29:21

**2016** 7:3,19,24 8:10,11, 12,14 10:6,7 17:3,11,12 23:3 27:1,9

**2017** 8:23 22:25 23:1,3

**2018** 8:20 9:9 23:3

**2019** 25:22

**2020** 17:5 29:1

**2021** 13:25 14:2 25:23 36:14,19

**2022** 14:12,19,20 31:11, 12

**2023** 5:1 13:11

**2103** 8:11

**21st** 27:1,9

**28** 19:12

**3**

**3,000** 36:12,13

**4**

**4,000** 36:12,13

**405** 10:23

**6**

**60** 23:19,24

**9**

**9th** 31:14

**A**

**A.M.** 5:1

**able** 9:17,18 11:9,17 12:8,13,16 15:2,13 20:9

**about** 7:3 17:18 18:7 19:17 21:14 23:3 24:24 29:7 30:16,20 31:6 32:5 34:13 37:9

**accounts** 21:3,6,25

**accurately** 6:15

**actually** 8:21 9:3 11:12 16:22 17:2,22,25 20:4 22:2,22 27:18 28:10 33:21 34:9 35:16 36:2, 4,20

**ADMINISTERED** 5:5

**advantages** 37:5

**advice** 27:5

**AFARI** 7:5 21:7,14 25:12,14 30:22

**after** 14:2

**again** 9:7 14:9 37:3

**against** 29:9

**ago** 25:9

**agreement** 36:7,11,24 37:2

**ahead** 7:16 12:13

**allows** 22:10

**almost** 18:13

**along** 23:3

**already** 12:1

**also** 9:18 11:3 14:4 17:25 18:22 26:18 29:24 32:11 34:9,11,21 35:4,11,21 37:6,7,9,11

**always** 7:4,20 8:3 10:8 15:6 20:18 32:4

**Amazon** 22:14 23:20 24:17,18,21

**amount** 15:10

**Angeles** 33:15,16,17

**answer** 6:15 7:16 21:8, 9,15 33:1

**any** 6:11,23,24 7:11 8:4 9:11,19 15:1,16,19 16:19 22:5 24:4,21,25 29:8 32:16 34:17 36:10

**anybody** 16:11

**anymore** 11:10,13,15 13:21 15:14 21:6

**anyone** 8:8 28:25

**anything** 6:19 15:20 23:24 29:10,13,15,17, 18

**anytime** 24:1

**apartment** 9:15,18,19 10:5 11:6,10,14 12:4, 17,21 13:9,19 14:13,17, 23,24 15:2,8 16:5 32:6, 8,14,17,21 34:5

**apartment's** 11:13

**apartments** 9:12 15:16

**application** 28:5

**applying** 34:17

**April** 13:25 14:2

**are** 5:21 6:1,21 15:16 32:16 33:21 34:16,25

**area** 19:4,7 34:11

**areas** 32:18 33:23

**arena** 34:21

**arising** 21:19

**around** 32:17

**arrive** 17:13

**aside** 26:19 28:8

**ask** 6:12,13 31:6 32:5

**asked** 16:8 29:16

**asking** 6:15

**aspect** 37:8

**association** 22:17

**attention** 32:24

**attorney** 27:4

**Austin** 35:22

**auto** 20:20 21:1

**average** 19:10

**away** 35:19

**awhile** 17:4 23:1 26:14

**B**

**back** 9:21,23 10:17,20 14:10 17:24 22:2 30:25 34:23 36:15 37:15

**bad** 10:25

**bank** 21:2,6

**banking** 20:12

**bankruptcy** 21:5 25:15

**based** 19:1,3

**basically** 11:22

**Bassem** 5:4 31:2,3

**bathroom** 16:24

**beach** 14:7 33:22

**because** 7:10 16:7 17:25 18:22 20:12 21:7, 18 22:13 25:15 27:14, 15 28:10 29:10,16 31:7 33:17 34:6,9,21 36:16

**bedroom** 9:19 14:10 20:1,2 32:2,4

**bedrooms** 19:23,25

**beds** 13:4

**been** 5:5,14 6:8 7:20 9:18 13:18,19 14:24 15:6 17:2,3,8,11 23:1 26:14,25 29:25 30:13 36:2,10

**before** 6:8 7:12 23:22 35:7

**beginning** 8:23

**behalf** 12:1 29:17

**being** 25:8 34:13

**Belgium** 25:21

**believe** 25:21 36:14

**believed** 27:24

**between** 9:12 10:12 18:8,14 19:20 36:7

**bike** 14:7

**bill** 20:14,15,16,25 21:24 22:4

**bills** 19:15,17,18 20:10

**bit** 7:2 27:14 32:5 37:24

**blender** 16:17

**boarding** 17:16,19

**both** 9:15

**bottle** 30:3

**boyfriends** 15:19

**bread** 30:11,12

**break** 6:18 30:20

**bridge** 18:13

**brutalize** 31:4

**bubble** 36:5

**building** 32:21

**bunch** 13:5 24:7,14

**business** 11:18 12:12 13:20,23 14:5 15:11,14 33:15,16 34:24

**busy** 12:12

**C**

**Cairo** 5:25

**California** 17:23 18:24 19:1 26:18 35:14

**call** 23:22 31:3

**called** 16:22 33:21

**came** 17:15 30:14 31:13,15

**camera** 22:7,8,9,10,15, 19,21 23:6,13 24:4

32:6,8,12,13

**cameras** 22:5 32:17,25

**can** 6:6,15,19 7:16,18 9:15,21 11:1,10 12:17 16:15,16 17:19 18:3 21:8,16,18,19 22:2,9,17 24:6 25:17 26:5,14 27:13 30:19,20 35:25

**Canadian** 9:14

**cancelled** 13:15,16

**care** 6:23 11:25

**case** 7:12,15 20:13 25:10,20 26:17,18,22 27:16 28:11 29:16

**cases** 29:8

**cash** 20:11,13

**center** 35:14

**certainly** 21:12 25:18

**change** 36:13,22

**changed** 35:15 36:12

**changes** 36:10

**check** 12:7,8 13:17 17:16,19 20:24 30:2 36:15,20

**chemical** 6:25

**chose** 33:25 34:5

**Christmas** 22:22,25

**cities** 35:19

**citizenship** 9:14

**civil** 27:4

**claimed** 28:3

**clarified** 6:20

**clarifies** 11:4 37:19

**clarify** 7:6 25:14,17

**clean** 19:9

**clear** 33:1

**close** 34:6,12,13

**clothing** 13:1

**cloud** 23:20

**co-occupant** 29:3,5,6

**cold** 19:5

**come** 12:16 15:23 17:24 31:17

**comes** 21:2,4,24 22:11, 16 31:20

**comfortable** 37:9

**common** 32:17

**communicate** 13:22

**community** 9:2

**companies** 18:6 20:5 34:20 35:5,11

**company** 35:1,7

**concluded** 38:4

**conducted** 18:17

**confirm** 21:16 30:20

**confused** 27:15

**connection** 29:8

**continue** 11:17 13:20 14:1 15:13 33:8,11

**continued** 9:2

**continuing** 13:23

**contribution** 15:10

**copy** 26:13,16

**correct** 5:16 29:22 34:3

**cosign** 9:16 12:1 14:25 15:3

**cosigned** 9:17

**costs** 11:3

**couch** 13:5 16:9,11

**could** 16:11 22:15 30:19

**counsel** 28:7

**countries** 18:14

**County** 10:25 18:19,20, 23 33:19

**couple** 25:9

**course** 24:10

**cousins** 17:3

**COVID** 17:6 35:17

**crash** 9:21 10:21 11:1 14:10

**credit** 15:1

**creditor** 28:5

**currently** 5:21 15:21

**D**

**Dallas** 35:23

**dates** 17:20

**day** 7:15 14:24 27:17, 18,22 28:2 36:15

**days** 10:15 19:5,12 23:16,18,19,24

**debtor** 7:14

**debtor's** 7:7,10,12,13

**December** 8:20

**decide** 35:7

**declaration** 26:8,12, 13,17,21,24 27:6

**default** 25:23 26:19

**del** 33:23

**delivered** 24:18 28:13, 17,20

**deliveries** 25:6

**delivers** 22:12

**delivery** 24:25

**depending** 10:18

**depends** 10:12

**deposition** 6:10 7:7 21:19 31:8,9

**depositions** 5:15 6:8

**determining** 7:13

**did** 7:3,19 8:1,4,18,23 9:13 10:4,10 12:18,23 13:8,10,13,22 14:1 15:4,7 16:3,6,13 17:13 22:21 27:21 33:6 36:7, 13 37:2

**didn't** 8:12 12:25 13:20 15:1 16:7,18,21 32:15

**different** 6:7 35:6 37:5

**discuss** 35:5

**doctors** 6:23

**documents** 28:7,13 29:8

**door** 22:11 23:7,10

**doors** 23:8

**drinking** 30:13

**drive** 11:2 14:10

**driving** 9:21,23

**drugs** 6:24

**Dubai** 12:8,13

**due** 20:11

**DULY** 5:5

**dump** 16:10,20

**during** 35:2 36:19

---

**E**

**early** 17:5

**easy** 36:22

**Eats** 24:24 25:3,4,5

**Egypt** 5:23,24 16:25 17:1,2,8,11,14 18:1,8 31:12 34:20,21 35:9,10

**Egyptian** 30:11

**El** 5:4,13 7:18 31:4 37:21

**else** 8:8

**end** 31:15

**ended** 32:12

**enough** 30:10

**enter** 23:9,11

**entry** 28:6

**environment** 35:24

**even** 11:13,15 33:3,6

**ever** 8:4,8 9:11 15:4,7

---

**28:13,16 29:7**

**every** 14:22 24:11 37:8

**everybody** 35:17,19

**everything** 36:17

**everywhere** 35:25

**evidence** 26:2,5 31:8

**exactly** 22:3 36:15,20

**EXAMINED** 5:6

**exemption** 7:8,11,14

**expect** 24:10 33:8,11 34:16

**expensive** 36:17

**explain** 27:13

**extra** 16:23,24

---

**F**

**facilitate** 6:19

**fact** 11:8

**Fair** 30:10

**familiar** 10:24 18:23

**family** 12:7 19:7

**father** 6:3 22:23 31:7, 10 32:2 37:23

**feel** 6:13 21:13 31:4

**feeling** 6:21

**field** 33:21

**filed** 7:12,15 25:20,23 28:5

**filing** 26:21

**find** 33:19,23 34:15 35:25

**fine** 6:20 11:24 30:22

**finish** 12:16

**finished** 10:19

**first** 7:2,3 17:10,12,13 26:7 31:14 32:7

**Florida** 18:22 25:9,21 26:17

---

**focusing** 34:18,22

**following** 13:19

**FOLLOWS** 5:7

**food** 24:25 30:14

**footage** 23:14,18 24:4, 11 32:6

**four** 27:7

**Fran** 35:22

**free** 6:13 16:11 21:13

**frequently** 14:16 17:1

**friend** 9:13 13:13 14:25 15:3 16:6,21

**friend's** 16:5

**friends** 14:4,6 16:22 35:21

**front** 23:7,10

**full-time** 26:25

**fully** 8:20,21 9:8

**furniture** 9:5 12:21,23, 25 13:3 16:4,19

---

**G**

**garage** 23:10,12

**gas** 11:3 20:25

**gift** 22:22

**girlfriend** 15:22

**girlfriend's** 15:25

**girlfriends** 15:19

**give** 9:18 16:21 20:9, 11,13 31:7

**gives** 20:5 37:4

**giving** 26:2

**good** 30:15

**Great** 19:2

**grew** 37:7

**ground** 6:9

**Grubhub** 25:3

**guess** 7:9 8:25 21:15

---

**27:16 35:25**

**guest** 9:19 14:10

**guys** 16:23 17:25 18:22

---

**H**

**hang** 14:6,7,8,14

**happened** 17:6 29:16

**happy** 38:1

**hard** 33:19

**he** 6:6 7:11 9:14,16 11:8,24 12:3,9,11 13:4 16:7,15,16,18 27:5,16, 21 28:3 31:7,9,12,13, 15,17,19,20,21,22,24 32:12,15 34:9,10,11

**He'll** 37:25

**he's** 6:5 11:9 12:6 13:19 14:14,25 16:10, 20

**hear** 6:6

**heavy** 30:13

**help** 9:13 11:10 12:17 13:6,8 15:3

**helped** 14:25 16:4 37:14,15

**helpful** 9:10

**her** 8:17,18,24,25 9:4,5, 7 15:22,23 20:2,11,13 21:25 29:16,25 30:1 36:25 37:4,14,15

**here** 5:12 15:1 18:24 21:7 30:5,7,14

**herself** 29:11

**Hey** 11:19 12:7,12 16:23

**him** 9:16,17,18 11:10 12:18 13:6,8,17,22 14:4,7,20,21,22,25 15:3,13 16:8 21:20

**hire** 33:18

**hired** 28:7

**his** 11:11,12,23 12:1,5,

22 13:4,5 14:23,24 15:2
16:19 21:18 32:1 34:2,
9,13

**history** 15:1

**hold** 30:22

**home** 10:20 35:18,20

**homestead** 7:7,10,14

**hours** 9:22

**house** 6:2 7:4,20,22,25
8:1,9,16 9:25 10:1,2,3,
9,17 14:2,11 15:18,25
24:19 25:7 27:17,18,22,
25 31:21

**houses** 15:17

---

**I**

**idea** 28:4,19 34:9,13

**industry** 34:7

**inflation** 36:17

**influence** 6:24

**information** 21:17

**installed** 23:6

**instance** 20:24

**instead** 9:21 34:14

**interest** 14:5

**interesting** 36:6

**interject** 21:7 25:12

**interview** 35:2

**interviewing** 34:19

**Investments** 25:21

**involved** 5:14 6:8 25:8

**Irvine** 7:4,23 8:6,7,9
10:12,14 18:19 27:17
28:1 33:14 36:3,4

**issue** 9:6,7 21:5 23:23

**issues** 6:11 9:1 20:12
22:13

---

**J**

**January** 13:10,11

**job** 18:7,9,18

**jobs** 18:11 34:17

**judge** 27:20

**judgment** 25:24 26:19
28:5,6,8,11

---

**K**

**Kansas** 35:23

**keep** 12:4

**kind** 8:22 16:18 17:6
18:5,13 25:11 34:25
36:5,21,22,24

**kitchen** 16:17

**knocks** 22:11

**know** 6:19 8:21 9:3,20,
22 10:11,13,15,16,19
11:8,9,13,17,19,20,21,
22,25 12:1,2,3,4,5,7,8,
9,10,11,14,16 13:2,3,4,
5,6,10,17,18 14:3,4,5,6,
21,22 15:9,11,12,23
16:6,8,16,20,23,24
17:3,7,24,25 18:1,13,22
19:12 20:8,9,11,12,13,
22 22:2,4,10,15,16
23:20,23 24:1,2,7,14,15
26:4 27:5,15,25 28:16,
20 32:7,11,16,23 33:4,
18,20 34:10,14,18,19,
20,23 35:4,7,15,16,17,
20,25 36:1,18,21,23,25
37:3,4,6,8,9

**knowing** 37:7

---

**L**

**LA** 10:24 12:16 14:8
19:3 33:21 34:11

**laptop** 13:2

**large** 34:21

**last** 17:15,18 35:16

**lately** 34:17

**learned** 23:25

**lease** 8:23 9:11,13 10:4
11:22 13:14,16 36:7,10
37:2,9

**leasing** 11:20 12:15

**least** 31:17 35:10

**leave** 11:21,22 16:14

**leaving** 17:23

**like** 6:18 7:2 9:8,17,20,
21 10:13,21 11:9,10,17,
18,19,21 12:6,7,10,11,
12,13,14,22 13:1,3,4,6
14:3,4 15:9,24 16:6,10,
16,20 18:7,12,13 19:12
20:9 21:15 22:11,15
23:24 24:1,7 25:11 27:5
31:4,14,17,25 32:9,21
34:10,13,19 35:4,10,15,
16 36:21,23 37:1,6,7,
15,23

**lines** 23:4

**list** 21:18 30:16

**literally** 16:8,15

**live** 19:21 33:14 35:21,
24

**lived** 7:4 8:4,8 10:8
14:23

**living** 7:11,14,20,24
9:2,4 15:24 28:22,25
31:10 33:8,11

**located** 5:22 27:8

**long** 17:8 31:5

**look** 21:8 24:6

**looking** 33:24

**Los** 33:15,16,17

**lot** 34:10 35:21,23

---

**M**

**mail** 12:9

**mainly** 15:25 33:21
34:13 36:16

**make** 36:24

**makes** 10:22

**Mallakh** 5:4,13 7:18
31:4 37:21

**managing** 18:12,14

**many** 10:10 19:10,23
23:8,18

**MARCH** 5:1

**Marina** 33:22

**matter** 7:11 11:8

**maybe** 9:22 10:16 12:8,
12 18:3 19:12 26:5
30:19 31:14 35:10

**me** 6:13 7:18 11:9 12:17
17:22,24 18:12 20:9
21:7 22:9 26:5 27:16,
17,24 28:3,7 29:14 30:2
31:21

**mean** 11:14 13:18
19:12 22:2 25:15 26:14
27:25

**meet** 14:4

**meeting** 18:6 35:5 36:2

**meetings** 18:1,2,5

**mentioned** 8:10 16:25
24:16 35:1

**method** 20:21

**Miami** 35:24

**mid** 36:14

**middle** 36:19

**Miller** 5:11 7:17 11:5
21:9,11,18,23 25:13,18,
19 30:16,19,25 31:1
37:20 38:3

**mind** 30:3,7 31:3

**mine** 12:22 16:7

**minutes** 30:20

**Mohamed** 34:2,3

**Monday** 10:16

**money** 20:6

**Monica** 9:15 10:5,12,15

---

11:7 14:2,13,17 15:7 27:1 32:6,7,13,19 33:22 34:5

**month** 14:21 19:12

**more** 31:2 36:17,22 37:25

**morning** 10:21

**Most** 10:11

**motion** 25:23 26:3,18

**motivation** 35:13

**move** 8:19 9:8 11:11 12:15,23 13:6,8 16:4,13 37:14,15

**moved** 8:20,21 9:4 11:12 12:20 35:19,22, 23 37:11

**movers** 16:3

**moving** 8:22 16:3

**mute** 30:23

_____

**N**

**name** 12:5 20:15,16 30:11 31:5 34:1,2

**nature** 18:9

**near** 35:14

**need** 6:19 16:9 27:5 31:7

**needed** 9:16 30:8

**nephew** 31:25

**never** 8:6,7 15:5 28:6, 10,11,15,18,19 29:10, 12 30:7 33:16

**next** 10:21

**nice** 19:4

**nights** 10:10 19:10

**nobody** 27:24

**normally** 10:10 23:11 24:18 25:5

**November** 10:6,7 27:1, 9

_____

**O**

**oath** 5:6,18

**objection** 7:9

**obviously** 13:18 15:13 20:22 35:17 37:4

**occupied** 27:8 29:24

**October** 8:2

**office** 9:16 11:7,20 12:15

**older** 23:21

**once** 14:21

**one** 12:6,11 14:24 15:21 17:3 18:24 20:18 21:2 25:2 32:12,15 35:1,7

**only** 14:14 29:24

**op-** 35:6

**operation** 18:15

**operative** 13:14

**opportunities** 18:7,8, 10

**opportunity** 11:1

**options** 35:6

**Orange** 10:24 18:19, 20,23 33:19

**other** 6:25 9:11 15:16, 20 16:1 23:22 24:21 32:16 35:4

**our** 9:25

**out** 11:11,12 12:21,24 13:8 14:7,8,15 16:4 21:24 34:20 35:22

**over** 23:24

**own** 10:3 15:2

_____

**P**

**p.m.** 38:4

**package** 22:12 23:23

**packages** 22:14,17

24:18

**pain** 37:16

**paragraph** 26:24 27:7 28:4

**parents** 17:22

**parents'** 6:2

**partner** 34:1

**partner's** 34:1

**Pasadena** 19:3

**pass** 17:16,19

**past** 22:13 24:5 34:11

**pay** 15:7 20:7,9,13,23, 25 21:1 32:24

**paying** 15:9,12 19:15

**payment** 20:4,19,20 22:3

**pays** 19:18 20:22

**people** 22:14 33:20,23 34:6,10,15 35:23,25 36:2

**perhaps** 32:18

**period** 23:16

**person** 28:3,11,12 29:24

**phone** 17:17 24:3,6,12

**picked** 33:17

**picture** 17:16

**piece** 24:11

**place** 8:12 9:3,5 11:1 15:23 37:10

**places** 24:21

**plan** 23:20

**plane** 18:4

**planning** 35:2

**plants** 12:10

**please** 6:13,18 21:12 25:14

**point** 7:12 12:6,11

**positions** 35:8

**prepare** 36:7

**prescription** 6:24

**previous** 5:14

**price** 36:12,13

**proceedings** 25:9,11, 15,16 38:4

**process** 20:6 37:3

**proof** 27:24

**prop-** 14:1

**property** 19:11,16,19, 21,23 22:6 23:9,11 27:8 28:14,17,21,22 29:1,20, 25 33:9,12 37:12

**provide** 21:9,18,20

**purchase** 8:1 22:21

**purchased** 7:21 8:12 29:20

**purchases** 24:22

**purpose** 6:10 7:6

**purposes** 9:19 22:18

**pushed** 17:7

**put** 16:11 30:4 36:25

_____

**Q**

**question** 7:10,16 12:19

**questions** 6:12 21:19 30:17 31:2,6 37:20

**quickly** 7:5

**quite** 6:12

_____

**R**

**rackets** 13:2

**raining** 19:6

**raise** 7:9

**raising** 9:7

**ready** 31:9

**real** 27:8

**really** 7:5 10:18,25

12:25 13:3 15:5 16:7 17:6 30:14,15 32:24 33:3,4

**reason** 22:20 33:17,25

**receive** 24:21

**received** 22:24 28:15, 18 29:8,10,12,14,17,18

**recently** 35:15

**recess** 30:24

**record** 30:25 38:2,3

**referring** 10:1 26:6

**regarding** 7:7

**regularly** 15:17 25:2

**relating** 25:9

**relevance** 7:10

**relevant** 7:13

**remaining** 12:20

**remember** 22:24 24:10 25:8,25 26:2,4,7,10,17, 21 27:3,11,12 28:9 32:10

**remind** 6:9 26:5

**rent** 15:7 20:9,23 34:5

**rephrase** 6:13

**report** 22:17

**reporter** 5:6 11:4 37:19 38:2

**represent** 28:7

**require** 35:8

**reside** 7:3,19

**resided** 8:3 29:19

**residence** 15:4,5,6 26:25 28:1

**resident** 15:1

**residing** 26:11,25 37:12

**resolved** 9:1

**responses** 21:20

**responsibility** 11:23, 25

**responsible** 19:14

**restated** 6:20

**Rey** 33:23

**right** 5:23 6:1,4,6 8:10 9:23 18:21 19:5 26:16 33:7,8 34:8 35:12 37:8

**Ring** 22:7,8,9,15,19,21 23:6,13 24:4 32:12,13

**Rockefeller** 7:23,25 8:1,15 10:2,8 19:11,15, 17,18,21,23 22:6 23:8 24:19 25:7 27:9 28:14, 17,21,22 29:1,20,25 33:9,12 37:12

**room** 6:3,7 31:22,24 32:1

**roommate** 8:6,7,13,14, 25 9:7 11:8,16 29:6 32:11

**roommates** 8:4,15

**Roston** 34:3

**rules** 6:9

## S

**said** 11:19,24 12:3 16:22 17:24 18:3 23:24 26:11 27:5,7,23 29:18

**same** 7:20 9:2 11:1 15:6 18:4 37:6

**San** 35:22

**Santa** 9:15 10:4,12,15 11:6 14:2,13,17 15:7 27:1 32:6,7,13,19 33:22 34:5

**save** 23:25 24:2

**saved** 24:4,7,11

**saving** 11:3

**savvy** 33:18

**saw** 19:6

**say** 12:10 14:16 19:10 21:13,16 31:13

**saying** 11:16

**says** 12:11 16:15,16 27:21

**security** 22:5,18 32:6, 8,17

**see** 14:21 17:20 22:10, 15,16 26:14 35:6

**seeing** 15:21

**seen** 28:6,18,19

**sell** 18:15

**send** 20:24

**sends** 20:18

**sense** 10:22

**sensor** 22:12

**September** 31:11,12, 14,15,16

**serve** 27:16,17,21

**served** 28:3,10,12

**server** 27:15,20

**service** 16:4 18:13

**services** 24:25

**set** 26:19 28:7

**seven** 28:4

**Shall** 30:22

**she** 8:22 9:1,3 29:3,4,5, 7,8,10,14,18 37:4,8,11

**she's** 9:7 29:12 36:25

**showed** 27:23

**siblings** 37:7

**sick** 6:21

**side** 14:5

**sign** 9:13 10:4 37:2

**signed** 9:11

**significant** 15:20

**Silicon** 33:22

**Silicone** 34:14

**similar** 35:13

**simultaneous** 37:18

**since** 7:20 12:1 13:19

14:24,25 17:2,11,12 27:1,9 29:20 30:14 35:17 36:25

**single** 24:11

**sister** 8:17,18,21 9:6 19:20,22 20:1,5,8,22 28:6,8 29:2,25 32:1 36:8,21 37:4

**sisters** 37:17

**sleep** 10:10 15:17 19:11 31:25 32:1

**slowly** 8:22

**small** 15:9

**software** 18:6,12,15 34:20,21 35:1

**solved** 9:1

**some** 9:4,5 10:13,14,15 11:3 12:9 13:1 16:17, 22,23 18:1,6,7 19:5 20:10,12 22:13 23:22 25:8 30:8 32:23 33:2 34:20 35:4 36:24

**someone** 9:16 22:11, 12

**something** 23:3,21 24:2

**sometime** 16:1

**sometimes** 9:22 12:9 14:6,9,12,20,21 20:8,11 22:16 36:23

**somewhere** 17:17 30:4

**son** 8:17,18 20:2 29:25 30:1

**son's** 9:5

**sorry** 11:14 12:19 17:9 25:12 31:23 33:10

**soup** 30:8

**Southern** 35:14

**speak** 37:23

**speaking** 37:18

**specific** 27:17,18 28:2

**spend** 35:9

Case 8:22-bk-11605-TA   Doc 153   Filed 03/23/23   Entered 03/23/23 20:22:36   Desc
Main Document    Page 344 of 788
re BASSEM VICTOR EL MALLAKH
BASSEM MALLAKH on 03-15-2023
Job 2299A
Index: spending..writing

spending 15:25

spent 14:16

spicy 30:8,14

start-up 15:15

started 8:22 9:7 35:17

state 28:6,8

stated 26:25

statement 27:3

stay 11:9 14:12 17:1 31:19,22,24 32:2,4

stayed 9:3 31:15

staying 6:1,2

stays 31:21 32:3

stealing 22:14

steals 22:16

still 11:6 13:14 14:4 20:15 34:25

stolen 23:23

stop 6:13

stopped 15:12

storage 12:14 16:13

store 23:13,18,24

stranger 37:1

street 16:10,14

stuff 11:11,12 12:14 13:6,7,8 14:14 16:7,17, 24

submitting 26:7

substances 6:25

suburbs 35:20

summer 9:9

support 26:2

supposed 17:5

sure 6:14 12:23 13:18 18:23 21:8,10,12,13,14, 16,22 26:15 30:6,21 32:23,24 33:2,3,5,6

system 22:21

## T

table 16:9

table' 16:11

take 6:18 11:22,24 12:14 16:21 30:19

taken 30:24

taking 5:12 37:22

talent 33:19 34:14,15

talk 7:2 18:7 37:23 38:1

talked 27:19 29:7

tech 33:18 36:2,5

technology 33:20 34:7 35:11,14

tell 7:18 11:20 12:15 22:9

ten 30:20

tennis 13:1

TESTIFIED 5:7

Texas 35:23

things 16:13,21 37:5,8

think 16:18 17:15,20 22:25 23:5 27:14 30:16 32:9 33:1 36:19 37:20

three 19:25 26:24 35:16

Thursday 10:16 17:15, 18

til 31:15

time 5:12 7:12 14:17 17:10,12 27:13 28:23 29:3,5 35:9 37:6,22

tired 9:20 11:2 14:9

today 5:13,19 6:21 9:12 16:25 31:8 37:22

together 11:19 14:15

told 11:9,16 15:13 27:19 29:12,14

towels 16:23

townhouse 23:9

traffic 9:22 10:18,19, 20,22,25 11:3

transmits 20:4

trip 35:2

truth 6:11

truthfully 6:16

TV 13:5 16:16

twice 31:17

two 9:22 14:22 18:14 35:10

type 18:11 23:20 30:11 34:16

typical 21:24

## U

U.S. 15:1 18:8,15,16

Uber 24:24 25:3,4,5

Uh-huh 20:17 27:2 37:11

under 5:18 6:23,24 12:4 20:15,16

understand 5:14,18 6:11,12,14

understood 16:2

unit 12:15 16:14

until 28:7

up 19:3 21:8 32:12 34:14 37:7

use 9:15,18 11:6 14:1 16:3,12 20:20 24:16,24 25:3,4

used 35:21

usual 20:20

usually 20:24 21:24 23:12 31:17,22,24,25 33:20

utilities 20:7,23

utility 19:15 20:5

## V

vacated 25:24

Valley 34:15

valuables 9:4

value 16:19

Venice 33:22

venture 11:18 13:20,24

video 24:1 27:20

visit 14:20 31:13,17

visiting 17:22

visits 31:20 35:10

## W

wanted 9:14 16:18 23:21 32:5 33:18 34:6, 11

water 12:10 30:3,9,14

weddings 17:3

WEDNESDAY 5:1

week 10:11,13,14 31:14 37:16

weekends 10:17

weeks 10:13,14,15 14:22

well 8:10,11 12:23 14:18 17:24 20:22 21:4, 5 26:7,22 27:14,21 32:7 33:16 34:18,20 35:15 36:5 37:3,17 38:1

whole 10:14

work 10:14,16,19 11:1, 7 18:17 20:6 33:4,6,18, 24 34:6,15,16 35:20,24

work-related 18:1,5

worked 34:10

working 9:20 10:11 11:17,18 35:18

write 27:5

writing 27:3,11 28:9

36:25

**written** 26:8

**wrote** 27:13 28:4

---

### Y

**year** 13:10 24:5 31:18
35:10

**years** 25:9 35:16

---

### Z

**Zoom** 27:20

# EXHIBIT "9"

In the Matter of:

## re BASSEM VICTOR EL MALLAKH

---

## ESSAM MALLAKH

### *March 15, 2023*

---



Swivel Legal Solutions  |  Phone: 800.540.9099  |  www.swivellegal.com

1            UNITED STATES BANKRUPTCY COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4   In re BASSEM VICTOR EL MALLAKH      )
                                        )
5                                       )
                                        )
6                                       )
                                        ) Case No. 8:22-BK-11605-TA
7                                       ) Chapter 11
                                        )
8                                       )
                                        )
9                                       )
    _____)

10

11

12

13

14

15        VIDEOCONFERENCE DEPOSITION OF ESSAM EL MALLAKH

16        WEDNESDAY, MARCH 15, 2023, 12:37 P.M. (PST)

17

18

19

20

21

22

    STENOGRAPHICALLY REPORTED BY:
23

    LORI S. TURNER
24  CSR NO. 9102

25  Job No.  2299B

1              UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4   In re BASSEM VICTOR EL MALLAKH      )
                                        )
5                                       )
                                        )
6                                       )
                                        ) Case No. 8:22-BK-11605-TA
7                                       ) Chapter 11
                                        )
8                                       )
                                        )
9                                       )
    _____)

10

11

12

13

14

15

16

17

18

19

20       DEPOSITION OF ESSAM EL MALLAKH, a witness

21       herein, taken on behalf of judgment creditor

22       via videoconference, beginning at 12:37 p.m. and

23       ending at 12:51 p.m., on Wednesday, March 15, 2023,

24       before Lori S. Turner, Certified Shorthand

25       Reporter, CSR No. 9102

Case 8:22-bk-11605-TA    Doc 153    Filed 03/23/23    Entered 03/23/23 20:22:36    Desc
re BASSEM VICTOR EL MALLAKH    Main Document    Page 350 of 788
ESSAM MALLAKH on 03-15-2023

Job 2299B
Page 3

```
 1   APPEARANCES OF COUNSEL:

 2

 3   For Judgment Creditor BELGIUM INVESTMENTS 960 BAY DR,
     LLC A CALIFORNIA CORPORATION:

 4
             IMPACT ADVOCATES APC
 5           BY PATRICK MILLER, ESQ.
             121 South Oak Avenue
 6           Pasadena, California 91107
             213.364.7581
 7           patrick.miller@impactadvocateslaw.com
             (APPEARING VIA VIDEOCONFERENCE)
 8

 9
     For Debtor BASSEM VICTOR EL MALLAKH:
10

11           AFARI LAW FIRM
             BY CAROLYN AFARI, ESQ.
12           269 South Beverly Drive, Suite 643
             Beverly Hills, California 90212
13           424.274.1099
             afarilawfirm@gmail.com
14           (APPEARING VIA VIDEOCONFERENCE)

15

16   Also Present:   ANTHONY CASTANEDA - Exhibit Technician
                     (APPEARING VIA VIDEOCONFERENCE)
17

18

19

20

21

22

23

24

25
```

1                            I N D E X

2

3    WITNESS:   ESSAM EL MALLAKH
              (APPEARING VIA VIDEO CONFERENCE)
4

5    EXAMINATION:                                       PAGE

6    BY MR. MILLER                                          5

7

8                       E X H I B I T S

9                   (No exhibits offered)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              WEDNESDAY, MARCH 15, 2023 - 12:37 P.M.

2                             ***

3

4                       ESSAM EL MALLAKH,

5              HAVING BEEN DULY ADMINISTERED AN

6              OATH BY THE REPORTER, WAS EXAMINED

7                  AND TESTIFIED AS FOLLOWS:

8

9                        -EXAMINATION-

10

11   BY MR. MILLER:

12        Q.  So thank you for taking the time, Mr. El

13   Mallakh.  I would imagine it's relatively late where you

14   are right now.

15             You're in Cairo?

16        A.  Yeah.

17        Q.  What time is it in Cairo right now?

18        A.  It's 9:38 p.m.

19        Q.  Okay.  But are you still able to understand my

20   questions well and --

21        A.  Yes.

22        Q.  -- respond to the questions?

23        A.  Yeah.

24        Q.  We appreciate that English is not your first

25   language, so please feel free to let me know if you'd

1    like me to rephrase anything.

2        A.  Okay.

3        Q.  Okay?

4        A.  I'll do that.

5        Q.  Have you ever been involved in a deposition

6    before?

7        A.  No.

8        Q.  So this is the first time you're giving

9    evidence in a deposition?

10       A.  Yeah.

11       Q.  Okay.  All right.  You understand that even

12   though this is considered informal since we're all in

13   different areas, that this is under oath.

14           Correct?

15       A.  Yeah.  Yeah.

16       Q.  Okay.

17       A.  Yeah.

18       Q.  And -- Okay.  And if you need any breaks or

19   anything like that, please feel free to let us know.

20       A.  Okay.

21       Q.  I don't think you'll need a break because I

22   don't have very many questions for you, Mr. El Mallakh.

23       A.  Okay.

24       Q.  But if you do, that's okay.

25           Do you remember visiting the U.S. in September

```
 1    of 2022?

 2         A.  September of 2022, yes.

 3         Q.  Okay.  And did you visit your children in

 4    Irvine?

 5         A.  Exactly.  I went there on the 9th of September,

 6    '22.

 7         Q.  And how long do you remember staying in Irvine?

 8         A.  Normally, it's between two weeks or three

 9    weeks.  That's my normal stay period, you know.

10         Q.  So you don't remember exactly how many days,

11    but if you had to guess, it would probably be about two

12    to three weeks?

13         A.  Mostly like that, yeah.

14         Q.  Okay.  Okay.  Do you remember, were you -- do

15    you remember your son Bassem filing for bankruptcy in

16    September of '22?

17         A.  Yeah, I remember that day in particular because

18    he -- he was very much, I mean, worried about the -- I

19    mean all that.  So I wanted to get him support to him

20    when he was going to the FedEx store.

21              I think he had to do some scanning, printing,

22    and sending out emails or something like that.  So I was

23    with him when he was driving going to this FedEx office.

24              And I remember even by coincidence I like two

25    pens over there, they were displaying them.  So I bought
```

1   two pens from the store on that day, and I think I gave

2   him a copy of the receipt.

3        Q.  Okay.  Do you remember visiting the -- you

4   normally reside in Egypt.

5        Correct?

6        A.  Correct.

7        Q.  Do you remember visiting California in 2021?

8        A.  Yeah.  Normally I go two times a year, you

9   know.

10       Q.  Okay.  So in 2021, do you remember the month

11  that you visited?

12       A.  No.  That's difficult.  If you would have told

13  me before I would have looked at my passport and seen

14  the days, you know.  I don't remember now.

15       Q.  That's all right.  Do you remember --

16       A.  It always has to be like every six months, you

17  know.

18       Q.  Of course during the COVID pandemic it was

19  probably more difficult?

20       A.  Right.  That is true.  Very true, yeah.

21       Q.  Do you remember -- do you remember where your

22  son was living during the COVID pandemic during 2020 and

23  2021?

24       A.  As far as I know Bassem is always living in

25  Irvine.  This is where I always know that that's his

1   house and he always lives there.

2          And whenever I used to talk to him, he was

3   always there in the house.

4          Q.  And do you remember how long his sister -- is

5   his sister your daughter?

6          A.  Yeah.  Yeah.  She's my daughter, yeah.

7          Q.  Yes.  Do you remember how long she's been

8   living in Irvine?

9          A.  A few years, but I don't know exact dates also.

10  But three years, yeah.

11         Q.  But you don't know exactly.

12         A.  Yeah.

13         Q.  Okay.  Did you -- do you remember -- do you

14  remember visiting in September 2022?

15         A.  Yeah.

16         Q.  Do you remember visiting another time in 2022

17  earlier in 2022?

18         A.  Yeah.  That has to be six months before, you

19  know.

20         Q.  Yeah.  Yeah.

21         And did you stay in the Irvine property?

22         A.  Yeah, all the time.

23         Q.  Yeah.

24         A.  All my visits were all the times for the past,

25  the whole years, I've always been, whenever I go there,

1    I stay in Irvine in the Rockefeller house.

2         Q.   In the Rockefeller house.

3              And all the time that you've been visiting,

4    both Bassem --

5         A.   All the time.

6         Q.   -- and his sister have been living there?

7         A.   Yeah.

8              Also, it was a good chance when they joined --

9    when my daughter joined in the house in the past few

10   years, that's a good chance for me to be staying with

11   both of them, you know.  That's why I go.  I go just to

12   visit them and my grandson.

13        Q.   Your grandson, of course.

14        A.   Yes, he's always there.  I'm taking his room.

15        Q.   Yes, of course.  I'm sure.

16             Okay.  Do you remember why his sister moved in

17   with him?

18        A.   I remember that my -- my daughter was not happy

19   with her roommate in the previous house.  Of course, I

20   don't know the details, but she told me that she decided

21   to -- to go and stay with Bassem.  It's better for him

22   as well, you know, to support each other.

23        Q.   Okay.  Were you involved in the business

24   venture that Bassem had with Mohamed Roston?

25        A.   No, I don't even know what type of business he

1   had.  I don't really go into very much -- in details

2   with my son and daughter not to enforce myself, unless

3   they want to tell me something, you know.

4        Q.  Okay.  That makes sense.

5            Okay.  Were you aware that your son was a

6   signatory on a lease in an apartment in Santa Monica?

7        A.  No, I have no idea about that.

8        Q.  Have you ever been to an apartment in Santa

9   Monica --

10       A.  No.

11       Q.  -- that your son was renting?

12       A.  No.

13       Q.  No.  Okay.  And you've never discussed that

14   with him.

15           Do you discuss finances with your son?

16       A.  No.

17           I mean normally Bassem doesn't like to talk

18   much about his own personal issues, you know.  And I

19   don't want to enforce myself.

20           If he wants to say something, let him say.  If

21   he doesn't want, I don't want to just enforce myself on

22   him, you know.  He's grown up enough so I don't want to

23   really be -- How can I say?  He just inform me.  I don't

24   want to be enforcing myself into his personal life, you

25   know.

```
 1           Q.  Yes.  Yeah, I understand that.

 2               Did -- did you know anything about the case

 3   that he was involved with in Florida?

 4           A.  No.

 5               But -- only I knew that he had some cases and

 6   he was disappointed about those cases, but what are the

 7   things about, that he didn't really want to speak about

 8   it, you know.

 9               The fact that -- only that the main part that,

10   you know, there was a case and he was upset about it.

11           Q.  Yes.  Yes.

12               Did you know that in February 2021 he stated in

13   a declaration that he resided -- that he lived in Santa

14   Monica?

15           A.  Yeah.  Bassem said so.

16           Q.  Yes.  So were you -- are you aware that he

17   stated in a declaration --

18           A.  No.

19           Q.  -- that he filed in February --

20           A.  No.

21           Q.  -- 2021?

22           A.  No, I don't know.

23           Q.  That's okay.  Yeah.

24               Would it surprise you to hear that he stated he

25   lived in Santa Monica in 2021?
```

1      A.  As I told you, I don't know much about his

2   details in life, you know.  I only come visit, try to

3   enjoy time with my son and daughter.  Make their life in

4   a loving atmosphere to keep the relationship between

5   parents and son, but we don't go into personal details,

6   you know.

7      Q.  So there are many personal details about your

8   son and your daughter that you wouldn't be aware of?

9      A.  No.  No.  Unless they want to tell me.

10      Q.  Yeah, of course.  That would make sense.

11      A.  Yeah.

12      Q.  And he never told you that he was living

13   anywhere other than the Rockefeller place?

14      A.  We didn't discuss things like that, you know.

15      Q.  Yeah.  You didn't discuss where he was living?

16      A.  Uh-huh.

17          (Nods head in the affirmative.)

18      Q.  Just to be clear, I think sometimes it's very

19   natural, Mr. El Mallakh, for people to just nod their

20   heads.

21          For instance, I think the last question you

22   nodded your head, but you also said "Yes."

23      A.  Can you repeat the question, please.

24      Q.  What I was trying to explain is that if you nod

25   your head "Yes" --

1          A.   Yeah.

2          Q.   -- it's very unlikely that our court reporter

3     will be able to capture that.

4               (Simultaneous speaking.)

5     BY MR. MILLER:

6          Q.   So you need you to say "Yes" or "No."

7          A.   Okay.

8          Q.   And I think the last answer -- the last

9     question I asked was --

10         MR. MILLER:   Is there a way for you to refer to the

11    transcript so I can repeat the last question, perhaps.

12              (Off record discussion held wherein the record

13    was read by the reporter.)

14         MR. MILLER:   I think -- I think that's about the

15    number of questions I have, Mr. El Mallakh.

16         THE REPORTER:   Off the record?

17         MR. MILLER:   Yes.

18              I think you're trying to say something,

19    Carolyn, but we can't hear you.

20         MS. AFARI:   Yes, I was trying to unmute myself, but

21    what I was tying to say is the court reporter can go

22    ahead and do the closing part of the deposition.

23              (The proceedings concluded at 12:51 p.m.)

24                              ***

25

1          DECLARATION UNDER PENALTY OF PERJURY

2

3       I, Essam El Mallakh, do hereby certify under

4   penalty of perjury that I have reviewed the foregoing

5   transcript of my deposition taken on March 15, 2023 that

6   I have made such corrections as appear noted herein in

7   ink; that my testimony as contained herein, as

8   corrected, is true and correct.

9

10      DATED this _____ day of _____,

11   20_____, at _____, _____.

12

13

14

15

16                  _____

17                          Essam El Mallakh

18

19

20

21

22

23

24

25

1 | **ERRATA SHEET**

2 | Printed Name_____Date_____

3 | Signature_____

4 | Page/Line   Correction            Reason

5 | _____   _____   _____

6 | _____   _____   _____

7 | _____   _____   _____

8 | _____   _____   _____

9 | _____   _____   _____

10 | _____   _____   _____

11 | _____   _____   _____

12 | _____   _____   _____

13 | _____   _____   _____

14 | _____   _____   _____

15 | _____   _____   _____

16 | _____   _____   _____

17 | _____   _____   _____

18 | _____   _____   _____

19 | _____   _____   _____

20 | _____   _____   _____

21 | _____   _____   _____

22 | _____   _____   _____

23 | _____   _____   _____

24 | _____   _____   _____

25 | _____   _____   _____

1        I, LORI S. TURNER, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were administered an oath; that a record

7    of the proceedings was made by me using machine

8    shorthand which was thereafter transcribed under my

9    direction; that the foregoing transcript is a true

10   record of the testimony given.

11       Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [   ] was [X] was not requested.

15       I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   any attorney or any party to this action.

18       IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:  March 19th, 2023

22   _____

23                    LORI S. TURNER

24                    CSR No. 9102

25

---

**-**

**-EXAMINATION-** 5:9

---

**1**

**12:37** 5:1

**12:51** 14:23

**15** 5:1

---

**2**

**2020** 8:22

**2021** 8:7,10,23 12:12, 21,25

**2022** 7:1,2 9:14,16,17

**2023** 5:1

**22** 7:6,16

---

**9**

**9:38** 5:18

**9th** 7:5

---

**A**

**able** 5:19 14:3

**about** 7:11,18 11:7,18 12:2,6,7,10 13:1,7 14:14

**ADMINISTERED** 5:5

**AFARI** 14:20

**affirmative** 13:17

**ahead** 14:22

**also** 9:9 10:8 13:22

**always** 8:16,24,25 9:1, 3,25 10:14

**another** 9:16

**answer** 14:8

**any** 6:18

**anything** 6:1,19 12:2

**anywhere** 13:13

**apartment** 11:6,8

**appreciate** 5:24

**are** 5:14,19 12:6,16 13:7

**areas** 6:13

**asked** 14:9

**atmosphere** 13:4

**aware** 11:5 12:16 13:8

---

**B**

**bankruptcy** 7:15

**Bassem** 7:15 8:24 10:4,21,24 11:17 12:15

**because** 6:21 7:17

**been** 5:5 6:5 9:7,25 10:3,6 11:8

**before** 6:6 8:13 9:18

**better** 10:21

**between** 7:8 13:4

**both** 10:4,11

**bought** 7:25

**break** 6:21

**breaks** 6:18

**business** 10:23,25

---

**C**

**Cairo** 5:15,17

**California** 8:7

**can** 11:23 13:23 14:11, 21

**can't** 14:19

**capture** 14:3

**Carolyn** 14:19

**case** 12:2,10

**cases** 12:5,6

**chance** 10:8,10

**children** 7:3

**clear** 13:18

**closing** 14:22

**coincidence** 7:24

**come** 13:2

**concluded** 14:23

**considered** 6:12

**copy** 8:2

**Correct** 6:14 8:5,6

**course** 8:18 10:13,15, 19 13:10

**court** 14:2,21

**COVID** 8:18,22

---

**D**

**dates** 9:9

**daughter** 9:5,6 10:9,18 11:2 13:3,8

**day** 7:17 8:1

**days** 7:10 8:14

**decided** 10:20

**declaration** 12:13,17

**deposition** 6:5,9 14:22

**details** 10:20 11:1 13:2, 5,7

**did** 7:3 9:13,21 12:2,12

**didn't** 12:7 13:14,15

**different** 6:13

**difficult** 8:12,19

**disappointed** 12:6

**discuss** 11:15 13:14,15

**discussed** 11:13

**discussion** 14:12

**displaying** 7:25

**driving** 7:23

**DULY** 5:5

**during** 8:18,22

---

**E**

**earlier** 9:17

**Egypt** 8:4

**El** 5:4,12 6:22 13:19 14:15

**emails** 7:22

**enforce** 11:2,19,21

**enforcing** 11:24

**English** 5:24

**enjoy** 13:3

**enough** 11:22

**ESSAM** 5:4

**even** 6:11 7:24 10:25

**ever** 6:5 11:8

**every** 8:16

**evidence** 6:9

**exact** 9:9

**exactly** 7:5,10 9:11

**EXAMINED** 5:6

**explain** 13:24

---

**F**

**fact** 12:9

**February** 12:12,19

**Fedex** 7:20,23

**feel** 5:25 6:19

**filed** 12:19

**filing** 7:15

**finances** 11:15

**first** 5:24 6:8

**Florida** 12:3

**FOLLOWS** 5:7

**free** 5:25 6:19

---

**G**

gave  8:1

giving  6:8

good  10:8,10

grandson  10:12,13

grown  11:22

guess  7:11

**H**

happy  10:18

he  7:18,20,21,23 9:1,2
10:25 11:20,21,23 12:3,
5,6,7,10,12,13,16,19,24
13:12,15

he's  10:14 11:22

head  13:17,22,25

heads  13:20

hear  12:24 14:19

held  14:12

her  10:19

him  7:19,23 8:2 9:2
10:17,21 11:14,20,22

his  8:25 9:4,5 10:6,14,
16 11:18,24 13:1

house  9:1,3 10:1,2,9,19

**I**

idea  11:7

imagine  5:13

inform  11:23

informal  6:12

instance  13:21

involved  6:5 10:23
12:3

Irvine  7:4,7 8:25 9:8,21
10:1

issues  11:18

**J**

joined  10:8,9

**K**

keep  13:4

knew  12:5

know  5:25 6:19 7:9 8:9,
14,17,24,25 9:9,11,19
10:11,20,22,25 11:3,18,
22,25 12:2,8,10,12,22
13:1,2,6,14

**L**

language  5:25

last  13:21 14:8,11

late  5:13

lease  11:6

life  11:24 13:2,3

like  6:1,19 7:13,22,24
8:16 11:17 13:14

lived  12:13,25

lives  9:1

living  8:22,24 9:8 10:6
13:12,15

long  7:7 9:4,7

looked  8:13

loving  13:4

**M**

main  12:9

make  13:3,10

makes  11:4

Mallakh  5:4,13 6:22
13:19 14:15

many  6:22 7:10 13:7

MARCH  5:1

me  5:25 6:1 8:13 10:10,
20 11:3,23 13:9

mean  7:18,19 11:17

MILLER  5:11 14:5,10,
14,17

Mohamed  10:24

Monica  11:6,9 12:14,25

month  8:10

months  8:16 9:18

more  8:19

Mostly  7:13

moved  10:16

**N**

natural  13:19

need  6:18,21 14:6

never  11:13 13:12

nod  13:19,24

nodded  13:22

nods  13:17

normal  7:9

normally  7:8 8:4,8
11:17

number  14:15

**O**

oath  5:6 6:13

office  7:23

only  12:5,9 13:2

other  10:22 13:13

our  14:2

out  7:22

over  7:25

own  11:18

**P**

p.m.  5:1,18 14:23

pandemic  8:18,22

parents  13:5

part  12:9 14:22

particular  7:17

passport  8:13

past  9:24 10:9

pens  7:25 8:1

people  13:19

perhaps  14:11

period  7:9

personal  11:18,24
13:5,7

place  13:13

please  5:25 6:19 13:23

previous  10:19

printing  7:21

probably  7:11 8:19

proceedings  14:23

property  9:21

**Q**

question  13:21,23
14:9,11

questions  5:20,22 6:22
14:15

**R**

read  14:13

really  11:1,23 12:7

receipt  8:2

record  14:12,16

refer  14:10

relationship  13:4

relatively  5:13

remember  6:25 7:7,10,
14,15,17,24 8:3,7,10,
14,15,21 9:4,7,13,14,16
10:16,18

renting  11:11

**repeat** 13:23 14:11

**rephrase** 6:1

**reporter** 5:6 14:2,13, 16,21

**reside** 8:4

**resided** 12:13

**respond** 5:22

**right** 5:14,17 6:11 8:15, 20

**Rockefeller** 10:1,2 13:13

**room** 10:14

**roommate** 10:19

**Roston** 10:24

---

**S**

**said** 12:15 13:22

**Santa** 11:6,8 12:13,25

**say** 11:20,23 14:6,18,21

**scanning** 7:21

**seen** 8:13

**sending** 7:22

**sense** 11:4 13:10

**September** 6:25 7:2,5, 16 9:14

**she** 10:20

**she's** 9:6,7

**signatory** 11:6

**simultaneous** 14:4

**since** 6:12

**sister** 9:4,5 10:6,16

**six** 8:16 9:18

**some** 7:21 12:5

**something** 7:22 11:3, 20 14:18

**sometimes** 13:18

**son** 7:15 8:22 11:2,5, 11,15 13:3,5,8

**speak** 12:7

**speaking** 14:4

**stated** 12:12,17,24

**stay** 7:9 9:21 10:1,21

**staying** 7:7 10:10

**still** 5:19

**store** 7:20 8:1

**support** 7:19 10:22

**sure** 10:15

**surprise** 12:24

---

**T**

**taking** 5:12 10:14

**talk** 9:2 11:17

**tell** 11:3 13:9

**TESTIFIED** 5:7

**things** 12:7 13:14

**think** 6:21 7:21 8:1 13:18,21 14:8,14,18

**three** 7:8,12 9:10

**time** 5:12,17 6:8 9:16, 22 10:3,5 13:3

**times** 8:8 9:24

**told** 8:12 10:20 13:1,12

**transcript** 14:11

**true** 8:20

**two** 7:8,11,24 8:1,8

**tying** 14:21

**type** 10:25

---

**U**

**U.S.** 6:25

**Uh-huh** 13:16

**under** 6:13

**understand** 5:19 6:11 12:1

**unless** 11:2 13:9

**unlikely** 14:2

**unmute** 14:20

**up** 11:22

**upset** 12:10

**used** 9:2

---

**V**

**venture** 10:24

**visit** 7:3 10:12 13:2

**visited** 8:11

**visiting** 6:25 8:3,7 9:14,16 10:3

**visits** 9:24

---

**W**

**wanted** 7:19

**WEDNESDAY** 5:1

**weeks** 7:8,9,12

**well** 5:20 10:22

**went** 7:5

**whole** 9:25

**worried** 7:18

---

**Y**

**year** 8:8

**years** 9:9,10,25 10:10

# EXHIBIT
# "10"

MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:    (310) 271-6223
Facsimile:    (310) 271-9805
michael.berger@bankruptcypower.com

Counsel for Debtor,
Bassem Victor El Mallakh

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

|  |  |
|---|---|
| In re:<br><br>BASSEM VICTOR EL MALLAKH,<br><br>     Debtor and Debtor-in-Possession. | ) CASE NO.: 8:22-bk-11605-TA<br>)<br>) Chapter 11<br>)<br>) **SUPPLEMENTAL DECLARATION**<br>) **OF BASSEM VICTOR EL MALLAKH**<br>) **IN SUPPORT OF DEBTOR'S**<br>) **OPPOSITION TO BELGIUM**<br>) **INVESTMENTS 960 BAY DR, LLC'S**<br>) **OBJECTION TO DEBTOR'S**<br>) **CLAIMED HOMESTEAD**<br>) **EXEMPTION**<br>)<br>) Date:    March 30, 2023<br>) Time:    11:00 a.m.<br>) Place:    411 West Fourth Street<br>)           Courtroom 5B<br>)           Santa Ana, CA 92701<br>)<br>Via Tele/Videoconference on Zoom |

## SUPPLEMENTAL DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare and state as follows:

1.    I am the Debtor. I am over the age of 18. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

1

2.      My instant Chapter 11 case was filed on September 19, 2022. This is my second bankruptcy filing.

3.      I hold title to the following real property which is my principal residence: 116 Rockefeller, Irvine, California 92612 ("Rockefeller Property").

4.      I previously filed a Chapter 13 [case no.: 8:22-bk-11158-TA], which I voluntarily dismissed because I was over the debt limit.

5.      My current Chapter 11 case was filed in order to reorganize my debts.

6.      My primary residence where I live is the Rockefeller Property and it has been by primary residence since I purchased it in 2013, on the date I filed my bankruptcy cases, and continues to be me primary residence.

7.      My current Chapter 11 case, and my previously filed Chapter 13 case listed the Rockefeller Property as my primary residence.

8.      On the Petition Date, and continuously thereafter, I resided in the Rockefeller Property with my sister Reem Hanna and her son. The Rockefeller Property is three (3) bedrooms. I sleep in one (1) bedroom, my sister sleeps in one (1) bedroom and her son sleeps one (1) bedrooms.

9.      The following is additional evidence to show that the Rockefeller Property is my primary residence is:

    a.  A true and correct copy of my Chapter 13 Voluntary Petition listing the Rockefeller Property as my home is attached as **Exhibit "1."**

    b.  A true and correct copy of the first pages of my 2019-2022 tax returns and other tax documents listing the Rockefeller Property as my home is attached as **Exhibit "2."**

    c.  A true and correct copy of my Homeowners Insurance Policy and Car Insurance listing the Rockefeller Property as my home is attached as **Exhibit "3."**

2

d. A true and correct copy of my various bank statements listing the Rockefeller Property as my home is attached as **Exhibit "4."**

e. A true and correct copy of my drivers license listing the Rockefeller Property as my home is attached as **Exhibit "5."**

f. A true and correct copy of my car registration listing the Rockefeller Property as my home is attached as **Exhibit "6."**

g. A true and correct copy of my SoCalGas Bill for the months of August 2022 through January 2023 listing the Rockefeller Property as my home is attached as **Exhibit "7."**

h. A true and correct copy of my Irvine Ranch Water District Bill for the months of August 2022 through January 2023 listing the Rockefeller Property as my home is attached as **Exhibit "8."**

i. A true and correct copy of my health insurance card listing the Rockefeller Property as my home is attached as **Exhibit "9."**

j. A true and correct copy of my Uber Eats receipts showing my food deliveries to the Rockefeller Property is attached as **Exhibit "10."**

k. A true and correct copy of my Gym check-ins for LA Fitness located at 3021 Michelson Drive, Irvine, CA which is located in Orange County close to the Rockefeller Property for the months of September 2022 to December 2022 is attached as **Exhibit "11."**

l. A true and correct copy of my iPhone GPS location for September 18, 2022 is attached as **Exhibit "12."**

m. A true and correct copy of my airline tickets for travel on September 8, 2022 from San Francisco to Santa Ana airport is attached as **Exhibit "13."**

n. A true and correct copy of my Amazon receipts showing my purchases delivered to the Rockefeller Property is attached as **Exhibit "14."**

3

10.    From on or about 2016 through 2021, I was working in Santa Monica and due to the commute between Santa Monica and Orange County, my business associate and I leased an apartment for his associate at 525 Broadway, Santa Monica, CA 90410 (the "Santa Monica Property") which was our principal place of business for a tech start-up we were trying to get off the ground. I would sleep some evenings at Santa Monica Property if I had to work late and was too tired to drive back home to Orange County. However, the Rockefeller Property was and always has been my primary residence.

11.    In the previous depositions I did in connection with the Florida 11st Circuit case with Belgium and the Orange County Superior Court case which sought to enforce the sister state judgment from the Florida case, the questions Belgium's counsel asked me were in regards to whether I was served at the Rockefeller Property. My statements are being misconstrued currently by Belgium's counsel. These depositions were done in 2021 or earlier, well before my bankruptcy filings. At the time I filed my chapter 11 case, I was living at the Rockefeller Property which is my primary residence and I continue to reside there.

12.    I hereby state, unequivocally, prior to, on the petition date, and thereafter, I lived and currently live at the Rockefeller Property, and I have always intended and continue to intend the Rockefeller Property to be my primary residence and I continue to reside there.

13.    On September 19, 2022, I went to Fedex with my father Essam ElMallakh to sign the bankruptcy petition and other commencement documents. I scanned the documents and emailed them to my Bankruptcy Counsel. Attached as **Exhibit "15"** is a true and correct copy of my Fedex receipt from September 19, 2022, from the Fedex store located at 3992 Barranca Park Ste A, Irvine, CA 92606. The Fedex location I went to is 3 miles away from my home, the Rockefeller Property.

4

SUPPLEMENTAL DECLARATION OF BASSEM VICTOR EL MALLAKH IN SUPPORT OF DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION

1   I declare under penalty of perjury that the foregoing is true and correct and that

2   this declaration is executed on March __21, 2023 at_____Egypt_____.

3

4

5                                                   _____

6                                                   Bassem Victor El Mallakh

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

EXHIBIT 1

Fill in this information to identify your case:

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

Chapter you are filing under:

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

☐ Check if this is an
amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy

02/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Bassem**<br>First name<br><br>**Essam**<br>Middle name<br><br>**El Mallakh**<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names. | | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-3012 | |

Debtor 1    **Bassem Essam El Mallakh**    Case number *(if known)*

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|

**4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

☑ I have not used any business name or EINs.

Business name(s)

EIN

☐ I have not used any business name or EINs.

Business name(s)

EIN

**5. Where you live**

**116 Rockefeller**
**Irvine, CA 92612**
Number, Street, City, State & ZIP Code

**Orange**
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

County

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

Check one:

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Check one:

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1    **Bassem Essam El Mallakh**                                                                 Case number (if known)

---

**Part 2:    Tell the Court About Your Bankruptcy Case**

7.  **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

8.  **How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

9.  **Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| | | | |
|---|---|---|---|
| District | When | Case number |
| District | When | Case number |
| District | When | Case number |

10. **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| | | |
|---|---|---|
| Debtor | | Relationship to you |
| District | When | Case number, if known |
| Debtor | | Relationship to you |
| District | When | Case number, if known |

11. **Do you rent your residence?**

■ No.    Go to line 12.

☐ Yes.    Has your landlord obtained an eviction judgment against you?

☐    No. Go to line 12.

☐    Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

Debtor 1    **Bassem Essam El Mallakh**                                      Case number *(if known)*

**12. Are you a sole proprietor of any full- or part-time business?**

☑ No.    Go to Part 4.

☐ Yes.    Name and location of business

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

Name of business, if any

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐    Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐    Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐    Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐    Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐    None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☑ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No.

☐ Yes.    What is the hazard?

If immediate attention is needed, why is it needed?

Where is the property?

Number, Street, City, State & Zip Code

---

Official Form 101    Voluntary Petition for Individuals Filing for Bankruptcy    page 4

Debtor 1   **Bassem Essam El Mallakh**

Case number (if known)

**Part 5.**   Explain Your Efforts to Receive a Briefing About Credit Counseling

**16.   Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

■ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ I am not required to receive a briefing about credit counseling because of:

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ I am not required to receive a briefing about credit counseling because of:

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1   **Bassem El Mallakh**

**Part 6:   Answer These Questions for Reporting Purposes**

**16.** What kind of debts do you have?

**16a.** Are your debts primarily consumer debts? *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

**16b.** Are your debts primarily business debts? *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

**16c.** State the type of debts you owe that are not consumer debts or business debts

**17.** Are you filing under Chapter 7?

■ No.   I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ Yes.   I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

**18.** How many Creditors do you estimate that you owe?

■ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**19.** How much do you estimate your assets to be worth?

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**20.** How much do you estimate your liabilities to be?

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**Part 7:   Sign Below**

For you

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Bassem Essam El Mallakh**
Signature of Debtor 1

Executed on  7/12/2022
MM / DD / YYYY

Signature of Debtor 2

Executed on
MM / DD / YYYY

Official Form 101    Voluntary Petition for Individuals Filing for Bankruptcy    page 6

Debtor 1   **Bassem Essam El Mallakh**                                             Case number *(if known)*

For your attorney, if you are represented by one

If you are not represented by an attorney, you do not need to file this page.

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

Signature of Attorney for Debtor

Date   7/12/2022
MM / DD / YYYY

**Benjamin Heston**
Printed name

Firm name

**100 Bayview Circle, Suite 100**
**Newport Beach, CA 92660**
Number, Street, City, State & ZIP Code

Contact phone   **951-290-2827**

Email address   **bheston.ecf@gmail.com**

**297798 CA**
Bar number & State

EXHIBIT 2

| Form **1040** | Department of the Treasury — Internal Revenue Service (99) | | **2021** | OMB No. 1545-0074 | IRS Use Only — Do not write or staple in this space. |
|---|---|---|---|---|---|
| | **U.S. Individual Income Tax Return** | | | | |

**Filing Status**
Check only one box.

[X] Single  [ ] Married filing jointly  [ ] Married filing separately (MFS)  [ ] Head of household (HOH)  [ ] Qualifying widow(er) (QW)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent ▶

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Bassem El Mallakh | | 3012 |

| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |
|---|---|---|

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.

116 Rockefeller

City, town, or post office. If you have a foreign address, also complete spaces below.    State    ZIP code

Irvine, CA 92612

Foreign country name    Foreign province/state/county    Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
[ ] You  [ ] Spouse

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency?  [ ] Yes  [X] No

**Standard Deduction**

Someone can claim:  [ ] You as a dependent  [ ] Your spouse as a dependent
[ ] Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You:  [ ] Were born before January 2, 1957  [ ] Are blind  Spouse:  [ ] Was born before January 2, 1957  [ ] Is blind

**Dependents** (see instructions):

| | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies for (see instructions): |
|---|---|---|---|
| (1) First name    Last name | | | Child tax credit    Credit for other dependents |

If more than four dependents, see instructions and check here ▶

| | | | | | |
|---|---|---|---|---|---|
| Attach Sch. B if required. | 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 1 | |
| | 2a | Tax-exempt interest . . | 2a | b Taxable interest . . . . | 2b | 3. |
| | 3a | Qualified dividends . | 3a | b Ordinary dividends . . . . | 3b | |
| | 4a | IRA distributions . . . . . . . | 4a | b Taxable amount . . . . . . . . | 4b | |
| | 5a | Pensions and annuities . . . . . | 5a | b Taxable amount . . . . . . . . | 5b | |
| | 6a | Social security benefits . . . . . . . . | 6a | b Taxable amount . . . . . . . . | 6b | |
| | 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here . . . . . . . . . . . . . . ▶ [ ] | | 7 | |
| | 8 | Other income from Schedule 1, line 10 . . . . . . . . . . . . . . . . . . . . . | | 8 | |
| | 9 | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** . . . . . . . . . . . . . . ▶ | | 9 | 3. |
| | 10 | Adjustments to income from Schedule 1, line 26 . . . . . . . . . . . . . . . . . . . . . . | | 10 | |
| | 11 | Subtract line 10 from line 9. This is your **adjusted gross income** . . . . . . . . . . . . . ▶ | | 11 | 3. |
| | 12a | Standard deduction or itemized deductions (from Schedule A) . . . . | 12a | 12,550. | |
| | b | Charitable contributions if you take the standard deduction (see instructions) . . | 12b | | |
| | c | Add lines 12a and 12b . . . . . . . . . . . . . . . . . . . . . . . . | | 12c | 12,550. |
| | 13 | Qualified business income deduction from Form 8995 or Form 8995-A . . . . . . . . . . . . . . . | | 13 | |
| | 14 | Add lines 12c and 13 . . . . . . . . . . . . . . . . . . . . . . . . . | | 14 | 12,550. |
| | 15 | **Taxable income.** Subtract line 14 from line 11. If zero or less, enter -0- . . . . . . . . . . . . . | | 15 | 0. |

**Standard Deduction for —**
• Single or Married filing separately, $12,550
• Married filing jointly or Qualifying widow(er), $25,100
• Head of household, $18,800
• If you checked any box under Standard Deduction, see instructions.

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.    Form 1040 (2021)

FDIA0112L   12/10/21

Form **1040**  Department of the Treasury — Internal Revenue Service (99)
U.S. Individual Income Tax Return  **2019**  OMB No. 1545-0074  IRS Use Only — Do not write or staple in this space.

| Filing Status Check only one box. | [X] Single | [ ] Married filing jointly | [ ] Married filing separately (MFS) | [ ] Head of household (HOH) | [ ] Qualifying widow(er) (QW) |

If you checked the MFS box, enter the name of spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent. ▶

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Bassem El Mallakh | | 3012 |

| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |
|---|---|---|

Home address (number and street). If you have a P.O. box, see instructions.  Apt. no.

116 Rockefeller

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).

Irvine, CA 92612

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.  [ ] You  [ ] Spouse

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|

If more than four dependents, see instructions and ✔ here  ▶ [ ]

**Standard Deduction**  Someone can claim:  [ ] You as a dependent  [ ] Your spouse as a dependent
[ ] Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You:  [ ] Were born before January 2, 1955  [ ] Are blind  Spouse:  [ ] Was born before January 2, 1955  [ ] Is blind

**Dependents** (see instructions):

| (1) First name  Last name | (2) Social security number | (3) Relationship to you | (4) ✔ if qualifies for (see instructions): |
|---|---|---|---|
| | | | Child tax credit  Credit for other dependents |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | | |
|---|---|---|---|---|
| 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 1 | |
| 2a | Tax-exempt interest ............ | 2a | b Taxable int. Att. Sch. B if reqd ...... 2b | 5. |
| 3a | Qualified dividends ............ | 3a | b Ordinary div. Att. Sch. B if reqd ...... 3b | |
| 4a | IRA distributions.... ....... | 4a | b Taxable amount............... 4b | |
| c | Pensions and annuities...... | 4c | d Taxable amount............... 4d | |
| 5a | Social security benefits ......... | 5a | b Taxable amount............... 5b | |
| 6 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ [ ] | | 6 | |
| 7a | Other income from Schedule 1, line 9....................... | | 7a | |
| b | Add lines 1, 2b, 3b, 4b, 4d, 5b, 6, and 7a. This is your **total income** ............ ▶ | | 7b | 5. |
| 8a | Adjustments to income from Schedule 1, line 22................. | | 8a | |
| b | Subtract line 8a from line 7b. This is your **adjusted gross income** ............ ▶ | | 8b | 5. |
| 9 | Standard deduction or itemized deductions (from Schedule A) ......... | 9 | 12,200. | |
| 10 | Qualified business income deduction. Attach Form 8995 or Form 8995-A ..... | 10 | | |
| 11a | Add lines 9 and 10 .......................... | | 11a | 12,200. |
| b | **Taxable income.** Subtract line 11a from line 8b. If zero or less, enter -0-............... | | 11b | 0. |

**Standard Deduction for —**
• Single or Married filing separately, $12,200
• Married filing jointly or Qualifying widow(er), $24,400
• Head of household, $18,350
• If you checked any box under Standard Deduction, see instructions.

BAA **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**  Form 1040 (2019)

FDIA0112L  10/07/19

# Tax Returns

Tax Returns 2022

IRS Department of the Treasury Internal Revenue Service
PO BOX 236
MEMPHIS TN 38101-0236

In reply refer to: 0539300000
Dec. 13, 2022 LTR 2645C K0
***-**-3012 201912 30
Input Op: 0309926218 00014802
BODC: WI

BASSEM EL MALLAKH
116 ROCKEFELLER
IRVINE CA 92612-8114

Taxpayer identification number: ***-**-3012
Tax periods: Dec. 31, 2019
Form: 1040

Dear Taxpayer:

Thank you for your inquiry of Oct. 05, 2022.

We're working on your account. However, we need an additional 60 days to send you a complete response on what action we are taking on your account. We don't need any further information from you right now.

If you prefer, you can write to that office at the address we provided in this letter.

If you have questions, you can call 1-800-829-0922.

If you prefer, you can write to the address at the top of the first page of this letter.

Find tax forms or publications by visiting www.irs.gov/forms or calling 800-TAX-FORM (800-829-3676).

Whenever you write, include a copy of this letter and your telephone numbers along with the hours we can reach you.

Keep a copy of this letter for your records.

Thank you for your cooperation.

# Tax Returns

CPA letter confirming Tax Returns was filed

---

**SHENOUDA & ASSOCIATES, LLP**
16377 BEACH BLVD., SUITE 222
HUNTINGTON BEACH, CA 92648
(714) 842-5045

September 15, 2022

Bassem El-Maliah
116 Rockefeller
Irvine, CA 92612

Dear Bassem,

Your 2021 Federal Income Tax Return was acknowledged as accepted by the Internal Revenue Service. No tax is payable with the filing of this return. The refund of $1,400 will be directly deposited into your checking account.

Your 2021 California Individual Income Tax Return was acknowledged as accepted by the State of California on . There is a balance due of $3,300. The balance due will be directly withdrawn from your bank account once the State of California has processed the return.

Please be sure to call if you have any questions.

Sincerely,

Hatun Shenouda, MBA

Visit us online:
www.shenoudallp.com
www.facebook.com/ShenoudaLLP
www.twitter.com/ShenoudaLLP

Access Your Tax Returns and Tax Documents Securely Anytime:
https://shenoudallp.smartvault.com
(Request: Invite From Our Office)

# EXHIBIT 3



## INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB

### MEMBERS' CONDOMINIUM OWNERS POLICY – FORM 6
### PROPERTY INSURANCE POLICY DECLARATIONS

#### Evidence of Insurance
Policy contains 438BFU, printed on next page, in favor of Mortgagee shown.

| | |
|---|---|
| **MORTGAGEE**<br>ADDITIONAL OWNERS INTEREST<br>US TRUSTEE<br>UNITED STATES TRUSTEE (SA)<br>411 W FOURTH ST SUITE 7160<br>SANTA ANA CA 92701 | **LOAN NUMBER**<br><br>**POLICY NUMBER**<br>     20189 |
| **NAMED INSURED AND MAILING ADDRESS**<br>BASSEM EL MALLAKH<br>116 ROCKEFELLER<br>IRVINE CA 92612 | **LOCATION OF PREMISES (IF DIFFERENT FROM MAILING ADDRESS)** |

| | |
|---|---|
| ☐ **PROPERTY INSURANCE POLICY DECLARATIONS**<br>EFFECTIVE DATE OF THIS POLICY 10262022   12:01 A.M.<br>(PACIFIC STANDARD TIME)<br>EXPIRATION DATE OF THIS POLICY 10262023   12:01 A.M.<br>(PACIFIC STANDARD TIME)<br>**ANNUAL PREMIUM $** | **COVERAGES AND LIMITS OF LIABILITY**<br><br>**PART I - PROPERTY COVERAGES**<br><br>COVERAGE A – BUILDING PROPERTY     82000<br><br>OTHER PERILS DEDUCTIBLE     5000<br><br>WATER DEDUCTIBLE     5000 |
| ☐ **AMENDMENT OF PROPERTY INSURANCE DECLARATIONS**<br>**ENDORSEMENT**<br>EFFECTIVE DATE     12:01 A.M<br>(PACIFIC STANDARD TIME)<br>EXPIRATION DATE OF THE POLICY     12.01 A.M.<br>(PACIFIC STANDARD TIME) | |

**PROVISIONS**
This form is not a contract of insurance  The provisions of the policy shall prevail in all respects. All premiums for the insurance policy shall be computed in accordance with the Interinsurance Exchange of the Automobile Club rules, forms, premiums and minimum premiums applicable to the insurance afforded which are in effect at the inception of the insurance policy and upon each anniversary thereof, including the date of interim changes. The insurance policy does not become effective unless and until escrow closes, the named insured has an ownership interest in the residence premises, and the premium is paid or reserved in an escrow account. If the insurance protection evidenced herein terminates, the mortgagee will be given notice in accordance with the standard mortgagee clause (438BFU)

*ACSC Management Services, Inc.*
**ATTORNEY-IN-FACT**

**FOR QUESTIONS OR CHANGES CALL**
8720 01/16

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **DETACH HERE AND RETURN WITH PREMIUM PAYMENT** . . . . . . . . . . . . . . . . . . . . .



**INTERINSURANCE EXCHANGE of the**
Automobile Club of Southern California
MAILING ADDRESS: P.O. Box 25448 SANTA ANA, CALIFORNIA 92799-5448

**NOTICE OF
PREMIUM DUE**

| | | |
|---|---|---|
| **LOAN NUMBER** | **POLICY NUMBER**<br>CHO183020189<br>**DUE DATE** | **PLEASE PAY THE PREMIUM DUE BEFORE OR ON THE DUE DATE** |
| **BASSEM EL MALLAKH**<br>116 ROCKEFELLER | **PREMIUM DUE** | **MAKE CHECK PAYABLE TO ACSC** |

Insurance

Car and Home Insurance 2023

# Insurance

Medical Insurance 2022

blue california
601 12th Street
Oakland, CA 94607

NAME: BASSEM ELMALLAKH
MEMBER ID#: 911268111

**************************AUTO**5-DIGIT 92617
131525 13 92 T756 P1 2MO
BASSEM ELMALLAKH
116 ROCKEFELLER
IRVINE, CA 92612-8114

**Updates to your 2022 coverage**

November 28, 2022

Update to your Blue Shield of California 2022 coverage for Silver 87 PPO Jan22

Dear Member,

This is an endorsement to your Blue Shield of California (Blue Shield) plan. It updates your coverage to reflect recent changes to laws that apply to your 2022 Blue Shield plan. The pages enclosed show exactly how and where we revised your plan documents.

Review this endorsement and refer to it when you access your plan documents. Make sure to keep it with the rest of your records. You can access your plan documents online at **blueshieldca.com/policies**.

If you have questions about this update, please contact member services at the number on the back of your Blue Shield member ID card.

Thank you for choosing Blue Shield. We look forward to continuing to meet your health coverage needs.

Sincerely,

Patrice Bergman
Vice President and General Manager

Blue Shield of California is an independent member of the Blue Shield Association

A543671FP_1022



EXHIBIT 4

# Wells Fargo Combined Statement of Accounts

September 30, 2022 ■ Page 1 of 6



BASSEM VICTOR EL MALLAKH
116 ROCKEFELLER
IRVINE CA 92612-8114

## Questions?

Available by phone 24 hours a day, 7 days a week.
We accept all relay calls, including 711
**1-800-742-4932**
En español: 1-877-727-2932

Online: wellsfargo.com

Write: Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.

| | | | |
|---|---|---|---|
| Online Banking | ☐ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☐ | Overdraft Protection | ☐ |
| Mobile Banking | ☐ | Debit Card | ☐ |
| My Spending Report | ☐ | Overdraft Service | ☑ |

**Other Wells Fargo Benefits**

**From Wells Fargo Home Mortgage**

Is a home purchase in your future? Competitive rates and low down payment options make now a great time to buy a home. Plus, as a Wells Fargo customer, you can count on personalized guidance and streamlined service every step of the way.

Get started with an online mortgage application that can pre-fill your Wells Fargo account information and save you time. Use your Wells Fargo Online® username and password at the start of the application. Go to wellsfargo.com/homepurchase or contact your local home mortgage consultant.

Sheet Seq = 0105191
Sheet 00091 of 00003

Created With Tiny Scanner

**CHASE** ◻

JP Morgan Chase Bank, N.A.
PO Box 659754
San Antonio, TX 78265-9754

Questions?
◻ chase.com
☎ 1-800-935-9935
We accept operator relay calls

10/28/2022

**BASSEM V ELMALLAKH**
**116 ROCKEFELLER**
**IRVINE, CA 92612-8114**

## Update:    We closed your account

Your account ending in 7532

*Dear Bassem Elmallakh*

Thank you for your recent inquiry about your account. We closed your account above on 09/20/2022
If you have questions, please call us at 1-800-935-9935 or visit any of our branches.

Sincerely,

Customer Service

©2019 JPMorgan Chase Bank, N.A. Member FDIC
M1006-01 (09/19)

Created With Tiny Scanner

# EXHIBIT 5

California Driver License



# EXHIBIT 6

Car Registration



EXHIBIT 7

# Gas Bills



Gas Bills from August
To November 2022

# Gas Bills



Gas Bills from December
To February 2023

EXHIBIT 8

# Water Bills

Water bill for August 2022



# Water Bills

Water bill for September 2022



# Water Bills

Water bill for October 2022



Irvine Ranch Water District

Page 1 of 4

BASSEM ELMALLAKH

116 Rockefeller

AUTOPAY Scheduled Oct 31, 2022    $46.90

# Water Bills

Water bill for November 2022



# Water Bills

Water bill for January 2023



EXHIBIT 9

Insurance



Medical Insurance Card

# EXHIBIT 10

# Food Delivery

Uber Eats receipts



# Food Delivery

Uber Eats receipts
Examples




# EXHIBIT 11

# Gym Check in's

Gym Check-ins at LA fitness location: 3021 Michelson Dr, Irvine, CA September to December 2022 dates

# Gym Check in's

Gym Check-ins at LA
fitness location: 3021
Michelson Dr, Irvine, CA
May to August 2022 dates



# EXHIBIT 12

# Find my iPhone GPS device



Find my iPhone GPS
locator device on the
iPhone IOS

# EXHIBIT 13

# Travel

From Orange county to San Fran on September 08 2022



2/2/23 1:41 AM

Find Your confirmation receipt. IBPNOT for your flight to San Francisco on 9/8/22

| Thu, Sep 08 | | Thu, Sep 08 |
| 04:00 PM | | 05:25 PM |
| **SNA** | ✈ | **SFO** |
| Orange County/Santa Ana | | San Francisco |

## Summary of airfare charges

Bassem Elmallakh
*Mileage Plan # join Mileage Plan not add to reservation*
Ticket 0272310620554

| Base fare and surcharges | $14.65 |
| Taxes and other fees | $15.70 |
| Per person total | $30.35 |

Alexander Hanna
*Mileage Plan # join Mileage Plan and add to reservation*
Ticket 0272310620556

| Base fare and surcharges | $14.65 |
| Taxes and other fees | $15.70 |
| Per person total | $30.35 |

**Total charges for air travel** — **$60.70**

Non-refundable fare of $60.70 was charged to the American Express card with number ············3692 held by Bassem Hanna on Sep 8, 2022

Discount code ECSR9080L(B119722) was applied to this purchase. Click for restrictions

Travel

From Orange county to San Fran on September 08 2022

2/28/23 1:41 AM

Find Your confirmation receipt IRPWOT for your flight to San Francisco on 9/8/22

✈

# Bassem,
# you're all set.

We can't wait to see you on board. Before you fly, view full reservation details or make changes to your flight online. With Mileage Plan™, you earn a mile for every mile flown. Don't miss out on miles, join Mileage Plan now.

MANAGE TRIP

Confirmation code
**IRPWOT**

**Alaska**
Flight 3494
Embraer ERJ 175

**Traveler(s)**
Bassem Elmallakhi
Seat 19A, Class L (Coach)

Alexander Hanna
Seat 19B, Class L (Coach)

Flight Operated by SkyWest Airlines as AlaskaSkyWest. Check in with Alaska Airlines

EXHIBIT 14



# Amazon packages

## Amazon Prime family account receipts



# Amazon packages

## Amazon Prime family account receipts





# Amazon packages

Amazon Personal account- ( non-Prime Service ) takes longer time to deliver packages



# EXHIBIT 15



FedEx Office

3992 Barranca Pkwy Ste A
Irvine, CA 92606
(949) 552-1717

Terminal: 0596MIX04
9/19/2022 19:22
Receipt #: 059661N2952
Type: Purchase

| Qty | Description | Amount |
|---|---|---|
| 18 | Self Serve Scan 8.5x11/14, 11x17 | 8.82 |
| | SubTotal | 8.82 |
| | District tax | 0.04 |
| | City tax | 0.00 |
| | County tax | 0.11 |
| | State tax | 0.53 |
| | Total | USD $9.50 |

Acct #:************1451
VISA DEBIT
Chip Read
Auth No.: 011522
Mode: Issuer
AID: A0000000031010
NO CVM
CVM Result: 5F0002
TVR: 8000008000
IAD: 06011203608000
TSI: 6800
ARC: 00
APPROVED

The Cardholder agrees to pay the Issuer of the charge card in accordance with the agreement between the Issuer and the Cardholder.

FedEx Office

Tell us how we're doing and receive $5 off your next $30 print order*. Complete our survey by scanning the QR code below, visit **fedex.com/welisten**.

Offer expires 12/31/2022

[illegible]

By submitting your project to FedEx Office or by making a purchase in a FedEx Office store, you agree to all FedEx Office terms and conditions, including limitations of liability.

Request a copy of our terms and conditions from a team member or visit fedex.com/officeservicetermss for details.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL DECLARATION OF BASSEM VICTOR EL MALLAKH IN SUPPORT OF DEBTOR'S OPPOSITION TO BELGIUM INVESTMENT 960 BAY DR, LLC'S OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/21/23, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
U.S. Trustee
Nancy S. Goldenberg
411 W. Fourth St., Ste. 7160
Santa Ana, CA 92701

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/21/23, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/21/23 | Peter Garza | /s/Peter Garza |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                           **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
# "11"

MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:   (310) 271-6223
Facsimile:   (310) 271-9805
michael.berger@bankruptcypower.com

Counsel for Debtor,
Bassem Victor El Mallakh

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>BASSEM VICTOR EL MALLAKH,<br><br>Debtor and Debtor-in-Possession. | CASE NO.: 8:22-bk-11605-TA<br><br>Chapter 11<br><br>**DECLARATION OF REEM HANNA IN SUPPORT OF DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION**<br><br>Date:   March 30, 2023<br>Time:   11:00 a.m.<br>Place:  411 West Fourth Street<br>          Courtroom 5B<br>          Santa Ana, CA 92701<br><br>Via Tele/Videoconference on Zoom |

## DECLARATION OF REEM HANNA

I, Reem Hanna, declare and state as follows:

1.      I am the sister of Debtor Bassem Victor El Mallakh. I am over the age of 18. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      I live at 116 Rockefeller, Irvine, California 92612 ("Rockefeller Property"). with my brother Bassem who is the Debtor in this case. The Rockefeller Property has

1

three (3) bedrooms. I sleep in one (1) bedroom, my son sleeps one (1) bedroom, and

Bassem sleeps in one (1) bedroom. I pay Bassem $4,000 per month in rent to live in the

Rockefeller Property with him.

3.     Since I started living at the Rockefeller Property on or about mid-2018,

Bassem has always lived at the Rockefeller Property with me there.

4.     On September 19, 2022, when Bassem filed his Chapter 11 case, Bassem

was living at the Rockefeller Property with me and my son, and Bassem continues to

reside there as his primary residence thereafter.

5.     From on or about 2016 through 2021, Bassem was working in Santa

Monica at 525 Broadway, Santa Monica, CA 90410 (the "Santa Monica Property") and

due to the commute between Santa Monica and Orange County, Bassem would sleep

some evenings at the Santa Monica Property if he had to work late and was too tired to

drive back home to the Rockefeller Property. However, the Rockefeller Property was and

always has been Bassem's primary residence.

6.     In the previous depositions I did in connection with Belgium's claims

against Bassem, the questions Belgium's counsel asked me were in regards to whether

Bassem was served at the Rockefeller Property.


I declare under penalty of perjury that the foregoing is true and correct and that

this declaration is executed on March 21 , 2023 at_____5:32 Chicago_____.


_____
Reem Hanna

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF REEM HANNA IN SUPPORT OF DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/21/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/21/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Theodore Albert
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/21/2023 | Peter Garza | /s/Peter Garza |
| *Date* | *Printed Name* | *Signature* |

**2. SERVED BY UNITED STATES MAIL**:

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT
# "12"

1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Blvd. 6ᵗʰ Floor
   Beverly Hills, CA 90212-2929
3  Telephone:   (310) 271-6223
   Facsimile:   (310) 271-9805
4  michael.berger@bankruptcypower.com

5  Counsel for Debtor,
   Bassem Victor El Mallakh

6

7                  UNITED STATES BANKRUPTCY COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                       SANTA ANA DIVISION

10 In re:                        )  CASE NO.: 8:22-bk-11605-TA
                                 )
11 BASSEM VICTOR EL MALLAKH,     )  Chapter 11
                                 )
12                               )  **DECLARATION OF ESSAM EL**
                                 )  **MALLAKH IN SUPPORT OF**
13      Debtor and Debtor-in-Possession. )  **DEBTOR'S OPPOSITION TO**
                                 )  **BELGIUM INVESTMENTS 960 BAY**
14                               )  **DR, LLC'S OBJECTION TO**
                                 )  **DEBTOR'S CLAIMED HOMESTEAD**
15                               )  **EXEMPTION**
                                 )
16                               )
                                 )  Date:    March 30, 2023
17                               )  Time:    11:00 a.m.
                                 )  Place:   411 West Fourth Street
18                               )           Courtroom 5B
                                 )           Santa Ana, CA 92701
19                               )
20 _____)  Via Tele/Videoconference on Zoom

21

22          **<u>DECLARATION OF ESSAM VICTOR EL MALLAKH</u>**

23      I, Essam El Mallakh, declare and state as follows:

24      1.      I am the father of the Debtor, Bassem Victor El Mallakh. I am over the age

25 of 18. I have personal knowledge of the facts set forth below and if called to testify as to

26 those facts, I could and would competently do so.

27      2.      On September 19, 2022, I went to Fedex with my son Bassem for Bassem

28 to sign the bankruptcy petition and other commencement documents. I purchased a pen

                                    1

that Bassem needed to sign his documents. Attached as **Exhibit "1"** is a true and correct copy of my Fedex receipt from September 19, 2022, from the Fedex store located at 3992 Barranca Park Ste A, Irvine, CA 92606 where I was with Bassem when he signed the bankruptcy documents.

3.      Over the past few years, I regularly visited Bassem and my daughter Reem and Reem's son (my grandson) who live with Bassem at 116 Rockefeller, Irvine, California 92612 ("Rockefeller Property"). I visit them about every six (6) months. When I visit them, I stay at the Rockefeller Property. The Rockefeller Property is a three (3) bedroom townhouse. During my visits, my daughter sleeps in one bedroom with my grandson, I sleep in my grandson's room and Bassem sleeps in the third bedroom.

4.      As far as I am aware, based on my visits to the United States, Bassem lives at the Rockefeller Property. Bassem was living at the Rockefeller Property on September 19, 2022, and he continues to reside at the Rockefeller Property as his principal residence.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on March __21, 2023 at_____Egypt_____.

_____
Essam El Mallakh

2

# EXHIBIT 1

Firefox                                                                                    about:srcdoc



ACCOUNT ENDING #1004                                              CARD MEMBER

Green Card                                                        ESSAM ELMALLAKH

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| Sep 19, 2022 | **FEDEX OFFICE PRINT SHIP CENTER** 3992 BARRANCA PKWY | ApplPay FEDEX OFFICE IRVINE CA | $9.68 |

Sep 19, 2022

**FEDEX OFFICE PRINT
SHIP CENTER**
3992 BARRANCA PKWY

IRVINE
CA
92606-8223
(888) 889-7121
www.fedex.com

ApplPay FEDEX OFFICE IRVINE CA
Will appear on your Sep 21, 2022 statement as ApplPay FEDEX
OFFICE IRVINE CA

METHOD                    CARD
Paid for with Apple Pay   ESSAM ELMALLAKH

MEMBERSHIP REWARDS POINTS
1X on Other purchases                              10

ADDITIONAL INFORMATION
059600232910596002329192606

$9.68

1 of 1                                                                    2/27/2023, 4:40 PM

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6ᵗʰ Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF ESSAM EL MALLAKH IN SUPPORT OF DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/21/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/21/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/21/2023 | Peter Garza | /s/Peter Garza |
|-----------|-------------|----------------|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
# "13"

| Fill in this information to identify your case: | |
| --- | --- |
| United States Bankruptcy Court for the:<br><br>CENTRAL DISTRICT OF CALIFORNIA | |
| Case number *(if known)* | Chapter you are filing under:<br>☐ Chapter 7<br>■ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13 |

☐ Check if this is an amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy

06/22

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- |
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Bassem**<br>First name<br><br>**Victor**<br>Middle name<br><br>**El Mallakh**<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | **Bassem E. El Mallakh** | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-3012 | |

Debtor 1   **Bassem Victor El Mallakh**                                    Case number *(if known)*

|                                                                          | About Debtor 1:                                                                                                                  | About Debtor 2 (Spouse Only in a Joint Case):                                                                                     |
|--------------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------|

**4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

■ I have not used any business name or EINs.                               ☐ I have not used any business name or EINs.

Business name(s)                                                           Business name(s)

EIN                                                                        EIN

---

**5.** **Where you live**

116 Rockefeller
Irvine, CA 92612
Number, Street, City, State & ZIP Code                                     If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

Orange
County                                                                     County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code                          Number, P.O. Box, Street, City, State & ZIP Code

---

**6.** **Why you are choosing *this district* to file for bankruptcy**

Check one:

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Check one:

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1   **Bassem Victor El Mallakh**                                          Case number *(if known)* _____

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

Check one. (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010))*. Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☑ Chapter 11

☐ Chapter 12

☐ Chapter 13

**8.** **How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

☐ No.

☑ Yes

| | District | Santa Ana Division, Central District of California | When | 7/12/22 | Case number | 8:22-bk-11158-TA |
|---|---|---|---|---|---|---|
| | District | | When | | Case number | |
| | District | | When | | Case number | |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

☐ Yes.

| | Debtor | | | | Relationship to you | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number, if known | |
| | Debtor | | | | Relationship to you | |
| | District | | When | | Case number, if known | |

**11.** **Do you rent your residence?**

☑ No.   Go to line 12.

☐ Yes.   Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Debtor 1  **Bassem Victor El Mallakh** _____  Case number *(if known)* _____

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.  Go to Part 4.

☐ Yes.  Name and location of business

_____
Name of business, if any

_____
Number, Street, City, State & ZIP Code

Check the appropriate box to describe your business:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor* or a debtor as defined by 11 U.S. C. § 1182(1)?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines. If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ No.  I am not filing under Chapter 11.

■ No.  I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.  I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.  I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.  What is the hazard? _____

If immediate attention is needed, why is it needed? _____

Where is the property? _____

_____
Number, Street, City, State & Zip Code

Debtor 1    **Bassem Victor El Mallakh**    Case number *(if known)*

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |

**About Debtor 1:**

**About Debtor 2 (Spouse Only in a Joint Case):**

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

*You must check one:*

■ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ I am not required to receive a briefing about credit counseling because of:

☐ Incapacity.
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ Disability.
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ Active duty.
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

*You must check one:*

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ I am not required to receive a briefing about credit counseling because of:

☐ Incapacity.
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ Disability.
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ Active duty.
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

---

Debtor 1    **Bassem Victor El Mallakh**                      Case number *(if known)* _____

| Part 6: | Answer These Questions for Reporting Purposes |
|---|---|

**16. What kind of debts do you have?**

**16a.** Are your debts primarily consumer debts? *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

■ No. Go to line 16b.

☐ Yes. Go to line 17.

**16b.** Are your debts primarily business debts? *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

■ Yes. Go to line 17.

**16c.** State the type of debts you owe that are not consumer debts or business debts

---

**17. Are you filing under Chapter 7?**

■ No.   I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes.   I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

---

**18. How many Creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Part 7: | Sign Below |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

_____              _____
**Bassem Victor El Mallakh**                 Signature of Debtor 2
Signature of Debtor 1

Executed on   9/19/2022                  Executed on _____
            MM / DD / YYYY                         MM / DD / YYYY

---

Debtor 1 **Bassem Victor El Mallakh**

| | |
|---|---|
| **For your attorney, if you are represented by one**<br><br>**If you are not represented by an attorney, you do not need to file this page.** | I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect. |

Signature of Attorney for Debtor                     Date  09/19/2022
                                                                          MM / DD / YYYY

**Michael Jay Berger**
Printed name

**Law Offices of Michael Jay Berger**
Firm name

**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**
Number, Street, City, State & ZIP Code

Contact phone  **(310) 271-6223**          Email address    michael.berger@bankruptcypower.com

**100291 CA**
Bar number & State

---

Official Form 101                    Voluntary Petition for Individuals Filing for Bankruptcy                    page 7

Fill in this information to identify your case:

| Debtor 1 | Bassem Victor El Mallakh | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number
(if known) _____

☐ Check if this is an amended filing

## B 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

**12/15**

If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an insider. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.

**Part 1.** List the 20 Unsecured Claims in Order from Largest to Smallest. Do Not Include Claims by Insiders.

| | | | Unsecured claim |
|---|---|---|---|
| **1** | What is the nature of the claim? | 116 Rockefeller Irvine, CA 92612 Orange County Debtor's principal residence | $3,402,710.00 |

**Belgium Investments 960 Bay Dr, LLC**
**c/o Patrick Miller, Esq.**
**P. Miller Legal Services**
**121 S Oak Avenue**
**Pasadena, CA 91107**

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
■ None of the above apply

Does the creditor have a lien on your property?

☐ No

Contact

■ Yes. Total claim (secured and unsecured) $4,255,000.00
Value of security: - $1,100,000.00
Unsecured claim $3,402,710.00

Contact phone

| **2** | What is the nature of the claim? | Credit Card | $1,193.00 |
|---|---|---|---|

**Wells Fargo Bank NA**
**1 Home Campus Mac X2303-01a**
**3rd Floor**
**Des Moines, IA 50328**

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
■ None of the above apply

| Debtor 1 | **Bassem Victor El Mallakh** | | Case number *(if known)* | |

Does the creditor have a lien on your property?

■ No

☐ Yes. Total claim (secured and unsecured)

_____
Contact

_____
Contact phone

Value of security:        -  _____

Unsecured claim            _____

## Part 2:  Sign Below

Under penalty of perjury, I declare that the information provided in this form is true and correct.

X ~~_signature_~~

X _____

**Bassem Victor El Mallakh**
Signature of Debtor 1

Signature of Debtor 2

Date  9 / 19 / 2022

Date _____

## STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LBR 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1. A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

**Chapter 13 bankruptcy filed on July 12, 2022; Case No.: 8:22-bk-11158-TA**
**Dismissed on July 26, 2022.**

2. (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

3. (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

4. (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at **Irvine** , California.

Date: 9/19/2022

**Bassem Victor El Mallakh**
Signature of Debtor 1

Signature of Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California

October 2018                                    Page 1                    **F 1015-2.1.STMT.RELATED.CASES**

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

---

This notice is for you if:

> You are an individual filing for bankruptcy,
> and
>
> Your debts are primarily consumer debts.
> *Consumer debts* are defined in 11 U.S.C.
> § 101(8) as "incurred by an individual
> primarily for a personal, family, or
> household purpose."

## The types of bankruptcy that are available to individuals

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan
    for family farmers or
    fishermen

Chapter 13 - Voluntary repayment plan
    for individuals with regular
    income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
| --- | --- |
| $245 | filing fee |
| $78 | administrative fee |
| + $15 | trustee surcharge |
| $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

### Chapter 11: Reorganization

|   | $1,167 | filing fee |
|---|---|---|
| + | $571 | administrative fee |
|   | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|------|------------|
| + | $78  | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|------|------------|
| + | $78  | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

---

### Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

---

### Bankruptcy crimes have serious consequences

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

### Make sure the court has your mailing address

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

### Understand which services you could receive from credit counseling agencies

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Michael Jay Berger**<br>9454 Wilshire Boulevard, 6th floor<br>Beverly Hills, CA 90212<br>(310) 271-6223 Fax: (310) 271-9805<br>California State Bar Number: 100291 CA<br>michael.berger@bankruptcypower.com<br><br><br><br><br><br><br><br>☐   *Debtor(s) appearing without an attorney*<br>■   *Attorney for Debtor* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA**

</div>

| In re:<br><br>         **Bassem Victor El Mallakh**<br><br><br><br><br><br>                                   Debtor(s). | CASE NO.:<br>CHAPTER: **11**<br><br><br><br>**VERIFICATION OF MASTER<br>MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(a)]** |
|---|---|

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __2__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: ___9/19/2022___

_____
Signature of Debtor 1

Date: _____

Date: ___9/19/2022___

_____
Signature of Debtor 2 (joint debtor) ) (if applicable)

_____
Signature of Attorney for Debtor (if applicable)

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                                                **F 1007-1.MAILING.LIST.VERIFICATION**

Bassem Victor El Mallakh
116 Rockefeller
Irvine, CA 92612


Michael Jay Berger
Law Offices of Michael Jay Berger
9454 Wilshire Boulevard, 6th floor
Beverly Hills, CA 90212


Belgium Investments 960 Bay Dr, LLC
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S Oak Avenue
Pasadena, CA 91107


Central Park West Community HOA
401 Rockefeller #208
Irvine, CA 92612


First Service Residential
15241 Laguna Canyon Rd.
Irvine, CA 92618


First Service Residential
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054


Freedom Mortgage
951 Yamato Rd.
Boca Raton, FL 33431


Freedom Mortgage
PO Box 50428
Indianapolis, IN 46250

Freedom Mortgage Corporation
Attn: Bankruptcy
907 Pleasant Valley Ave, Ste 3
Mt Laurel, NJ 08054

Td Auto Finance
Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI 48333

TD Auto Finance
6 Atlantis Way
Lewiston, ME 04240

Wells Fargo Bank NA
1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328

**EXHIBIT
"14"**

# United States Bankruptcy Court
## Central District of California

In re   **Bassem Victor El Mallakh**

Debtor.

Case No.   **8:22-bk-11605-TA**

Chapter   **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|

**-NONE-**

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, Bassem Victor El Mallakh, as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date   9/27/2022

Signature

**Bassem Victor El Mallakh**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Sheet 1 of 1 in List of Equity Security Holders

# STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LBR 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    **Chapter 13 bankruptcy filed on July 12, 2022; Case No.: 8:22-bk-11158-TA**
    **Dismissed on July 26, 2022.**

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    **none**

3.  (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    **none**

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    **none**

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at __Irvine_____ , California.

Date: __9/27/2022__

Bassem Victor El Mallakh
Signature of Debtor 1


Signature of Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

October 2018                                    Page 1                    **F 1015-2.1.STMT.RELATED.CASES**

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **8:22-bk-11605-TA** |

☐ Check if this is an amended filing

## Official Form 106Sum
### Summary of Your Assets and Liabilities and Certain Statistical Information      12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

**Part 1:    Summarize Your Assets**

|  | | **Your assets**<br>Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B) | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B......................................... | $    **1,100,000.00** |
| | 1b. Copy line 62, Total personal property, from Schedule A/B............................... | $    **64,508.00** |
| | 1c. Copy line 63, Total of all property on Schedule A/B......................................... | $    **1,164,508.00** |

**Part 2:    Summarize Your Liabilities**

|  | | **Your liabilities**<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $    **4,624,062.40** |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*..................................... | $    **0.00** |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............................... | $    **1,193.00** |
| | **Your total liabilities** | $    **4,625,255.40** |

**Part 3:    Summarize Your Income and Expenses**

|  | | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*.................................. | $    **4,000.00** |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*........................................ | $    **3,503.00** |

**Part 4:    Answer These Questions for Administrative and Statistical Records**

6.  **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐  No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

■  Yes

7.  **What kind of debt do you have?**

☐  **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9 for statistical purposes. 28 U.S.C. § 159.

■  **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to

Official Form 106Sum      **Summary of Your Assets and Liabilities and Certain Statistical Information**      page 1 of 2

Debtor 1   __Bassem Victor El Mallakh__                        Case number *(if known)*  __8:22-bk-11605-TA__

the court with your other schedules.

8.  **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form
    122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.                          $ _____

9.  **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

**From Part 4 on *Schedule E/F*, copy the following:**                              **Total claim**

9a. Domestic support obligations (Copy line 6a.)                                 $ _____

9b. Taxes and certain other debts you owe the government. (Copy line 6b.)         $ _____

9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.)   $ _____

9d. Student loans. (Copy line 6f.)                                              $ _____

9e. Obligations arising out of a separation agreement or divorce that you did not report as
    priority claims. (Copy line 6g.)                                            $ _____

9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.)   +$ _____

9g. **Total.** Add lines 9a through 9f.                                         $ _____

Fill in this information to identify your case and this filing:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name · Middle Name · Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name · Middle Name · Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **8:22-bk-11605-TA** |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property                12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

   ☐ No. Go to Part 2.

   ☑ Yes. Where is the property?

**1.1**

**116 Rockefeller**
Street address, if available, or other description

**Irvine**        **CA**    **92612-0000**
City             State    ZIP Code

**Orange**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☑ Other    **Townhouse**

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Debtor's principal residence: townhouse.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,100,000.00** | **$1,100,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................=>

**$1,100,000.00**

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1    **Bassem Victor El Mallakh**                              Case number *(if known)*    **8:22-bk-11605-TA**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

■ Yes

| | | | |
|---|---|---|---|
| 3.1 | Make: **Mercedes** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |

Model: **C300**

Year: **2016**

Approximate mileage: **42,000**

Other information:

**The vehicle is financed with TD Financial. Monthly payment is $367.00.**

Who has an interest in the property? Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

**Current value of the entire property?**    **Current value of the portion you own?**

**$15,000.00**    **$15,000.00**

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here............................................................=>

**$15,000.00**

**Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

**Debtor's residence: Couch, coffee table, mattress, dresser, dining room table with 6 chairs, patio furniture, wall mirror, lamps, and other household goods and furniture**

**$2,000.00**

**Debtor's residence: 3 televisions, stove, fridge, laptop, desk computer, 2 cell phones, dishwashers, washer and dryer, and other household electronics**

**$3,000.00**

7. **Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

■ No

☐ Yes. Describe.....

8. **Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☐ No

■ Yes. Describe.....

Debtor 1    **Bassem Victor El Mallakh**                                   Case number *(if known)*   **8:22-bk-11605-TA**

| | |
|---|---|
| Debtor's residence: Bicycle and tennis equipment | $500.00 |

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes. Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes. Describe.....

| | |
|---|---|
| Debtor's residence: Clothes and shoes | $800.00 |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
■ No
☐ Yes. Describe.....

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
■ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes. Give specific information....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................................**    $6,300.00

---

**Part 4:   Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own? Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
■ Yes...................................................................................................................................

|  |  |
|---|---|
| **Cash** | $150.00 |

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes............................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking account** | Chase checking account ending in 7332 | $1,658.00 |

| | | | |
|---|---|---|---|
| 17.2. | **Checking account** | Wells Fargo account ending in 4464 | $0.00 |

---

Debtor 1    **Bassem Victor El Mallakh**                              Case number *(if known)*    **8:22-bk-11605-TA**

| 17.3. | **Checking account** | Wells Fargo account ending in 3158 | $0.00 |
|---|---|---|---|

---

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes.................        Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ☐ No

    ■ Yes. Give specific information about them...................
        Name of entity:                                    % of ownership:

| | | |
|---|---|---|
| Debtor has a 10% ownership interest in Belgium Investments 5655 S Troy LLC. The LLC owns an interest in a multi-family building (10 units), which are rented. However, due to Covid-19, some tenants have not been paying rent. The intention is to sell the property. | 10%     % | $40,000.00 |
| Debtor has a 20% ownership interest in Belgium Investments 5544 North Avenue, LLC. Debtor's 20% interest in Belgium Investments 5544 North Avenue, LLC held by his corporation BBGIP, Inc., in which Debtor holds a 20% interest, with another individual holding 80% interest. The property is vacant and has been in rehabilitation during the last two years. | 20%     % | Unknown |

---

20 **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
        Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ■ No
    ☐ Yes. List each account separately.
        Type of account:        Institution name:

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ■ No
    ☐ Yes. ....................        Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
    ■ No
    ☐ Yes.............        Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ■ No
    ☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
    ■ No

Official Form 106A/B                    Schedule A/B: Property                    page 4

Debtor 1   **Bassem Victor El Mallakh**    Case number *(if known)*   **8:22-bk-11605-TA**

☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ■ No
    ☐ Yes. Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes. Give specific information about them...

**Money or property owed to you?**    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**
    ☐ No
    ■ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| 2021 tax refund | Federal and State | $1,400.00 |
|---|---|---|

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes. Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ■ No
    ☐ Yes. Name the insurance company of each policy and list its value.
             Company name:                    Beneficiary:              Surrender or refund value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
    ■ No
    ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes. Give specific information..

Debtor 1    **Bassem Victor El Mallakh**    Case number *(if known)*    **8:22-bk-11605-TA**

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here............................................................................................................    **$43,208.00**

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

37  **Do you own or have any legal or equitable interest in any business-related property?**
☑ No  Go to Part 6.
☐ Yes.  Go to line 38.

**Part 6    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☑ No.  Go to Part 7.
☐ Yes.  Go to line 47.

**Part 7:    Describe All Property You Own or Have an Interest in That You Did Not List Above**

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
☑ No
☐ Yes.  Give specific information.........

54. Add the dollar value of all of your entries from Part 7. Write that number here  ...................................    **$0.00**

**Part 8:    List the Totals of Each Part of this Form**

55.  Part 1: Total real estate, line 2  ...................................................................................................    **$1,100,000.00**
56.  Part 2: Total vehicles, line 5    **$15,000.00**
57.  Part 3: Total personal and household items, line 15    **$6,300.00**
58.  Part 4: Total financial assets, line 36    **$43,208.00**
59.  Part 5: Total business-related property, line 45    **$0.00**
60.  Part 6: Total farm- and fishing-related property, line 52    **$0.00**
61.  Part 7: Total other property not listed, line 54    +    **$0.00**

62.  Total personal property. Add lines 56 through 61...    **$64,508.00**    Copy personal property total    **$64,508.00**

63.  Total of all property on Schedule A/B. Add line 55 + line 62    **$1,164,508.00**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **8:22-bk-11605-TA** |

☐ Check if this is an amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:   Identify the Property You Claim as Exempt

1. Which set of exemptions are you claiming? *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own. Copy the value from *Schedule A/B* | Amount of the exemption you claim *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **116 Rockefeller Irvine, CA 92612 Orange County Debtor's principal residence: townhouse.** Line from Schedule A/B: **1.1** | **$1,100,000.00** | ■ $626,400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.730 |
| **2016 Mercedes C300 42,000 miles The vehicle is financed with TD Financial.  Monthly payment is $367.00.** Line from Schedule A/B: **3.1** | **$15,000.00** | ■ $3,625.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.010 |
| **Debtor's residence: Couch, coffee table, mattress, dresser, dining room table with 6 chairs, patio furniture, wall mirror, lamps, and other household goods and furniture** Line from Schedule A/B: **6.1** | **$2,000.00** | ■ $2,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Debtor's residence: 3 televisions, stove, fridge, laptop, desk computer, 2 cell phones, dishwashers, washer and dryer, and other household electronics** Line from Schedule A/B: **6.2** | **$3,000.00** | ■ $3,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |

| Debtor 1 | **Bassem Victor El Mallakh** | | Case number (if known) | **8:22-bk-11605-TA** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Debtor's residence: Bicycle and tennis equipment**<br>Line from *Schedule A/B:* **9.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Debtor's residence: Clothes and shoes**<br>Line from *Schedule A/B:* **11.1** | $800.00 | ■ $800.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No

   ■ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ■ No

       ☐ Yes

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **8:22-bk-11605-TA** |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space
is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case
number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | | Amount of claim Do not deduct the value of collateral. | Value of collateral that supports this claim | Unsecured portion If any |

**2.1** **Belgium Investments 960 Bay Dr, LLC**
Creditor's Name

c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S Oak Avenue
Pasadena, CA 91107
Number, Street, City, State & Zip Code

| Column A | Column B | Column C |
|---|---|---|
| $4,345,250.00 | $1,100,000.00 | $3,517,569.40 |

**Describe the property that secures the claim:**

116 Rockefeller Irvine, CA 92612
Orange County
Debtor's principal residence:
townhouse.

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
■ Other (including a right to offset)    A writ of execution

Date debt was incurred **11/9/2020**    Last 4 digits of account number    **NCJC**

Official Form 106D    Schedule D: Creditors Who Have Claims Secured by Property    page 1 of 4

Debtor 1   **Bassem Victor El Mallakh**

First Name   Middle Name   Last Name

Case number (if known)   **8:22-bk-11605-TA**

| 2.2 | **Central Park West Community Associa** | | | | |
| --- | --- | --- | --- | --- | --- |

Creditor's Name

**Describe the property that secures the claim:**

$2,000.00   $1,100,000.00   $0.00

**116 Rockefeller Irvine, CA 92612**
**Orange County**
**Debtor's principal residence:**
**townhouse.**

**401 Rockefeller #208**
**Irvine, CA 92612**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **HOA**

Date debt was incurred   **January 21, 2021**

Last 4 digits of account number   **3201**

| 2.3 | **Freedom Mortgage Corporation** | | | | |
| --- | --- | --- | --- | --- | --- |

Creditor's Name

**Describe the property that secures the claim:**

$263,043.40   $1,100,000.00   $0.00

**116 Rockefeller Irvine, CA 92612**
**Orange County**
**Debtor's principal residence:**
**townhouse.**

**Attn: Bankruptcy**
**907 Pleasant Valley Ave,**
**Ste 3**
**Mt Laurel, NJ 08054**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **First Trust Deed**

Date debt was incurred   **October 29, 2013**

Last 4 digits of account number   **4275**

Debtor 1   **Bassem Victor El Mallakh**
　　　　　First Name　　　Middle Name　　　Last Name

Case number (if known)　**8:22-bk-11605-TA**

| 2.4 | **Td Auto Finance** | Describe the property that secures the claim: | $6,493.00 | $15,000.00 | $0.00 |

Creditor's Name

**2016 Mercedes C300 42,000 miles
The vehicle is financed with TD
Financial.  Monthly payment is
$367.00.**

**Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI
48333**

**As of the date you file, the claim is:** Check all that apply.

Number, Street, City, State & Zip Code

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
　community debt

☐ An agreement you made (such as mortgage or secured
　car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)　**Auto loan**

Date debt was incurred   **Opened
08/16  Last
Active 04/21**

Last 4 digits of account number   **9787**

---

| 2.5 | **The Townes at Central Park West Ass** | Describe the property that secures the claim: | $7,276.00 | $1,100,000.00 | $0.00 |

Creditor's Name

**116 Rockefeller Irvine, CA 92612
Orange County
Debtor's principal residence:
townhouse.**

**15241 Laguna Canyon
Rd.
Irvine, CA 92618**

**As of the date you file, the claim is:** Check all that apply.

Number, Street, City, State & Zip Code

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
　community debt

☐ An agreement you made (such as mortgage or secured
　car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)　**HOA**

Date debt was incurred   **May 18,
2021**

Last 4 digits of account number   **3401**

---

Add the dollar value of your entries in Column A on this page. Write that number here:

**$4,624,062.40**

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:

**$4,624,062.40**

**Part 2:**　**List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[ ]
Name, Number, Street, City, State & Zip Code

**First Service Residential
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054**

On which line in Part 1 did you enter the creditor?   **2.5**

Last 4 digits of account number ___

---

Official Form 106D    Additional Page of Schedule D: Creditors Who Have Claims Secured by Property    page 3 of 4

| Debtor 1 | **Bassem Victor El Mallakh** | | | Case number (if known) | **8:22-bk-11605-TA** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

[ ] Name, Number, Street, City, State & Zip Code
**Freedom Mortgage**
**951 Yamato Rd.**
**Boca Raton, FL 33431**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

[ ] Name, Number, Street, City, State & Zip Code
**Freedom Mortgage**
**PO Box 50428**
**Indianapolis, IN 46250**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

[ ] Name, Number, Street, City, State & Zip Code
**TD Auto Finance**
**6 Atlantis Way**
**Lewiston, ME 04240**

On which line in Part 1 did you enter the creditor?  **2.4**

Last 4 digits of account number ___

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **8:22-bk-11605-TA** |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims against you?

   ■ No. Go to Part 2.

   ☐ Yes.

### Part 2:    List All of Your NONPRIORITY Unsecured Claims

3. Do any creditors have nonpriority unsecured claims against you?

   ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

   ■ Yes.

4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3. If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | | | Total claim |
|---|---|---|---|
| **4.1** | **Wells Fargo Bank NA** | Last 4 digits of account number    2351 | **$1,193.00** |
| | Nonpriority Creditor's Name | | |

| | |
|---|---|
| 1 Home Campus Mac X2303-01a<br>3rd Floor<br>Des Moines, IA 50328 | **Opened 01/07  Last Active 9/10/21** |
| | When was the debt incurred? |
| Number Street City State Zip Code | |

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    Credit Card

### Part 3:    List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

### Part 4:    Add the Amounts for Each Type of Unsecured Claim

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

24271

Debtor 1   **Bassem Victor El Mallakh**                                     Case number (if known)   **8:22-bk-11605-TA**

|  |  |  | Total Claim |
|---|---|---|---|
| | 6a. | Domestic support obligations | 6a. | $ | 0.00 |

**Total claims from Part 1**

| | 6b. | Taxes and certain other debts you owe the government | 6b. | $ | 0.00 |
| | 6c. | Claims for death or personal injury while you were intoxicated | 6c. | $ | 0.00 |
| | 6d. | Other. Add all other priority unsecured claims. Write that amount here. | 6d. | $ | 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ | 0.00 |

|  |  |  | Total Claim |
|---|---|---|---|
| | 6f. | Student loans | 6f. | $ | 0.00 |

**Total claims from Part 2**

| | 6g. | Obligations arising out of a separation agreement or divorce that you did not report as priority claims | 6g. | $ | 0.00 |
| | 6h. | Debts to pension or profit-sharing plans, and other similar debts | 6h. | $ | 0.00 |
| | 6i. | Other. Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 1,193.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | 1,193.00 |

Official Form 106 E/F                 Schedule E/F: Creditors Who Have Unsecured Claims                 Page 2 of 2

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | 8:22-bk-11605-TA |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.   **Do you have any executory contracts or unexpired leases?**
     ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
     ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.   List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone). See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1   **Td Auto Finance**<br>**Attn: Bankruptcy**<br>**Po Box 9223**<br>**Farmington Hills, MI 48333** | **2016 Mercedes C300. Financed vehicle. Debtor wishes to retain the car and continue making the payments.** |

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | **8:22-bk-11605-TA** | | |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors                                                    12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
■ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

   ■ No
   ☐ Yes.

   In which community state or territory did you live?    **-NONE-**    . Fill in the name and current address of that person.

   _____
   Name of your spouse, former spouse, or legal equivalent
   Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

*Column 1:* **Your codebtor**
Name, Number, Street, City, State and ZIP Code

*Column 2:* **The creditor to whom you owe the debt**
Check all schedules that apply:

| 3.1 | | |
|---|---|---|
| | Name | |
| | Number    Street | |
| | City    State    ZIP Code | |

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

| 3.2 | | |
|---|---|---|
| | Name | |
| | Number    Street | |
| | City    State    ZIP Code | |

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **8:22-bk-11605-TA** |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:

MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income                                          12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:     Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ☐ Employed<br>■ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | | |
| | **Employer's name** | | |
| | **Employer's address** | | |
| | **How long employed there?** | | |

### Part 2:     Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ N/A |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ 0.00 | $ N/A |

Debtor 1    **Bassem Victor El Mallakh**    Case number *(if known)*  **8:22-bk-11605-TA**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 0.00 | $ N/A |

5. List all payroll deductions:

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ N/A |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ N/A |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ N/A |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ N/A |
| 5e. | Insurance | 5e. | $ 0.00 | $ N/A |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ N/A |
| 5g. | Union dues | 5g. | $ 0.00 | $ N/A |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 + | $ N/A |
| 6. | Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 0.00 | $ N/A |
| 7. | Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ 0.00 | $ N/A |

8. List all other income regularly received:

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | Net income from rental property and from operating a business, profession, or farm. Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 4,000.00 | $ N/A |
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ N/A |
| 8c. | Family support payments that you, a non-filing spouse, or a dependent regularly receive. Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ N/A |
| 8e. | Social Security | 8e. | $ 0.00 | $ N/A |
| 8f. | Other government assistance that you regularly receive. Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ N/A |
| 8h. | Other monthly income. Specify: | 8h.+ | $ 0.00 + | $ N/A |

9. Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h.   9.   $ 4,000.00   $ N/A

10. Calculate monthly income. Add line 7 + line 9.   10.   $ 4,000.00 + $ N/A = $ 4,000.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. State all other regular contributions to the expenses that you list in *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____   11.   +$ 0.00

12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies   12.   $ 4,000.00
    **Combined monthly income**

13. Do you expect an increase or decrease within the year after you file this form?
☐ No.
■ Yes. Explain:  | Debtor is looking for a full-time employment. |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | **8:22-bk-11605-TA** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.

   ☐ Yes. **Does Debtor 2 live in a separate household?**

       ☐ No

       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**  ■ No

   | Do not list Debtor 1 and Debtor 2. | ☐ Yes. | Fill out this information for each dependent............ | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|---|---|---|
   | Do not state the dependents names. | | | | | ☐ No ☐ Yes |
   | | | | | | ☐ No ☐ Yes |
   | | | | | | ☐ No ☐ Yes |
   | | | | | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**  ■ No  ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

**Your expenses**

| | | |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 1,961.00 |
| If not included in line 4: | | |
| 4a. Real estate taxes | 4a. $ | 0.00 |
| 4b. Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. Homeowner's association or condominium dues | 4d. $ | 166.00 |
| 5. Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

| Debtor 1 | **Bassem Victor El Mallakh** | Case number (if known) | **8:22-bk-11605-TA** |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. | Electricity, heat, natural gas | 6a. $ | **150.00** |
| | 6b. | Water, sewer, garbage collection | 6b. $ | **0.00** |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | **130.00** |
| | 6d. | Other. Specify:  **HOA with The Towns** | 6d. $ | **200.00** |
| 7. | **Food and housekeeping supplies** | | 7. $ | **300.00** |
| 8. | **Childcare and children's education costs** | | 8. $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | **50.00** |
| 10. | **Personal care products and services** | | 10. $ | **50.00** |
| 11. | **Medical and dental expenses** | | 11. $ | **20.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | 12. $ | **100.00** |
| | Do not include car payments. | | | |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | **0.00** |
| 14. | **Charitable contributions and religious donations** | 14. $ | **0.00** |
| 15. | **Insurance.** | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. | Life insurance | 15a. $ | **0.00** |
| | 15b. | Health insurance | 15b. $ | **0.00** |
| | 15c. | Vehicle insurance | 15c. $ | **50.00** |
| | 15d. | Other insurance. Specify: | 15d. $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | |
| | Specify: | | 16. $ | **0.00** |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | **326.00** |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | **0.00** |
| | 17c. | Other. Specify: | 17c. $ | **0.00** |
| | 17d. | Other. Specify: | 17d. $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I).** | 18. $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** | | $ | **0.00** |
| | Specify: | | 19. | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.** | | |
| | 20a. | Mortgages on other property | 20a. $ | **0.00** |
| | 20b. | Real estate taxes | 20b. $ | **0.00** |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | **0.00** |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | **0.00** |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | **0.00** |
| 21. | **Other:** Specify: | | 21. +$ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | **3,503.00** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | **3,503.00** |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | **4,000.00** |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | **3,503.00** |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | **497.00** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.    Explain here:

Fill in this information to identify your case:

| Debtor 1 | **Bassem Victor El Mallakh** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 8:22-bk-11605-TA | | |
| (if known) | | | |

☐ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

☑ **No**

☐ Yes. Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X _____    X _____
**Bassem Victor El Mallakh**    Signature of Debtor 2
Signature of Debtor 1

Date   9/27/2022    Date _____

Official Form 106Dec    Declaration About an Individual Debtor's Schedules

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 8:22-bk-11605-TA | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy    04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

1.  **What is your current marital status?**

    ☐ Married
    ☑ Not married

2.  **During the last 3 years, have you lived anywhere other than where you live now?**

    ☑ No
    ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

3.  **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

    ☑ No
    ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2    Explain the Sources of Your Income

4.  **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
    Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
    If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

    ☑ No
    ☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |
| For last calendar year: (January 1 to December 31, 2021 ) | ☐ Wages, commissions, bonuses, tips | | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** | |
| | First Name            Middle Name            Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name            Middle Name            Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | **8:22-bk-11605-TA** | |
| (if known) | | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy

04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1.  **What is your current marital status?**

    ☐ Married
    ☑ Not married

2.  **During the last 3 years, have you lived anywhere other than where you live now?**

    ☑ No
    ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

3.  **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

    ☑ No
    ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2    Explain the Sources of Your Income**

4.  **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
    Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
    If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

    ☑ No
    ☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |
| For last calendar year: (January 1 to December 31, 2021 ) | ☐ Wages, commissions, bonuses, tips | | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Debtor 1    **Bassem Victor El Mallakh**                    Case number *(if known)*   **8:22-bk-11605-TA**

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| For the calendar year before that:<br>(January 1 to December 31, 2020 ) | ☐ Wages, commissions, bonuses, tips | | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

**5.** **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☑ No
☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

| **Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy** |
|---|---|

**6.** **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☑ No. Neither Debtor 1 nor Debtor 2 has primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?

☑ No. Go to line 7.

☐ Yes List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

\* Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes. Debtor 1 or Debtor 2 or both have primarily consumer debts.
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No. Go to line 7.

☐ Yes List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| **Creditor's Name and Address** | **Dates of payment** | **Total amount paid** | **Amount you still owe** | **Was this payment for ...** |
|---|---|---|---|---|

**7.** **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

☑ No
☐ Yes. List all payments to an insider.

| **Insider's Name and Address** | **Dates of payment** | **Total amount paid** | **Amount you still owe** | **Reason for this payment** |
|---|---|---|---|---|

Debtor 1    **Bassem Victor El Mallakh**    Case number *(if known)*    **8:22-bk-11605-TA**

---

8.  **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
    Include payments on debts guaranteed or cosigned by an insider.

    ☑ No
    ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

---

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9.  **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
    List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

    ☐ No
    ☑ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| Belgium Investments 960 Bay Dr, LLC, v. Spencer Bank, et al. 18-28145 CA | Fraud | Circuit Court of the 11th Judicial Circ. In and For Miami-Dade County, Florida 175 NW 1st Avenue Miami, FL 33128 | ☐ Pending ☐ On appeal ☑ Concluded<br><br>Judgment entered on 2/25/2020 |
| Belguim Investments 960 Bay Dr, LLC v. Bassem Essam El Mallakh 2020-01148745 | Sister State Judgment for Fraud | Superior Court of California 700 W Civic Dr. Santa Ana, CA 92701 | ☑ Pending ☐ On appeal ☐ Concluded |

---

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ☑ No. Go to line 11.
    ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property Explain what happened | Date | Value of the property |
|---|---|---|---|

---

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
    ☑ No
    ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

---

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
    ☑ No
    ☐ Yes

---

**Part 5:    List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
    ☑ No
    ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

**Person to Whom You Gave the Gift and Address:**

---

Debtor 1    **Bassem Victor El Mallakh**                                    Case number *(if known)*    **8:22-bk-11605-TA**

---

14. Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?

☑ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| Charity's Name | | | |
| Address (Number, Street, City, State and ZIP Code) | | | |

### Part 6:    List Certain Losses

15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?

☑ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

### Part 7:    List Certain Payments or Transfers

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
☑ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Law Offices of Michael Jay Berger<br>9454 Wilshire Boulevard, 6th floor<br>Beverly Hills, CA 90212<br>michael.berger@bankruptcypower.com**<br><br>**Debtor's sister, Reem Hanna paid the retainer and the filing fee.** | **Attorney Fees** | **9/7/2022<br>9/15/2022** | **$20,000.00** |

17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?
Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☑ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

---

Debtor 1   **Bassem Victor El Mallakh**                                        Case number *(if known)*   **8:22-bk-11605-TA**

---

19. Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary? (These are often called *asset-protection devices.*)

   ☑ No
   ☐ Yes. Fill in the details.

   | Name of trust | Description and value of the property transferred | Date Transfer was made |
   |---|---|---|

---

**Part 8:    List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20. Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
   Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

   ☐ No
   ☑ Yes. Fill in the details.

   | Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
   |---|---|---|---|---|
   | **Wells Fargo**<br>**420 Montgomery**<br>**San Francisco, CA 94104** | XXXX-7310 | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | 1/2022 | $0.00 |
   | **Wells Fargo**<br>**420 Montgomery**<br>**San Francisco, CA 94104** | XXXX-8088 | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | 1/2022 | $0.00 |

---

21. Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

   ☑ No
   ☐ Yes. Fill in the details.

   | Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
   |---|---|---|---|

22. Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

   ☑ No
   ☐ Yes. Fill in the details.

   | Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
   |---|---|---|---|

---

**Part 9:    Identify Property You Hold or Control for Someone Else**

23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

   ☑ No
   ☐ Yes. Fill in the details.

   | Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
   |---|---|---|---|

---

**Part 10:    Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

   ☑ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or

Debtor 1    **Bassem Victor El Mallakh**    Case number *(if known)*    **8:22-bk-11605-TA**

regulations controlling the cleanup of these substances, wastes, or material.

☑ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

☑ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

   ☑ No
   ☐ Yes. Fill in the details.

| Name of site | Governmental unit | Environmental law, if you | Date of notice |
| Address (Number, Street, City, State and ZIP Code) | Address (Number, Street, City, State and ZIP Code) | know it | |

25. Have you notified any governmental unit of any release of hazardous material?

   ☑ No
   ☐ Yes. Fill in the details.

| Name of site | Governmental unit | Environmental law, if you | Date of notice |
| Address (Number, Street, City, State and ZIP Code) | Address (Number, Street, City, State and ZIP Code) | know it | |

26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

   ☑ No
   ☐ Yes. Fill in the details.

| Case Title | Court or agency | Nature of the case | Status of the |
| Case Number | Name | | case |
| | Address (Number, Street, City, State and ZIP Code) | | |

| **Part 11:** | **Give Details About Your Business or Connections to Any Business** |

27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

   ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

   ☑ A member of a limited liability company (LLC) or limited liability partnership (LLP)

   ☐ A partner in a partnership

   ☐ An officer, director, or managing executive of a corporation

   ☑ An owner of at least 5% of the voting or equity securities of a corporation

   ☐ No. None of the above applies. Go to Part 12.

   ☑ Yes. Check all that apply above and fill in the details below for each business.

| Business Name | Describe the nature of the business | Employer Identification number |
| Address | | Do not include Social Security number or ITIN. |
| (Number, Street, City, State and ZIP Code) | Name of accountant or bookkeeper | |
| | | Dates business existed |
| Belgium Investments 5665 S Troy LLC 116 Rockefeller, Irvine, CA 92612 | real estate investment company | Dates: 2014 - present |
| Belgium Investments 5544 North Avenue, LLC 2250 B Street San Diego, CA 92102 | real estate investment company | Dates: May 2013 - present |
| BBGIP, Inc. 116 Rockefeller, Irvine, CA 92612 | real estate holding company for Debtor's indirect interest in Belgium Investments 5544 North Avenue, LLC | Dates: 2012 - present |

Debtor 1    **Bassem Victor El Mallakh** _____ Case number *(if known)*  **8:22-bk-11605-TA**

---

28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

☑ **No**
☐ Yes. Fill in the details below.

| Name | Date Issued |
| --- | --- |
| Address | |
| (Number, Street, City, State and ZIP Code) | |

**Part 12:    Sign Below**

---

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| | |
| --- | --- |
| **Bassem Victor El Mallakh** | **Signature of Debtor 2** |
| Signature of Debtor 1 | |
| Date  9/27/2022 | Date _____ |

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
☑ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
☑ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

> You are an individual filing for bankruptcy, and
>
> Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan for family farmers or fishermen

Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | | Liquidation |
|---|---|---|
| | $245 | filing fee |
| | $78 | administrative fee |
| + | $15 | trustee surcharge |
| | $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

## Chapter 11: Reorganization

|   | $1,167 | filing fee |
|---|--------|------------|
| + | $571 | administrative fee |
|   | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Chapter 12: Repayment plan for family farmers or fishermen

|   |        |                    |
|---|--------|--------------------|
|   | $200   | filing fee         |
| + | $78    | administrative fee |
|   | $278   | total fee          |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   |        |                    |
|---|--------|--------------------|
|   | $235   | filing fee         |
| + | $78    | administrative fee |
|   | $313   | total fee          |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

- domestic support obligations,

- most student loans,

- certain taxes,

- debts for fraud or theft,

- debts for fraud or defalcation while acting in a fiduciary capacity,

- most criminal fines and restitution obligations,

- certain debts that are not listed in your bankruptcy papers,

- certain debts for acts that caused death or personal injury, and

- certain long-term secured debts.

## Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

### Bankruptcy crimes have serious consequences

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

### Make sure the court has your mailing address

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case.* If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

### Understand which services you could receive from credit counseling agencies

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Central District of California

In re  **Bassem Essam Victor El Mallakh** _____     Case No.  **8:22-bk-11605-TA**

_____  Debtor.     Chapter  **11**

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

|   |   |   |
|---|---|---|
| For legal services, I have agreed to accept A RETAINER OF | $ | **20,000.00** |
| Prior to the filing of this statement I have received A RETAINER OF | $ | **20,000.00** |
| Balance Due | $ | **0.00** |

2.   The source of the compensation paid to me was:

☐ Debtor     ☑ Other (specify): Debtor's sister Reem Hanna, paid the $20,000.00 retainer. Ms. Hanna is not a creditor of the Debtor and she is not seeking repayment. It is a gift contribution on behalf of the Debtor.

3.   The source of compensation to be paid to me is:

☑ Debtor     ☑ Other (specify): Reem Hanna as a gift contribution on behalf of the Debtor.

4.   ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**September 27, 2022** _____
_Date_

**Michael Jay Berger**
_Signature of Attorney_
**Law Offices of Michael Jay Berger**
**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**
**(310) 271-6223   Fax: (310) 271-9805**
**michael.berger@bankruptcypower.com**
_Name of law firm_

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number (if known) | **8:22-bk-11605-TA** |

☐ Check if this is an amended filing

## Official Form 122B
## Chapter 11 Statement of Your Current Monthly Income

12/21

You must file this form if you are an individual and are filing for bankruptcy under Chapter 11 (other than Subchapter V). If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1:    Calculate Your Current Monthly Income**

1. **What is your marital and filing status?** Check one only.

   ■ **Not married.** Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

   Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A Debtor 1 | Column B Debtor 2 |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 0.00 | $ _____ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ _____ |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ 0.00 | $ _____ |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ 0.00 | | | |
| Ordinary and necessary operating expenses | -$ 0.00 | | | |
| Net monthly income from a business, profession, or farm | $ 0.00 | Copy here -> $ 0.00 | $ _____ |

6. **Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ 0.00 | | | |
| Ordinary and necessary operating expenses | -$ 0.00 | | | |
| Net monthly income from rental or other real property | $ 0.00 | Copy here -> $ 0.00 | $ _____ |

| Debtor 1 | **Bassem Victor El Mallakh** | | | Case number (*if known*) | **8:22-bk-11605-TA** | |
|---|---|---|---|---|---|---|

| | | Column A<br>Debtor 1 | | Column B<br>Debtor 2 | |
|---|---|---|---|---|---|

|  | | | |
|---|---|---|---|
| 7. | Interest, dividends, and royalties | $ 0.00 | $ |
| 8. | Unemployment compensation | $ 0.00 | $ |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

| For you | $ | 0.00 |
|---|---|---|
| For your spouse | $ | |

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.

$ 0.00     $

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

| | | | |
|---|---|---|---|
| | | $ | $ |
| | | $ 0.00 | $ |
| | Total amounts from separate pages, if any. | + $ 0.00 | $ |

11. **Calculate your total current monthly income.**

Add lines 2 through 10 for each column.

Then add the total for Column A to the total for Column B.

$ 0.00  + $  = $ 0.00

Debtor 1    **Bassem Victor El Mallakh**                    Case number (*if known*)    **8:22-bk-11605-TA**

---

| Part 2: | **Sign Below** |

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

X _____

**Bassem Victor El Mallakh**
Signature of Debtor 1

Date 09/27/2022
    MM / DD / YYYY

---

**Chapter 11 Statement of Your Current Monthly Income**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Michael Jay Berger** | |

**Michael Jay Berger**
**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**
**(310) 271-6223 Fax: (310) 271-9805**
California State Bar Number: **100291 CA**
**michael.berger@bankruptcypower.com**

☐ *Debtor(s) appearing without an attorney*
■ *Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

    **Bassem Victor El Mallakh**

CASE NO.: 8:22-bk-11605-TA

CHAPTER: 11

### VERIFICATION OF MASTER
### MAILING LIST OF CREDITORS

**[LBR 1007-1(a)]**

                  Debtor(s).

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __2__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: 9/27/2022

Signature of Debtor 1

Date:

Signature of Debtor 2 (joint debtor) ) (if applicable)

Date: 9/27/2022

Signature of Attorney for Debtor (if applicable)

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2015

**F 1007-1.MAILING.LIST.VERIFICATION**

Bassem Victor El Mallakh
116 Rockefeller
Irvine, CA 92612


Michael Jay Berger
Law Offices of Michael Jay Berger
9454 Wilshire Boulevard, 6th floor
Beverly Hills, CA 90212


Belgium Investments 960 Bay Dr, LLC
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S Oak Avenue
Pasadena, CA 91107


Central Park West Community Associa
401 Rockefeller #208
Irvine, CA 92612


First Service Residential
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054


Freedom Mortgage
951 Yamato Rd.
Boca Raton, FL 33431


Freedom Mortgage
PO Box 50428
Indianapolis, IN 46250


Freedom Mortgage Corporation
Attn: Bankruptcy
907 Pleasant Valley Ave, Ste 3
Mt Laurel, NJ 08054

Td Auto Finance
Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI 48333


TD Auto Finance
6 Atlantis Way
Lewiston, ME 04240


The Townes at Central Park West Ass
15241 Laguna Canyon Rd.
Irvine, CA 92618


Wells Fargo Bank NA
1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328

# EXHIBIT
# "15"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Michael Jay Berger (SBN 100291)**<br>**Law Offices of Michael Jay Berger**<br>**9454 Wilshire Boulevard, 6th floor**<br>**Beverly Hills, CA 90212**<br>**Tel. (310) 271-6223 Fax: (310) 271-9805**<br>**michael.berger@bankruptcypower.com** | |

☐ *Debtor(s) appearing without an attorney*
☑ *Attorney for Debtor* **Bassem Victor El Mallakh**

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>**Bassem Victor El Mallakh** | CASE NO.: **8:22-bk-11605-TA**<br><br>CHAPTER: **11** |
|---|---|
| | **DECLARATION BY DEBTOR(S)<br>AS TO WHETHER INCOME WAS RECEIVED<br>FROM AN EMPLOYER WITHIN 60 DAYS OF<br>THE PETITION DATE**<br>[11 U.S.C. § 521(a)(1)(B)(iv)] |
| Debtor. | [No hearing Required] |

Debtor(s) provides the following declaration(s) as to whether income was received from an employer within 60 days of the Debtor(s) filing this bankruptcy case (Petition Date), as required by 11 U.S.C. § 521(a)(1)(B)(iv):

<u>Declaration of Debtor 1</u>

1. ☑ I am Debtor 1 in this case, and I declare under penalty of perjury that the following information is true and correct:

      **During the 60-day period before the Petition Date** (<u>Check only ONE box below</u>):

      ☐ **I was paid by an employer.** Attached are copies of all statements of earnings, pay stubs, or other proof of employment income I received from my employer during this 60-day period. (If the Debtor's social security number or bank account is on a pay stub or other proof of income, the Debtor must cross out (redact) the number(s) before filing this declaration.)

      ☑ **I was not paid by an employer** because I was either self-employed only, or not employed.

Date: 9/27/2022

**Bassem Victor El Mallakh**
Printed name of Debtor 1

Signature of Debtor 1

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*    Page 1    **F 1002-1.EMP.INCOME.DEC**

Declaration of Debtor 2 (Joint Debtor) (if applicable)

2. ☐ I am Debtor 2 in this case, and I declare under penalty of perjury that the following information is true and correct:

**During the 60-day period before the Petition Date** (Check only ONE box below):

☐ **I was paid by an employer.** Attached are copies of all statements of earnings, pay stubs, or other proof of employment income I received from my employer during this 60-day period. (If the Debtor's social security number or bank account is on a pay stub or other proof of income, the Debtor must cross out (redact) the number(s) before filing this declaration.)

☐ **I was not paid by an employer** because I was either self-employed only, or not employed.

Date: _____    _____    _____
                                    Printed name of Debtor 2                Signature of Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2015                          Page 2                    **F 1002-1.EMP.INCOME.DEC**

# EXHIBIT
# "16"

| Attorney or Party Name, Address, Telephone & FAX Nos.,State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Michael Jay Berger (SBN 100291)**<br>**Law Offices of Michael Jay Berger**<br>**9454 Wilshire Boulevard, 6th floor**<br>**Beverly Hills, CA 90212**<br>**Tel.: (310) 271-6223 Fax: (310) 271-9805**<br>**michael.berger@bankruptcypower.com** | |

☐ *Individual appearing without attorney*
☑ *Attorney for:*    Bassem Victor El Mallakh

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

**Bassem Victor El Mallakh**

CASE NO: **8:22-bk-11605-TA**

CHAPTER 11

### NOTICE OF MOTION AND MOTION IN INDIVIDUAL CHAPTER 11 CASE FOR ORDER AUTHORIZING DEBTOR IN POSSESSION TO EMPLOY GENERAL BANKRUPTCY COUNSEL [11 U.S.C. § 327(a), LBR 2014-1]; and

### ☑ TO FILE INTERIM FEE APPLICATIONS USING PROCEDURE IN LBR 9013-1(o)

This motion is being made under **ONLY ONE** of the following notice procedures:

☑ **No hearing unless requested under LBR 9013-1(o)(4); or**
☐ Hearing set on regular notice: LBR 9013-1(d):

DATE:
TIME:
COURTROOM:
ADDRESS:

Debtor(s).

**PLEASE TAKE NOTICE THAT** the Debtor in Possession (the Debtor) requests an order authorizing the Debtor to employ general bankruptcy counsel and, if requested in this motion, to file interim fee applications using the procedures set forth in LBR 9013-1(o).

Your rights might be affected by this Motion. You may want to consult an attorney. Refer to the box checked below for the deadline to file and serve a written response. If you fail to timely file and serve a written response, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief. You must serve a copy of your opposition upon the Debtor, the Debtor's attorney, the United States trustee, and on the judge pursuant to LBR 5005-2(d) and the Court Manual.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a. ☑ **No Hearing Scheduled; Notice Provided Under LBR 9013-1(o):** This Motion is filed by the Debtor pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing. The full Motion is attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response and request for hearing with the court and serve it as stated above, **no later than 14 days after the date stated on the Proof of Service of this Motion** plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F). Your opposition must comply with LBR 9013-1(f) and (o).

b. ☐ **Hearing Set on Regular Notice; Notice Provided Under LBR 9013-1(d):** This Motion is set for hearing on regular notice pursuant to LBR 9013-1(d). The full Motion and supporting documentation are attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response with the court and serve it as stated above **no later than 14 days prior to the hearing.** Your response must comply with LBR 9013-1(f). The undersigned hereby verifies that the hearing date and time selected were available for this type of Motion according to the judge's self-calendaring procedures [LBR 9013-1(b)].

c. ☐ **Other** (*specify*):

Date: 9/27/2022

By: _____
Signature of Debtor

Name: **Bassem Victor El Mallakh**
Printed name of Debtor

Date: 9/27/2022

By: _____
Signature of attorney for Debtor, if any

Name: **Michael Jay Berger**
Printed name of attorney for Debtor, if any

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                    Page 2        **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

**MOTION TO EMPLOY GENERAL BANKRUPTCY COUNSEL [LBR 2014-1] AND, IF REQUESTED BELOW, TO FILE INTERIM FEE APPLICATIONS USING PROCEDURE IN LBR901 3-1(o)**

**1. EMPLOYMENT**

a. To assist the Debtor in the administration of this chapter 11 case, the Debtor must employ, effective on *(date)* **September 19, 2022** , the following professional **Michael Jay Berger with the Law Offices of Michael Jay Berger** (Professional) as chapter 11 general bankruptcy counsel pursuant to 11 U.S.C. § 327(a).

b. The following information and documents are provided in support of this Motion:

(1) The Professional seeks compensation pursuant to: ☐ 11 U.S.C. § 328; or ☑ 11 U.S.C. § 330.

(2) The Debtor selected this Professional because the Professional is well qualified to represent the Debtor in this proceeding and for the following additional reasons:
**Professional has extensive experience in Chapter 11 matters and is a Certified Legal Specialist in bankruptcy law, certified by the Legal Board of Specialization of the State Bar of California and has previously represented at least 153 Chapter 11 Debtors and in 54 cases, Professional prepared Chapter 11 Disclosures Statements and Plans and obtained orders confirming the plans.**

(3) Professional agrees to render legal services in connection with the Debtor's chapter 11 case, including but not limited to the following services:

(A) Advise the Debtor regarding matters of bankruptcy law and concerning the requirement of the Bankruptcy Code, and Bankruptcy Rules relating to the administration of this case, and the operation of the Debtor's estate as a debtor in possession;

(B) Represent the Debtor in proceedings and hearings in the court involving matters of bankruptcy law;

(C) Assistance in compliance with the requirements of the Office of the United States trustee;

(D) Provide the Debtor legal advice and assistance with respect to the Debtor's powers and duties in the continued operation of the Debtor's business and management of property of the estate;

(E) Assist the Debtor in the administration of the estate's assets and liabilities;

(F) Prepare necessary applications, answers, motions, orders, reports and/or other legal documents on behalf of the Debtor;

(G) Assist in the collection of all accounts receivable and other claims that the Debtor may have and resolve claims against the Debtor's estate;

(H) Provide advice, as counsel, concerning the claims of secured and unsecured creditors, prosecution and/or defense of all actions;

(I) Prepare, negotiate, prosecute and attain confirmation of a plan of reorganization;

(J) ☐ Other *(specify):*

(4) A declaration by the Professional provides information on the following: identification/qualifications; disinterestedness; compliance with FRBP 2014 and FRBP 5002; and compensation arrangements.

(5) A declaration by the Debtor as to the source, amount and date of prepetition retainer paid to Professional and provisions for replenishment, if any, and any postpetition retainer and source of payment of postpetition retainer(s), if any. No liens against the retainer have been granted in favor of the Professional or any other party.

(6) ☐ An optional Memorandum of Points and Authorities is attached.

(7) ☑ Other *(specify):* **Declaration of Reem Hanna**

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2015*                    Page 3    **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

**2. FILE INTERIM FEE APPLICATIONS USING LBR 9013-1(o) (IF REQUESTED)**

☑ The Debtor requests authorization to use the procedures set forth in LBR 9013-1(o) regarding Notice of Opportunity to Request Hearing when requesting approval of interim fee applications. Professional acknowledges, by checking this box, that to the best of Professional's knowledge, no other professional is or will be employed in this case. If additional professional(s) become employed, Professional agrees to give 45 days' notice of the date and time of any interim fee application hearing in compliance with LBR 2016-1(a)(2) and will cease filing interim fee applications pursuant to LBR 9013-1(o).

The Debtor requests the authority to (1) employ the Professional to represent the Debtor in this case and (2) file interim fee applications using the procedure set forth in LBR 9013-1(o).

Date: _9/27/2022_                         By: _____
                                              Signature of attorney for Debtor, if any

                                          Name: **Michael Jay Berger**
                                                Printed name of attorney for Debtor, if any

Date: _9/27/2022_                         By: _____
                                              Signature of Debtor

                                          Name: **Bassem Victor El Mallakh**
                                                Printed name of Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                          Page 4     **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

# DECLARATION OF PROFESSIONAL

I, (*print name*) __Michael Jay Berger__, have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.

1. **Identification/Qualifications**

   a.  ☑  I am a licensed attorney.

   b.  I, and the (*name of firm*) __Law Offices of Michael Jay Berger__ (*Firm*) of which I am a (*position with Firm*) __Owner__, maintain our principal offices at **9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212**

   c.  I believe that I am qualified to represent the Debtor. A copy of my resume is attached as **Exhibit 1.**

      (1) ☑  I have previously represented at least __153__ chapter 11 debtors and in __54__ of those cases, I prepared a chapter 11 plan and obtained an order confirming the plan.

      (2) ☐  I cannot check box 1.c.(1) but I believe that I should be allowed to represent this Debtor because (*specify*):

   d.  Additional resumes for any and all professionals at my Firm who will work on this case are attached as **Exhibit 2.**

2. **Disclosures Re Connections and Adverse Interests**

   a.  Authority is sought pursuant to 11 U.S.C § 327(a)

      The Firm and I are "disinterested persons" within the meaning of 11 U.S.C. § 101. We are (a) not creditors, equity security holders, or insiders of the Debtor; (b) are not and were not, within 2 years before the date of the filing of the petition, directors, officers or employees of the Debtor; and (c) do not have interests materially adverse to the interest of the estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason. The Firm and I do not hold or represent an interest adverse to the estate.

   b.  Disclosures re FRBP 2014

      Except as indicated below and other than representing the Debtor in this case, neither the Firm nor I ever represented the Debtor, and neither the Firm nor I have any connection with the Debtor, any insider of the Debtor, or insider of an insider of the Debtor, any creditor of the Debtor or any other party in interest herein, the United States trustee, persons employed by the United States trustee, persons employed by the Bankruptcy Court or a Bankruptcy Judge, or any of their respective attorneys or accountants. Other information relevant to relationships with the Debtor is as follows (*specify*):

      —

   c.  The Firm and I do not hold any prepetition claim against the estate.

   d.  The Firm and I have not made any arrangements for the sharing of fees with any other person or entity.

3. **Compensation Arrangements**

   a.  (1) ☑  Prior to the chapter 11 petition date, the Firm and I received $ __21,770.00__ from

      ☐  the Debtor

      ☑  other (*specify source of funds*): **On September 7, 2022, Debtor's sister, Reem Hanna, paid a $10,000.00 retainer of the $20,000.00 retainer. On September 15, 2022, Ms. Hanna paid the remaining retainer of $10,000.00 plus**

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                           Page 5    **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

**$1,738.00 filing fee and $32.00 credit report fee as a gift contribution to the Debtor. Ms. Hanna is not a creditor of the Debtor and is not seeking repayment of the $20,000.00 retainer and the $1,738.00 filing fee and $32.00 credit report fee from the Debtor.**

As of the petition date, $ **15,732.50** of the retainer funds remain unexhausted.

(2) ☐ Firm and I will receive $ _____ from

    ☐ the Debtor

    ☐ other (*specify source of funds*): _____
    postpetition on (*specify date or timing of payment*): _____

b. Pursuant to the Debtor's initial retainer agreement, the Debtor agreed to pay for services as they were performed. However, any payment of fees and expenses is subject to court approval. A true and correct copy of the retainer agreement is attached as **Exhibit 3**.

c. The Firm and I will comply with the *Guide To Application For Retainers and Professional And Insider Compensation* promulgated by the Office of the United States trustee, as well as any other applicable employment guidelines and fee guidelines in withdrawing the prepetition or postpetition retainer funds, if any.

d. <u>THE FIRM'S PROPOSED COMPENSATION IS:</u>

(1) <u>Hourly rates</u>

Partner, primary/lead counsel (*insert names of partners and each rate*)

| | | |
|---|---|---|
| **Michael Jay Berger** | $ **595.00** | per hour |
| **Sofya Davtyan** | $ **545.00** | per hour |
| | $ | per hour |

Associate attorney (*insert names of associates and each rate*)

| | | |
|---|---|---|
| **Debra Reed** | $ **435.00** | per hour |
| **Carolyn Afari** | $ **435.00** | per hour |
| **Robert Poteete** | $ **435.00** | per hour |

Law clerks/paralegal (*insert names and each rate*)

| | | |
|---|---|---|
| **Gary Baddin (bankruptcy analyst)** | $ **275.00** | per hour |
| **Yathida Nipha** | $ **250.00** | per hour |
| **Karine Manvelian** | $ **250.00** | per hour |
| **Peter Garza** | $ **200.00** | per hour |

☐ Optional: See **Exhibit 4** for the Firm's hourly rates

(2) <u>Other</u>

If the Firm's compensation is set by other than hourly rate, specify:

e. <u>THE FIRM'S EXPENSE REIMBURSEMENT RATES ARE:</u>

| | | |
|---|---|---|
| Fax in & fax out | **0.10** | (Actual cost, not to exceed $0.10 per page) |
| Messenger | Actual cost | |
| Photocopies | **0.10** | (Actual cost, not to exceed $0.10 per page) |
| Postage | Actual cost | |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2015*    Page 6    **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

| Telephone | No charge |
|---|---|

Other: (*describe expense*)

_____    _____ (Actual cost)

_____    _____ (Actual cost)

f.    Neither the Firm nor I request any lien on any retainer received in this case or on any property of the estate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: _9/27/2022_                    By: _____
                                          Signature of proposed professional

                                     Name: _Michael (Jay Berger_
                                          Printed name of proposed professional

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2015*                                Page 7    **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

# DECLARATION OF DEBTOR IN POSSESSION

I, **Bassem Victor El Mallakh**, am the Debtor in Possession in this case.

To the best of my knowledge, all of the Professional's connections with the Debtor, creditors, or any party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee are as stated in the attached Declaration of Professional.

☐      I paid the following amounts to _____ as follows:

| Amount | Date of Payment | Source of Funds |
|--------|-----------------|-----------------|
| $ | | |
| $ | | |

☐      I caused to be paid $ _____ to _____ pursuant to our initial retainer agreement, and have agreed that fees are to be billed against this amount.

**On September 7, 2022, my sister, Reem Hanna, paid Applicant $10,000.00 of the $20,000.00 retainer. On 15, 2022, Ms. Hanna paid the remaining retainer of $10,000.00 plus $1,738.00 filing fee and $32.00 credit report fee as a gift contribution on my behalf. Ms. Hanna is not a creditor of the estate and is not seeking repayment of the $20,000.00 retainer, the $1,738.00 filing fee and $32.00 credit report fee from me.**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: _____      By: _____
                                   Signature of Debtor in Possession

                                 Name:  **Bassem Victor El Mallakh** _____
                                                  Printed name of Debtor in Possession

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                      Page 8    **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

## DECLARATION OF MICHAEL JAY BERGER

I, Michael Jay Berger, declare and state as follows:

1.      I am an Attorney at Law, licensed to practice before all of the courts in the State of California, and in the United States District Court for the Central District of California. I am the sole owner of the Law Offices of Michael Jay Berger.

2.      I seek to be employed by Bassem Victor El Mallakh (the "Debtor"), Debtor and Debtor-in-Possession herein, as his General Bankruptcy Counsel.

3.      I am sufficiently an expert in the field of bankruptcy to act as General Bankruptcy Counsel for Debtor herein. I have 40 years of professional experience in bankruptcy law. I am a Certified Legal Specialist in Bankruptcy Law, certified by the California Board of Legal Specialization of the State Bar of California.

4.      A true and correct copy of my resume, and the resumes of my Partner Sofya Davtyan, mid-level associate attorneys Carolyn M. Afari, Robert Poteete and Debra Reed, are collectively attached hereto as Exhibits "1" and "2". A true and correct copy of the resumes of my analyst/field agent Gary Baddin and my paralegals Yathida Nipha, Karine Manvelian, and Peter Garza, are also collectively attached hereto as Exhibit "2".

5.      The employment at the rates disclosed in this Application would be in the best interests of the estate, and I make this declaration pursuant to the provisions of 11 U.S.C. § 327 of the Bankruptcy Code. I further declare that I am in compliance with, and am qualified to act as General Bankruptcy Counsel for the Debtor herein in accordance with said provision. A Statement of Disinterestedness describing my connections, or lack thereof, to other parties in this case is attached hereto as Exhibit "3".

6.      I am rated "A/V" in the Martindale-Hubbell legal directory and have maintained this rating continuously from 1995 to 2022. This is the highest rating for both the quality of my work and my ethics. I have successfully represented debtors and creditors in many Chapter 7, Chapter 11, and Chapter 13 cases.

7.      Cases in which I have been approved to be employed as counsel for the debtors and confirmed plans in a chapter 11 case include, but are not limited to, the following:

     a.   On September 2, 2022, I confirmed a Subchapter V plan of reorganization in a Chapter 11 case in Eastern District of California entitled <u>California Roofs and Solar, Inc.,</u> Case No.: 22-10061. This case involved the Debtor providing residential remodeling services.

     b.   On September 2, 2022, I confirmed a Subchapter V plan of reorganization in a Chapter 11 case entitled <u>CICO Electrical Contractors, Inc.,</u> Case No.: 2:21-bk-19348-VZ. This case involved the reorganization of a solar energy / solar panel business.

     c.   On August 15, 2022, I confirmed a Subchapter V plan of reorganization in a Chapter 11 case entitled <u>K. Anthony Incorporated dba K. Anthony Pre-School Inc.</u> This case involved restructuring of a pre-school and daycare.

     d.   On July 18, 2022, I confirmed a Subchapter V plan of reorganization in a Chapter 11 case entitled <u>Amphil Group, LLC,</u> Case No.: 2:21-bk-18014-VZ. This case involved stopping the foreclosure sale date.

     e.   On April 26, 2022, I confirmed a plan of reorganization in a Chapter 11 case entitled <u>In re: DLR Express, Inc.</u> This case involved the successful reorganization of a trucking business.

f. On March 30, 2022, I confirmed a plan of reorganization in a Chapter 11 case entitled In re: BCT Deals, Inc., dba Best Costumes and Toy Deals. This case involved the successful reorganization of a costume store.

g. On December 28, 2021, I confirmed a plan of reorganization in a Chapter 11 case entitled In re: Anait Akopyan. This case involved the successful reorganization of an individual with two rental properties with substantial amount of pre-petition arrears and multiple judgment liens.

h. On December 21, 2021, I confirmed a Subchapter V plan of reorganization in a Chapter 11 case entitled In re Pacific Environmental Technologies, Inc. This case involved a successful reorganization of a business which provides modular, soft wall, mobile, and conventional cleanrooms, as well as refrigerated storages, freezers, and solar and energy storages to pharmaceutical aerospace, and industrial companies.

i. On June 29, 2021, I confirmed a plan of reorganization in a Chapter 11 case entitled In re RedRhino: The Epoxy Flooring Company, Inc. This case involved the successful reorganization of a business which provides protective coating, overlaying, and polished concrete services to the industrial and commercial work spaces.

j. On June 10, 2021, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Talk Venture Group, Inc., Case No.: 8:19-bk-14893-TA. This case involved the successful reorganization of a business selling merchandise on Amazon.com.

k.  On June 10, 2021, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Paul Se Won Kim, Case No.: 8:20-bk-10168-TA. This case involved the successful reorganization of Debtor's personal finances.

l.  On May 21, 2021, I confirmed a plan of reorganization in a Subchapter V Chapter 11 case entitled In re Real Estate Recovery, Case No.: 2:20-bk-19134-VZ. This case involved a successful reorganization of a non-profit organization that provides affordable housing to low-income veterans and homeless people.

m.  On May 12, 2021, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Nuance Energy Group, Inc., Case No.: 2:20-bk-17761-VZ. This case involved the successful reorganization of a solar installation company.

n.  On December 18, 2020, I confirmed a plan of reorganization in a Chapter 11 case entitled In re: Marco General Construction, Inc., Case No.: 2:19-bk-14758-BB. This case involved the successful reorganization of a construction company.

o.  On December 9, 2020, I confirmed a plan of reorganization in a Chapter 11 entitled In re: C2 Plumbing, Inc., Case No.: 2:19-bk-23459-VZ. This case involved the successful reorganization of a plumbing business.

p.  On October 28, 2020, I confirmed a plan of reorganization in a Chapter 11 entitled In re: Unified Protective Services, Inc., Case No. 2:19-bk-16482-

NB. This case involved the successful reorganization of a private security company.

q.  On July 20, 2020, I confirmed a plan of reorganization in a Chapter 11 entitled, In re: Edmond Melamed and Rozita Melamed, Case No. 2:bk-22426-NB. This case involved the successful reorganization of their personal finances.

r.  On January 23, 2020, I confirmed a plan of reorganization in a Chapter 11 entitled, In re: Exie Marie Leagons, Case No. 2:18-bk-17859-VZ. This case involved the successful reorganization of her personal finances.

s.  On November 27, 2019, I confirmed a plan of reorganization in a Chapter 11 entitled, Damu Vusha and Akiba Vusha, Case No. 2:18-bk-11284-ER. This case involved the successful reorganization of their personal finances.

t.  On October 11, 2019, I confirmed a plan of reorganization in a Chapter 11 entitled, In re: Ameriquest Security Service, Case No. 2:18-bk-21241-WB. This case involved the successful reorganization of a private security company.

u.  On April 23, 2019, I confirmed a plan of reorganization in a Chapter 11 entitled, In re: John Michael Wilcox and Gwenn Ellen Wilcox, Case No. 2:17-bk-24446-SK. This case involved the successful reorganization of their personal finances.

v.  On October 4, 2018, I confirmed a plan of reorganization in a Chapter 11 entitled, In re: Zenah Mohamed Essayli, Case No. 8:17-bk-14597-CB. This case involved the successful reorganization of her personal finances.

w.  On August 20, 2018, I confirmed a plan of reorganization in a Chapter 11
entitled, In re: Union County Transport, Inc., Case No. 2:17-bk-21514-BB.
This case involved the successful reorganization of transportation business.

x.  In 2018, I obtained a Final Decree and Discharge in a Chapter 11 case
entitled, In In re: Shahla Dowlati Chapter 11 Case No. 1:16-bk-10073-VK,
after successfully confirming a plan of reorganization in said case. That
case involved the successful reorganization of Debtor's two income
properties. I was approved as counsel for Debtor on February 12, 2016 and
my final fee application granting my fees was entered on August 8, 2018.

y.  On October 24, 2017, I confirmed a plan of reorganization in a Chapter 11
entitled, In re Rescue One Ambulance, Case No. 2:17-bk-10002-NB. This
case involved the successful reorganization of an ambulance transportation
business involving the Internal Revenue Service.

z.  On July 10, 2017, I confirmed a plan of reorganization in a Chapter 11 case
entitled, In re Amos C. Acoff, Case No. 2:16-bk-10109-VZ. That case
involved the successful reorganization of his residence and multiple real
properties.

aa. On June 14, 2022, I confirmed a plan of reorganization in a Chapter 11 case
entitled, Bbeautiful LLC, Case No. 2:16-bk-10799-ER. The Debtor is a
brand-maker and retailer of a wide range of personal beauty products for
skin, hand & nail, body hair, pedicure, makeup and fragrance.

bb. On February 12, 2016, I confirmed a plan of reorganization in a Chapter 11
case entitled, In re Edward D. Roane, Case No. 1:14-bk-15621-VK. That

case involved the successful reorganization of his residence and multiple real properties.

cc. On December 23, 2015, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Steven and Julie Sassoon</u>, Case No. 2:14-bk-12673-TD. That case involved the successful reorganization of their unsecured debt after years in state court litigation.

dd. On March 11, 2015, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Michael J. and Cristina M. Parker</u>, Case No. 6:13-bk-3051-MJ. That case involved the successful reorganization of the Debtors' residence and resolution of multiple state court lawsuits. The Debtors obtained a discharge order on April 30, 2015.

ee. On October 28, 2014, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Nabih Mansour and Mary Mansour</u>, Case No. 2:12-bk-48622-RN. This case involved a foreclosure sale of their home. Mr. Mansour operates a veterinarian hospital and Mrs. Mansour is a Pharmacist.

ff. On May 5, 2014, I confirmed a plan of reorganization in a Chapter 11 case entitled In re: <u>Ruth Hasson</u>, Case No. 2:13-bk-15138-RK. This case involved a foreclosure sale date. Final decree was entered on September 25, 2014.

gg. On December 11, 2013, I confirmed a plan of reorganization in Chapter 11 case entitled, In re: <u>Martha Gutierrez and Aaron Gutierrez</u>, Case No. 2:12-bk-32047-WB. The case involved the successful reorganization of the loans on the Debtors' two rental properties.

hh. On November 6, 2013, I confirmed a plan of reorganization in Chapter 11 case entitled, In re: Jamal Elyazal, Case No. 6:12-bk-11709-MW. The case involved the successful reorganization of the loans on the Debtor's loans on Debtor's primary residence and 17 rental properties.

ii. On October 1, 2013, I confirmed a plan of reorganization in Chapter 11 case entitled, In re: <u>CDG Materials, Inc.</u>, Case No. 6:12-bk-12935-MH. This case involved the successful reorganization of a corporation principally engaged in the business of manufacturing and selling various types and grades of gravel and sand.

jj. On June 5, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled <u>In re Vicente Zarate and Ingrid R. Zarate</u>, Case No.: 2-12-bk-16597-PC. This case involved the successful reorganization of the loans on the Debtors' primary residence and their multiple rental properties.

kk. On May 23, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled <u>In re Hamid Doe and Farideh Doe</u>, Case No.: 1-11-bk-17414-AA. This case involved the successful reorganization of the loans on the Debtors' primary residence.

ll. On May 10, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled <u>In re Alejandro Caray Casasola and Zenaida Urmanita Casasola</u>, Case No. 2:11-bk-47034-ER. This case also involved the successful reorganization of the loans on the Debtors' primary residence and their multiple rental properties.

mm.    On May 1, 2013, I confirmed a plan of reorganization in a Consolidated Chapter 11 Case entitled <u>In re Steven Michael Mehr and</u>

Larissa Deshaviegh Mehr, lead case number 8:11-bk-12166-ES,

consolidated case number 8:11-bk-17014-ES. This case involved the

successful reorganization of debtors' primary residence in Orange County

and 7 rental properties located throughout Orange County and Los Angeles

County.

nn. On March 27, 2013, I confirmed a plan of reorganization in a Chapter 11

Case entitled In re Arthur Melnikov and Alina Kutsevol, Case No.: 1:11-

bk-11614-GM. This was a personal Chapter 11 for individual Debtors that

owned a home and two rental properties. The Debtors were in bankruptcy

for 15 months before they hired me.

oo. On December 17, 2012, I confirmed a plan of reorganization in a Chapter

11 Case entitled In re Ovazine Yvette Shannon, Case No.:2:11-bk-38912-

VZ. This case involved the successful reorganization of debtor's six multi-

unit apartment building rental properties.

pp. On July 23, 2012, I confirmed a plan of reorganization in a Chapter 11 Case

entitled In re Richard G. Miller and Shannon Miller,  Case No # 6:10-bk-

31105-MJ. This was a personal Chapter 11 bankruptcy case for a retired,

married couple that owned a home, rental property, and vacant land.

qq. On August 12, 2012, I confirmed a plan of reorganization in Chapter 11

case entitled, In re: Hoskins Enterprises, Inc., Case No. 1:11-bk-15148.GM.

Hoskins Enterprises, Inc., provides adult day care services for mentally

disabled adults. Debtor was forced into bankruptcy by a wrongful

termination lawsuit.

rr. On June 29, 2012, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Leonor Zimerman</u>, Case No. 1:11-bk-14045-GM. That case involved the successful reorganization of Debtor's rental property and income property. Final decree was entered on January 7, 2013.

ss. On June 13, 2012, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Vahigh and Penah Dadayan</u>, Case No. 2:11-bk-14452-RK. That case involved the successful reorganization of their primary residence and 5 rental properties. Final decree was entered on January 7, 2013.

tt. On May 23, 2012, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Hamid Peter and Farideh Keshavarz</u>, Case No. 1:11-bk-17414-AA. That case involved the successful reorganization of the Debtors debts on their primary residence. A final decree order was entered on June 4, 2013.

uu. On April 11, 2012, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Gregory Stephen Jones and Eteva Desiree Laufasa</u>, Case No. 2:11-bk-22829-PC. That case involved reorganization of the Debtors' primary residence and their rental properties. A discharge order was entered on October 15, 2014.

vv. On February 27, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled <u>In re 7 West, LLC</u>, Case # 2:10-bk-36804-ER. This case involved the successful reorganization of a 24-unit apartment complex in Los Angeles, California. A Final Decree was entered on May 10, 2013.

ww. On February 17, 2012, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: 7 West, LLC</u>, Case No. 2:10-bk-36804-ER.

That case involved the reorganization of an apartment complex. Final decree was entered May 10, 2013.

xx. On February 3, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled <u>In re Moshe Segev and Michelle M. Cohen</u>, Case # 1:09-bk-23222-GM. This was a personal Chapter 11 for a couple with 4 children under the age of 9.

yy. On September 30, 2011, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Ludo Gust Mensch and Lorraine Patricia Mensch</u>, Case No. 1:10-bk-22102-MT. That case involved the reorganization of a construction company.

zz. On June 29, 2011, I confirmed a plan of reorganization in a Chapter 11 case entitled, <u>In re: Twelve Signs Incorporated</u>, Case No. 2:10-bk-11758-PC. That case involved the liquidation of various intellectual property of an astrological products company.

aaa.    On April 13, 2011, I confirmed a plan of reorganization in a Chapter 11 Case entitled, <u>In re: Rahim Zabihi</u>, Case No. 8:10-bk-11504-TA. That case involved the successful reorganization of two veterinarian clinics and five pieces of real property.

In Chapter 11 filings, I have successfully represented individuals, restaurants, nightclubs, retail stores, dry cleaners, advertising agencies, manufacturing companies, construction companies, real estate owners, real estate developers, medical practices, trucking companies, an ambulance company and other businesses.

I will charge the Debtor for my services at the rate of $595.00 per hour. I will charge Debtor $545.00 per hour for the services of my Partner Sofya Davtyan, $435.00

per hour for the services of my mid-level associate attorneys Debra Reed,  Carolyn M.

Afari and Robert Poteete, $275.00 per hour for the services of his bankruptcy

analyst/field agent Gary Baddin; $250.00 per hour for the services of my bankruptcy

senior paralegals and law clerks, and $200.00 per hour for the services of bankruptcy

paralegals.

On September 7, 2022, Debtor's sister, Reem Hanna, paid me a $10,000.00

installment of the $20,000.00 retainer. On September 15, 2022, Ms. Hanna paid me the

remaining retainer of $10,000.00 plus the $1,738.00 filing fee and $32.00 credit report

fee as a gift contribution to the Debtor. Ms. Hanna is not a creditor of the Debtor and is

not seeking repayment of the $20,000.00 retainer, $1,738.00 filing fee and $32.00 credit

report fee. I will keep the $15,732.50 retainer in my client trust account until the Court

approves this application and after a Fee Application is filed and approved by the Court

pursuant to 11 U.S.C. §330.

Pursuant to the written fee agreement between the Debtor and I, my actual pre-

petition fees and cost incurred were deemed fully earned as of the filing of the petition,

and were withdrawn from the client trust account immediately prior to the filing of

Debtor's bankruptcy petition as payment for the pre-petition work done by me. The

actual pre-petition fees were $4,267.50 and pre-petition cost were $1,738.00 for the

Chapter 11 filing fee and $32.00 credit report fee. The unearned retainer of $15,732.50

will be maintained in my client trust account until court authorization is obtained

pursuant to 11 U.S.C. § 330.

Attached hereto as <u>Exhibit "4"</u> is a true and correct copy of the Attorney-Client

Written Fee Contract entered into between Debtor and I.

My post-petition legal services for the Debtor began on September 19, 2022.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on September 27, 2022 at Beverly Hills, California.

Michael Jay Berger

# DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare and state as follows:

1.      I am the Debtor and Debtor-in-Possession (the "<u>Debtor</u>"). I am over the age of 18. I have personal knowledge of the facts I state below, and if I were to be called as a witness, I could and would competently testify about what I have written in this declaration.

2.      I make this declaration in support of my Application to Employ the Law Offices of Michael Jay Berger ("<u>Applicant</u>") as my General Bankruptcy Counsel ("<u>Application</u>").

3.      On September 7, 2022, my sister, Reem Hanna, paid Applicant a $10,000.00 installment of the $20,000.00 retainer. On September 15, 2022, my sister paid the Applicant remaining retainer of $10,000.00 plus the $1,738.00 filing fee, and $32.00 credit report fee as a gift contribution on my behalf. My sister is not a creditor and is not seeking repayment of the $20,000.00 retainer or $1,738.00 filing fee $32.00 credit report fee. Applicant will keep the $15,732.50 retainer in his client trust account until the Court approves this application and after a Fee Application is filed and approved by the Court pursuant to 11 U.S.C. §330.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on September 27 2022 at _Beverly Hills_, California.

Bassem Victor El Mallakh

# DECLARATION OF REEM HANNA

I, Reem Hanna declare and state as follows:

1.  I am the sister of Bassem Victor El Mallakh (the "Debtor"). I am over the age of 18. I have personal knowledge of the facts I state below, and if I were to be called as a witness, I could and would competently testify about what I have written in this declaration.

2.  On September 7, 2022, I paid Applicant a $10,000.00 installment of the $20,000.00 retainer. On September 15, 2022, I paid Applicant the remaining retainer of $10,000.00 plus the $1,738.00 filing fee and $32.00 credit report fee as a gift contribution to the Debtor. I am not a creditor of the Debtor and am not seeking repayment of the $20,000.00 retainer, $1,738.00 filing fee and $32.00 credit report fee.

3.  I understand that I am not the client of the Law Offices of Michael Jay Berger and that I have no right to control the Chapter 11 case of my brother, Bassem Victor El Mallakh.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on September 27 2022 at Irvine, California.

_____
Reem Hanna

15

# EXHIBIT 1

# MICHAEL JAY BERGER

**9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212**
**Telephone: 310.271.6223 | Fax: 310.271.9805 | E: michael.berger@bankruptcypower.com**
**Website: www.bankruptcypower.com**

## EDUCATION

**Certified Legal Specialist in Bankruptcy Law certified by the California Board of
Legal Specialization of the State Bar of California**
Certified on September 1, 2006 and continuously certified since then.

Law School – HASTINGS COLLEGE OF LAW, San Francisco, California
    J.D. with Honors, May 1981;
    Class Standing: Top 10%

Main Honors and Activities
    Order of the Coif        Law Review
    Thurston Honor Society    Phi Alpha Delta

Undergraduate – DUKE UNIVERSITY, Durham, North Carolina
    B.A.  Graduated with Honors, 1978 Major: English

Main Honors and Activities
    Captain of the Duke Debate Team
    Chairman, Duke Branch of the North Carolina Public Interest Research Group
    Member, National Honorary Society
    Delta Sigma Rho Tau Kappa Alpha

## WORK EXPERIENCE

40 years of experience representing accountants, actors, advertising agencies, ambulance companies, bail bond companies, book stores, car washes, churches and synagogues, clothing companies, construction companies, construction supply companies, contractors, cosmetic companies, dentists, designers, doctors, entrepreneurs, film companies, gas stations, hospitals, hotels, insurance agencies, insurance sales people, investors, landlords and tenants, landscape companies, lawyers, lenders, magazines, manufacturing companies, musicians, nightclubs, online sales companies, pawn shops, physical therapists, radio stations, real estate brokers, real estate developers, real estate investors, restaurants, retail stores, schools, screenwriters, security guard companies, shopping centers, song writers, stock brokers, students, teachers, television stations, trucking companies and veterinarians.

| | |
|---|---|
| 1996 to Now | LAW OFFICES OF MICHAEL JAY BERGER<br>Beverly Hills, California<br>Principal attorney in law firm specializing in bankruptcy practice.<br>Extensive experience representing debtors, creditors and third parties in<br>Chapter 7, 11 and 13 Cases and Adversary Proceedings |
| 1983 to 1996 | Attorney and Managing Partner, BERGER & STOLAR, INC.<br>Beverly Hills, California<br>Senior trial lawyer specializing in bankruptcy and civil litigation practice.<br>Very knowledgeable and experienced in all types of civil litigation,<br>including all types of collection, business, contract, entertainment, real<br>estate, probate and bankruptcy cases.  Extensive experience representing<br>debtors and creditors in numerous Chapter 7, 11 and 13 proceedings. |

1981 to 1983    Attorney, RIFKIND, STERLING & LEVIN, INC.
Beverly Hills, California
Practiced in all phases of civil litigation. Primarily responsible for
collection, bankruptcy, breach of contract, real estate and tort cases.

## ACTIVITIES AND ASSOCIATIONS

"AV" rated lawyer as rated by Martindale Hubbell legal directory 1995-2021[*]

"Superb Rated Attorney" By Avvo
Former Judge Pro Tem, Beverly Hills Municipal Court
Former Arbitrator, Beverly Hills Bar Association
Former Editor of the Beverly Hills Bar Association Journal
Member of the Bankruptcy Section of the Beverly Hills Bar Association
Member of the Los Angeles Bankruptcy Forum
Member of the California Bankruptcy Forum
Member of the American Bankruptcy Institute
Member of Mensa, The High IQ Society
Member of Track Club Los Angeles
Marathon and Ultramarathon Runner
Guitar Player and Lead Singer for the Rock and Roll Band DTF

## AREA SERVED

I serve all of California, with the majority of my cases being in the Central District of California
downtown Los Angeles, San Fernando Valley, Santa Ana and Riverside branch courts.

---

[*] The Martindale-Hubbell "AV" rating indicates very high to preeminent legal ability and very high ethical standards
as established by confidential opinions from members of the bar.

# EXHIBIT 2

# LAW OFFICES OF MICHAEL JAY BERGER

9454 Wilshire Blvd., 6th Floor
Beverly Hills, California 90212
Tel: 310-271-6223 | Fax: 310-271-0985

LAW OFFICES OF MICHAEL J. BERGER (the "Firm") limits its practice to the field of bankruptcy, insolvency, workouts and related civil litigation and transactional matters. The Firm's legal representation, involves extensive involvement with consumers and businesses, as Debtors and Debtors-in-Possession in chapter 7, 11 and 13 Bankruptcies.

## DESCRIPTION OF RESPONSIBILITIES OF BANKRUPTCY ATTORNEYS

The Firm's Bankruptcy Department currently employs four full-time attorneys whose duties include, but are not limited to, attendance at the client's initial debtor interview, 341(a) meeting of creditors and confirmation hearing. The Firm's attorneys also prepare petitions, schedules and other documents that are critical to the success of each case.

The attorneys, under the supervision of the Firm's principal attorney, Michael Jay Berger, are responsible for the research, preparation and filing of applications, motions and other documents throughout the course of a client's bankruptcy. More specifically, the attorneys draft applications to employ professionals and applications for attorney compensation, as well as budget motions, motions for the interim use of cash collateral, motions to value and Chapter 11 and 13 plans of reorganization and disclosure statements.

The Firm's attorneys also ensure compliance with the Bankruptcy Code and Local Bankruptcy Rules. The attorneys are often required to prepare and file: applications for orders shortening time, motions for authorization to incur debt, applications for removal of civil actions, amendments to schedules, final reports, orders, judgments-findings of fact and conclusions of law, applications for final decrees closing Chapter 11 cases, statements of indebtedness and declarations in adversary proceedings, collection complaints, notices of appeals, and proofs of claim.

Immediately following is a brief description of the qualifications of the Firm's Attorneys.

**Michael Jay Berger – *Principal Attorney*,** admitted to the State Bar of California, 1981; Central District of California, 1982. Mr. Berger is a Certified Legal Specialist in Bankruptcy Law certified by the California Board of Legal Specialization of the State Bar of California.

University of California Hastings, San Francisco, CA (1981)
Duke University, Durham, NC (1978).

**Sofya Davtyan – *Partner*:** Admitted to the State Bar of California, 2008; Central District of California, 2008. Ms. Davtyan joined the firm in February of 2009. Ms. Davtyan is a Certified Specialist in Bankruptcy Law, Certified by the California Board of Legal Specialization.

Ventura College of Law, Ventura, CA (2008)
University of Southern California, Los Angeles, CA (2002)

**Carolyn M. Afari – *Mid-Level Associate*:** Admitted to the State Bar of California, 2012; Central District of California, 2012. Ms. Afari joined the firm in June of 2017.

University of West Los Angeles School of Law, Los Angeles, CA (2011)
University of Southern California, Los Angeles, CA (2005)

**Debra J. Reed – *Mid-Level Associate*.** Admitted to the State Bar of California, 2010; Central District of California, 2020. Ms. Reed joined the firm in 2020.

Santa Clara University School of Law, Santa Clara, CA • Juris Doctor (2009)
Baruch College, New York, NY • Masters of Business Administration (2000)
Boston College, Boston MA • Bachelor of Arts (1986)

**Robert Poteete – *Mid-Level Associate*:** Admitted to the State Bar of California, 2007; Central District of California, 2008. Mr. Poteete joined the firm in 2022.

UCLA School of Law, Los Angeles, CA (2006)
University of Pennsylvania, Philadelphia, PA (2003)

## DESCRIPTION OF RESPONSIBILITIES OF PARALEGALS & LEGAL ASSISTANTS

The Firm's Bankruptcy Department currently employs four full-time paralegals and legal assistants whose duties include, but are not limited to, the following:

Attendance at initial attorney/client meetings, preparation of petitions, schedules, statement of affairs and rendering assistance to client in meeting the requirements of the United States Trustee.

After filing of the petition, the Paralegals, under the supervision of the attorneys, prepare drafts of motions, applications and other documents, including, but not limited to the following:

Application for authorization to employ professional persons, applications for compensation of attorneys' fees, motions to compromise controversies, stipulations, motions for extension of time for the debtor to file schedules, motions for extension of exclusivity periods [Bankruptcy Code §1121], motions for extension of the time in which the debtor may assume or reject nonresidential real property leases, motions for authorization to sell assets of the debtor's estate, applications for orders shortening time for serving notices to creditors, motions for authorization to incur debt, applications for removal of civil actions, amendments to schedules, final reports and account [Bankruptcy Rule 1019 (6)], notices as required by the Bankruptcy Rules, orders, judgments-findings of fact and conclusions of law, applications for final decrees closing Chapter 11 cases, final decrees, statements

of indebtedness and declarations in adversary proceedings, collection complaints, notices of appeals, proofs of claims, and any other documents which may appropriately be drafted at the legal assistant level.

Immediately following is a brief description of the qualifications of the Firm's Paralegals and Legal Assistants.

### Gary Baddin (Bankruptcy Analyst / Field Agent)

Mr. Baddin joined the firm in June 2021. In 1987, he joined the elite Special Procedures Staff of the IRS, administering the Service's tax claims in the U. S. Bankruptcy Court. He worked for the Office of the United States Trustee in the U.S. Department of Justice as a Bankruptcy Analyst for 30 years and was assigned oversite of chapter 11 cases. Mr. Baddin received his Bachelor's Degree in Political Science from UC Davis and holds a Master's Degree in Public Administration from USC.

### Yathida Nipha (Senior Paralegal): Ms. Nipha is a senior paralegal with over twelve years of experience in Chapters 7, 11 and 13. Ms. Nipha joined the firm in January 2010.

University of Phoenix, Los Angeles, CA (2008)

### Karine Manvelian (Senior Paralegal): Mrs. Manvelian joined the firm in 2014 and has returned in December 2015. Mrs. Manvelian worked with the United States Bankruptcy Court for over 20 years.

### Peter Garza (Paralegal): Mr. Garza joined the firm in May 2015. Prior to joining the firm, Mr. Garza was a customer service supervisor with Williams Lea, Inc. at O'Melveny & Myers for 15 years. Mr. Garza prepares declarations of service and Applications to Employ Professionals. Mr. Garza has experience preparing bankruptcy schedules in chapter 7, 11, and 13.

**EXHIBIT 3**

<table>
<tr><td>

Attorney or Party Name, Address, Telephone and FAX Nos., State Bar Nos. & Email Address

**Michael Jay Berger (SBN 100291)**
**Law Offices of Michael Jay Berger**
**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**
**(310) 271-6223 Fax: (310) 271-9805**
**michael.berger@bankruptcypower.com**

*Attorney for Debtor*

</td><td>

FOR COURT USE ONLY

</td></tr>
</table>

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:

Bassem Victor El Mallakh

Debtor(s).

CASE NO.: __8:22-bk-11605-TA__

CHAPTER: __11__

**STATEMENT OF DISINTERESTEDNESS**
**FOR EMPLOYMENT OF PROFESSIONAL**
**PERSON UNDER FRBP 2014**

**(File with Application for Employment)**

[No Hearing Required]

---

1.    Name, address and telephone number of the professional (Professional) submitting this Statement:
      **Michael Jay Berger (SBN 100291)**
      **Law Offices of Michael Jay Berger**
      **9454 Wilshire Blvd., 6th Floor, Beverly Hills, CA 90212**
      **Tel (310) 271-6223; Fax (310) 271-9805; Email michael.berger@bankruptcypower.com**

2.    The services to be rendered by the Professional in this case are *(specify)*:
      **Legal services required in representing Debtor in ch 11 proceedings include advising Debtor of his legal rights and remedies, negotiating w/attorneys for unsecured creditors, negotiating with creditors, representing Debtor at related hearings, assisting Debtor in complying with OUST rules and regulations, assisting in paperwork preparation to continue and conclude this chapter 11 proceeding, responding to creditor inquiries, reviewing proofs of claims filed in this bankruptcy proceeding, preparing Notices of Automatic Stay in all State Court proceedings in which Debtor is sued during pendency of the bankruptcy and responding to Motions filed in Debtor's bankruptcy. Also, the Professional will object to inappropriate claims, and prepare a Disclosure Statement and Plan on behalf of the Debtor.**

3.    The terms and source of the proposed compensation and reimbursement of the Professional are *(specify)*:
      **Applicant will charge for Michael Berger's services at the rate of $595.00 per hour; $545.00 per hour for partner Sofya Davtyan; $435.00 per hour for mid-level associate attorneys Debra Reed, Carolyn M. Afari,**

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                Page 1                    **F 2014-1.STMT.DISINTEREST.PROF**

and Robert Poteete; $275.00 per hour for bankruptcy analyst/field agent Gary Baddin, and $250.00/$200.00 per hour for senior paralegals, law clerks, and paralegals.

4.     The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are *(specify)*:
**The agreed retainer is $20,000.00. On September 7, 2022, Debtor's sister, Reem Hanna, paid Professional $10,000.00 installment of the $20,000.00 retainer. On September 15, 2022, Ms. Hanna paid Professional the remaining retainer of $10,000.00 plus $1,738.00 filing fee and $32.00 credit report as a gift contribution. Ms. Hanna is not a creditor of the Debtor and is not seeking repayment of the $20,000.00 retainer, $1,738.00 filing fee and $32.00 credit report fee. Pursuant to the written fee agreement between Professional and Debtor, the sum 4,267.50 in fees was earned by Applicant prior to the petition date and withdrawn from Applicant's client trust account along with the $1,738.00 filing fee. The unearned balance of $15,732.50 is maintained in Applicant's client trust account until court authorization is pursuant to 11 U.S.C. Section 330.**

5.     The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of *(specify)*: **Applicant reviewed his list of current and past clients and found no contact with Debtor's creditors or other parties in interest.**

6.     The following is a complete description of all of the Professional's connections with the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee (specify, attaching extra pages as necessary):

**Applicant's office employs Gary Baddin who was previously employed as Analyst for the Office of the United States Trustee. Applicant does not believe Mr. Baddin's previous employment and current work on the case presents any conflict.**

7.     The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows *(specify, attaching extra pages as necessary)*:
n/a

8.     The Professional is not and was not, within 2 years before the date of filing of the petition, a director, officer or employee of the Debtor.

9.     The Professional does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason, except as follows *(specify, attaching extra pages as necessary)*:
n/a

10.    Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional *(specify)*:
**Michael Jay Berger (SBN 100291)**
**Law Offices of Michael Jay Berger**
**9454 Wilshire Blvd., 6th Floor, Beverly Hills, CA 90212**
**Tel (310) 271-6223; Fax (310) 271-9805; Email michael.berger@bankruptcypower.com**

11.    The Professional is not a relative or employee of the United States trustee or a bankruptcy judge, except as follows *(specify, attaching extra pages as necessary)*:

12.    Total number of attached pages of supporting documentation: _____

13.    After conducting or supervising the investigation described in paragraph 5 above, I declare under penalty of

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                   Page 2                                   **F 2014-1.STMT.DISINTEREST.PROF**

perjury under the laws of the United States, that the foregoing is true and correct except that I declare that
paragraphs 6 through 9 are stated on information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_9/27/2027_    **Michael Jay Berger**

_Date_          _Printed Name_                         _Signature_

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016             Page 3             **F 2014-1.STMT.DISINTEREST.PROF**

# EXHIBIT 4

# LAW OFFICES OF MICHAEL JAY BERGER

9454 Wilshire Blvd., 6th Floor
Beverly Hills, California 90212-2929
Tel 310-271-6223 ● Fax 310-271-9805
e-mail: michael.berger@bankruptcypower.com
website: www.bankruptcypower.com

Michael Jay Berger is a California State Bar
Certified Bankruptcy Law Specialist

Sofya Davtyan is a California State Bar
Certified Bankruptcy Law Specialist

Debra J. Reed
Carolyn Afari
Robert Poteete

September 5, 2022

Bassem Essam Elmallakh
116 Rockefeller
Irvine, CA 92612

Via E-mail at: bassemv@aol.com

Re:    **Representing Bassem Essam Elmallakh in a Chapter 11 Bankruptcy to be filed in
United States Bankruptcy Court, Central District of California**

This document is our written fee contract. California law requires lawyers to have
written fee contracts with their clients. I will provide legal services to you on the terms set forth
below.

1.    CONDITIONS.    This agreement will not take effect, and I will have no
obligation to provide legal services, until you return a signed copy of this agreement to me and
pay the initial $10,000.00 payment of the $20,000.00 retainer called for in paragraph 4.

2.    SCOPE OF SERVICES.    You are hiring me to prepare and file a
Chapter 11 bankruptcy petition for you. I will provide the legal services reasonably required to
represent you. Representation will include pre-bankruptcy planning, preparing a Chapter 11
bankruptcy Petition and all supporting schedules and statements, advising you regarding your
legal rights and obligations in a bankruptcy proceeding, assisting you in preparing the documents
and reports required by the Office of the United States Trustee, representing you at the initial
debtor interview with the Office of the United States Trustee, representing you at the first
meeting of creditors, representing you in opposition to any Motion for Relief from Stay that may
be filed and assisting you in preparing the paperwork needed to continue and conclude a Chapter
11 proceeding. In addition, I will respond to creditor inquiries, review proofs of claim filed in
your bankruptcy, object to inappropriate claims, respond to all Motions filed in your bankruptcy
proceeding. If and when it is appropriate, I will prepare a proposed Disclosure Statement and

1

Plan of Reorganization for you. I will keep you informed about the status of your case and to respond to your inquiries.

     3.    CLIENT'S DUTIES.     You agree to be truthful with me, to cooperate with me, to keep me informed of developments which affect this case, to abide by this agreement, to pay my bills on time, and to keep me advised of your address, telephone number and whereabouts.

     4.    RETAINER.     You agree to pay me a retainer of $20,000.00. The initial $10,000.00 payment is due when you hire me. The second payment of $10,000.00 is due before I file your case. The $20,000.00 retainer shall be deposited into my client trust account and will be billed against at the hourly rates set forth herein. Before filing your bankruptcy petition, I will give you a bill for all of my time and costs spent on your matter before the filing of your bankruptcy petition. The amount due and owing pursuant to this bill shall be deemed to be fully earned prior the filing of the bankruptcy petition on your behalf. I shall withdraw this amount from my client trust account prior to my filing of the bankruptcy petition on your behalf. After the filing of your bankruptcy petition, I will continue to bill against the remaining balance of the retainer. The $20,000.00 retainer is a retainer. It is not a cap. It is not a minimum fee. Your final bill could be more or less than the retainer amount. Your actual total bill will be based on the hourly rate charges and costs.

     5.    LEGAL FEES.     You agree to pay me for my legal services at the following hourly rates: Michael Berger's time --$595.00/ hour; Partner Sofya Davtyan's time --$545.00/hour; mid-level associate attorneys Debra Reed, Carolyn Afari and Robert Poteete's time --$435.00/hour; bankruptcy analyst Gary Baddin's time -- $275.00 per hour; senior paralegal and law clerk time --$250.00 per hour; paralegal time --$200.00. These rates will not be raised and will continue in effect until the conclusion of this case.

     6.    COSTS.     In addition to paying legal fees, you agree to reimburse me for all costs and expenses that I incur on your behalf. Costs and expenses commonly include court filing fees, trustee fees, court reporter fees, long distance telephone calls, messenger fees, postage, in office photocopying at $.10 per page, outside copying at my actual costs no charge for receiving faxes, $.10 per page for sending faxes, parking, and mileage at $.55 per mile. I will have no obligation to advance any money for costs. I agree to waive all costs for computerized legal research and word processing. You authorize me to incur all reasonable costs.

The initial filing fee for a Chapter 11 is $1,738.00. You agree to pay me $1,738.00 prior to the filing of the Chapter 11 Petition to cover this fee.

     7.    BILLS.     I will send you periodic bills for any fees and costs that I incur on your behalf. I will apply to the bankruptcy court for approval of my fees and costs. So long as your case is pending in the bankruptcy court, no further compensation will be paid to me without the approval of the bankruptcy court.

2

8.    **DISCHARGE AND WITHDRAWAL.**    You may discharge me at any time. I may withdraw with your consent or for good cause as found by a court of law. Good cause includes, but is not limited to, your breach of this agreement, your refusal to cooperate with me or to follow my advice on a material matter, or any fact or circumstance which would render my continuing representation of you nonproductive, unlawful or unethical.

9.    **DISCLAIMER OF GUARANTEE.**    Nothing in this agreement and nothing in my statements to you should be construed as a promise or guarantee about the outcome of your matter. I make no such promises or guarantees. My comments about the possible outcome of your matter are expressions of opinion only.

Thank you for retaining me in this matter. I will use my best efforts on your behalf.

LAW OFFICES OF MICHAEL JAY BERGER

By: _____
Michael Jay Berger

**I have read and understood the foregoing terms and agree to them.**

By: _____
Bassem Essam Elmallakh

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**

A true and correct copy of the foregoing document entitled (*specify*): **_NOTICE OF MOTION AND MOTION IN INDIVIDUAL CHAPTER 11 CASE FOR ORDER AUTHORIZING DEBTOR IN POSSESSION TO EMPLOY GENERAL BANKRUPTCY COUNSEL |11 U.S.C. 327(a), LBR 2014-1|; AND TO FILE INTERIM FEE AP__** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On _9/28/22_ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Proposed Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com,
HestonBR41032@notify.bestcase.com,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _9/28/22_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _9/28/22_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| _9/28/22_ | Peter Garza | /s/Peter Garza |
| Date | Printed Name | Signature |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                Page 9      **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

**2. SERVED BY UNITED STATES MAIL**:

SECURED CREDITORS:

Belgium Investments 960 Bay Dr, LLC
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S Oak Avenue
Pasadena, CA 91107

Central Park West Community HOA
401 Rockefeller #208
Irvine, CA 92612

First Service Residential
15241 Laguna Canyon Rd.
Irvine, CA 92618

First Service Residential
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054

Freedom Mortgage
951 Yamato Rd.
Boca Raton, FL 33431

Freedom Mortgage
PO Box 50428
Indianapolis, IN 46250

Freedom Mortgage Corporation
Attn: Bankruptcy
907 Pleasant Valley Ave, Ste 3
Mt Laurel, NJ 08054

Td Auto Finance
Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI 48333

TD Auto Finance
6 Atlantis Way
Lewiston, ME 04240

20 LARGES UNSECURED CREDITORS:

Wells Fargo Bank NA
1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                                    Page 10    **F2081-2.5.MOTION.EMPLOY.GEN.COUNSEL**

# EXHIBIT
# "17"

| Attorney or Party Name, Address, Telephone & FAX Nos.,State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Michael Jay Berger (SBN 100291)**<br>**Law Offices of Michael Jay Berger**<br>**9454 Wilshire Boulevard, 6th floor**<br>**Beverly Hills, CA 90212**<br>**(310) 271-6223 Fax: (310) 271-9805**<br>**E-mail: Michael.Berger@bankruptcypower.com** | |
| ☐ *Individual appearing without attorney*<br>☑ *Attorney for:*  **Bassem Victor El Mallakh** | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>     **Bassem Victor El Mallakh,**<br><br><br><br><br><br><br><br><br><br><br><br>                                      Debtor. | CASE NO: **8:22-bk-11605-TA**<br><br>CHAPTER   **11**<br><br>**NOTICE OF MOTION AND MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY AS THE COURT DEEMS APPROPRIATE**<br><br>**(with supporting declarations)**<br><br>DATE:  **October 18, 2022**<br>TIME:   **10:00 a.m.**<br>COURTROOM:  **5B**<br>PLACE:  **411 West Fourth Street, Santa Ana, CA 92701** |

**Movant:**  Bassem Victor El Mallakh

1.   NOTICE IS HEREBY GIVEN to  Freedom Mortgage Corporation, Central Park West Community Association, The Townes at Central Park West Association, Belgium Investments 960 Bay Dr, LLC,and  TD Auto Finance (Secured Creditors/Lessor), trustee (if any), and affected creditors (Responding Parties), their attorneys (if any), and other interested parties that on the above date and time and in the stated courtroom, Movant in the above-captioned matter will move this court for an order imposing a stay or continuing the automatic stay as to certain creditors and actions described in the motion on the grounds set forth in the attached motion.

2.   **Hearing Location:**

☐ **255 East Temple Street, Los Angeles, CA 90012**          ☑ **411 West Fourth Street, Santa Ana, CA 92701**
☐ **21041 Burbank Boulevard, Woodland Hills, CA 91367**      ☐ **1415 State Street, Santa Barbara, CA 93101**
☐ **3420 Twelfth Street, Riverside, CA 92501**

3.   a.   ☑   This Motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1.  If you wish to oppose this Motion,

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 1                        **F 4001-1.IMPOSE.STAY.MOTION**

you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this motion.

b. ☐ This motion is being heard on SHORTENED NOTICE. If you wish to oppose this motion, you must appear at the hearing. Any written response or evidence must be filed and served: ☐ at the hearing ☐ at least ___ days before the hearing.

    (1) ☐ An Application for Order Setting Hearing on Shortened Notice was not required (according to the calendaring procedures of the assigned judge).

    (2) ☐ An Application for Order Setting Hearing on Shortened Notice was filed per LBR 9075-1(b) and was granted by the court and such motion and order has been or is being served upon the appropriate creditor(s) and trustee, if any.

    (3) ☐ An Application for Order Setting Hearing on Shortened Notice has been filed and remains pending. Once the court has ruled on that motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

4. You may contact the Clerk's Office or use the court's website (www.cacb.uscourts.gov) to obtain a copy of an approved court form for use in preparing your response (optional court form F 4001-1.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

5. If you fail to file a written response to the motion or fail to appear at the hearing, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Date:   9/27/2022

**Law Offices of Michael Jay Berger**
Printed name of law firm (if applicable)

**Michael Jay Berger**
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012            Page 2        **F 4001-1.IMPOSE.STAY.MOTION**

## MOTION FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY AS THE COURT DEEMS APPROPRIATE

**Movant:** __Bassem Victor El Mallakh__

1. **The Property or Debt at Issue:**
   a. ☑ Movant moves for an order imposing a stay with respect to the following property (Property):
   ☐ Vehicle *(describe year, manufacturer, type, and model)*: **2016 Mercedes C300**
   Vehicle Identification Number: **55SWF4JB7GU106746**
   Location of vehicle *(if known)*: **Debtor's residence**

   ☐ Equipment *(describe manufacturer, type, and characteristics)*:
   Serial number(s):

   Location *(if known)*:

   ☑ Other Personal Property *(describe type, identifying information, and location)*: *Debtor's personal property listed on Schedule A/B* **(attached as Exhibit-1).**

   ☑ Real Property
   Street Address: **116 Rockefeller**
   Apt./Suite No.:
   City, State, Zip Code: **Irvine, CA 92612**
   Legal description or document recording number(include county of recording): **Lot 18 of Tract 16989 of Condo Project 930-24 Located on APN 445-231-37, together with an undivided 1/10 INT in Lot 18 (condo plan).**

   ☐ See attached continuation page

   The following creditors have a security interest or unexpired lease in this Property (give full name and address of creditor) __Freedom Mortgage Corporation (1st TD Holder)__ to secure the sum of approximately $__263,043.40__ now owed; **Central Park West Community Association (HOA)** to secure the sum of approximately **$2,000.00** now owed; **The Townes at Central Park West Association (HOA #2)** to secure the sum of approximately **$7,276.00** now owed; and **Belgium Investments 960 Bay Dr, LLC** to secure the sum of approximately **$4,345,250.00** now owed (Secured Creditors). Additional creditors who are the subject of this motion, and their respective claims, addresses and collateral, are described on the continuation sheets attached. *(Attach additional sheets as necessary)*.

   b. ☐ Movant moves for an order **imposing a stay** with respect to *any and all actions* against the Debtor and the estate taken                      concerning the debt/lease owed to the *Secured Creditors/Lessors* as described in this motion; and/or

   c. ☐ Movant moves for an order **imposing a stay** *as to all creditors.*

   d. ☐ Movant moves for an order **continuing the automatic stay** with respect to any and all actions against the Debtor and the estate taken concerning the debt owed to the *Secured Creditors* and/or

   e. ☑ Movant moves for an order **continuing the automatic stay** *as to all creditors.*

2. **Case History:**
   a. ☑ A voluntary   ☐ An involuntary petition concerning an individual[s] under chapter   ☐ 7   ☑ 11   ☐ 12
      ☐ 13 was filed concerning the present case on *(specify date)*: **September 19, 2022**

   b. ☐ An Order of Conversion to Chapter   ☐ 7   ☐ 11   ☐ 12   ☐ 13 was entered on *(specify date)*:

   c. ☐ Plan was confirmed on *(specify date)*:

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                      Page 3          **F 4001-1.IMPOSE.STAY.MOTION**

d. ☑ Other bankruptcy cases filed by or against this Debtor have been pending within the past year preceding the petition date in this case. These cases and the reasons for dismissal are:

    1.  Case name: **Bassam Victor El Mallakh**
       Case number:   **8:22-bk-11158-TA**             Chapter: **13**
       Date Filed: **July 12, 2022**                Date dismissed: **July 26, 2022**
       Relief from stay re this Property       ☐ was     ☑ was not granted
       Reason for dismissal: **Debtor requested dismissal of the emergency chapter 13 petition to consider other options for addressing his obligations.**

    2.  Case name:
       Case number:                       Chapter:
       Date Filed:                          Date dismissed:
       Relief from stay re this Property       ☐ was     ☐ was not granted
       Reason for dismissal:

       ☐ See attached continuation page

e. ☑ As of the date of this motion the Debtor ☐ has ☑ has not filed a statement of intentions regarding this Property as required under 11 U.S.C. §521(a)(2). If a statement of intentions has been filed, Debtor ☐ has ☐ has not performed as promised therein. **Statement of Intent is not applicable in Chapter 11 cases. Debtor wants to retain the Property and reorganize his obligations.**

f. ☑ The first date set for the meeting of creditors under 11 U.S.C §341(a) is **10/28/2022 at 10:00 a.m.** and the court ☐ has ☑ has not fixed a later date for performance by Debtor of the obligations described at 11 U.S.C.§521(a)(2). The extended date *(if applicable)* is ___.

g. ☑ In a previous case(s), as of the date of dismissal there was: **N/A**
    ☐ an action by the Secured Creditor/Lessor under 11 U.S.C. §362(d) still pending or
    ☐ such action had been resolved by an order terminating, conditioning or limiting the stay as to such creditor.

3.  The equity in the property is calculated as follows:

a)  
| | | |
|---|---|---|
| 1. | Property description/value: **2016 Mercedes C300** | $ **15,00.000** |
| 2. | Creditor/Lien amount: **TD Auto Finance** | $ **6,493.00** |
| 3. | Creditor/Lien amount: | $ __ |
| 4. | Creditor/Lien amount: | $ __ |
| 5. | Creditor/Lien amount: | $ __ |
| 6. | Total Liens | $ **6,493.00** |
| 7. | Debtor's Homestead Exemption; **CCP 704.010 for motor vehicles** | $ **3,625.00** |
| 8. | Equity in the Property (subtract lines 6 and 7 from line 1 and enter here) | $ **4,882.00** |

b)  
| | | |
|---|---|---|
| 1. | Propery description/value: **116 Rockefeller, Irvine, CA 92612** | $ **1,100,000.00** |
| 2. | Creditor/Lien amount: **Freedom Mortgage Corporation** | $ **263,043.40** |
| 3. | Creditor/Lien amount: **Central Park West Community Association** | $ **2,000.00** |
| 4. | Creditor/Lien amount: **The Townes at Central Park West Association** | $ **7,276.00** |
| 5. | Creditor/Lien amount: **Belgium Investments 960 Bay Dr, LLC** | $ **4,345,250.00** |
| 6. | Total Liens | $ **4,617,569.40** |
| 7. | Debtor's Homestead Exemption | $ **626,400.00** |
| 8. | Equity in the Property (subtract lines 6 and 7 from line 1 and enter here) | $ **0.00** |

    ☐ See attached continuation page

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 4          **F 4001-1.IMPOSE.STAY.MOTION**

4. **Grounds for Continuing the Stay:**

a. ☑ Pursuant to 11 U.S.C. § 362(c)(3) the stay should be continued on the following grounds:

1. ☑ The present case was filed in good faith notwithstanding that a prior single or joint case filed by or against the individual Debtor which was pending within the year preceding the petition date was dismissed, because:

   A. ☑ The prior dismissal was of a case not refiled under chapter 7 after dismissal under 11 U.S.C.§707(b);
   B. ☑ Good faith is shown because  **Debtor retained competent counsel to represent him in this chapter 11; prior case was filed as a chapter 13, while the Debtor did not quality to be a chapter 13 Debtor; Debtor has a likelihood of successful reorganization in this case.**

   ☐ See attached continuation page

2. ☑ The Property is of consequential value or benefit to the estate because:

   A. ☐ The fair market value of the Property is greater than all liens on the Property as shown above in paragraph 3 and as supported by declarations attached *(describe separately as to each property)*;.

   B. ☑ The Property is necessary to a reorganization for the following reasons: **The Property is the Debtor's principal residence, which Debtor owned since 2013 and which he intends to retain. Debtor is also collecting rental income from his sister, who resides in the Property with him.**

   ☐ See attached continuation page

   C. ☑ The Secured Creditor/Lessor's interest can be adequately protected by (describe Movant's proposal for adequate protection:) **Debtor intends to timely make the post-petition payments, currently $1,961.00 to Freedom Mortgage Corporation. Central Park West Community Association has a pre-petition claim for unpaid HOA dues in the amount of $2,000. The monthly HOA obligations are $166.00 and Debtor will timely pay all post-petition monthly dues and will cure the pre-petition default through the reorganization plan. The Townes at Central Park West Association holds a pre-petition claim for unpaid HOA dues in the amount of $7,276.00. The monthly HOA obligations are $200 and Debtor will timely pay all post-petition monthly dues and will cure the pre-petition default through the reorganization plan. Belgium Investments 960 Bay Dr, LLC holds a pre-petition judgment lien for $4,345,250.00. Debtor is not proposing monthly payments to Belgium Investments at this time, and will provide treatment to Belgium Investments through the reorganization plan which will satisfy the liquidation analysis. Debtor intends to reach out to Belgium Investments in hopes of reaching a plan treatment stipulation.**

   ☐ See attached continuation page

3. ☑ The presumption of a bad faith filing under 11 U.S.C.§362(c)(3)(C)(i) is overcome in this case as to *all creditors* because:

   A. ☐ The prior dismissal was pursuant to the creation of a debt repayment plan. 11 U.S.C.§362(i);
   B. ☐ Debtor's failure to file or amend the petition or other documents as required by the court or Title 11 of the United States Code and resulting in dismissal was excusable because such failure was caused by the negligence of Debtor's attorney;
   C. ☑ Debtor's failure to file or amend the petition or other documents as required by the court or Title 11 of the United States Code and resulting dismissal was excusable because **Debtor filed a Motion for Voluntary Dismissal of prior chapter 13 case when he became aware that he was not eligible to be a chapter 13 debtor. He found a competent counsel with extensive knowledge in chapter 11 cases to represent the Debtor in this case and assist with proposing a feasible reorganization plan.**

   ☐ See attached continuation page

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 5                    **F 4001-1.IMPOSE.STAY.MOTION**

D. ☐ Debtor's failure to provide adequate protection as ordered by the court in the prior case is excusable because ___

      ☐ See attached continuation page

E. ☐ Debtor's failure to perform the terms of a confirmed plan in the prior case is excusable because ___

      ☐ See attached continuation page

F. ☑ There has been a substantial change in the personal or financial affairs of the Debtor since the dismissal of the prior case(s) as follows: **The filing of the prior case as a chapter 13 was a mistake, which Debtor became aware of after the filing. Since the dismissal, Debtor retained competent counsel to represent the Debtor and assist with a successful reorganization. While actively looking for a job, the Debtor is now collecting monthly rental income of $4,000.00 from the Property. No negotiations took place with the creditors in the prior case. Debtor, through counsel, intends to reach out to its largest creditor, Belgium Investments 960 Bay Dr, LLC in an effort to resolve the pending dispute and reach a plan treatment stipulation.**

From this, the court may conclude that this case, if a case under chapter 7, will result in a discharge or, if under chapter 11 or 13, in a confirmed plan that will be fully performed.

      ☐ See attached continuation page

G. ☐ For the following additional reasons ___

      ☐ See attached continuation page

    4. ☑ The presumption of a bad faith filing as to the Secured Creditor/Lessor under 11 U.S.C.§362(c)(3)(C)(ii) is overcome in this case because **The filing of the prior case as a chapter 13 was a mistake, which Debtor became aware of after the filing. Since the dismissal, Debtor retained competent counsel to represent the Debtor and assist with a successful reorganization. While actively looking for a job, the Debtor is now collecting monthly rental income of $4,000.00 from the Property. No negotiations took place with the creditors in the prior case. Debtor, through counsel, intends to reach out to its largest creditor, Belgium Investments 960 Bay Dr, LLC in an effort to resolve the pending dispute and reach a plan treatment stipulation.**

      ☐ See attached continuation page

5. **Grounds for Imposing a Stay:**
  a. ☐ Pursuant to 11 U.S.C.§362(c)(4) this case was filed in good faith and grounds exist for imposing a stay as follows:
    1. ☐ The Property is of consequential value or benefit to the estate because the fair market value of the Property is     greater than all liens on the property as shown above in paragraph 3 and as supported by declarations attached.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                       Page 6           **F 4001-1.IMPOSE.STAY.MOTION**

2.  ☐   The Property is of consequential value or benefit to the estate because the Property is necessary to a reorganization for the following reasons:  __.

☐ See attached continuation page

3.  ☐   The Secured Creditor/Lessor's interest can be adequately protected by *(describe Movant's proposal for adequate protection)*: __

☐ See attached continuation page

b.  ☐   The present case was filed in good faith notwithstanding that the prior single or joint cases filed by or against the individual Debtor pending within the year preceding the petition date were dismissed, because:

1.  ☐   The prior  dismissal was of a case not refiled under chapter 7 after dismissal under 11 U.S.C. § 707(b);

2.  ☐   Good faith is shown because __

☐ See attached continuation page

c.  ☐   The presumption of a bad faith filing under 11 U.S.C. § 362(c)(4)(D)(i) is overcome in this case as to *all creditors* because:

1.  ☐   Debtor had a substantial excuse in failing to file or amend the petition or other documents as required by the court or Title 11 of the United States Code, resulting in the prior dismissal(s) as follows: __

☐ See attached continuation page

2.  ☐   Debtor's failure to file or amend the petition or other documents as required by the court or Title 11 of the United States Code and resulting dismissal was as the result of the negligence of Debtor's attorney;

3.  ☐   Debtor's failure to provide adequate protection as ordered by the court in the prior case is excusable because __

☐ See attached continuation page

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                      Page 7                    **F 4001-1.IMPOSE.STAY.MOTION**

4.  ☐  Debtor's failure to perform the terms of a confirmed plan in the prior case is excusable because __

    ☐ See attached continuation page

5.  ☐  There has been a substantial change in the personal or financial affairs of the Debtor since the dismissal of the prior case(s) as follows: __

(from which the Court may conclude that this case, if a case under chapter 7, may be concluded with a discharge or, if under chapter 11 or 13, with a confirmed plan that will be fully performed).

    ☐ See attached continuation page

6.  ☐  For the following additional reasons __

    ☐ See attached continuation page

7.  ☐  The presumption of bad faith as to the Secured Creditor/Lessor under 11 U.S.C.§362(c)(4)(D)(ii) is overcome in this case because __

    ☐ See attached continuation page

6.  **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto).*

a.  ☑  Movant submits the attached Declaration on the court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to LBRs.

b.  ☐  Other Declaration(s) are also attached in support of this Motion

c.  ☑  Movant requests that the court consider as admissions the statements made by Debtor under penalty of perjury concerning Movant's claims and the Property set forth in Debtor's(s') Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit **1** .

d.  ☐  Other evidence *(specify):* __

7.  ☐  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order Imposing a Stay and granting the following *(specify forms of relief requested):***

1.  ☑  That the Automatic Stay be continued in effect as to all creditors until further order of the court.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 8                          **F 4001-1.IMPOSE.STAY.MOTION**

2.  ☐  That the Automatic Stay be continued in effect as to the Secured Creditor/Lessor with respect to the Property until further order of the court.

3.  ☐  That the Automatic Stay be continued in effect as to the Secured Creditor/Lessor with respect to actions to collect the debt owed to the Secured Creditor/Lessor until further order of the court.

4.  ☐  That a Stay be imposed as to all creditors until further order of the court..

5.  ☐  That a Stay be imposed as to the Secured Creditor/Lessor with respect to the Property until further order of the court.

6.  ☐  That a Stay be imposed as to the Secured Creditor/Lessor with respect to actions to collect the debt owed to the Secured Creditor/Lessor until further order of the court.

7.  ☐  For adequate protection of the Secured Creditor/Lessor by *(specify proposed adequate protection)* __

8.  ☐  For other relief requested, see attached continuation page.

Date: 9/27/2022

Respectfully submitted,

Movant Name
**Law Offices of Michael Jay Berger**
Firm Name of attorney for Movant (if applicable)

Signature
**Michael Jay Berger**
Printed Name of Individual Movant or Attorney for Movant

## DECLARATION OF MOVANT

I  **Bassam Victor El Mallakh**  , am the Movant. I have read the foregoing motion consisting of **19** pages, and the attached materials incorporated therein by reference. If reference is made to balances owing, my testimony regarding same is based upon the business records of Movant kept in the ordinary course of business of Movant by persons whose responsibility it is to accurately and faithfully record information as to the Debtor's account on or near the date of events recorded. I am one of the custodians of such business records.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

9/27/2022                    **Bassam Victor El Mallakh**
Date                          *Printed name of declarant*                                    *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                          Page 9                  **F 4001-1.IMPOSE.STAY.MOTION**

**EXHIBIT-1**

| Fill in this information to identify your case and this filing: | | | |
|---|---|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 8:22-bk-11605-TA | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

**1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

**1.1**

**116 Rockefeller**
Street address, if available, or other description

**Irvine        CA      92612-0000**
City              State      ZIP Code

**Orange**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other    **Townhouse**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Debtor's principal residence: townhouse.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,100,000.00** | **$1,100,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

☐ Check if this is community property (see instructions)

**2.** Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.......................................................=>

| |
|---|
| **$1,100,000.00** |

**Part 2:**  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

Debtor 1    **Bassem Victor El Mallakh**                    Case number *(if known)*    **8:22-bk-11605-TA**

## 3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No

■ Yes

| | | | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

| 3.1 | Make: | **Mercedes** | Who has an interest in the property? Check one | |
|---|---|---|---|---|
| | Model: | C300 | ■ Debtor 1 only | |
| | Year: | 2016 | ☐ Debtor 2 only | **Current value of the entire property?** |
| | Approximate mileage: | 42,000 | ☐ Debtor 1 and Debtor 2 only | **Current value of the portion you own?** |
| | Other information: | | ☐ At least one of the debtors and another | |

The vehicle is financed with TD Financial. Monthly payment is $367.00.

☐ Check if this is community property (see instructions)

Current value of the entire property? **$15,000.00**

Current value of the portion you own? **$15,000.00**

## 4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................=>    **$15,000.00**

---

**Part 3:**  Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

## 6. Household goods and furnishings
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No

■ Yes. Describe.....

| Debtor's residence: Couch, coffee table, mattress, dresser, dining room table with 6 chairs, patio furniture, wall mirror, lamps, and other household goods and furniture | **$2,000.00** |
|---|---|

| Debtor's residence: 3 televisions, stove, fridge, laptop, desk computer, 2 cell phones, dishwashers, washer and dryer, and other household electronics | **$3,000.00** |
|---|---|

## 7. Electronics
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

■ No

☐ Yes. Describe.....

## 8. Collectibles of value
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes. Describe.....

## 9. Equipment for sports and hobbies
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☐ No

■ Yes. Describe.....

Debtor 1    **Bassem Victor El Mallakh**                              Case number *(if known)*    **8:22-bk-11605-TA**

| | |
|---|---|
| Debtor's residence: Bicycle and tennis equipment | $500.00 |

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes. Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
☑ Yes. Describe.....

| | |
|---|---|
| Debtor's residence: Clothes and shoes | $800.00 |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☑ No
☐ Yes. Describe.....

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☑ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
☑ No
☐ Yes. Give specific information.....

| | |
|---|---|
| **15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................................ | $6,300.00 |

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?     **Current value of the portion you own?** Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
☑ Yes.................................................................................................................

| | |
|---|---|
| **Cash** | $150.00 |

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
☑ Yes.........................            Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking account** | Chase checking account ending in 7332 | $1,658.00 |

| | | | |
|---|---|---|---|
| 17.2. | **Checking account** | Wells Fargo account ending in 4464 | $0.00 |

Debtor 1    **Bassem Victor El Mallakh**    Case number *(if known)*    8:22-bk-11605-TA

---

|  | 17.3. | **Checking account** | Wells Fargo account ending in 3158 | $0.00 |

---

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes................    Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ☐ No

    ■ Yes. Give specific information about them...................
    
    | Name of entity: | % of ownership: | |
    |---|---|---|
    | Debtor has a 10% ownership interest in Belgium Investments 5655 S Troy LLC. The LLC owns an interest in a multi-family building (10 units), which are rented. However, due to Covid-19, some tenants have not been paying rent. The intention is to sell the property. | 10%   % | $40,000.00 |
    | Debtor has a 20% ownership interest in Belgium Investments 5544 North Avenue, LLC. Debtor's 20% interest in Belgium Investments 5544 North Avenue, LLC held by his corporation BBGIP, Inc., in which Debtor holds a 20% interest, with another individual holding 80% interest. The property is vacant and has been in rehabilitation during the last two years. | 20%   % | Unknown |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
    Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ■ No
    ☐ Yes. List each account separately.
    Type of account:    Institution name:

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ■ No
    ☐ Yes. .....................    Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
    ■ No
    ☐ Yes.............    Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ■ No
    ☐ Yes ... ... ......    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
    ■ No

---

Debtor 1    **Bassem Victor El Mallakh**                    Case number *(if known)*    8:22-bk-11605-TA

☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ■ No
    ☐ Yes. Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes. Give specific information about them...

**Money or property owed to you?**                    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**
    ☐ No
    ■ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| 2021 tax refund | Federal and State | $1,400.00 |
|---|---|---|

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes. Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ■ No
    ☐ Yes. Name the insurance company of each policy and list its value.
                   Company name:                    Beneficiary:                    Surrender or refund value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes. Give specific information..

Official Form 106A/B                    Schedule A/B: Property                    page 5

Debtor 1  **Bassem Victor El Mallakh**     Case number *(if known)*   **8:22-bk-11605-TA**

---

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here .................................................................................................... | **$43,208.00**

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

37. Do you own or have any legal or equitable interest in any business-related property?
- ☑ No. Go to Part 6.
- ☐ Yes.  Go to line 38.

| Part 6 | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1. |

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
- ☑ No. Go to Part 7.
- ☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53. Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership
- ☑ No
- ☐ Yes. Give specific information.........

54. Add the dollar value of all of your entries from Part 7. Write that number here  ..................................... | **$0.00**

| Part 8: | List the Totals of Each Part of this Form |

55.  **Part 1: Total real estate, line 2** ........................................................................................... | | **$1,100,000.00**
56.  Part 2: Total vehicles, line 5 | **$15,000.00** |
57.  Part 3: Total personal and household items, line 15 | **$6,300.00** |
58.  Part 4: Total financial assets, line 36 | **$43,208.00** |
59.  Part 5: Total business-related property, line 45 | **$0.00** |
60.  Part 6: Total farm- and fishing-related property, line 52 | **$0.00** |
61.  Part 7: Total other property not listed, line 54 | + | **$0.00** |

62.  Total personal property. Add lines 56 through 61... | **$64,508.00** | Copy personal property total | **$64,508.00**

63.  Total of all property on Schedule A/B. Add line 55 + line 62 | | **$1,164,508.00**

---

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **8:22-bk-11605-TA** |
| (if known) | |

☐ Check if this is an amended filing

# Official Form 106C
# Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

## Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **116 Rockefeller Irvine, CA 92612 Orange County Debtor's principal residence: townhouse.** Line from *Schedule A/B*: **1.1** | **$1,100,000.00** | ■ $626,400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.730** |
| **2016 Mercedes C300 42,000 miles The vehicle is financed with TD Financial.  Monthly payment is $367.00.** Line from *Schedule A/B*: **3.1** | **$15,000.00** | ■ $3,625.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.010** |
| **Debtor's residence: Couch, coffee table, mattress, dresser, dining room table with 6 chairs, patio furniture, wall mirror, lamps, and other household goods and furniture** Line from *Schedule A/B*: **6.1** | **$2,000.00** | ■ $2,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Debtor's residence: 3 televisions, stove, fridge, laptop, desk computer, 2 cell phones, dishwashers, washer and dryer, and other household electronics** Line from *Schedule A/B*: **6.2** | **$3,000.00** | ■ $3,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |

| Debtor 1 | **Bassem Victor El Mallakh** | | | Case number (if known) | **8:22-bk-11605-TA** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Debtor's residence: Bicycle and tennis equipment**<br>Line from *Schedule A/B*: **9.1** | $500.00 | ■      $500.00<br>☐   100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Debtor's residence: Clothes and shoes**<br>Line from *Schedule A/B*: **11.1** | $800.00 | ■      $800.00<br>☐   100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐   No

   ■   Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ■   No

        ☐   Yes

Fill in this information to identify your case:

| Debtor 1 | Bassem Victor El Mallakh | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 8:22-bk-11605-TA | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:  List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

|  | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|
| **2.1** Belgium Investments 960 Bay Dr, LLC<br>Creditor's Name | Describe the property that secures the claim: | $4,345,250.00 | $1,100,000.00 | $3,517,569.40 |

| | |
|---|---|
| c/o Patrick Miller, Esq.<br>P. Miller Legal Services<br>121 S Oak Avenue<br>Pasadena, CA 91107<br><br>Number, Street, City, State & Zip Code | **116 Rockefeller Irvine, CA 92612<br>Orange County<br>Debtor's principal residence:<br>townhouse.**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☑ Disputed |

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **A writ of execution**

Date debt was incurred  **11/9/2020**          Last 4 digits of account number   **NCJC**

Debtor 1    **Bassem Victor El Mallakh**                          Case number (if known)    **8:22-bk-11605-TA**
    First Name    Middle Name    Last Name

| 2.2 | **Central Park West Community Associa** | | | $2,000.00 | $1,100,000.00 | $0.00 |

**Creditor's Name**

Describe the property that secures the claim:

> 116 Rockefeller Irvine, CA 92612
> Orange County
> Debtor's principal residence:
> townhouse.

**401 Rockefeller #208**
**Irvine, CA 92612**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
    community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
    car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **HOA**

Date debt was incurred    **January 21, 2021**    Last 4 digits of account number    **3201**

| 2.3 | **Freedom Mortgage Corporation** | | | $263,043.40 | $1,100,000.00 | $0.00 |

**Creditor's Name**

Describe the property that secures the claim:

> 116 Rockefeller Irvine, CA 92612
> Orange County
> Debtor's principal residence:
> townhouse.

**Attn: Bankruptcy**
**907 Pleasant Valley Ave,**
**Ste 3**
**Mt Laurel, NJ 08054**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
    community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
    car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **First Trust Deed**

Date debt was incurred    **October 29, 2013**    Last 4 digits of account number    **4275**

Debtor 1    **Bassem Victor El Mallakh**

First Name    Middle Name    Last Name

Case number (if known)    **8:22-bk-11605-TA**

| | | $6,493.00 | $15,000.00 | $0.00 |
|---|---|---|---|---|

**2.4** **Td Auto Finance**

Creditor's Name

**Attn: Bankruptcy**
**Po Box 9223**
**Farmington Hills, MI**
**48333**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    **Opened 08/16  Last Active 04/21**

**Describe the property that secures the claim:**

**2016 Mercedes C300 42,000 miles**
**The vehicle is financed with TD**
**Financial.  Monthly payment is**
**$367.00.**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Auto loan**

Last 4 digits of account number    **9787**

| | | $7,276.00 | $1,100,000.00 | $0.00 |
|---|---|---|---|---|

**2.5** **The Townes at Central Park West Ass**

Creditor's Name

**15241 Laguna Canyon Rd.**
**Irvine, CA 92618**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    **May 18, 2021**

**Describe the property that secures the claim:**

**116 Rockefeller Irvine, CA 92612**
**Orange County**
**Debtor's principal residence:**
**townhouse.**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **HOA**

Last 4 digits of account number    **3401**

Add the dollar value of your entries in Column A on this page. Write that number here:

| **$4,624,062.40** |
|---|

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:

| **$4,624,062.40** |
|---|

**Part 2:**    **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[ ]    Name, Number, Street, City, State & Zip Code
**First Service Residential**
**c/o Community Legal Advisors**
**509 N. Coast Highway**
**Oceanside, CA 92054**

On which line in Part 1 did you enter the creditor?    **2.5**

Last 4 digits of account number ___

| Debtor 1 | **Bassem Victor El Mallakh** | | | Case number (if known) | **8:22-bk-11605-TA** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

[ ] Name, Number, Street, City, State & Zip Code
**Freedom Mortgage**
**951 Yamato Rd.**
**Boca Raton, FL 33431**

On which line in Part 1 did you enter the creditor? **2.3**

Last 4 digits of account number ___

[ ] Name, Number, Street, City, State & Zip Code
**Freedom Mortgage**
**PO Box 50428**
**Indianapolis, IN 46250**

On which line in Part 1 did you enter the creditor? **2.3**

Last 4 digits of account number ___

[ ] Name, Number, Street, City, State & Zip Code
**TD Auto Finance**
**6 Atlantis Way**
**Lewiston, ME 04240**

On which line in Part 1 did you enter the creditor? **2.4**

Last 4 digits of account number ___

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **8:22-bk-11605-TA** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1.  Do any creditors have priority unsecured claims against you?

■ No. Go to Part 2.

☐ Yes.

### Part 2:    List All of Your NONPRIORITY Unsecured Claims

3.  Do any creditors have nonpriority unsecured claims against you?

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

4.  List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

Total claim

| 4.1 | **Wells Fargo Bank NA** | Last 4 digits of account number | **2351** | **$1,193.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328**
Number Street City State Zip Code

When was the debt incurred?    **Opened 01/07  Last Active 9/10/21**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only          ☐ Contingent
☐ Debtor 2 only          ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only    ☐ Disputed
☐ At least one of the debtors and another

Type of NONPRIORITY unsecured claim:

☐ Check if this claim is for a community debt     ☐ Student loans

Is the claim subject to offset?     ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No     ☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes     ■ Other. Specify  **Credit Card**

### Part 3:    List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

### Part 4:    Add the Amounts for Each Type of Unsecured Claim

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

Debtor 1    **Bassem Victor El Mallakh**    Case number (if known)    **8:22-bk-11605-TA**

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| | 6a. | Domestic support obligations | 6a. | $ **0.00** |
| **Total claims from Part 1** | 6b. | Taxes and certain other debts you owe the government | 6b. | $ **0.00** |
| | 6c. | Claims for death or personal injury while you were intoxicated | 6c. | $ **0.00** |
| | 6d. | Other. Add all other priority unsecured claims. Write that amount here. | 6d. | $ **0.00** |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ **0.00** |

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| | 6f. | **Student loans** | 6f. | $ **0.00** |
| **Total claims from Part 2** | 6g. | Obligations arising out of a separation agreement or divorce that you did not report as priority claims | 6g. | $ **0.00** |
| | 6h. | Debts to pension or profit-sharing plans, and other similar debts | 6h. | $ **0.00** |
| | 6i. | Other. Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ **1,193.00** |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ **1,193.00** |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | **8:22-bk-11605-TA** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ☐ Employed<br>■ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | | |
| | **Employer's name** | | |
| | **Employer's address** | | |
| | **How long employed there?** | | |

### Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ N/A |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ 0.00 | $ N/A |

Debtor 1  **Bassem Victor El Mallakh**                     Case number *(if known)*  **8:22-bk-11605-TA**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here | 4. | $ 0.00 | $ N/A |

5. List all payroll deductions:

| | | | For Debtor 1 | For Debtor 2 |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ N/A |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ N/A |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ N/A |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ N/A |
| 5e. | Insurance | 5e. | $ 0.00 | $ N/A |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ N/A |
| 5g. | Union dues | 5g. | $ 0.00 | $ N/A |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 + | $ N/A |

6. Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.  $ 0.00    $ N/A

7. Calculate total monthly take-home pay. Subtract line 6 from line 4.    7.  $ 0.00    $ N/A

8. List all other income regularly received:

| 8a. | Net income from rental property and from operating a business, profession, or farm. Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 4,000.00 | $ N/A |
|---|---|---|---|---|
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ N/A |
| 8c. | Family support payments that you, a non-filing spouse, or a dependent regularly receive. Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ N/A |
| 8e. | Social Security | 8e. | $ 0.00 | $ N/A |
| 8f. | Other government assistance that you regularly receive. Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ N/A |
| 8h. | Other monthly income. Specify: | 8h.+ | $ 0.00 + | $ N/A |

9. Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.  $ 4,000.00    $ N/A

10. Calculate monthly income. Add line 7 + line 9.    10.  $ 4,000.00 + $ N/A = $ 4,000.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. State all other regular contributions to the expenses that you list in *Schedule J*.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify:    11.  +$ 0.00

12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies    12.  $ 4,000.00
**Combined monthly income**

13. Do you expect an increase or decrease within the year after you file this form?
☐ No.
■ Yes. Explain:  **Debtor is looking for a full-time employment.**

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Bassem Victor El Mallakh** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | 8:22-bk-11605-TA |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.

   ☐ Yes. **Does Debtor 2 live in a separate household?**

   ☐ No

   ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**    ■ No

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents names.

   ☐ Yes. Fill out this information for each dependent...........

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**    ■ No    ☐ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|

| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 1,961.00 |
|---|---|---|---|
| | If not included in line 4: | | |
| 4a. | Real estate taxes | 4a. $ | 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ | 166.00 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

| Debtor 1 | **Bassem Victor El Mallakh** | | | Case number (if known) | **8:22-bk-11605-TA** |
|---|---|---|---|---|---|

| 6. | **Utilities:** | | | |
|---|---|---|---|---|
| | 6a. | Electricity, heat, natural gas | 6a. | $ 150.00 |
| | 6b. | Water, sewer, garbage collection | 6b. | $ 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ 130.00 |
| | 6d. | Other. Specify: **HOA with The Towns** | 6d. | $ 200.00 |
| 7. | **Food and housekeeping supplies** | | 7. | $ 300.00 |
| 8. | **Childcare and children's education costs** | | 8. | $ 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. | $ 50.00 |
| 10. | **Personal care products and services** | | 10. | $ 50.00 |
| 11. | **Medical and dental expenses** | | 11. | $ 20.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare.  Do not include car payments. | | 12. | $ 100.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. | $ 0.00 |
| 14. | **Charitable contributions and religious donations** | | 14. | $ 0.00 |
| 15. | **Insurance.**  Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. | $ 0.00 |
| | 15b. | Health insurance | 15b. | $ 0.00 |
| | 15c. | Vehicle insurance | 15c. | $ 50.00 |
| | 15d. | Other insurance. Specify: | 15d. | $ 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20.  Specify: | | 16. | $ 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. | $ 326.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. | $ 0.00 |
| | 17c. | Other. Specify: | 17c. | $ 0.00 |
| | 17d. | Other. Specify: | 17d. | $ 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | | 18. | $ 0.00 |
| 19. | **Other payments you make to support others who do not live with you.**  Specify: | | 19. | $ 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. | Mortgages on other property | 20a. | $ 0.00 |
| | 20b. | Real estate taxes | 20b. | $ 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. | $ 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. | $ 0.00 |
| 21. | **Other: Specify:** | | 21. +$ | 0.00 |

| 22. | **Calculate your monthly expenses** | | |
|---|---|---|---|
| | 22a. Add lines 4 through 21. | $ | 3,503.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 3,503.00 |

| 23. | **Calculate your monthly net income.** | | |
|---|---|---|---|
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 4,000.00 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 3,503.00 |
| | 23c. Subtract your monthly expenses from your monthly income.  The result is your *monthly net income.* | 23c. $ | 497.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

&#9632; No.

&#9633; Yes.    Explain here:

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**

A true and correct copy of the foregoing document entitled (*specify*): __**Notice of Motion and Motion in Individual Case for**__
__**Order Imposing a Stay or Continuing the Automatic Stay as the Court Deems Appropriate**__ will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders
and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On __9/27/2022__, I
checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are
on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Proposed Counsel for Debtor: Michael Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
Interested Party: Chad L Butler caecf@tblaw.com
U.S. Trustee: Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com,
benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On __9/27/2022__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for
each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __9/27/2022__, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Chambers of the Honorable Theodor C. Albert, Chief Judge
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/27/2022 | Peter Garza | /s/ Peter Garza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                  Page 10                        **F 4001-1.IMPOSE.STAY.MOTION**

**2. SERVED BY CERTIFIED MAIL:**

Freedom Mortgage Corporation
Attn: Stanley C. Middlemann, CEO
907 Pleasant Valley Ave. , Ste. 3
Mount Laurel, NJ 08054
Tracking No.: 7018 0680 0002 1736 0421

Freedom Mortgage Corporation
Attn: Stanley C. Middlemann
951 Yamato Rd., Ste 175
Boca Raton, FL 33431
Tracking No.: 7018 0680 0002 1736 0445

CT Corporation System, Agent for Service of Process for Freedom Mortgage
330 N. Brand Blvd, Ste. 700
Glendale, CA 91203
Tracking No.: 7018 0680 0002 1736 0438

Central Park West Community Association
Attn: President of HOA
401 Rockefeller # 208
Irvine, CA 92612
Tracking No.: 7018 0680 0002 1736 0452

First Service Agent Corp. Agent for Service of Process for Central Park West Community Association
15241 Laguna Canyon Rd.,
Irvine, CA 92618
Tracking No.: 7018 0680 0002 1736 0469

The Towne at Central Park West
Attn: President of HOA
15241 Laguna Canyon Rd.,
Irvine, CA 92618
Tracking No.: 7018 0680 0002 1736 0476

Belgium Investments 960 Bay Dr., LLC
c/o Pattick Miller, Esq. Counsel for Lien Holder
121 S. Oak Ave
Pasadena, CA 91107
Tracking No.: 7018 0680 0002 1736 0483

CT Corporation System, Agent for Service of Process for Belgium Investments 960 Bay Dr., LLC e
330 N. Brand Blvd, Ste. 700
Glendale, CA 91203
Tracking No.: 7018 0680 0002 1736 2074

TD Auto Finance
Attn: Marc Womak, CEO
27777 Inkster Rd.,
Farmington Hills, MI 48334
Tracking No.: 7018 0680 0002 1736 0490

CT Corporation System, Agent for Service of Process for TD Auto Finance
330 N. Brand Blvd, Ste. 700
Glendale, CA 91203
Tracking No.: 7018 0680 0002 1736 0506

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                Page 11                    **F 4001-1.IMPOSE.STAY.MOTION**

**2. SERVED BY UNITED STATES MAIL:**

First Service Residential
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054

Td Auto Finance
Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI 48333

TD Auto Finance
6 Atlantis Way
Lewiston, ME 04240

Wells Fargo Bank NA
1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                        Page 12                          **F 4001-1.IMPOSE.STAY.MOTION**

# EXHIBIT
# "18"

1 MICHAEL JAY BERGER (State Bar # 100291)
  LAW OFFICES OF MICHAEL JAY BERGER
2 9454 Wilshire Blvd. 6th Floor
  Beverly Hills, CA 90212-2929
3 Telephone:   (310) 271-6223
  Facsimile:   (310) 271-9805
4 michael.berger@bankruptcypower.com

5 *Proposed* Counsel for Debtor,
  Bassem Victor El Mallakh
6

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   SANTA ANA DIVISION

10 In re:                              )  CASE NO.: 8:22-bk-11605-TA
                                       )
11 BASSEM VICTOR EL MALLAKH,           )  Chapter 11
                                       )
12                                     )  **DEBTOR'S REPLY TO BELGIUM**
          Debtor and Debtor-in-Possession. )  **INVESTMENTS 960 BAY DR, LLC'S**
13                                     )  **OPPOSITION TO DEBTOR'S**
                                       )  **MOTION FOR ORDER CONTINUING**
14                                     )  **THE AUTOMATIC STAY;**
                                       )  **DECLARATIONS OF MICHAEL JAY**
15                                     )  **BERGER AND BASSEM VICTOR EL**
                                       )  **MALLAKH IN SUPPORT THEREOF**
16                                     )
                                       )  Date:    October 18, 2022
17                                     )  Time:    10:00 a.m.
                                       )  Place:   411 West Fourth Street
18                                     )           Courtroom 5B
                                       )           Santa Ana, CA 92701
19                                     )
                                       )  Via Tele/Videoconference on Zoom
20                                     )
                                       )
21                                     )
22

23       **TO THE HONORABLE THEODOR C. ALBERT, CHIEF JUDGE OF THE**

24 **UNITED STATES BANKRUPTCY COURT, BELGIUM INVESTMENTS 960**

25 **BAY DR, LLC, TO THE UNITED STATES TRUSTEE, TO DEBTOR'S**

26 **CREDITORS AND TO ALL INTERESTED PARTIES:**

27

28
                                       1
──────────────────────────────────────────────────────

Bassem Victor El Mallakh (the "Debtor") herein, respectfully submits his Reply to the Opposition of Belgium Investments 960 Bay Dr, LLC ("Belgium") to the Debtor's Motion in Individual Case for Order Continuing the Automatic Stay (the "Motion to Continue the Stay") as follows:

## I.    **INTRODUCTION**

Debtor asks that Belgium's Opposition to Debtor's Motion to Continue the Stay be overruled, and that the Motion to Continue the Stay be granted in full on the basis that there is no evidence of bad faith on behalf of the Debtor. Belgium is a disputed creditor, and **was a suspended corporation which has now been terminated**. By operation of law, Belgium cannot enforce any judgment against the Debtor and is also barred from filing anything in the Debtor's case due to its suspended status.

This is Debtor's second bankruptcy filing. He previously filed a Chapter 13, which Debtor voluntarily dismissed because he was over the debt limit. In the previous case, Belgium tried to obtain a bar on refiling, but the Court denied Belgium's motion. In response to Belgium's Motion for sanctions and bar on refiling, the Debtor indicated that he had retained his current counsel and was planning on filing Chapter 11 to reorganize his debts. In the Court's tentative ruling, which was adopted as its final ruling, the Court acknowledged Debtor's possible refiling as a Chapter 11, and did not find sufficient evidence to warrant a bar on refiling. Belgium now seeks to relitigate the same issue in the Debtor's Chapter 11 case.

Debtor's financial situation has changed since the previous case was filed. Debtor can confirm a feasible Chapter 11 plan of reorganization. Debtor satisfies the requirements of 11 U.S.C. 362(c)(3). This case was filed in good faith as Debtor obtained an experienced chapter 11 counsel to file the present case. Debtor has an increase in his rental income from his real property and is actively looking for an employment. Debtor has a reasonable likelihood of a successful reorganization in this case. Debtor asks this Court to grant his Motion to Continue Stay.

## II.    RESPONSE TO BELGIUM'S OPPOSITION

1. Belgium is a Suspended Corporation, Its Opposition Should Be Stricken and Belgium Should Not Be Permitted to File Any Further Pleadings in Debtor's Cases

Belgium's Opposition should be disregarded by this Court. After its formation in 2013, Belgium was suspended in March 2018, revived in July 2018, again suspended in January 2022, and ultimately terminated in February 2022. Belgium has been litigating an alleged claim against the Debtor while maintaining a suspended corporate status. A true and correct copy of the corporate history and corporate termination is attached to Berger's Declaration as **Exhibit "1."**

A suspended corporation may be revived but during its period of suspension, it may not prosecute or defend an action, seek a writ of mandate, appeal from an adverse judgment, or renew a judgment obtained before suspension. *Center for Self-Improvement & Community Development v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1552, 94 Cal. Rptr.

3

3d 74, 79-80 (2009) (*citing Grell v. Laci Le Beau Corp.*, 73 Cal.App.4th 1300, 1306, 87

Cal. Rptr. 2d 358 (1999)). See also *Timberline, Inc. v Jaisinghani,* 54 Cal. App. 4th 1361

(1997), where the court held that a suspended corporation is disqualified from exercising

any right, power, or privilege, including prosecuting or defending an action, or appealing

a judgment.  Also, a suspended corporation may not prosecute or defend an action in a

California court. (*Ransome-Crummey Co. v. Superior Court*, 54 Cal.App.4th 1366 (1922),

188 Cal. 393, 396-397 [205 P. 446]; *Alhambra-Shumway Mines, Inc. v. Alhambra Gold

Mine Corp.* (1957) 155 Cal.App.2d 46, 50-51 [317 P.2d 649].)

Although Belgium was active at the time it obtained its judgment against the

Debtor, Belgium was later suspended in January 2022, and terminated in February 2022.

Belgium has been acting in bad faith, and in violation of the law by illegally seeking to

collect on a judgment against the Debtor without any right to do so, as a suspended entity.

Due to the corporation's suspension, Belgium is barred from litigating this matter against

the Debtor.

2. Belgium Sought a Bar on Refiling for the Debtor, Which This Court Denied

Debtor's previous emergency Chapter 13 case was filed on July 12, 2022 (Case

No.; 8:22-bk-11158-TA) to stop the foreclosure sale on Debtor's home the next morning.

While Debtor and his former counsel were preparing the case in order to meet the

deadline to file Debtor's Schedules, it became apparent that Debtor's case could not

proceed under Chapter 13 and that the case would inevitably be dismissed due to Debtor

being over the § 109(e) debt limits.  Rather than allowing the case to be dismissed for

4

failure to file schedules, Debtor showed his good faith and on July 26, 2022 filed a Request for Voluntary Dismissal of Ch 13 Case [Chapter 13 docket no.: 15] asking the Court to dismiss the Debtor's case in order to attempt to resolve its debts outside of the Chapter 13 case[1]. On July 26, 2022, the Court entered its Order and Notice of dismissal arising from debtor's request for voluntary dismissal of chapter 13 (11 U.S.C. Section 1307(b)) [Chapter 13 docket no.: 16].

On August 5, 2022, Belgium filed a Motion for Sanctions Barring Subsequent Bankruptcy Filing [Chapter 13 docket no.: 18]. On September 7, 2022, Debtor filed his Opposition to the Motion [Chapter 13 docket no.: 18] and on September 12, 2022, Belgium filed its Reply to Debtor's Opposition [Chapter 13 docket no.: 25]. Substantial briefing was done by both sides on the issue of whether the Court should impose a bar on refiling. On October 4, 2022, the Court denied Belgium's Motion and did not impose a bar on refiling for the Debtor [Chapter 13 docket no.: 32]. The Court specifically in its tentative ruling, which it adopted as its final ruling that Belgium's "evidence is not persuasive" to make a showing that the Debtor acted in bad faith. The Court's tentative stated that the timing of filing a Chapter 13 case to prevent a foreclosure sale is "not unusual" and is a common reason to file for bankruptcy protection. The Court's tentative recognized that "this case is likely to be followed by a refiling under Chapter 11." A true and correct copy of the Court's Tentative Ruling on Belgium's Motion for Sanctions

---

[1] The Debtor is not versed in bankruptcy law and is not expected to know whether he qualified for Chapter 13 or not.

Barring Subsequent Bankruptcy Case is attached to the Declaration of Michael Jay

Berger as **"Exhibit 2."** Belgium now seeks to relitigate this issue in the Debtor's Chapter

11 case. This Court allowed for the Debtor to dismiss his Chapter 13 case without a bar

on refiling and without a finding of bad faith in the Chapter 13. It follows that the Court

would intend to continue the automatic stay to permit the Debtor an opportunity to

reorganize.

3. Belgium's Opposition is Filled with False Innuendo and Is Not Supported by Any Evidence

Belgium's Opposition is filed with false and baseless legal conclusions that are not

supported by evidence. Belgium's assertion that Debtor has no intention of putting

forward a reasonable Chapter 11 Plan is false and not supported by any evidence.

Belgium makes false assertions about Debtor's business dealings with his sister, who is

renting Debtor's property. There is no evidence of mismanagement by the Debtor.

Belgium is arguing its previous motion for a bar on refiling, which it already lost.

Belgium is trying to refute Debtor's plan of reorganization, which has not yet been filed.

Belgium may now realize that it is facing the possibility of its judgment lien being

invalidated by its suspended corporate status and any proof of claim being denied in

Debtor's case. As such, Belgium is vehemently opposing Debtor's bankruptcy case in

order to continue to wrongfully collect on its lien. Alternatively, Belgium's counsel may

be acting without the knowledge of Belgium and without any authority, by illegally

pursuing this claim on behalf of a suspended/terminated LLC.

6

Belgium's counsel Patrick Miller (State Bar Number 301819) was admitted to

practice before the United States District Court on September 21, 2022,

https://www.cacd.uscourts.gov/attorneys/admissions/attorney-admissions-search, but was

filing pleadings in the Debtor's prior Chapter 13 case on August 5, 2022 without being

admitted to this Court. He seems to be not concerned about the legality of his status and

his client's status.

Belgium's Opposition includes exhibits which are not properly authenticated.

Belgium's failure to authenticate the exhibits attached to the Declaration of Patrick Miller

results in no admissible evidence in support of any of Belgium's false claims. Given that

the facts before the Court are extremely scant, and the remedy sought is extreme,

Belgium has attempted to submit various out-of-context documents which they hope will

cast Debtor in a bad light. These documents are not authenticated as required by Federal

Rule of Evidence 901 and, as such, are inadmissible. Belgium's Counsel's statements

made throughout the motion are, likewise, inadmissible as evidence: *Van De Kamp v.*

*Bank of America*, 204 Cal.App.3d 819, 843 (Cal. Ct. App. 1988) ("It is elementary

statements of the attorneys are not evidence. (7 Witkin, Cal. Procedure (3d ed. 1985)

Trial, § 283, p. 286; BAJI No. 1.02.)").

Debtor asks this Court to consider setting an Order to Show Cause re sanctions

against Belgium and its counsel, for their intentional and unlawful actions. As to

Belgium, the Court should impose sanctions including the denial in full of its claim in

this bankruptcy. Belgium's judgment should be invalidated as Belgium is a suspended

1  and thereafter terminated corporation that cannot illegally collect on a judgment.

2  Belgium's counsel, Patrick Miller should be referred to the disciplinary panel for

3  prosecuting claims for a suspended corporation and for misleading the court about the

4  fact that he was not admitted to practice before this Court until September 21, 2022. Both

5  Patrick Miller, and a representative of Belgium should be required to attend the hearing

6  on this Motion to Continue the Stay, to explain why a suspended corporation with no

7  standing to file anything in this Court, hired an attorney not authorized to appear before

8  this Court, and why their conduct should not subject them to serious sanctions.

9  4.  Debtor's Motion to Continue the Automatic Stay Should be Granted in Full

10  Pursuant to 11 U.S.C. § 362(c)(3), the stay should be continued in the Debtor's

11  case. Debtor has retained new counsel. Both Michael Berger and Sofya Davtyan are

12  certified specialist in bankruptcy law, and will help Debtor navigate his Chapter 11 case.

13  Debtor's prior voluntary dismissal was excusable because Debtor did not qualify to be in

14  Chapter 13, and could not remain in that case. Debtor has a likelihood of reorganization

15  in this case.

16  The Debtor's real property is his principal residence and Debtor intends to remain

17  in his home. Debtor's home is necessary for his reorganization. Debtor will remain post-

18  petition current on his obligations until a plan is confirmed.  Filing a bankruptcy case on

19  the eve of a foreclosure or sheriff's sale is a common practice and is not bad faith. The

20  "emergency petition" procedure is very common. Bankruptcy should be treated as a last

21  resort, and this procedure makes that possible. Bankruptcy cases are often filed on the eve

8

of some kind of creditor enforcement, whether that be a wage garnishment, bank levy, foreclosure sale, suspension of a driver's license, various types of lien fixing, and all the other acts enumerated in §362(a). It is often that debtors do not "pull the trigger" until they have exhausted their other means of resolving their debt issues.

Debtor is actively looking for a job, while also receiving $4,000 a month in rental income from his property.

Belgium's Opposition seeks dismissal of Debtor's bankruptcy case. Belgium would first have to file a motion to dismiss, which it has not, but it would also need to cite from 9th circuit authority to prove such grounds, which it has completely failed to do. Belgium wants Debtor's case dismissed so that it can foreclose on Debtor's real property and obtain a windfall, at the detriment of the other creditors of the estate.

The facts here are very similar to those in a recent Ninth Circuit Bankruptcy Appellate Panel decision from March of 2022, *Massis v. Gavin (In re Gavin)*, BAP NC-21-1130-SGB (B.A.P. 9th Cir. Mar. 14, 2022). There, the debtor had a default judgment entered against him in 2019. Over the next two years, the creditor was unsuccessful on many attempts to enforce the judgment. Eventually, the creditor was able to schedule a sheriff's sale that was set for April 5, 2021. The debtor commenced an action to challenge the judgment. On Friday, April 2, 2021, the state court issued a tentative ruling indicating that the sale on the following Monday could move forward. The debtor immediately retained counsel to file a bankruptcy case. Although the debtor's attorney was aware that the debts most likely exceeded the debt limits, he did not have adequate

9

information at that time to make a definitive determination. As such, the case was filed as

an emergency/skeletal Chapter 13 in order to give the debtor some breathing room to

reassess his situation, and then make a determination of whether he was over the debt

limits, and whether to convert to Chapter 7 or 11, or dismiss the case. Shortly after the

case was commenced, the debtor filed the remaining case commencement documents and

a motion to covert to Chapter 11. The creditor opposed the motion to convert on the basis

that the filing was void due to the debt limits, and that by filing under Chapter 13 and

checking the incorrect box for estimated liabilities, the debtor had committed an abuse of

process. The creditor also filed a Rule 9011 motion seeking sanctions against the debtor

and his attorney.

The Court in *In re Gavin* granted the Debtor's motion to convert without a hearing

and denied the motions to dismiss and for sanctions. According to the bankruptcy court, §

1307(d) specifically contemplated conversion to chapter 11 when debtors who initially

file chapter 13 do not fall within § 109(e)'s debt limits.  As for the motions to dismiss and

for sanctions, the bankruptcy court denied them because the chapter 13 petition was filed

under "pressing circumstances" - on the eve of the state court sale order hearing. The

court found particularly significant Creditors' inability to explain how they would have

been in any more favorable situation if Gavin had originally filed a chapter 11 petition

instead of mistakenly seeking relief under chapter 13." *In re Gavin* at 6-7.

On appeal, the Bankruptcy Appellate Panel held, "An eleventh-hour bankruptcy

filing on the eve of a potentially decisive hearing in state court is not by itself sufficient

to find bad faith. *See In re Ho*, 274 B.R. at 876 (bankruptcy court inappropriately dismissed chapter 13 case based on "the timing of Debtor's filing, just prior to the establishment of a trial date by the state court for the litigation"). Many bankruptcy cases are filed on the eve of adverse events such as foreclosure or the imminent entry of a judgment. Debtors do so for the financial breathing space that bankruptcy provides. This inherently delays the payment of creditors and alone is insufficient to sustain a finding of bad faith." *In re Gavin* at 11. "Nor is the mistaken filing of the bankruptcy petition under chapter 13 specifically probative of bad faith under the totality of circumstances presented here. *In re Gavin* at 12-13.

Just like in *In re Gavin*, the Debtor herein was faced with the possibility of losing his home and filed an emergency petition on the eve of a foreclosure sale. This Court did not make a finding of bad faith on the part of the Debtor in the Chapter 13, and as illustrated herein, Debtor has a change in circumstances since the filing to warrant continuing the automatic stay and affording the Debtor an opportunity to reorganize his debts in his Chapter 11 case.

## III.    CONCLUSION

WHEREFORE, Debtor asks for an order granting Debtor's Motion to Continue the Automatic Stay, and asks this Court to issue an Order to Show Cause in response to Belgium and its counsel's misconduct, and for any further relief deemed necessary and proper.

11

1    DATED: 10/11/2022                    LAW OFFICES OF MICHAEL JAY BERGER

2

3                                         By: _____

4                                         Michael Jay Berger
                                          *Proposed* Counsel for Debtor-in-Possession
5                                         Bassem Victor El Mallakh

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEBTOR'S REPLY TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OPPOSITION TO DEBTOR'S MOTION FOR ORDER
CONTINUING THE AUTOMATIC STAY; DECLARATIONS OF MICHAEL JAY BERGER AND BASSEM VICTOR EL MALLAKH IN
SUPPORT THEREOF

## DECLARATION OF MICHAL JAY BERGER

I, Michael Jay Berger, declare and state as follows:

1.      I am Counsel for the Debtor. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      Since its formation in 2013, Belgium has been suspended in March 2018, revived in July 2018, and again suspended in January 2022, and ultimately terminated in February 2022. Belgium has been litigating an alleged claim against the Debtor while maintaining a suspended corporate status.

3.      Although Belgium was active at the time it obtained its judgment against the Debtor, Belgium was later suspended in January 2022, and terminated in February 2022.

4.      I know this because I obtained this information by conducting a search on the California Secretary of State's website at this link: https://bizfileonline.sos.ca.gov/search/business. A true and correct copy of the corporate history and corporate termination is attached hereto as **Exhibit "1."**

5.      On August 5, 2022, Belgium filed a Motion for Sanctions Barring Subsequent Bankruptcy Filing [Chapter 13 docket no.: 18]. On September 7, 2022, Debtor filed his Opposition to the Motion [Chapter 13 docket no.: 18] and on September 12, 2022, Belgium filed its Reply to Debtor's Opposition [Chapter 13 docket no.: 25]. Substantial briefing was done by both sides on the issue of whether the Court should impose a bar on refiling. On October 4, 2022, the Court denied Belgium's Motion and did not impose a bar on refiling for the Debtor [Chapter 13 docket no.: 32]. The Court specifically in its tentative ruling, which it adopted as its final ruling that Belgium's "evidence is not persuasive" to make a showing that the Debtor acted in bad faith. The Court's tentative stated that the timing of filing a Chapter 13 case to prevent a foreclosure sale is "not unusual" and is a common reason to file for bankruptcy protection. The

13

Court's tentative recognized that "this case is likely to be followed by a refiling under Chapter 11." A true and correct copy of the Court's Tentative Ruling on Belgium's Motion for Sanctions Barring Subsequent Bankruptcy Case is attached hereto as **"Exhibit 2."**

6.      Belgium's counsel, Patrick Miller (State Bar Number 301819) was admitted to practice before the United States District Court on September 21, 2022 https://www.cacd.uscourts.gov/attorneys/admissions/attorney-admissions-search, but was filing pleadings in the Debtor's prior Chapter 13 case on August 5, 2022 without being admitted to this Court.   I know this because I checked the attorney admission records of the United States District Court for the Central District of California and because I reviewed the docket for Debtor's prior Chapter 13 case.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on October 11, 2022 at Beverly Hills, California.

Michael Jay Berger

14

## DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare and state as follows:

1.      I am the Debtor. I am over the age of 18. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      This is my second bankruptcy filing. I previously filed a Chapter 13, which I voluntarily dismissed because I was over the debt limit. In the previous case, Belgium tried to obtain a bar on refiling, but the Court denied Belgium's motion. In response to Belgium's Motion for sanctions and bar on refiling, I indicated that I had retained my current counsel and was investigating filing Chapter 11 to reorganize my debts.

3.      My financial situation has changed since the previous case was filed. I can confirm a feasible Chapter 11 plan of reorganization. This case is filed in good faith as I had retained experienced chapter 11 counsel to file and prosecute my Chapter 11 case. I am collecting $4,000.00 per month rental income from my real property and am actively looking for an employment.

4.      My previous emergency Chapter 13 case was filed on July 12, 2022 (Case No.; 8:22-bk-11158-TA) to stop the foreclosure sale on my home the next morning. While my former counsel and I were preparing the case in order to meet the deadline to file my Schedules, it became apparent that my case could not proceed under Chapter 13. On July 26, 2022, I filed a Request for Voluntary Dismissal of Ch 13 Case [Chapter 13 docket no.: 15], asking the Court to dismiss my case in order to attempt to resolve my debts outside of the Chapter 13 case[2]. On July 26, 2022, the Court entered its Order and Notice of dismissal arising from my request for voluntary dismissal of chapter 13 (11 U.S.C. Section 1307(b)) [Chapter 13 docket no.: 16].

---

[2] I am not versed in bankruptcy law and is not expected to know whether I qualified for Chapter 13 or not.

15

5.    My real property is my principal residence and I intend to remain in my home. My home is necessary for my reorganization. I will remain post-petition current on my obligations until a plan is confirmed.  I filed my prior chapter 13 bankruptcy after exhausting all other remedies, including the appeal of the Florida judgment to stay the Sheriff's sale.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on October 11, 2022 at Irvine, California.

_____
Bassem Victor El Mallakh

16

EXHIBIT 1



**California Secretary of State**
Electronic Filing

# LLC Termination – Certificate of Cancellation

| | |
|---|---|
| Entity Name: | BELGIUM INVESTMENTS 960 BAY DR, LLC |
| Entity (File) Number: | 201315010139 |
| File Date: | 02/01/2022 |

Detailed Filing Information

**Dissolution**
The Dissolution was made by a vote of ALL of the members of the California Limited Liability Company.

**Tax Liability Statement**
All final returns required pursuant to the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

**Cancellation Statement**
Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

**Electronic Signature(s):**

Jean Ruche

Secretary of State

Business UCC

Login

Home

Search

Forms

Help

# Business Search

The California Business Search provides access to available information for **corporations**, **limited liability companies** and **limited partnerships** of record with the California Secretary of State, with **free PDF copies** of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.

Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are **not contained** in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.

## Basic Search

A Basic search can be performed using an entity name or entity number. When conducting a search by an entity number, where applicable, **remove "C"** from the entity number. Note, **a basic search** will search **only ACTIVE entities** (Corporations, Limited Liability Companies, Limited Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The Advanced search allows for a ?starts with? filter. To search entities that have a status other than active or to refine search criteria, use the **Advanced** search feature.

## Advanced Search

An Advanced search is required when searching for publicly traded disclosure information or a status other than active.

An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.

**Disclaimer:** Search results are limited to the State

Skip to main content

### BELGIUM INVESTMENTS 960 BAY DR, LLC (201315010139)

| | |
|---|---|
| Status | Terminated |
| Standing - SOS | Not Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Inactive Date | 02/01/2022 |
| Formed In | CALIFORNIA |
| Entity Type | Limited Liability Company - CA |
| Principal Address | Other RUE DE SCOUMONT 3 BELGIUM, 7181 |
| Mailing Address | Other RUE DE SCOUMONT 3 BELGIUM, 7181 |
| Statement of Info Due Date | 01/01/0001 |
| Agent | 1505 Corporation 112 C T CORPORATION SYSTEM 330 N BRAND BLVD STE 700 GLENDALE, CA 91203 |



View History

Request Access

Ca...
*Secretary of State*

Business    UCC

Home

Search

Forms

Help

Login

*please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is updated as documents are approved. The data provided is not a complete or certified record.*

*Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." To order certified copies or certificates of status, (1) locate an entity using the search; (2)select Request Certificate in the right-hand detail drawer; and (3) complete your request online.*

belgium investments 960 b          🔍

Advanced ⌄

Results: 1

| Entity Information | Initial Filing Date | Status |
|---|---|---|
| BELGIUM INVESTMENTS 960 BAY DR, LLC (201315010139) | 05/30/2013 | Terminated |

## BELGIUM INVESTMENTS 960 BAY DR, LLC (201315010139)

| | |
|---|---|
| Status | Terminated |
| Standing - SOS | Not Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Inactive Date | 02/01/2022 |
| Formed In | CALIFORNIA |
| Entity Type | Limited Liability Company - CA |
| Principal Address | Other RUE DE SCOUMONT 3 BELGIUM, 7181 |
| Mailing Address | Other RUE DE SCOUMONT 3 BELGIUM, 7181 |
| Statement of Info Due Date | 01/01/0001 |
| Agent | 1505 Corporation 112 C T CORPORATION SYSTEM 330 N BRAND BLVD STE 700 GLENDALE, CA 91203 |

View History          Request Access





EXHIBIT 2

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

Wednesday, September 21, 2022                                    **Hearing Room**      **5B**

<u>3:00 PM</u>
**8:22-11158    Bassem Essam El Mallakh**                                    **Chapter 13**

**#27.00**      Motion For Sanctions Barring Subsequent Bankruptcy Filing

Docket      18

**Tentative Ruling:**

Tentative for 9/21/22:
This is the creditor's motion for sanctions for what the creditor characterizes as a bad faith filing. But the evidence is not persuasive. The timing is not even unusual. However, as this case is likely to be followed by a refiling under Chapter 11 there will be other opportunities to address good faith, such as the inevitable hearing under §362(c )(3).

Deny

Appearance: required

| Party Information |
|---|

**<u>Debtor(s):</u>**

    Bassem Essam El Mallakh                Represented By
                                    Benjamin  Heston

**<u>Trustee(s):</u>**

    Amrane (SA)  Cohen (TR)                Pro Se

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (specify): **DEBTOR'S REPLY TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OPPOSITION TO DEBTOR'S MOTION FOR ORDER CONTINUING THE AUTOMATIC STAY; DECLARATIONS OF MICHAEL JAY BERGER AND BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 10/11/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Proposed Counsel for Debtor: Michael Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
Interested Party: Chad L Butler caecf@tblaw.com
U.S. Trustee: Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
Counsel for TD Bank: Randall P Mroczynski  randym@cookseylaw.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On 10/11/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Belgium Investments 960 Bay Dr., LLC
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S. Oak St.
Pasadena, CA 91107

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 10/11/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Chambers of the Honorable Theodor C. Albert, Chief Judge
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/11/2022 | Peter Garza | /s/Peter Garza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
# "19"

1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Blvd. 6th Floor
   Beverly Hills, CA 90212-2929
3  Telephone:    (310) 271-6223
   Facsimile:    (310) 271-9805
4  michael.berger@bankruptcypower.com

5  Counsel for Debtor,
   Bassem Victor El Mallakh
6

7                UNITED STATES BANKRUPTCY COURT

8                CENTRAL DISTRICT OF CALIFORNIA

9                       SANTA ANA DIVISION

10  In re:                              )  CASE NO.: 8:22-bk-11605-TA
                                        )
11  BASSEM VICTOR EL MALLAKH,           )  Chapter 11
                                        )
12                                      )  **DEBTOR'S OPPOSITION TO**
         Debtor and Debtor-in-Possession. )  **BELGIUM INVESTMENTS 960 BAY**
13                                      )  **DR, LLC'S MOTION TO DISMISS**
                                        )  **AND/OR CONVERT CASE TO**
14                                      )  **CHAPTER 7; DECLARATIONS OF**
                                        )  **MICHAEL JAY BERGER AND**
15                                      )  **BASSEM VICTOR EL MALLAKH IN**
                                        )  **SUPPORT THEREOF**
16                                      )
17                                      )  Date:     December 21, 2022
                                        )  Time:     10:00 a.m.
18                                      )  Place:    411 West Fourth Street
                                        )           Courtroom 5B
19                                      )           Santa Ana, CA 92701
                                        )
20                                      )  Via Tele/Videoconference on Zoom
                                        )
21  ─────────────────────────────────────
22
23     **TO THE HONORABLE THEODOR C. ALBERT, CHIEF JUDGE OF THE**
24  **UNITED STATES BANKRUPTCY COURT, BELGIUM INVESTMENTS 960**
25  **BAY DR, LLC, TO THE UNITED STATES TRUSTEE, TO DEBTOR'S**
26  **CREDITORS AND TO ALL INTERESTED PARTIES:**
27
28
                                    1
   DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S MOTION TO DISMISS AND/OR CONVERT CASE TO
   CHAPTER 7; DECLARATIONS OF MICHAEL JAY BERGER AND BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF

Bassem Victor El Mallakh (the "Debtor") herein, respectfully submits his

Opposition to Belgium Investments 960 Bay Dr, LLC's ("Belgium") Motion to Dismiss

and/or Convert Case to Chapter 7 (the "Motion to Dismiss") as follows:

## I.    INTRODUCTION

Debtor asks that Belgium's Motion to Dismiss be denied in full on the basis that

there is no evidence of bad faith on behalf of the Debtor. Belgium is a disputed creditor,

and **was a suspended corporation which has now been terminated**. By operation of

law, Belgium has no standing to bring this Motion to Dismiss, Belgium cannot enforce

any judgment against the Debtor and is also barred from filing anything in the Debtor's

case due to its suspended status[1].

Debtor filed his instant Chapter 11 case on September 19, 2022. Belgium's Motion

to Dismiss is premature. In the two and a half months since the case was filed, Debtor has

made significant progress in his case and is on his way to proposing a confirmable

Chapter 11 Plan of Reorganization. Belgium fails to provide any evidence of bad faith on

the part of the Debtor, and fails to demonstrate how dismissal or conversion of the case

will benefit the creditors of the estate. Wherefore, Debtor asks that Belgium's Motion to

Dismiss be denied.

## II.    HISTORY AND PROCEDURAL STATUS OF DEBTOR'S CHAPTER 11
## CASE

*A. Debtor's History of Prior Chapter 13 Filing*

Debtor's instant Chapter 11 case was filed on September 19, 2022. This is

Debtor's second bankruptcy filing. He previously filed a Chapter 13 [case no.: 8:22-bk-

11158-TA], which Debtor voluntarily dismissed because he was over the debt limit. In

the prior case, Belgium tried to obtain a bar on refiling, but the Court denied Belgium's

motion. In response to Belgium's Motion for sanctions and bar on refiling in the prior

---

[1] Debtor is preparing an OSC re Belgium's lack of standing to be filed with the Court.

case, the Debtor indicated that he had retained his current counsel and was planning on filing Chapter 11 to reorganize his debts. In the Court's September 21, 2022 tentative ruling, which was adopted as its final ruling, the Court did not make a finding of bad faith by the Debtor.

Debtor's current Chapter 11 case was filed in order to reorganize his debts. Debtor can confirm a feasible Chapter 11 Plan of Reorganization. This case was filed in good faith and Debtor obtained experienced chapter 11 counsel to file the present case. Debtor had an increase in his rental income from his real property from $3,000 to $4,000, which will be evidenced by his Monthly Operating Reports filed in the case. Debtor is actively looking for employment. Debtor is also reaching out to family to obtain family contributions to support his payments through the Plan. Debtor has a reasonable likelihood of a successful reorganization in this case.

### B. Debtor's Progress in Instant Chapter 11 Case

Debtor has made significant progress in his instant Chapter 11 case since its filing two and a half months ago.

Debtor's Chapter 11 case was filed on September 19, 2022 [docket no.: 1].

On September 27, 2022, Debtor filed his Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 20]. On October 4, 2022, Belgium filed its Opposition To The Debtor's Motion For Order Continuing Stay And Request For Dismissal With A Bar To Refiling [docket no.: 25] and Exhibits thereon [docket no.: 26]. On October 11, Debtor filed his Reply to Belgium's Opposition [docket no.: 27]. On October 25, 2022, the Court entered its Order Granting Motion for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 35].

On September 28, 2022, Debtor filed his Notice of Motion and Motion in Individual Ch 11 Case for Order Employing Professional (LBR 2014-1): Michael Jay Berger as General Bankruptcy Counsel [docket no.: 23]. On October 19, 2022, the Court

3

1    entered its Order Granting Motion in Individual Ch 11 Case To Authorize Debtor-In-

2    Possession To Employ General Counsel [docket no.: 33].

3        On September 12, 2022, Debtor filed his Initial Status Report; Declaration of

4    Bassem Victor El Mallakh in Support Thereof [docket no.: 28].

5        Debtor's Initial Debtor Interview was held on October 3, 2022.

6        On October 25, 2022, the Debtor filed his Notice of Bar Date for Filing Proofs of

7    Claim in a Chapter 11 [docket no.: 37].

8        Debtor's Preliminary Status Conference was held on October 26, 2022.

9        Debtor's 341a Meeting of Creditors was held and concluded on October 28, 2022.

10       On November 4, 2022, Creditor TD Auto Finance LLC filed its Notice of Motion

11   and Motion for Relief from the Automatic Stay with Supporting Declarations Personal

12   Property Re: 2016 Mercedes-Benz C-Class [docket no.: 44]. On November 8, 2022,

13   Creditor TD Auto  Finance LLC filed a Stipulation by TD Auto Finance LLC and Debtor

14   for Resolution of Motion for Relief from the Automatic Stay, for Maintenance of

15   Adequate Protection Payments and for Resolution of Claim Treatment Issues [docket no.:

16   49]. On November 8, 2022, the Court entered its Order Granting Motion for Relief from

17   the Automatic Stay Personal Property – Settlement by Stipulation Re: 2016 Mercedes-

18   Benz C-Class [docket no.: 50].

19       On November 23, 2022, Debtor filed his Motion to Avoid Lien Under 11 U.S.C.

20   Section 522(f) as to Belgium's lien [docket no.: 59][2].

21       On November 23, 2022, Debtor filed his Second Status Report [docket no.: 60].

22   ///

23   ///

24   ///

25   ///

26

27   _____

28   [2] Debtor is also in the process of finalizing lien avoidance motions as to the two
     homeowners association liens on the Rockefeller Property.

4

DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S MOTION TO DISMISS AND/OR CONVERT CASE TO
CHAPTER 7; DECLARATIONS OF MICHAEL JAY BERGER AND BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF

## III.   RESPONSE TO BELGIUM'S MOTION TO DISMISS

1. Belgium is a Suspended Corporation – Belgium's Motion to Dismiss Should Be Denied and Belgium Should Not Be Permitted to File Any Further Pleadings in Debtor's Cases

Belgium's Opposition should be disregarded by this Court. After its formation in 2013, Belgium was suspended in March 2018, revived in July 2018, again suspended in January 2022, and ultimately terminated in February 2022. Belgium has been litigating an alleged claim against the Debtor while maintaining a suspended corporate status. A true and correct copy of the corporate history and corporate termination is attached to Berger's Declaration as **Exhibit "1."**

A suspended corporation may be revived but during its period of suspension, it may not prosecute or defend an action, seek a writ of mandate, appeal from an adverse judgment, or renew a judgment obtained before suspension. *Center for Self-Improvement & Community Development v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1552, 94 Cal. Rptr. 3d 74, 79-80 (2009) (*citing Grell v. Laci Le Beau Corp.*, 73 Cal.App.4th 1300, 1306, 87 Cal. Rptr. 2d 358 (1999)). See also *Timberline, Inc. v Jaisinghani,* 54 Cal. App. 4th 1361 (1997), where the court held that a suspended corporation is disqualified from exercising any right, power, or privilege, including prosecuting or defending an action, or appealing a judgment.  Also, a suspended corporation may not prosecute or defend an action in a California court. (*Ransome-Crummey Co. v. Superior Court*, 54 Cal.App.4th 1366 (1922), 188 Cal. 393, 396-397 [205 P. 446]; *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.* (1957) 155 Cal.App.2d 46, 50-51 [317 P.2d 649].)

Although Belgium was active at the time it obtained its judgment against the Debtor, Belgium was later suspended in January 2022, and terminated in February 2022. Belgium is the party which has been acting in bad faith, and in violation of the law by illegally seeking to collect on a judgment against the Debtor without any right to do so, as a suspended entity. Due to the corporation's suspension, Belgium is barred from litigating

5

this matter against the Debtor, and barred from filing the Motion to Dismiss. Belgium's

Motion to Dismiss must be denied on the basis that Belgium is a suspended corporation

and has no standing to file this Motion.[3]

    2. <u>This Court Did Not Make a Finding of Bad Faith in the Debtor's Previous Chapter</u>

<u>13 Case</u>

      Debtor's previous emergency Chapter 13 case was filed on July 12, 2022 (Case

No.: 8:22-bk-11158-TA) to stop the foreclosure sale on Debtor's home the next morning.

While Debtor and his former counsel were preparing the case in order to meet the

deadline to file Debtor's Schedules, it became apparent that Debtor's case could not

proceed under Chapter 13 and that the case would inevitably be dismissed due to Debtor

being over the § 109(e) debt limits.  Rather than allowing the case to be dismissed for

failure to file schedules, Debtor showed his good faith and on July 26, 2022 filed a

Request for Voluntary Dismissal of Ch 13 Case [Chapter 13 docket no.: 15] asking the

Court to dismiss the Debtor's case in order to attempt to resolve its debts outside of the

Chapter 13 case[4]. On July 26, 2022, the Court entered its Order and Notice of dismissal

arising from debtor's request for voluntary dismissal of chapter 13 (11 U.S.C. Section

1307(b)) [Chapter 13 docket no.: 16].

      On August 5, 2022, Belgium filed a Motion for Sanctions Barring Subsequent

Bankruptcy Filing [Chapter 13 docket no.: 18]. On September 7, 2022, Debtor filed his

Opposition to the Motion [Chapter 13 docket no.: 18] and on September 12, 2022,

Belgium filed its Reply to Debtor's Opposition [Chapter 13 docket no.: 25]. Substantial

briefing was done by both sides on the issue of whether the Court should impose a bar on

refiling. The Court specifically in its tentative ruling, which it adopted as its final ruling

found that Belgium's "evidence is not persuasive" to make a showing that the Debtor

---

[3] Debtor is preparing an OSC re Belgium's lack of standing to be filed with the Court.
[4] The Debtor is not versed in bankruptcy law and is not expected to know whether he
qualified for Chapter 13 or not.

acted in bad faith. A true and correct copy of the Court's September 21, 2022 Tentative Ruling on Belgium's Motion for Sanctions Barring Subsequent Bankruptcy Case is attached to the Declaration of Michael Jay Berger as **"Exhibit 2."** The Court's tentative stated that the timing of filing a Chapter 13 case to prevent a foreclosure sale is "not unusual" and is a common reason to file for bankruptcy protection. The Court's tentative recognized that "this case is likely to be followed by a refiling under Chapter 11." On October 4, 2022, the Court denied Belgium's Motion and did not impose a bar on refiling for the Debtor [Chapter 13 docket no.: 32]. This Court allowed for the Debtor to dismiss his Chapter 13 case without a bar on refiling and without making any finding of bad faith in the Chapter 13.

3. The Court Granted Debtor's Motion to Continue the Automatic Stay Giving the Debtor an Opportunity to Reorganize in this Chapter 11 Case

On September 27, 2022, Debtor filed his Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 20]. On October 4, 2022, Belgium filed its Opposition to the Debtor's Motion For Order Continuing Stay And Request For Dismissal With A Bar To Refiling [docket no.: 25] and Exhibits thereon [docket no.: 26] making claims that Debtor's instant case was a bad faith filing, and should be dismissed with a bar on refiling. On October 18, 2022, the Court issued its tentative ruling indicating that Belgium offers no evidence to support its claims that the Debtor's current or previous case was filed in bad faith. The Court found that "this case was filed in apparent good faith... [and Debtor] must be prepared to show progress...]. A true and correct copy of the October 18, 2022 tentative ruling is attached to the Declaration of Michael Jay Berger as **Exhibit "3."** The Court overruled Belgium's Objection, and on October 25, 2022, the Court entered its Order Granting Motion for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 35]. The Court did not make a finding of bad faith in the current Chapter 11 case, and gave the Debtor an opportunity to reorganize in this Chapter 11 case.

7

4. <u>Belgium's Motion to Dismiss is Filled with Non-Relevant Information and Does
Not Support Dismissal of Debtor's Chapter 11 Bankruptcy Case</u>

Belgium's Motion to Dismiss begins by setting out the history of Belgium's lien against the Debtor and how it was obtained by a default judgment. None of these facts are probative to show the Debtor's pending Chapter 11 case was filed in bad faith, or that it should be dismissed. Belgium argues again that the Debtor's previous Chapter 13 case was a bad faith filing, even though this Court did not make a finding of bad faith in Debtor's previous case, and made a finding that the current case was filed in good faith thereby continuing the automatic stay in the current Chapter 11 case. Belgium then argues that Debtor's counsel only confirmed 35% of his Chapter 11 cases, and that somehow is grounds for dismissal of Debtor's case. Debtor's counsel is a certified specialist in Bankruptcy and has confirmed numerous cases for his clients. Generally only 10% of all Chapter 11 cases are confirmed[5]. Thus, Debtor's counsel's success rate is significantly higher than the industry average and Debtor has his best chance of confirming a Chapter 11 Plan with the assistance of Debtor's current counsel.

5. <u>Debtor's Principal Residence is the Rockefeller Property on the Petition Date and
this Fact is Not Probative of Belgium's Request for Dismissal or Conversion of
Debtor's Chapter 11 Cases</u>

Belgium next argues that the fact that Rockefeller Property is Debtor's principal residence is grounds for dismissal of his case because the Debtor previously did not live there. Debtor's primary residence as of the filing of the bankruptcy case was, and currently is, the Rockefeller Property. Debtor's current Chapter 11 case, and his previously filed Chapter 13 case listed the Rockefeller Property as his primary residence,

---

[5] https://efinancemanagement.com/financial-leverage/chapter-11-bankruptcy#:~:text=Success%20Rate%20of%20Chapter%2011%20The%20history%20and,expenses%2C%20complicated%20procedures%2C%20restrictive%20timelines%2C%20and%20so%20on.

8

as does his tax returns and bank statements. A true and correct copy of Debtor's Chapter 13 Voluntary Petition, first pages of Debtor's 2019-2022 tax returns, and other statements indicating Debtor lives in the Rockefeller Property are attached to the Declaration of Bassem El Mallakh as **Exhibit "4."**

6. Debtor's Case Was Filed in Good Faith and Debtor Has Reasonable Prospects for Confirming a Plan of Reorganization

Debtor's case was filed two and a half months ago. Debtor has made progress in his case. There has been no finding of bad faith by this Court. The Debtor filed his lien avoidance motion under 11 U.S.C. § 522(f) as to Belgium's claim, a summary of which is as follows:

| Property/Lien Description | Value | Remaining Equity/ Treatment |
|---|---|---|
| Rockefeller Property | $1,120,000.00 | |
| Homestead Exemption | $626,400.00 | $493,600.00 |
| 1st TD Freedom Mortgage | $234,000.00 | Secured: $234,000.00 |
| Belgium Judgment Lien (disputed claim) | $4,345,250.00 | Secured: $259,600.00 Unsecured: $4,085,650.00 |
| The Townes at Central Park West Assn. | $3,506.03 | Unsecured: $3,506.03 |
| Central Park West Community Assn. | $3,667.64 | Unsecured: $3,667.64 |

Based on Debtor's lien avoidance motion, Debtor will continue to pay his mortgage and postpetition homeowners association fees. A true and correct copy of Debtor's payments on the mortgage and homeowners association fees is attached to the Declaration of Bassem Victor El Mallakh as **Exhibit "5."** To the extent Belgium's disputed claim is valid and secured, at the most Belgium may have a secured claim of $249,628.23, and the remainder of Belgium's disputed claim may be included in the unsecured class. Debtor will propose a plan to pay a pro rata share of its undisputed debts once a determination is made. The deadline for Debtor to file his plan is March 1, 2022.

9

1   Debtor has rental income and is looking for a job to supplement his income. Debtor is

2   also working on securing family contributions to further fund his Plan. Belgium's

3   assertion that there is a diminution of the value of the Rockefeller Property is baseless

4   and not supported by any evidence. All of Belgium's Motion to Dismiss is speculative

5   and there is no evidence to support any of Belgium's hypotheticals that the tenant may

6   move out or what the future may hold.

7       Belgium argues that conversion to Chapter 7 would be in the best interest of the

8   creditors. However, the Chapter 7 trustee's administrative fees to sell the Debtor's

9   primary residence will take a significant portion of any sale proceeds, and Belgium will

10  receive less than what it would potentially receive through a Chapter 11 Plan. Belgium's

11  Motion to Dismiss or Convert should be denied in full as Belgium's Motion to Dismiss is

12  baseless and not supported by any probative evidence in the current Chapter 11 case.

13

## IV.   **CONCLUSION**

14      WHEREFORE, Debtor asks for an order denying Belgium's Motion to Dismiss,

15  and for any further relief deemed necessary and proper.

16

17

18  DATED: December 7, 2022       LAW OFFICES OF MICHAEL JAY BERGER

19

20  By: _____

21      Michael Jay Berger
        Counsel for Debtor-in-Possession

22      Bassem Victor El Mallakh

23

24

25

26

27

28

<center>10</center>

## DECLARATION OF MICHAEL JAY BERGER

I, Michael Jay Berger, declare and state as follows:

1.      I am Counsel for the Debtor. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      Since its formation in 2013, Belgium has been suspended in March 2018, revived in July 2018, and again suspended in January 2022, and ultimately terminated in February 2022. Belgium has been litigating an alleged claim against the Debtor while maintaining a suspended corporate status.

3.      Although Belgium was active at the time it obtained its judgment against the Debtor, Belgium was later suspended in January 2022, and terminated in February 2022.

4.      I know this because I obtained this information by conducting a search on the California Secretary of State's website at this link: https://bizfileonline.sos.ca.gov/search/business. A true and correct copy of the corporate history and corporate termination is attached hereto as **Exhibit "1."**

5.      Debtor's Chapter 11 case was filed on September 19, 2022 [docket no.: 1].

6.      On September 27, 2022, Debtor filed his Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 20]. On October 4, 2022, Belgium filed its Opposition To The Debtor's Motion For Order Continuing Stay And Request For Dismissal With A Bar To Refiling [docket no.: 25] and Exhibits thereon [docket no.: 26]. On October 11, Debtor filed his Reply to Belgium's Opposition [docket no.: 27]. On October 25, 2022, the Court entered its Order Granting Motion for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 35].

7.      On September 28, 2022, Debtor filed his Notice of Motion and Motion in Individual Ch 11 Case for Order Employing Professional (LBR 2014-1): Michael Jay Berger as General Bankruptcy Counsel [docket no.: 23]. On October 19, 2022, the Court

11

1  entered its Order Granting Motion in Individual Ch 11 Case To Authorize Debtor-In-

2  Possession To Employ General Counsel [docket no.: 33].

3      8.     On September 12, 2022, Debtor filed his Initial Status Report; Declaration

4  of Bassem Victor El Mallakh in Support Thereof [docket no.: 28].

5      9.     Debtor's Initial Debtor Interview was held on October 3, 2022.

6      10.    On October 25, 2022, the Debtor filed his Notice of Bar Date for Filing

7  Proofs of Claim in a Chapter 11 [docket no.: 37].

8      11.    Debtor's Preliminary Status Conference was held on October 26, 2022.

9      12.    Debtor's 341a Meeting of Creditors was held and concluded on October 28,

10  2022.

11      13.    On November 4, 2022, Creditor TD Auto Finance LLC filed its Notice of

12  Motion and Motion for Relief from the Automatic Stay with Supporting Declarations

13  Personal Property Re: 2016 Mercedes-Benz C-Class [docket no.: 44]. On November 8,

14  2022, Creditor TD Auto  Finance LLC filed a Stipulation by TD Auto Finance LLC and

15  Debtor for Resolution of Motion for Relief from the Automatic Stay, for Maintenance of

16  Adequate Protection Payments and for Resolution of Claim Treatment Issues [docket no.:

17  49]. On November 8, 2022, the Court entered its Order Granting Motion for Relief from

18  the Automatic Stay Personal Property – Settlement by Stipulation Re: 2016 Mercedes-

19  Benz C-Class [docket no.: 50].

20

21      14.    On November 23, 2022, Debtor filed his Motion to Avoid Lien Under 11

22  U.S.C. Section 522(f) as to Belgium's lien [docket no.: 59][6].

23      15.    On November 23, 2022, Debtor filed his Second Status Report [docket no.:

24  60].

25      16.    Debtor's previous emergency Chapter 13 case was filed on July 12, 2022

26  (Case No.: 8:22-bk-11158-TA).

27

28  _____
[6] Debtor is also in the process of finalizing lien avoidance motions as to the two
homeowners association liens on the Rockefeller Property.

DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S MOTION TO DISMISS AND/OR CONVERT CASE TO
CHAPTER 7; DECLARATIONS OF MICHAEL JAY BERGER AND BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF

17.    On July 26, 2022 filed a Request for Voluntary Dismissal of Ch 13 Case [Chapter 13 docket no.: 15].

18.    On July 26, 2022, the Court entered its Order and Notice of dismissal arising from debtor's request for voluntary dismissal of chapter 13 (11 U.S.C. Section 1307(b)) [Chapter 13 docket no.: 16].

19.    On August 5, 2022, Belgium filed a Motion for Sanctions Barring Subsequent Bankruptcy Filing [Chapter 13 docket no.: 18]. On September 7, 2022, Debtor filed his Opposition to the Motion [Chapter 13 docket no.: 18] and on September 12, 2022, Belgium filed its Reply to Debtor's Opposition [Chapter 13 docket no.: 25].

20.    A true and correct copy of the Court's September 21, 2022 Tentative Ruling on Belgium's Motion for Sanctions Barring Subsequent Bankruptcy Case is attached hereto as **"Exhibit 2."**

21.    On September 27, 2022, Debtor filed his Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 20]. On October 4, 2022, Belgium filed its Opposition to the Debtor's Motion For Order Continuing Stay And Request For Dismissal With A Bar To Refiling [docket no.: 25] and Exhibits thereon [docket no.: 26]. A true and correct copy of the October 18, 2022 tentative ruling is attached hereto as **Exhibit "3."** On October 25, 2022, the Court entered its Order Granting Motion for Order Imposing a Stay or Continuing the Automatic Stay [docket no.: 35].

///
///
///
///
///
///
///

13

22.    I am a certified specialist in Bankruptcy and my firm has confirmed numerous cases for my clients. Generally only 10% of all Chapter 11 cases are confirmed[7]. Thus, my success rate is significantly higher than the industry average and Debtor has his best chance of confirming a Chapter 11 Plan with my assistance.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on December 7, 2022 at Beverly Hills, California.

Michael Jay Berger

---

[7] https://efinancemanagement.com/financial-leverage/chapter-11-bankruptcy#:~:text=Success%20Rate%20of%20Chapter%2011%20The%20history%20and,expenses%2C%20complicated%20procedures%2C%20restrictive%20timelines%2C%20and%20so%20on.

14

## DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare and state as follows:

1.      I am the Debtor. I am over the age of 18. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      My instant Chapter 11 case was filed on September 19, 2022. This is my second bankruptcy filing. I previously filed a Chapter 13 [case no.: 8:22-bk-11158-TA], which I voluntarily dismissed because I was over the debt limit. In the prior case, Belgium tried to obtain a bar on refiling, but the Court denied Belgium's motion. In response to Belgium's Motion for sanctions and bar on refiling in the prior case, I indicated that I had retained my current counsel and was planning on filing Chapter 11 to reorganize my debts.

3.      My current Chapter 11 case was filed in order to reorganize my debts. I had an increase in my rental income from my real property from $3,000 to $4,000, which will be evidenced by my Monthly Operating Reports filed in the case. I am actively looking for employment. I am also reaching out to family to obtain family contributions to support my payments for the Plan I intend to file.

4.      My previous emergency Chapter 13 case was filed on July 12, 2022 (Case No.: 8:22-bk-11158-TA) to stop the foreclosure sale on my home the next morning. While my former counsel and I were preparing the case in order to meet the deadline to file my Schedules, it became apparent that my case could not proceed under Chapter 13 and that the case would inevitably be dismissed due to my being over the § 109(e) debt limits.  Rather than allowing the case to be dismissed for failure to file schedules, I showed good faith and on July 26, 2022 filed a Request for Voluntary Dismissal of Ch 13 Case [Chapter 13 docket no.: 15] asking the Court to dismiss my case in order to attempt to resolve its debts outside of the Chapter 13 case.

15

5.     My primary residence is the Rockefeller Property. My current Chapter 11 case, and my previously filed Chapter 13 case listed the Rockefeller Property as my primary residence, as do my tax returns and bank statements. A true and correct copy of my Chapter 13 Voluntary Petition, first pages of Debtor's 2019-2022 tax returns, and other statements indicating Debtor lives in the Rockefeller Property are attached hereto as **Exhibit "4."**

6.     I filed my lien avoidance motion under 11 U.S.C. § 522(f) as to Belgium's claim, as summary of which is as follows:

| Property/Lien Description | Value | Remaining Equity/ Treatment |
|---|---|---|
| Rockefeller Property | $1,120,000.00 | |
| Homestead Exemption | $626,400.00 | $493,600.00 |
| 1st TD Freedom Mortgage | $234,000.00 | Secured: $234,000.00 |
| Belgium Judgment Lien (disputed claim) | $4,345,250.00 | Secured: $259,600.00 Unsecured: $4,085,650.00 |
| The Townes at Central Park West Assn. | $3,506.03 | Unsecured: $3,506.03 |
| Central Park West Community Assn. | $3,667.64 | Unsecured: $3,667.64 |

7.     I have made payments on the mortgage and homeowners association on my real property. A true and correct copy of my payments on the mortgage and homeowners association fees is attached hereto as **Exhibit "5."**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on December 7, 2022 at _Irvine, CA_ .

_____
Bassem Victor El Mallakh

16

EXHIBIT 1



History

System Amendment - FTB Revivor  - 7/18/2018

System Amendment - FTB Suspended  - 3/1/2018

Statement of Information  - 2/14/2018

System Amendment - Pending Suspension  - 4/4/2017

System Amendment - Penalty Certification - SI  - 3/7/2017

System Amendment - SI Delinquency for the year of 0  - 8/5/2016

Initial Filing - 5/30/2013

https://bizfileonline.sos.ca.gov/search/business





**California Secretary of State**
Electronic Filing



## LLC Termination – Certificate of Cancellation

| | |
|---|---|
| **Entity Name:** | BELGIUM INVESTMENTS 960 BAY DR, LLC |
| **Entity (File) Number:** | 201315010139 |
| **File Date:** | 02/01/2022 |

Detailed Filing Information

### Dissolution
The Dissolution was made by a vote of ALL of the members of the California Limited Liability Company.

### Tax Liability Statement
All final returns required pursuant to the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

### Cancellation Statement
Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

### Electronic Signature(s):

Jean Ruche

# EXHIBIT 2

## United States Bankruptcy Court
## Central District of California
### Santa Ana
### Theodor Albert, Presiding
### Courtroom 5B Calendar

---

Wednesday, September 21, 2022                                    **Hearing Room**    **5B**

---

<u>3:00 PM</u>
**8:22-11158    Bassem Essam El Mallakh**                                    **Chapter 13**

#27.00    Motion For Sanctions Barring Subsequent Bankruptcy Filing

Docket    18

**Tentative Ruling:**

Tentative for 9/21/22:
This is the creditor's motion for sanctions for what the creditor characterizes as a bad faith filing. But the evidence is not persuasive. The timing is not even unusual. However, as this case is likely to be followed by a refiling under Chapter 11 there will be other opportunities to address good faith, such as the inevitable hearing under §362(c )(3).

Deny

Appearance: required

| Party Information |
|:---:|

**<u>Debtor(s):</u>**

Bassem Essam El Mallakh                    Represented By
                                          Benjamin  Heston

**<u>Trustee(s):</u>**

Amrane (SA)  Cohen (TR)                    Pro Se

---

# EXHIBIT 3

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

Tuesday, October 18, 2022                                    Hearing Room        5B

10:00 AM
**8:22-11605    Bassem Victor El Mallakh**                                    **Chapter 11**

#5.00    Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic
         Stay as the Court Deems Appropriate

                            Docket      20

**Tentative Ruling:**

        Tentative for 10/18/22:
               This is Debtor's motion to continue the automatic stay in his chapter 11
        case filed on September 19, 2022. Debtor previously filed a chapter 13 on
        July 12, 2022. The chapter 13 case was dismissed at Debtor's request on
        July 26, 2022. Debtor explains that he requested that the chapter 13 case be
        dismissed when it became clear he was not eligible to be a debtor in chapter
        13. Creditor Belgium Investments 960 Bay Dr, LLC ("Belgium") opposes this
        motion, arguing that this case was filed in bad faith and that the case should
        be dismissed with a bar.

               Pursuant to section 362(c)(3), where a debtor has a case that was
        pending within the previous one-year that was dismissed, the automatic stay
        terminates on the 30th day after the petition date on the refiled case. The stay
        may be continued upon motion if four minimum requirements are met: (1) a
        motion is filed; (2) there is notice and a hearing; (3) the hearing is completed
        before the expiration of the 30-day stay; and (4) the debtor proves that the
        filing of the new case "is in good faith as to the creditors to be stayed" *In re
        Castaneda*, 342 B.R. 90, 94 (Bankr. S.D. Cal. 2006) (citations omitted).

               The movant bears the burden of proof of establishing these minimum
        requirements.  Upon meeting these minimum requirements, the court "may"
        then continue the stay "subject to such conditions or limitations as the court
        may then impose." § 362(c)(3)(B).  *Id.* Section 362(c)(3)(C) sets forth
        circumstances in which a case is presumed to be filed in bad faith. If the
        presumption of bad faith arises, the movant must rebut the presumption by
        "clear and convincing evidence to the contrary." *Id.*; § 362(c)(3)(C).  In
        contrast, if the court finds there is no presumption of bad faith arising under §
        362(c)(3)(C)(i) or (ii), then the burden of establishing good faith is reduced to
        preponderance of the evidence. *Id.* at 94-95.  The burden of establishing the

# United States Bankruptcy Court
# Central District of California
### Santa Ana
### Theodor Albert, Presiding
### Courtroom 5B Calendar

**Tuesday, October 18, 2022**                                    **Hearing Room**    **5B**

<u>10:00 AM</u>
**CONT...**     **Bassem Victor El Mallakh**                                **Chapter 11**

presence of presumptive bad faith rests upon the opponent to the motion. *Id.* at 95.

Section 362(c)(3)(B) directs that a court may continue the stay "only if the party in interest [movant] demonstrates that the filing of the latter case is in good faith ..." (emphasis added). This necessarily means a court must make its own determination of good faith under the applicable evidentiary standard before it may continue the stay. Consequently, the moving papers must establish the nonexistence of presumptive bad faith, or the moving papers must admit and rebut the presumption, even though the burden of proof technically rests upon the opponent and the motion may be unopposed. *Id.*

Here, the first three Castaneda requirements are easily met. Debtor has filed this motion to continue the stay, which will be heard within the 30-day window. The question, then, is whether the filing of this chapter 11 case was in good faith as to the creditors to be stayed. But a presumption of bad faith does not arise in this case because the earlier dismissal was at debtor's request and none of the other elements of §362(c)(3)(C) appear, or at least not clearly so. Debtor only had one previous case pending within the last year, the previous case was not dismissed because Debtor failed to perform under any obligation or requirement of the court as outlined at §362(c)(3)(C). But one possibility remains, i.e. Belgium's assertion that there has not been a substantial change in Debtor's affairs since the first case was filed [§362(c)(3)(C)(III)] and so no reason appears to conclude that this case can be concluded successfully in a confirmed plan. While the record is pretty thin issues of concern do arise (for example: are there other creditors who could provide an impaired consenting class? How can a plan be funded?) But because Debtor is now at least in the proper chapter with experienced counsel and shows at least some declared source of income the court is inclined to give the benefit of the doubt to debtor. Debtor states that he is looking for work, collecting rent, and will remain post-petition current on his obligations and will cure defaults through a plan. While such a claim that a debtor is looking for work may be tenuous and not a compelling reason for the case to drag on, and just how a plan would work is pretty vague, this is at least a reasonable approach in chapter 11.

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

Tuesday, October 18, 2022                                    Hearing Room        5B

10:00 AM
CONT...        **Bassem Victor El Mallakh**                                    **Chapter 11**

Belgium argues that Debtor has filed both cases in bad faith in order to evade Belgium's judgment but offers no evidence to support its claims. Filing a bankruptcy to avoid foreclosure (or levy of a judgment) is very common and not  alone indicative of bad faith. Without evidence to support the arguments in the opposition, the court can and does find that this case was filed in apparent good faith and will continue the stay, but without prejudice to renewal of the issue in a motion to dismiss. Debtor should realize that this case appears very tenuous and so he must be prepared to show progress and that he deserves the benefit of the doubt extended here.

Arguments only tangentially related to the issue before the court are raised in both the opposition and reply. If Belgium believes that there are nevertheless grounds to dismiss this case it may develop that record and file such a motion to dismiss. If Debtor would like an OSC issued there are procedures to do so in the Local Bankruptcy Rules.  The court makes no finding about the effect of Corporations Code §17707.06.

*Grant*.

Appearance: required

| Party Information |
|---|

**Debtor(s):**

    Bassem Victor El Mallakh              Represented By
                                          Michael Jay Berger

**Movant(s):**

    Bassem Victor El Mallakh              Represented By
                                          Michael Jay Berger
                                          Michael Jay Berger

EXHIBIT 4

| Fill in this information to identify your case: |
| --- |

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7
☐ Chapter 11
☐ Chapter 12
■ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

02/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

|  |  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- | --- |
| 1. | Your full name | | |
| | Write the name that is on your government-issued picture identification (for example, your driver's license or passport). | **Bassem**<br>First name | First name |
| | | **Essam**<br>Middle name | Middle name |
| | Bring your picture identification to your meeting with the trustee. | **El Mallakh**<br>Last name and Suffix (Sr., Jr., II, III) | Last name and Suffix (Sr., Jr., II, III) |
| 2. | All other names you have used in the last 8 years<br><br>Include your married or maiden names. | | |
| 3. | Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN) | xxx-xx-3012 | |

| Debtor 1 | **Bassem Essam El Mallakh** | Case number *(if known)* |
|---|---|---|

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| **4.** | **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years** | ☑ I have not used any business name or EINs. | ☐ I have not used any business name or EINs. |
| | Include trade names and *doing business as* names | Business name(s) | Business name(s) |
| | | EIN | EIN |

**5. Where you live**

116 Rockefeller
Irvine, CA 92612
Number, Street, City, State & ZIP Code

Orange
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**If Debtor 2 lives at a different address:**

Number, Street, City, State & ZIP Code

County

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

Check one:

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Check one:

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

| Debtor 1 | **Bassem Essam El Mallakh** | Case number *(if known)* |
|---|---|---|

| **Part 2:** | **Tell the Court About Your Bankruptcy Case** |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| District | | When | | Case number | |
| District | | When | | Case number | |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| Debtor | | | Relationship to you | |
|---|---|---|---|---|
| District | | When | Case number, if known | |
| Debtor | | | Relationship to you | |
| District | | When | Case number, if known | |

**11.** **Do you rent your residence?**

■ No. Go to line 12.

☐ Yes. Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Debtor 1   **Bassem Essam El Mallakh**                                    Case number *(if known)*

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |
| --- | --- |

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ **No.** Go to Part 4.

☐ **Yes.** Name and location of business

Name of business, if any

Number, Street, City, State & ZIP Code

Check the appropriate box to describe your business:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

■ **No.** I am not filing under Chapter 11.

☐ **No.** I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ **Yes.** I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ **Yes.** I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |
| --- | --- |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ **No.**

☐ **Yes.**

What is the hazard?

If immediate attention is needed, why is it needed?

Where is the property?

Number, Street, City, State & Zip Code

---

Debtor 1    **Bassem Essam El Mallakh**    Case number *(if known)*

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1 **Bassem El Mallakh**                                             Case number *(if known)*

| Part 6: | Answer These Questions for Reporting Purposes |

**16. What kind of debts do you have?**

**16a.** **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

**16b.** **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

**16c.** State the type of debts you owe that are not consumer debts or business debts

**17. Are you filing under Chapter 7?**

■ **No.** I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ **Yes.** I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

**18. How many Creditors do you estimate that you owe?**

| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**19. How much do you estimate your assets to be worth?**

| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20. How much do you estimate your liabilities to be?**

| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Part 7: | Sign Below |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Bassem Essam El Mallakh**
Signature of Debtor 1

Signature of Debtor 2

Executed on  7/12/2022
MM / DD / YYYY

Executed on
MM / DD / YYYY

Debtor 1    **Bassem Essam El Mallakh**                                    Case number *(if known)*

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

Signature of Attorney for Debtor                        Date    7/12/2022
                                                                MM / DD / YYYY

**Benjamin Heston**
Printed name

Firm name

**100 Bayview Circle, Suite 100**
**Newport Beach, CA 92660**
Number, Street, City, State & ZIP Code

Contact phone    **951-290-2827**              Email address    **bheston.ecf@gmail.com**

**297798 CA**
Bar number & State

---

Form **1040**  Department of the Treasury — Internal Revenue Service (99)  **2021**  OMB No. 1545-0074  IRS Use Only — Do not write or staple in this space.
**U.S. Individual Income Tax Return**

| **Filing Status** | [X] Single | [ ] Married filing jointly | [ ] Married filing separately (MFS) | [ ] Head of household (HOH) | [ ] Qualifying widow(er) (QW) |
|---|---|---|---|---|---|

Check only one box.

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent ▶

| Your first name and middle initial | Last name | | Your social security number |
|---|---|---|---|
| Bassem El Mallakh | | | 3012 |

| If joint return, spouse's first name and middle initial | Last name | | Spouse's social security number |
|---|---|---|---|

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.

116 Rockefeller

City, town, or post office. If you have a foreign address, also complete spaces below.    State    ZIP code

Irvine, CA 92612

Foreign country name    Foreign province/state/county    Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
[ ] You   [ ] Spouse

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency?  [ ] Yes  [X] No

**Standard Deduction**    Someone can claim:  [ ] You as a dependent  [ ] Your spouse as a dependent
[ ] Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You:  [ ] Were born before January 2, 1957  [ ] Are blind   Spouse:  [ ] Was born before January 2, 1957  [ ] Is blind

**Dependents** (see instructions):

| | (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies (see instructions): | |
|---|---|---|---|---|---|
| | | | | Child tax credit | Credit for other dependents |

If more than four dependents, see instructions and check here ▶

| | | | | |
|---|---|---|---|---|
| Attach Sch. B if required. | **1** Wages, salaries, tips, etc. Attach Form(s) W-2 ................................. | | **1** | |
| | **2a** Tax-exempt interest ........... | **2a** | **b** Taxable interest................ | **2b** | 3. |
| | **3a** Qualified dividends .......... | **3a** | **b** Ordinary dividends ........... | **3b** | |
| | **4a** IRA distributions............. | **4a** | **b** Taxable amount.............. | **4b** | |
| | **5a** Pensions and annuities...... | **5a** | **b** Taxable amount............. | **5b** | |
| | **6a** Social security benefits...... | **6a** | **b** Taxable amount............. | **6b** | |

| | | |
|---|---|---|
| **7** Capital gain or (loss). Attach Schedule D if required. If not required, check here ........ ▶ [ ] | **7** | |
| **8** Other income from Schedule 1, line 10............................................. | **8** | |

**Standard Deduction for —**
- Single or Married filing separately, $12,550
- Married filing jointly or Qualifying widow(er), $25,100
- Head of household, $18,800
- If you checked any box under *Standard Deduction,* see instructions.

| | | |
|---|---|---|
| **9** Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** ............ ▶ | **9** | 3. |
| **10** Adjustments to income from Schedule 1, line 26............................. | **10** | |
| **11** Subtract line 10 from line 9. This is your **adjusted gross income** ............ ▶ | **11** | 3. |
| **12a** Standard deduction or itemized deductions (from Schedule A) | **12a** 12,550. | |
| **b** Charitable contributions if you take the standard deduction (see instructions).. | **12b** | |
| **c** Add lines 12a and 12b ..................................................... | **12c** | 12,550. |
| **13** Qualified business income deduction from Form 8995 or Form 8995-A ............ | **13** | |
| **14** Add lines 12c and 13 ...................................................... | **14** | 12,550. |
| **15** **Taxable income.** Subtract line 14 from line 11. If zero or less, enter -0-........ | **15** | 0. |

**BAA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    Form **1040** (2021)

FDIA0112L   12/10/21

Form **1040**   Department of the Treasury — Internal Revenue Service  (99)

**U.S. Individual Income Tax Return**   **2019**   OMB No. 1545-0074   IRS Use Only — Do not write or staple in this space.

**Filing Status**
Check only one box.

[X] Single   [ ] Married filing jointly   [ ] Married filing separately (MFS)   [ ] Head of household (HOH)   [ ] Qualifying widow(er) (QW)

If you checked the MFS box, enter the name of spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent. ▶

| | |
|---|---|
| Your first name and middle initial | Last name |
| Bassem El Mallakh | |

Your social security number   3012

| | |
|---|---|
| If joint return, spouse's first name and middle initial | Last name |

Spouse's social security number

Home address (number and street). If you have a P.O. box, see instructions.   Apt. no.
116 Rockefeller

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).
Irvine, CA 92612

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.   [ ] You   [ ] Spouse

If more than four dependents, see instructions and ✓ here ▶ [ ]

**Standard Deduction**   Someone can claim:   [ ] You as a dependent   [ ] Your spouse as a dependent
[ ] Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**   You:   [ ] Were born before January 2, 1955   [ ] Are blind   Spouse:   [ ] Was born before January 2, 1955   [ ] Is blind

**Dependents** (see instructions):

| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies for (see instructions): |
|---|---|---|---|
| | | | Child tax credit   Credit for other dependents |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | |
|---|---|---|---:|
| 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | |
| 2a | Tax-exempt interest . . . . . . . . . .  **2a** | b Taxable int. Att. Sch. B if reqd. . . . . **2b** | 5. |
| 3a | Qualified dividends . . . . . . . . . . .  **3a** | b Ordinary div. Att. Sch. B if reqd. . . . . **3b** | |
| 4a | IRA distributions . . . . . . . . . . .  **4a** | b Taxable amount. . . . . . . . . . . . . . **4b** | |
| c | Pensions and annuities . . . . . . .  **4c** | d Taxable amount. . . . . . . . . . . . . . **4d** | |
| 5a | Social security benefits . . . . . . . .  **5a** | b Taxable amount. . . . . . . . . . . . . . **5b** | |
| 6 | Capital gain or (loss). Attach Schedule D if required. If not required, check here . . . . . . . ▶ [ ] | **6** | |
| 7a | Other income from Schedule 1, line 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7a** | |
| b | Add lines 1, 2b, 3b, 4b, 4d, 5b, 6, and 7a. This is your **total income** . . . . . . . . . . . . ▶ | **7b** | 5. |
| 8a | Adjustments to income from Schedule 1, line 22 . . . . . . . . . . . . . . . . . . . . . . | **8a** | |
| b | Subtract line 8a from line 7b. This is your **adjusted gross income** . . . . . . . . . . . . . ▶ | **8b** | 5. |
| 9 | Standard deduction or itemized deductions (from Schedule A) . . . . . . . . . .  **9**   12,200. | | |
| 10 | Qualified business income deduction. Attach Form 8995 or Form 8995-A . . . . . . .  **10** | | |
| 11a | Add lines 9 and 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | 12,200. |
| b | **Taxable income**. Subtract line 11a from line 8b. If zero or less, enter -0- . . . . . . . . . . | **11b** | 0. |

Standard Deduction for —
● Single or Married filing separately, $12,200
● Married filing jointly or Qualifying widow(er), $24,400
● Head of household, $18,350
● If you checked any box under *Standard Deduction*, see instructions.

**BAA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**   Form **1040** (2019)



# INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB

## MEMBERS' CONDOMINIUM OWNERS POLICY – FORM 6
## PROPERTY INSURANCE POLICY DECLARATIONS
### Evidence of Insurance
Policy contains 438BFU, printed on next page, in favor of Mortgagee shown.

**MORTGAGEE**
ADDITIONAL OWNERS INTEREST
US TRUSTEE
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST SUITE 7160
SANTA ANA CA 92701

**LOAN NUMBER**

**POLICY NUMBER**
⬛⬛⬛20189

**NAMED INSURED AND MAILING ADDRESS**
BASSEM EL MALLAKH
116 ROCKEFELLER
IRVINE CA 92612

**LOCATION OF PREMISES (IF DIFFERENT FROM MAILING ADDRESS)**

☐ PROPERTY INSURANCE POLICY DECLARATIONS
EFFECTIVE DATE OF THIS POLICY 10262022        12:01 A.M.
(PACIFIC STANDARD TIME)
EXPIRATION DATE OF THIS POLICY 10262023        12:01 A.M.
(PACIFIC STANDARD TIME)

ANNUAL PREMIUM $

☐ AMENDMENT OF PROPERTY INSURANCE DECLARATIONS
ENDORSEMENT
EFFECTIVE DATE                                    12:01 A.M.
(PACIFIC STANDARD TIME)
EXPIRATION DATE OF THE POLICY                    12:01 A.M.
(PACIFIC STANDARD TIME)

**COVERAGES AND LIMITS OF LIABILITY**

**PART I - PROPERTY COVERAGES**

| | |
|---|---|
| COVERAGE A – BUILDING PROPERTY | 82000 |
| OTHER PERILS DEDUCTIBLE | 5000 |
| WATER DEDUCTIBLE | 5000 |

**PROVISIONS**
This insurance is not a contract of insurance. The provisions of the policy shall prevail in all respects. All premiums for the insurance policy shall be computed in accordance with the Interinsurance Exchange of the Automobile Club rules, forms, premiums and minimum premiums applicable to the insurance afforded which are in effect at the inception of the insurance policy and upon each anniversary thereof, including the date of interim changes. The insurance policy does not become effective unless and until escrow closes, the named insured has an ownership interest in the residence premises, and the premium is paid or reserved in an escrow account. If the insurance protection evidenced herein terminates, the mortgagee will be given notice in accordance with the standard mortgage clause (438BFU).

**ACSC Management Services, Inc.**
**ATTORNEY-IN-FACT**

**FOR QUESTIONS OR CHANGES CALL**
8770 01/16

......................................................................................................................................................................
**DETACH HERE AND RETURN WITH PREMIUM PAYMENT**



INTERINSURANCE EXCHANGE of the
Automobile Club of Southern California
MAILING ADDRESS: P.O. Box 25448 SANTA ANA, CALIFORNIA 92799-5448

**NOTICE OF
PREMIUM DUE**

**LOAN NUMBER**

**POLICY NUMBER**
CHO183020189

**DUE DATE**

**PLEASE PAY THE PREMIUM
DUE BEFORE OR ON THE
DUE DATE**

BASSEM EL MALLAKH
116 ROCKEFELLER

**PREMIUM DUE**

**MAKE CHECK PAYABLE TO
ACSC**

# Wells Fargo Combined Statement of Accounts

September 30, 2022 ■ Page 1 of 6



BASSEM VICTOR EL MALLAKH
116 ROCKEFELLER
IRVINE CA 92612-8114

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
*We accept all relay calls, including 711*

**1-800-742-4932**

*En español: 1-877-727-2932*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our
company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these*
*convenient services with your account(s). Go to*
*wellsfargo.com or call the number above if you have*
*questions or if you would like to add new services.*

| | | |
|---|---|---|
| Online Banking ☐ | Direct Deposit ☐ |
| Online Bill Pay ☐ | Auto Transfer/Payment ☐ |
| Online Statements ☐ | Overdraft Protection ☐ |
| Mobile Banking ☐ | Debit Card ☐ |
| My Spending Report ☐ | Overdraft Service ☑ |

**Other Wells Fargo Benefits**

**From Wells Fargo Home Mortgage**

Is a home purchase in your future? Competitive rates and low down payment options make now a great time to buy a home. Plus, as a
Wells Fargo customer, you can count on personalized guidance and streamlined service every step of the way.

Get started with an online mortgage application that can pre-fill your Wells Fargo account information and save you time. Use your
Wells Fargo Online® username and password at the start of the application. Go to wellsfargo.com/homepurchase or contact your local
home mortgage consultant.

Sheet Seq = 0105191
Sheet 00001 of 00003

Created With Tiny Scanner



FREEDOM MORTGAGE®
PO Box 50485, Indianapolis, IN 46250-0485

August 16, 2021

BASSEM ELMALLAKH
116 ROCKEFELLER
IRVINE          CA 92612

## PAYOFF STATEMENT

Loan Number:          4275
Borrower:        BASSEM ELMALLAKH

Next Payment Due Date:  February 1, 2020

Property:        116 ROCKEFELLER
                 IRVINE          CA 92612

Loan Type:       CONVENTIONAL

### Payoff Quote Good Through September 15, 2021

The accrued interest shown below is projected through September 15, 2021. After that date, please add an additional $ 13.80 per day.

| Please send the following Remittance: | |
|---|---|
| Current Unpaid Principal | $ 201,970.66 |
| Accrued Interest | $ 9,657.70 |
| Prepayment Penalty | $    0.00 |
| Escrow/Impound Required | $ 12,564.30 |
| Mortgage Insurance Premium Due | $ 0.00 |
| Less Escrow/Impound Funds | $ -  0.00 |
| Less Unapplied Funds Balance | $    0.00 |
| Statement Fee | $   30.00 |
| Unpaid Late Charges | $   60.14 |
| Recording Fee | $  168.00 |
| Release Fee | $    0.00 |
| Additional Items Due | $   75.00 |
| Deferred Balance | $.00 |
| Optional Insurance | $    0.00 |
| **TOTAL PAYOFF DUE:** | $  224,525.80 |

A Deferred Balance may include items such as deferred Principal Balance, Late Charges, Escrow Advances, Expense Advances and Administrative Fees.

The current escrow balance is $-12,564.30. Any escrow payments scheduled to disburse prior to the payoff expiration date will be deducted from the total escrow balance. If the scheduled disbursement creates a negative balance in the escrow account, these funds will appear as an escrow advance and included in the total payoff due. Available escrow funds will be returned to the borrower within 14 business days from the date the loan is paid in full.

2.61



**FREEDOM MORTGAGE**
PO Box 50485, Indianapolis, IN 46250-0485

*When applicable, any escrow funds credited toward the total payoff will not be returned.*

The information shown on this statement is subject to change.To ensure that you are submitting sufficient funds to pay your account in full, please contact our Customer Care Department for updated figures prior to remitting payoff funds. If your loan is referred to foreclosure this payoff statement will no longer be valid, therefore, a new payoff statement will need to be requested.

## WHERE TO SUBMIT PAYOFF FUNDS

**WIRE TRANSFER**
Freedom Mortgage Corporation
Reference: Payoff/Payment Department
Keybank, 127 Public Square, Cleveland, OH
ABA: 041001039
Bank Account: ████████8402
Borrower Name: BASSEM ELMALLAKH
Loan Number: ████4275

**OVERNIGHT DELIVERIES OF PAYMENTS**
Freedom Mortgage Corporation
ATTN: Payoff Department
10500 Kincaid Drive, Suite 111
Fishers, Indiana 46037-9764

*Please note that Freedom Mortgage requires payoffs to be received in the form of certified funds. Personal checks will not be accepted. Additionally, Freedom Mortgage will only accept funds to pay off the account in full. Payoff funds received that are not sufficient to pay the loan account in full will be returned.*
*Incoming wire transfers received by 4pm EST will be credited the same day. Wires received after that time will be processed on the next business day.  Please ensure that all payoff funds submitted include the borrower's name and loan number.*

Customer Care representatives are available to assist you at (855) 690-5900 Monday through Friday from 8:00am – 10:00pm and Saturday from 9:00am – 6:00pm Eastern Time.

**FREEDOM MORTGAGE CORPORATION IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IMPORTANT NOTICE: TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED IN BANKRUPTCY, IS SUBJECT TO THE AUTOMATIC STAY OR IS PROVIDED FOR IN A CONFIRMED PLAN, THIS COMMUNICATION IS FOR REGULATORY COMPLIANCE AND/OR INFORMATIONAL PURPOSES ONLY, AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION.**

---------------------------------------------------------------------------------------------------------------------

### Change of Address Notification Form

Is your mailing address changing as a result of this payoff request? Please let us know your new address below in order to ensure all trailing documents are sent to the appropriate address. Please return this form to:

Freedom Mortgage P.O. Box 50428 Indianapolis IN 46250-0401

**New Address:** _____**City/State/Zip**_____

**Loan Number:** 0113204275

261

# EXHIBIT 5



**CHASE** 🅲

Date 12/07/2022    Void after 7 years    1114358578    91-2 1221

262111107 NEW 01/21 8810004306

Remitter:  BASSEM V. ELMALLAKH/DEBTOR IN POSSESSION CASE 22-11605

Pay To The Order Of:  FREEDOM MORTGAGE CORPORATION

Pay:  TWO THOUSAND TWENTY EIGHT DOLLARS AND 21 CENTS    $** 2,028.21 **

Do not write outside this box

Drawn  JPMORGAN CHASE BANK, N.A.

*Rebecca Griffin*

Rebecca Griffin, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

Memo:
Note: For information only. Comment has no effect on bank's payment.

⑈1114358578⑈ ⑆122100024⑆ 806002234⑈



**CHASE** 🅲    CASHIER'S CHECK

Date 12/07/2022    Void after 7 years    1114358579    91-2 1221

262111107 NEW 01/21 8810004306

Remitter:  BASSEM V. ELMALLAKH/DEBTOR IN POSSESSION CASE 22-11605

Pay To The Order Of:  THE TOWNS AT CENTRAL PARK WEST

Pay:  TWO HUNDRED SIXTY FIVE DOLLARS AND 00 CENTS    $** 265.00 **

Do not write outside this box

Drawn  JPMORGAN CHASE BANK, N.A.

*Rebecca Griffin*

Rebecca Griffin, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

Memo:
Note: For information only. Comment has no effect on bank's payment.

⑈1114358579⑈ ⑆122100024⑆ 806002234⑈



**CHASE** 🅲    CASHIER'S CHECK

Date 12/07/2022    Void after 7 years    1114358580    91-2 1221

262111107 NEW 01/21 8810004306

Remitter:  BASSEM V. ELMALLAKH/DEBTOR IN POSSESSION CASE 22-11605

Pay To The Order Of:  CENTRAL PARK WEST

Pay:  ONE HUNDRED SIXTY SIX DOLLARS AND 00 CENTS    $** 166.00 **

Do not write outside this box

Drawn  JPMORGAN CHASE BANK, N.A.

*Rebecca Griffin*

Rebecca Griffin, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

Memo:
Note: For information only. Comment has no effect on bank's payment.

⑈1114358580⑈ ⑆122100024⑆ 806002234⑈

Created With Tiny Scanner

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S MOTION TO DISMISS AND/OR CONVERT CASE TO CHAPTER 7; DECLARATIONS OF MICHAEL JAY BERGER AND BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/7/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On 12/7/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/7/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/7/2022 | Peter Garza | /s/Peter Garza |
|-----------|-------------|----------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

**Belgium Investments 960 Bay Dr, LLC**
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S Oak Avenue
Pasadena, CA 91107

**Central Park West Community Association**
c/o Tinnelly Law Group
27101 Puerta Real, Suite 250
Mission Viejo, CA 92691

**Central Park West Community HOA**
401 Rockefeller #208
Irvine, CA 92612

**First Service Residential**
15241 Laguna Canyon Rd.
Irvine, CA 92618

**First Service Residential**
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054

**Freedom Mortgage**
951 Yamato Rd.
Boca Raton, FL 33431

**Freedom Mortgage**
PO Box 50428
Indianapolis, IN 46250

**Freedom Mortgage Corporation**
1455 Frazee Road, Suite 820
San Diego, CA 92108

**Freedom Mortgage Corporation**
Attn: Bankruptcy
907 Pleasant Valley Ave, Ste 3
Mt Laurel, NJ 08054

**INTERNAL REVENUE SERVICE**
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

**TD Auto Finance**
6 Atlantis Way
Lewiston, ME 04240

**Td Auto Finance**
Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI 48333

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**

**TD Bank, N.A.**
successor in interest to TD Auto Finance
P.O. Box 16041
Lewiston, ME 04243

**The Tones at Central**
Pak West Ass
15241 Laguna Canyon Rd
Irvine, CA 92618

**The Townes at Central Park West Association**
c/o Community Legal Advisors Inc.
509 N. Coast Highway
Oceanside, CA 92054

**Wells Fargo Bank NA**
1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328

**Wells Fargo Bank, N.A.**
Wells Fargo Card Services
PO Box 10438, MAC F8235-02F
Des Moines, IA 50306-0438

**Wells Fargo Bank, N.A.**
Small Business Lending Division
P.O. Box 29482 MAC S4101-08C
Phoenix, AZ 85038

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
# "20"

1   MICHAEL JAY BERGER (State Bar # 100291)
    LAW OFFICES OF MICHAEL JAY BERGER
2   9454 Wilshire Blvd. 6th Floor
    Beverly Hills, CA 90212-2929
3   Telephone:   (310) 271-6223
    Facsimile:   (310) 271-9805
4   michael.berger@bankruptcypower.com

5   Counsel for Debtor,
    Bassem Victor El Mallakh

6

7                    UNITED STATES BANKRUPTCY COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          SANTA ANA DIVISION

10  In re:                              )   CASE NO.: 8:22-bk-11605-TA
                                        )
11  BASSEM VICTOR EL MALLAKH,           )   Chapter 11
                                        )
12                                      )
           Debtor and Debtor-in-Possession. )   **DEBTOR'S OPPOSITION TO**
13                                      )   **BELGIUM INVESTMENTS 960 BAY**
                                        )   **DR, LLC'S OBJECTION TO**
14                                      )   **DEBTOR'S CLAIMED HOMESTEAD**
                                        )   **EXEMPTION; DECLARATION OF**
15                                      )   **BASSEM VICTOR EL MALLAKH IN**
                                        )   **SUPPORT THEREOF**
16                                      )
                                        )   Date:    January 11, 2023
17                                      )   Time:    10:00 a.m.
                                        )   Place:   411 West Fourth Street
18                                      )            Courtroom 5B
                                        )            Santa Ana, CA 92701
19                                      )
                                        )   Via Tele/Videoconference on Zoom
20                                      )
                                        )
21  _____)

22

23

24      **TO THE HONORABLE THEODOR C. ALBERT, CHIEF JUDGE OF THE**

25  **UNITED STATES BANKRUPTCY COURT, BELGIUM INVESTMENTS 960**

26  **BAY DR, LLC, TO THE UNITED STATES TRUSTEE, TO DEBTOR'S**

27  **CREDITORS AND TO ALL INTERESTED PARTIES:**

28

                                   1

Bassem Victor El Mallakh (the "Debtor") herein, respectfully submits his Opposition to Belgium Investments 960 Bay Dr, LLC's ("Belgium") Objection to Debtor's Claimed Homestead Exemption (the "Objection to Homestead Exemption") as follows:

## I.    INTRODUCTION

Debtor asks that Belgium's Objection to Debtor's Claimed Homestead Exemption be denied in full on the following bases:

(1) Under *BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir)*, 455 B.R. 896, 898 (9th Cir. BAP 2011) and *Benafel v. One West Bank*, 461 B.R. 581 (2011), the appropriate time for determining whether property is the debtor's primary residence is the petition date. Here, the Debtor's primary residence as of the date of the filing of the Bankruptcy Petition was, and currently is, 116 Rockefeller, Irvine, CA 92612 (the "Rockefeller Property"); and

(2) Based on *Barclay vs. Boskoski*, 2022 WL 16911862 (9th Cir. November 14, 2022), Debtor's available homestead exemption on the Rockefeller Property is determined as of the filing date of Debtor's Bankruptcy case; Debtor is entitled to the full homestead exemption in the amount of $626,400.00 available to the Debtor on the petition date on September 19, 2022 per CCP § 704.730.

## II.    DEBTOR'S ARGUMENTS IN OPPOSITION TO BELGIUM'S OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION

1. Debtor's Primary Residence on the Petition Date was and Continues to be the Rockefeller Property

Belgium argues the Rockefeller Property should not be considered the Debtor's primary residence because the Debtor previously did not live there. Debtor's primary residence as of the filing of the bankruptcy case was, and currently is, the Rockefeller Property. The controlling authority on establishing a Debtor's primary residence is *BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir)*, 455 B.R. 896, 898 (9th Cir. BAP

2

2011) where the Court held "the appropriate time for determining whether property is a debtor's principal residence is the petition date." *BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir),* 455 B.R. 896, 898 (9th Cir. BAP 2011).

In *Abdelgadir,* the debtors originally filed a bankruptcy petition under chapter 13. In their petition and schedules, the Abdelgadirs listed a home address in Las Vegas (the "Las Vegas Property"). The Las Vegas Property was encumbered by first and second deeds of trust. According to the security instruments, the Abdelgadirs were required to occupy the Las Vegas Property as a "primary year-round residence."

The Abdelgadirs later moved to convert their case to chapter 11, a motion the bankruptcy court granted. Then they filed a notice with the bankruptcy court, changing their address to a different location, and leased the Las Vegas Property to a third party.

The Abdelgadirs filed a chapter 11 plan on March 9, 2010, in which they proposed to modify the terms of the loan secured by the first mortgage on the Las Vegas Property. According to the plan, at that time, the Las Vegas Property was no longer their residence, but was now an investment property, and therefore, modification of the terms of the loan secured by the Las Vegas Property was no longer barred under of § 1123(b)(5). They argued that whether the Las Vegas Property was their principal residence for purposes of § 1123(b)(5) was a determination that should be made by the bankruptcy court as of the time of plan confirmation.

On appeal, the Court in Abdelgadir held that the majority of the cases favor use of the petition date to determine principal residence and that in the 9th Circuit, the debtor's primary residence is determined on the petition date. *BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir),* 455 B.R. 896, 898 (9th Cir. BAP 2011).

In *Benafel v. One West Bank*, 461 B.R. 581 (2011), the appellate court upheld the *BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir),* 455 B.R. 896, 898 (9th Cir. BAP 2011) holding, that a debtor's primary residence is established as of the bankruptcy petition date, and reversed the lower court's decision to use the date a loan was made to

3

1  establish the debtor's primary residence for bankruptcy purposes. *Benafel v. One West*

2  *Bank*, 461 B.R. 581, 592 (2011)

3      The Rockefeller Property is the Debtor's primary residence. Debtor's current

4  Chapter 11 case and his previously filed Chapter 13 case both listed the Rockefeller

5  Property as his primary residence, as do his tax returns, bank statements, car insurance

6  declaration and mortgage payoff statement. A true and correct copy of Debtor's Chapter

7  13 Voluntary Petition, first pages of Debtor's prepetition 2019-2022 tax returns, Debtor's

8  car insurance policy, Debtor's prepetition bank statement, and Debtor's mortgage payoff

9  statement all addressed to the Debtor at the Rockefeller Property indicating the Debtor's

10  primary residence is the Rockefeller Property are attached to the Declaration of Bassem

11  El Mallakh as **Exhibit "1."** As was held in *BAC Home Loans Serv., LP v. Abdelgadir (In*

12  *re Abdelgadir)*, 455 B.R. 896 (9th Cir. BAP 2011) and *Benafel v. One West Bank*, 461

13  B.R. 581 (2011), the Rockefeller Property is Debtor's primary residence.

14      Further, despite Belgium's claims, the lease agreement between the Debtor and his

15  sister does not bar the Debtor from living in the Rockefeller Property as his primary

16  residence. Debtor is leasing part of the Rockefeller Property to his sister who pays him

17  rent. The Debtor is also living in the Rockefeller Property. Belgium's res judicata

18  argument that another Court purportedly made a finding that the Debtor was previously

19  not living at the Rockefeller Property is irrelevant because the Debtor was living at the

20  Rockefeller Property at the time the Debtor's bankruptcy case was filed. Whether the

21  Debtor was served with documents at the Rockefeller Property, or not, as Belgium points

22  out, is not probative of where the Debtor was living as his primary residence at the time

23  the Debtor filed his Chapter 11 Bankruptcy case. The Rockefeller Property was the

24  Debtor's primary residence when the Debtor filed this Chapter 11 case, and continues to

25  be his primary residence.

26  ///

4

2. <u>Debtor is Entitled to the Homestead Exemption Available on the</u>
<u>Bankruptcy Petition Date</u>

The homestead exemption shields a homeowner's principal residence from creditors in case of bankruptcy. The objective of homestead legislation is to provide a place for families and their surviving members to be freed from any anxiety that their primary residence may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors. *Thorsby v. Babcock,* 36 Cal. 2d 202, 204 (1950) "[T]he homestead law is not designed to protect creditors, but protects the home against creditors . . . thereby preserving the home for the family." *Amin v. Khazindar,* 112 Cal.App.4th 582, 588 (2003).

A. <u>California's New Homestead Exemption in AB 1885 and its Effect on</u>
<u>California Code of Civil Procedure Section 704.730 – California's</u>
<u>Homestead Exemption Statute</u>

On January 1, 2021, AB 1885 went into effect updating the limits prescribed in CCP § 704.730, and protecting debtors who own homes by increasing the California homestead amount to an amount that would keep most homeowners safe from creditors.

AB 1885 provides that:

(a) The amount of the homestead exemption is the greater of the following:

(1) The countywide median sale price for a single-family home in the calendar year prior to the calendar year in which the judgment debtor claims the exemption, not to exceed six hundred thousand dollars ($600,000[1]).

(2) Three hundred thousand dollars ($300,000).

(b) The amounts specified in this section shall adjust annually for inflation, beginning on January 1, 2022, based on the change in the annual California

---

[1] The current homestead exemption available to the Debtor is $626,400.00.

5

Consumer Price Index for All Urban Consumers for the prior fiscal year,

published by the Department of Industrial Relations.

AB 1885

Effective January 1, 2021, California Code of Civil Procedure Section 704.730

now reads:

(a) The amount of the homestead exemption is the greater of the following:

(1) The countywide median sale price for a single-family home in the

calendar year prior to the calendar year in which the judgment debtor

claims the exemption, not to exceed six hundred thousand dollars

($600,000).

(2) Three hundred thousand dollars ($300,000).

(b) The amounts specified in this section shall adjust annually for inflation,

beginning on January 1, 2022, based on the change in the annual California

Consumer Price Index for All Urban Consumers for the prior fiscal year,

published by the Department of Industrial Relations.

CCP § 704.730

Before AB 1885 went into effect on January 1, 2021, the homestead exemptions in

California were $75,000 for a single homeowner, $100,000 for a married couple, and

$175,000 for families who met specific requirements. However, AB 1885 has changed

CCP § 704.730 to "instead make the homestead exemption the greater of $300,000 or the

countywide median sale price of a single-family home in the calendar year prior to the

calendar year in which the judgment debtor claims the exemption, not to exceed

$600,000."

B. Previous and Outdated Limits on Homestead Exemption Do Not Apply in
Bankruptcy

Belgium argues that the new California Code of Civil Procedure § 704.730

exemption limits do not apply to the Debtor's case because the Debtor's homestead

6

exemption should be capped at $75,000 which was the maximum available to the Debtor when Belgium's judgment was recorded. However, <u>this argument has been rejected by multiple cases</u>. Courts have instead ruled that debtors are not limited to a lower, pre-2021 amount even if the declared homestead was recorded before 2021. *See In re Zall*, No. BAP.EC-05-1476-MOSB, 2006 WL 6811022, at *4 (B.A.P. 9th Cir., Sept. 5, 2006). This allows debtors to claim the increased homestead exemption despite a previously declared, pre-2021 homestead exemption. In *Zall*, the Court held exemption law in effect on date of Chapter 13 petition determines available exemptions—not exemptions under state law at the time judgment lien was recorded. "[L]imiting the exemption to the amounts available on the dates that judgment liens attach is inconsistent with section 522(f). . . . In order to determine the amount of an exemption that Debtors could claim if there were no liens on the property, the court must look not to the time the lien was fixed but rather to the time the trustee's hypothetical levy became effective, which is the date Debtors filed their bankruptcy petition." *See In re Zall*, No. BAP.EC-05-1476-MOSB, 2006 WL 6811022, at *4 (B.A.P. 9th Cir., Sept. 5, 2006).

      C. The *Barclay vs. Boskoski*, 2022 WL 16911862 (9th Cir. November 14, 2022) Decision is the Controlling Authority, and Mandates that the Court Use Debtor's Petition Date to Determine the Amount of His Exemption

On November 14, 2022, in *Barclay vs. Boskoski*, 2022 WL 16911862 (9th Cir. November 14, 2022), the United States Court of Appeals for the Ninth Circuit found that the bankruptcy court correctly applied the $600,000 homestead exemption in effect on the filing date of the bankruptcy petition, rather than the significantly lower homestead exemption available when the judgment lien was recorded seven years prior. As a result, the judgment lien was avoided in its entirety.

In 2014, Greek Village, LLC, Konstantinos Manassakis, and Aimilia Manassakis recorded a $256,075.95 judgment lien ("Greek Village Judgment Lien") against Debtor Dejan Boskoski's Carlsbad, California home. Because the debtor was married in 2014,

7

the maximum homestead exemption applicable to the Greek Village Judgment Lien was $100,000. See Cal. Civ. Proc. Code § 704.730 (2013). Following the perfection of the judgment, in 2021 California amended its exemption statute to allow debtors to claim the greater of (1) the "median sale price for a single-family home" in the debtor's county the year before the debtor claims the exemption, "not to exceed" $600,000; or (2) $300,000. See Cal. Civ. Proc. Code § 704.730(a) (2021).

In August 2021 (seven years after the Greek Village Judgment Lien was perfected and eight months after California enacted the new homestead exemption), the debtor filed a chapter 7 case. The debtor claimed the $600,000 homestead exemption in his schedules and sought to avoid the Greek Village Judgment Lien, which exceeded $477,000 as of the petition date. The debtor argued that the Bankruptcy Code required the court to look to the exemption the debtor could have claimed, but for the lien, at the time he filed his bankruptcy petition, not when the judgment lien was created. The Greek Village Judgment Lien therefore impaired his homestead exemption by $543,897.20, as the home was subject to two deeds of trust totaling $551,720.47, the Greek Village Judgment Lien, and the $600,000 homestead exemption. In total, these equaled $1,629,647.20, an amount exceeding the value of the debtor's home by $543,897.20. The Chapter 7 trustee objected, arguing that the maximum homestead exemption available to the debtor was $100,000 because under California law the exemption the debtor could claim was fixed at the 2014 amount. See Cal. Civ. Proc. Code § 703.050(a).

The bankruptcy court agreed with the debtor's argument that the exemption amount is fixed on the date of filing the petition. Because the bankruptcy court believed it to be a "close call on an important question," the decision was immediately certified to the Ninth Circuit as a case of first impression. 2022 WL 16911862 at *6. The Ninth Circuit affirmed the decision of the bankruptcy court and held that the debtor's exemption amount was fixed on the date the petition was filed.

8

The Ninth Circuit based its decision on the meaning of 11 U.S.C. Section 522(f), which provides that a debtor may avoid a judgment lien to the extent that the lien "impairs an exemption to which the debtor would have been entitled." Boskoski, 2022 WL 16911862 at * 8 (emphasis in original). In interpreting Section 522(f), the panel reviewed the U.S. Supreme Court's decision Owen v. Owen, 500 U.S. 305 (1991), in which it held that an exemption is fixed on the date of filing the petition. The Ninth Circuit acknowledged that in Owen the Supreme Court held that Section 522(f) established that the "baseline" against which impairment should be measured is not the exemption to which a debtor "is entitled" but is the exemption to which a debtor "would have been entitled." Id. Relying on Owen, the panel therefore held that in deciding whether a judgment lien impairs a debtor's California homestead exemption under Section 522(f), the Bankruptcy Code requires courts to determine the amount of the exemption to which the debtor would have been entitled in the absence of the lien at issue. The Ninth Circuit also noted that the exemptions available to the debtor are generally fixed as of the filing date of the bankruptcy petition, citing White v. Stump, 266 U.S. 310, 313 (1924) (describing the "snapshot rule"). Boskoski, 2022 WL 16911862 at *4.

The Debtor's instant Chapter 11 case was filed on September 19, 2022. Based on the controlling authority in *Barclay vs. Boskoski*, 2022 WL 16911862 (9th Cir. November 14, 2022), the Debtor is entitled to the homestead exemption available to him on the petition date, and not the homestead exemption on the date of the recordation of Belgium's lien.

///
///
///
///
///

9

1

### III.   <u>CONCLUSION</u>

WHEREFORE, Debtor asks for an order overruling Belgium's Objection to

Debtor's Claimed Homestead Exemption, and for any further relief deemed necessary

and proper.

DATED: December 28, 2022        LAW OFFICES OF MICHAEL JAY BERGER

By:_____
Michael Jay Berger
Counsel for Debtor-in-Possession
Bassem Victor El Mallakh

10

## DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare and state as follows:

1.      I am the Debtor. I am over the age of 18. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      The Rockefeller Property is my primary residence. My current Chapter 11 case and my previously filed Chapter 13 case both listed the Rockefeller Property as my primary residence, as do my tax returns, bank statements, car insurance declaration and mortgage payoff statement. A true and correct copy of my Chapter 13 Voluntary Petition, first pages of my prepetition 2019-2022 tax returns, my car insurance policy, my prepetition bank statement, and my mortgage payoff statement all addressed to me at the Rockefeller Property indicating my primary residence is the Rockefeller Property are attached hereto as **Exhibit "1."**

3.      The lease agreement between my sister and I does not bar me from living in the Rockefeller Property as my primary residence. I am leasing part of the Rockefeller Property to my sister who pays me rent. I am also living in the Rockefeller Property. Belgium's res judicata argument that another Court purportedly made a finding that the

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on December 28, 2022 at___Irvine_____.

_____
Bassem Victor El Mallakh

11

EXHIBIT 1

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA

Case number *(if known)*

Chapter you are filing under:

☐ Chapter 7
☐ Chapter 11
☐ Chapter 12
■ Chapter 13

☐ Check if this is an amended filing

# Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy
02/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- |
| **1. Your full name**<br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Bassem**<br>First name<br><br>**Essam**<br>Middle name<br><br>**El Mallakh**<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names. | | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-3012 | |

Case 8:22-bk-11158-TA    Doc 1    Filed 07/12/22    Entered 07/12/22 22:35:39    Desc
Main Document    Page 2 of 12

Debtor 1    **Bassem Essam El Mallakh**                                      Case number *(if known)*

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

☑ I have not used any business name or EINs.

Business name(s)

EIN

☐ I have not used any business name or EINs.

Business name(s)

EIN

**5. Where you live**

**116 Rockefeller**
**Irvine, CA 92612**
Number, Street, City, State & ZIP Code

**Orange**
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

County

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

Check one:

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Check one:

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1    **Bassem Essam El Mallakh**                                    Case number *(if known)*

---

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7.** The chapter of the Bankruptcy Code you are choosing to file under

*Check one. (For a brief description of each, see Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)). Also, go to the top of page 1 and check the appropriate box.*

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

**8.** How you will pay the fee

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** Have you filed for bankruptcy within the last 8 years?

■ No.

☐ Yes.

| District | | When | | Case number |
|---|---|---|---|---|
| District | | When | | Case number |
| District | | When | | Case number |

**10.** Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?

■ No

☐ Yes.

| Debtor | | | Relationship to you |
|---|---|---|---|
| District | | When | Case number, if known |
| Debtor | | | Relationship to you |
| District | | When | Case number, if known |

**11.** Do you rent your residence?

■ No.    Go to line 12.

☐ Yes.    Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

Case 8:22-bk-11158-TA    Doc 1    Filed 07/12/22    Entered 07/12/22 22:35:39    Desc
Main Document    Page 4 of 12

Debtor 1    **Bassem Essam El Mallakh**                                        Case number *(if known)*

---

<span style="background:black;color:white">Part 3:</span>    **Report About Any Businesses You Own as a Sole Proprietor**

**12.  Are you a sole proprietor of any full- or part-time business?**

■ No.    Go to Part 4.

☐ Yes.    Name and location of business

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

Name of business, if any

Number, Street, City, State & ZIP Code

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

*Check the appropriate box to describe your business:*

☐    Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐    Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐    Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐    Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐    None of the above

**13.  Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

*For a definition of small business debtor, see 11 U.S.C. § 101(51D).*

■ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

<span style="background:black;color:white">Part 4:</span>    **Report If You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention**

**14.  Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

■ No.

☐ Yes.    What is the hazard?

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

If immediate attention is needed, why is it needed?

Where is the property?

Number, Street, City, State & Zip Code

---

Debtor 1    **Bassem Essam El Mallakh**    Case number *(if known)*

| Part 5: | **Explain Your Efforts to Receive a Briefing About Credit Counseling** |

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**
*You must check one:*

■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.
If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**
*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1   **Bassem El Mallakh**                                                     Case number *(if known)*

**Part 6:**   **Answer These Questions for Reporting Purposes**

| | | |
|---|---|---|
| 16. | What kind of debts do you have? | 16a. | **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

16b.  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

16c.  State the type of debts you owe that are not consumer debts or business debts

17.  **Are you filing under Chapter 7?**

■ No.   I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ Yes.  I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

18.  **How many Creditors do you estimate that you owe?**

■ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

19.  **How much do you estimate your assets to be worth?**

■ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,000 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

20.  **How much do you estimate your liabilities to be?**

■ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,000 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**Part 7:**   **Sign Below**

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Bassem Essam El Mallakh**
Signature of Debtor 1

Signature of Debtor 2

Executed on **7/12/2022**
MM / DD / YYYY

Executed on _____
MM / DD / YYYY

Official Form 101                    Voluntary Petition for Individuals Filing for Bankruptcy                    page 6

Debtor 1    **Bassem Essam El Mallakh** _____    Case number *(if known)* _____

For your attorney, if you are
represented by one

If you are not represented by
an attorney, you do not need
to file this page.

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

_____    Date    7/12/2022
Signature of Attorney for Debtor                MM / DD / YYYY

**Benjamin Heston**
Printed name

_____
Firm name

**100 Bayview Circle, Suite 100**
**Newport Beach, CA 92660**
Number, Street, City, State & ZIP Code

Contact phone   **951-290-2827**        Email address    **bheston.ecf@gmail.com**

**297798 CA**
Bar number & State

Form **1040**
Department of the Treasury — Internal Revenue Service (99)
**U.S. Individual Income Tax Return**  **2021**    OMB No. 1545-0074    IRS Use Only — Do not write or staple in this space.

| Filing Status | [X] Single | ☐ Married filing jointly | ☐ Married filing separately (MFS) | ☐ Head of household (HOH) | ☐ Qualifying widow(er) (QW) |
|---|---|---|---|---|---|

Check only one box. If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent ▶

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Bassem El Mallakh | | 3012 |

If joint return, spouse's first name and middle initial | Last name | Spouse's social security number

Home address (number and street) If you have a P.O. box, see instructions. | Apt. no.

116 Rockefeller

City, town, or post office. If you have a foreign address, also complete spaces below. | State | ZIP code

Irvine, CA 92612

Foreign country name | Foreign province/state/county | Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
☐ You  ☐ Spouse

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency?  ☐ Yes  [X] No

**Standard Deduction**  Someone can claim:  ☐ You as a dependent  ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You:  ☐ Were born before January 2, 1957  ☐ Are blind  Spouse:  ☐ Was born before January 2, 1957  ☐ Is blind

**Dependents** (see instructions):

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies for (see instructions): |  |
|---|---|---|---|---|
| | | | Child tax credit | Credit for other dependents |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

If more than four dependents, see instructions and check here ▶ ☐

Attach Sch. B if required.

| | | | | |
|---|---|---|---|---|
| 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 1 | |
| 2a | Tax-exempt interest | 2a | b Taxable interest | 2b | 3. |
| 3a | Qualified dividends | 3a | b Ordinary dividends | 3b | |
| 4a | IRA distributions | 4a | b Taxable amount | 4b | |
| 5a | Pensions and annuities | 5a | b Taxable amount | 5b | |
| 6a | Social security benefits | 6a | b Taxable amount | 6b | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | | 7 | |
| 8 | Other income from Schedule 1, line 10 | | 8 | |
| 9 | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** ▶ | | 9 | 3. |
| 10 | Adjustments to income from Schedule 1, line 26 | | 10 | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** ▶ | | 11 | 3. |

**Standard Deduction for —**
• Single or Married filing separately, $12,550
• Married filing jointly or Qualifying widow(er), $25,100
• Head of household, $18,800
• If you checked any box under *Standard Deduction*, see instructions.

| | | | | |
|---|---|---|---|---|
| 12a | Standard deduction or itemized deductions (from Schedule A) | 12a | 12,550. | |
| b | Charitable contributions if you take the standard deduction (see instructions) | 12b | | |
| c | Add lines 12a and 12b | | 12c | 12,550. |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | | 13 | |
| 14 | Add lines 12c and 13 | | 14 | 12,550. |
| 15 | Taxable income. Subtract line 14 from line 11. If zero or less, enter -0- | | 15 | 0. |

**BAA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    Form **1040** (2021)

FDIA0112L  12/10/21

Form **1040**  Department of the Treasury — Internal Revenue Service  (99)  **2019**   OMB No. 1545-0074   IRS Use Only — Do not write or staple in this space.
U.S. Individual Income Tax Return

**Filing Status**  [X] Single  [ ] Married filing jointly  [ ] Married filing separately (MFS)  [ ] Head of household (HOH)  [ ] Qualifying widow(er) (QW)

Check only one box.  If you checked the MFS box, enter the name of spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent.  ▶

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Bassem El Mallakh | | 3012 |

| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |
|---|---|---|
| | | |

Home address (number and street). If you have a P.O. box, see instructions.   Apt. no.
116 Rockefeller

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).
Irvine, CA 92612

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|
| | | |

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund.
Checking a box below will not change your tax or refund.   [ ] You  [ ] Spouse

If more than four dependents, see instructions and ✓ here ▶ [ ]

**Standard Deduction**   Someone can claim:  [ ] You as a dependent  [ ] Your spouse as a dependent
[ ] Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**   You:  [ ] Were born before January 2, 1955  [ ] Are blind   Spouse:  [ ] Was born before January 2, 1955  [ ] Is blind

**Dependents** (see instructions):

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies for (see instructions): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | | |
|---|---|---|---:|
| **1** | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | |
| **2a** | Tax-exempt interest . . . . . . . . . . **2a** | **b** Taxable int. Att. Sch. B if reqd. . . . . | **2b** | 5. |
| **3a** | Qualified dividends . . . . . . . . . **3a** | **b** Ordinary div. Att. Sch. B if reqd. . . . . | **3b** | |
| **4a** | IRA distributions . . . . . . . . **4a** | **b** Taxable amount . . . . . . . . . . . | **4b** | |
| **c** | Pensions and annuities . . . . . **4c** | **d** Taxable amount . . . . . . . . . . . | **4d** | |
| **5a** | Social security benefits . . . . . . **5a** | **b** Taxable amount . . . . . . . . . . . | **5b** | |
| **6** | Capital gain or (loss). Attach Schedule D if required. If not required, check here . . . . . . . . . . . . . . . . ▶ [ ] | **6** | |
| **7a** | Other income from Schedule 1, line 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7a** | |
| **b** | Add lines 1, 2b, 3b, 4b, 4d, 5b, 6, and 7a. This is your **total income** . . . . . . . . . . . . . . ▶ | **7b** | 5. |
| **8a** | Adjustments to income from Schedule 1, line 22 . . . . . . . . . . . . . . . . . . . . . | **8a** | |
| **b** | Subtract line 8a from line 7b. This is your **adjusted gross income** . . . . . . . . . . . . . . . . . . ▶ | **8b** | 5. |

**Standard Deduction for —**
• Single or Married filing separately, $12,200
• Married filing jointly or Qualifying widow(er), $24,400
• Head of household, $18,350
• If you checked any box under Standard Deduction, see instructions.

| | | | |
|---|---|---|---:|
| **9** | Standard deduction or itemized deductions (from Schedule A) . . . . . . . . . . **9**  12,200. | | |
| **10** | Qualified business income deduction. Attach Form 8995 or Form 8995-A . . . . . . **10** | | |
| **11a** | Add lines 9 and 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | 12,200. |
| **b** | **Taxable income.** Subtract line 11a from line 8b. If zero or less, enter -0- . . . . . . . . . . . . . . . . | **11b** | 0. |

**BAA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**   Form 1040 (2019)

FDIA0112L  10/07/19



# INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB

## MEMBERS' CONDOMINIUM OWNERS POLICY – FORM 6
## PROPERTY INSURANCE POLICY DECLARATIONS
### Evidence of Insurance
Policy contains 438BFU, printed on next page, in favor of Mortgagee shown.

| | |
|---|---|
| **MORTGAGEE**<br>ADDITIONAL OWNERS INTEREST<br>US TRUSTEE<br>UNITED STATES TRUSTEE (SA)<br>411 W FOURTH ST SUITE 7160<br>SANTA ANA CA 92701 | **LOAN NUMBER**<br><br>**POLICY NUMBER**<br>████████20189 |
| **NAMED INSURED AND MAILING ADDRESS**<br>BASSEM EL MALLAKH<br>116 ROCKEFELLER<br>IRVINE CA 92612 | **LOCATION OF PREMISES (IF DIFFERENT FROM MAILING ADDRESS)** |

| | |
|---|---|
| ☐ **PROPERTY INSURANCE POLICY DECLARATIONS**<br>EFFECTIVE DATE OF THIS POLICY 10262022    12:01 A.M.<br>(PACIFIC STANDARD TIME)<br>EXPIRATION DATE OF THIS POLICY 10262023    12:01 A.M.<br>(PACIFIC STANDARD TIME)<br><br>**ANNUAL PREMIUM $** | **COVERAGES AND LIMITS OF LIABILITY**<br><br>**PART I - PROPERTY COVERAGES**<br><br>COVERAGE A – BUILDING PROPERTY          82000<br><br>OTHER PERILS DEDUCTIBLE          5000<br><br>WATER DEDUCTIBLE          5000 |
| ☐ **AMENDMENT OF PROPERTY INSURANCE DECLARATIONS**<br>**ENDORSEMENT**<br>EFFECTIVE DATE          12:01 A.M<br>(PACIFIC STANDARD TIME)<br>EXPIRATION DATE OF THE POLICY          12:01 A.M.<br>(PACIFIC STANDARD TIME) | |

**PROVISIONS**
This form is not a contract of insurance  The provisions of the policy shall prevail in all respects. All premiums for the insurance policy shall be computed in accordance with the Interinsurance Exchange of the Automobile Club rules, forms, premiums and minimum premiums applicable to the insurance afforded which are in effect at the inception of the insurance policy and upon each anniversary thereof, including the date of interim changes. The insurance policy does not become effective unless and until escrow closes, the named insured has an ownership interest in the residence premises, and the premium is paid or reserved in an escrow account. If the insurance protection evidenced herein terminates, the mortgagee will be given notice in accordance with the standard mortgage clause (438BFU)

*ACSC Management Services, Inc.*
**ATTORNEY-IN-FACT**

**FOR QUESTIONS OR CHANGES CALL**
8720 01/16

.......................................................................... **DETACH HERE AND RETURN WITH PREMIUM PAYMENT** ...................... .. ......



INTERINSURANCE EXCHANGE of the
Automobile Club of Southern California
MAILING ADDRESS: P.O. Box 25448 SANTA ANA, CALIFORNIA 92799-5448

**NOTICE OF
PREMIUM DUE**

| **LOAN NUMBER** | **POLICY NUMBER**<br>CHO183020189<br><br>**DUE DATE** | **PLEASE PAY THE PREMIUM<br>DUE BEFORE OR ON THE<br>DUE DATE** |
|---|---|---|
| **BASSEM EL MALLAKH**<br>116 ROCKEFELLER | **PREMIUM DUE** | **MAKE CHECK PAYABLE TO<br>ACSC** |

# Wells Fargo Combined Statement of Accounts

September 30, 2022 ■ Page 1 of 6



BASSEM VICTOR EL MALLAKH
116 ROCKEFELLER
IRVINE CA 92612-8114

### Questions?

*Available by phone 24 hours a day, 7 days a week.*
We accept all relay calls, including 711

**1-800-742-4932**

*En español:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

---

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| Service | | Service | |
|---|---|---|---|
| Online Banking | ☐ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☐ | Overdraft Protection | ☐ |
| Mobile Banking | ☐ | Debit Card | ☐ |
| My Spending Report | ☐ | Overdraft Service | ☑ |

---

**Other Wells Fargo Benefits**

**From Wells Fargo Home Mortgage**

Is a home purchase in your future? Competitive rates and low down payment options make now a great time to buy a home. Plus, as a Wells Fargo customer, you can count on personalized guidance and streamlined service every step of the way.

Get started with an online mortgage application that can pre-fill your Wells Fargo account information and save you time. Use your Wells Fargo Online® username and password at the start of the application. Go to wellsfargo.com/homepurchase or contact your local home mortgage consultant.

Created With Tiny Scanner



**FREEDOM MORTGAGE®**
PO Box 50485, Indianapolis, IN 46250-0485

August 16, 2021

BASSEM ELMALLAKH
116 ROCKEFELLER
IRVINE        CA 92612

## PAYOFF STATEMENT

Loan Number:    ████275          Next Payment Due Date:  February 1, 2020
Borrower:        BASSEM ELMALLAKH

Property:        116 ROCKEFELLER
                 IRVINE        CA 92612

Loan Type:       CONVENTIONAL

### Payoff Quote Good Through September 15, 2021

The accrued interest shown below is projected through September 15, 2021.  After that date, please add an additional $ 13.80 per day.

| Please send the following Remittance: | |
|---|---|
| Current Unpaid Principal | $  201,970.66 |
| Accrued Interest | $  9,657.70 |
| Prepayment Penalty | $   0.00 |
| Escrow/Impound Required | $ 12,564.30 |
| Mortgage Insurance Premium Due | $ 0.00 |
| Less Escrow/Impound Funds | $ -  0.00 |
| Less Unapplied Funds Balance | $   0.00 |
| Statement Fee | $   30.00 |
| Unpaid Late Charges | $   60.14 |
| Recording Fee | $  168.00 |
| Release Fee | $   0.00 |
| Additional Items Due | $   75.00 |
| Deferred Balance | $.00 |
| Optional Insurance | $   0.00 |
| **TOTAL PAYOFF DUE:** | $  224,525.80 |

A Deferred Balance may include items such as deferred Principal Balance, Late Charges, Escrow Advances, Expense Advances and Administrative Fees.

The current escrow balance is $-12,564.30. Any escrow payments scheduled to disburse prior to the payoff expiration date will be deducted from the total escrow balance. If the scheduled disbursement creates a negative balance in the escrow account, these funds will appear as an escrow advance and included in the total payoff due.  Available escrow funds will be returned to the borrower within 14 business days from the date the loan is paid in full.

261



FREEDOM MORTGAGE
PO Box 50485, Indianapolis, IN 46250-0485

*When applicable, any escrow funds credited toward the total payoff will not be returned.*

The information shown on this statement is subject to change. To ensure that you are submitting sufficient funds to pay your account in full, please contact our Customer Care Department for updated figures prior to remitting payoff funds. If your loan is referred to foreclosure this payoff statement will no longer be valid, therefore, a new payoff statement will need to be requested.

### WHERE TO SUBMIT PAYOFF FUNDS

**WIRE TRANSFER**
Freedom Mortgage Corporation
Reference: Payoff/Payment Department
Keybank, 127 Public Square, Cleveland, OH
ABA: 041001039
Bank Account █████████ 8402
Borrower Name: BASSEM ELMALLAKH
Loan Number: ████████ 4275

**OVERNIGHT DELIVERIES OF PAYMENTS**
Freedom Mortgage Corporation
ATTN: Payoff Department
10500 Kincaid Drive, Suite 111
Fishers, Indiana 46037-9764

*Please note that Freedom Mortgage requires payoffs to be received in the form of certified funds. Personal checks will not be accepted. Additionally, Freedom Mortgage will only accept funds to pay off the account in full. Payoff funds received that are not sufficient to pay the loan account in full will be returned.*
*Incoming wire transfers received by 4pm EST will be credited the same day. Wires received after that time will be processed on the next business day. Please ensure that all payoff funds submitted include the borrower's name and loan number.*

Customer Care representatives are available to assist you at (855) 690-5900 Monday through Friday from 8:00am – 10:00pm and Saturday from 9:00am – 6:00pm Eastern Time.

**FREEDOM MORTGAGE CORPORATION IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IMPORTANT NOTICE: TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED IN BANKRUPTCY, IS SUBJECT TO THE AUTOMATIC STAY OR IS PROVIDED FOR IN A CONFIRMED PLAN, THIS COMMUNICATION IS FOR REGULATORY COMPLIANCE AND/OR INFORMATIONAL PURPOSES ONLY, AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION.**

----------------------------------------------------------------------------------------

### Change of Address Notification Form

Is your mailing address changing as a result of this payoff request? Please let us know your new address below in order to ensure all trailing documents are sent to the appropriate address. Please return this form to:

Freedom Mortgage P.O. Box 50428 Indianapolis IN 46250-0401

**New Address:** _____ **City/State/Zip** _____

**Loan Number:** 0113204275

261

# CHASE ⬤

JP Morgan Chase Bank, N.A.
PO Box 659754
San Antonio, TX 78265-9754

**Questions?**

◻ chase.com

📞 1-800-935-9935

We accept operator relay calls

10/28/2022

**BASSEM V ELMALLAKH**
**116 ROCKEFELLER**
**IRVINE, CA 92612-8114**

## Update:    We closed your account

Your account ending in 7832

*Dear Bassem Elmallakh*

Thank you for your recent inquiry about your account. We closed your account above on 09/20/2022.
If you have questions, please call us at 1-800-935-9935 or visit any of our branches.

*Sincerely,*

**Customer Service**

©2019 JPMorgan Chase Bank, N.A. Member FDIC
M1008-01 (09/19)

Created With Tiny Scanner

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO BELGIUM INVESTMENTS 960 BAY DR, LLC'S OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION; DECLARATION OF BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/28/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On 12/28/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/28/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/28/2022 | Peter Garza | /s/Peter Garza |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
# "21"

1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Blvd. 6th Floor
   Beverly Hills, CA 90212-2929
3  Telephone:    (310) 271-6223
   Facsimile:    (310) 271-9805
4  michael.berger@bankruptcypower.com

5  Counsel for Debtor,
   Bassem Victor El Mallakh

6

7              UNITED STATES BANKRUPTCY COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9                  SANTA ANA DIVISION

10 In re:                          )  CASE NO.: 8:22-bk-11605-TA
                                   )
11 BASSEM VICTOR EL MALLAKH,       )  Chapter 11
                                   )
12                                 )  **DEBTOR'S OPPOSITION TO**
                                   )  **MOTION BY UNITED STATES**
13         Debtor and Debtor-in-Possession. )  **TRUSTEE TO DISMISS AND/OR**
                                   )  **CONVERT CASE TO CHAPTER 7;**
14                                 )  **DECLARATION OF BASSEM**
                                   )  **VICTOR EL MALLAKH IN SUPPORT**
15                                 )  **THEREOF**
                                   )
16                                 )
                                   )  Date:    March 15, 2023
17                                 )  Time:    10:00 a.m.
                                   )  Place:   411 West Fourth Street
18                                 )           Courtroom 5B
                                   )           Santa Ana, CA 92701
19                                 )
                                   )  Via Tele/Videoconference on Zoom
20                                 )
                                   )
21 ────────────────────────────────)

22

23     **TO THE HONORABLE THEODOR C. ALBERT, CHIEF JUDGE OF THE**

24 **UNITED STATES BANKRUPTCY COURT, TO THE UNITED STATES**

25 **TRUSTEE, TO DEBTOR'S CREDITORS AND TO ALL INTERESTED**

26 **PARTIES:**

27

28

                                   1

1    Bassem Victor El Mallakh (the "Debtor") herein, respectfully submits his

2    Opposition to the Motion of the United States Trustee ("UST") to Dismiss and/or

3    Convert Case to Chapter 7 (the "Motion to Dismiss") as follows:

4    I.    Introduction

5    Debtor asks that UST's Motion to Dismiss be denied in full on the basis that the

6    deficiencies identified by the UST have been addressed and cured. Without cause, there

7    is no reason and no grounds for the Court to grant the Motion to Dismiss.

8    II.    Debtor Has Filed All Outstanding Monthly Operating Reports

9    On February 21, 2023, Debtor filed his monthly operating report for the month of

10    December, 2022 [docket no. 126]. The same day, Debtor filed his monthly operating

11    report for January, 2023 [docket no. 127]. This delay in filing monthly operating reports

12    has not caused any harm or prejudice to the creditors, so the Court should not find the

13    Debtor in breach of his fiduciary duty, and should not find cause for dismissal or

14    conversion under § 1112(b)(4)(F).

15

16    III.    Debtor Has Paid The Quarterly Fee To The UST

17    Debtor paid the required $250.00 quarterly fee to the UST, for the fourth quarter

18    of 2022, on December 7, 2022. A true and correct copy of Debtor's payment

19    confirmation showing the $250.00 quarterly fee payment to the UST is attached hereto as

20    "Exhibit 1." The Court should not find failure to pay fees as a cause for dismissal or

21    conversion under § 1112(b)(4)(K).

22    IV.    Debtor Is Making Progress On A Plan Of Reorganization

23    Debtor's counsel, the Law Offices of Michael Jay Berger ("Debtor's Counsel"),

24    voluntarily dismissed its Motion to Withdraw as Bankruptcy Counsel on February 27,

25    2023 [docket no. 131]. Debtor and Debtor's Counsel are cooperating and working

26    together.

27    Debtor is progressing toward reorganization. Debtor continues to seek

28    employment, and continues to collect rental income. If Debtor is not able to obtain

2

employment by the Effective Date of his proposed reorganization plan, he will obtain contributions from his parents to make the proposed plan payments feasible. Contribution declarations from Debtor's parents will be submitted in support of the Disclosure Statement.

The Disclosure Statement and Plan of Reorganization will be filed timely by March 14, 2023. Debtor is in the process of obtaining declarations from witnesses in support of Debtor's Motion to Avoid Belgium Investment's Lien, and to oppose Belgium Investment's Opposition to Debtor's Claimed Homestead Exemption, which are set for an evidentiary hearing on March 23, 2023. Debtor, through counsel, is meeting and conferring with Belgium Investment's counsel regarding deposition dates.

V.    Conclusion

WHEREFORE, Debtor asks for an order denying UST's Motion to Dismiss, and for any further relief deemed necessary and proper.


DATED: March 1, 2023    LAW OFFICES OF MICHAEL JAY BERGER


By:   /s/Michael Jay Berger
Michael Jay Berger
Counsel for Debtor-in-Possession
Bassem Victor El Mallakh

## DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare and state as follows:

1.      I am the Debtor. I am over the age of 18. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      I ask that UST's Motion to Dismiss be denied in full on the basis that the deficiencies identified by the UST have been addressed and cured. Without cause, there is no reason and no grounds for the Court to grant the Motion to Dismiss.

3.      On February 21, 2023, I filed my monthly operating report for the month of December, 2022 [docket no. 126]. The same day, I filed my monthly operating report for January, 2023 [docket no. 127]. As far as I am aware, this delay in filing monthly operating reports has not caused any harm or prejudice to the creditors.

4.      I paid the required $250.00 quarterly fee to the UST, for the fourth quarter of 2022, on December 7, 2022. A true and correct copy of my payment confirmation showing the $250.00 quarterly fee payment to the UST is attached hereto as "Exhibit 1."

5.      My counsel, the Law Offices of Michael Jay Berger ("Debtor's Counsel"), voluntarily dismissed its Motion to Withdraw as Bankruptcy Counsel on February 27, 2023 [docket no. 131]. My Counsel and I are cooperating and working together.

6.      I will timely file a disclosure statement and plan of reorganization, per the Court's February 23, 2023 Order extending the deadline to file to March 14, 2023.

7.      I am progressing toward reorganization. I continue to seek employment, and I continue to collect rental income.

8.      If I am not able to obtain employment by the Effective Date of hmy proposed reorganization plan, I will obtain contributions from my parents to make the proposed plan payments feasible. Contribution declarations from my parents will be submitted in support of the Disclosure Statement.

4

9.     The Disclosure Statement and Plan of Reorganization will be filed timely by March 14, 2023.

10.     I am in the process of obtaining declarations from witnesses in support of my Motion to Avoid Belgium Investment's Lien, and to oppose Belgium Investment's Opposition to Debtor's Claimed Homestead Exemption, which are set for an evidentiary hearing on March 23, 2023. Through counsel, I am meeting and conferring with Belgium Investment's counsel regarding deposition dates.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on March 1, 2023 at___Irvine, CA___.


_____
Bassem Victor El Mallakh

5

# EXHIBIT 1

12/6/22, 3:01 PM



Your payment request has been submitted to the U.S. Trustee Program through Pay.gov and the details are below. To confirm that the payment processed successfully, refer to your bank account statement. If you have any questions you will need to contact the local U.S. Trustee Office for the case.

# Confirmation

Your payment has been submitted to the designated government agency through Pay.gov and the details are below. Please note that this is just a confirmation of transaction submission. To confirm that the payment processed as expected, you may refer to your bank statement on the scheduled payment date. If you have any questions or wish to cancel this payment, you will need to contact the agency you paid at your earliest convenience.

## Tracking Information

Pay.gov Tracking ID: 272P00DT

Agency Tracking ID: 76329021597

Form Name: U.S. Trustee Chapter 11 Quarterly Fee

Application Name: Chapter 11 Quarterly Fee

## Payment Information

Payment Type: Bank account (ACH)

Payment Amount: $250.00

Transaction Date: 12/06/2022 05:40:03 PM EST

Payment Date: 12/07/2022

Line 1: Remittance #1 - Type: Individual, Account: 7382211605, Name: bassem elmallakh, $250.00

Line 2:

Line 3:

Line 4:

Line 5:

Line 6:

Line 7:

Line 8:

Line 9:

Line 10:

## Account Information

Account Holder Name: bassem elmallakh

Routing Number: 322271627

Account Number: ************5650

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO MOTION BY UNITED STATES TRUSTEE TO DISMISS AND/OR CONVERT CASE TO CHAPTER 7; DECLARATION OF BASSEM VICTOR EL MALLAKH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __3/1/2023__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On __3/1/2023__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Bassem Victor El Mallakh
116 Rockerfeller
Irvine, CA 92612

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/1/2023__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/1/2023 | Peter Garza | /s/Peter Garza |
|----------|-------------|----------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## 2.  SERVED BY UNITED STATES MAIL:

**SECURED CREDITORS**

**Belgium Investments 960 Bay Dr, LLC**
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S Oak Avenue
Pasadena, CA 91107

**Central Park West Community Association**
c/o Tinnelly Law Group
27101 Puerta Real, Suite 250
Mission Viejo, CA 92691

**Central Park West Community HOA**
401 Rockefeller #208
Irvine, CA 92612

**Central Park West Community HOA**
Alterra Assessment Recovery, LLC
27101 Puerta Real, Ste. 250
Mission Viejo, CA 92691 (Address from POC)

**First Service Residential**
15241 Laguna Canyon Rd.
Irvine, CA 92618

**First Service Residential**
c/o Community Legal Advisors
509 N. Coast Highway
Oceanside, CA 92054

**Freedom Mortgage**
951 Yamato Rd.
Boca Raton, FL 33431

**Freedom Mortgage**
PO Box 50428
Indianapolis, IN 46250

**Freedom Mortgage Corporation**
1455 Frazee Road, Suite 820
San Diego, CA 92108

**INTERNAL REVENUE SERVICE**
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346 (Address from POC)

**TD Auto Finance**
6 Atlantis Way
Lewiston, ME 04240

**Td Auto Finance**
Attn: Bankruptcy
Po Box 9223
Farmington Hills, MI 48333

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**TD Bank, N.A.**
successor in interest to TD Auto Finance
P.O. Box 16041
Lewiston, ME 04243

**TD Bank N.A.**
c/o CTGD&W
Attn: Randall P. Mroczynski, Esq.
535 Anton Blvd., 10th Fl.
Costa Mesa, CA 92626 (Address from POC)

**The Tones at Central**
Pak West Ass
15241 Laguna Canyon Rd
Irvine, CA 92618

**The Townes at Central Park West Association**
c/o Community Legal Advisors Inc.
509 N. Coast Highway
Oceanside, CA 92054 (Address from POC)

**20 LARGETS UNSECURED CREDITORS:**

**Wells Fargo Bank NA**
1 Home Campus Mac X2303-01a
3rd Floor
Des Moines, IA 50328

**Wells Fargo Bank, N.A.**
Wells Fargo Card Services
PO Box 10438, MAC F8235-02F
Des Moines, IA 50306-0438 (Address from POC)

**Wells Fargo Bank, N.A.**
Small Business Lending Division
P.O. Box 29482 MAC S4101-08C
Phoenix, AZ 85038

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
## "22"

EXHIBIT 3



**EXHIBIT
"23"**

1  MICHAEL JAY BERGER (State Bar # 100291)
2  SOFYA DAVTYAN (State Bar # 259544)
   LAW OFFICES OF MICHAEL JAY BERGER
3  9454 Wilshire Blvd. 6th Floor
   Beverly Hills, CA 90212-2929
4  Telephone:    (310) 271-6223
   Facsimile:    (310) 271-9805
5  E-mail: Michael.Berger@bankruptcypower.com
   E-mail: Sofya.Davtyan@bankruptcypower.com
6
7  Attorney for Debtor and Plan Proponent
   Bassem Victor El Mallakh

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SANTA ANA DIVISION

11  In re:                          )  CASE NO.: 8:22-BK-11605-TA
12                                  )
                                    )  Chapter 11
13                                  )
                                    )  **DEBTOR'S DISCLOSURE STATEMENT**
14  Bassem Victor El Mallakh,       )  **DESCRIBING CHAPTER 11 PLAN OF**
                                    )  **REORGANIZATION**
15                                  )
                                    )
16              Debtor-in-Possession.)  Continued Status Hearing
17                                  )
                                    )  Date:   March 23, 2023
18                                  )  Time:   10:00 a.m.
                                    )  Ctrm:   5B [via ZoomGov]
19                                  )          411 West Fourth Street
                                    )          Santa Ana, CA 92701-4593
20                                  )
21                                  )
                                    )
22  _____)

23  ///
24  ///
25  ///
26  ///
27  ///
28

                                1
     DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## Table of Contents

I.  INTRODUCTION ................................................................................................. 5

   A.  PURPOSE OF THIS DOCUMENT ................................................................ 5

   B.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN
CONFIRMATION HEARING ............................................................................... 6

   C.  TIME AND PLACE OF THE CONFIRMATION HEARING ............................. 6

   D.  DEADLINE FOR OBJECTION TO THE CONFIRMATION OF THE PLAN .... 7

   E.  IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION
REGARDING THE PLAN ................................................................................... 7

   F.  IMPORTANT NOTICES AND CAUTIONARY STATEMENTS ........................ 7

II.  BACKGROUND ................................................................................................ 8

   A.  DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS .................... 8

   B.  PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS ................................. 10

   C.  MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE
BANKRUPTCY ................................................................................................ 10

EVENTS LEADING TO THE CHAPTER 11 FILING ............................................ 10

   D.  SIGNIFICANT EVENTS DURING THE BANKRUPTCY ............................... 10

      i.   *Bankruptcy Proceedings* ........................................................................ 10

      ii.  *Claims Objections* ................................................................................. 12

      iii. *Adversary Proceedings* ........................................................................... 13

      iv.  *Procedures Implements to Resolve Financial Problems* ........................... 13

      v.   *Current and Historical Financial Conditions* ......................................... 13

III.  SUMMARY OF THE PLAN OF REORGANIZATION ........................................... 13

   A.  GENERAL OVERVIEW ................................................................................ 13

B.    UNCLASSIFIED CLAIMS ................................................................................. 13

    *i.    ADMINISTRATIVE EXPENSES* ............................................................... 13

    *ii.    PRIORITY TAX CLAIMS* ........................................................................ 14

C.    CLASSIFIED CLAIMS ................................................................................... 15

**Class 1 – Secured Claims** ....................................................................................... 15

**Class 2 - General Unsecured Claims** ...................................................................... 17

D.    MEANS OF PERFORMING THE PLAN........................................................ 17

    i.    *Funding for the Plan* ............................................................................... 17

    ii.    *Management of the Reorganized Debtor* ................................................. 18

    iii.    *Disbursing Agent* .................................................................................... 18

E.    RISK FACTORS .............................................................................................. 18

F.    SECTION 1111(B) ELECTION ...................................................................... 18

G.    OTHER PROVISIONS OF THE PLAN .......................................................... 19

    1.    EXECUTORY CONTACTS AND UNEXPIRED LEASES .......................................... 19

    *i.    Assumptions* ............................................................................................. 19

    *ii.    Rejections* ................................................................................................ 19

H.    TAX CONSEQUENCES OF THE PLAN ........................................................ 19

I.    CONFIRMATION REQUIREMENTS AND PROCEDURES ................................. 19

    1.    WHO MAY VOTE OR OBJECT ........................................................................ 20

    i.    *Who May Object to Confirmation of the Plan* ......................................... 20

    ii.    *Who May Vote to Accept or Reject the Plan* ........................................... 20

    a.    *What is an Allowed Claim or Interest* ..................................................... 20

    b.    *What is an Impaired Claim or Interest* .................................................... 21

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

iii.    *Who is Not Entitled to Vote* .................................................................................. 21

iv.    *Who Can Vote in More Than One Class* .............................................................. 22

v.     *Votes Necessary to Confirm the Plan* ................................................................. 22

vi.    *Votes Necessary for a Class to Accept the Plan* ................................................ 22

vii.   *Treatment of Non-Accepting Classes* ................................................................. 22

viii.  *Request for Confirmation Despite Non-Acceptance by Impaired Classes* ............... 22

ix.    *Absolute Priority Rule* ........................................................................................ 23

2.  **LIQUIDATION ANALYSIS** ............................................................................... 23

3.  **FEASIBILITY** ....................................................................................................... 24

J.  **EFFECT OF CONFIRMATION OF PLAN** ........................................................ 25

   1.  **EFFECTIVE DATE** ....................................................................................... 25

   2.  **DISCHARGE** ................................................................................................. 25

   3.  **REINVESTING OF PROPERTY IN THE DEBTOR** .................................... 25

   4.  **MODIFICATION OF THE PLAN** ................................................................. 26

   5.  **POST-CONFIRMATION STATUS REPORT** ................................................ 26

   6.  **QUARTERLY FEES** ..................................................................................... 26

   7.  **POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF
       REORGANIZED DEBTOR'S PROFESSIONALS** ...................................... 26

   8.  **POST-CONFIRMATION CONVERSION/DISMISSAL** ................................ 27

   9.  **FINAL DECREE** ........................................................................................... 27

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## I.    INTRODUCTION

Debtor, Bassem Victor El Mallakh (the "<u>Debtor</u>"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced his bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "<u>Bankruptcy Code</u>") on September 19, 2022. He is hereinafter referred to as the "<u>Debtor</u>." This document is the Disclosure Statement in Support of Chapter 11 Plan of Reorganization (the "<u>Disclosure Statement</u>"). Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a Chapter 11 Plan of Reorganization. Debtor is the proponent (the "<u>Proponent</u>") of the Chapter 11 Plan of Reorganization (the "<u>Plan</u>") sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

In summary, this is a reorganizing plan that provides for payment to holders of allowed claims over time. The timing of plan payments to particular creditors will depend upon their classifications under the Plan. ***The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month.***

### A.  <u>PURPOSE OF THIS DOCUMENT</u>

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:</u>

(1) **WHO CAN VOTE OR OBJECT;**

(2) **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

5

**(3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING**

**THE BANKRUPTCY;**

**(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER**

**OR NOT TO CONFIRM THE PLAN;**

**(5) WHAT IS THE EFFECT OF CONFIRMATION;**

**(6) WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should

consider consulting your own legal counsel to obtain more specific advice on how this Plan will

affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any

inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires the Disclosure Statement to contain "adequate information"

concerning the Plan. The Bankruptcy Court (the "Court") has approved this document as an

adequate Disclosure Statement, containing enough information to enable parties affected by the

Plan to make an informed judgment about the Plan. Any party can now solicit votes for or

against the Plan.

**B.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN**

**CONFIRMATION HEARING**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE

PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**C.  TIME AND PLACE OF THE CONFIRMATION HEARING**

The hearing where the Court will determine whether or not to confirm the Plan will take

place on **TBD** in Courtroom 5B of the United States Bankruptcy Court located at 411 West

Fourth Street, Santa Ana, California 92701-4593.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

**D. DEADLINE FOR OBJECTION TO THE CONFIRMATION OF THE PLAN**

Objections to the confirmation of the Plan must be filed with the Court and served so that any objections are actually received by counsel for the Debtor by **TBD.**

**E. IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION REGARDING THE PLAN**

Any interested party desiring further information about the Plan should contact counsel for the Debtor: Michael Jay Berger or Sofya Davtyan, with the Law Offices of Michael Jay Berger, 9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212, Telephone: (310) 271-6223, or by electronic mail at Michael.Berger@bankruptcypower.com or Sofya.Davtyan@bankruptcypower.com.

**DISCLAIMER**

The financial data relied upon in formulating the Plan is based on the Debtor's monthly operating report summary, attached hereto as **Exhibit-D** and the contribution from Debtor's father to assist with the proposed plan payments. The Debtor represents that the information contained in this Disclosure Statement is true and correct to the Debtor's best knowledge. The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether you should support or oppose the Plan.

**F. IMPORTANT NOTICES AND CAUTIONARY STATEMENTS**

The liquidation analysis, estimates and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtor with the assistance of its professional advisors. Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial and accounting data provided by the Debtor and third parties, all of which information has not been audited. *The Debtor's professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.* Moreover, although reasonable efforts have been made to provide accurate

information, the Debtor cannot warrant or represent that the information in this Disclosure

Statement, including any and all financial information, is without inaccuracy or omission.

*No entity may rely upon the Plan or this Disclosure Statement, or any of the*

*accompanying exhibits, for any purpose other than to determine whether to vote in favor of or*

*against the Plan.* Nothing contained in such documents constitutes an admission of any fact or

liability by any party, and no such information may be deemed evidence of the tax or other legal

effects of the Plan on holders of claims or interests in these cases.

## II.   BACKGROUND

### A. DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS

On September 19, 2022, Bassem Essam Victor El Mallakh (the "Debtor") filed the

present Chapter 11 bankruptcy petition.  Debtor had one prior chapter 13 bankruptcy case filed

on July 12, 2022, Case No.: 8:22-bk-11158-TA, which was dismissed on July 26, 2022 per

Debtor's Request for Voluntary Dismissal.

The Debtor holds title to the following real property which is the Debtor's principal

residence: 116 Rockefeller, Irvine, California 92612 ("Property").

The Property has a scheduled value of $1,120,000.00 and is encumbered by the following

four secured obligations:

- Freedom Mortgage Corporation (1st TD Holder) with a claim of $243,078.15
  [POC #8].
- Belgium Investments 960 Bay Dr, LLC (2nd position judgment lienholder) with a
  claim of $5,436,919.76 [POC #9] which arose from a state court judgment in the
  matter entitled *Belgium Investments 960 Bay Dr, LLC v. Bassem Essam El
  Mallakh*, Orange County Case No.: 30-2020-01148745-CU-EN-CJC.
- The Townes at Central Park West Association (3rd position lienholder) with a
  claim of $7,276.60 [POC #3] with an Abstract of Judgment recorded on February
  9, 2022; and

- Central Park West Community Association (4th position lienholder) with a claim of $2,878.93 [POC #6] for delinquent assessments with a Notice of Delinquent Assessment recorded on May 16, 2022.

The Debtor currently collects $4,000.00 in rental income from the Property, part of which is being rented to Debtor's sister who lives in the Property with her son. The Debtor is still actively seeking a full-time employment. Until an employment is secured, Debtor's father is willing and able to provide a financial contribution to help Debtor meet the obligations proposed under the Chapter 11 Reorganization Plan.

The principal assets of the estate are the Debtor's Property with a scheduled value of $1,120,000.00 and personal property assets with a combined scheduled value of approximately $113,144.00. The list of the property of the estate and the valuation as of the Plan Confirmation Date is attached hereto as **Exhibit-A**.

The principal liabilities of the estate are the secured claims on the Debtor's Property with claims totaling $5,690,153.44 and a car loan owed to TD Auto Finance with an outstanding balance of $6,732.97. The list of the secured creditors is attached hereto as **Exhibit B-1**. The Debtor has one priority IRS tax claim with a nominal claim amount of $27.97 (see **Exhibit B-2**) and general unsecured claims totaling $5,209,476.19. The list of the unsecured nonpriority general creditors is attached hereto as **Exhibit B-3**.

The major event that precipitated the filing of the Debtor's Chapter 11 bankruptcy was the pending foreclosure sale of the Property initiated by judgment creditor Belgium Investments.

The Debtor's 5-year projected Income and Expense Statement is attached hereto as **Exhibit-C**.

Debtor's summary of the monthly operating reports is attached hereto as **Exhibit- D.**

The liquidation analysis is attached hereto as **Exhibit-E.**

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

**B. PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS**

This is not applicable as this is an individual case.

**C. MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE BANKRUPTCY**

This is not applicable as this is an individual case.

**EVENTS LEADING TO THE CHAPTER 11 FILING**

The major event that precipitated the filing of the Debtor's Chapter 11 bankruptcy was the pending foreclosure sale of the Property initiated by judgment creditor Belgium Investments.

**D. SIGNIFICANT EVENTS DURING THE BANKRUPTCY**

i.   *Bankruptcy Proceedings*

Debtor initiated the presented bankruptcy by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on September 19, 2022 [docket no.: 1]. On September 27, 2022, the outstanding schedules and statement of financial affairs were filed with the court [docket no.: 18]. On November 8, 2022, Debtor filed an Amended Schedules A/B [docket no.: 51].

On September 27, 2022, Debtor filed a Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay ("Motion to Continue Stay") [docket no.: 20]. On October 4, 2022, Creditor Belgium Investments 960 Bay Dr, LLC a California Corporation ("Belgium") filed an opposition to Debtor's Motion to Continue Stay with supporting exhibits [docket nos.: 25 and 26]. On October 11, 2022, Debtor filed a reply to Belgium's opposition [docket no.: 27]. On October 18, 2022, Debtor through counsel appeared at the hearing on the Motion to Continue Stay. On October 25, 2022, the Court entered the order granting Debtor's Motion to Continue Stay [docket no.: 35].

On September 28, 2022, Debtor filed the Notice of Motion and Motion in Individual Chapter 11 Case for Order Employing General Bankruptcy Counsel ("Employment

10

Application") [docket no.: 23]. On October 19, 2022, the Court entered the order granting the

Employment Application [docket no.: 33].

On October 12, 2022, Debtor filed the Initial Status Report [docket no.: 28]. On

November 23, 2022, Debtor filed Status Conference #2 [docket no.: 60]. On December 7, 2022,

Debtor through counsel appeared at the continued status hearing.

On October 25, 2022, Debtor filed a Notice of Bar Date for Filing Proofs of Claim

[docket no.: 37].

On November 4, 2022, Creditor TD Auto Finance LLC ("TD Finance" aka "TD Bank")

filed a Motion for Relief from Stay – Personal Property ("Relief from Stay") [docket no.: 44]. On

November 8, 2022, Debtor entered into a Stipulation with TD Finance [docket no.: 49] which

was approved by the court [docket no.: 50].

On November 23, 2022, Belgium filed a Motion Objecting to Debtor's Claimed

Homestead Exemption ("Objection to Homestead") [docket no.: 55]. On December 28, 2022,

Debtor filed an opposition to Belgium's Motion Objection to Debtor's Homestead [docket no.:

81].

On November 23, 2022, Debtor filed a Motion to Avoid Judicial Lien with Belgium

Investments 960 Bay Dr., LLC ("Motion to Avoid Lien") [docket no.: 59]. Belgium filed an

opposition to Debtor's Motion to Avoid Lien, On January 4, 2023, Debtor filed a reply to

Belgium's Opposition [docket no.: 85].

On November 30, 2022, Belgium filed a Motion to Convert Case from Chapter 11 to

Chapter 7 ("Motion to Convert") [docket no.: 67]. On December 7, 2022, Debtor filed an

opposition to the Motion to Convert [docket no.: 73]. On December 21, 2023, Debtor through

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

1    counsel appeared at the hearing on the Motion to Convert. On January 3, 2023, the Court entered

2    the order denying the Motion to Convert [docket no.: 82].

3        On January 9, 2023, Debtor filed a Motion to Extend Exclusivity Period for Filing

4    Chapter 11 Plan and Disclosure Statement [docket no.: 87]. On February 9, 2023, the Court

5    entered an order granting Debtor's Motion to Extend the Exclusivity Period through and

6

7    including April 28, 2023 [docket no.: 110].

8        On January 25, 2023, Debtor filed an Application for Compensation of Debtor's

9    Bankruptcy Counsel ("Fee Application") [docket no.: 97].  On February 16, 2023, the Court

10   entered an order granting the Fee Application [docket no.: 120].

11       On February 8, 2023, Debtor filed an *Ex Parte* Application to Extend Deadline to File

12   Disclosure Statement and Plan of Reorganization ("*Ex Parte* Application to Extend Deadline")

13   [docket no.: 105].  On February 13, 2023, Belgium filed an Opposition to Debtor's *Ex Parte*

14   Application to Extend Deadline [docket no.: 116].  On February 23, 2023, the Court entered an

15   order granting *Ex Parte* Application to Extend Deadline for filing the Plan and Disclosure

16   Statement from March 1, 2023 to March 14, 2023 [docket no.: 128].

17       On February 17, 2023, US Trustee filed a Motion to Dismiss or Convert Case to Chapter

18   7 [docket no.: 121]. On March 1, 2023, Debtor filed an Opposition to US Trustee's Motion to

19   Dismiss or Convert Case [docket no.: 133, refiled as docket no.: 134]. On March 8, 2023, OUST

20   filed an Reply to Debtor's Opposition [docket no.: 135]. The Hearing on OUST Motion to

21   Dismiss or Convert is set to be heard on March 15, 2023 at 10:00 a.m.

22       On March 9, 2023, Debtor filed an updated status report with the court [docket no.: 140].

23       The hearings for Debtor's Lien Avoidance Motion, Belgium's Motion Objecting to

24   Debtor's Claimed Homestead Exemption, and Continued Status Hearing are all scheduled to be

25   heard on March 23, 2023 at 10:00 a.m.

26   ii.    *Claims Objections*

27       The claims bar date was December 24, 2023. The court has not set a deadline for filing

28   any objections to the claims.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

iii.    *Adversary Proceedings*

None.

iv.    *Procedures Implements to Resolve Financial Problems*

Debtor filed this case in order to reduce his obligations and to reorganize.

v.    *Current and Historical Financial Conditions*

Debtor's income and expense projection for the five-year period of the Plan is attached

hereto as **Exhibit C.**

## III.    SUMMARY OF THE PLAN OF REORGANIZATION

### A. GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various

categories and classes according to the nature and legal rights associated with such claims and

interests. The Plan designates which classes are impaired and which classes are unimpaired. The

Plan also describes the treatment each class will receive under the Plan. The Proponent will ask

the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b) on any impaired

classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be

confirmed.

### B. UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified.

Holders of unclassified claims are not considered impaired and not entitled to vote on the Plan;

rather the holders of unclassified, unimpaired claims and interests are automatically entitled to

specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and

are not entitled to vote on the Plan:

### i.    *ADMINISTRATIVE EXPENSES*

Administrative expenses are claims for costs or expenses of administering the Debtor's

Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1). The Bankruptcy Code

requires that all administrative claims be paid on the Effective Date of the Plan, unless a

13

particular claimant agrees to a different treatment. The following is an estimate of the §507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $30,000.00 (estimated); subject to court approval | To be paid upon approval of the fee application, unless an alternate agreement is reached between Debtor and Debtor's Bankruptcy Counsel. |
| Clerk's Office Fees | $0.00 (estimated) | Paid when due. |
| Office of the U.S. Trustee | $250.00 (estimated). Actual amount to be determined per quarter. | Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |

### Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court. Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

*ii.* ***PRIORITY TAX CLAIMS***

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8). The Code requires that each holder of such a §507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the petition date.

Debtor has the following priority tax claims:

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

(1) Internal Revenue Service: $27.97 [POC #5]. This claim will be paid in full in one lump-sum payment on the Effective Date at the applicable interest rate, currently 7%. See **Exhibit B-2**.

## C. CLASSIFIED CLAIMS

### Class 1 – Secured Claims

### CLASS 1(A)

**Claim/Collateral:** Freedom Mortgage Corporation ("Freedom Mortgage") holds a claim secured by Debtor's principal residence located at 116 Rockefeller, Irvine, CA 92612 (the "Property") for $243,078.15 [POC #8]. The claim includes $63,820.41 in pre-petition arrears.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor has been making the post-petition regular mortgage payments to Freedom Mortgage and will stay current with the monthly contractual payments, currently $1,961.41. Debtor also proposes to cure the pre-petition arrears of $63,820.41 over 60 months by tendering equal monthly payments of $1,063.67 each, with the first payment of $1,063.67 due on the first of the month following the effective date, and continuing monthly for an additional 59 months until the arrears are paid in full.

### CLASS 1(B)

**Claim/Collateral:** Belgium Investments 960 Bay Dr. LLC ("Belgium") filed a claim secured through a recorded abstract of judgment against Debtor's Property for $5,436,919.76 [POC #9]. Belgium's POC #9 acknowledges the value of Debtor's Property at $1,120,000.00, bifurcates its own claim into $876,921.85 secured claim and $4,559,997.91 unsecured claim.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Through the Plan, Debtor bifurcates Belgium's claim into $250,521.85[1] secured claim ("secured claim") and $5,186,397.91 as a general unsecured claim. Debtor proposes to

---

[1] Debtor has a pending motion to avoid Belgium's Lien per 11 U.S.C. Section 522(f) which is set for a hearing on March 23, 2023 concurrently with Belgium's Motion Objecting to Debtor's Claimed Homestead Exemption. The value of $250,521.85 is computed by deducting the balance owed to Freedom Mortgage from the value of the Property ($1,120,000.00 which Belgium did not dispute

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

pay Belgium's $250,521.85 secured claim over 60 months from the effective date at 10% interest, by offering monthly payments of $5,322.85, with the first payment of $5,322.85 due on the effective date, followed by 59 consecutive payments thereafter, each in the amount of $5,322.85, until the secured claim is paid in full.

**CLASS 1(C)**

**Claim/Collateral:** TD Bank, N.A., successor in interest to TD Auto Finance LLC ("TD Bank") holds a claim secured by Debtor's 2016 Mercedes C300 for $6,732.97 [POC #2]. POC #2 reflects $6,392.74 in pre-petition arrears.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor entered into a Stipulation with TD Bank for Resolution of Motion for Relief From the Automatic Stay, For Maintenance of Adequate Protection Payments and For Resolution of Claim Treatment Issues ("TD Stipulation") [docket no.: 49], and order approving TD Stipulation [docket no.: 50]. A true and correct copies of the TD Stipulation and order approving TD Stipulation are attached hereto as **Exhibit-F**, and the terms of the TD Stipulation are incorporated herein by this reference. Pursuant to TD Stipulation, Debtor shall pay TD Bank the secured claim of $6,732.97 at 8.25% interest rate. Debtor shall make monthly pre-confirmation adequate protection payments and post-confirmation plan payments to TD Bank in the amount of $211.76 commencing November 15, 2022 and continuing on the 9th day of each month thereafter until the secured claim is paid in full.

## SECURED CLAIMS WHICH ARE FULLY UNDERSECURED AND TREATED IN CLASS 2 AS GENERAL UNSECURED CLAIMS

1. **The Townes at Central Park West Assn** ("Townes") filed a claim secured by Debtor's Property in the amount of $7,276.60 [POC #3], which claim arises from February 4, 2022 judgment with the abstract of judgment recorded on February 9, 2022. Since Townes'

and in fact used in its proof of claim #9) less the Debtor's homestead exemption, which reduced Belgium's lien to $250,521.85. The Property has two additional junior liens, The Townes at Central Park West Assn [POC #3] and Central Park West Community Association [POC #6], both of which are being avoided through the plan as they are junior to Belgium's claim and are fully undersecured.

16

claim is junior to Belgium's abstract of judgment which was recorded on November 9, 2020, it is fully undersecured, is avoided through Debtor's Plan, and treated in Class 2 as a general unsecured claim.

2. **Central Park West Community Association** ("Central Park") filed a claim secured by Debtor's Property in the amount of $2,878.93 [POC #6], which claim arises from a notice of delinquent assessment which was recorded on May 16, 2022. Since Central Park's claim is junior to Belgium's abstract of judgment which was recorded on November 9, 2020, it is fully undersecured, is avoided through Debtor's Plan, and treated in Class 2 as a general unsecured claim.

## Class 2 - General Unsecured Claims

**Claim:**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). In the present case, the Debtor estimates that there are approximately $5,209,476.19 in general unsecured debts. **See Exhibit B-3 for details regarding the treatment of each creditor's claim.** General unsecured claims classified in **Class 2** will receive a total of approximately 1.25%[2] of their claims in monthly payments over 60 months.

**Impaired/Not Impaired:** Impaired.

**Treatment**: Holders of General Unsecured Claims will receive their pro-rata share of $1,085.56 per month for 60 months for a total of $65,133.76. The first payment of $1,085.56 will be due on the Effective Date, followed by 59 consecutive monthly payments thereafter, with each payment due by the first of the month.

### D. MEANS OF PERFORMING THE PLAN

i. *Funding for the Plan*

---

[2] See the Absolute Priority Rule section for further analysis re New Value Contribution and Exhibit-E (liquidation analysis).

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

The Debtor will fund the Plan from the rental income and the contribution from his father (Essam El Mallakh) until Debtors finds an employment, at which time the contribution will either end or will be reduced as needed.  See **Exhibit C.**

ii.    *Management of the Reorganized Debtor*

This provision is not applicable as this is an individual case.

iii.    *Disbursing Agent*

Debtor shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. He shall not be compensated for performing these services.

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be re-vested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

## E.  **RISK FACTORS**

The Plan contemplates payments to certain classes of creditors over time following the Effective Date. The Debtor believes that he will be able to meet all of his financial obligations under the Plan because he intends to continue to receive the rental income from his sister and the family contribution from his father. When Debtor finds an employment, the contribution will either seize or will be reduced as needed. The contributions to be provided by Debtor's father are gift contributions to the Debtor, for which no repayment will be sought from the Debtor.

## F.  **SECTION 1111(B) ELECTION**

Under §1111(b) of the Bankruptcy Code, a creditor holding a nonrecourse claim or a partially secured creditor may elect to be considered a full recourse creditor. Holders of secured claims are advised to consult their own counsel to evaluate whether it is in their best interest to make the election. Federal Rule of Bankruptcy Procedure 3014 states that such election must be made prior to the conclusion of the hearing on the Disclosure Statement.

## G. **OTHER PROVISIONS OF THE PLAN**

### 1. EXECUTORY CONTACTS AND UNEXPIRED LEASES

*i.    Assumptions*

The Debtor is a party to a Retail Installment Sale Contract with TD Bank for the 2016 Mercedes C300.  Debtor intends to retain the vehicle and assume the contract.

*ii.    Rejections*

Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date. Debtor does not have any unexpired leases or executory contracts it intends to reject.

### RETENTION OF JURISDICTION

The Court will retain jurisdiction over this bankruptcy case until a final decree is entered by the Court. At that time the bankruptcy case will be closed.

## H. **TAX CONSEQUENCES OF THE PLAN**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability. The Debtor makes no representations regarding the potential tax consequences to creditors.

## I. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

### 1. **WHO MAY VOTE OR OBJECT**

i.    *Who May Object to Confirmation of the Plan*

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

ii.    *Who May Vote to Accept or Reject the Plan*

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified as an impaired class.

a.    *What is an Allowed Claim or Interest*

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING PROOFS OF CLAIM IN THIS CASE WAS ON DECEMBER 24, 2022.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult **Exhibits "B-1 through B-3"** to see how the Debtor has characterized your claim or interest.

b. *What is an Impaired Claim or Interest*

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that Class 1(A), Class 1(B), Class 1(C) and Class 2 are impaired and that holders of claims in these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponents have incorrectly characterized the class.

iii. *Who is _Not_ Entitled to Vote*

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to § 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to § 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

1   EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE
2   A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

3       iv.     *Who Can Vote in More Than One Class*

4           A creditor whose claim has been allowed in part as a secured claim and in part as an
5   unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for
6   the secured part of the claim and another ballot for the unsecured claim.

7       v.      *Votes Necessary to Confirm the Plan*

8           If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one
9   impaired class has accepted the Plan without counting the votes of any insiders within that class,
10  and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be
11  confirmed by "cramdown" on non-accepting classes, as is discussed later.

12      vi.     *Votes Necessary for a Class to Accept the Plan*

13          A class of claims is considered to have accepted the Plan when more than one-half (1/2)
14  in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted
15  in favor of the Plan. A class of interests is considered to have accepted the Plan when at least
16  two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept
17  the Plan.

18      vii.    *Treatment of Non-Accepting Classes*

19          As noted above, even if all impaired classes do not accept the proposed Plan, the Court
20  may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required
21  by the Code. The process by which nonaccepting classes are forced to be bound by the terms of
22  the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed
23  down" on nonaccepting classes of claims or interests if it meets all consensual requirements
24  except the voting requirements of §1129(a)(8) and if the Plan does not "discriminate unfairly"
25  and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as
26  referred to in 11 U.S.C. § 1129(b) and applicable case law.

27      viii.   *Request for Confirmation Despite Non-Acceptance by Impaired Classes*

22

Proponent will ask the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

ix.    *Absolute Priority Rule[3]*

The Plan cannot be confirmed by the Bankruptcy Court if it violates the absolute priority rule. That rule is set forth in 11 U.S.C. §1129(b)(2)(B)(ii). Debtor's Plan violates the Absolute Priority Rule in that the owner retains his interest even though the general unsecured creditors are not being paid in full. The Absolute Priority Rule applies only if the unsecured class, as a group, votes against confirmation of the Plan.

The Solicitation package has not been mailed out yet. As such, it is premature to say if the general unsecured creditor class, as a group, will vote for or against the confirmation of the Plan. Notwithstanding this, the Debtor's Disclosure Statement and the Plan provide more to general unsecured creditor class than what these creditors would have received under a Chapter 7 liquidation analysis. As such, the requirement of the Best Interest of the Creditors is met. Nonetheless, to satisfy the Absolute Priority Rule and to preserve Debtor's interest in the assets, Debtor's father (Essam El Mallakh) agrees to inject a one-time new value contribution of $7,000.00 on the Effective Date to satisfy the Absolute Priority Rule. With the $7,000.00 new value contribution, the percentage distribution to general unsecured creditors will increase from 1.11% to 1.25%, which equates to an increased distribution from $58,133.76 to $65,133.76 over 60 months.

## 2. <u>LIQUIDATION ANALYSIS</u>

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

---

[3] Absolute Priority Rule is briefly discussed in the Disclosure Statement but is a confirmation related issue. A more detailed analysis of Absolute Priority Rule will be provided in Debtor's confirmation motion.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here as indicated in **Exhibit-E.**

As is illustrated in <u>Exhibit-E</u> herein, the liquidation analysis demonstrates that in a Chapter 7 scenario, the general unsecured creditors would have received 1.11% which is less than what the Debtor is proposing to pay these general unsecured creditors through the Plan.

The Debtor's Plan pays $65,133.76 over 60 months (approximately 1.25 %) to unsecured creditors which is more than creditors would receive in a Chapter 7 . Wherefore, the Debtor's Plan satisfies the Best Interest Test.

### 3. **FEASIBILITY**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two (2) important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. Debtor will have sufficient funds available from its business operation to make the required payments on the Effective Date. See the attached income and expense projections which contain details on these payments, **Exhibit-C.**

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required plan payments. The Debtor believes that it will have sufficient cash on hand in order to meet its obligations under the Plan. Debtor has provided a budget of its projected income and expenses in **Exhibit-C.**

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

## J.  EFFECT OF CONFIRMATION OF PLAN

### 1.  EFFECTIVE DATE

The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan. Debtor's Plan proposes payments to be made on the Effective Date followed by consecutive monthly payments thereafter beginning on the first day of the following month.

### 2.  DISCHARGE

Debtor is eligible for a discharge when the payments proposed under the Plan are completed.

### 3.  REINVESTING OF PROPERTY IN THE DEBTOR

Except as provided elsewhere in the Plan, the confirmation of the Plan re-vests all of the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without

supervision or consent of the Bankruptcy Court and is free of any restrictions of the Bankruptcy

Code or Bankruptcy Rules.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action,

rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the

Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the

Debtor's legal and equitable rights respecting any such claim which is not specifically waived,

extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

### 4. <u>**MODIFICATION OF THE PLAN**</u>

Debtor may modify the Plan pursuant to 11 U.S.C. §1127.

### 5. <u>**POST-CONFIRMATION STATUS REPORT**</u>

Within one hundred and twenty (120) days following the entry of the Plan Confirmation

Order, the Reorganized Debtor shall file a status report with the Court explaining what progress

has been made toward consummation of the confirmed Plan. The status report shall be served on

the United States Trustee, the twenty (20) largest unsecured creditors, and those parties who have

requested special notice after the Effective Date. Further status reports shall be filed every one

hundred and twenty (120) days or as directed by the Court and served on the same entities.

### 6. <u>**QUARTERLY FEES**</u>

The Reorganized Debtor shall be responsible for the timely payment of all fees incurred

after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6).

### 7. <u>**POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF**</u>
### <u>**REORGANIZED DEBTOR'S PROFESSIONALS**</u>

After the Confirmation Date, the Reorganized Debtor may employ, without notice,

hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals

(the "Post-confirmation Professionals") as he may desire to render services on such terms as he

deems reasonable. With respect to services rendered by the Post-Confirmation Professionals, the

Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses

without notice, hearing, or order of the Bankruptcy Court.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

In the event there is a default by Debtor in the payment of fees to Law Offices of Michael Jay Berger ("Berger"), Berger will give the Debtor notice of the default by electronic mail and advise the Debtor that it has ten (10) days to cure the default. If Debtor does not cure within that time period, Berger will be permitted to accelerate the balance due at the time and enforce the order of this Court approving the fees by whatever means are available to it, including the costs and expenses related to the recording of the order and costs of collection. Berger shall not be required to get any further approval of this Court for payments related to outstanding fees.

Berger and Debtor are permitted to communicate and agree to payment of Berger's administrative claim on an expedited basis.

## 8.  POST-CONFIRMATION CONVERSION/DISMISSAL

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within one hundred and eighty (180) days after the entry of the order of confirmation.

## 9.  FINAL DECREE

The Debtor reserves the right to request an entry of the Final Decree once the Plan has been substantially consummated.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Dated: March 14, 2023              LAW OFFICES OF MICHAEL JAY BERGER

                                   By: _____
                                       MICHAEL JAY BERGER
                                       SOFYA DAVTYAN
                                       Attorneys for Debtor and Plan Proponent
                                       Bassem Essem El Mallakh

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## DECLARATION OF BASSEM VICTOR EL MALLAKH

I, Bassem Victor El Mallakh, declare as follows:

1.      I am the Debtor-In-Possession (the "Debtor"). I am over the age of eighteen. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.      On September 19, 2022, I filed the present Chapter 11 bankruptcy petition. Debtor had one prior chapter 13 bankruptcy case filed on July 12, 2022, Case No.: 8:22-bk-11158-TA, which was dismissed on July 26, 2022 per Debtor's Request for Voluntary Dismissal.

3.      I have reviewed the information within the Disclosure Statement, including all financial information. I believe that all information contained in the Disclosure Statement is true and correct and fairly presented, to the best of my knowledge.

4.      I hold a title to the following real property which is my principal residence: 116 Rockefeller, Irvine, California 92612 ("Property").

5.      The Property has a scheduled value of $1,120,000.00 and is encumbered by the following four secured obligations:

- Freedom Mortgage Corporation (1st TD Holder) with a claim of $243,078.15 [POC #8].

- Belgium Investments 960 Bay Dr, LLC (2nd position judgment lienholder) with a claim of $5,436,919.76 [POC #9] which arose from a state court judgment in the matter entitled *Belgium Investments 960 Bay Dr, LLC v. Bassem Essam El Mallakh*, Orange County Case No.: 30-2020-01148745-CU-EN-CJC.

- The Townes at Central Park West Association (3rd position lienholder) with a claim of $7,276.60 [POC #3] with an Abstract of Judgment recorded on February 9, 2022; and

- Central Park West Community Association (4th position lienholder) with a claim of $2,878.93 [POC #6] for delinquent assessments with a Notice of Delinquent Assessment recorded on May 16, 2022.

29

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

6.      I currently collect $4,000.00 in rental income from the Property, part of which is being rented to my sister who lives in the Property with her son. I am still actively seeking a full-time employment. Until an employment is secured, my father Essam El Mallakh is willing and able to provide a financial contribution to help me meet the obligations proposed under the Chapter 11 Reorganization Plan.

7.      The principal assets of my bankruptcy estate are the Property with a scheduled value of $1,120,000.00 and personal property assets with a combined scheduled value of approximately $113,144.00. The list of property of my bankruptcy estate and the valuation as of the Plan Confirmation Date is attached hereto as **Exhibit A**.

8.      The principal liabilities of the estate are the secured claims on my Property with claims totaling $5,690,153.44 and a car loan owed to TD Auto Finance with an outstanding balance of $6,732.97. The list of the secured creditors is attached hereto as **Exhibit B-1**.

9.      I have one priority IRS tax claim with a nominal claim amount of $27.97 (see **Exhibit B-2**) and general unsecured claims totaling $5,209,476.19. The list of the unsecured nonpriority general creditors is attached hereto as **Exhibit B-3**.

10.     The major event that precipitated the filing of this Chapter 11 bankruptcy was the pending foreclosure sale of the Property initiated by judgment creditor Belgium Investments.

11.     My 5-year projected Income and Expense Statement is attached hereto as **Exhibit-C**.

12.     The summary of the monthly operating reports is attached hereto as **Exhibit- D**. The liquidation analysis is attached hereto as **Exhibit-E**.

13.     I entered into a Stipulation with TD Bank for Resolution of Motion for Relief From the Automatic Stay, For Maintenance of Adequate Protection Payments and For Resolution of Claim Treatment Issues ("TD Stipulation") [docket no.: 49], and order approving

TD Stipulation [docket no.: 50]. A true and correct copies of the TD Stipulation and order approving TD Stipulation are attached hereto as **Exhibit-F**, and the terms of the TD Stipulation are incorporated herein by this reference. Pursuant to TD Stipulation, I must pay TD Bank the secured claim of $6,732.97 at 8.25% interest rate. I must make monthly pre-confirmation adequate protection payments and post-confirmation plan payments to TD Bank in the amount of $211.76 commencing November 15, 2022 and continuing on the 9th day of each month thereafter until the secured claim is paid in full.

14.    The Townes at Central Park West Assn ("Townes") filed a claim secured by Debtor's Property in the amount of $7,276.60 [POC #3], which claim arises from February 4, 2022 judgment with the abstract of judgment recorded on February 9, 2022. Since Townes' claim is junior to Belgium's abstract of judgment which was recorded on November 9, 2020, it is fully undersecured, is avoided through Debtor's Plan, and treated in Class 2 as a general unsecured claim.

15.    Central Park West Community Association ("Central Park") filed a claim secured by Debtor's Property in the amount of $2,878.93 [POC #6], which claim arises from a notice of delinquent assessment which was recorded on May 16, 2022. Since Central Park's claim is junior to Belgium's abstract of judgment which was recorded on November 9, 2020, it is fully undersecured, is avoided through Debtor's Plan, and treated in Class 2 as a general unsecured claim.

16.    My general unsecured creditors which are estimated at $5,209,476.19 will receive a 1.25% pro-rata distribution on their allowed claims over 60 months. Monthly payments will be $1,085.56 which will be shared pro-rata amount all allowed general unsecured creditors.

17.    I will act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. I will not be compensated for performing these services.

18.    In addition to providing monthly contributions to me, my father will also contribute a one-time lump sum payment of $7,000.00, to be paid on the effective date, as a New

31

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Value Contribution in order for me to satisfy the Absolute Priority Rule and be able to retain my interest in the assets I own.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this March 14, 2023 in Irvine, California.


_____
Bassem Victor El Mallakh

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

DECLARATION OF ESSAM EL MALLAKH RE NEW VALUE CONTRIBUTION

I, Essam El Mallakh, declare and state as follows:

1.    I am the father of Bassem Victor El Mallakh (the "Debtor") and not a creditor in his bankruptcy case.  I have personal knowledge of the facts set forth herein and if called to testify as to those facts, I could and would competently do so.

2.    I agree to make a one-time New Value Gift Contribution of $7,000.00 ("New Value Contribution") and another contribution of $30,200.00 the Debtor on the Effective Date of his plan confirmation and will not be seeking any repayment from the Debtor of this gift contribution.

3.    I also agree to contribute monthly between $7,000.00 to $7,200.00 to assist the Debtor to meet his obligations under the plan to his creditors until he finds an employment. If his employment income is sufficient to meet all of his obligations, my contribution will cease.  In the alternative, if Debtor's employment income is not sufficient to meet all of his obligations under the Plan, I will continue to contribute the amount necessary to satisfy the deficit during the term of the plan.

4.    I am self-employed.  A copy of my February 2023 bank statement (first page only) evidencing my ability to assist the Debtor with payments is attached hereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on March 14, 2023 at
_____Egypt_____, California.

_____
Essam El Mallakh

1
NEW VALUE CONTRIBUTION DECLARATION

# Wells Fargo® High Yield Savings

February 28, 2023 ■ Page 1 of 4



**WELLS FARGO**

ESSAM EL MALLAKH

### Questions?

*Available by phone 24 hours a day, 7 days a week:*
We accept all relay calls, including 711

**1-800-742-4932**

*En español:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Statement period activity summary

| | |
|---|---:|
| Beginning balance on 2/1 | $54,567.95 |
| Deposits/Additions | 3,791.80 |
| Withdrawals/Subtractions | - 20,162.06 |
| **Ending balance on 2/28** | **$38,197.69** |

Account number:

**ESSAM EL MALLAKH**

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

## Interest summary

| | |
|---|---:|
| Interest paid this statement | $0.80 |
| Average collected balance | $51,935.09 |
| Annual percentage yield earned | 0.02% |
| Interest earned this statement period | $0.80 |
| Interest paid this year | $1.85 |
| Total interest paid in 2022 | $8.82 |

## Transaction history

**EXHIBIT-A**

**(Assets of Debtor and Valuation as of Plan Confirmation)**

# EXHIBIT - A
# BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA
# LIST OF ALL PROPERTY OF THE ESTATE AND VALUATIONS
# AS OF THE PLAN CONFIRMATION DATE

| Property Description | Valuation As of Plan Confirmation | Liquidation Value |
|---|---|---|
| Estimated DIP account balance as of the Effective Date (estimate from January 2023 MOR) | $1,844.00 | $1,844.00 |
| 116 Rockefeller, Irvine, CA 92612 (Townhouse; Debtor's Residence) | $1,120,000.00 | $0.00 (Property is fully encumbered by four secured liens: Freedom Mortgage, Belgium, Townes at Central Park West Assoc., and Central Park West Community Association. Debtor also claimed homestead exemption pursuant to CCP 704.730 for $626,400.00. |
| 2016 Mercedes C300, 42,000 miles | $15,000.00 | $4,642.03 (Valueof the car is $15,000 less secured claim of TD Bank for $6,732.97 less $3,625.00 exemption per CCP 704.010) |
| Home Furnishings | $2,000.00 | $0.00. Fully exempt per CCP 704.020 |
| Televisions, stove, refrigerator, laptop, desk computer, and other miscellaneous items | $3,000.00 | $0.00. Fully exempt per CCP 704.020 |
| Bicycle and Tennis Equipment | $500.00 | $0.00. Fully exempt per CCP 704.020 |
| Clothes and Shoes | $800.00 | $0.00. Fully exempt per CCP 704.020 |
| Debtor has a 10% ownership interest in Belgium Investments 5655 S Troy LLC | $40,000.00 | $40,000.00 |

| Debtor has a 20% ownership interest in Belgium Investments 5544 North Avenue, LLC; Property is under rehabilitation | $50,000.00 | $50,000.00 |
|---|---|---|
| *Total Value for the Assets* | **$1,233,144.00** | **$96,486.03** |

**EXHIBIT-B**

**EXHIBIT B-1**

**(Secured Claims)**

# EXHIBIT B-1
## SECURED CLAIMS
### BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA

| Secured Creditors | Class | Scheduled Amount | Proof of Claim Amount | Pre-Petition Arrearages | Disputed Yes/No | Total Allowed Secured Claim | Amount Paid on the Effective Date (Estimated to be July 2023) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|---|
| **Freedom Mortgage Corporation** **Attn: Payment Processing** 10500 Kincaid Blvd. Fishers, IN 46037 [POC#8] | 1(A) | $243,971.77 | $243,078.15 | $63,820.41 | No | $243,078.15 | $1,961.41 (contractual payment) | $1,961.41 (contractual payment) $1,063.67 (cure of pre-petition arrears) x 60 months = $63,820.41 | Debtor is post-petition current with the contractual payment and proposes to cure the pre-petition arrears over 60 months from the effective date. |
| **Belgium Investments** 960 Bay Dr, LLC, a California Corp. **Patrick Miller -** **Impact Advocates** 121 S. Oak Ave. Pasadena, CA 91107 [POC#9] | 1(B) | $4,345,250.00 | $876,921.85 | n/a | Yes | $250,521.85 | $5,322.85 | $5,322.85 | Bifurcated per homestead exemption and motion to avoid lien: unsecured portion of claim and undersecured portion of secured claim listed on Exhibit B-3. Payment of $250,521.85 is computed at 10% interest rate. |

| Secured Creditors | Class | Scheduled Amount | Proof of Claim Amount | Pre-Petition Arrearages | Disputed Yes/No | Total Allowed Secured Claim | Amount Paid on the Effective Date (Estimated to be July 2023) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|---|
| TD Bank, N.A., successor in interest to TD Auto Finance LLC PO Box 16041 Lewiston, ME 04243 [POC#2] | 1(C) | $6,493.00 | $6,732.97 | $6,392.74 | No | $6,732.97 | $211.76 | $211.76 (in 27 monthly payments from November 2022) | Per stipulation. adequate protection payments of $211.76 due on Nov. 15, 2022 and on every 9th day of the month thereafter. at 8.25% interest rate. Fully paid in 36 months from November 20[...] |
| The Townes at Central Park West Assoc. Community Legal Advisors, Inc. 509 N. Coast Highway Oceanside, CA 92054 [POC#3] | (see comments) | $7,276.60 | $7,276.60 | $7,276.60 | No | (see comments) | n/a | n/a | Judgment obtained Feb. 4, 2022; judgment lien recorded Feb. 9, 2022. Claim is fully undersecured, avoided through the Plan, and treated as a general unsecured claim in Class 2 (see Exhibit B-3). |
| Central Park West Community Association Alterra Assessment Recovery 27101 Puerta Real, Suite 250 Mission Viejo, CA 92691 [POC#6] | (see comments) | $2,878.93 | $2,878.93 | $2,878.93 | No | (see comments) | n/a | n/a | Lien attached on Nov. 16, 2022 with recorded Notice of Delinquent Assessment. Claim is fully undersecured. avoided through the Plan, and treated as a general unsecured claim (see Exhibit B-3). |
| **Total Liabilities** | | **$4,605,870.30** | **$1,136,888.50** | **$80,368.68** | | **$500,332.97** | **$7,496.02** | **$8,559.69** | |

Mortgage Calculator — Auto Loan Calculator — Loan Calculator — Refinance Calculator — Business Loan Calculator

# Loan Amortization Calculator

Are you interested in getting a loan, but you want to know what it will cost you first? Are you looking at a personal loan offer and wondering how much you'll save on interest if you use it to consolidate your credit cards? If so, you can use this loan calculator to answer these questions. Enter your loan amount, interest rate, term, and start date, and this calculator will give you all the information you need nearly instantaneously! You can use this calculator for most loans, including auto loans, personal loans, mortgages, and more! Before you take the money from your lender, see precisely how much it's going to cost you.

Belgium's Claier

Loan Amount:

$ 250,522

**$5,322.85**
Monthly Payment

Interest Rate:

10          %

**$68,849**
Total Interest Paid

Loan Term:

60     months  ⌄

**$319,371**
Total of 60 Payments

Jul, 2023
Loan Closing

Jun, 2028
Loan Payoff

Start Date:

Jul   ⌄   2023  ⌄

⌄

## Amortization Schedule

| Date | Interest | Principal | Balance |
|------|----------|-----------|---------|
| Jul, 2023 | $2,088 | $3,235 | $247,287 |
| Aug, 2023 | $2,061 | $3,262 | $244,025 |
| Sep, 2023 | $2,034 | $3,289 | $240,735 |
| Oct, 2023 | $2,006 | $3,317 | $237,419 |
| Nov, 2023 | $1,978 | $3,344 | $234,074 |
| Dec, 2023 | $1,951 | $3,372 | $230,702 |
| **2023** | **$12,117** | **$19,820** | **$230,702** |
| Jan, 2024 | $1,923 | $3,400 | $227,302 |
| Feb, 2024 | $1,894 | $3,429 | $223,873 |
| Mar, 2024 | $1,866 | $3,457 | $220,416 |
| Apr, 2024 | $1,837 | $3,486 | $216,930 |
| May, 2024 | $1,808 | $3,515 | $213,415 |
| Jun, 2024 | $1,778 | $3,544 | $209,870 |
| Jul, 2024 | $1,749 | $3,574 | $206,296 |
| Aug, 2024 | $1,719 | $3,604 | $202,692 |
| Sep, 2024 | $1,689 | $3,634 | $199,059 |
| Oct, 2024 | $1,659 | $3,664 | $195,395 |
| Nov, 2024 | $1,628 | $3,695 | $191,700 |
| Dec, 2024 | $1,598 | $3,725 | $187,975 |
| **2024** | **$21,147** | **$42,727** | **$187,975** |
| Jan, 2025 | $1,566 | $3,756 | $184,218 |
| Feb, 2025 | $1,535 | $3,788 | $180,431 |
| Mar, 2025 | $1,504 | $3,819 | $176,611 |
| Apr, 2025 | $1,472 | $3,851 | $172,760 |
| May, 2025 | $1,440 | $3,883 | $168,877 |
| Jun, 2025 | $1,407 | $3,916 | $164,962 |
| Jul, 2025 | $1,375 | $3,948 | $161,013 |
| Aug, 2025 | $1,342 | $3,981 | $157,032 |
| Sep, 2025 | $1,309 | $4,014 | $153,018 |
| Oct, 2025 | $1,275 | $4,048 | $148,970 |
| Nov, 2025 | $1,241 | $4,081 | $144,889 |
| Dec, 2025 | $1,207 | $4,115 | $140,774 |
| **2025** | **$16,673** | **$47,201** | **$140,774** |
| Jan, 2026 | $1,173 | $4,150 | $136,624 |
| Feb, 2026 | $1,139 | $4,184 | $132,440 |
| Mar, 2026 | $1,104 | $4,219 | $128,220 |
| Apr, 2026 | $1,069 | $4,254 | $123,966 |
| May, 2026 | $1,033 | $4,290 | $119,676 |
| Jun, 2026 | $997 | $4,326 | $115,351 |

| Date | Interest | Principal | Balance |
|------|----------|-----------|---------|
| Oct, 2026 | $851 | $4,472 | $97,685 |
| Nov, 2026 | $814 | $4,509 | $93,176 |
| Dec, 2026 | $776 | $4,546 | $88,630 |
| **2026** | **$11,730** | **$52,144** | **$88,630** |
| Jan, 2027 | $739 | $4,584 | $84,046 |
| Feb, 2027 | $700 | $4,622 | $79,423 |
| Mar, 2027 | $662 | $4,661 | $74,762 |
| Apr, 2027 | $623 | $4,700 | $70,062 |
| May, 2027 | $584 | $4,739 | $65,323 |
| Jun, 2027 | $544 | $4,778 | $60,545 |
| Jul, 2027 | $505 | $4,818 | $55,726 |
| Aug, 2027 | $464 | $4,858 | $50,868 |
| Sep, 2027 | $424 | $4,899 | $45,969 |
| Oct, 2027 | $383 | $4,940 | $41,029 |
| Nov, 2027 | $342 | $4,981 | $36,048 |
| Dec, 2027 | $300 | $5,022 | $31,026 |
| **2027** | **$6,270** | **$57,604** | **$31,026** |
| Jan, 2028 | $259 | $5,064 | $25,962 |
| Feb, 2028 | $216 | $5,107 | $20,855 |
| Mar, 2028 | $174 | $5,149 | $15,706 |
| Apr, 2028 | $131 | $5,192 | $10,514 |
| May, 2028 | $88 | $5,235 | $5,279 |
| Jun, 2028 | $44 | $5,279 | $0 |
| **2028** | **$911** | **$31,026** | **$0** |

# Frequently Asked Questions

### How to get a loan?

The process for getting a loan depends mostly on what its purpose is. If you're looking for a debt consolidation loan, for example, you'll need to apply with a bank and provide the list of creditors (and the amounts) that this loan will pay off. If you're looking for a loan to finance a vacation or another large purchase, you'll need to apply with some other documentation.

No matter which loan you choose, the process tends to be the same. You'll apply with a bank, credit union, or another lender type. The lender will likely pull your credit report and see if you meet the qualifications for the loan. If you do, you'll receive an offer for a specific sum of money at an APR. Once you accept that offer, the lender will send the funds your way!

### How to get a loan with bad credit?

If you're looking for a loan with bad credit, the first thing you should know is that it is very much possible to get one! People often assume that lenders will deny them, and they don't even bother applying if they have bad credit. However, as with most financial products, there's a lot more than just your credit score that goes into a credit decision.

If you have bad credit, you should first look at some well-known lenders who work with people who have bad credit. Many lenders will provide loans to people with credit scores as low as 580. Therefore, the application process is simple: check your credit score, find a lender that works with lower scores, and apply online or over the phone! Please note that you may have a high APR with a low credit score, so use a loan calculator like this one to ensure taking the loan is a wise financial choice!

**EXHIBIT B-2**

**(Priority Unsecured Claims)**

# EXHIBIT B-2
## PRIORITY UNSECURED CLAIMS
### BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA

| Priority Creditors | Class | Scheduled Amount | Proof of Claim Amount | Disputed Yes/No | Total Amount of Allowed Priority Unsecured Claim | Amount Paid on the Effective Date (Estimated to be July 2023) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| Internal Revenue Service IRS Insolvency Group 7 24000 AVILA ROAD 3rd Floor, M/S Laguna Niguel, CA 92677 [POC#5-2] | n/a | Claim not Scheduled | $27.97 | No | $27.97 | $28.13 | $0.00 | Priority portion of unsecured claim; paid in full on the effective date at 7% interest rate. general unsecured portion of claim is listed on Exhibit B-3 |
| **Total Liabilities** | | **$0.00** | **$27.97** | | **$27.97** | **$28.13** | | |

**EXHIBIT B-3**

**(General Unsecured Claims)**

**EXHIBIT B-3**

**GENERAL UNSECURED CLAIMS**

**BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA**

| General Unsecured Creditors | Class | Scheduled Amount | Proof of Claim Amount | Disputed Yes/No | Total Amount of Allowed Unsecured Claim | Amount Paid on the Effective Date (Estimated to be July 2023) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| Wells Fargo Bank, NA PO Box 51174 Los Angeles, CA 90051 [POC#1] | 2 | Claim not Scheduled | $10,587.44 | No | $10,587.44 | $2.21 | $2.21 | |
| The Townes at Central Park West Assoc. Community Legal Advisors, Inc. 509 N. Coast Highway Oceanside, CA 92054 [POC#3] | 2 | $7,276.60 | $7,276.60 | No | $7,276.60 | $1.52 | $1.52 | Scheduled as a secured claim; claim is fully undersecured |

| Name/Address | | | | | | | | Notes |
|---|---|---|---|---|---|---|---|---|
| Wells Fargo Bank, NA PO Box 9210 Des Moines, IA 50306 [POC#4] | 2 | $1,193.00 | $1,193.97 | No | $1,193.97 | $0.25 | $0.25 | general unsecured portion of IRS' claim |
| IRS c/o IRS Insolvency Group 7 24000 Avila Road, 3rd Floor, M/S Laguna Niguel, CA 92677 [POC#5] | 2 | Claim not Scheduled | $63.34 | No | $63.34 | $0.01 | $0.01 | |
| Central Park West Community Association Alterra Assessment Recovery 27101 Puerta Real, Suite 250 Mission Viejo, CA 92691 [POC#6] | 2 | $2,878.93 | $2,878.93 | No | $2,878.93 | $0.60 | $0.60 | Lien attached on May 16, 2022 with recorded Notice of Delinquent Assessment. Secured claim is fully undersecured, avoided through the Plan, and treated as a general unsecured claim (see Exhibit B-3) |
| Central Park West Community Association Alterra Assessment Recovery 27101 Puerta Real, Suite 250 Mission Viejo, CA 92691 [POC#7] | 2 | Claim not Scheduled | $1,078.00 | No | $1,078.00 | $0.22 | $0.22 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Belgium Investments 960 Bay Dr, LLC, a California Corp. Patrick Miller - Impact Advocates 121 S. Oak Ave. Pasadena, CA 91107 [POC#9] | 2 | Claim not Scheduled on F | $4,559,997.91 | Yes | $5,186,397.91 | $1,080.75 | $1,080.75 | Includes unsecured portion of claim from POC#9, and balance of secured claim that is fully undersecured after homestead exemption |
| *Total Liabilities* | | $11,348.53 | $4,583,076.19 | | $5,209,476.19 | $1,085.56 | $1,085.56 | |

# EXHIBIT-C

# (5-Year Projections)

**YEAR #1**

BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA

Exhibit C - 5-Year Projections

Year 1

| | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Rental Income | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| New Value Contribution | $7,000.00 | | | | | | | | | | | |
| Contribution From Parents | $30,200.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,200.00 | $7,000.00 | $7,000.00 | $7,200.00 | $7,000.00 | $7,000.00 |
| **Gross Profit** | $41,200.00 | $11,000.00 | $11,000.00 | $11,200.00 | $11,000.00 | $11,000.00 | $11,200.00 | $11,000.00 | $11,000.00 | $11,200.00 | $11,000.00 | $11,000.00 |
| **Expenses** | | | | | | | | | | | | |
| Homeowner Association Dues - Central Park West | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 |
| Homeowner Association Dues- The Townes | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Utilities- Gas, Heat, Electricity | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Utilities- Phone, Internet | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 |
| Food | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Personal Care | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental Expenses | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 |
| Transportation | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Car Insurance | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Law Offices of Michael Jay Berger (Estimated Fees, Subject to Court Approval) | $30,000.00 | | | | | | | | | | | |
| Office of the United States Trustee Quarterly Fees (Estimated) | $250.00 | | | $250.00 | | | $250.00 | | | $250.00 | | |
| Freedom Mortgage Corporation - Secured Claim Class 1(A) | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 |
| Freedom Mortgage Corporation - Cure of Arrears Class 1(A) | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 |
| Belgium Investments 960 Bay Dr. LLC - Secured Claim Class 1(B) | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 |
| TD Financial Secured Claim - Class 1(C) (per Stipulation for Adequate Protection Payments, paid within 36 months from November, 2022) | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Internal Revenue Service - Priority Unsecured Claim | $28.13 | | | | | | | | | | | | |
| General Unsecured Claims - Class 2 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 |
| Total Expense | $ 41,139.38 | $ 10,861.25 | $ 10,861.25 | $ 11,111.25 | $ 10,861.25 | $ 10,861.25 | $ 11,111.25 | $ 10,861.25 | $ 10,861.25 | $ 11,111.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 |
| Net Ordinary Income | $ 60.62 | $ 138.75 | $ 138.75 | $ 88.75 | $ 138.75 | $ 138.75 | $ 88.75 | $ 138.75 | $ 138.75 | $ 88.75 | $ 138.75 | $ 138.75 | $ 138.75 |

**YEAR #2**

BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA
Exhibit C - 5-Year Projections
Year 2

| | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Rental Income | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| Contribution From Parents | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 |
| **Gross Profit** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** | **$11,000.00** |
| **Expenses** | | | | | | | | | | | | |
| Homeowner Association Dues - Central Park West | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 |
| Homeowner Association Dues- The Townes | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Utilities- Gas, Heat, Electricity | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Utilities- Phone, Internet | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 |
| Food | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Personal Care | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental Expenses | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 |
| Transportation | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Car Insurance | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Freedom Mortgage Corporation - Secured Claim Class 1(A) | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 |
| Freedom Mortgage Corporation - Cure of Arrears Class 1(A) | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 |
| Belgium Investments 960 Bay Dr. LLC - Secured Claim Class 1(B) | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 |
| TD Financial Secured Claim - Class 1(C) (per Stipulation for Adequate Protection Payments, paid within 36 months from November, 2022) | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 | $211.76 |
| General Unsecured Claims - Class 2 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 |
| **Total Expense** | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 |
| **Net Ordinary Income** | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 |

**YEAR #3**

BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA
Exhibit C - 5-Year Projections
Year 3

| | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Rental Income | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| Contribution From Parents | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 |
| **Gross Profit** | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 |
| **Expenses** | | | | | | | | | | | | |
| Homeowner Association Dues - Central Park West | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 |
| Homeowner Association Dues- The Townes | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Utilities- Gas, Heat, Electricity | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Utilities- Phone, Internet | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 |
| Food | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Personal Care | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental Expenses | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 |
| Transportation | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Car Insurance | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Freedom Mortgage Corporation - Secured Claim Class 1(A) | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 |
| Freedom Mortgage Corporation - Cure of Arrears Class 1(A) | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 |
| Belgium Investments 960 Bay Dr. LLC - Secured Claim Class 1(B) | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 |
| TD Financial Secured Claim - Class 1(C) (per Stipulation for Adequate Protection Payments, paid within 36 months from November, 2022) | $211.76 | $211.76 | $211.76 | $211.76 | | | | | | | | |
| General Unsecured Claims - Class 2 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 |
| **Total Expense** | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,861.25 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 |
| **Net Ordinary Income** | $ 138.75 | $ 138.75 | $ 138.75 | $ 138.75 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 |

**YEAR #4**

BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA
Exhibit C - 5-Year Projections
Year 4

| | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Rental Income | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| Contribution From Parents | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 |
| **Gross Profit** | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 |
| **Expenses** | | | | | | | | | | | | |
| Homeowner Association Dues - Central Park West | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 |
| Homeowner Association Dues- The Townes | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Utilities- Gas, Heat, Electricity | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Utilities- Phone, Internet | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 |
| Food | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| | | | | | | | | | | | | |
| Personal Care | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental Expenses | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 |
| Transportation | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Car Insurance | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Freedom Mortgage Corporation - Secured Claim Class 1(A) | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 |
| Freedom Mortgage Corporation - Cure of Arrears Class 1(A) | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 |
| Belgium Investments 960 Bay Dr. LLC - Secured Claim Class 1(B) | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 |
| General Unsecured Claims - Class 2 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 |
| **Total Expense** | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 |
| **Net Ordinary Income** | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 |

**YEAR #5**

BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA
Exhibit C - 5-Year Projections
Year 5

| | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Rental Income | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| Contribution From Parents | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 |
| **Gross Profit** | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 |
| **Expenses** | | | | | | | | | | | | |
| Homeowner Association Dues - Central Park West | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 | $166.00 |
| Homeowner Association Dues- The Townes | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Utilities- Gas, Heat, Electricity | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Utilities- Phone, Internet | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 | $130.00 |
| Food | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Personal Care | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental Expenses | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 |
| Transportation | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Car Insurance | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| Freedom Mortgage Corporation - Secured Claim Class 1(A) | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 | $1,961.41 |
| Freedom Mortgage Corporation - Cure of Arrears Class 1(A) | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 | $1,063.67 |
| Belgium Investments 960 Bay Dr. LLC - Secured Claim Class 1(B) | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 | $5,322.85 |
| General Unsecured Claims - Class 2 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 | $1,085.56 |
| **Total Expense** | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 | $ 10,649.49 |
| **Net Ordinary Income** | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 | $ 350.51 |

**EXHIBIT-D**

**(Monthly Operating Report Summary)**

EXHIBIT - D

BASSEM VICTOR EL MALLAKH - 8:22-bk-11605-TA

Monthly Operating Report Summmary

| MONTH | TOTAL CASH RECEIPTS | TOTAL CASH DISBURSEMENTS | NET CASH FLOW |
|---|---|---|---|
| September 2022 | $0.00 | $1,547.00 | ($1,547.00) |
| October 2022 | $4,000.00 | $1,862.00 | $2,138.00 |
| November 2022 | $4,000.00 | $1,509.00 | $2,491.00 |
| December 2022 | $3,898.00 | $7,643.00 | ($3,745.00) |
| January 2023 | $4,038.00 | $2,838.00 | $1,200.00 |
| *Total Cash Receipts / Total Cash Disbursements* | *$15,936.00* | *$15,399.00* | *$537.00* |
| MONTHLY AVERAGES | $3,187.20 | $3,079.80 | $107.40 |

**EXHIBIT-E**

**(Liquidation Analysis)**

# EXHIBIT – E

## LIQUIDATION ANALYSIS

| Liquidation Analysis | Total Amount | Real Property | Personal Property |
|---|---|---|---|
| Total Property Value | $1,233,144.00* | $1,120,000.00 | $113,144.00 |
| Less: | | | |
| Secured Claims | $5,696,886.41 | $5,690,153.44 | $6,732.97 |
| Claimed Exemptions: | $636,325.00 | $626,400.00 | $9,925.00 |
| | ---------------- | ---------------- | ---------------- |
| Interest in Nonexempt Property | $0.00 | 0.00 | $96,486.03 |
| Less: | | | |
| Estimated Ch 7 Admin Expenses | | $8,074.30 | |
| Priority Tax Claim | | $27.97 | |
| Estimated BK Counsel Fee and Accountant Fee | | $30,000.00 | |
| Estimated US Trustee Quarterly Fee | | $250.00 | |
| | | ---------------- | |
| Available to General Unsecured | | $58,133.76 | |
| Total General Unsecured Claims | | $5,209,476.19 | |
| Percent Distribution Under Chapter 7 | | 1.11% | |
| Percent Distribution Under Chapter 11 | | | |
| (without New Value Contribution) | | 1.11% | |
| Percent Distribution Under Chapter 11 | | | |
| with New Value Contribution | | 1.25% | |

*NOTE: See **EXHIBIT A** for more details on Total Property Value

# EXHIBIT - F

1  RANDALL P. MROCZYNSKI (SBN. 156784)
   rmroczynski@cookseylaw.com
2  **COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
   A Professional Corporation
3  535 Anton Boulevard, Tenth Floor
   Costa Mesa, California 92626-1977
4  Telephone:    (714) 431-1100
   Facsimile:    (714) 431-1119
5

6  Attorneys for Secured Creditor
   TD BANK, N.A. successor in interest to TD AUTO FINANCE LLC
7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10  In re                                CASE NO. 8:22-BK-11605-TA

11  BASSEM EL MALLAKH,                    CHAPTER 11

12            Debtor-in-Possession.      **STIPULATION FOR RESOLUTION OF
                                         MOTION FOR RELIEF FROM THE
13                                       AUTOMATIC STAY, FOR
                                         MAINTENANCE OF ADEQUATE
14                                       PROTECTION PAYMENTS AND FOR
                                         RESOLUTION OF CLAIM TREATMENT
15                                       ISSUES**

16                                       <u>Hearing:</u>
                                         Date:        December 6, 2022
17                                       Time:        10:30 a.m.
                                         Ctrm:        5B
18

19
         IT IS HEREBY STIPULATED AND AGREED by and between Secured Creditor, TD
20
    BANK, N.A. successor in interest to TD AUTO FINANCE, LLC ("TD") and Debtor, BASSEM EL
21
    MALLAKH ("Debtor"), by and through their respective counsel who have the authority to so
22
    stipulate, based on the following recitals of fact:
23
                                **RECITALS**
24
         1.      Pre-petition, Debtor entered into a Retail Installment Sale Contract (the "Contract")
25
    with TD for the purchase of a 2016 Mercedes-Benz C-Class, VIN 55SWF4JB7GU106746 (the
26
    "Vehicle").
27

28                                        1

              STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION
1798.0538  3886126.1

2.    TD properly perfected its security interest in the Vehicle pre-petition.

3.    By way of this Stipulation, TD and Debtor wish to resolve the pending Motion for Relief from the Automatic Stay filed on November 4, 2022 as docket no. 44, to provide for payment of pre-confirmation adequate protection payments to TD with respect to the Vehicle and to resolve all issues pertaining to the treatment of TD's claims in any proposed plan of reorganization filed or to be filed by Debtor herein.

### THE STIPULATION

**NOW, WHEREFORE**, it is hereby stipulated and agreed as follows, based on the foregoing Recitals which are incorporated into this Stipulation by reference:

1.    The fair market value of the Vehicle shall be fixed at $15,000.00.

2.    Debtor consents to the allowance of TD's all secured claim in the amount of $6,732.97. Interest on TD's secured claim shall be paid at the rate of 8.25%. Debtor shall make monthly pre-confirmation adequate protection payments and post-confirmation plan payments to TD with respect to TD's secured claim in the amount of $211.76 commencing November 15, 2022 and continuing on the 9th day of each month thereafter.

3.    Payments shall be made to TD at: P.O Box 16041, Lewiston ME 04243-9523.

4.    Any plan of reorganization proposed by the Debtor shall provide for treatment of TD's claims consistent with the terms of this Stipulation. TD's secured claim shall be designated as an impaired claim in any such plan. TD shall support any plan of reorganization proposed by the Debtor that provides for the treatment of TD's claim in a manner consistent with this Stipulation and execution of this stipulation by TD shall be deemed as a ballot to accept any such plan. TD may, but is not required to, submit a separate ballot accepting any such consistent plan.

5.    Debtor shall, at all times, maintain a policy of insurance covering the Vehicle against physical damage, fire damage and theft.

6.    If Debtor fails to timely tender the payments required under this Stipulation, or if Debtor fails to maintain insurance as required by this Stipulation, TD, after providing Debtor and Debtor's counsel with written notice of said default and fourteen (14) days opportunity to cure the

2

STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

1  same, may file a Declaration with this Court noting said default and lodge a proposed Order

2  terminating the automatic stay which Order may be entered without further notice or hearing and

3  which will provide that FRF may retake possession of and liquidate the Vehicle pursuant to

4  applicable non-bankruptcy law. Debtor shall be entitled to a maximum of three (3) notices of default

5  and opportunities to cure pursuant to this Paragraph. Should Debtor default three times on the

6  obligations imposed by this Stipulation and be provided three notices of default on those defaults,

7  TD shall have no obligation to provide any further notice of default or opportunity to cure, and TD

8  may file a declaration noting said default and a proposed order terminating the stay which the Court

9  may enter without further notice or hearing.

10      7.      In the event TD obtains relief from the automatic stay pursuant to the default

11  provisions of this Stipulation, the stay provided by Bankruptcy Rule 4001(a)(3) will not apply.

12      8.      Notwithstanding Paragraph 6 hereof or any contrary term in Debtor's Plan of

13  Reorganization, with respect to any post-confirmation default under this Stipulation occurring after

14  the automatic stay is no longer in effect by operation of 11 U.S.C. § 362(c), TD need only provide

15  Debtor and Debtor's counsel with written notice of said post-confirmation default and five (5) days

16  opportunity to cure the default after which, if the default is not timely cured, FRF may then and there

17  take any and all steps to retake possession of and sell the Vehicle in accordance with applicable non-

18  bankruptcy law.

19              **IT IS SO STIPULATED:**

20  DATED: November _8_, 2022              COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

21

22                                        By:_____

23                                        Randall P. Mroczynski
                                          **Attorneys for Creditor**
24                                        TD BANK N.A. Successor in Intersest to TD
                                          AUTO FINANCE LLC

25

26

27

28                              3

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION

1  DATED: November 7, 2022         LAW OFFICES OF MICHAEL JAY BERGER

2

3                                  By: _____
                                       Michael Jay Berger
4                                      Sofya Davtyan
                                       **Attorneys for Debtor**
5                                      BASSEM EL MALLAKH

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

---

4

STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION

1798 0538  3886126 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

535 Anton Blvd., 10th Floor; Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (specify): **STIPULATION FOR RESOLUTION OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY, FOR MAINTENANCE OF ADEQUATE PROTECTION PAYMENTS AND FOR RESOLUTION OF CLAIM TREATMENT ISSUES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) November 8, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael Jay Berger, Attorney for Debtor:
Chad L. Butler, Courtesy NEF:
Benjamin Heston, Courtesy NEF:
United States Trustee (SA):
Nancy S. Goldenberg, Attorney for U.S. Trustee:

michael.berger@bankruptcypower.com
caecf@tblaw.com
bhestonecf@gmail.com, ben@nexusbk.com
ustpregion16.sa.ecf@usdoj.gov
nancy.goldenber@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) November 8, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Debtor:**
Bassem Victor El Mallakh
116 Rockerfeller
Irvine, CA 92612

**Attorney for Debtor:**
Michael Jay Berger
9454 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 8, 2022 | Dalin Suon | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION**
**In re Bassem Victor El Mallakh**
**Bankruptcy Case No.: 8:22-bk-11605-TA**

**SERVED BY UNITED STATES MAIL:**

**List of Creditors Holding 20 Largest Unsecured Claims**

Belgium Investments
960 Bay Dr., LLC
c/o Patrick Miller, Esq.
P. Miller Legal Services
121 S. Oak Avenue
Pasadena, CA 91107

Wells Fargo Bank NA
1 Home Campus
Mac X2303-01a
3rd Floor
Des Moines, IA 50328

- Debtor only listed the above creditors on their List of 20 Largest Unsecured Creditors.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
1798.0538  3887375.1

F 9013-3.1.PROOF.SERVICE

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Randall P. Mroczynski, Esq. (SBN. 156784)<br>rmroczynski@cookseylaw.com<br>COOKSEY, TOOLEN, GAGE, DUFFY & WOOG<br>535 Anton Boulevard, Suite 1000<br>Costa Mesa, CA 92626<br>Telephone: (714) 431-1100<br>Facsimile: (714) 431-1119 | **FILED & ENTERED**<br><br>NOV 08 2022<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY deramus  DEPUTY CLERK |
| ☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| In re:<br><br><br>BASSEM VICTOR EL MALLAKH<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:22-bk-11605-TA<br>CHAPTER: 11 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (PERSONAL PROPERTY)** |
| | DATE: December 6, 2022<br>TIME: 10:30 a.m.<br>COURTROOM: 5B<br>PLACE: 411 West Fourth Street<br>Santa Ana, CA 92701 |

**Movant:** TD Bank, N.A., successor in interest to TD Auto Finance LLC

1. The Motion was:    ☐ Opposed    ☐ Unopposed    ☒ Settled by stipulation

2. The Motion affects the following personal property (Property):

   ☒ Vehicle (*year, manufacturer, type and model*): 2016 Mercedes-Benz C-Class

   *Vehicle identification number:* 55SWF4JB7GU106746

   *Location of vehicle (if known):*

   ☐ Equipment (*manufacturer, type, and characteristics*):

   *Serial number(s):*
   *Location (if known):*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                              Page 1                                    **F 4001-1.RFS.PP.ORDER**

☐ Other personal property (*type, identifying information, and location*):

☐ See Exhibit _____ attached to the Motion.

3. The Motion is granted under:

   a. ☐ 11 U.S.C. § 362 (d)(1)

   b. ☐ 11 U.S.C. § 362 (d)(2)

4. ☐ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a. ☐ Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b. ☐ Modified or conditioned as set for the in Exhibit _____ to this order.

   c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ Movant may enforce its remedies to repossess or otherwise obtain possession and dispose of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not repossess the Property before (*date*) _____.

7. ☒ The stay remains in effect subject to the terms and conditions set forth in the Adequate Protection Agreement to this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated or modified as to the co-debtor, as to the same terms and conditions.

10. ☐ The 14-day stay provided by FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. ☐ This order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

13. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

14. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                  Page 2                        **F 4001-1.RFS.PP.ORDER**

15. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

   a. ☐ without further notice.

   b. ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

16. ☐ Other (*specify*):

###

Date: November 8, 2022

*Theodor C. Albert*

Theodor C. Albert
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                        Page 3                          F 4001-1.RFS.PP.ORDER

1  RANDALL P. MROCZYNSKI (SBN. 156784)
   rmroczynski@cookseylaw.com
2  **COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
   A Professional Corporation
3  535 Anton Boulevard, Tenth Floor
   Costa Mesa, California 92626-1977
4  Telephone:    (714) 431-1100
   Facsimile:    (714) 431-1119
5

6  Attorneys for Secured Creditor
   TD BANK, N.A. successor in interest to TD AUTO FINANCE LLC
7

8                    UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10  In re                                    CASE NO. 8:22-BK-11605-TA

11  BASSEM EL MALLAKH,                        CHAPTER 11

12              Debtor-in-Possession.         **STIPULATION FOR RESOLUTION OF
                                              MOTION FOR RELIEF FROM THE**
13                                            **AUTOMATIC STAY, FOR
                                              MAINTENANCE OF ADEQUATE**
14                                            **PROTECTION PAYMENTS AND FOR
                                              RESOLUTION OF CLAIM TREATMENT**
15                                            **ISSUES**

16                                            Hearing:
                                              Date:      December 6, 2022
17                                            Time:      10:30 a.m.
                                              Ctrm:      5B
18

19

20      IT IS HEREBY STIPULATED AND AGREED by and between Secured Creditor, TD

21  BANK, N.A. successor in interest to TD AUTO FINANCE, LLC ("TD") and Debtor, BASSEM EL

22  MALLAKH ("Debtor"), by and through their respective counsel who have the authority to so

    stipulate, based on the following recitals of fact:
23
                                    **RECITALS**
24
        1.      Pre-petition, Debtor entered into a Retail Installment Sale Contract (the "Contract")
25
    with TD for the purchase of a 2016 Mercedes-Benz C-Class, VIN 55SWF4JB7GU106746 (the
26
    "Vehicle").
27

28                                          1

                STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION
1798.0538  3886126.1

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

2.      TD properly perfected its security interest in the Vehicle pre-petition.

3.      By way of this Stipulation, TD and Debtor wish to resolve the pending Motion for Relief from the Automatic Stay filed on November 4, 2022 as docket no. 44, to provide for payment of pre-confirmation adequate protection payments to TD with respect to the Vehicle and to resolve all issues pertaining to the treatment of TD's claims in any proposed plan of reorganization filed or to be filed by Debtor herein.

### THE STIPULATION

**NOW, WHEREFORE**, it is hereby stipulated and agreed as follows, based on the foregoing Recitals which are incorporated into this Stipulation by reference:

1.      The fair market value of the Vehicle shall be fixed at $15,000.00.

2.      Debtor consents to the allowance of TD's all secured claim in the amount of $6,732.97. Interest on TD's secured claim shall be paid at the rate of 8.25%. Debtor shall make monthly pre-confirmation adequate protection payments and post-confirmation plan payments to TD with respect to TD's secured claim in the amount of $211.76 commencing November 15, 2022 and continuing on the 9th day of each month thereafter.

3.      Payments shall be made to TD at: P.O Box 16041, Lewiston ME 04243-9523.

4.      Any plan of reorganization proposed by the Debtor shall provide for treatment of TD's claims consistent with the terms of this Stipulation. TD's secured claim shall be designated as an impaired claim in any such plan.  TD shall support any plan of reorganization proposed by the Debtor that provides for the treatment of TD's claim in a manner consistent with this Stipulation and execution of this stipulation by TD shall be deemed as a ballot to accept any such plan. TD may, but is not required to, submit a separate ballot accepting any such consistent plan.

5.      Debtor shall, at all times, maintain a policy of insurance covering the Vehicle against physical damage, fire damage and theft.

6.      If Debtor fails to timely tender the payments required under this Stipulation, or if Debtor fails to maintain insurance as required by this Stipulation, TD, after providing Debtor and Debtor's counsel with written notice of said default and fourteen (14) days opportunity to cure the

2

STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

1798.0538  3886126.1

1  same, may file a Declaration with this Court noting said default and lodge a proposed Order

2  terminating the automatic stay which Order may be entered without further notice or hearing and

3  which will provide that FRF may retake possession of and liquidate the Vehicle pursuant to

4  applicable non-bankruptcy law. Debtor shall be entitled to a maximum of three (3) notices of default

5  and opportunities to cure pursuant to this Paragraph. Should Debtor default three times on the

6  obligations imposed by this Stipulation and be provided three notices of default on those defaults,

7  TD shall have no obligation to provide any further notice of default or opportunity to cure, and TD

8  may file a declaration noting said default and a proposed order terminating the stay which the Court

9  may enter without further notice or hearing.

10      7.      In the event TD obtains relief from the automatic stay pursuant to the default

11  provisions of this Stipulation, the stay provided by Bankruptcy Rule 4001(a)(3) will not apply.

12      8.      Notwithstanding Paragraph 6 hereof or any contrary term in Debtor's Plan of

13  Reorganization, with respect to any post-confirmation default under this Stipulation occurring after

14  the automatic stay is no longer in effect by operation of 11 U.S.C. § 362(c), TD need only provide

15  Debtor and Debtor's counsel with written notice of said post-confirmation default and five (5) days

16  opportunity to cure the default after which, if the default is not timely cured, FRF may then and there

17  take any and all steps to retake possession of and sell the Vehicle in accordance with applicable non-

18  bankruptcy law.

19                          **IT IS SO STIPULATED:**

20  DATED: November _8_, 2022          COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

21

22                                  By: _____

23                                       Randall P. Mroczynski
                                         **Attorneys for Creditor**
24                                       TD BANK N.A. Successor in Intersest to TD
                                         AUTO FINANCE LLC

25

26

27

28                          3

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

DATED: November 7, 2022

LAW OFFICES OF MICHAEL JAY BERGER

By: _____
Michael Jay Berger
Sofya Davtyan
**Attorneys for Debtor**
BASSEM EL MALLAKH

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977

4

STIPULATION FOR MAINTENANCE OF ADEQUATE PROTECTION

1798.0538  3886126.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in
chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
3/14/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On 3/14/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

U.S. Trustee
Nancy S. Goldenberg
411 W. Fourth St., Ste. 7160
Santa Ana, CA 92701

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/14/2023, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Theodore Albert
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/14/2023 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT
# "24"

1  MICHAEL JAY BERGER (State Bar # 100291)
   SOFYA DAVTYAN (State Bar # 259544)
2  LAW OFFICES OF MICHAEL JAY BERGER
   9454 Wilshire Blvd. 6th Floor
3  Beverly Hills, CA 90212-2929
   Telephone:    (310) 271-6223
4  Facsimile:    (310) 271-9805
   Michael.Berger@bankruptcypower.com
5  Sofya.Davtyan@bankruptcypower.com

6  Attorneys for Debtor and Plan Proponent
   Bassem Victor El Mallakh
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SANTA ANA DIVISION

11 In re:                          )  CASE NO.:8:22-BK-11605-TA
12                                 )
                                   )  Chapter 11
13                                 )
                                   )  **DEBTOR'S CHAPTER 11 PLAN OF**
14 Bassem Victor El Mallakh,       )  **REORGANIZATION**
                                   )
15                Debtor-in-Possession.) Continued Status Hearing
                                   )
16                                 )  Date: March 23, 2023
17                                 )  Time:10:00 a.m.
                                   )  Ctrm: 5B [via ZoomGov]
18                                 )  411 West Fourth Street
                                   )  Santa Ana, CA 92701-4593
19                                 )
20                                 )
                                   )
21 _____ )

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

## Table of Contents

I.      INTRODUCTION ................................................................................3

I.      INTERPRETATIONS AND RULES OF CONSTRUCTION .............3

1)      Rules of Interpretation ......................................................................3

        Class 1 – Secured Claims ...................................................................6

        Class 2 - General Unsecured Claims ..................................................9

III.    MEANS OF PERFORMING THEPLAN ......................................9

i.      *Funding for the Plan* ........................................................................9

ii.     *Management of the Reorganized Debtor* ..........................................9

iii.    *Disbursing Agent* .............................................................................9

A.      RISK FACTORS ............................................................................10

B.      SECTION 1111(B) ELECTION .....................................................10

C.      OTHER PROVISIONS OF THEPLAN ........................................10

1.      EXECUTORY CONTACTS AND UNEXPIRED LEASES ............10

i.      *Assumptions* ...................................................................................10

ii.     *Rejections* .......................................................................................10

IV.     EFFECT OF CONFIRMATION OFPLAN ..................................11

1.      DISCHARGE .................................................................................11

2.      REINVESTING OF PROPERTY IN THE DEBTOR ...................11

3.      MODIFICATION OF THEPLAN ................................................11

4.      POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF
        REORGANIZED DEBTOR'S PROFESSIONAL ..........................11

5.      POST-CONFIRMATION CONVERSION/DISMISSAL ...............12

6.      FINAL DECREE ............................................................................12

2

## I.   INTRODUCTION

Debtor, Bassem Victor El Mallakh (the "Debtor"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on September 19, 2022. He is hereinafter referred to as the "Debtor."

*The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month. Debtor's Plan provides for certain payments to be made on the Effective Date.*

Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a Plan of Reorganization. The Plan of Reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. *The Debtor in this case is the proponent (the "Proponent") of a Reorganization Plan* (the " Plan").

In summary, this is a reorganizing plan that provides for payment to holders of allowed claims over time. The timing of plan payments to particular creditor groups will depend upon their classification under the Plan.

THEDISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION (hereinafter the "Disclosure Statement") also accompanies this Plan. The Disclosure Statement describes the Plan and provides additional information to enable creditors to make informed decisions about whether to vote for or against the Plan.

The following are the specific provisions of the Plan.

## I.   <u>INTERPRETATIONS AND RULES OF CONSTRUCTION</u>

**a) Interpretation, Computation of Time and GoverningLaw**

**1) Rules of Interpretation**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any references in the Plan to an existing document or Exhibit fled or to be filed means such document or Exhibit, as it may have been or may be , modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in §102 of the Bankruptcy Code shall apply.

**2) Time Periods.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**3) Section Numbers.**

References in this Plan and the Disclosure Statement to a code section are references to the United States Bankruptcy Code (Title 11 of the United States Code) except as otherwise indicated.

## II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### a)   General Overview

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests. The Plan designates which classes are impaired and which classes are unimpaired. The

4

Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed, notwithstanding the lack of acceptance by the Shareholders.

**1. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead, they are unclassified. Holders of unclassified claims not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan.

**i. ADMINISTRATIVE CLAIMS**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The following is an estimate of the §507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $30,000.00 (estimated); subject to court approval | To be paid upon approval of the fee application, unless an alternate agreement is reached between Debtor and Debtor's Bankruptcy Counsel. |
| Clerk's Office Fees | $0.00 (estimated) | Paid when due. |

| Office of the U.S. Trustee | $250.00 (estimated). Actual amount to be determined per quarter. | Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |

## **Court Approval of Fees Required**

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court. Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

### ii.    **PRIORITY TAX CLAIMS**

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8). The Code requires that each holder of such a §507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the petition date.

Debtor has the following priority tax claims:

(1) Internal Revenue Service: $27.97 [POC #5].  This claim will be paid in full in one lump-sum payment on the Effective Date at the applicable interest rate, currently 7%.

### iii.    **Classified Claims and Interests**

## **Class 1 – Secured Claims**

**CLASS 1(A)**

**Claim/Collateral:** Freedom Mortgage Corporation ("Freedom Mortgage") holds a claim secured by Debtor's principal residence located at 116 Rockefeller, Irvine, CA 92612 (the "Property") for $243,078.15 [POC #8]. The claim includes $63,820.41 in pre-petition arrears.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor has been making the post-petition regular mortgage payments to Freedom Mortgage and will stay current with the monthly contractual payments, currently $1,961.41. Debtor also proposes to cure the pre-petition arrears of $63,820.41 over 60 months by tendering equal monthly payments of $1,063.67 each, with the first payment of $1,063.67 due on the first of the month following the effective date, and continuing monthly for an additional 59 months until the arrears are paid in full.

## CLASS 1(B)

**Claim/Collateral:** Belgium Investments 960 Bay Dr. LLC ("Belgium") filed a claim secured through a recorded abstract of judgment against Debtor's Property for $5,436,919.76 [POC #9]. Belgium's POC #9 acknowledges the value of Debtor's Property at $1,120,000.00, bifurcates its own claim into $876,921.85 secured claim and $4,559,997.91 unsecured claim.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Through the Plan, Debtor bifurcates Belgium's claim into $250,521.85[1] secured claim ("secured claim") and $5,186,397.91 as a general unsecured claim. Debtor proposes to pay Belgium's $250,521.85 secured claim over 60 months from the effective date at 10% interest, by offering monthly payments of $5,322.85, with the first payment of $5,322.85 due on the effective date, followed by 59 consecutive payments thereafter, each in the amount of $5,322.85, until the secured claim is paid in full.

## CLASS 1(C)

**Claim/Collateral:** TD Bank, N.A., successor in interest to TD Auto Finance LLC ("TD Bank") holds a claim secured by Debtor's 2016 Mercedes C300 for $6,732.97 [POC #2]. POC #2 reflects $6,392.74 in pre-petition arrears.

---

[1] **Debtor has a pending motion to avoid Belgium's Lien per 11 U.S.C. Section 522(f) which is set for a hearing on March 23, 2023 concurrently with Belgium's Motion Objecting to Debtor's Claimed Homestead Exemption. The value of $250,521.85 is computed by deducting the balance owed to Freedom Mortgage from the value of the Property ($1,120,000.00 which Belgium did not dispute and in fact used in its proof of claim #9) less the Debtor's homestead exemption, which reduced Belgium's lien to $250,521.85. The Property has two additional junior liens, The Townes at Central Park West Assn [POC #3] and Central Park West Community Association [POC #6], both of which are being avoided through the plan as they are junior to Belgium's claim and are fully undersecured.**

7

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor entered into a Stipulation with TD Bank for Resolution of Motion for Relief From the Automatic Stay, For Maintenance of Adequate Protection Payments and For Resolution of Claim Treatment Issues ("TD Stipulation") [docket no.: 49], and order approving TD Stipulation [docket no.: 50]. A true and correct copies of the TD Stipulation and order approving TD Stipulation are attached hereto as **Exhibit-F** to the Disclosure Statement, and the terms of the TD Stipulation are incorporated herein by this reference. Pursuant to TD Stipulation, Debtor shall pay TD Bank the secured claim of $6,732.97 at 8.25% interest rate. Debtor shall make monthly pre-confirmation adequate protection payments and post-confirmation plan payments to TD Bank in the amount of $211.76 commencing November 15, 2022 and continuing on the 9th day of each month thereafter until the secured claim is paid in full.

## SECURED CLAIMS WHICH ARE FULLY UNDERSECURED AND TREATED IN CLASS 2 AS GENERAL UNSECURED CLAIMS

1. **The Townes at Central Park West Assn** ("Townes") filed a claim secured by Debtor's Property in the amount of $7,276.60 [POC #3], which claim arises from February 4, 2022 judgment with the abstract of judgment recorded on February 9, 2022. Since Townes' claim is junior to Belgium's abstract of judgment which was recorded on November 9, 2020, it is fully undersecured, is avoided through Debtor's Plan, and treated in Class 2 as a general unsecured claim.

2. **Central Park West Community Association** ("Central Park") filed a claim secured by Debtor's Property in the amount of $2,878.93 [POC #6], which claim arises from a notice of delinquent assessment which was recorded on May 16, 2022. Since Central Park's claim is junior to Belgium's abstract of judgment which was recorded on November 9, 2020, it is fully undersecured, is avoided through Debtor's Plan, and treated in Class 2 as a general unsecured claim.

### Class 2 - General Unsecured Claims

**Claim:**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). In the present case, the Debtor estimates that there are approximately $5,209,476.19 in general unsecured debts. See **Exhibit B-3** of Disclosure Statement for details regarding the treatment of each creditor's claim. General unsecured claims classified in **Class 2** will receive a total of approximately 1.25%[2] of their claims in monthly payments over 60 months.

**Impaired/Not Impaired:** Impaired.

**Treatment**: Holders of General Unsecured Claims will receive their pro-rata share of $1,085.56 per month for 60 months for a total of $65,133.76. The first payment of $1,085.56 will be due on the Effective Date, followed by 59 consecutive monthly payments thereafter, with each payment due by the first of the month.

### III.    MEANS OF PERFORMING THE PLAN

i.    *Funding for the Plan*

The Debtor will fund the Plan from the rental income and the contribution from his father (Essam El Mallakh) until Debtor finds an employment, at which time the contribution will either end or will be reduced as needed.

ii.    *Management of the Reorganized Debtor*

This provision is not applicable as this is an individual case.

iii.    *Disbursing Agent*

Debtor shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. He shall not be compensated for performing these services.

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.

---

[2] See the Absolute Priority Rule section for further analysis re New Value Contribution and Exhibit-E (liquidation analysis).

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be re-vested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

## A. **RISK FACTORS**

The Plan contemplates payments to certain classes of creditors over time following the Effective Date. The Debtor believes that he will be able to meet all of his financial obligations under the Plan because he intends to continue to receive the rental income from his sister and the family contribution from his father. When Debtor finds an employment, the contribution will either seize or will be reduced as needed. The contributions to be provided by Debtor's father are gift contributions to the Debtor, for which no repayment will be sought from the Debtor.

## B. **SECTION 1111(B) ELECTION**

Under §1111(b) of the Bankruptcy Code, a creditor holding a nonrecourse claim or a partially secured creditor may elect to be considered a full recourse creditor. Holders of secured claims are advised to consult their own counsel to evaluate whether or not it is in their best interest to make the election. Federal Rule of Bankruptcy Procedure 3014 states that such election must be made prior to the conclusion of the hearing on the Disclosure Statement.

## C. **OTHER PROVISIONS OF THEPLAN**

1. EXECUTORY CONTACTS AND UNEXPIRED LEASES

   *i.    Assumptions*

The Debtor is a party to a Retail Installment Sale Contract with TD Bank for the 2016 Mercedes C300.  Debtor intends to retain the vehicle and assume the contract.

   *ii.    Rejections*

Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date. Debtor does not have any unexpired leases or executory contracts it intends to reject.

DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

## RETENTION OF JURISDICTION

The Court will retain jurisdiction over this bankruptcy case until a final decree is entered by the Court. At that time the bankruptcy case will be closed.

### IV.    EFFECT OF CONFIRMATION OF PLAN

#### 1. DISCHARGE

Debtor is eligible for a discharge upon completion of the payments required under the Plan.

#### 2. REINVESTING OF PROPERTY IN THE DEBTOR

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and are free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

#### 3. MODIFICATION OF THE PLAN

Debtor may modify the Plan pursuant to 11 U.S.C. §1127.

#### 4. POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF REORGANIZED DEBTOR'S PROFESSIONAL

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by the Post-Confirmation Professionals, the

Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court.

In the event there is a default by Debtor in its payment of fees to Law Offices of Michael Jay Berger ("Berger"), Berger will give the Debtor notice of the default by electronic mail and advise the Debtor that it has ten (10) days to cure the default. If Debtor does not cure within that time period, Berger will be permitted to accelerate the balance due at the time and enforce the order of this Court approving the fees by whatever means are available to it including the costs and expenses related to the recording of the order and costs of collection. Berger shall not be required to get any further approval of this Court for payments related to outstanding fees.

Berger and Debtor are permitted to communicate and agree to payment of Berger's administrative claim on an expedited basis, if the ability to pay arises.

## 5.   POST-CONFIRMATION CONVERSION/DISMISSAL

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within one hundred and eighty (180) days after the entry of the order of confirmation.

## 6.   FINAL DECREE

The Debtor reserves the right to request an entry of the Final Decree once the Plan has been substantially consummated.

Dated: March 14, 2023                    LAW OFFICES OF MICHAEL JAY BERGER

                              By:    _____
                                     MICHAEL JAY BERGER
                                     SOFYA DAVTYAN
                                     Attorneys for Debtor and Plan Proponent
                                     Bassem Victor El Mallakh

DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/14/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Counsel for Debtor: Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee; Nancy S Goldenberg nancy.goldenberg@usdoj.gov
Interested Party: Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Interested Party: Chad L Butler caecf@tblaw.com
Counsel for TD Bank: Randall P Mroczynski randym@cookseylaw.com
Counsel for Belgium Investments 960 Bay Dr, LLC: Patrick Miller    patrick.miller@impactadvocateslaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 3/14/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.
U.S. Trustee
Nancy S. Goldenberg
411 W. Fourth St., Ste. 7160
Santa Ana, CA 92701

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/14/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Theodore Albert**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5085 / Courtroom 5B**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/14/2023 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.