PATRICK MILLER
Email: Patrick.miller@impactadvocateslaw.com
Impact Advocates APC
121 S Oak Ave
Pasadena, CA 91107
Telephone:   213-364-7581


Attorney for Judgement Creditor
BELGIUM INVESTMENTS 960 BAY DR,
LLC A CALIFORNIA CORP.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Bassem Victor El Mallakh | Case No 8:22-bk-11605-TA<br>Chapter 11<br><br>**MOTION FOR SANCTIONS DUE TO THE DEBTOR'S PERJURY**<br><br>**Date**: TBD<br>**Time**: TBD |

**TO THE HONORABLE THEODOR ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND HIS ATTORNEYS OF RECORD, AND ALL PARTIES IN INTEREST:**

Creditor, Belgium Investments 960 Bay Dr, LLC, a California Corp. ("**Belgium**"), herein sets out its MOTION FOR SANCTIONS DUE TO DEBTOR'S PERJURY. The nature of Debtor's perjurious evidence and the basis for this Motion is set out in further detail in the attached Memorandum of Points & Authorities.

Dated:        24 Mar 2023                                                                 Impact Advocates APC

                                                                                                        By_____
                                                                                                        Patrick Miller
                                                                                                        Attorney for Belgium Investments

# POINTS & AUTHORITIES

## I. Introduction.

It is trite that a Debtor's bad faith during bankruptcy can be grounds for dismissal. Therefore, Debtor's egregious perjury must certainly provide grounds for dismissal.

This Motion details Debtor's perjury and his bad faith explanation of the same. It then explains how this perjury amounts to fraud on the court sufficient to warrant dismissal as sanction. It addresses the basis of the court's power to issue this sanction as well as other courts' approaches under similar circumstances. It concludes by suggesting further steps that might be taken to protect the justice system.

## II. It is now irrefutable that Debtor has committed perjury.

### A. The Debtor has recently confirmed that his previous statements under oath were perjurious—and this perjury was done in conjunction with his attorney(s).

The clearest instance of repeated perjury by the Debtor involves his recent claims that he continuously resided in the Rockefeller Property since he purchased it in 2013. This is contradicted by his repeated claims in 2021 that he had not resided at the Rockefeller Property since late-2016.

It is still not certain which statement is actually true, ie we still don't know where Debtor resided over the past few years. However, Debtor's explanations in the present proceedings regarding the perjurious evidence amount to even more bad faith—and could also be considered perjury itself (see further below).

Belgium has continually pointed to Debtor's contradictory statements as evidence of his bad faith. But Debtor has now made clear that these statements actually amount to perjury. A deposition of the Debtor was conducted by Belgium's counsel on 15 March 2023. During this deposition, Debtor repeated his claim that he resided in the Rockefeller Property (in Irvine) since

he purchased it in 2013[1]. Belgium's counsel directed Debtor to his previous testimony in a sworn Declaration where he stated: "*I've been residing full-time at my residence in Santa Monica since November 21st, 2016.*". Debtor was asked to explain this statement in light of his new testimony and he responded: "*Yeah. That was my -- it's my civil attorney advice that he said, you know, like we need to write this declaration.*"[2].

This shocking admission seems to implicate a member of the Bar in California and/or Florida in having suborned perjury. This conspiracy would have also involved Debtor's sister, Reem Hanna, who has now presented similar perjurious evidence.

Debtor, and his sister Reem Hanna, have now attempted to explain this perjury by stating that: "*the questions Belgium's counsel asked me [during the previous proceedings in 2021] were in regards to whether I was served at the Rockefeller Property.*"[3]. However, this is only further evidence of Debtor's continued refusal to give truthful evidence to this Court.

Debtor's previous statements regarding residency were ostensibly used to support his allegations that (i) substitute service of process at the Rockefeller Property in 2019 & 2020 was not made at his *residence* (because he resided in Santa Monica); and (ii) he did not have knowledge of the service made upon his sister (because he rarely saw her and resided elsewhere).

Despite Debtor's recent explanation, there are numerous examples of statements made which are clearly perjurious and are not "*in regards to whether [he] was served*". A few illustrative examples are summarized below, but this Court must note that there are many more examples of perjurious statements such as these.

---

[1] See page 7, line 18 to page 8, line 3 of Exhibit 8 of the Pre-Hearing Brief. All references to Exhibits in this Motion will be for Exhibits to the Pre-Hearing Brief for the Evidentiary Hearing on Homestead [Docket Number 153].
[2] See page 27, line 4 to page 28, line 3 of Exhibit 8.
[3] See Exhibit 10.

| Paragraphs 3-4 of Debtor's CA Declaration dated <u>17 Feb 2021</u> | Page 91 of Reem Hanna's FL Deposition dated <u>21 Mar 2021</u> | Paragraph 6 of Debtor's BK Declaration dated <u>21 Mar 2023</u> |
|---|---|---|
| I have **been residing fulltime at my residence in Santa Monica since 11/21/16.** … I have not occupied the real property located at 116 Rockefeller, Irvine CA. since 11/21/16. | Q. Okay. The [Rockefeller Property], is that your residence? A. Yes. … **Q. Does your brother, Bassem Essam El Mallakh, live there? A. No. Q. Where does he live? A. In Santa Monica.** | My **primary residence** where I live is the **Rockefeller Property** and it has been by primary residence **since I purchased it in 2013**... |

| Paragraph 6 of Reem Hanna's CA Declaration dated <u>17 Feb 2021</u> | Paragraph 3 of Reem Hanna's BK Declaration dated <u>21 Mar 2023</u> | Page 28, ln 22 to 29, ln 6 of Debtor's BK Deposition dated <u>15 March 2023</u> |
|---|---|---|
| **Bassem Essam El Mallakh is not nor ever has been a co-occupant at my residence** [the Rockefeller Property]. Since the inception of the lease Bassem Essam El | Since I started living at the Rockefeller Property on or about mid-2018, **Bassem has always lived at the Rockefeller Property with me there.** | Q. Okay. Was anyone living with you at the Rockefeller property in 2020? A. My sister. Q. She was your co- |

| | | |
|---|---|---|
| Mallakh has **never-been a co-occupant.** | | occupant at the time?<br><br>A. She was what?<br><br>**Q. She was your co-occupant at the time?**<br><br>A. Yeah. Roommate. Co-occupant. |

| Page 25 of Debtor's FL Deposition dated 21 Mar 2021 | Pages 10, ln 4 to ln 18 of Debtor's BK Deposition dated 15 March 2023 |
|---|---|
| Q. Okay. Where do you reside?<br><br>A. I live in Santa Monica.<br><br>Q. Okay. What address?<br><br>A. 525 Broadway.<br><br>Q. How long have you resided there?<br><br>A. Since November 1st of 2016.<br><br>Q. **And do you essentially sleep every night there in 525 Broadway in Santa Monica?**<br><br>**A. Yes.** | Q. When did you sign the lease for the Santa Monica apartment?<br><br>A. It was in November of 2016.<br><br>Q. Okay. November of 2016. So -- so you always lived in the Rockefeller house. **How many nights did you normally sleep there [at Rockefeller]?**<br><br>**A. Most of the week.** You know, I would be working between Santa Monica and Irvine. It just depends on the week. Some weeks I would just be in like, you know, Irvine for the whole week. Some weeks I would work in Santa Monica a few days, and then, you know, some weeks I would just work, you know, maybe Monday to Thursday, and I'll just go back to my house on the |

|  | weekends. It was really all depending on the traffic. |
|---|---|

| Pages 36-37 of Debtor's FL Deposition dated <u>21 Mar 2021</u> | Pages 22, ln 5 to 23, ln 1 of Debtor's BK Deposition dated <u>15 March 2023</u> |
|---|---|
| Q. Yeah. **Was there a Ring camera system[4] at 116 Rockefeller in 2020**, to your knowledge?<br><br>[Debtor's FL Counsel]: Objection.<br><br>THE WITNESS: I'm not sure, Andrew, because, as I mentioned to you, **I have not been in the Irvine house, not even once in 2020, not even once in 2019.** I believe even when I came to Orange County in 2018 it was just for Christmas -- Christmas Eve at my cousin's house in Mission Viejo area, which is like south of Irvine. | Q. **Do you have any security cameras at the Rockefeller property?**<br>**A. I have a Ring camera.**<br>...<br>Q. Did you purchase the Ring camera system?<br>A. It was actually a Christmas gift from my -- from my father.<br>Q. Do you remember when you received it?<br>A. I think it was in 2017. 2017. Christmas of 2017. It's been awhile. |

We cannot determine whether Debtor's current statements are untrue, or his previous statements in 2021 were untrue. We can only be certain that they are directly conflicting, and thus at one of these instances he intentionally gave false testimony concerning a material issue.

---

[4] Debtor's evasiveness on answering questions regarding a ring camera system at the Rockefeller Property were likely due to Debtor's spurious claims that multiple process servers were lying when they testified to having left documents with his sister at the Rockefeller Property. These encounters were likely captured on the Ring camera system and thus would provide evidence that comported with the process servers' testimony.

His supposed explanation in his most recent Declaration is nothing but a continuation of this perjury.

The evidence in 2021 on Debtor's residency was highly material as it concerned whether proper service of process had been given. Debtor challenged the service of process in part on the basis that he did not reside at the address where substitute service was made (the Rockefeller Property). He also needed to support the incredulous claim that his sister, who was served with the documents, never informed him of their contents because his motion to vacate was predicated in part on his lack of knowledge of the case (which the court in Florida ultimately did not accept because Debtor admitted to having knowledge independently through his conversations with co-defendants).

Debtor's residence is again material in the present Ch 11 proceedings to determine whether he is entitled to claim a homestead exemption.

**B. Other statements regarding the Debtor's finances likely amount to perjury as well.**

As noted in earlier submissions, Debtor's previous Ch 13 filing contained egregiously inaccurate statements regarding Debtor's assets & liabilities. At the time, Belgium suggested that these statements were intentional misrepresentations made for the bad faith purpose of obstructing enforcement and utilizing sections of the Bankruptcy Code which were clearly not available to this Debtor by virtue of his extensive liabilities.

This court previously found those statements did not amount to bad faith. However, now that we have confirmation from Debtor that he has a propensity to commit perjury on material issues, we request that this court reassess the nature of Debtor's previous incredulous statements in light of the new understanding of this Debtor's behavior.

Additionally, Belgium noted that much of the evidence that Debtor gave regarding his finances during the early stages of this Ch 11 filing appeared false and/or highly suspect. Again,

Belgium asks this court to reconsider the various questionable claims made by Debtor in the early stages of this Ch 11 proceeding as it assesses the reasonableness of the sanctions requested by Belgium. Belgium would be willing to provide further submissions on these other potentially perjurious statements if necessary.

### III. Debtor's perjury amounts to fraud on the court sufficient to warrant dismissal as sanction.

Debtor has now admitted to perjury and thus must be sanctioned by this Court to the same degree as the nature of his crime. The Supreme Court of the United States has clearly explained the gravity of the harm caused to the judicial process by perjurious evidence, stating: *"[f]alse testimony* in a formal proceeding *is intolerable*. We must neither reward nor condone such a *flagrant 'affront'* to the truth-seeking function of adversary proceedings*."*[5] (emphasis added).

Dismissal of these proceedings should be the minimum consequence for such an egregious fraud on the court, particularly given Debtor's continued reliance on perjurious and/or bad faith explanations. *"**In numerous cases, a litigant's fabrication,** destruction, or suppression of evidence and related perjury **has led to dismissal of the perjuring plaintiff's claim** or default judgment against the perjuring defendant"*[6] (emphasis added). For example, while affirming the trial court's dismissal of an action for fraud on the court, the court in *Rockdale Mgmt* stated: *"[a]* **fraud on the court"** *occurs where it can be demonstrated, clearly and convincingly, that a party has sentimentally set in motion some **unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the***

---

[5] Jonathan M. Stern, Untangling a Tangled Web without Trial: Using the Court's Inherent Powers and Rules to Deny a Perjuring Litigant His Day in Court, 66 J. AIR L. & COM. 1251 (2001) https://scholar.smu.edu/jalc/vol66/iss3/7 (referencing ABF Freight Sys., Inc. v. NLRB, 510 U.S. 317, 323 (1994)).

[6] Id (referencing e.g., Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944); Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989);Joza v. Million Air, Inc., No. 96-3165, slip op. at *8 (S.D. Fla. May 31, 2001); Anheuser-Busch, Inc. v. Natural Beverage Distrib., 151 F.R.D. 346 (N.D. Cal. 1993) affd, 69 F.3d 337 (9th Cir. 1998); Sun World, Inc. v. Lizarazu Olivarria, 144 F.R.D. 384, 390-291 (E.D. Cal. 1992); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986); Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 638 N.E.2d 29 (Mass. 1994).

*trier or unfairly hampering the presentation of the opposing party's claim or defense*" (emphasis added )[7].

The Supreme Court has described fraud on the court as "*a wrong against the institutions set up to protect and safeguard the public.*"[8].

Numerous courts have held that dismissal is warranted for fraud on the court before issuing formal ruling on perjury where a litigant's own testimony is irreconcilably inconsistent— as is the case here[9].

Courts have also invoked the 'clean hands" doctrine as a basis for dismissal[10]**.** The clean hands doctrine is an equitable doctrine which largely overlaps with fraud on the court analysis. Its basis was well-summarized by Professor Pomeroy as follows: "*It assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject-matter or transaction in question. It says that* **whenever a party***, who, as actor seeks to set the judicial machinery in motion and obtain some remedy****, has violated conscience, or good faith,*** *or other equitable principle,* ***in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy***.*" (emphasis added)[11].

---

[7] Id (referencing Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 638 N.E.2d 29 (Mass. 1994) (quoting Aoude, 892 F.2d at 1118)).
[8] Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944).
[9] Id (referencing e.g., Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc., 792 F. Supp. 969 (S.D.N.Y. 1992), afffd without op., 983 F.2d 1048 (2d Cir. 1992). See also Rogal v. Am. Broad. Cos., No. 89-5235, 1994 U.S. Dist. LEXIS 3683, at *19 (E.D. Pa. Mar.29, 1994) (awarding sanctions after adverse verdict and judgment where contradictions and inconsistencies from defendant's own evidence reflected "utter contempt for the oath"), rev'd and remanded, 74 F.3d 40 (3d Cir. 1996) (finding trial court's failure to hold an evidentiary hearing was, under the specifics of the case, an abuse of discretion); Meador, 1995 U.S. Dist. LEXIS 11201, at *29-30 ("In the absence of inconsistent representations to the Court or evidence which shows that there is no genuine issue of material fact, the truthfulness of statements is necessarily a question for the finder of fact, and not properly resolvable on a motion for summary judgment.")).
[10] Id (referencing eg Smith v. Cessna Aircraft Co., 124 F.R.D. 103, 105 (D. Md. 1989)).
[11] Id (referencing John Norton Pomeroy, Equity Jurisprudence § 397 (5th ed. 1941)).

Issues of equity are certainly present in this case, where the Debtor: (i) has been found to have defrauded Belgium in an amount exceeding $4 million dollars; (ii) has obstructed enforcement of this judgement through bad faith & perjury; and (iii) is now using further bad faith & perjury in an attempt to illegitimately claim exemptions over property which it assured the Orange County Superior Court would be available for satisfaction of Belgium's judgement.

**IV. This Court has the authority to issue the requested sanction by virtue of its inherent powers and the Federal Rules of Civil Procedure.**

It is well-settled that courts have inherent powers to issue sanctions for bad faith conduct by litigants such as fraud on the court[12]. "C*ourts that dismiss or default for fraud practiced on the court often cite their **inherent powers as a source of sanctioning authority**"*[13] (emphasis added).

Moore's Federal Practice note observed that "[t]*he fabrication of evidence or testimony is subject to the court's **inherent sanctioning power and dismissal** is a potential sanction.*"[14] (emphasis added).

Additionally, this court arguably has the power to issue such a sanction by virtue of several of the Federal Rules of Civil Procedure, including Rules 11, 26, 37, and 41. For example, "*[a] number of courts have relied on Rule 41(b), in addition to **inherent powers, for authority to dismiss a plaintiff who has committed fraud on the court***"[15] (emphasis added).

---

[12] Id (referencing e.g., Chambers v. NASCO, Inc., 501 U.S. 32 (1991); Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962); Zaldivar v. Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986); Vargas v. Peltz, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995). See also HazelAtlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) (addressing the inherent power of a circuit court of appeals).
[13] Id (referencing E.g., Brady v. United States, 877 F. Supp. 444 (C.D. 11. 1994); Sun World, Inc. v. Lizarazu Olivarria, 144 F.R.D. 384, 390 (E.D. Cal. 1992); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986)).
[14] Id (referencing 6JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 26.06[1] (citing Pope, 974 F.2d at 984; Vargas, 901 F. Supp. at 1579)).
[15] Id (referencing E.g., Pope v. Fed. Express Corp., 138 F.R.D. 675 (W.D. Mo. 1990), affd in part, vacated in part on other grounds, 974 F.2d 982 (8th Cir. 1992); McDowell v. Seaboard Farms of Athens, Inc., No. 95-609-CIV-ORL-19, 1996 U.S. Dist. LEXIS 19558 (M.D. Fla. Nov. 4, 1996); Synanon Church v. United States, 579 F. Supp. 967, 975-76 (D.D.C. 1984)).

### V. Dismissal is an appropriate sanction in this instance.

The court in *Vargas* noted that "[t]*he federal case law is well established that **dismissal is the appropriate sanction where a party manufactures evidence** which purports to corroborate its substantive claims*."[16] (emphasis added). Several of the cases cited above have allowed for dismissal as the sanction for perjury, eg *Rockdale Mgmt*.

With respect to the 9th Circuit, in particular, many courts have found that perjury can form the basis for dismissal. For instance, the court in *Anheuser-Busch* stated: "[*i*]*t is **well settled that dismissal is warranted where**, as here, **a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings***: "*courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.*""[17] (emphasis added). The ruling in *Anheuser-Busch* has been cited by over 1,000 cases since it was published and certainly reflects the relevant legal threshold for dismissal when perjury is discovered in the 9th Circuit.

When ordering the dismissal, the lower court in *Anheuser-Busch* noted that the violator: "***does not take her oath to tell the truth seriously** and ... will say anything at any time in order to prevail in this litigation. **There is little guarantee that if the court were to impose lesser sanctions [the violator's] misconduct would cease.***" (emphasis added)[18]. This is eerily similar to the present case because this Debtor's conduct unequivocally shows that he will not take his oath to provide truthful information seriously—and this misconduct will continue until he is no longer provided with the protections granted to a bona fide debtor in bankruptcy.

---

[16] Id (referencing Vargas v. Peltz, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995)).
[17] Anheuser-Busch, Inc. v. Nat. Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589 (9th Cir.1983) (upholding dismissal of complaint pursuant to court's inherent power where plaintiff's denials of material fact were knowingly false and plaintiff willfully failed to comply with discovery orders)).
[18] Id at 352.

Dismissal is particularly warranted in the context of bankruptcy. Debtor is tenuously asking for this Court to utilize the powers of bankruptcy law to delay the enforcement by creditors of their duly-won judgment—a judgement which was the result of Debtor's fraud & misconduct and whose enforcement has been obstructed for several years due to Debtor's admitted-perjury.

It is the Debtor who must prove to this court why he should be allowed the privilege of utilizing the bankruptcy code, particularly given his dubious filing under Ch 11 in circumstances where he has virtually no chance of actually reorganizing his assets and is continuing to rely on perjurious, bad faith explanations.

As noted above, Debtor has made several other statements during his bankruptcy that appear to amount to perjury—and it remains to be seen exactly what evidence is inaccurate regarding Debtor's residency. His explanations regarding the perjurious evidence may also amount to perjury, or at least have been made in bad faith. But even if the only perjury occurred during a previous case, this would still amount to misconduct that must be sanctioned by this court in the form of dismissal.

Courts have taken two approaches when considering perjury which only took place in a previous case. Some courts find that the subsequent case cannot proceed because it is "*infected*" by the earlier perjury[19]. The other approach is to employ res judicata by acknowledging the earlier case did (or would have) resulted in a dismissal which would bar the subsequent litigation[20]. In this way, a perjurious litigant cannot prevail in a subsequent action simply because the perjury occurred earlier.

---

[19] See Jonathan M. Stern, Untangling a Tangled Web without Trial: Using the Court's Inherent Powers and Rules to Deny a Perjuring Litigant His Day in Court, 66 J. AIR L. & COM. 1251 (2001) https://scholar.smu.edu/jalc/vol66/iss3/7 (referencing Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1121-1122 (1st Cir. 1989)).

[20] Id (referencing e.g., Massie v. Paul, 92 S.W.2d 11 (Ky. 1936)).

**VI. Additional steps should also be taken by this Court in furtherance of justice.**

As there is now clear evidence of perjury and conspiracy to commit perjury in multiple states, it seems this matter should be referred to the US Attorney's Office for further prosecution. As this egregious perjury has occurred in this Court, Belgium respectfully requests that this Court takes steps to actively ensure that the matter is properly investigated and that the appropriate criminal sanctions are sought by the US Attorney.

Additionally, as this misconduct seems to implicate members of the Bar in California and/or Florida, we respectfully request this Court to issue the proper referrals to the relevant Bar Associations for further investigation.

This misconduct strikes at the heart of the judicial system and implicates several Canons of the Codes of Conduct for US Judges, including Canon 1 and Canon 3(b)(6). We therefore have no doubt that this Court will take the appropriate steps in light of these serious violations of the judicial system.

## VII.    Conclusion

Belgium has not yet set a date for this Motion to be heard. It hopes that this Motion can be incorporated into the Court's analysis at the hearing next Thursday, 30 March 2023 where it will be deciding Belgium's earlier Motion to Dismiss and the US Trustee's Motion to Dismiss [Docket Nos 63 & 121, respectively].

As cited in those earlier submissions, there is ample basis to support dismissal of this bankruptcy due to the infeasibility of reorganization, bad faith misconduct, and the fact that dismissal is undoubtedly in the best interest of the creditors. Irrespective of these points, Debtor's perjury would be a separate, and perhaps superseding, reason to dismiss this bankruptcy.

Debtor must not be allowed to continue this bankruptcy any longer now that he has confirmed it is predicated on bad faith and perjury. Immediate dismissal is the only recourse at this stage.

Given Debtor's admitted perjury & unrepentant bad faith, every single day hereafter that this bankruptcy continues represents an intolerable affront to the institutions of justice in this country.

Dated:       24 Mar 2023                                      Impact Advocates APC

By_____
Patrick Miller
Attorney for Belgium Investments

PROOF OF ELECTRONIC SERVICE

I am employed in the County of LOS ANGELES, State of California. I am over the age of 18 and not a party to the within action. My business address is, 121 S Oak Ave, Pasadena, CA 91107.

A true and correct copy of the foregoing described as **MOTION FOR SANCTIONS DUE TO DEBTOR'S PERJURY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d) (through electronic filing); and **(b)** in the manner stated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 3/24/23, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael Jay Berger on behalf of Debtor Bassem Victor El Mallakh
michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Chad L Butler on behalf of Interested Party Courtesy NEF
caecf@tblaw.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
nancy.goldenberg@usdoj.gov

Benjamin Heston on behalf of Interested Party Benjamin Heston

bhestonecf@gmail.com,

benheston@recap.email,NexusBankruptcy@jubileebk.net

Patrick Miller on behalf of Creditor Belgium Investments 960 Bay Dr, LLC A California Corp.

patrick.miller@impactadvocateslaw.com

Randall P Mroczynski on behalf of Creditor TD Bank, N.A., successor in interest to TD Auto Finance LLC

randym@cookseylaw.com

United States Trustee (SA)

ustpregion16.sa.ecf@usdoj.gov

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

                          Executed on this 3/24/2022, at Pasadena, California.

                                                  Patrick Miller